## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

**STATE OF TEXAS, et al.**

      *Plaintiffs,*

**v.**                             **CASE No. 1:14-CV-00254**

**UNITED STATES OF AMERICA, et al.,**

      *Defendants.*

_____

## *AMICI CURIAE* BRIEF OF MEMBERS OF CONGRESS, THE AMERICAN CENTER FOR LAW & JUSTICE, AND THE COMMITTEE TO DEFEND THE SEPARATION OF POWERS SUPPORTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

JAY ALAN SEKULOW
   *Attorney-in-Charge*
   DC Bar No. 496335
DAVID FRENCH*
JORDAN SEKULOW*
TIFFANY BARRANS*
MILES TERRY*
JOSEPH WILLIAMS*

AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 546-8890
Fax: (202) 546-9309

\* Not admitted in this jurisdiction

*Attorneys for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTEREST OF *AMICI* ............................................................................. 1

STATEMENT OF ISSUES TO BE RULED
UPON BY THE COURT ............................................................................ 1

SUMMARY OF ARGUMENT .................................................................. 1

ARGUMENT ............................................................................................. 2

    I.      PLAINTIFFS ARE LIKELY TO PREVAIL ON THE
            MERITS BECAUSE THE DIRECTIVE IS
            UNCONSTITUTIONAL AND VIOLATES CONGRESS'S
            EXPRESS AND IMPLIED INTENT. ……………………………................. 3

           A. The DHS Directive Fails the Constitutional
              Test in *Youngstown*. .....……………..………………… ................. 5

           B. The DHS Directive Conflicts with
              Congressional Intent.....……………..……………… ................. 9

    II.     THE DIRECTIVE EXCEEDS THE BOUNDS OF
            PROSECUTORIAL DISCRETION AND VIOLATES
            THE DUTY TO FAITHFULLY EXECUTE THE LAW. …..………… ................. 12

CONCLUSION .......................................................................................... 15

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## *Cases*

*Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973)............................................13

*Arizona v. United States*, 132 S. Ct. 2492 (2012)....................................................12

*Boutilier v. INS*, 387 U.S. 118 (1967)........................................................................4

*Chirac v. Lessee of Chirac*, 15 U.S. (1 Wheat.) 259 (1817).....................................4

*Crowley Caribbean Transp., Inc. v. Peña*, 37 F.3d 671 (D.C. Cir. 1994) ..............13

*Fiallo v. Bell*, 430 U.S. 787 (1977)............................................................................6

*Galvan v. Press*, 347 U.S. 522 (1954) .......................................................................4

*Harisiades* v. *Shaughnessy*, 342 U.S. 580 (1952) ......................................................6

*Heckler v. Chaney*, 470 U.S. 821 (1985) ..................................................................12

*In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013) .................................................12

*INS v. Chadha*, 462 U.S. 919 (1983) ..........................................................................4

*Kenney v. Glickman*, 96 F.3d 1118 (8th Cir. 1996)..................................................13

*Reno v. Flores*, 507 U.S. 292 (1993) ..........................................................................4

*Sale v. Haitian Council, Inc.*, 509 U.S. 155 (1993)....................................................4

*United States v. Batchelder*, 442 U.S. 114 (1979)....................................................12

*United States v. Nixon*, 418 U.S. 683 (1974).............................................................12

*Wayte v. United States*, 470 U.S. 598 (1985) ...........................................................12

*Winter v. NRDC*, 555 U.S. 7 (2008) ..............................................................2

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952).................... passim

### Constitutions, Statutes, and Rules

6 U.S.C. § 202(5) ............................................................................................9

8 U.S.C. § 1103 (a)(3) .....................................................................................9

8 U.S.C. § 1151(b)(2)(A)(i) .............................................................................8

8 U.S.C. § 1153(a) .........................................................................................11

8 U.S.C. § 1158(b)(1)(A) .................................................................................7

8 U.S.C. § 1182(a)(9)(B)(i)(ii)................................................................... 8, 11

8 U.S.C. § 1182(a)(9)(C)(i)(I)........................................................................10

8 U.S.C. § 1182(d)(5)(A) .................................................................................7

8 U.S.C. § 1201(a) ...........................................................................................8

8 U.S.C. § 1229b(2) .........................................................................................7

8 U.S.C. § 1255 ......................................................................................... 8, 11

8 U.S.C. § 237(d)(2) .........................................................................................7

National Defense Authorization Act for Fiscal Year 2004, Pub. L. 108-136, §
    1703(c), (d) (2003)........................................................................................7

U.S. Const. art. I § 8, cl. 4...............................................................................3

U.S. Const. art. I, § 7, cl. 2..............................................................................8

U.S. Const. art. II § 2, cl. 1 ...........................................................................12

U.S. Const. art. II § 2, cl. 8 ....................................................................12

U.S. Const. art. II § 3 ...............................................................................4

U.S. Const. art. II § 9, cl. 3 ....................................................................12

U.S. Const. art. II, § 1, cl. 1 ...................................................................12

U.S. Const. art. II, § 3 .............................................................................12

## Other Authorities

Memorandum Opinion for the Secretary of Homeland Security, from Karl R.
    Thompson, Principal Deputy Assistant Attorney General, Office of Legal
    Counsel, *The Department of Homeland Security's Authority to Prioritize
    Removal of Certain Aliens Unlawfully Present in the United States and to Defer
    Removal of Others* (Nov. 19, 2014) ..................................................................10

Ruth Ellen Wasem, Cong. Research Serv., RS7-5700, Discretionary Immigration
    Relief (2014) .............................................................................................9

THE FEDERALIST NO. 47 (James Madison) (Clinton Rossiter ed., rev. ed. 1999)......5

Zachary S. Price, *Enforcement Discretion and Executive Duty*, 67 Vand. L. Rev.
    671 (2014) ............................................................................. 13, 14, 15

## INTEREST OF *AMICI*[1]

*Amici*, United States Senators Ted Cruz, Roy Blunt, and John Cornyn, and Representatives Bob Goodlatte, Diane Black, Dave Brat, Jeff Duncan, John Fleming, Randy Forbes, Virginia Foxx, Trent Franks, Trey Gowdy, H. Morgan Griffith, Vicky Hartzler, Tim Huelskamp, Mike Kelly, David McKinley, Jeff Miller, Alan Nunnelee, Pete Olson, Ted Poe, Bill Posey, Tom Price, Phil Roe, Adrian Smith, Lamar Smith, and Rob Wittman, are currently serving in the 113th Congress. This brief is also filed on behalf of the ACLJ's Committee to Defend the Separation of Powers, which consists of over 60,500 Americans.

*Amici* are committed to the constitutional principle of separation of powers, which is jeopardized by the Defendants' unconstitutional and unprecedented directive relating to immigration.

## STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

The issue before the Court is whether Defendants' creation of a class-based, deferred action program, not authorized by Congress, should be preliminarily enjoined. In the Court's discretion, it should preliminarily enjoin this program because the Plaintiffs can prove that (1) they are likely to succeed on the merits, (2) they will suffer irreparable harm without preliminary relief, (3) the balance of

---

[1] Plaintiffs' counsel has consented and Defendants take no position on this filing. No counsel for any party in this case authored this brief in whole or in part. No person or entity aside from the ACLJ, its members, or its respective counsel made a monetary contribution to the preparation or submission of this brief.

1

equities favors preliminary relief, and (4) the relief is in the public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

## SUMMARY OF ARGUMENT

Defendants' directive ("DHS directive") violates the Constitution and Congress's intent. *See* Am. Compl. Ex. A. The Constitution vested in Congress the exclusive authority to make law and set immigration policies. Congress has created a comprehensive immigration scheme—which expresses its desired policy as to classes of aliens—but the class identified by the DHS directive for categorical relief is unsupported by this scheme or policy. Moreover, the DHS directive, at the admission of the President, changes the law and sets a new policy, exceeding Defendants' constitutional authority and disrupting the delicate balance of powers.

Defendants also exceeded the bounds of their prosecutorial discretion and abdicated their duty to faithfully execute the law. Instead of setting enforcement priorities, Defendants created a class-based program that establishes eligibility requirements that if met provides for automatic relief. The lack of individualized review or guidelines by which an immigration officer could deny relief to those who meet the eligibility requirements violates Supreme Court precedent. Thus, this Court should grant Plaintiffs' motion for preliminary injunction.

## ARGUMENT

In line with *amici's* expressed interest and to avoid repeating Plaintiffs' cogent

arguments, this brief will focus on why the Plaintiffs are likely to succeed on the merits. The DHS directive creates a new class—the roughly 4 million parents of U.S. citizens (and lawful permanent residents) who are unlawfully in the United States—and grants members of the class deferred removal (among other benefits) if they meet the basic eligibility requirements. Am. Compl. ¶¶ 51-54. Defendants' creation of a categorical, class-based program is neither moored in constitutional authority nor in authority delegated by a lawful statute passed by Congress.

By contradicting Congress's express and implied intent, the DHS directive violates the test articulated in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952). Furthermore, by enacting a sweeping new program under the guise of prosecutorial discretion, Defendants violated controlling precedent and abdicated their constitutional duty to faithfully execute the law.

## I.  PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS BECAUSE THE DIRECTIVE IS UNCONSTITUTIONAL AND VIOLATES CONGRESS'S EXPRESS AND IMPLIED INTENT.

Few enumerated powers are more fundamental to the sovereignty of the United States than the control of the ingress and egress of aliens. The Constitution vested in Congress "[a]ll legislative Powers", U.S. Const. art. I, § 1, and particularly vested in Congress the exclusive authority to "establish an uniform Rule of Naturalization," *id.* § 8, cl. 4. In 1817, the Supreme Court recognized Congress's exclusive authority over naturalization. *Chirac v. Lessee of Chirac*, 15 U.S. (1

Wheat.) 259, 269 (1817). Beyond naturalization, the Supreme Court has recognized that Congress has plenary power over immigration,[2] and has said that "over no conceivable subject is the legislative power of Congress more complete than it is over" immigration. *Reno v. Flores*, 507 U.S. 292, 305 (1993).

Similarly, the Supreme Court has recognized that it is Congress's exclusive authority to dictate policies pertaining to aliens' ability to enter and remain in the United States. As Justice Frankfurter aptly said:

> Policies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of government. In the enforcement of these policies, the Executive Branch of the Government must respect the procedural safeguards of due process. But that the *formulation of these policies is entrusted exclusively to Congress* has become about as firmly imbedded in the legislative and judicial tissues of our body politic as any aspect of our government.

*Galvan v. Press*, 347 U.S. 522, 531 (1954) (emphasis added) (internal citations omitted). Thus, while the President has a constitutional obligation to faithfully execute the laws, U.S. Const. art. II § 3, the core congressional function is to devise general laws and policies for implementation.

The founding fathers intentionally separated these powers among the branches, fearing that a concentration of power in any one branch, being unchecked, would become tyrannical. Their conscious design to strengthen the

---

[2] *See, e.g.*, *Sale v. Haitian Council, Inc.*, 509 U.S. 155, 201 (1993) ("Congress . . . has plenary power over immigration matters."); *INS v. Chadha*, 462 U.S. 919, 940-41 (1983) ("The plenary authority of Congress over aliens under Art. I, §8, cl. 4, is not open to question."); *Boutilier v. INS*, 387 U.S. 118, 123 (1967) (same).

government through this separation of powers is articulated in *The Federalist Papers*[3] and visible in the structure of Articles I, II, and III of the U.S. Constitution. In this design, the powers were not separated to ensure governmental efficiency, but to restrain the natural tendency of men to act as tyrants. As the complaint thoroughly explains, President Obama recognized these limits on more than twenty occasions. Am. Compl. ¶ 44. Yet despite this recognition, President Obama boldly proclaimed that the DHS directive "change[d] the law." *Id.* ¶¶ 4, 48.

### A.  The DHS Directive Fails the Constitutional Test in *Youngstown*.

The DHS directive created a categorical deferred action program that conflicts with Congress's expressed and implied intent in existing law and its exclusive authority to legislate and set immigration policy. When the President acts within an area generally considered to be under the constitutional authority of Congress, as he has done here, courts have applied Justice Jackson's three-tier framework articulated in *Youngstown Sheet & Tube Co. v. Sawyer*. 343 U.S. 579. According to *Youngstown*, when the President acts pursuant to an authorization from Congress, his power is "at its maximum." *Id.* at 635-36. When Congress is silent on the matter, "there is a zone of twilight in which he and Congress may have concurrent authority, or in which its distribution is uncertain." *Id.* at 637. Yet, when the

---

[3] *See* THE FEDERALIST NO. 47, at 269 (James Madison) (Clinton Rossiter ed., rev. ed. 1999) ("The accumulation of all powers, legislative, executive, and judiciary, in the same hands . . . may justly be pronounced the very definition of tyranny.").

President acts in conflict with Congress's expressed or implied intent, his power is at its "lowest ebb, for then he can rely only upon his own constitutional power minus any constitutional powers of Congress over the matter." *Id.*

Tier one of the framework, which entails consent by Congress, is inapplicable to the present analysis by the President's own admission. He claims that he had to act because Congress failed to act. Am. Compl. ¶ 4. Nor is the DHS directive saved by the "zone of twilight." Critically, Congress's refusal to enact President Obama's preferred policy is not "silence"; it represents the constitutional system working as intended. Congress has enacted extensive immigration laws—they are simply not enacted in the manner President Obama prefers. Differing policy preferences do not provide license to, as President Obama said, "change the law."

Congress has created a comprehensive immigration scheme, which expresses its desired policy as to classes of aliens—but the class identified by the DHS directive for categorical relief is unsupported by the scheme or the policy. The Supreme Court, in no ambiguous terms, has recognized Congress's "sole[] responsibility" for determining "[t]he condition of entry of every alien, the particular classes of aliens that shall be denied entry, the basis for determining such classification, [and] the right to terminate hospitality to aliens." *Fiallo v. Bell*, 430 U.S. 787, 796 (1977) (quoting *Harisiades* v. *Shaughnessy*, 342 U.S. 580, 596-97 (1952) (Frankfurter, J., concurring)). In this same vein, Congress also has exclusive authority to determine

through legislation when hospitality should be extended to a broad class of aliens. But Congress has elected not to create an avenue of hospitable relief, such as deferred action, for the class defined in the directive.

Congress has exercised its authority by prescribing limited avenues for the extension of hospitality relief. *See, e.g.*, 8 U.S.C. § 1182(d)(5)(A) (2012) (providing that the Attorney General may "only on a case-by-case basis" parole noncitizens into the United States for "urgent humanitarian reasons or significant public benefit"). Provisions also furnish hospitable relief to survivors of domestic violence, *id.* § 1229b(2), victims of trafficking, *id.* § 237(d)(2), refugees, *id.* § 1158(b)(1)(A), and for a spouse, parent, or child of certain U.S. citizens who died as a result of honorable service, National Defense Authorization Act for Fiscal Year 2004, Pub. L. 108-136, § 1703(c), (d) (2003). In legislating these limited avenues for the exercise of discretion, Congress neither expressly nor implicitly authorized the creation of a non-statutory avenue of relief for a broad class of aliens whom the law deems unlawfully present. The clash between the DHS directive's categorical relief and the Immigration and Naturalization Act's ("INA") comprehensive scheme eliminates Defendants' recourse under either the first or second tier of the *Youngstown* framework.

Turning to the third tier, the creation of a new avenue for parents of a U.S. citizen or permanent resident conflicts with Congress's expressed and implied

7

intent. Congress has not authorized deferred action for the class the DHS directive targets. To the contrary, the Congress enacted burdensome requirements to allow these parents entry and the ability to stay in the United States. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1182(a)(9)(B)(i)(ii), 1201(a), 1255. Finding themselves in conflict with Congress's intent, under the third tier of *Youngstown*, Defendants are left to rely exclusively on the powers vested in the Executive under Article II of the Constitution. Yet, the Supreme Court has consistently stressed Congress's plenary power over immigration law and policy, except in rare cases of foreign affairs, which is not implicated here. Importantly, case law recognizes neither executive power to alter Congress's finely calibrated balance nor Defendants' authority to change the law, which the President has openly admitted to doing here.

The comprehensive nature of the INA and Congress's pre-determination of limited avenues for hospitable relief leave no room for Defendants' creation of a categorical avenue of relief to those designated by law as unlawfully present. To find otherwise would allow executive action to disrupt the delicate balance of separation of powers, obliterate the Constitution's Presentment Clause, U.S. Const. art. I, § 7, cl. 2, and ignore the exclusive authority of Congress to set laws and policy on immigration matters.

### B.   The DHS Directive Conflicts with Congressional Intent.

The DHS directive defies Congress's exclusive authority over immigration with

the intention, as President Obama has admitted, of setting a new policy and creating new law. Defendants have misplaced reliance on authority generally granted to the Secretary of Homeland Security in section 103(a)(3) of the INA. 8 U.S.C. § 1103 (a)(3) (2012). Section 103(a)(3) specifically limits the delegated authority of the Secretary for those actions that are "necessary for carrying out [its] authority under the provisions of this chapter." *Id.* The chapter in no way gives Defendants the authority to create out of whole cloth an extensive, categorical deferred action program that grants affirmative legal benefits. Nor would such a program be *necessary* to carry out the authority delegated to the Secretary.[4]

Similarly, while The Homeland Security Act does make the Secretary of DHS responsible for "[e]stablishing national immigration enforcement policies and priorities," 6 U.S.C. § 202(5) (2012), there is a substantial difference between priorities for enforcement, which allow the agencies tasked with carrying out the law to focus their limited resources, and creating enforcement-free zones for entire categories of unlawful aliens.

The removal of unlawful aliens carries enormous importance to the overall

---

[4] Defendants have also tried to justify the DHS directive by relying on the history of past presidents, Compl. Ex. B at 2, but an overwhelming majority of past executive actions on immigration granting broad deferred action were country-specific (thus implicating the President's authority under foreign affairs) or directly implemented existing law. Only on rare occasions has a President defined a class of individuals for non-country specific relief from removal. *See* Ruth Ellen Wasem, Cong. Research Serv., RS7-5700, Discretionary Immigration Relief 7 (2014). Notably, these past actions were never challenged or upheld by the Supreme Court and thus represent at most mere political examples—not legal precedent—and are irrelevant to the constitutional analysis.

statutory scheme, but the DHS directive does not just articulate priorities for removal,[5] it grants legal benefits on a categorical basis to current illegal aliens. By granting illegal aliens lawful presence (for purposes of 8 U.S.C. § 1182(a)(9)(C)(i)(I)) during the deferred period, Defendants violate the express and implied intent of Congress. *See* Am. Compl. Ex. B at 13. Congress expressly limited Defendants' ability to grant waivers of grounds of admissibility for any unlawful alien present in the United States for over a year and who has been previously removed. *Id.* § 1182(a)(9)(C)(iii) (waivers of grounds admissibility limited to those eligible under VAWA and those seeking lawful entry from outside the US with Secretary approval after 10 years from last departure). Thus Defendants' blanket grant of "lawful presence" to aliens who would otherwise be inadmissible for the prescribed time exceeds Defendants' authority and contravenes Congress's intent.

Moreover, Defendants misplace their reliance on an implied general policy of family unification. Past legislative actions, enacted through Congress's constitutional authority, do not justify Defendants' unilateral creation of a new hospitable avenue of relief that affirmatively grants legal benefits to illegal aliens.

---

[5] Importantly, enjoining the DHS directive in no way hinders the Executive's expressed enforcement priorities, which were articulated in a separate DHS directive. *See* Memorandum Opinion for the Secretary of Homeland Security, from Karl R. Thompson, Principal Deputy Assistant Attorney General, Office of Legal Counsel, *The Department of Homeland Security's Authority to Prioritize Removal of Certain Aliens Unlawfully Present in the United States and to Defer Removal of Others* (Nov. 19, 2014). Neither Defendants' expressed enforcement priorities nor their authority to set these priorities has been challenged in this suit.

Conversely, Congress has enacted numerous provisions that prioritize penalizing unlawful entry over the alien's familial ties. *See, e.g.*, 8 U.S.C. § 1255(a) (2012) (providing that aliens who entered the United States illegally cannot adjust status in the United States to that of permanent residence, even if they qualify for a green card such as by marrying a U.S. citizen); *id.* § 1182(a)(9)(B), (C) (providing that aliens who have been unlawfully present for certain periods of time are inadmissible to the United states, even if they qualify for a green card such as by marrying a U.S. citizen); *id.* § 1153(a) (setting forth the numerical limitations on many family-based green card categories). Defendants cannot splice from context a congressional policy to justify creating a categorical program for relief to a class of aliens the law deems unlawful. Defendants stretch the enabling sections to their absolute breaking point to enact the Executive's agenda over that of Congress.

The DHS directive is neither moored to constitutional authority, either express or implied, nor can it be moored to a delegation of statutory authority. President Obama expressly acknowledged this fact on no less than twenty-two occasions. *See* Am.Compl. ¶ 44. Nevertheless, Defendants subverted the very law that they were charged with enforcing and, as the President admitted, created new law.

## II. THE DIRECTIVE EXCEEDS THE BOUNDS OF PROSECUTORIAL DISCRETION AND VIOLATES THE DUTY TO FAITHFULLY EXECUTE THE LAW.

Defendants assert that creating the deferred action program falls under their

prosecutorial discretion. But claiming prosecutorial discretion does not render their action constitutional; instead, it triggers a new analysis: did Defendants abuse their discretion by creating a categorical deferred action program of this magnitude, which is not backed by any statutory authority? For the reasons set below, we conclude they did.

Drawn from the Executive's constitutional obligation to faithfully execute the law, U.S. Const. art. II, § 3, and the doctrine of separation of powers,[6] the Supreme Court has recognized that the Executive has broad prosecutorial discretion. *See, e.g.*, *Wayte v. United States*, 470 U.S. 598, 607 (1985); *United States v. Nixon*, 418 U.S. 683, 693 (1974); *see also Arizona v. United States*, 132 S. Ct. 2492, 2498 (2012). But this discretion, while broad, is not unfettered. *United States v. Batchelder*, 442 U.S. 114, 125 (1979).

The Supreme Court has constrained prosecutorial discretion to the exercise of discretion in individual cases. *See Arizona*, 132 S. Ct. at 2499 (recognizing the need for discretion to consider "immediate human concerns" and to preserve the "equities of an individual case"); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Expounding on this requirement, the Supreme Court warned in *Heckler v. Chaney* that the conscious and express adoption of a categorical exemption might reflect a

---

[6] In addition to the Take Care Clause, some have opined that prosecutorial discretion is also rooted in the Executive Power Clause, U.S. Const. art. II, § 1, cl. 1, the Oath of Office Clause, *id.* § 2, cl. 8, the Pardon Clause, *id.* § 2, cl. 1, and the Bill of Attainder Clause, *id.* § 9, cl. 3. *See In re Aiken County*, 725 F.3d 255, 262-63 (D.C. Cir. 2013).

"general policy that is so extreme as to amount to an abdication of its statutory responsibilities." 470 U.S. at 833 n.4 (internal quotation marks omitted). Lower courts applying *Chaney* have indicated that a nonenforcement decision applied broadly and not made on an individualized basis raises suspicion of whether the Executive has exceeded its prosecutorial discretion. *See, e.g.*, *Kenney v. Glickman*, 96 F.3d 1118, 1123 (8th Cir. 1996); *Crowley Caribbean Transp., Inc. v. Peña*, 37 F.3d 671, 677 (D.C. Cir. 1994); *see also Adams v. Richardson*, 480 F.2d 1159, 1162 (D.C. Cir. 1973); Am. Compl. Ex. B at 7 (OLC advised categorical policy of nonenforcement pose "special risks"). Despite this requirement, Defendants knowingly exceed their discretion "and enter[] the legislature's domain," and "use[] enforcement discretion to categorically suspend enforcement" to their preferred class of offenders. Zachary S. Price, *Enforcement Discretion and Executive Duty*, 67 Vand. L. Rev. 671, 676 (2014).

There is a dramatic difference between setting enforcement priorities and rendering guidelines for enforcement (as DHS did in a separate directive, *see supra* n. 5), and creating a categorical program with base-line eligibility requirements that if met mandate automatic relief. The former requires individualized assessment; the latter does not. Under the new DHS directive, DHS has provided no guidance by which an officer may exercise discretion and reject an application that meets the eligibility criteria that have been set forth. In other words,

immigration officers lack discretion to deny deferred action should an applicant meet the eligibility requirements. Thus, the deferred action program for roughly four million illegal aliens is nothing more than a conveyer belt of rubberstamping, or more aptly put, a categorical exemption hidden under the guise of prosecutorial discretion. *See* Am. Compl. Ex. B at 6 (advising that Defendants could not "under the guise of exercising enforcement discretion, attempt to effectively rewrite the laws to match [their] policy preference").

Moreover, Defendants' prospective nonenforcement—or rather its public announcement to decline enforcement of the law in the future—is particularly offensive to Congress's legislative supremacy because it undermines the intended deterrent effect of immigration laws. Such prospective, categorical nonenforcement programs like the DHS directive exceed the bounds of prosecutorial discretion and amount to a violation of Defendants' duty to faithfully execute the law. "Similarly, categorical nonenforcement for policy reasons" as the President has admitted to here, "usurps Congress's function of embodying national policy in law." Price, *Enforcement Discretion*, *supra* at 705.[7] Defendants ignored the limits of prosecutorial discretion, and if this Court does not preliminarily enjoin

---

[7] "[T]hese two forms of executive action most closely approximate the two forms of executive power that the historical background suggests the Framers sought specifically to prohibit: prospective licensing resembles the royal dispensing power, while categorical nonenforcement resembles an executive suspension of statutory law."  Price, *Enforcement* Discretion, *supra* at 705 (discussing at length the historical background and limits of prosecutorial discretion).

the DHS directive, such unbound authority "could substantially reorder the separation of powers framework. . . . [b]y permitting [Defendants] to read laws, both old and new, out of the Code . . . [and] provide Presidents with a sort of second veto." *Id.* at 674.

## CONCLUSION

Plaintiffs are likely to succeed on the merits because the DHS directive violates the Constitution, disrupts the separation of powers, and amounts to an abdication of their constitutional and statutory duty. Defendants unconstitutionally legislated by creating a categorical, class-based program not supported by law or policy. Defendants also exceeded their prosecutorial discretion by creating eligibility requirements, which, if met, automate deferred removal. Finally, Congress's refusal to enact Defendants' preferred policies does not provide a lawful pretext for violating our nation's vital restraints on executive authority. For these reasons, this Court should grant the Plaintiffs' motion for preliminary injunction.

Respectfully Submitted,

JAY ALAN SEKULOW                    AMERICAN CENTER FOR LAW & JUSTICE
   *Attorney-in-Charge*              201 Maryland Ave., NE
   DC Bar No. 496335                  Washington, DC 20002
DAVID FRENCH*                        Phone: (202) 546-8890
JORDAN SEKULOW*                      Fax: (202) 546-9309
TIFFANY BARRANS*
MILES TERRY*                         * Not admitted in this jurisdiction
JOSEPH WILLIAMS*

                               *Attorneys for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2014, I electronically filed the foregoing with the Clerk of the Court using the court's CM/ECF system which sent notification of such filing to the following counsel of record for Plaintiffs, who are registered users of the CM/ECF system:

Andrew Stephen Oldham
Texas Attorney General's Office
PO Box 12548 (MC: 059)
Austin, TX 78711-2548
512-936-1862
andy.oldham@texasattorneygeneral.gov

Arthur D'Andrea
Office of the Attorney General
209 W 14th St
7th Fl
Austin, TX 78701
512-936-2868
arthur.dandrea@texasattorneygeneral.gov

Jonathan F. Mitchell
Office of the Texas Attorney General
209 West 14th St (MC 059)
7th Floor
Austin, TX 78701
512-936-1695
jonathan.mitchell@texasattorneygeneral.gov

Joseph C Chapelle
Barnes & Thornburg LLP
11 South Meridian St
Indianapolis, IN 46204
317-231-7209
joe.chapelle@btlaw.com

Peter J Rusthoven
Barnes & Thornburg LLP
11 South Meridian St
Indianapolis, IN 46204
317-231-7299
Email: peter.rusthoven@btlaw.com

Daniel P Lennington
Wisconsin Department of Justice
17 West Main St
Madison, WI 53707
608-267-8901
lenningtondp@doj.state.wi.us

Eric Murphy
Ohio Attorney General Mike DeWine's
Office
30 E. Broad Street, 17th Floor
Columbus, OH 43215

and an e-mail copy, as was approved for service by counsel, and a  hard copy, via Federal Express next day delivery, to the following counsel for Defendants:

Kyle Freeny
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 7126
Washington D.C. 20001
Kyle.Freeny@usdoj.gov

*/s/* Jay Alan Sekulow

JAY ALAN SEKULOW
   *Attorney-in-Charge*
  DC Bar No. 496335
AMERICAN CENTER FOR
  LAW & JUSTICE
201 Maryland Ave., N.E.
Washington, D.C. 20002
Phone: (202) 546-8890
Fax: (202) 546-9309
sekulow@aclj.org