EXHIBIT 17

*Office of the Principal Legal Advisor*

**U.S. Department of Homeland Security**
425 I Street, NW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

October 24, 2005

MEMORANDUM FOR:   All OPLA Chief Counsel

FROM:                         William J. Howard
                                    Principal Legal Advisor

SUBJECT:                   Prosecutorial Discretion

As you know, when Congress abolished the Immigration and Naturalization Service
and divided its functions among U.S. Immigration and Customs Enforcement (ICE),
U.S. Customs and Border Protection (CBP), and U.S. Citizenship and Immigration
Services (CIS), the Office of the Principal Legal Advisor (OPLA) was given exclusive
authority to prosecute all removal proceedings. *See* Homeland Security Act of 2002,
Pub. L. No. 107-296, § 442(c), 116 Stat. 2135, 2194 (2002) ("the legal advisor * * *
shall represent the bureau in all exclusion, deportation, and removal proceedings before
the Executive Office for Immigration Review"). Complicating matters for OPLA is
that our cases come to us from CBP, CIS, and ICE, since all three bureaus are
authorized to issue Notices to Appear (NTAs).

OPLA is handling about 300,000 cases in the immigration courts, 42,000 appeals before
the Board of Immigration Appeals (BIA or Board), and 12,000 motions to reopen each
year. Our circumstances in litigating these cases differ in a major respect from our
predecessor, the INS's Office of General Counsel. Gone are the days when INS district
counsels, having chosen an attorney-client model that required client consultation
before INS trial attorneys could exercise prosecutorial discretion, could simply walk
down the hall to an INS district director, immigration agent, adjudicator, or border
patrol officer to obtain the client's permission to proceed with that exercise. Now
NTA-issuing clients or stakeholders might be in different agencies, in different
buildings, and in different cities from our own.

Since the NTA-issuing authorities are no longer all under the same roof, adhering to
INS OGC's attorney-client model would minimize our efficiency. This is particularly
so since we are litigating our hundreds of thousands of cases per year with only 600 or
so attorneys; that our case preparation time is extremely limited, averaging about 20
minutes a case; that our caseload will increase since Congress is now providing more
resources for border and interior immigration enforcement; that many of the cases that
come to us from NTA-issuers lack supporting evidence like conviction documents; that
we must prioritize our cases to allow us to place greatest emphasis on our national
security and criminal alien dockets; that we have growing collateral duties such as

All OPLA Chief Counsel
Page 2 of 9

assisting the Department of Justice with federal court litigation; that in many instances we lack sufficient staff to adequately brief Board appeals or oppositions to motions to reopen; and that the opportunities to exercise prosecutorial discretion arise at many different points in the removal process.

To elaborate on this last point, the universe of opportunities to exercise prosecutorial discretion is large. Those opportunities arise in the pre-filing stage, when, for example, we can advise clients who consult us whether or not to file NTAs or what charges and evidence to base them on. They arise in the course of litigating the NTA in immigration court, when we may want, among other things, to move to dismiss a case as legally insufficient, to amend the NTA, to decide not to oppose a grant of relief, to join in a motion to reopen, or to stipulate to the admission of evidence. They arise after the immigration judge has entered an order, when we must decide whether to appeal all or part of the decision. Or they may arise in the context of DRO's decision to detain aliens, when we must work closely with DRO in connection with defending that decision in the administrative or federal courts. In the 50-plus immigration courtrooms across the United States in which we litigate, OPLA's trial attorneys continually face these and other prosecutorial discretion questions. Litigating with maximum efficiency requires that we exercise careful yet quick judgment on questions involving prosecutorial discretion. This will require that OPLA's trial attorneys become very familiar with the principles in this memorandum and how to apply them.

Further giving rise to the need for this guidance is the extraordinary volume of immigration cases that is now reaching the United States Courts of Appeals. Since 2001, federal court immigration cases have tripled. That year, there were 5,435 federal court cases. Four years later, in fiscal year 2004, that number had risen to 14,699 federal court cases. Fiscal year 2005 federal court immigration cases will approximate 15,000. The lion's share of these cases consists of petitions for review in the United States Courts of Appeal. Those petitions are now overwhelming the Department of Justice's Office of Immigration Litigation, with the result that the Department of Justice has shifted responsibility to brief as many as 2,000 of these appellate cases to other Departmental components and to the U.S. Attorneys' Offices. This, as you know, has brought you into greater contact with Assistant U.S. Attorneys who are turning to you for assistance in remanding some of these cases. This memorandum is also intended to lessen the number of such remand requests, since it provides your office with guidance to assist you in eliminating cases that would later merit a remand.

Given the complexity of immigration law, a complexity that federal courts at all levels routinely acknowledge in published decisions, your expert assistance to the U.S. Attorneys is critical.[1] It is all the more important because the decision whether to

---

[1]   As you know, if and when your resources permit it, I encourage you to speak with your respective United States Attorneys' Offices about having those Offices designate Special Assistant U.S. Attorneys from OPLA's ranks to handle both civil and criminal federal court immigration litigation. The U.S.

All OPLA Chief Counsel
Page 3 of 9

proceed with litigating a case in the federal courts must be gauged for reasonableness,
lest, in losing the case, the courts award attorneys' fees against the government pursuant
to the Equal Access to Justice Act, 28 U.S.C. 2412. In the overall scheme of litigating
the removal of aliens at both the administrative and federal court level, litigation that
often takes years to complete, it is important that we all apply sound principles of
prosecutorial discretion, uniformly throughout our offices and in all of our cases, to
ensure that the cases we litigate on behalf of the United States, whether at the
administrative level or in the federal courts, are truly worth litigating.

* * * * * * * * * *

With this background in mind, I am directing that all OPLA attorneys apply the
following principles of prosecutorial discretion:

**1) Prosecutorial Discretion Prior to or in Lieu of NTA Issuance**:

In the absence of authority to cancel NTAs, we should engage in client liaison with
CBP, CIS (and ICE) via, or in conjunction with, CIS/CBP attorneys on the issuance of
NTAs. We should attempt to discourage issuance of NTAs where there are other
options available such as administrative removal, crewman removal, expedited removal
or reinstatement, clear eligibility for an immigration benefit that can be obtained outside
of immigration court, or where the desired result is other than a removal order.

It is not wise or efficient to place an alien into proceedings where the intent is to allow
that person to remain unless, where compelling reasons exist, a stayed removal order
might yield enhanced law enforcement cooperation. See Attachment A (Memorandum
from Wesley Lee, ICE Acting Director, Office of Detention and Removal, Alien
Witnesses and Informants Pending Removal (May 18, 2005)); see also Attachment B
(Detention and Removal Officer's Field Manual, Subchapters 20.7 and 20.8, for further
explanation on the criteria and procedures for stays of removal and deferred action).

Examples:

- **Immediate Relative of Service Person**- If an alien is an immediate relative of a
military service member, a favorable exercise of discretion, including not issuing an
NTA, should be a prime consideration. Military service includes current or former
members of the Armed Forces, including: the United States Army, Air Force, Navy,
Marine Corps, Coast Guard, or National Guard, as well as service in the Philippine
Scouts. OPLA counsel should analyze possible eligibility for citizenship under

---

Attorneys' Offices will benefit greatly from OPLA SAUSAs, especially given the immigration law
expertise that resides in each of your Offices, the immigration law's great complexity, and the extent to
which the USAOs are now overburdened by federal immigration litigation.

sections 328 and 329.  See Attachment C (Memorandum from Marcy M. Forman, Director, Office of Investigations, Issuance of Notices to Appeal, Administrative Orders of Removal, or Reinstatement of a Final Removal Order on Aliens with United States Military Service (June 21, 2004)).

- **Clearly Approvable I-130/I-485**-  Where an alien is the potential beneficiary of a clearly approvable I-130/I-485 and there are no serious adverse factors that otherwise justify expulsion, allowing the alien the opportunity to legalize his or her status through a CIS-adjudicated adjustment application can be a cost-efficient option that conserves immigration court time and benefits someone who can be expected to become a lawful permanent resident of the United States.  See Attachment D (Memorandum from William J. Howard, OPLA Principal Legal Advisor, Exercising Prosecutorial Discretion to Dismiss Adjustment Cases (October 6, 2005)).

- **Administrative Voluntary Departure**- We may be consulted in a case where administrative voluntary departure is being considered. Where an alien is eligible for voluntary departure and likely to depart, OPLA attorneys are encouraged to facilitate the grant of administrative voluntary departure or voluntary departure under safeguards. This may include continuing detention if that is the likely end result even should the case go to the Immigration Court.

- **NSEERS Failed to Register**- Where an alien subject to NSEERS registration failed to timely register but is otherwise in status and has no criminal record, he should not be placed in proceedings if he has a reasonable excuse for his failure. Reasonably excusable failure to register includes the alien's hospitalization, admission into a nursing home or extended care facility (where mobility is severely limited); or where the alien is simply unaware of the registration requirements. See Attachment E (Memorandum from Victor Cerda, OPLA Acting Principal Legal Advisor, Changes to the National Security Entry Exit Registration System (NSEERS)(January 8, 2004)).

- **Sympathetic Humanitarian Factors**- Deferred action should be considered when the situation involves sympathetic humanitarian circumstances that rise to such a level as to cry for an exercise of prosecutorial discretion.  Examples of this include where the alien has a citizen child with a serious medical condition or disability or where the alien or a close family member is undergoing treatment for a potentially life threatening disease.  DHS has the most prosecutorial discretion at this stage of the process.

**2) Prosecutorial Discretion after the Notice to Appear has issued, but before the Notice to Appear has been filed:**

We have an additional opportunity to appropriately resolve a case prior to expending court resources when an NTA has been issued but not yet filed with the immigration court.  This would be an appropriate action in any of the situations

identified in #1. Other situations may also arise where the reasonable and rational decision is not to prosecute the case.

     Example:

- **U or T visas**- Where a "U" or "T" visa application has been submitted, it may be appropriate not to file an NTA until a decision is made on such an application. In the event that the application is denied then proceedings would be appropriate.

## 3) Prosecutorial Discretion after NTA Issuance and Filing:

The filing of an NTA with the Immigration Court does not foreclose further prosecutorial discretion by OPLA Counsel to settle a matter. There may be ample justification to move the court to terminate the case and to thereafter cancel the NTA as improvidently issued or due to a change in circumstances such that continuation is no longer in the government interest. [2] We have regulatory authority to dismiss proceedings. Dismissal is by regulation without prejudice. See 8 CFR §§ 239.2(c), 1239.2(c). In addition, there are numerous opportunities that OPLA attorneys have to resolve a case in the immigration court. These routinely include not opposing relief, waiving appeal or making agreements that narrow issues, or stipulations to the admissibility of evidence. There are other situations where such action should also be considered for purposes of judicial economy, efficiency of process or to promote justice.

     Examples:

---

[2] Unfortunately, DHS's regulations, at 8 C.F.R. 239.1, do not include OPLA's attorneys among the 38 categories of persons given authority there to issue NTAs and thus to cancel NTAs. That being said, when an OPLA attorney encounters an NTA that lacks merit or evidence, he or she should apprise the issuing entity of the deficiency and ask that the entity cure the deficiency as a condition of OPLA's going forward with the case. If the NTA has already been filed with the immigration court, the OPLA attorney should attempt to correct it by filing a form I-261, or, if that will not correct the problem, should move to dismiss proceedings without prejudice. We must be sensitive, particularly given our need to prioritize our national security and criminal alien cases, to whether prosecuting a particular case has little law enforcement value to the cost and time required. Although we lack the authority to sua sponte cancel NTAs, we can move to dismiss proceedings for the many reasons outlined in 8 CFR § 239.2(a) and 8 CFR § 1239.2(c). Moreover, since OPLA attorneys do not have independent authority to grant deferred action status, stays of removal, parole, etc., once we have concluded that an alien should not be subjected to removal, we must still engage the client entity to "defer" the action, issue the stay or initiate administrative removal.

- **Relief Otherwise Available**- We should consider moving to dismiss proceedings without prejudice where it appears in the discretion of the OPLA attorney that relief in the form of adjustment of status appears clearly approvable based on an approvable I-130 or I-140 and appropriate for adjudication by CIS. See October 6, 2005 Memorandum from Principal Legal Advisor Bill Howard, supra. Such action may also be appropriate in the special rule cancellation NACARA context. We should also consider remanding a case to permit an alien to pursue naturalization.[3] This allows the alien to pursue the matter with CIS, the DHS entity with the principal responsibility for adjudication of immigration benefits, rather than to take time from the overburdened immigration court dockets that could be expended on removal issues.

- **Appealing Humanitarian Factors**- Some cases involve sympathetic humanitarian circumstances that rise to such a level as to cry for an exercise of prosecutorial discretion. Examples of this, as noted above, include where the alien has a citizen child with a serious medical condition or disability or where the alien or a close family member is undergoing treatment for a potentially life threatening disease. OPLA attorneys should consider these matters to determine whether an alternative disposition is possible and appropriate. Proceedings can be reinstituted when the situation changes. Of course, if the situation is expected to be of relatively short duration, the Chief Counsel Office should balance the benefit to the Government to be obtained by terminating the proceedings as opposed to administratively closing proceedings or asking DRO to stay removal after entry of an order.

- **Law Enforcement Assets/CIs**- There are often situations where federal, State or local law enforcement entities desire to have an alien remain in the United States for a period of time to assist with investigation or to testify at trial. Moving to dismiss a case to permit a grant of deferred action may be an appropriate result in these circumstances. Some offices may prefer to administratively close these cases, which gives the alien the benefit of remaining and law enforcement the option of calendaring proceedings at any time. This may result in more control by law enforcement and enhanced cooperation by the alien. A third option is a stay.

4) **Post-Hearing Actions**:

Post-hearing actions often involve a great deal of discretion. This includes a decision to file an appeal, what issues to appeal, how to respond to an alien's appeal, whether to seek a stay of a decision or whether to join a motion to reopen. OPLA

---

[3]  Once in proceedings, this typically will occur only where the alien has shown prima facie eligibility for naturalization and that his or her case involves exceptionally appealing or humanitarian factors. 8 CFR §1239.1(f). It is improper for an immigration judge to terminate proceedings absent an affirmative communication from DHS that the alien would be eligible for naturalization but for the pendency of the deportation proceeding. Matter of Cruz, 15 I&N Dec. 236 (BIA 1975); see Nolan v. Holmes, 334 F.3d 189 (2d Cir. 2003) (Second Circuit upholds BIA's reliance on Matter of Cruz when petitioner failed to establish prima facie eligibility.).

attorneys are also responsible for replying to motions to reopen and motions to reconsider. The interests of judicial economy and fairness should guide your actions in handling these matters.

Examples:

• **Remanding to an Immigration Judge or Withdrawing Appeals**- Where the appeal brief filed on behalf of the alien respondent is persuasive, it may be appropriate for an OPLA attorney to join in that position to the Board, to agree to remand the case back to the immigration court, or to withdraw a government appeal and allow the decision to become final.

> • **Joining in Untimely Motions to Reopen**- Where a motion to reopen for adjustment of status or cancellation of removal is filed on behalf of an alien with substantial equities, no serious criminal or immigration violations, and who is legally eligible to be granted that relief except that the motion is beyond the 90-day limitation contained in 8 C.F.R. § 1003.23, strongly consider exercising prosecutorial discretion and join in this motion to reopen to permit the alien to pursue such relief to the immigration court.

> • **Federal Court Remands to the BIA**- Cases filed in the federal courts present challenging situations. In a habeas case, be very careful to assess the reasonableness of the government's detention decision and to consult with our clients at DRO. Where there are potential litigation pitfalls or unusually sympathetic fact circumstances and where the BIA has the authority to fashion a remedy, you may want to consider remanding the case to the BIA. Attachments H and I provide broad guidance on these matters. Bring concerns to the attention of the Office of the United States Attorney or the Office of Immigration Litigation, depending upon which entity has responsibility over the litigation. See generally Attachment F (Memorandum from OPLA Appellate Counsel, U.S. Attorney Remand Recommendations (rev. May 10, 2005)); see also Attachment G (Memorandum from Thomas W. Hussey, Director, Office of Immigration Litigation, U.S. Department of Justice, Remand of Immigration Cases (Dec. 8, 2004)).

> • **In absentia orders.** Reviewing courts have been very critical of in absentia orders that, for such things as appearing late for court, deprive aliens of a full hearing and the ability to pursue relief from removal. This is especially true where court is still in session and there does not seem to be any prejudice to either holding or rescheduling the hearing for later that day. These kinds of decisions, while they may be technically correct, undermine respect for the fairness of the removal process and cause courts to find reasons to set them aside. These decisions can create adverse precedent in the federal courts as well as EAJA liability. OPLA counsel should be mindful of this and, if possible, show a measured degree of flexibility, but

only if convinced that the alien or his or her counsel is not abusing the removal court process.

5) **Final Orders- Stays and Motions to Reopen/Reconsider**:

Attorney discretion doesn't cease after a final order. We may be consulted on whether a stay of removal should be granted. See Attachment B (Subchapter 20.7). In addition, circumstances may develop whether the proper and just course of action would be to move to reopen the proceeding for purposes of terminating the NTA.

Examples:

• **Ineffective Assistance**- An OPLA attorney is presented with a situation where an alien was deprived of an opportunity to pursue relief, due to incompetent counsel, where a grant of such relief could reasonably be anticipated. It would be appropriate, assuming compliance with Matter of Lozada, to join in or not oppose motions to reconsider to allow the relief applications to be filed.

• **Witnesses Needed, Recommend a Stay**- State law enforcement authorities need an alien as a witness in a major criminal case. The alien has a final order and will be removed from the United States before trial can take place. OPLA counsel may recommend that a stay of removal be granted and this alien be released on an order of supervision.

\* \* \* \* \* \* \* \* \* \*

Prosecutorial discretion is a very significant tool that sometimes enables you to deal with the difficult, complex and contradictory provisions of the immigration laws and cases involving human suffering and hardship. It is clearly DHS policy that national security violators, human rights abusers, spies, traffickers both in narcotics and people, sexual predators and other criminals are removal priorities. It is wise to remember that cases that do not fall within these categories sometimes require that we balance the cost of an action versus the value of the result. Our reasoned determination in making prosecutorial discretion decisions can be a significant benefit to the efficiency and fairness of the removal process.

**Official Use Disclaimer**:

This memorandum is protected by the Attorney/Client and Attorney Work product privileges and is for Official Use Only. This memorandum is intended solely to provide legal advice to the Office of the Chief Counsels (OCC) and their staffs regarding the appropriate and lawful exercise of prosecutorial discretion, which will lead to the efficient management of resources. It is not intended to, does not, and may not be relied upon to create or confer any right(s) or benefit(s), substantive or procedural, enforceable at law by any individual or other party in

All OPLA Chief Counsel
Page 9 of 9

removal proceedings, in litigation with the United States, or in any other form or manner. Discretionary decisions of the OCC regarding the exercise of prosecutorial discretion under this memorandum are final and not subject to legal review or recourse. Finally this internal guidance does not have the force of law, or of a Department of Homeland Security Directive.