EXHIBIT 22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

AUG 9 1995

MICHAEL N. MILBY, Clerk
By Deputy Clerk

United States District Court
Southern District of Texas
FILED

AUG 7 1995

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, ET AL. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | Civil Action B-94-228 |
| | § | |
| THE UNITED STATES OF AMERICA, ET AL., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants' Motion to Dismiss and Amended Motion to Dismiss the Plaintiffs' Original Complaint. The Defendants' Motion is predicated on two grounds: First, that the Plaintiffs' cause of action is not justiciable; and second, that the specific counts fail to state a claim upon which relief can be granted.

The Plaintiffs' Complaint seeks to assign to the federal government responsibility for the financial consequences of illegal immigration.

On August 3, 1994, the following Plaintiffs filed their Original Complaint:

(1) The State of Texas, on its own behalf and on behalf of all Texans as *parens patriae*;

(2) Ann Richards, Governor of the State of Texas;

(3) El Paso Independent School District and La Joya Independent School District on their own behalf and on behalf of all independent school districts in Texas;

(4) Harris County Hospital District, Dallas County Hospital District, and Bexar County Hospital District on their own behalf and as class representatives of all hospital districts in

Hospital District on their own behalf and as class representatives of all hospital districts in Texas;

(5) Harris County, Dallas County, and Hidalgo County on their own behalf and as class representatives of all counties in Texas; and

(6) The City of Odessa on its own behalf and as class representatives of all municipalities in Texas.

A hearing on all pending motions was conducted December 14, 1994, wherein all parties appeared. After the Court issued a preliminary ruling from the bench indicating its inclination to grant the Defendants' Motion to Dismiss, the Court invited the State of Texas and the Defendants to file additional briefs if they so chose. Later, upon the request of Plaintiffs' counsel, the deadline for additional briefs was extended to December 31, 1994.

After consideration of the parties' briefs and the proffered evidence, the Court is of the opinion that the Defendants' Motion to Dismiss should be granted.

## STANDARD OF REVIEW

The Defendants seek dismissal of the entire complaint under Federal Rule of Civil Procedure 12(b)(6) for the Plaintiffs' failure to state a claim upon which relief may be granted. A plaintiff must, pursuant to Rule 8(a), present "a short and plain statement of the claim showing that the pleader is entitled to relief." In deciding whether to dismiss the Plaintiffs' cause of action, the Court must take all the facts alleged by the Plaintiffs as true and judge such facts in a light most favorable to the Plaintiffs.

## THE PLAINTIFFS' COMPLAINT

The crux of the Plaintiffs' Complaint goes to the Federal Government's alleged failure

2

313

to prevent illegal immigration into the State of Texas, forcing Texas to allocate state funds to pay the associated costs for health and human services, criminal justice, and education.

In Count I, the Plaintiffs argue that the Naturalization Clause of the U.S. Constitution requiring the federal government to "establish an uniform Rule of Naturalization" constitutionally obligates the federal government to pay for the development, implementation, enforcement, and consequences of its immigration policy. Indeed, the Plaintiffs argue, the federal government preempts the field, constitutionally prohibiting Texas from implementing, enforcing or paying for its own immigration policy. According to the Plaintiffs, the alleged failure of the federal government to pay for the financial consequences of the federal immigration policy violates Article I, Section 8, Clause 4 of the U.S. Constitution.

Count II of the Complaint also arises from Article I, Section 8, Clause 4. Using the same reasoning as in Count I, the Plaintiffs assert that the Defendants have failed in their constitutional duty to control illegal immigration and safeguard the nation's borders. Due to this failure, the Plaintiffs have been forced to pay the financial consequences of the presence of illegal immigrants in Texas.

Count III asserts a violation of the Tenth Amendment to the Constitution. The Plaintiffs reason that, by failing to pay for the financial consequences of illegal immigration, the Defendants have forced the state and local agencies to provide and finance services for illegal immigrants. By such force, the Plaintiffs claim that the Federal Defendants have commandeered these state and local agencies, stripping them of their discretion.

Count IV and V state violations of the Guaranty Clause of the U.S. Constitution. The Plaintiffs reason that the political accountability of elected official to the citizenry has been

In the benchmark case addressing the political question doctrine, the Supreme Court stated that the "nonjusticiability of a political question is primarily a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 210 (1962). In *Baker*, the Supreme Court upheld the justiciability of legislative reapportionment in Tennessee. In reaching its conclusion that the political question doctrine should not be invoked to bar judicial consideration, the Supreme Court fashioned the following analysis:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question. *Id.* at 217.

Unquestionably, immigration and naturalization issues have a textually demonstrable commitment to Congress pursuant to Article I, Section 8, Clause 4 of the U.S. Constitution.

The dominant considerations in determining whether an issue is a political question are "the appropriateness under our system of government of attributing finality to the action of the political departments and also the lack of satisfactory criteria for a judicial determination." *Baker v. Carr*, 369 U.S. 186, 210, 82 S.Ct. 691, 706 (1962), citing *Coleman v. Miller*, 307 U.S. 433, 454-455.

The Court in this case finds no manageable standard by which the Court may fairly judge the federal immigration policy. In order to find a failure of the federal immigration policy, the Court must evaluate that policy. However, it is not possible for the Court to determine at what increment the complex federal immigration policy violates the Constitution.

Only in a political forum can the myriad causes of illegal immigration and its costs and benefits be laid fully on the table. This Court has only before it the limited issue of the State's entitlement to restitution.

The Supreme Court reasoned in *Nixon v. United States*, ___ U.S. ___, 113 S.Ct. 732, 735 (1993), that the "lack of judicially manageable standards may strengthen the conclusion that there is a textually demonstrable commitment to a coordinate branch." For the Court to fashion a remedy taking the multiplicity of relevant factors and solutions into account is unfeasible and unjustly expedient. Clearly, the problem of illegal immigration into the United States cries out for a political solution in a legislative arena. Indeed, it defies a judicial solution.

Thus, the Court shall grant the Defendants' Motion to Dismiss because the Plaintiffs' Complaint is nonjusticiable.

### B. Plaintiffs Lack Standing

In *Lujan v. Defenders of Wildlife*, ___ U.S. ___, 112 S.Ct. 2130, 2136 (1992), the Court dictated three requirements for standing:

> (1) The plaintiff must have suffered an "injury in fact"--an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent; not conjectural or hypothetical.
> (2) There must be a causal connection between the alleged injury and the defendant's conduct. The injury must be fairly traceable to the defendant's actions and not the result of the independent action of some third party not before the court.
> (3) It must be likely--not speculative--that the injury will be redressed by a favorable decision.

While the Texas Plaintiffs' expenditures on illegal immigrants may constitute an injury in fact that might be redressed through a favorable judicial decision, the Court finds no causal

connection between their injury and the Defendants' conduct. As the Defendants argue in their Motion to Dismiss, the Plaintiffs' injury stems from the "conscious actions of aliens to enter Texas illegally." The Plaintiffs respond that the Defendants' denial of causation is belied by the Defendants' enormous expenditures toward prevention of illegal immigration. The Plaintiffs cannot understand why the Defendants expend such funds if there is no cause and effect relationship between the Defendants' immigration policy and the existence or level of immigration.

However, the Plaintiffs' argument is facile. No one can seriously argue that the Defendants' policy actually causes or encourages persons to immigrate illegally into the state of Texas. Rather, the federal immigration policy is a preventative *response* to illegal immigration--not a stimulus. The Plaintiffs' injury cannot be fairly traced to the Defendants' preventative efforts.

Therefore, the Court shall grant the Defendants' Motion to Dismiss because the Plaintiffs lack standing.

### C. Sovereign Immunity

In addition to monetary relief, the Plaintiffs have requested equitable and declaratory relief as well. Thus, even if sovereign immunity bars the Plaintiffs' claims for monetary relief, the Court must still decide whether the Plaintiffs are entitled to the equitable and declaratory relief requested in the specific Counts. Therefore, the Court will not rule on the issue of sovereign immunity without first determining whether the Plaintiffs are otherwise entitled to relief.

## II. SPECIFIC COUNTS OF PLAINTIFFS' CAUSE OF ACTION:

US Courts   Fax:956-548-2598   Oct 12 2012 02:25pm P012/020
Case 1:14-cv-00254   Document 38-22   Filed on 12/24/14 in TXSD   Page 8 of 16

A. Violation of Article I, Section 8 of the Constitution

The Defendants seek dismissal of the Plaintiffs' claims sounding in the Naturalization Clause. In Counts I and II, the Plaintiffs argue that Article I, Section 8, Clause 4 of the Constitution grants exclusive jurisdiction of immigration policy and enforcement to the federal government. From that premise, the Plaintiffs reason that the federal government has the constitutional obligation to pay for the development, implementation, enforcement and consequences of its immigration policy. Arguing that the federal government has failed to meet this constitutional obligation, thereby creating financial consequences for the Texas Plaintiffs, the Plaintiffs conclude that the Defendants have violated the Naturalization Clause of the Constitution.

The Plaintiffs expand this reasoning in their Response to the Defendants' Motion to Dismiss. In that pleading, the Plaintiffs assert that responsibility to pay the costs of illegal immigration is "inextricably linked with, and the necessary counterpart to, 'authority'" over immigration and naturalization. However, this argument is a vague truism without legal substance.

Certainly, basic virtue demands that responsibility must accompany authority. But, this hardly leads to the conclusion that the federal government's exclusive authority over immigration and naturalization implies a duty to pay for the remotely incidental consequences of that authority. In many respects, the Plaintiffs' cause of action amounts to a series of unsupported assertions based on the erroneous proposition that the Naturalization Clause mandates the Federal Government to pay for the financial consequences of its policy, regardless of how remotely linked those costs are to that policy.

8

318

Despite the Texas Plaintiffs' contrary protestations, their argument indeed depends on the existence of a causal link between the federal government's immigration policy and its financial consequences on Texas. For, how can the Defendants be held financially accountable for their policy if it is not shown that their policy causes financial consequences? Further, while the Plaintiffs deny that they are asking the Court to evaluate the Federal Government's immigration enforcement efforts, such an evaluation is an essential prerequisite to a judicial determination that the Defendants have violated a duty under the Naturalization Clause.

To hold the federal government accountable for the financial consequences of illegal immigration likens to blaming the crowing rooster for the rising of the sun. This is perhaps the greatest weakness in the Plaintiffs' cause of action. They have failed to establish a true causal connection between the costs of illegal immigration and the federal immigration policy. So long as our relatively prosperous and stable nation shares the planet with countries stricken by civil unrest, social disorder and poverty, the influx of illegal immigrants into the United States is inevitable.

As the Defendants aptly note, the Plaintiffs' complaint arises from their dissatisfaction with the federal government's allocation of resources and execution of discretionary policies. For example, pursuant to 8 U.S.C. §1103, the Attorney General is authorized to perform such acts as she deems necessary for carrying out her statutory authority. Moreover, §1103 states that the Attorney General "shall have the power and duty to control and guard the boundaries and borders of the United States against the illegal entry of aliens and shall, in his discretion, appoint for that purpose such number of employees of the [Immigration and Naturalization]

Service as to him shall appear necessary and proper."

Clearly, the statute commits the decisionmaking to the discretion of the Attorney General. Such a statutory delegation of Congressional authority is in keeping with the Constitution's Naturalization Clause mandating Congress to "establish an uniform Rule of Naturalization." Thus, there exists a textually demonstrable commitment of the issue to a coordinate political department.

Such a commitment was demonstrated by the Supreme Court when it held that an agency's refusal to take enforcement action was not reviewable. *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649 (1985). There, the Food and Drug Administration's refused to take enforcement actions under the Federal Food, Drug, and Cosmetic Act with respect to drugs used for lethal injections to carry out the death penalty. Nevertheless, the Court warned that an agency decision is only "presumptively unreviewable; the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 832-833, 105 S.Ct. at 1656.

The *Chaney* Court also noted that in cases where an agency's inaction is so extreme as to amount to an abdication of its statutory responsibilities, the statute conferring authority on the agency might indicate that such decisions were not committed to agency discretion. *Id.* at n. 4. But in the instant case, there is no abdication.

Clearly, the federal government proactively pursues a policy addressing illegal immigration, though by no means has such action equalled the demands created by the throngs of immigrants crossing our borders. Thus, while the Plaintiffs cannot complain that the Defendants are doing nothing to curb illegal immigration, it can be argued fairly that the

10

13

320

federal government is failing to do enough. But the Court refuses to find that this incremental failure amounts to a failure of constitutional proportions, particularly in light of inevitably limited resources, the numerous causes stimulating illegal immigration, as well as the substantial efforts already in place to address illegal immigration.

Indeed, courts are loathe to micromanage an agency's task. In *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851 (1975), the Supreme Court found that the Labor-Management Reporting and Disclosure Act's (LMRDA) language supplied sufficient standards to rebut the presumption of unreviewability. The Court found no merit to the Secretary of Labor's contention that his decisions were unreviewable because the Court found that the statute at issue withdrew discretion from the Secretary and provided mandatory guidelines for his enforcement of the statute. *Id.* at 567, n. 7, 95 S.Ct. 1858. Adopting the lower court's analysis, the Court found that the underlying statute limited the Secretary's discretion by clearly defining the factors he must consider to determine whether a statutory violation exists. *Id.* (citing *Bachowski v. Brennan*, 502 F.2d 79, 87 (3d Cir. 1974)).

Nevertheless, the *Heckler* Court found its prior decision in *Dunlop* to be consistent with the general presumption of unreviewability of decisions not to enforce because the LMRDA, unlike the Immigration and Naturalization Act, clearly withdrew discretion from the agency and provided guidelines for enforcement. *Heckler*, 470 U.S. at 834, 105 S.Ct. at 1657. More importantly for our purposes, the Court stated:

> The danger that agencies may not carry out their delegated powers with sufficient vigor does not necessarily lead to the conclusion that courts are the most appropriate body to police this aspect of their performance. That decision is in the first instance for Congress. *Id.*

The Texas Plaintiffs' claims similarly go to the "vigor" with which the Federal

11

14

321

Defendants exercise their power over immigration. However, where the complaint goes to the degree of enforcement and not to complete abdication, this Court will not review the federal government's enforcement decisions relating to immigration and naturalization absent a clear showing of a constitutional violation.

Therefore, the Court shall dismiss Counts I and II of the Plaintiffs' Complaint.

### B. Count III - Violation of the Tenth Amendment to the Constitution

In Count III of their Complaint, the Plaintiffs argue that the actions of the Federal Defendants have diminished the ability of the State of Texas and her political subdivisions to govern themselves in violation of the Tenth Amendment. The Plaintiffs claim that the Defendants have "commandeered" state and local agencies which provide the necessary services to undocumented aliens by their failure to pay for the financial consequences of the federal immigration policy. The Plaintiffs reason in their Complaint that the federal policy has "coerced the Texas Plaintiffs into delivering social, health, educational, and correctional services of the large number of undocumented immigrants residing in Texas as a result of Federal Immigration Policy."

In their response, the Defendants point to the dichotomy established in *New York v. United States*, ___ U.S. ___, 112 S.Ct. 2408 (1992), wherein the Supreme Court distinguished Congressional actions that directly compel State conduct from those actions that only command State conduct indirectly. In that case, the Supreme Court found that a provision in the Low-Level Radioactive Waste Policy Act requiring states to take title of their undisposed waste was unconstitutional in its coercive nature.

The Plaintiffs' reasoning based on *New York* fails because there is no explicit mandate

and no coercion from the federal government in the instant case. Very simply, the Plaintiffs' predicament is the creation of third parties. Thus, while *New York* and its heritage basically prohibit the federal government from compelling states to enact a legislative program, no such force exists in this case. As the Defendants' aptly note in their Motion to Dismiss, the Plaintiffs can point to no statute, regulation or command of the federal government mandating the provision of public services to undocumented aliens.

In the instant case, unlike *New York*, Congress has developed the immigration policy and has not commanded the State of Texas to adopt specific policies in response to illegal immigration. The Plaintiffs mistakenly attribute their voluntary response to illegal immigration--a response compelled by extrinsic circumstances--to some coercive command from the federal government. The cost of illegal immigration borne on the Texas Plaintiffs results not from the Defendants' actions, but from the Plaintiffs' own decision to address the issues raised by illegal immigrants' presence in Texas.

Accordingly, the Court shall dismiss the Plaintiffs' Tenth Amendment claim.

C. Counts IV and V - Violation of the Guarantee Clause

Counts IV and V of the Plaintiffs' Complaint are basically the same. Both Counts enunciate the Plaintiffs' argument that the Defendants' actions violate Article IV, Section 4 of the United States Constitution guaranteeing to every state a republican form of government. The Plaintiffs reason that the failure of the federal government to assume financial responsibility for its immigration policy has foisted a financial burden upon the Plaintiffs, thereby diminishing the power of Texans to determine their own spending priorities.

The Texas Plaintiffs claim that they have no choice but to apprehend, prosecute and

incarcerate undocumented aliens who commit crimes in Texas. Moreover, the Texas Plaintiffs must provide health, social and educational services to the undocumented population. Such an infringement upon the Plaintiffs' coffers, according to the Plaintiffs' argument, necessarily undermines state officials' ability to respond to voters' demands. As stated in the Plaintiffs' Complaint, this compulsory financial burden has caused "the unilateral severance of political accountability" between Texas voters and their elected officials."

The Defendants respond that the Texas Plaintiffs "have not been required by any statute, regulation or command of defendants to undertake those obligations." Indeed, the Plaintiffs have never alleged that they have been overtly forced by statute or directive to provide services to undocumented immigrants. Instead, the Plaintiffs argue that they have been forced to provide services due to circumstances created by the Defendants.

However, the Court disagrees. The Court remains unconvinced for reasons aforementioned that the Defendants have caused the heavy migration of undocumented immigrants. The State of Texas remains free to allocate state funds and determine state policy pursuant to the wishes of the electorate.

The Court therefore shall dismiss the Plaintiffs' claim under the Guarantee Clause.

**D. Count VI - Violation of the Annexation Guaranty**

In their penultimate claim, the Texas Plaintiffs cite the "Articles of Annexation For Annexing Texas to the United States," codified at 5 U.S. Stat. 797. This Annexation Guaranty was established by a Joint Resolution passed on March 1, 1845. According to the Texas Plaintiffs, the Annexation Guaranty formed a condition precedent to Texas' admission to the Union "as well as a statutory commitment by the United States to protect the state's

14

"Republican Form of Government.'" The Plaintiffs claim that this promise has been violated by the Defendants' alleged interference with the ability of Texas citizens to democratically determine their own spending priorities.

For the reasons given in its discussion of Counts IV and V, the Court disagrees with the Plaintiffs' arguments in this Count and accordingly shall dismiss their claim herein.

### E. Count VII – Administrative Procedures Act

According to the Texas Plaintiffs, the Federal Defendants have failed in their obligation to enforce and effectively administer the immigration laws, as well as in their alleged obligation to pay the costs of illegal immigration, in violation of the Administrative Procedure Act (APA). Such a dereliction of duty, say the Plaintiffs, is arbitrary, capricious and an abuse of discretion.

The Plaintiffs find the Defendants' underlying duty in the Immigration and Naturalization Act, 8 U.S.C. §1103, wherein Congress delegated the administration of the immigration laws to the U.S. Attorney General, who in turn delegated authority to the Immigration and Naturalization Service, 28 C.F.R. §§0.105(a) *et seq.* and 8 C.F.R. §2.1 and §100.2(a). The Plaintiffs argue that Attorney General Janet Reno, and those to whom she has delegated authority over the administration of the immigration laws, have violated the mandate of §1103 which assigns to the Attorney General the "power and duty to control and guard the boundaries and borders of the United States against the illegal entry of immigrants."

The Court does not agree, and shall not so find, that the presence of illegal immigrants in the State of Texas and the costs created by their presence results from any abdication of the Defendants' duty to control illegal immigration. While it is true that an agency action

becomes judicially reviewable where the agency has abdicated its bounden duty, there is no abdication in the instant case. Though all parties desire an improved federal immigration process, any failure to achieve such improvement, and the resulting costs to the State, do not amount to federal abdication. Simply put, the inability of the Defendants to control illegal immigration to the Plaintiffs' satisfaction does not give rise to a claim under the APA. There is neither a refusal by the Defendant to enforce the immigration laws nor a federal policy so extreme as to amount to an abdication of statutory responsibilities. *See Heckler*, 470 U.S. at 833 note 4, 105 S.Ct. at 1656.

Though Congress has expressly assigned to the Attorney General the duty to control illegal immigration, it has left the means for carrying out that duty to her discretion. Even if the Court agreed that the Attorney General was given a nondiscretionary duty to control illegal immigration, the Court still does not find that she has failed to fulfill that duty. While our current immigration enforcement process cannot be labelled a resounding success, neither is it a failure of constitutional proportion.

Accordingly, the Plaintiffs' Administrative Procedures Act claim shall be dismissed.

**THEREFORE**, it is **ORDERED** that the Defendants' Motion To Dismiss shall be **GRANTED** as to all claims within the Plaintiffs' Complaint, and the Plaintiffs' Complaint shall be **DISMISSED** in its entirety for its failure to state a claim upon which relief can be granted.

Done this 7th day of August, 1995, in Brownsville, Texas.

FILEMON B. VELA
UNITED STATES DISTRICT JUDGE