Obtained via FOIA by Judicial Watch, Inc.

**INTERNAL USE ONLY**



**U.S. Citizenship
and Immigration
Services**

*Office of Communications*

# Public Affairs Guidance

## ISSUE
Deferred Action for Childhood Arrivals

## LAST MODIFIED
July 25, 2012

## GUIDANCE
Refer ALL media inquiries (both English and non-English) to the Office of Communications Media Relations Division. Refer all other inquiries to www.uscis.gov.

## PRODUCTS
- Web page: Includes Questions & Answers in English and Spanish (will contain the most up-to-date information)
- DHS Memo: *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children*
- News Release: Secretary Napolitano Announces Deferred Action Process for Young People Who Are Low Enforcement Priorities (Also available in Spanish)
- "Not Yet in Effect" flyer

## BACKGROUND
During the past three years, the Administration has undertaken an unprecedented effort to transform the immigration enforcement system to focus on public safety, border security and the integrity of the immigration system. As DHS focuses its limited enforcement resources on removing people who pose a danger to national security or a risk to public safety, DHS will grant prosecutorial discretion on a case-by-case basis to low priority enforcement cases of childhood arrivals who were brought to this country through no fault of their own.

Secretary Napolitano directed USCIS to establish a clear and efficient process for exercising prosecutorial discretion – deferred action – for people who meet the criteria outlined in her June 15 memorandum.

## TALKING POINTS
- On June 15, Secretary of Homeland Security Janet Napolitano announced that certain young people who were brought to the United States as children will be eligible, on a case-by-case basis, to receive deferred action.

- A grant of deferred action would prevent these young people from immigration proceedings and possible removal from the United States.

- USCIS will implement a process on August 15, 2012 to allow eligible young people to request deferred action and employment authorization.

- Individuals who believe they are eligible should not submit a deferred action request before August 15, 2012 – it will be rejected.

Obtained via FOIA by Judicial Watch, Inc.

- Always be aware of immigration scams. Unauthorized practitioners of immigration law may try to take advantage of you by charging a fee to submit forms to USCIS on your behalf. Visit www.uscis.gov/avoidscams for tips on filing forms, reporting scams and finding accredited legal services. Remember, the Wrong Help Can Hurt!

- USCIS remains committed to upholding the integrity of the immigration system. Individuals requesting deferred action through this process are subject to background checks.

**Implementation Framework** *(Section added July 25, 2012 and subject to modification)*

*General Overview*
- USCIS plans to accept requests for deferred action beginning on Wednesday, August 15, 2012.
- All requesters – those in and out of removal proceedings and those with final orders – will use the same request process.
- Requesters will use a modified form established for this specific purpose.
- Requesters will mail deferred action requests, an application for work authorization, and all applicable fees to the USCIS lockbox.
- The required fees will total $465. Fee waivers are not available.
- The four USCIS Service Centers will review all requests.
- Using a modified form allows USCIS to use its current customer service infrastructure, which includes case status online, text messages, email messages, and the ability to track case status by calling the 1-800 number.
- All requesters must provide biometrics and undergo background checks.

*Outreach/Communications*
- Beginning in July, USCIS District Offices around the country are engaging with community partners about the unauthorized practice of immigration law aspect of the deferred action initiative.
- Beginning in early August, USCIS headquarters and field personnel will hold trainings sessions with stakeholders and congressional staffs to ensure they receive up to date information. (How to apply, what evidence should be submitted, expected time frames, etc.)
- USCIS will continue holding stakeholder sessions after the process takes effect on August 15 to ensure clarity for our customers.
- USCIS will work closely with media, specifically non-English media, to ensure that accurate, timely messages are provided to the public.

*Private funders/community capacity*
- In anticipation of this process, USCIS encourages the community to build both legal and financial capacity to help those in need of services.

Obtained via FOIA by Judicial Watch, Inc.

above criteria and are at least 15 years old, for a period of two years, subject to renewal, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.

- The USCIS process shall also be available to individuals subject to a final order of removal regardless of their age.
- USCIS is directed to begin implementing this process within 60 days of the date of this memorandum.

For individuals who are granted deferred action by either ICE or USCIS, USCIS shall accept applications to determine whether these individuals qualify for work authorization during this period of deferred action.

This memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights. It remains for the executive branch, however, to set forth policy for the exercise of discretion within the framework of the existing law. I have done so here.

Janet Napolitano

3

App. 0223

Obtained via FOIA by Judicial Watch, Inc.

**Metaxas, Penny**

| | |
|---|---|
| **From:** | Paoli, James D |
| **Sent:** | Thursday, July 26, 2012 11:04 AM |
| **To:** | Houghton, Timothy J; Cinotti, Brenda; Metaxas, Penny |
| **Subject:** | No Fee Waivers for deffered Action |

(b) (7)(E)

Fee is 465, no waivers!

James D. Paoli, Associate Counsel
Northeast Region
USCIS, DHS
Holtsville, NY
(b) (6)

1

Obtained via FOIA by Judicial Watch, Inc.

If you have been convicted of a felony offense, a significant misdemeanor offense, or three or more other misdemeanor offenses not occurring on the same date and not arising out of the same act, omission, or scheme of misconduct, or are otherwise deemed to pose a threat to national security or public safety, you will not be considered for deferred action under this process.

**What is the difference between "significant misdemeanor", "non-significant misdemeanor", and "felony"?**

| Felony | Significant Misdemeanor | Non-significant Misdemeanor |
|---|---|---|
| A felony is a federal, state or local criminal offense punishable by imprisonment for a term exceeding one year. | A significant misdemeanor is a misdemeanor as defined by federal law (specifically, one for which the maximum term of imprisonment authorized is one year or less but greater than five days) and: <br><br> 1. Regardless of the sentence imposed, is an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or, <br><br> 2. If not an offense listed above, is one for which the individual was sentenced to time in custody of more than 90 days. The sentence must involve time to be served in custody, and therefore does not include a suspended sentence. | A crime is considered a non-significant misdemeanor (maximum term of imprisonment is one year or less but greater than five days) if it: <br><br> 1. Is not an offense of domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; and <br><br> 2. Is one for which the individual was sentenced to time in custody of 90 days or less. |

A minor traffic offense will not be considered a misdemeanor for purposes of this process, but it is important to emphasize that driving under the influence is a significant misdemeanor regardless of the sentence imposed. You can find detailed information in the National Security and Public Safety section of the Frequent Asked Questions.

### Renewing Deferred Action Under This Process

Individuals whose case is deferred under this process will not be placed into removal proceedings or removed from the United States for a period of two years, unless terminated. You may request consideration for a two-year extension of deferred action through a process to be detailed in the future. As long as you were under the age of 31 on June 15, 2012, you may request a renewal even after turning 31. Your request for an extension will be considered on a case-by-case basis

### Don't Be a Victim of Immigration Scams

Dishonest practitioners may promise to provide you with faster services if you pay them a fee. These people are trying to scam you and take your money. Visit our Avoid Scams page to learn how you can protect yourself from immigration scams.

Make sure you seek information about consideration of deferred action for childhood arrivals from official government sources such as USCIS or the Department of Homeland Security. If you are seeking legal advice, visit our Find Legal Services page to learn how to choose a licensed attorney or accredited representative.

Remember you can download all USCIS forms for free at www.uscis.gov/forms.

### Combatting Fraud

USCIS is committed to safeguarding the integrity of the immigration process. If individuals knowingly make a misrepresentation, or knowingly fail to disclose facts, in an effort to have their case deferred or obtain work authorization through this process, they will be treated as an immigration enforcement priority to the fullest extent permitted by law, and be subject to criminal prosecution and/or removal from the United States.

Return to top

Find this page at www.uscis.gov/childhoodarrivals

Last updated: 09/06/2012

| | | | |
|---|---|---|---|
| InfoPass | Citizenship | U.S. Department of Homeland Security | USCIS Freedom of Information Act and Privacy Act |
| My Case Status | Green Card | U.S. Customs & Border Protection | |
| Change of Address | Family | U.S. Immigration & Customs | No FEAR Act |

App. 0225

Case 1:14-cv-00254 Document 64-101 Filed on 01/07/15 in TXSD Page 6 of 53
Obtained via FOIA by Judicial Watch, Inc.

 and when USCIS decides to defer action in your case.

**Fee Exemptions**

There are no fee waivers available for the deferred action for childhood arrivals process. Fee exemptions are available in very limited circumstances. Visit the Fee Exemption page for more details.

**If USCIS Defers Action In Your Case**

If USCIS defers action in your case and grants employment authorization, you will receive a notice of decision in writing and an Employment Authorization Document separately in the mail.

**If USCIS Does Not Exercise Deferred Action In Your Case**

If USCIS decides not to defer action in your case, you cannot appeal the decision or file a motion to reopen or reconsider. USCIS will not review its discretionary determinations.

USCIS will apply our policy guidance governing the referral of cases to U.S. Immigration and Customs Enforcement (ICE) and the issuance of Notices to Appear (NTA). The case does not involve a criminal offense, fraud, or a threat to national security or public safety, your case will not be referred to ICE for purposes of removal proceedings except where DHS determines there are exceptional circumstances. For more detailed information on the applicable NTA policy visit www.uscis.gov/NTA.

**Administrative Errors**

You may request a review using the Service Request Management Tool process if you met all of the process guidelines and you believe that your request was denied because of an administrative error. Examples of administrative errors include USCIS denying your request for deferred action because:

- USCIS believes you abandoned your case by not responding to a Request for Evidence (RFE) and you claim that you did respond to the RFE within the prescribed time; or

- USCIS mailed the RFE to the wrong address, even though you had submitted a Form AR-11, Change of Address, or changed your address online at www.uscis.gov before the issuance of the Request for Evidence.

To make a service request, you must call the National Customer Service Center at 1-800-375-5283. A USCIS customer service representative will then forward your request to the proper USCIS office. Your service request will be reviewed for accuracy and USCIS will send you a letter informing you of its decision.

The USCIS National Customer Service Center is now open Monday – Friday from 8 a.m. – 8 p.m. in each U.S. time zone.

Return to top

## Travel Requirements and Restrictions

Certain travel outside the United States may affect the continuous residence guideline. After August 15, 2012, if you travel outside the United States, you will not be considered for deferred action under this process. If USCIS approves your request for deferred action, then you can travel outside the United States only if you apply for and receive advance parole from USCIS. Advance parole is available for travel for educational, employment or humanitarian reasons. You must file an application with USCIS and explain why you need to travel outside of the country. All advance parole requests will be considered on a case-by-case basis.

Travel undertaken before August 15, 2012, will not be deemed to interrupt your continuous residence if the travel was brief, casual and innocent.

| Travel Dates | Type of Travel | Does It Affect Continuous Residence |
|---|---|---|
| Before August 15, 2012 | • brief<br>• casual<br>• innocent | No |
| | • For an extended time<br>• Because of an order of exclusion, deportation, or removal<br>• To participate in criminal activity | Yes |
| After August 15, 2012, and before you have requested deferred action | • Any | Yes. |
| After August 15, 2012, and after you have requested deferred action | • Any | Yes. You cannot travel while your request is under review. You cannot apply for advance parole unless and until DHS has determined whether to defer action in your case. |

Note: If you have been ordered deported or removed, and you leave the United States, your departure may result in your being considered deported or removed, with potentially serious future immigration consequences.

For detailed information see the Travel section of the Frequently Asked Questions.

Return to top

## National Security and Public Safety Guidelines

APP. 0226

Obtained via FOIA by Judicial Watch, Inc.

| | |
|---|---|
| Proof you continuously resided in U.S. since June 15, 2007 | • Military records (Form DD-214 or NGB Form 22) |
| | • Official records from a religious entity confirming participation in a religious ceremony |
| | • Copies of money order receipts for money sent in or out of the country |
| | • Passport entries |
| | • Birth certificates of children born in the U.S. |
| | • Dated bank transactions |
| | • Social Security card |
| | • Automobile license receipts or registration |
| | • Deeds, mortgages, rental agreement contracts |
| | • Tax receipts, insurance policies |
| Proof of your student status at the time of requesting consideration of deferred action for childhood arrivals | • School records (transcripts, report cards, etc) from the school that you are currently attending in the United States showing the name(s) of the school(s) and periods of school attendance and the current educational or grade level |
| | • U.S. high school diploma or certificate of completion |
| | • U.S. GED certificate |
| Proof you are an honorably discharged veteran of the Coast Guard or Armed Forces of the U.S. | • Form DD-214, Certificate of Release or Discharge from Active Duty |
| | • NGB Form 22, National Guard Report of Separation and Record of Service |
| | • Military personnel records |
| | • Military health records |

See our Frequently Asked Questions for information on submitting affidavits or circumstantial evidence to support your request.

Return to top



**Complete the required two forms and worksheet**

| Form name | Fee |
|---|---|
| I-821D, Consideration of Deferred Action for Childhood Arrivals | Total fee of $465.  $380 fee plus $85 fee for biometric services. |
| I-765, Application for Employment Authorization | These fees cannot be waived. |
| I-765WS, Worksheet | |

## Form Filing Tips

• Forms must be mailed to the USCIS Lockbox.

• You cannot e-file your deferred action request for this process.

• If you have questions call the Customer Service Center at 1-800-375-5283; do NOT visit a USCIS field office in person.

• Write your name and date of birth exactly the same way on each form.

• Failure to submit Forms I-821D, I-765, I-765WS and the $465 fee will result in your package being rejected.

• We prefer that you download the forms from our website, fill them out electronically, and then print your forms.

• Use black ink only. Do NOT use highlighters or red ink on your forms as they may make your materials undetectable when scanned.

• Ensure that you are using the correct edition of the form. The correct, most current edition of every USCIS form is always available for FREE download on this website.

• Ensure that you provide all required supporting documentation and evidence.

• Organize and label evidence by the guideline it meets.

• Be sure to sign all of your forms.

• Be sure that you mail all pages of the forms.

• If you must change your form, we recommend that you begin with a new form, rather than trying to white out information, which can lead to scanning errors.



**Mail your forms to the appropriate USCIS Lockbox.**
See the mailing instructions for Form I-821D. Include the required forms, fees and supporting documentation with your filing. Remember to carefully follow instructions and fully complete your forms. USCIS will not accept incomplete forms or forms without proper fee. USCIS will mail you a receipt after accepting your request. You may also choose to receive an email and/or text message notifying you that your form has been accepted by completing a Form G-1145, E-Notification of Application/Petition Acceptance.



**Visit an Application Support Center (ASC) for biometric services.**
After USCIS receives your complete request with fees, we will send you a notice scheduling you to visit an ASC to for biometric services. If you fail to attend your ASC appointment, USCIS may deny your request for deferred action. Children under 14 in removal proceedings, with a final removal order, or with a voluntary departure order, and who are not in immigration detention, will appear at the ASC for photographs only.

**Check the status of your request on Case Status Online.**
The 90-day period for reviewing Form I-765 filed together with Form I-821D begins if

Obtained via FOIA by Judicial Watch, Inc.

- Were under 31 years old
- Had come to the United States before your 16th birthday
- Were physically present in the United States
- Entered without inspection by this date, or your lawful immigration status expired as of this date

- Have resided continuously in the U.S. since June 15, 2007;
- Were physically present in the United States; and
- Are in school, have graduated from high school in the United States, or have a GED; or
- Are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States

**Education and Military Service Guidelines**

| Your school or military status at the time of requesting deferred action under this process | Meet education or military service guidelines for deferred action under this process (Y/N) |
|---|---|
| I graduated from:<br><br>• Public or private high school; or<br>• Secondary school.<br>Or<br>• I have obtained a GED. | Yes |
| I am currently enrolled in school.<br><br>See the Education section of the FAQs for a full explanation of who is considered currently in school. | Yes |
| I was in school but dropped out and did not graduate, I am not currently in school and am not an honorably discharged veteran of the Coast Guard or Armed Forces of the U.S. | No |
| I am an honorably discharged veteran of the Coast Guard or Armed Forces of the U.S. | Yes |

Please see our Frequently Asked Questions for more detail on school-related guidelines.

Return to top

## Filing Process for Consideration of Deferred Action for Childhood Arrivals

If you meet the guidelines for deferred action under this process, you will need to complete the following steps to make your request to USCIS.



  **Collect documents as evidence you meet the guidelines.**
You will need to submit supporting documents with your request for consideration of deferred action for childhood arrivals. You can submit legible copies of these documents unless the instructions specify you must submit an original document.

**Examples of Documents to Submit to Demonstrate you Meet the Guidelines**
Please see the instructions to Form I-821D, Consideration of Deferred Action for Childhood Arrivals, for further details on acceptable documentation.

| Proof of Identity | • Passport or national identity document from your country of origin<br>• Birth certificate with photo identification<br>• School or military ID with photo<br>• Any U.S. government immigration or other document bearing your name and photo |
|---|---|
| Proof you came to U.S. before your 16th birthday | • Passport with admission stamp<br>• Form I-94/I-95/I-94W<br>• School records from the U.S. schools you have attended<br>• Any Immigration and Naturalization Service or DHS document stating your date of entry (Form I-862, Notice to Appear)<br>• Travel records<br>• Hospital or medical records |
| Proof of immigration status | • Form I-94/I-95/I-94W with authorized stay expiration date<br>• Final order of exclusion, deportation, or removal issued as of June 15, 2012<br>• A charging document placing you into removal proceedings |
| Proof of presence in U.S. on June 15, 2012 | • Rent receipts or utility bills<br>• Employment records (pay stubs, W-2 Forms, etc)<br>• School records (letters, report cards, etc) |

USCIS - Consideration of Deferred Action for Childhood Arrivals Process    Page 1 of 6

Case 1:14-cv-00254   Document 64-10   Filed on 01/07/15 in TXSD   Page 9 of 53
Obtained via FOIA by Judicial Watch, Inc.



**U.S. Citizenship and Immigration Services**

Home | Español | Blog | Archive | Index

Search          [Search]

FORMS     NEWS     RESOURCES     LAWS     OUTREACH     ABOUT US

Home > Humanitarian > Consideration of Deferred Action for Childhood Arrivals Process                    Printer Friendly

Refugees & Asylum

Victims of Human Trafficking & Other Crimes

Consideration of Deferred Action for Childhood Arrivals Process

Temporary Protected Status & Deferred Enforced Departure

Battered Spouse, Children & Parents

Humanitarian Parole

Special Situations

## Consideration of Deferred Action for Childhood Arrivals Process

*FAQs updated September 14, 2012*

On June 15, 2012, the Secretary of Homeland Security announced that certain people who came to the United States as children and meet several key guidelines may request consideration of deferred action for a period of two years, subject to renewal, and would then be eligible for work authorization. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. Deferred action does not provide an individual with lawful status.

If you need further information and cannot find it on this Web page or in our Frequent Asked Questions, you may contact our National Customer Service Center at 1-800-375-5283 or 1-800-767-1833 (TDD for the hearing impaired). Customer service officers are available Monday – Friday from 8 a.m. – 8 p.m. in each U.S. time zone.

### Find on this Page

Guidelines                               National Security and Public Safety Guidelines

Filing Process                           Renewing Deferred Action Under This Process

Travel Requirements and Restrictions     Don't Be a Victim of Immigration Scams

View the Consideration of Deferred Action for Childhood Arrivals Process Video



USCIS.gov/childhoodarrivals

U.S. Citizenship and Immigration Services

### Guidelines

You may request consideration of deferred action for childhood arrivals if you:

1. Were under the age of 31 as of June 15, 2012;
2. Came to the United States before reaching your 16th birthday;
3. Have continuously resided in the United States since June 15, 2007, up to the present time;
4. Were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;
5. Entered without inspection before June 15, 2012, or your lawful immigration status expired as of June 15, 2012;
6. Are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a general education development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and
7. Have not been convicted of a felony, significant misdemeanor, three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety.

### Age Requirements

Anyone requesting consideration for deferred action under this process must have been under 31 years old as of June 15, 2012. You must also be at least 15 years or older to request deferred action, unless you are currently in removal proceedings or have a final removal or voluntary departure order, as summarized in the table below:

| Your situation | Required age |
|---|---|
| I have never been in removal proceedings, or my proceedings have been terminated before making my request. | At least 15 years old at the time of submitting your request and not over 31 years of age as of June 15, 2012. |
| I am in removal proceedings, have a final removal order, or have a voluntary departure order, and I am not in immigration detention. | Not above the age of 31 as of June 15, 2012, but you may be younger than 15 years old at the time you submit your request. |

### Timeframe for Meeting the Guidelines

You must prove

| That on June 15, 2012 you | As of the date you file your request you |
|---|---|

### Related Links

* Frequently Asked Questions
* Deferred Action for Childhood Arrivals Data
* Consideration of Deferred Action for Childhood Arrivals (flier) (3679KB PDF)
* How Do I Request Consideration of Deferred Action for Childhood Arrivals (also available in Spanish, Chinese and Vietnamese)
* The Beacon Blog Post: Filing Tips: Deferred Action for Childhood Arrivals

### Forms

* I-821D, Consideration of Deferred Action for Childhood Arrivals
* I-765, Application for Employment Authorization
* G-1145, E-Notification of Application/Petition Acceptance
* Consideration of Deferred Action for Childhood Arrivals Fee Exemption Guidance

### Other USCIS Links

* Avoid Scams
* Find Legal Services
* Press Releases

### Non-USCIS Links

* Social Security Number - Deferred Action For Childhood Arrivals

### DHS Links

* DHS Memo: Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the US

☐ Get Email Updates for This Page
☐ Share This Page

Obtained via FOIA by Judicial Watch, Inc.

Our Nation's immigration laws must be enforced in a strong and sensible manner. They are not designed to be blindly enforced without consideration given to the individual circumstances of each case. Nor are they designed to remove productive young people to countries where they may not have lived or even speak the language. Indeed, many of these young people have already contributed to our country in significant ways. Prosecutorial discretion, which is used in so many other areas, is especially justified here.

As part of this exercise of prosecutorial discretion, the above criteria are to be considered whether or not an individual is already in removal proceedings or subject to a final order of removal. No individual should receive deferred action under this memorandum unless they first pass a background check and requests for relief pursuant to this memorandum are to be decided on a case by case basis. DHS cannot provide any assurance that relief will be granted in all cases.

1. With respect to individuals who are encountered by U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), or U.S. Citizenship and Immigration Services (USCIS):

- With respect to individuals who meet the above criteria, ICE and CBP should immediately exercise their discretion, on an individual basis, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.
- USCIS is instructed to implement this memorandum consistent with its existing guidance regarding the issuance of notices to appear.

2. With respect to individuals who are **in** removal proceedings but not yet subject to a final order of removal, and who meet the above criteria:

- ICE should exercise prosecutorial discretion, on an individual basis, for individuals who meet the above criteria by deferring action for a period of two years, subject to renewal, in order to prevent low priority individuals from being removed from the United States.
- ICE is instructed to use its Office of the Public Advocate to permit individuals who believe they meet the above criteria to identify themselves through a clear and efficient process.
- ICE is directed to begin implementing this process within 60 days of the date of this memorandum.
- ICE is also instructed to immediately begin the process of deferring action against individuals who meet the above criteria whose cases have already been identified through the ongoing review of pending cases before the Executive Office for Immigration Review.

3. With respect to the individuals who are **not** currently in removal proceedings and meet the above criteria, and pass a background check:

- USCIS should establish a clear and efficient process for exercising prosecutorial discretion, on an individual basis, by deferring action against individuals who meet the

App. 0230

Obtained via FOIA by Judicial Watch, Inc.

## Tobias, Valerie

| | |
|---|---|
| **From:** | Saucier, Shawn A |
| **Sent:** | Wednesday, October 03, 2012 4:18 PM |
| **To:** | #NER-ASCM-LIST |
| **Cc:** | #NER SISOs and Section Managers; #NER-DD-FOD-COS; Goodwin, Shelley M; Kern, Suzanne C; Maxim, Melissa W; Bibona, Lisa M; O'Neill, Anne M |

**Subject:** Updated Reminder - Processed DACA Requestors as Code-3

ASC ISOs,

Please be aware that due to the validity of previous FBI fingerprint results, appointment notices asking DACA requestors to appear at an ASC may indicate that the requestor be processed for biometrics as a Code – 2. This should be ignored.

All DACA requestors, unless they are under the age of 14, should be processed for biometrics as a Code – 3. The DACA Standard Operating Procedure, currently in use by the USCIS Service Center Operations Directorate, requires that prior FBI fingerprint results not be used for determining if a requestor meets the DACA guidelines.

Please let me know if you have any questions or concerns. Thank you.

**Shawn Saucier**
Immigration Services Officer
U.S. Citizenship and Immigration Services
Northeast Regional Office - Adjudications
**Tele:** (b) (6)
**Fax:** (b) (6)

**From:** Saucier, Shawn A
**Sent:** Wednesday, October 03, 2012 1:41 PM
**Subject:** Reminder - Processed DACA Requestors as Code-3

ASC ISO,



(b) (5)

App. 0231

Obtained via FOIA by Judicial Watch, Inc.

following link:

(b) (7)(E)

Please let me know if you have any questions or concerns. Thank you.

**Shawn Saucier**
Immigration Services Officer
U.S. Citizenship and Immigration Services
Northeast Regional Office - Adjudications
Tele:    (b) (6)
Fax:    (b) (6)

11/14/2012

Obtained via FOIA by Judicial Watch, Inc.

| | |
|---|---|
| **From:** | Benavides, Jaime L |
| **To:** | HQ Field Operations; Elliott, Elizabeth D |
| **Cc:** | Campagnolo, Donna P; Dominguez, Kathy P; Harrison, Julia L; Christian, Gregory W; Bryce, Bunnie; Schaffer, Timothy L; Benavides, Jaime L |
| **Subject:** | RE: FOD must respond - FW: [URGENT CLEARANCE REQUEST] DACA SOP |
| **Date:** | Friday, August 03, 2012 8:46:01 AM |
| **Attachments:** | Draft DACA SOP (For Clearance 8-2-12) Field Ops edits.doc<br>image001.jpg |

Good morning Beth,

The attached SOP was reviewed.  No comments were provided on the SOP however several grammatical errors and misspellings were identified and corrected.

## Jaime

**From:** Elliott, Elizabeth D **On Behalf Of** HQ Field Operations
**Sent:** Thursday, August 02, 2012 9:42 AM
**To:** Harrison, Julia L; Benavides, Jaime L; Christian, Gregory W
**Cc:** Campagnolo, Donna P; Dominguez, Kathy; HQ Field Operations
**Subject:** FOD must respond - FW: [URGENT CLEARANCE REQUEST] DACA SOP
**Importance:** High

Good morning,

FOD must respond.

Please review the DACA SOP and appendices.

Given the magnitude of the SOP, SCOPS asks that you please limit your comments to substantive issues.  Please note that the NTA memo is under revision.  Also, since it has not been made available, the ICE referral process for non-EPS cases has not been updated. Lastly, where indicated in the SOP, there are open policy calls that need to be addressed.

Responses are **due NLT 11 a.m., Friday, August 3, 2012.**

Respectfully,

*Beth Elliott*
Operations Support Specialist
On Detail to:
USCIS, Field Operations Directorate
Ph – ██ (b) (6) ██
Fax – ██ (b) (6) ██

**From:** Contaldi, Kerry T **On Behalf Of** USCIS Exec Sec
**Sent:** Thursday, August 02, 2012 7:52 AM
**To:** Rhew, Perry J; Grissom, John F; Rix, Donna L; OCC-Clearance; Patching, Laura; Eccleston, Hermene; Alfonso-Royals, Angelica M; Wheeler, Shannon L; Parisi, Thomas M; Torres, Juan J; Simpson, Baxter; A'Vant, May'Ardah L; Echevarria, Alexandra; USCIS OLA Clearance; Moore, Joseph; Quimby, Chris M; Croons, Patricia A; Policy-Clearance; Graziadio, Josie; Hawkins, Donald K; Baker, Tamara L; Ratliff, Gerri; Patterson, Katherine R; Salber, Matthew C; OPE Tasking; Melero, Mariela; Lacot, Rosalina; Gradowski, Leonard S; #USCIS - ESD Tasking List; HQ Field Operations; Atkinson, Ronald A; Bianco, Anthony D; Kellner, Aris R; Merkovich, Melissa A; Fleet, Andrea B; Hoobler, Kathleen B; RAIO Clearance; SCOPS-Clearance; Arroyo, Susan K; Cox, Sophia; Higman, Kevin M
**Cc:** Scialabba, Lori; Carson, Rebecca S; White, William J; Baronof, Kimberly; Hunter, Adam; Davidson, Andrew J; Gill, Lori Rothamel; Lai, Victoria W; Flores, Andrea R; Carter, Constance L; Bacon, William H; Robinson, Anthony J; USCIS Exec Sec; Chang, Pearl B; Caraballo, Felix R; Correa, Soraya; Jones, Rendell L; Neufeld, Donald; Velarde, Barbara Q; Nakajima, Simon T; Bucher, Steve P; Campagnolo, Donna P; Carpenter, Dea D; Cox, Rachel; Dawkins, Laura; Harrison, Julia L; Herrera, Al T; Hinds, Ian; Hope, Leslie K; Hussey, Jedidah M; Karas, Karen W; Kendall, Sarah M; Kleczek, Marguerite P; Lauver, Tinnina M; Lay, Dorothea B; Legomsky, Stephen H; Levine, Laurence D; Lotspeich, Katherine; McCament, James W; Monica, Donald J; Nystrom, Marcia R; Phillips, Mark;

Obtained via FOIA by Judicial Watch, Inc.

Pitcairn, Rodger; Silvers, Robert P; Stanley, Kathleen M; Vanison, Denise; Whitney, Ronald W; Wooden, Janeen R; Zaragoza, Conrad J
**Subject:** [URGENT CLEARANCE REQUEST] DACA SOP
**Importance:** High



Good morning,

Please review the DACA SOP and appendices. Given the magnitude of the SOP, SCOPS asks that you please limit your comments to substantive issues. Please note that the NTA memo is under revision. Also, since it has not been made available, the ICE referral process for non-EPS cases has not been updated. Lastly, where indicated in the SOP, there are open policy calls that need to be addressed.

To review the document(s) click (b) (7)(E)

We request that the following program offices and directorates respond to this action (those not listed are receiving this for informational purposes only): CSPE, ESD, FDNS, FOD, MGT, OCC, and P&S.

To register your concurrence or non-concurrence and leave comments click (b)(7)(E) Explanations must accompany non-concurrences. Please provide your responses by 5:00 PM, Friday, August 3, 2012.

*The owner of the document(s)* should click (b) (7)(E) review the responses.

Thank you.

USCIS Office of the Executive Secretariat

(b) (6) (Office)
(b) (6) (Fax)
(b) (6)

*Visit the CATS page to view the status of this action.*

Click here to request (b) (7)(E) , and here to (b) (7)(E) . Your continuing collaboration and input is appreciated.

Obtained via FOIA by Judicial Watch, Inc.

| | |
|---|---|
| **From:** | Benavides, Jaime L |
| **To:** | HQ Field Operations |
| **Cc:** | Campagnolo, Donna P; Dominguez, Kathy P; Bryce, Bunnie; Schaffer, Timothy L; Benavides, Jaime L; Harrison, Julia L; Christian, Gregory W; Elliott, Elizabeth D |
| **Subject:** | RE: FOD must respond - FW: URGENT RESPONSE NEEDED - DUE BY 4:00PM FRIDAY AUGUST 3, 2012: MMP08012012-01 Deferred Action for Childhood Arrivals |
| **Date:** | Thursday, August 02, 2012 5:23:36 PM |
| **Attachments:** | DACA Memo AFM draft 8-02-2012 CLEAN with Open Issue Comments (Field Ops 8-2-12).docx |
| | image001.jpg |

Please find comments regarding the requested review in the attached.

## Jaime

**From:** Elliott, Elizabeth D **On Behalf Of** HQ Field Operations
**Sent:** Thursday, August 02, 2012 9:33 AM
**To:** Harrison, Julia L; Benavides, Jaime L; Christian, Gregory W
**Cc:** Campagnolo, Donna P; Dominguez, Kathy; HQ Field Operations
**Subject:** FOD must respond - FW: URGENT RESPONSE NEEDED - DUE BY 4:00PM FRIDAY AUGUST 3, 2012: MMP08012012-01 Deferred Action for Childhood Arrivals
**Importance:** High

Good morning,

FDO must respond.

This Policy Memorandum (PM) amends the Adjudicator's Field Manual (AFM) to provide guidance on when to exercise prosecutorial discretion with respect to individuals who came to the United States as children.

Please review the attached document and send comments to HQ Field Operations mailbox.

Responses due NLT 12 p.m., Friday, August 3, 2012.

Respectfully,

*Beth Elliott*
Operations Support Specialist
On Detail to:
USCIS, Field Operations Directorate
Ph –  (b) (6)
Fax – (b) (6)

**From:** Penn, Melissa M **On Behalf Of** USCIS Exec Sec
**Sent:** Wednesday, August 01, 2012 6:20 PM
**To:** Atkinson, Ronald A; Bianco, Anthony D; Kellner, Aris R; HQ Field Operations; Hoobler, Kathleen B; Fleet, Andrea B; OCC-Clearance; SCOPS-Clearance; Arroyo, Susan K; Hawkins, Donald K; Baker, Tamara L; #USCIS - ESD Tasking List
**Cc:** USCIS Exec Sec; Carter, Constance L; Bacon, William H; Drake, Johnetta; Robinson, Anthony J; Jones, Rendell L; Correa, Soraya; Caraballo, Felix R; Neufeld, Donald; Velarde, Barbara Q; Rhew, Perry J; Grissom, John F; Rix, Donna L; Patching, Laura; Eccleston, Hermene; Parisi, Thomas M; Simpson, Baxter; Alfonso-Royals, Angelica M; Wheeler, Shannon L; Torres, Juan J; A'Vant, May'Ardah L; Echevarria, Alexandra; USCIS OLA Clearance; Moore, Joseph; Quimby, Chris M; Croons, Patricia A; Policy-Clearance; Graziadio, Josie; Higman, Kevin M; Chang, Pearl B; Levine, Laurence D; Vanison, Denise; Dawkins, Laura; Pitcairn, Rodger; Ratliff, Gerri; Patterson, Katherine R; Salber, Matthew C; OPE Tasking; Melero, Mariela; Lacot, Rosalina; Gradowski, Leonard S; RAIO Clearance
**Subject:** URGENT RESPONSE NEEDED - DUE BY 4:00PM FRIDAY AUGUST 3, 2012: MMP08012012-01 Deferred Action for Childhood Arrivals
**Importance:** High

Obtained via FOIA by Judicial Watch, Inc.

Description: cid:image002.jpg@01CD1331.059A3590



Good afternoon,

Please review the document(s) associated with MMP08012012-01  Deferred Action for Childhood Arrivals and respond by 4:00PM FRIDAY, AUGUST 3, 2012.

To review the document(s) click the following link: ███████ (b) (7)(E) ███████.

To register your concurrence or non-concurrence and leave comments click ██(b) (7)(E)██  Explanations must accompany non-concurrences.

The following program offices and directorates must respond to this action (those not listed are receiving this for informational purposes only): FDNS, FOD, MGT, OCC, SCOPS, PRIV, and ESD.

*The owner of the document(s)* should click the following link: ████████ (b) (7)(E) ████████, to edit the document(s) and save any revisions.  It is recommended that you revise your document(s) *after the review period is complete.*

To view responses click ██(b) (7)(E)██ ████████ (b) (7)(E) ████████.

Click here to request ██ (b) (7)(E) ██, and here to ██ (b) (7)(E) ██.  Your continuing collaboration and input is appreciated.

**Melissa M. Penn**
USCIS Office of the Executive Secretariat
██ (b) (6) ██ (Office)
██ (b) (6) ██ (Fax)

Obtained via FOIA by Judicial Watch, Inc.

| | |
|---|---|
| **From:** | Helm, James R |
| **To:** | HQ Field Operations |
| **Cc:** | Benton, Shelia G; Lopez, Vicente F; Benavides, Jaime L |
| **Subject:** | RE: FOD must respond 11 am Aug 3rd- FW: [URGENT CLEARANCE REQUEST] DACA SOP |
| **Date:** | Friday, August 03, 2012 10:06:53 AM |
| **Attachments:** | Draft DACA SOP (For Clearance 8-1-12) FOD Comments.doc |
| | Field Operations Document Comment Form DACA SOP.docx |
| | image001.jpg |
| **Importance:** | High |

Attached please find my comments/edits to the DACA SOP.

**James Helm** | **Adjudication Officer** | **Dept. of Homeland Security**| **USCIS** | **Field Operations Directorate**| Adjustment of Status Branch |Washington, DC 20529 | ☎ : (b) (6)    | 📠 :              | ✉ : (b) (6)

WARNING: This document is FOR OFFICIAL USE ONLY (FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5U.S.C. 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with  DHS policy relating to Sensitive But Unclassified (SBU) information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval from the originator. If you are not the intended recipient please contact the originator for disposition instructions.

**From:** Lopez, Vicente F
**Sent:** Thursday, August 02, 2012 10:03 AM
**To:** Helm, James R
**Cc:** Benton, Shelia G
**Subject:** FW: FOD must respond 11 am Aug 3rd- FW: [URGENT CLEARANCE REQUEST] DACA SOP
**Importance:** High

Here are the documents with the Comment Form.  Same as before, please respond directly to the HQ FOD Mailbox.

Thanks,
Vicente

Vicente F. Lopez
Adjudications Officer
USCIS Headquarters
Field Operations Directorate
Tel.  (b) (6)

**From:** Benavides, Jaime L
**Sent:** Thursday, August 02, 2012 9:46 AM
**To:** Krebs, Kristie L; Lopez, Vicente F
**Subject:** FW: FOD must respond - FW: [URGENT CLEARANCE REQUEST] DACA SOP
**Importance:** High

Same as before, please provide your comments to HQ Field Ops mailbox as requested below.  (We'll be doing the same at FDNS Ops Branch)  Thanks.

## Jaime

**From:** Elliott, Elizabeth D **On Behalf Of** HQ Field Operations
**Sent:** Thursday, August 02, 2012 9:42 AM
**To:** Harrison, Julia L; Benavides, Jaime L; Christian, Gregory W
**Cc:** Campagnolo, Donna P; Dominguez, Kathy; HQ Field Operations
**Subject:** FOD must respond - FW: [URGENT CLEARANCE REQUEST] DACA SOP
**Importance:** High

Good morning,

FOD must respond.

Please review the DACA SOP and appendices.

Given the magnitude of the SOP, SCOPS asks that you please limit your comments
to substantive issues. Please note that the NTA memo is under revision. Also, since it has
not been made available, the ICE referral process for non-EPS cases has not been updated.
Lastly, where indicated in the SOP, there are open policy calls that need to be addressed.

Responses are due NLT 11 a.m., Friday, August 3, 2012.

Respectfully,

*Beth Elliott*

Operations Support Specialist
On Detail to:
USCIS, Field Operations Directorate
Ph – (b) (6)
Fax – (b) (6)

---

**From:** Contaldi, Kerry T **On Behalf Of** USCIS Exec Sec
**Sent:** Thursday, August 02, 2012 7:52 AM
**To:** Rhew, Perry J; Grissom, John F; Rix, Donna L; OCC-Clearance; Patching, Laura; Eccleston, Hermene;
Alfonso-Royals, Angelica M; Wheeler, Shannon L; Parisi, Thomas M; Torres, Juan J; Simpson, Baxter; A'Vant,
May'Ardah J; Echevarria, Alexandra; USCIS OLA Clearance; Moore, Joseph; Quimby, Chris M; Croons, Patricia A;
Policy-Clearance; Graziadio, Josie; Hawkins, Donald K; Baker, Tamara L; Ratliff, Gerri; Patterson, Katherine R;
Salber, Matthew C; OPE Tasking; Melero, Mariela; Lacot, Rosalina; Gradowski, Leonard S; #USCIS - ESD Tasking
List; HQ Field Operations; Atkinson, Ronald A; Bianco, Anthony D; Kellner, Aris R; Merkovich, Melissa A; Fleet,
Andrea B; Hoobler, Kathleen B; RAIO Clearance; SCOPS-Clearance; Arroyo, Susan K; Cox, Sophia; Higman, Kevin
M
**Cc:** Scialabba, Lori; Carson, Rebecca S; White, William J; Baronof, Kimberly; Hunter, Adam; Davidson, Andrew J;
Gill, Lori Rothamel; Lai, Victoria W; Flores, Andrea R; Carter, Constance L; Bacon, William H; Robinson, Anthony
J; USCIS Exec Sec; Chang, Pearl B; Caraballo, Felix R; Correa, Soraya; Jones, Rendell L; Neufeld, Donald;
Velarde, Barbara Q; Nakajima, Simon T; Bucher, Steve P; Campagnolo, Donna P; Carpenter, Dea D; Cox, Rachel;
Dawkins, Laura; Harrison, Julia L; Herrera, Al T; Hinds, Ian; Hope, Leslie K; Hussey, Jedidah M; Karas, Karen W;
Kendall, Sarah M; Kleczek, Marguerite P; Lauver, Tinnina M; Lay, Dorothea B; Legomsky, Stephen H; Levine,
Laurence D; Lotspeich, Katherine; McCament, James W; Monica, Donald J; Nystrom, Marcia R; Phillips, Mark;
Pitcairn, Rodger; Silvers, Robert P; Stanley, Kathleen M; Vanison, Denise; Whitney, Ronald W; Wooden, Janeen
R; Zaragoza, Conrad J
**Subject:** [URGENT CLEARANCE REQUEST] DACA SOP
**Importance:** High

Good morning,

Please review the DACA SOP and appendices. Given the magnitude of the SOP, SCOPS asks that

Obtained via FOIA by Judicial Watch, Inc.

you please limit your comments to substantive issues. Please note that the NTA memo is under revision. Also, since it has not been made available, the ICE referral process for non-EPS cases has not been updated. Lastly, where indicated in the SOP, there are open policy calls that need to be addressed.

To review the document(s) click (b) (7)(E)

We request that the following program offices and directorates respond to this action (those not listed are receiving this for informational purposes only): CSPE, ESD, FDNS, FOD, MGT, OCC, and P&S.

To register your concurrence or non-concurrence and leave comments click (b) (7)(E) Explanations must accompany non-concurrences. Please provide your responses by 5:00 PM, Friday, August 3, 2012.

*The owner of the document(s)* should click (b) (7)(E) to review the responses.

Thank you.

USCIS Office of the Executive Secretariat
(b) (6)          0 (Office)
(b) (6)          (Fax)
          (b) (6)

          (b) (7)(E)

Click here to request (b) (7)(E), and here to (b) (7)(E). Your continuing collaboration and input is appreciated.

App. 0239

Obtained via FOIA by Judicial Watch, Inc.

| From: | Quinn, Kevin T |
|---|---|
| To: | Harrison, Julia L; Cox, Sophia; Wilcox, Julia D; Atkinson, Ronald A; Benavides, Jaime L; Benton, Shelia G; Lombardi, Cherie A; Helm, James R; Lopez, Vicente F |
| Subject: | RE: guidance for deferred action eligibility requirements |
| Date: | Monday, June 18, 2012 4:44:48 PM |
| Attachments: | DA Requirements Matrix.docx |

All,

Alan asked that I forward this attached matrix.  FDNS drafted it for internal use on Friday. **(b) (5)**

Thanks,

K

**Kevin T. Quinn**
USCIS - Fraud Detection and National Security
Screening Coordination Office
Work:  **(b) (6)**
Fax:  **(b) (6)**
Email:  **(b) (6)**
HSDN:  **(b) (6)**
JWICS:  **(b) (6)**

-----Original Appointment-----
**From:** Harrison, Julia L
**Sent:** Monday, June 18, 2012 4:40 PM
**To:** Cox, Sophia; Wilcox, Julia D; Atkinson, Ronald A; Quinn, Kevin T; Benavides, Jaime L; Benton, Shelia G; Lombardi, Cherie A; Helm, James R; Lopez, Vicente F
**Subject:** guidance for deferred action eligibility requirements
**When:** Thursday, June 21, 2012 3:00 PM-4:30 PM (GMT-05:00) Eastern Time (US & Canada).
**Where:** FOD Conference Room- 111 Mass, 2nd floor

**(b) (5)**

Case 1:14-cv-00254  Document 64-10  Filed on 01/07/15 in TXSD  Page 21 of 53
Obtained via FOIA by Judicial Watch, Inc.



# Deferred Action Process for Young People Who Are Low Enforcement Priorities

U.S. Citizenship and Immigration Services (USCIS) alerts eligible individuals <u>NOT</u> to submit a deferred action request under the Deferred Action Process for Young People memorandum issued by Secretary Napolitano on June 15. **If you submit now, your application will be rejected.** The Secretary's directive gives USCIS 60 days to create a process to accept these requests and we are unable to accept requests at this time.  Please continue to check our website for updates.

Over the past three years, this Administration has undertaken an unprecedented effort to transform the immigration enforcement system into one that focuses on public safety, border security and the integrity of the immigration system. As DHS continues to focus its limited enforcement resources on the removal of individuals who pose a danger to national security or a risk to public safety, including aliens convicted of crimes, with particular emphasis on violent criminals, felons, and repeat offenders, DHS will move to exercise prosecutorial discretion to ensure that enforcement resources are not expended on low priority cases, such as individuals who were brought to this country through no fault of their own as children, have not been convicted of a felony offense, a significant misdemeanor offense, or multiple misdemeanor offenses, and meet other key criteria.

Effective immediately, certain young people who were brought to the United States through no fault of their own as young children and meet several key criteria will be considered for relief from removal from the country or entered into removal proceedings. Those who demonstrate that they meet the criteria will be eligible to receive deferred action for a period of two years, subject to renewal.

Only those individuals who can prove through verifiable documentation that they meet these criteria will be eligible for deferred action. Individuals will not be eligible if they are not currently in the United States and cannot prove that they have been physically present in the United States for a continuous period of not less than 5 years immediately preceding today's date. The use of prosecutorial discretion confers no substantive right or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights.

While this guidance takes effect immediately, USCIS and ICE expect to begin implementation of the application processes within sixty days. **Do not apply -  this application process is not yet available. If you apply early, your application will be rejected.**  Beginning June18, 2012, individuals can call USCIS' hotline at 1-800-375-5283 or ICE's hotline at 1-888-351-4024 during business hours with questions or to request more information on the forthcoming process.

## Frequently Asked Questions

**Who is eligible to receive deferred action under the Department's new directive?**

App. 0241

Case 1:14-cv-00254   Document 64-10   Filed on 01/07/15 in TXSD   Page 22 of 53
Obtained via FOIA by Judicial Watch, Inc.

Pursuant to the Secretary's June 15, 2012 memorandum, in order to be eligible for deferred action, individuals must:

1. Have come to the United States under the age of sixteen;
2. Have continuously resided in the United States for at least five years preceding June 15, 2012 and are present in the United States on June 15, 2012;
3. Currently be in school, have graduated from high school, have obtained a general education development certificate, or are honorably discharged veterans of the Coast Guard or Armed Forces of the United States;
4. Have not been convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, or otherwise pose a threat to national security or public safety;
5. Not be above the age of thirty.

Individuals must also complete a background check and, for those individuals who make a request to USCIS and are not subject to a final order of removal, must be 15 years old or older.

**What is deferred action?**
Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. Deferred action does not confer lawful status upon an individual. In addition, although an alien granted deferred action will not be considered to be accruing unlawful presence in the United States during the period deferred action is in effect, deferred action does not absolve individuals of any previous or subsequent periods of unlawful presence.

Under existing regulations, an individual who has been granted deferred action is eligible to receive employment authorization for the period of deferred action, provided he or she can demonstrate "an economic necessity for employment." Deferred action can be terminated at any time at the agency's discretion or renewed by the agency.

**How will the new directive be implemented?**
Individuals who are not in removal proceedings or who are subject to a final order of removal will need to submit a request for a review of their case and supporting evidence to U.S. Citizenship and Immigration Services (USCIS). Individuals may request deferred action if they meet the eligibility criteria. In the coming weeks, USCIS will outline and announce the procedures by which individuals can engage in this process. This process is not yet in effect and requests should not be submitted at this time. Beginning June 18, individuals may call the USCIS hotline at 1-800-375-5283, from 8 a.m. to 8 p.m., with questions or to request more information on the new process. The hotline offers assistance in English and Spanish. Individuals seeking more information on the new process should visit USCIS's website (at http://www.uscis.gov).

For individuals who are in removal proceedings before the Executive Office for Immigration Review, ICE will, in the coming weeks, announce the process by which qualified individuals may request a review of their case. Additional information is available from the ICE Office of the Public Advocate at http://www.ice.gov/about/offices/enforcement-removal-operations/publicadvocate/ Beginning June 18, individuals may call the ICE hotline at 1-888-351-4024, from 9 a.m. to 5 p.m., with questions or to request more information on the new process.

For individuals who are in removal proceedings and have already been identified as meeting the eligibility criteria as part of ICE's case-by-case review, ICE will immediately begin to offer deferred action for a period of two years, subject to renewal.

**App. 0242**

Case 1:14-cv-00254   Document 64-10   Filed on 01/07/15 in TXSD   Page 23 of 53
Obtained via FOIA by Judicial Watch, Inc.

**Are individuals who receive deferred action pursuant to the new directive eligible for employment authorization?**
Yes. Pursuant to existing regulations, individuals who receive deferred action may apply for and may obtain employment authorization from USCIS provided they can demonstrate an economic necessity for their employment. Information about employment authorization requests is available on USCIS's website at http://www.uscis.gov/i-765.

**Does the process result in permanent lawful status for beneficiaries?**
No. The grant of deferred action under this new directive does not provide an individual with permanent lawful status or a pathway to obtaining permanent lawful status. Only the Congress, acting through its legislative authority, can confer the right to permanent lawful status.

**Why will deferred actions only be granted for two years?**
Grants of deferred action will be issued in increments of two years. At the expiration of the two year period, the grant of deferred action can be renewed, pending a review of the individual case.

**If an individual's period of deferred action is extended, will individuals need to re-apply for an extension of their employment authorization?**
Yes. If an individual applies for and receives an extension of the period for which he or she was granted deferred action, he or she must also request an extension of his or her employment authorization.

**Does this policy apply to those who are subject to a final order of removal?**
Yes. An individual subject to a final order of removal who can demonstrate that he or she meets the eligibility criteria can request a review of his or her case and receive deferred action for a period of two years, subject to renewal. All cases will be considered on an individualized basis.

This process is not yet in effect and requests should not be submitted at this time. In the coming weeks, USCIS will outline and announce the procedures by which individuals can engage in this process. Beginning June 18, individuals may call the USCIS hotline at 1-800-375-5283, from 8 a.m. to 8 p.m., with questions or to request more information on the new process. The hotline offers assistance in English and Spanish. Individuals seeking more information on the new process should visit USCIS's website (at http://www.uscis.gov).

**How soon after USCIS receives a request to review a case will the individual receive a decision on his or her request?**
USCIS will provide additional information on this issue in the coming weeks. Information will be made publicly available at http://www.uscis.gov/.

**If an individual who is about to be removed by ICE believes he or she satisfies the eligibility criteria for the new process, what steps should he or she take to ensure his or her case is reviewed before removal?**
Individuals who believe they can demonstrate that they satisfy the eligibility criteria and are about to be removed should immediately contact either the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week) or the ICE Office of the Public Advocate through the Office's hotline at 1-888-351-4024 (staffed 9am – 5pm, Monday – Friday) or by e-mail at EROPublicAdvocate@ice.dhs.gov.

**If an individual who satisfies the eligibility criteria is encountered by Customs and Border Protection (CBP) or ICE, will he or she be placed into removal proceedings?**

App. 0243

Case 1:14-cv-00254   Document 64-10   Filed on 01/07/15 in TXSD   Page 24 of 53
Obtained via FOIA by Judicial Watch, Inc.

This policy is intended to allow ICE and CBP to focus on priority cases. Pursuant to the direction of the Secretary of Homeland Security, for individuals who satisfy the eligibility criteria, CBP or ICE should exercise their discretion to prevent them from being apprehended, placed into removal proceedings, or removed. If individuals, including individuals in detention, believe they were placed into removal proceedings in violation of this policy, they should contact either the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week) or the ICE Office of the Public Advocate through the Office's hotline at 1-888-351-4024 (staffed 9am – 5pm, Monday – Friday) or by e-mail at EROPublicAdvocate@ice.dhs.gov.

**If an individual accepted an offer of administrative closure under the case-by-case review process or if his or her case was terminated as part of the case-by-case review process, can he or she receive deferred action under the new process?**
Yes. Individuals who can demonstrate that they meet the eligibility criteria will be eligible for deferred action even if they had accepted an offer of administrative closure or termination under the case-by-case review process. For individuals who are in removal proceedings and have already been identified as meeting the eligibility criteria as part of ICE's case-by-case review, ICE will immediately begin to offer deferred action for a period of two years, subject to renewal.

**If an individual declined an offer of administrative closure under the case-by-case review process, can he or she receive deferred action under the new process?**
Yes. Individuals who can demonstrate that they meet the eligibility criteria will be eligible for deferred action even if they declined an offer of administrative closure under the case-by-case review process.

**If an individual's case was reviewed as part of the case-by-case review process but he or she was not offered administrative closure, can he or she receive deferred action under the new process?**
Yes. Individuals who can demonstrate that they meet the eligibility criteria will be eligible for deferred action even if they were not offered administrative closure following review of their case as part of the case-by-case review process.

**Will DHS personnel responsible for reviewing requests for an exercise of prosecutorial discretion under this process receive special training?**
Yes. ICE and USCIS personnel responsible for considering requests for an exercise of prosecutorial discretion under the Secretary's directive will receive special training.

**Will individuals be subject to background checks before they can receive an exercise of prosecutorial discretion?**
Yes. All individuals will undergo biographic and biometric background checks prior to receiving an exercise of prosecutorial discretion. Individuals who have been convicted of any felony, a significant misdemeanor offense, three or more misdemeanor offenses not occurring on the same date and not arising out of the same act, omission, or scheme of misconduct, or otherwise pose a threat to national security or public safety are not eligible to be considered for deferred action under the new process.

**What do background checks involve?**
Background checks involve checking biographic and biometric information provided by the individuals against a variety of databases maintained by DHS and other federal government agencies.

**What documentation will be sufficient to demonstrate that an individual came to the United States before the age of 16?**
Documentation sufficient for an individual to demonstrate that he or she came to the United States

App. 0244

Case 1:14-cv-00254  Document 64-10  Filed on 01/07/15 in TXSD  Page 25 of 53
Obtained via FOIA by Judicial Watch, Inc.

before the age of 16 includes, but is not limited to: financial records, medical records, school records, employment records, and military records.

**What documentation will be sufficient to demonstrate that an individual has resided in the United States for a least five years preceding June 15, 2012?**
Documentation sufficient for an individual to demonstrate that he or she has resided in the United States for at five years immediately preceding June 15, 2012 includes, but is not limited to: financial records, medical records, school records, employment records, and military records.

**What documentation will be sufficient to demonstrate that an individual was physically present in the United States as of June 15, 2012?**
Documentation sufficient for an individual to demonstrate that he or she was physically present on June 15, 2012, the date the memorandum was issued, includes, but is not limited to: financial records, medical records, school records, employment records, and military records.

**What documentation will be sufficient to demonstrate that an individual is currently in school, has graduated from high school, or has obtained a general education development certificate (GED)?**
Documentation sufficient for an individual to demonstrate that he or she is currently in school, has graduated from high school, or has obtained a GED certificate includes, but is not limited to: diplomas, GED certificates, report cards, and school transcripts.

**What documentation will be sufficient to demonstrate that an individual is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States?**
Documentation sufficient for an individual to demonstrate that he or she is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States includes, but is not limited to: report of separation forms, military personnel records, and military health records.

**What steps will USCIS and ICE take to prevent fraud in the new processes?**
An individual who knowingly makes a misrepresentation to USCIS or ICE, or knowingly fails to disclose facts to USCIS or ICE, in an effort to receive deferred action or work authorization in this new process will be treated as an immigration enforcement priority to the fullest extent permitted by law, subjecting the individual to criminal prosecution and/or removal from the United States.

**Are individuals with a conviction for a felony offense, a significant misdemeanor offense, or multiple misdemeanors eligible for an exercise of prosecutorial discretion under this new process?**
No. Individuals who have been convicted of a felony offense, a significant misdemeanor offense, or three or more other misdemeanor offenses not occurring on the same date and not arising out of the same act, omission, or scheme of misconduct are not eligible to be considered for deferred action under the new process.

**What offenses qualify as a felony?**
A felony is a federal, state, or local criminal offense punishable by imprisonment for a term exceeding one year.

**What offenses qualify as a "significant misdemeanor"?**
A significant misdemeanor is a federal, state, or local criminal offense punishable by no more than one year of imprisonment or even no imprisonment that involves: violence, threats, or assault, including domestic violence; sexual abuse or exploitation; burglary, larceny, or fraud; driving under the influence

**App. 0245**

Case 1:14-cv-00254   Document 64-10   Filed on 01/07/15 in TXSD   Page 26 of 53
Obtained via FOIA by Judicial Watch, Inc.

of alcohol or drugs; obstruction of justice or bribery; unlawful flight from arrest, prosecution, or the scene of an accident; unlawful possession or use of a firearm; drug distribution or trafficking; or unlawful possession of drugs.

**How many non-significant misdemeanors constitute "multiple misdemeanors" making an individual ineligible for an exercise of prosecutorial discretion under this new process?**
An individual who is not convicted of a significant misdemeanor but is convicted of three or more other misdemeanors not occurring on the same day and not arising out of the same act, omission, or scheme of misconduct is not eligible to be considered for deferred action under this new process.

**What qualifies as a national security or public safety threat?**
If the background check or other information uncovered during the review of an individual's request for deferred action indicates that the individual's presence in the United States threatens public safety or national security, he or she will be ineligible for an exercise of prosecutorial discretion. Indicia that an individual poses such a threat include, but are not limited to, gang membership, participation in criminal activities, or participation in activities that threaten the United States.

**How will ICE and USCIS handle cases involving individuals who do not satisfy the eligibility criteria under this new process but may be eligible for an exercise of prosecutorial discretion under the June 2011 Prosecutorial Discretion Memoranda?**
If an individual has a final order of removal and USCIS determines that he or she does not satisfy the eligibility criteria, then it will reject the individual's request for deferred action. That individual may then request an exercise of prosecutorial discretion under the ICE June 2011 Prosecutorial Discretion Memoranda through any of the established channels at ICE, including through a request to the ICE Office of the Public Advocate or to the local Field Office Director. USCIS will not consider requests for review under the ICE June 2011 Prosecutorial Discretion Memoranda.

If an individual is currently in removal proceedings and ICE determines that he or she does not satisfy the eligibility criteria for deferred action under this process, it will then consider whether the individual is otherwise eligible for an exercise of prosecutorial discretion under its current practices for assessing eligibility under the June 2011 Prosecutorial Discretion Memoranda.

**Will there be supervisory review of decisions by ICE and USCIS under this process?**
Yes. Both ICE and USCIS will develop protocols for supervisory review as part of their implementation of the new process.

**Can individuals appeal a denial by ICE or USCIS of their request for an exercise of prosecutorial discretion under the new process?**
No. Individuals may not appeal a denial by ICE or USCIS of their request for an exercise of prosecutorial discretion. However, ICE and USCIS will develop protocols for supervisory review as part of their implementation of the new process. Although there is no right for appeal, individuals in removal proceedings who believe their cases were not correctly handled may contact the ICE Office of the Public Advocate either by phone at 1-888-351-4024 or by e-mail at EROPublicAdvocate@ice.dhs.gov.

**Will dependents and other immediate relatives of individuals who receive deferred action pursuant to this process also be eligible to receive deferred action?**
No. The new process is available only to those who satisfy the eligibility criteria. As a result, the immediate relatives, including dependents, of individuals who receive deferred action pursuant to this

**App. 0246**

Case 1:14-cv-00254   Document 64-10   Filed on 01/07/15 in TXSD   Page 27 of 53
Obtained via FOIA by Judicial Watch, Inc.

process are not eligible to apply for deferred action as part of this process unless they independently satisfy the eligibility criteria.

**If an individual's request to USCIS for deferred action is denied, will he or she be placed in removal proceedings?**
For individuals whose requests for deferred action are denied by USCIS, USCIS will apply its existing Notice to Appear guidance governing USCIS's referral of cases to ICE and issuance of notices to appear. Under this guidance, individuals whose requests are denied under this process will be referred to ICE if they have a criminal conviction or there is a finding of fraud in their request.

**Should individuals who are not in removal proceedings but believe themselves to be eligible for an exercise of deferred action under this process seek to place themselves into removal proceedings through encounters with ICE or CBP?**
No. Individuals who are not in removal proceedings but believe that they satisfy the eligibility criteria should submit their request for review of their case to USCIS under the procedures that USCIS will implement.

This process is not yet in effect and requests should not be submitted at this time. Beginning June 18, individuals may call the USCIS hotline at 1-800-375-5283, from 8 a.m. to 8 p.m., with questions or to request more information on the new process. The hotline offers assistance in English and Spanish. Individuals seeking more information on the new process should visit USCIS's website (at http://www.uscis.gov).

**If I receive deferred action through this process, will I be able to travel outside the United States?**
USCIS is exploring this issue and will resolve it in the coming weeks as part of its implementation plan.

**Will there be any exceptions to the requirement that an individual must have resided in the United States for a least five years preceding June 15, 2012?**
An individual must demonstrate that he or she has resided in the United States for a least five years preceding June 15, 2012. Brief and innocent absences undertaken for humanitarian purposes will not violate this requirement.

**What should I do if I am eligible under this process and have been issued an ICE detainer following an arrest by a state or local law enforcement officer?**
If you meet the eligibility criteria and have been served a detainer, you should immediately contact either the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week) or the ICE Office of the Public Advocate either through the Office's hotline at 1-888-351-4024 (staffed 9am – 5pm, Monday – Friday) or by e-mail at EROPublicAdvocate@ice.dhs.gov.

**Does deferred action provide individuals with a path to citizenship or permanent legal status?**
No. A grant of deferred action is a form of prosecutorial discretion that does not confer a path to citizenship or lawful permanent resident status. Only the Congress, acting through its legislative authority, can confer these rights.

**Why isn't DHS allowing other individuals to request deferred action under this process?**
As a general matter, young people who, through no fault of their own, were brought to this country as children, lacked the intent to violate the law and our ongoing review of pending removal cases is already offering administrative closure to many of them. However, additional measures are necessary to ensure that our enforcement resources are not expended on these low priority cases but are instead

App. 0247

Case 1:14-cv-00254   Document 64-10   Filed on 01/07/15 in TXSD   Page 28 of 53
Obtained via FOIA by Judicial Watch, Inc.

appropriately focused on people who meet our enforcement priorities.

**Does this Administration remain committed to comprehensive immigration reform?**
Yes. The Administration has consistently pressed for passage of comprehensive immigration reform, including the DREAM Act, because the President believes these steps are critical to building a 21st century immigration system that meets our nation's economic and security needs.

**Is passage of the DREAM Act still necessary in light of the new process?**
Yes. As the President has stated, individuals who would qualify for the DREAM Act deserve certainty about their status, and this new process does not provide that certainty. Only the Congress, acting through its legislative authority, can confer the certainty that comes with a pathway to permanent lawful status.

**How can I get more information on the new process?**
Individuals seeking more information on the new process should visit ICE's website (at www.ice.gov), USCIS's website (at www.uscis.gov), or DHS's website (at www.dhs.gov). Beginning June 18, individuals can also call ICE's hotline (at 1-888-351-4024) or USCIS's hotline (at 1-800-375-5283) during business hours with questions or to request more information on the new process.

**Where can I find more information about where to go for Deferred Action?**

| I… | Who to submit a request to review my case: | Where can I get more information: |
|---|---|---|
| ...am subject to a final order of removal. | U.S. Citizenship and Immigration Services (USCIS) when the application period opens | USCIS website at http://www.uscis.gov.

Beginning June 18: USCIS hotline at 1-800-375-5283 (8 am-8 pm; English & Spanish) |
| …have a case pending before the Executive Office for Immigration Review or a federal court. | U.S. Immigration and Customs Enforcement (ICE) when the process for accepting requests is announced | ICE website at: http://www.ice.gov.

Beginning June 18: ICE hotline at 1-888-351-4024 (9am – 5pm; English and Spanish) |
| …have never been apprehended or placed into removal proceedings. | U.S. Citizenship and Immigration Services (USCIS) when the application period opens | USCIS website at http://www.uscis.gov.

Beginning June 18: USCIS hotline at 1-800-375-5283 (8 am-8 pm; English & Spanish |

Last updated: 06/18/2012

**App. 0248**

Obtained via FOIA by Judicial Watch, Inc.

Plug-ins

App. 0249

Obtained via FOIA by Judicial Watch, Inc.

**Brown, Keith M**

| | |
|---|---|
| **From:** | Woo, Ellen Y |
| **Sent:** | Wednesday, October 03, 2012 5:38 PM |
| **To:** | Aguda, Perla T; Baker, Dawn M; Bolbecker, Malele E; Castaneda, Frank L; Chang, Dominic; Chen, Chet C; Clayton, Paula Q; De Los Cobos, Alfonso; Farnsworth, Brandy D; Ferrer Echon, Lilybeth; Foree, Steve C; Hashimoto, Julie M; Holmes, Dianne M; Honeychurch, Carol E; Luntsford, Jody C; Kazmierski, Daniel J; 'Keisha' (keisha.harriswright@dhs.gov); Kennedy, Linda S; Klepner, Linda B; Maliuwelur, Rebecca F; Mitchell, Thomas R; Montanez, Albert; Myatt, John R; Navaran, Mohana S; Nguyen, Dominic H; Nicholson, Sarah E; Olivares, Sharon L; Quiroz-Galvan, Hilda M; 'Rebecca Onofryton' (Rebecca.Onofryton@dhs.gov); Roberts, Ericka; Rogers, David E; Saldana, Lupe H; Sterkel, David A; Tan, Jorge L; Tsui, Toi; Valov, Janelle L; Williams, Michael J; Wirruh, Rick (Rick.Wirruh@dhs.gov); Aguilar, Noella L; Armenteros, Dianne; Baker, Dawn M; Charbonneau, Terry J; Chien, Lee M; Fleming, Ricky C; Garcia, Anita E; Guadamuz, Carlos A Jr; Lu, Daphne M; Oki, Robin G; Reyes, Manuel; Sanders, Shawn E; Susoeff, Allan J; Teruya, Susan T; Weirich, Darvin L; Yanez, Norma; Oscar, Yu-Wen L; Alby, Nancy J; Barrett, Robin L; Bawden, Kenneth D; Biggs, Michael C; Bilello, Michael; Brown, Keith M; Cass, William R; Castillo, Ramon; Chau, Anna K; Chiang, James Y; Corsano, Anne Arries; Coven, Phyllis A; Crawford, Jonathan E; Doody, Bernadette A; Dougherty, Linda M; Erfan, Anita C; Flores, Martha V; Gallmann, Al III; Green, Stephen P; Guerra, Juan J; Gulick, David G; Harrell, Charles B; Holston, Leander B; Jordan, Mari D; Keller, Carol L; Killian-Larlos, Maureen E; Kramar, John; Langlais, Shelly E; Leigh, Leanne J; Lester, David; Looney, Robert V; Lyons, Roland E; Martin, Irene; Materne, Rose G; Miramontes, Joel; Muzyka, Carolyn L; Pierre, Paul M; Prater, Preston W; Ramirez, John M; Rasmusson, Peter L; Rhodie, Richard S; Rust, Maureen; Sahli, Evelyn R; Sherman, Kenneth J; Toro, Monica E; Uribe, Dolores L; Valeika, Richard T; Villasenor, Elizabeth; Walls, Joyce; Williams, Rachel; Wolder, Diana M; Wong, Jackie W; Wyrough, James T |
| **Cc:** | Muzyka, Carolyn L; Rust, Maureen; Kentfield, Lynn; Young, Korie A; Duvall, James; Evans, Janna M; Alegria, Sany; Cone, Richard K; Dickson, Bruce; Peeples, Shirley F; Tang, Michael W; White, Carla; Zug, Renee H |
| **Subject:** | FW: Identification for I-821D/DACA appointments at an ASC |
| **Attachments:** | Redacted 821D Notice.pdf |
| **Importance:** | High |

Good Evening DD, FODs and ASC ISOs,

Please refer to the below email and attached redacted I-821D Notice.

This email provides an excerpt from the Section 2.B of the ASC SOP as it relates to the identification guidance/requirements for DACA Requestors. A copy of the redacted I-821D Notice is attached for your reference.

All ASC ISOs are expected to follow the guidance provided in the ASC SOP.

Please disregard the previous email that Richard Cone sent on Tuesday, September 25, 2012; the reference to "Identity" in the DACA SOP only applies to the officers adjudicating DACA requests.

Questions and concerns should be directed to Richard Cone and Bruce Dickson via email or at ▮▮▮ (b) (6) ▮▮▮ or ▮▮ (b) (6) ▮▮ respectively.

Thank you,

Ellen

1

Obtained via FOIA by Judicial Watch, Inc.

*Ellen Y. Woo*
Associate Regional Director, Operations
DHS/USCIS, Western Region
24000 Avila Road (Room 6200A)
Laguna Niguel, CA 92677

(b) (6)    desk
(b) (6)    fax
(b) (6)

**From:** Jafer, Halide (Holly)
**Sent:** Wednesday, October 03, 2012 8:16 AM
**To:** Kern, Suzanne C; Goodwin, Shelley M; #NER-ASCM-LIST; Tierney, Terry; Bace, Philip; #SER-ASCM-LIST; Gallagher, Kevin E; Watkins, Jay C; #CRO-ASCM-LIST; Woo, Ellen Y; Cone, Richard K; #WRO-ASCM-LIST
**Cc:** Hope, Leslie K; Campagnolo, David; Weldemann, James A; Sartini, Ronald; Munoz-Lair, Anna; James, Ja-Nel C; Harrison, Julia L
**Subject:** Identification for I-821D/DACA appointments at an ASC

***Please be reminded of the identification guidance/requirements as stated in Section 2.B of the ASC ISO SOP and on the I-821D appointment notice.*** *For your convenience, a copy of the I-821D appointment notice is attached.*

## Section 2.B: Applicant Identification, Name Guidance, and Forms

*Applicant Identification:* The following table provides a matrix of identification requirements for various applications and the actions to be taken if the applicant cannot provide acceptable identification.

| Application Type | Acceptable ID *without* ASC ISO Approval | Action to be taken if no acceptable ID |
|---|---|---|
| N – 400* | • Form I – 551 Permanent Resident Card or,<br>• Passport with ADIT stamp. | Refer to ASC ISO |
| All Others to include I-821D | • USCIS-issued photo ID or,<br>• State-issued driver's license or,<br>• State-issued ID card or,<br>• Any country's official ID (passport, driver's license) or,<br>• Military photo identification. | Refer to ASC ISO |

\* See Chapter 7, Benefit Procedure – Special Cases, for N - 400 applicant supplemental processing requirements.

Biometric processing should <u>not</u> be refused solely because an applicant does not present an acceptable ID. The ASC ISO may accept secondary forms of identification as proof of identity. Using Fraudulent Document Detection techniques and years of immigration experience, an ASC ISO can usually discern the validity of the applicant's identification. ASC ISOs shall conduct Central Index System (CIS) and/or Computer Linked Application Information Management System, version 4.0 (CLAIMS-4) and CLAIMS Mainframe checks to

App. 0251

Obtained via FOIA by Judicial Watch, Inc.

verify the identity of applicants that present questionable identification. ASC ISOs may also question applicants about their immigration history and biographical background. If the ASC ISO is unavailable and a questionable identity document arises, the Site Supervisor shall inform the applicant that s/he can either wait until the ASC ISO returns to be processed, or s/he may return at a later time. The ASC ISO shall <u>not</u> approve the processing of applicants presenting questionable identity documents without <u>personally inspecting the original documents</u>.

If the ASC ISO is able to confirm the applicant's identity, s/he should write "Identity Confirmed" and place her/his initials in the top left hand margin of the applicant's AIW and return all documents to the Guard/Receptionist. Once the ASC ISO has confirmed the applicant's identity, there is no requirement to repeat the process. The ASC ISO's initials on the applicant's AIW will serve as notice to the receptionist, biometrics technician, and Site Supervisor that the ASC ISO is aware of the applicant's ID and that the ASC ISO has confirmed the applicant's identity. If the ASC ISO is unable to confirm the applicant's identity, the ASC ISO should dismiss the applicant and instruct her/him to return to the ASC with valid ID. Alternatively, the ASC ISO may refer the applicant to the Local Field Office (LFO) for resolution.

**See Chapter 7 for applicant identification guidance for Asylum, I-360, I-914, and I-918 applicants.**

App. 0252

Obtained via FOIA by Judicial Watch, Inc.

# ASC Appointment Notice

| | | |
|---|---|---|
| **CASE TYPE** | **APPLICATION NUMBER** (b) (6) | **NOTICE DATE** (b) (6) |
| 1821D Consideration of Deferred Action for Childhood Arrivals | **SOCIAL SECURITY NUMBER** (b) (6) | **USCIS A#** (b) (6) | **CODE** 3 |
| | **TCR** | **SERVICE CENTER** (b)(6) | **PAGE** 1 of 1 |

(b) (6)

To process your request, U. S. Citizenship & Immigration Services (USCIS) must capture your biometrics.
**PLEASE APPEAR AT THE BELOW APPLICATION SUPPORT CENTER AT THE DATE AND TIME SPECIFIED.
IF YOU FAIL TO APPEAR AS SCHEDULED, YOUR REQUEST WILL BE CONSIDERED ABANDONED.**

| **APPLICATION SUPPORT CENTER** | |
|---|---|
| USCIS FAIRFAX | **PLEASE READ THIS ENTIRE NOTICE CAREFULLY.** |
| 5949 W. PICO BLVD. | |
| LOS ANGELES, CA 90035 | **DATE AND TIME OF APPOINTMENT** (b) (6) |

**WHEN YOU GO TO THE APPLICATION SUPPORT CENTER TO HAVE YOUR BIOMETRICS TAKEN, YOU MUST BRING:**
1. **THIS APPOINTMENT NOTICE** and
2. **PHOTO IDENTIFICATION.** Naturalization applicants must bring their Alien Registration Card. All other requestors must bring a passport, driver's license, national ID, military ID, or State-issued photo ID. If you appear without proper identification, your biometrics may not be taken.

**CELL PHONES, CAMERAS, OR OTHER RECORDING DEVICES ARE NOT PERMITTED.**

## REQUEST FOR RESCHEDULING

☐ Please reschedule my appointment. Upon receipt of your request, you will be provided a new appointment notice. Make a copy of this notice for your records, then mail the original with your request to BPU, Alexandria ASC, (b) (6) 8850 Richmond Hwy, Alexandria, VA 22309-1586

**APPLICATION NUMBER 1**
1821D (b) (6)

If you have any questions regarding this notice, please call 1-800-375-5283.

## WARNING!

*Due to limited seating availability in our lobby area, only persons who are necessary to assist with transportation or completing the biometrics worksheet should accompany you.*

*If you have open wounds or bandages/casts when you appear, the USCIS may reschedule your appointment if it is determined your injuries will interfere with taking your biometrics.*

App. 0253

Obtained via FOIA by Judicial Watch, Inc.

**Flanagan, Joan M**

| | |
|---|---|
| **From:** | Saucier, Shawn A |
| **Sent:** | Wednesday, October 03, 2012 4:18 PM |
| **To:** | #NER-ASCM-LIST |
| **Cc:** | #NER SISOs and Section Managers; #NER-DD-FOD-COS; Goodwin, Shelley M; Kern, Suzanne C; Maxim, Melissa W; Bibona, Lisa M; O'Neill, Anne M |
| **Subject:** | Updated Reminder - Processed DACA Requestors as Code-3 |

ASC ISOs,

Please be aware that due to the validity of previous FBI fingerprint results, appointment notices asking DACA requestors to appear at an ASC may indicate that the requestor be processed for biometrics as a Code – 2. This should be ignored.

All DACA requestors, unless they are under the age of 14, should be processed for biometrics as a Code – 3. The DACA Standard Operating Procedure, currently in use by the USCIS Service Center Operations Directorate, requires that prior FBI fingerprint results not be used for determining if a requestor meets the DACA guidelines.

Please let me know if you have any questions or concerns. Thank you.

**Shawn Saucier**
Immigration Services Officer
U.S. Citizenship and Immigration Services
Northeast Regional Office - Adjudications
**Tele:** (b) (6)
**Fax:** (b) (6)

---

**From:** Saucier, Shawn A
**Sent:** Wednesday, October 03, 2012 1:41 PM
**Subject:** Reminder - Processed DACA Requestors as Code-3

ASC ISO,



(b) (5)

(b) (7)(E)

1

Obtained via FOIA by Judicial Watch, Inc.

Please let me know if you have any questions or concerns. Thank you.

**Shawn Saucier**
Immigration Services Officer
U.S. Citizenship and Immigration Services
Northeast Regional Office - Adjudications
Tele: (b) (6)
Fax: (b) (6)

App. 0255

Obtained via FOIA by Judicial Watch, Inc.

# Chapter 3

## Benefit Procedure – Code - 1 (Fingerprinting)

Obtained via FOIA by Judicial Watch, Inc.
**ASC Standard Operating Procedures**

## Chapter 3: Benefit Procedure – Code - 1 (Fingerprinting)

**Introduction:** This chapter is designed to provide standardized step-by-step operating procedures at each ASC to ensure consistency in processing fingerprints. In general, all applicants should be processed using the biometrics workstation and procedures described in Section B, when feasible. Reasons for exceptions to this policy are listed in Section A. Section A covers how to process manual (ink) fingerprinting - "Dead Scan", and Section B covers how to process electronic fingerprinting via a biometrics workstation - "Live Scan". All ASCs will implement the procedures established in this chapter.

At ASCs staffed only with a Site Supervisor, the Site Supervisor shall perform the steps and actions usually performed by the guard/receptionist and biometrics technician, and the ASC ISO shall perform the quality assurance (QA) steps and actions. Site Supervisors and/or the ASC ISOs shall perform the QA steps and actions when required. The key points to remember in processing applicants are <u>not</u> to leave the applicant alone at an active workstation and <u>not</u> to conduct a QA review of fingerprints you have taken unless you have been designated a "self QA" by your Site Supervisor.

Note 1: As a customer service, if the BT has taken the best quality print but realizes that the fingerprints will likely be rejected by the FBI, the BT should take a second set of prints manually (ink). These manual prints can then be submitted by the ASC ISO if the first set is indeed rejected. Remember to follow the procedures in Chapter 8.C – Re-fingerprinting Applicants. This manual process for suspected rejects is a customer service the ASC Program provides, minimizing the number of appearances an applicant would have to make to an ASC.

Note 2: Religious belief accommodations are to be offered when requested by the applicant during photograph and fingerprint capture (see Chapter 4 for Photograph accommodations). When requested due to religious beliefs, ASCs will accommodate individuals who request a same-gender fingerprint technician, if possible. If there are no same-gender technicians available to capture fingerprints, the applicant will be offered the chance to reschedule the appointment for a different day or at a different office where it might be feasible to accommodate the individual's request. Requests and accommodations should be handled through the ASC ISO.

Obtained via FOIA by Judicial Watch, Inc.
## ASC Standard Operating Procedures

---

### *Chapter 3: Benefit Procedure – Code - 1 (Fingerprinting)*

**Table of Sections**

**Section 3.A: Manual (Ink) Fingerprinting - "Dead Scan"**
- Background
  - Reasons for Manual (Ink) Fingerprinting Applicants
- Operational Procedures
  - Amputations & Deformities
  - Coercive Population Control (CPC) Applicants
- Phases: Manual Fingerprinting

**Section 3.B: Electronic Fingerprinting - "Live Scan"**
- Background
- Operational Procedures
  - Amputations & Deformities
- Phases: Electronic Fingerprinting

2012 Edition
September 2012

App. 0258

Obtained via FOIA by Judicial Watch, Inc.

# ASC Standard Operating Procedures

## Chapter 3: Benefit Procedure – Code - 1 (Fingerprinting)

### Section 3.A: Manual (Ink) Fingerprinting - "Dead Scan"

**Background:** A manual (ink) fingerprinting workstation consists of a computer, monitor, scanner, keyboard, mouse, printer, manual inkpad, and a mallet roller. Fingerprint Masthead Notification System (FMNS) software is used to print the applicant's personal information and physical characteristics on the Form FD - 258 card. The procedures established in this chapter are based on the most current version of FMNS. With FMNS software, users can enter, save, print, and retrieve the standard Form FD - 258 masthead biographical information. The masthead biographical information is printed in text format on the front of the Form FD - 258 card and in 2 - D barcode format on the back of the card. Using the most current version of FMNS software, the ASC staff can perform the basic functions of:

- Entering Form FD - 258 masthead biographical information.
- Printing Form FD - 258 cards with a 2 - D barcode on the back.
- Generating/printing reschedule letters/notices, manifests, and reports.
- Querying previously entered applicant information by name, social security number, A-number, and/or date of entry.

Specific FMNS operating instructions may be found in the most current Fingerprint Masthead Notification System User's Guide.

NOTE: If the appointment notice has a form type that is NOT on the "Form-Type" pull-down menu screen, use "X999" as the form type.

**Reasons for Manual (Ink) Fingerprinting of Applicants:** Manual (ink) fingerprinting of applicants shall only be used for special circumstances. Special circumstances where manual (ink) Form FD - 258 cards shall be generated include:

- Applicants with disabilities that prevent them from being fingerprinted at a biometrics workstation may be fingerprinted with ink on Form FD - 258 cards. ASC ISO and Site Supervisor shall exercise discretion in providing service to disabled applicants with the comfort of the applicant given highest priority.
- Fingerprinting applicants on mobile fingerprint routes. The procedures in Chapter 7, "Benefit Procedure – Special Cases" shall be used.
- High volume. Instances where high volumes of applicants are waiting to be fingerprinted and all available biometrics workstations are busy or out of service.
- Expected Reject. For those applicants that the biometric technician is fairly certain the initial electronic set of fingerprints will be rejected by the FBI. As a customer service, a second manual set of fingerprints will be captured so that the applicant does not have to return to the ASC. These prints will only be submitted if the FBI rejects the first electronic set. Note: The TCR number from the FBI reject report must be submitted per the procedures detailed in Chapter 8.C – Re-fingerprinting Applicants.

Obtained via FOIA by Judicial Watch, Inc.
## ASC Standard Operating Procedures

### *Chapter 3: Benefit Procedure – Code - 1 (Fingerprinting)*

In all cases, if a manual (ink) Form FD - 258 card is generated, the standardized step-by-step procedures of this chapter <u>will</u> be used.

***Operational Procedures:*** The following operational procedures shall be used in processing applicants on manual (ink) workstations.

- ***Amputations & Deformities****:* If the applicant has an <u>amputation</u>, one or more fingers, thumbs, or hand removed, the condition shall be noted in black ink in the appropriate Form FD-258 block. Total amputation should be designated "XX". In the case of partial amputation of first joint of a finger or thumb, the impression of the remaining end joint is placed in the appropriate block.

  If the applicant has a deformity that prevent the taking of a fingerprint, such as severe arthritis, AND the ASC-ISO confirms that specific finger(s) cannot be printed without causing harm or pain to the applicant, the condition shall be noted in black ink in the appropriate Form FD-258 block as "UP" – Unable to Print. Unable-to-Print fingers should be annotated "UP".

  With the exception of amputated digits or confirmed deformities, handwritten notes on Form FD-258 cards are <u>not</u> permitted in individual fingerprint blocks. Any marks other than fingerprints in the Form FD-258 fingerprint blocks may render good prints as rejects when they are electronically scanned.

- ***Names:*** If an applicant does not have a first name, enter "No given name" in the "First" name data field on the fingerprinting workstation demographics page. Also, remember that no suffixes (Sr, Jr, the Second, III, etc.) will be entered.

- ***Coercive Population Control (CPC) Applicants****:* CPC applicants and their families are asylum applicants filing Form I-589. If they appear at the ASC without proper identification and cannot be fingerprinted electronically, they must be manually ink-printed (see procedures in Chapter 7).

### Phases: Manual Fingerprinting

- Applicant Fingerprinting (Manual)
  - o Preparing the Applicant for Fingerprints
  - o Taking the Applicant's Fingerprints
  - o Biometrics Technician's Quality Assurance (QA) Check
  - o Taking the Applicant's Press Prints

- Quality Assurance Review
  - o Documentation & Form FD - 258 Masthead QA Check
  - o Fingerprint QA Check

2012 Edition
September 2012

App. 0260

Obtained via FOIA by Judicial Watch, Inc.

## ASC Standard Operating Procedures

### Chapter 3: Benefit Procedure – Code - 1 (Fingerprinting)

### Applicant Fingerprinting (Manual)

**General Procedure Description:** This phase is used in fingerprinting an applicant at a manual (ink) fingerprinting workstation using FMNS software.

**When to Use This Procedure:** After the applicant has completed the receptionist-processing phase and the applicant has met the requirements to be manually fingerprinted.

**Who Performs This Procedure:** A trained Biometrics Technician, Site Supervisor, or ASC ISO shall complete this phase.

| Preparing the Applicant for Fingerprints | |
|---|---|
| **Step** | **Action** |
| 1 | Retrieve only the applicant from the waiting area by calling the next customer service number (if applicable) or the next applicant. Family or friends accompanying the applicant will remain in the waiting area unless their physical assistance is required to fingerprint the applicant and/or to function as a translator. |
| 2 | Request the applicant's customer service number, government-issued photo ID, appointment notification letter, and AIW. |
| 3 | Verify the applicant has the required government-issued picture ID for the desired benefit. If the applicant does not have the required picture ID for the desired benefit, check the applicant's AIW to see if it has been annotated by the ASC ISO. If the applicant's AIW has not been annotated, refer the applicant to the ASC ISO. |
| 4 | Verify the applicant's identity by comparing the picture ID to the applicant. If the picture ID does not match the applicant's physical characteristics, refer the applicant to the ASC ISO. |
| 5 | Verify the accuracy of the A-number, name, and DOB by comparing the AIW with the applicant's appointment notification letter and ID card. If the AIW A-number and/or DOB do not match the applicant's appointment notification letter, refer the applicant to the ASC ISO. |
| 6 | Verify completeness of the personal information by ensuring all blocks on the AIW are checked/completed. |

**Note:** To access FMNS, enter the applicant's Form FD-258 masthead information and print the Form FD-258 card use the most current version of the Fingerprint Masthead Notification System User's Guide. (Masthead information may be neatly hand printed in black ink.)

2012 Edition
September 2012

App. 0261

Obtained via FOIA by Judicial Watch, Inc.
**ASC Standard Operating Procedures**

## *Chapter 3: Benefit Procedure – Code - 1 (Fingerprinting)*

## *Applicant Fingerprinting (Manual)*

| Taking the Applicant's Fingerprints | |
|---|---|
| **Step** | **Action** |
| 1 | Check the applicant's hands for texture and softness. If hands are rough, apply liquid to soften and moisturize the fingertips. |
| 2 | Place/slide card into metal template/brace on the ink-fingerprinting stand where all right-hand fingerprint boxes are visible and fingerprints can be applied. |
| 3 | Apply ink to inkpad and roll ink flat and even with mallet roller until smooth. |
| 4 | Take the applicant's right hand and roll right thumb in ink and then roll thumb on card, toward the applicant's body, and nail-to-nail in the "1. R. Thumb" block. Take the applicant's right index finger and roll in ink and then roll finger on card, away from the applicant's body, and nail-to-nail in the "2. R. Index" block. Repeat the same steps by placing the applicant's fingers in ink and then rolling the finger away from the applicant's body, and nail-to-nail in the "3. R. Middle," "4. R. Ring," and "5. R. Little" blocks, in that order. |
| 5 | Slide card in metal template/brace on the ink-fingerprinting stand where all left-hand fingerprint boxes are visible and fingerprints can be applied. |
| 6 | Re-apply ink to inkpad, as required, and roll ink flat and even with mallet roller until smooth. |
| 7 | Take the applicant's left hand and roll the left thumb in ink and then roll thumb on card, toward applicant's body, and nail-to-nail in the "6. L. Thumb" block. Take the applicant's left index finger and roll in ink and then roll finger on card, away from the applicant's body, and nail-to-nail in the "7. L. Index" block. Repeat the same steps by placing the applicant's fingers in ink and then rolling the fingers away from the applicant's body, and nail-to-nail in the "8. L. Middle," "9. L. Ring," and "10. L. Little" blocks, in that order. |

**Notes:**

1. With the exception of amputated digits, handwritten notes are not permitted in individual fingerprint blocks. Any marks other than fingerprints in the Form FD - 258 fingerprint blocks may render good prints as rejects when they are electronically scanned.

2. If the applicant has an amputation, one or more fingers, thumbs, or hand removed, the condition shall be noted in black ink in the appropriate Form FD - 258 block. Total

Obtained via FOIA by Judicial Watch, Inc.

## ASC Standard Operating Procedures

*Chapter 3:  Benefit Procedure – Code - 1 (Fingerprinting)*

amputation should be designated "XX".  In the case of partial amputation of the first joint of a finger or thumb, the impression of the remaining end joint is placed in the appropriate block.

3. If the applicant has a deformity that prevent the taking of a fingerprint, such as severe arthritis, AND the ASC-ISO confirms that specific fingers cannot be printed without causing harm or pain to the applicant, the condition shall be noted in black ink in the appropriate Form FD-258 block as an "UP" – Unable to Print.  Unable to Print fingers should be annotated "UP".

4. If a biometrics technician determines that s/he <u>cannot</u> capture <u>any</u> fingerprints due to a physical impairment of the applicant, the technician <u>shall</u> refer the applicant to the ASC ISO for a possible fingerprint waiver.  If the ASC ISO approves a fingerprinting waiver, the applicant shall be processed in accordance with Chapter 8, "Administrative Procedures".

Obtained via FOIA by Judicial Watch, Inc.

## ASC Standard Operating Procedures

*Chapter 3: Benefit Procedure – Code - 1 (Fingerprinting)*

| Biometrics Technician's Self Quality Assurance (QA) Check | |
|---|---|
| **Step** | **Action** |
| 1 | Verify prints are classifiable (or best print possible) by determining if ridges and deltas are visible. |
| 2 | Verify prints are rolled nail-to-nail in blocks 1 through 10. |
| 3 | Verify prints are <u>not</u> smudged and on the Form FD-258 card in the proper order. |
| 4 | Verify press print clarity and the total number of press prints recorded is equal to the total number of rolled prints. |
| 5 | If there is a problem, recapture prints on either manual tabs or full strips by re-inking and rolling/pressing on a manual tab/full strip and by following the steps for fingerprinting that thumb/finger. Verify the new print is classifiable. There is no limit on the number of tabs or strips that may be used to obtain acceptable fingerprints. However, tabs should not be placed over tabs; therefore, take the unacceptable print tab off the card before putting a new one on the card. |

2012 Edition
September 2012

App. 0264

Obtained via FOIA by Judicial Watch, Inc.

## ASC Standard Operating Procedures

*Chapter 3:  Benefit Procedure – Code - 1 (Fingerprinting)*

| | Taking the Applicant's Press-Prints | |
|---|---|---|
| **Step** | | **Action** |
| 1 | | Slide card in metal template/brace on the ink-fingerprinting stand where all press print fingerprint boxes are visible and press prints can be applied. |
| 2 | | Re-apply ink to manual inkpad, as required, and the roll ink flat and even with mallet roller until smooth. |
| 3 | | Take the applicant's left hand and press thumb in ink and then press on card in the "L. Thumb" block for the left thumb press print.  Take the applicant's left hand and press all fingers in ink and then press fingers on card in a 45 - degree angle, in the "Left Four Fingers Taken Simultaneously" block for the left-hand press prints. |
| 4 | | Re-apply ink to inkpad, as required, and roll ink flat and even with mallet roller until smooth. |
| 5 | | Take the applicant's right hand and press thumb in ink and then press on card in the "R. Thumb" block for the right thumb press print.  Take the applicant's right hand fingers and press all fingers in ink and then press fingers on card in a 45 - degree angle, in the "Right Four Fingers Taken Simultaneously" block for the right-hand press prints. |
| 6 | | Conduct a quality assurance review of the completed Form FD-258 card. |

**Note:**  Full strips and a printing spoon may be used on elderly, handicap, and/or applicants with worn ridges to increase the possibility of taking classifiable fingerprints.

2012 Edition
September 2012

Obtained via FOIA by Judicial Watch, Inc.

## ASC Standard Operating Procedures

### *Chapter 3: Benefit Procedure – Code - 1 (Fingerprinting)*

### *Quality Assurance (QA) Review*

**General Procedure Description:** This phase is used to conduct a QA review of a manual (ink) Form FD-258 card.

**When to Use This Procedure:** After the biometrics technician has completed the manual (ink) fingerprinting phase.

**Who Performs This Procedure:** The "self QA" BT, Site Supervisor, or ASC ISO shall complete the actions in this phase for <u>every</u> manual (ink) Form FD - 258 card.

| Step | Action |
|------|--------|
| *Documentation & Form FD-258 Masthead QA Check* | |
| 1 | Request the applicant's appointment notification letter, Form FD-258 card, picture ID, and AIW from the biometrics technician. |
| 2 | Verify the applicant has the required government issue picture ID for the desired benefit. If the applicant does <u>not</u> have the required picture ID for the desired benefit, check the applicant's AIW to see if it has been annotated by the ASC ISO. If the applicant's AIW has not been annotated, refer the applicant to the ASC ISO. |
| 3 | Verify the applicant's identity by comparing the picture ID to the applicant. If the picture ID does <u>not</u> match the applicant's physical characteristics, refer applicant to the ASC ISO. |
| 4 | Verify the accuracy of the A-number, name, and DOB by comparing the Form FD-258 card with the applicant's appointment notification letter and ID card. If the A-number, name, and/or DOB do <u>not</u> match the applicant's appointment notification letter and/or ID card, refer the applicant to the ASC ISO. |
| 5 | Verify accuracy of the other personal information by comparing picture ID and AIW. If corrections are required, direct the biometrics technician to reproduce the Form FD-258 with the correct information. |
| 6 | Verify the signature in the "Signature of Person Fingerprinted" block is the same as either the name in the "LAST NAME <u>NAM</u> FIRST NAME MIDDLE NAME" block or the "ALIASES <u>AKA</u>" block. If corrections are required, direct the biometrics technician reproduce the Form FD-258 card with the correct information. |

2012 Edition
September 2012

App. 0266

Obtained via FOIA by Judicial Watch, Inc.

## ASC Standard Operating Procedures

### Chapter 3: Benefit Procedure – Code - 1 (Fingerprinting)

### Quality Assurance (QA) Review

| Fingerprint QA Check | |
|---|---|
| **Step** | **Action** |
| 1 | Verify all fingerprints are classifiable (or best print possible) by determining ridge clarity and delta visibility. |
| 2 | Verify prints are rolled nail-to-nail in blocks 1 through 10. |
| 3 | Verify prints are not smudged and on the card in the proper order. |
| 4 | Verify press-print clarity and the total number of press-prints recorded is equal to the total number of rolled prints. |
| 5 | If there is a problem with fingerprints, direct the biometrics technician to recapture the prints on either manual tabs or full strips by following the appropriate steps for fingerprinting that thumb/finger if they have not done so. |
| 6 | Verify empty blocks on Form FD-258 are a result of missing fingers or confirmed deformity and either "XX" or "UP" is noted in the appropriate block (s) on the form. |
| 7 | Verify the signature matches the signature of a name appearing on the FD-258 card. |
| 8 | Record your six-digit employee number in the fingerprint portion of the "biometrics stamp" on the applicant's appointment notification letter. |
| 9 | Ensure "FOR OFFICIAL USE" section on the AIW is complete and accurate. |
| 10 | Return the applicant's appointment notification letter, AIW, and ID to the biometrics technician. See Note below. |
| 11 | File the applicant's Form FD-258 card in a secure location to be determined by the Site Supervisor. |

**Note:** Upon completion of the QA's check, the biometrics technician will instruct applicant to clean hands and will proceed with the dismissal procedures of the applicant if all processing has been completed. See Chapter 2 – Benefit Summaries and Common Procedures.

Obtained via FOIA by Judicial Watch, Inc.
## ASC Standard Operating Procedures

### Chapter 3: Benefit Procedure – Code - 1 (Fingerprinting)

### Section 3.B: Electronic Fingerprinting – "Live Scan"

**Background:** The biometrics workstation captures and transmits electronic "digital" fingerprints without the use of ink. The system features a continuous real-time image preview and allows operators to preview each fingerprint while pre-positioning the finger for pressure, moisture, and quality review; and to monitor image quality as the print is being rolled. The operator can use this immediate feedback image to reject and re-roll unacceptable prints before they are electronically transmitted. The demographics entry features enable operators to enter demographic data using defined, pull-down menus and/or a barcode reader. Using the biometrics workstations, technicians can perform the following basic functions:

- Enter the biographical information and store to memory.
- Query previously entered information by name, social security number, A-number, and/or date of entry.
- Capture, store, and electronically transmit fingerprints to a service center.

**Operational Procedures:** The following operational procedures shall be used in processing applicants on biometrics workstations.

Specific biometrics workstation operating instructions may be found in the current version of the Operations Guide. Biometrics workstations will be left on continuously throughout the work week unless otherwise instructed.

If an applicant does not have a first name, enter "No given name" in the "First:" name data field on the biometrics workstation demographics page.

***Amputations & Deformities:*** If the applicant has an <u>amputation</u>, one or more fingers, thumbs, or hand removed, select special options by pressing "Special" on the Control Pad. If an applicant is born with a missing finger, thumb, or hand, select "Unable to Print (UP)". Select "Amputation (XX)" for total amputation. In the case of partial amputation of the first joint of a finger or thumb, the impression of remaining end joint is placed in the appropriate block.

### Phases: Electronic Fingerprinting

- Applicant Fingerprinting (Electronic)
  - o Preparing the Applicant for Fingerprints
  - o Taking the Applicant's Press Fingerprints
  - o Taking the Applicant's Right-Hand Roll Prints
  - o Taking the Applicant's Left-Hand Roll Prints
  - o Biometrics Technician's Quality Assurance (QA) Check
- Quality Assurance (QA) Review
  - o QA Check of the Applicant's Demographics
  - o QA Check of the Applicant's Fingerprints

2012 Edition
September 2012

Obtained via FOIA by Judicial Watch, Inc.

## ASC Standard Operating Procedures

### Chapter 3: Benefit Procedure – Code - 1 (Fingerprinting)

### Applicant Fingerprinting (Electronic)

**General Procedure Description:** This phase is used in fingerprinting an applicant at a biometrics workstation.

**When to Use This Procedure:** After the applicant has completed the receptionist-processing phase.

**Who Performs This Procedure:** A biometrics technician, Site Supervisor, or ASC ISO shall complete this phase.

| Preparing the Applicant for Fingerprinting | |
|:---:|:---|
| **Step** | **Action** |
| 1 | Retrieve only the applicant from the waiting area by calling the next customer service number (if applicable) or the next applicant. Family or friends accompanying the applicant will remain in the waiting area unless their physical assistance is required to fingerprint the applicant and/or function as a translator. |
| 2 | Request the applicant's customer service number, picture ID, appointment notification letter, and AIW. |
| 3 | Verify the applicant has the required government issued picture ID for the desired benefit. If the applicant does not have the required picture ID for the desired benefit, check the applicant's AIW to see if it has been annotated by the ASC ISO. If the applicant's AIW has not been annotated, refer the applicant to the ASC ISO. |
| 4 | Verify the applicant's identity by comparing the picture ID to the applicant. If the picture ID does not match the applicant's physical characteristics, refer the applicant to the ASC ISO. |
| 5 | Verify the accuracy of the A-number, name, and DOB by comparing the AIW with the applicant's appointment notification letter and ID card. If the AIW A-number, name, and/or DOB do not match the applicant's appointment notification letter and/or ID card, refer the applicant to the ASC ISO. |
| 6 | Verify completeness of the personal information by ensuring all blocks on the AIW are checked/completed. |

**Note:** To access the biometrics workstation and enter the applicant's demographic information; refer to the most current version of the Operations Guide.

2012 Edition
September 2012

**App. 0269**

Obtained via FOIA by Judicial Watch, Inc.
## ASC Standard Operating Procedures

*Chapter 3: Benefit Procedure – Code - 1 (Fingerprinting)*

| | |
|---|---|
| *Accessing the Biometrics Workstation* **CODE 1 – APPLICANT PROCESSING** | |
| **Step** | **Action** |
| 1 | If applicable, use 2 - D barcode reader to scan 2 - D barcode from the applicant's notification letter. The demographic information entered using the 2 - D barcode displays with a prompt to add the information to the record. Press "Yes" or "Enter". |
| 2 | Complete the first three demographic screens. Edit demographic data as needed. Press F6 (Page down) to display the next demographic screen. NOTE: If the form type of the appointment notice does NOT exist on the menu pull-down options, select "X999" as the form type. (This catch-all form type will allow the continued processing of the applicant.) |
| 3 | The last demographic screen is indicated with the message "Last page-Press 'Page Down'" to complete. |
| 4 | Press F6 (Page Down). |
| 5 | Prepare to take applicant's fingerprints. |

2012 Edition
September 2012

**App. 0270**

Obtained via FOIA by Judicial Watch, Inc.

## ASC Standard Operating Procedures

*Chapter 3: Benefit Procedure – Code - 1 (Fingerprinting)*

*Applicant Fingerprinting (Electronic) (cont'd)*

| | Taking the Applicant's Press Prints |
|---|---|
| **Step** | **Action** |
| 1 | Check the applicant's hands for texture and softness. Spray fingertips with water, if needed. |
| 2 | Take the applicant's left hand. Place the applicant's left four fingers flat at a slight angle over the slap print glass prism and either press the "Capture/Yes" button on the control pad or the capture pedal. |
| 3 | Verify press print clarity. Press the "Capture/Yes" button on the control pad to approve the fingerprint or press the "No" button to reject the fingerprint. If the fingerprint is approved, the "Flat Left Thumb" screen will appear. If the fingerprint is rejected, repeat step #2. |
| 4 | Take the applicant's left hand. Place the applicant's left thumb in the center of the roll print glass prism and press the "Capture/Yes" button on the control pad. |
| 5 | Verify press print clarity. Press "Capture/Yes" button on the control pad to approve the fingerprint or press the "No" button to reject the fingerprint. If the fingerprint is approved, the "Flat Right 4" screen will appear. If the fingerprint is rejected repeat, step #4. |
| 6 | Take the applicant's right hand. Place the applicant's right four fingers flat at a slight angle over the slap print glass prism and press the "Capture/Yes" button on the control pad. |
| 7 | Verify press print clarity. Press the "Capture/Yes" button on the control pad to approve the fingerprint or press the "No" button to reject the fingerprint. If the fingerprint is approved, the "Right Flat Thumb" screen will appear. If the fingerprint is rejected, repeat step #6. |
| 8 | Take the applicant's right hand. Place the applicant's right thumb in the center of the roll print glass prism and press the "Capture/Yes" button on the control pad. |
| 9 | Verify press print clarity. Press the "Capture/Yes" button on the control pad to approve the fingerprint or press the "No" button to reject the fingerprint. If the fingerprint is approved, the "Right Thumb Roll" screen will appear. If the fingerprint is rejected repeat step #8. |

**Note:** If a biometrics technician determines that s/he <u>cannot</u> capture <u>any</u> fingerprints due to a physical impairment of the applicant, the technician <u>shall</u> refer the applicant to the ASC ISO

Obtained via FOIA by Judicial Watch, Inc.
**ASC Standard Operating Procedures**

*Chapter 3:  Benefit Procedure – Code - 1 (Fingerprinting)*

for a possible fingerprint waiver.  If the ASC ISO approves a fingerprinting waiver, the applicant shall be processed in accordance with Chapter 8, "Waivers, Re-scheduling, and Re-fingerprinting".

Obtained via FOIA by Judicial Watch, Inc.

## ASC Standard Operating Procedures

### *Chapter 3:  Benefit Procedure – Code - 1 (Fingerprinting)*

### *Applicant Fingerprinting (Electronic) (cont'd)*

| | *Taking the Applicant's Right-Hand Roll Prints* |
|---|---|
| **Step** | **Action** |
| 1 | Take the applicant's right hand.  Place the right thumb in the center of the roll print glass prism.  Roll the thumb toward the applicant's body and back to the female or male roll fingerprint start line.  Press the "Capture/Yes" button on the control pad, roll the right thumb away from the applicant's body and nail-to-nail over the roll print glass prism. |
| 2 | Verify print is classifiable (or best print possible) by determining if ridges and deltas are visible.  Press the "Capture/Yes" button on the control pad to accept the fingerprint or press the "No" button to retake the fingerprint.  If the fingerprint is accepted, the "Right Index" screen will appear.  If the fingerprint is rejected, repeat step #1. |
| 3 | Take the applicant's right hand.  Place the right index finger in the center of the roll print glass prism.  Roll the finger toward the applicant's body and back to the female or male roll fingerprint start line.  Press the "Capture/Yes" button on the control pad and roll the index finger away from the applicant's body and nail-to-nail over the roll print glass prism. |
| 4 | Verify print is classifiable (or best print possible) by determining if ridges and deltas are visible.  Press the "Capture/Yes" button on the control pad to accept the fingerprint or press the "No" button to retake the fingerprint.  If the fingerprint is accepted, the right middle fingerprint screen will appear.  If the fingerprint is rejected, repeat step #3. |
| 5 | Repeat steps 3 and 4 for the right middle, ring, and little fingers, in that order. |

**Notes:**

1. The top of the each screen will indicate the finger to roll and an arrow will indicate the recommended direction of the roll for the indicated finger.

2. The prism should be cleaned with a white cloth and appropriate cleaner, as needed.

2012 Edition
September 2012
**App. 0273**