App. 0736

# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 1:14-cv-00254 |
| UNITED STATES OF AMERICA, et al., | ) |
| Defendants | ) |

## DECLARATION OF LISA DAWN-FISHER

My name is Lisa Dawn-Fisher, and I am over the age of 18 and fully competent in all respects to make this declaration. I have personal knowledge and expertise of the matters herein stated.

1. I am the Associate Commissioner for School Finance/Chief School Finance Officer at the Texas Education Agency ("TEA"). I have worked for TEA since October 2002, previously serving as the Deputy Associate Commissioner for School Finance and as the Assistant Director for TEA's State Funding Division.

2. In my current position, I oversee TEA's school finance operations, including the administration of the Foundation School Program and analysis and processing of financial data. My responsibilities also include representing TEA in legislative hearings and school finance-related litigation.

3. In response to requests from the Legislature and the State's leadership, TEA has previously conducted analyses of expenditures that the State may incur if

1

App. 0737

there is a large influx of unaccompanied children ("UAC") coming into the Texas public school system.

4. The U.S. Department of Education has advised TEA that UAC located in U.S. Health and Human Services ("HHS") shelters will not be enrolled in the local school systems. However, when students are released to an appropriate sponsor—usually a parent, family member, or other relative—while awaiting immigration proceedings, they can enroll in local schools regardless of their or their parents' actual or perceived immigration or citizenship status. State law also requires that children attend school up to a certain age, generally 18 years old unless the child already has obtained a high school diploma or a General Educational Development certificate (among other exceptions).

5. Pursuant to the Individuals with Disabilities Education Act, local school districts have an obligation to identify students with disabilities who may be eligible for special education services. Guidance received from the U.S. Department of Education indicates that a school district has no obligation to find and serve children who are being housed in federal detention centers; this obligation applies once the children are placed with foster parents or a family in Texas.

6. School funding is comprised of federal, state, and local funds. The funding is based on projections made by each school district the previous school year. Districts often experience increases in their student enrollment from year to year, and the State plans for an increase of approximately 80,000 students in enrollment growth across Texas each year. However, a substantial influx of new students into

the Texas public school system could pose a serious burden on the State and local school districts, particularly if there is limited opportunity to plan for such an increase.

7. If there is a significant increase of new students during a school year, TEA could make adjustments to the numbers of students that the State is paying for during that school year. TEA has the ability to provide school districts with a way to submit revised attendance figures to help the funding keep pace with student enrollment. Currently, all the costs of educating these students would be borne by the State.

8. To the extent that an influx of new students is attributable to UAC, these students would add to the State's incremental education costs just like any other type of enrollment growth.

9. TEA estimates that the average funding entitlement for 2015 will be $7,903 per student in attendance for an entire school year. Assuming that a student qualifies for the additional Bilingual and Compensatory Education weighted funding (for which most, if not all, UAC presumably would qualify), it would cost the State $9,473 to educate each student in attendance for the entire school year.

10. The Foundation School Program, which serves as the primary funding mechanism for providing state aid to public schools in Texas, currently has a surplus of funds that is expected to continue in fiscal year 2015 (September 2014 – August 2015). As of November 2014, this surplus was $556 million, which could accommodate approximately 58,671 additional students funded at $9,473 per

3

student. Notwithstanding this surplus, the Foundation School Program funds that are utilized to cover the State's costs of providing public education to UAC in Texas would not otherwise be spent and instead would remain part of the surplus.

11. TEA has not received any information directly from the federal government regarding the precise number of UAC in Texas. As a result, TEA does not know whether any influx of new students into the State's public school system will exceed the number of additional students that could be accommodated by the Foundation School program surplus. However, I am aware that data from the HHS's Office of Refugee Resettlement indicates that 7,409 UAC were released to sponsors during the 12-month period covering October 2013 through September 2014. Assuming that each of these children is educated in the Texas public school system and qualifies for Bilingual and Compensatory Education weighted funding (such that the State's annual cost to educate each student would be roughly $9,473), the total one-year cost to educate this group of children would be approximately $70.18 million for the year.

12. Based on my knowledge, expertise, and research regarding school finance issues impacting the State of Texas, I anticipate that the total costs to the State of providing public education to UAC will rise in the future to the extent that the number of UAC enrolled in the State's public school system increases.

13. All of the facts and information contained within this declaration are within my personal knowledge and are true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 6 day of January, 2015.

*[Signature]*
LISA DAWN-FISHER

*[Signature: Nelda C. Eisenbeck]*
January 6, 2015

NELDA C EISENBECK
My Commission Expires
October 3, 2017

5