# EXHIBIT 17

# Congress of the United States
## Washington, DC 20515

August 29, 2014

The Honorable Jeh Johnson
Secretary
Department of Homeland Security
3801 Nebraska Avenue, N.W.
Washington, D.C. 20528

Dear Secretary Johnson:

We write regarding the Deferred Action for Childhood Arrivals (DACA) program. In June, U.S. Citizenship and Immigration Services (USCIS) published on its website a revised version of the Frequently Asked Questions (FAQs) designed to detail the process for renewal of existing DACA status and for initial DACA filings. But the ambiguity and changes to the program in the revised FAQs actually raise more questions than they answer.

Since the initial announcement regarding DACA, we as the Chairman of the House Judiciary Committee and the Ranking Member of the Senate Judiciary Committee, have written several letters to your Department requesting data and general information about DACA. We have rarely received substantive responses. Congress is entitled to know how this administration is managing the program and to whom it is providing lawful status.

We expect that your pledge of a "higher obligation to the law, to the Constitution and the laws duly enacted by this Congress" will mark a different era in which our letters and other inquiries receive timely and substantive responses from your Department.

Your Department did inform us that just 147 DACA applications have been terminated since DACA began. Some of the questions below reflect our request for additional information surrounding the terminations, in hopes of learning who is obtaining DACA, who should not be obtaining DACA and how policies can be improved to root out fraud and abuse.

Of particular concern is FAQ 21 which provides an open invitation for fraud and abuse by assuring potential DACA applicants that USCIS has no plans to actually verify the validity of any evidentiary documents submitted in support of an application. With USCIS not regularly verifying the validity of the documentary evidence provided to it, applicants will undoubtedly take advantage of this fraud loophole. The American people deserve to understand why their own government would be encouraging fraud and potentially even helping some who want to do us harm game the system in order to do so. We understand that on a June 5, 2014, conference call with Congressional staff, a USCIS employee stated that, "generally the majority of documents we receive are valid." Please forgive us if that simple "assurance" does not quell our concerns about the very real prevalence of fraud in immigration benefits applications.

PRINTED ON RECYCLED PAPER

App. 0807

The Honorable Jeh Johnson
August 29, 2014
Page 2

employee stated that, "generally the majority of documents we receive are valid." Please forgive us if that simple "assurance" does not quell our concerns about the very real prevalence of fraud in immigration benefits applications.

Validating documentary evidence submitted in support of an application for immigration benefits is especially important in light of the President's threat to administratively legalize millions of currently unlawful immigrants.

Please provide answers to the flowing questions and number each answer with the number of the corresponding question:

1) Data:
    a. How many DACA applications have been approved to date?
    b. How many DACA applications have been denied to date?
    c. How many DACA applications have been rejected to date? Please explain the various reasons why applications are rejected.
    d. How many times, to date, has DACA status been terminated? Please list the specific reasons for each termination.
    e. Of the total number of DACA terminations, how many were terminated on the grounds that the applicant was a member of a criminal alien gang (such as MS-13) or participated in the activities of a criminal alien gang?
    f. Of the total number of DACA terminations, how many were terminated on criminal activity grounds? Please break these out as to felonies, significant misdemeanors and other misdemeanors.
    g. Of the total number of DACA terminations, how many of those individuals remain in the United States? What is their status? How many have been removed?
    h. How many DACA recipients have applied for advance parole?
    i. How many DACA recipients have received advance parole?
    j. How many DACA recipients have been denied advance parole?
    k. For each advance parole approval, what purposes has advance parole been approved for DACA recipients and how many grants were based on each purpose?
    l. How many DACA recipients who have received advance parole subsequently applied for lawful permanent resident (LPR) status? Of the number who have applied for LPR, how many have received such status?
    m. How many DACA recipients have no legal status because of a visa overstay?
    n. How many individuals who have had their status terminated in SEVIS have been granted DACA? For each, what was the reason for their

The Honorable Jeh Johnson
August 29, 2014
Page 3

        terminated student visa status? What process do adjudicators follow when an applicant's status is terminated?
- o. Please provide a chart that breaks down the number of DACA recipients according to country of origin.
- p. How many DACA recipients are currently enrolled in public school? Private school? Elementary school? Junior high or middle school? High school? An alternative program? Home schooled?
- q. How many DACA recipients have been denied employment authorization?

2) What immigration benefit categories are currently being adjudicated by USCIS adjudicators who will be responsible for adjudicating DACA renewals?
3) Please provide the definition of "alternative program" as stated in FAQ 33, and the rationale for expanding the education requirement to include this type of program.
4) On what date did DHS initially contact the Department of Education about the need for a definition for "alternative program?"
5) Please provide any communications between DHS and the Department of Education regarding the concept of and definition of "alternative program."
6) Will English as a Second Language, and other programs for which DACA eligibility exists, include programs that last only one or two weeks or a matter of days?
7) What standard will adjudicators be given to assess the alternative, literacy or language programs? Will such programs be required to be certified, which is the case for inclusion in the Student Exchange and Visitor Program?
8) How many DACA applicants with felony criminal convictions, as defined in FAQ 58, have been granted DACA because the "totality of circumstances" waiver ability set out in FAQ 59 has been utilized?
9) Will Congress be briefed about the revised standards for filing of advance parole by DACA applicants prior to the revisions being implemented?
10) Will there be any exceptions to the limitations set out in FAQ 54 for a DACA applicant or recipient to receive advance parole?
11) Please provide a complete list of situations in which a person was granted advance parole for humanitarian purposes.
12) Does USCIS investigate whether a DACA applicant's diploma was awarded by a diploma mill or was otherwise illegitimately earned? If so, explain how.
13) How many cases of diploma mills and/or illegitimate school enrollments by DACA applicants, if any, has USCIS discovered? How many were discovered post-adjudication?
14) Is DACA terminated if the recipient is found to have been enrolled at an illegitimate school or provided evidence from a diploma mill?

The Honorable Jeh Johnson
August 29, 2014
Page 4

15) In FAQ 21, and during a June 5, 2014, conference call with congressional staff, USCIS has emphasized the fact that the validity of documentary evidence submitted in support of a DACA application is not routinely verified by government officials. Did you approve including FAQ 21, which clearly announces to applicants that documents, facts, and statements are not routinely verified with educational institutions, other government entities, or employers, in the USCIS materials? Why was this included in the FAQs?
16) What actions are taken if DHS finds out that a criminal alien gang member has received DACA? Is the individual issued a Notice of Intent to Terminate and then allowed time to rebut the criminal gang affiliation?
17) Has USCIS ever allowed an applicant or recipient of DACA to renounce their gang member affiliation in order to receive deferred action?
18) Please explain the interagency cooperation between USCIS and Immigration and Customs Enforcement (ICE) when a DACA recipient has DACA terminated or has committed actions making the individuals eligible for termination.
19) Please explain the interagency cooperation between USCIS and the Federal Bureau of Investigation when a DACA recipient is the subject of an FBI investigation.
20) Does USCIS share information in a DACA application with law enforcement agencies or officials, upon request, even if the application is pending?
21) In order to *initially* obtain DACA, an alien must show that he or she is enrolled in "a public, or charter elementary school, a junior high or middle school, high school or secondary school; alternative program, or homeschool program meeting state requirements." Will all DACA *renewal* applications be required to submit evidence showing that they remain enrolled in, or have actually completed, the educational program in which they stated they were enrolled for the purposes of obtaining the initial DACA grant? If not, why not? If so, how will USCIS verify the enrollment or completion?
22) An alien can have a criminal record and still receive DACA. Please provide a list of all crimes of which DACA recipients have been convicted and how many DACA recipients have been convicted of each of those crimes.
23) What is USCIS' policy regarding DACA termination for an individual who has, subsequent to the DACA grant, been convicted of a felony?
24) The current DACA fee is $465.00, but that consists of the normal $380 fee to cover the I-765 Application for Employment Authorization processing and the standard $85.00 biometric fee. What funds are used to cover the processing of the form I-821D Consideration of Deferred Action for Childhood Arrivals?
25) Please provide a list of each document that has been deemed acceptable for purposes of showing continuous presence, lack of a criminal history, illegal

App. 0810

The Honorable Jeh Johnson
August 29, 2014
Page 5

    presence prior to June 15, 2012, illegal entrance prior to age 16, physical presence in the U.S. as of June 15, 2012, and attainment of the education requirements for DACA.

    We ask that you provide answers by September 19, 2014. Please contact Kathy Nuebel with Ranking Member Grassley at (202) 224-3744 or Andrea Loving with Chairman Goodlatte at (202) 225-3951 should you have any questions. We appreciate in advance your cooperation and your prompt attention to this matter.

Bob Goodlatte
Chairman
House Judiciary Committee

Charles E. Grassley
Ranking Member
Senate Judiciary Committee