# EXHIBIT 24

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

**STATE OF TEXAS**, et al.,        )
                                   )
           Plaintiffs,      )
                                   )
v.                                )      Civil Action No. 1:14-cv-00254
                                   )
**UNITED STATES OF AMERICA**, et al.,   )
                                   )
           Defendants    )

## <u>DECLARATION OF JOE PETERS</u>

My name is Joe Peters, and I am over the age of 18 and fully competent in all respects to make this declaration. I have personal knowledge and expertise of the matters herein stated.

1.     I am the Assistant Director of the Texas Department of Public Safety (DPS) Driver License Division. In this capacity, I oversee DPS's issuance of driver licenses and identification cards to residents of the State of Texas.

2.     I was appointed to my current position in August 2013. Prior to that, I served as interim Assistant Director beginning in June 2013. From January 2012 to June 2013, I served as Special Assistant to DPS Director Steven McCraw.

3.     Pursuant to Section 521.142(a) of the Texas Transportation Code, an individual applying for an original driver license "who is not a citizen of the United States must present to the department [DPS] documentation issued by the appropriate United States agency that authorizes the applicant to be in the United States before the applicant may be issued a driver's license." Section 521.1425(d) of

1

the Transportation Code provides that DPS "may not deny a driver's license to an applicant who provides documentation described by Section 521.142(a) based on the duration of the person's authorized stay in the United States, as indicated by the documentation presented under Section 521.142(a)."

4.    If an individual presents documentation issued by the federal government showing that they are authorized to be in the United States (such as an Employment Authorization Document), and otherwise meets eligibility requirements, DPS will issue a limited term driver license to a non-citizen resident of Texas.  A license issued to such an applicant is limited to the term of the applicant's lawful presence, which is set by the federal government when it authorizes that individual's presence.  In fiscal year 2014 (September 2013 through August 2014), DPS issued 275,874 limited term licenses.

5.    For each non-United States citizen resident of Texas who seeks a limited term driver license, DPS verifies the individual's lawful presence status with the United States government using the Systematic Alien Verification of Entitlements ("SAVE") system.  Attached as Exhibit 1 to the declaration is a true and correct copy of the Memorandum of Agreement between the U.S. Department of Homeland Security and the State of Texas governing the use of the SAVE system for the purpose of verifying citizenship and immigration status information of non-citizens applying for driver licenses.  The State of Texas currently pays an average of $0.75. per customer for SAVE verification purposes.

6.    I am aware of the President's recent executive action authorizing the lawful presence of certain undocumented immigrants currently in the United

2

States.  My understanding is that the new deferred action plan may extend to more than 500,000 undocumented individuals residing in the State of Texas.  Based on these estimates, DPS anticipates that the Driver License Division will require a substantial increase in operating funds to support the implementation of the President's executive order.  This is because if those individuals are determined to be lawfully present in the United States, they will be eligible to receive a limited term driver license.

7.    DPS estimates that for each additional 1,750 driver license customers seeking a limited term license, DPS would have to hire 2.03 full time equivalent (FTE) employees to process those issuances.  If the DPS customer volume increases by 100,000 individuals, DPS estimates a total cost of approximately $16.23 million (or $ 162.39 per license issued).  This estimate includes the expenses that DPS would incur to hire and train 124 additional FTEs, purchase additional office equipment and technology to equip the available square footage at driver license offices, and produce the driver licenses.  For every 60,000 additional customers above the 100,000 customer threshold, DPS would have to open additional driver license offices or expand current facilities to meet that increase in customer demand.

8.    The table below outlines the estimated costs that DPS would incur for employee hiring and training, office space, office equipment and technology, and card production cost, based on an increase in customer volume up to 520,000 people.

3

| Cutomer Volume Scenario | Additional Employees Required | Additional Office Space Required (SqFt) | Biennial Cost for Additional Employees | Cost for Adding Customer Counters at Existing Offices | Biennial Cost for Facilities & Technology Expansion | Card Production Cost | Biennial Cost to DPS | Additional Cost to DPS per License Applicant |
|---|---|---|---|---|---|---|---|---|
| 25,000 | 30.9 | 0 | $3,829,139 | $0 | $0 | $43,000 | $3,872,139 | $154.89 |
| 100,000 | 123.4 | 0 | $15,316,557 | $750,000 | $0 | $172,000 | $16,238,557 | $162.39 |
| 160,000 | 197.5 | 24,000 | $24,506,492 | N/A | $4,800,000 | $275,200 | $29,581,692 | $184.89 |
| 220,000 | 271.6 | 48,000 | $33,696,426 | N/A | $7,800,000 | $378,400 | $41,874,826 | $190.34 |
| 340,000 | 419.7 | 96,000 | $52,076,295 | N/A | $13,800,000 | $584,800 | $66,461,095 | $195.47 |
| 400,000 | 493.8 | 120,000 | $61,266,229 | N/A | $16,800,000 | $688,000 | $78,754,229 | $196.89 |
| 520,000 | 641.9 | 168,000 | $79,646,098 | N/A | $22,800,000 | $894,400 | $103,340,498 | $198.73 |

The cost per license identified in this table only reflects the costs DPS would incur for processing original applications for driver licenses.[1] Standard term licenses issued to most citizens are valid for a period of six years with an allowance to renew online once after an office visit. Therefore, most license holders only have to visit a driver license office once every twelve years. Because limited term licenses are limited to the term of the applicant's lawful presence, it is possible that an individual would have to renew his limited term license four times during the same twelve year span. Every renewal for a limited term license requires an additional in-person visit to a DPS facility, and thus requires additional costs related to employee hiring and training, verification of lawful presence status through the SAVE system, office space, office equipment, and infrastructure. Thus, the estimated costs identified above that DPS would incur would only increase if more limited term licenses are issued.

9. DPS further anticipates that the State's cost of conducting SAVE verifications will rise to the extent that DPS's customer base increases as a result of

---

[1] The costs per license identified in the chart do not include costs for card design and additional programming for the Driver License System.

4

App. 0861

the President's executive action. This potential cost increase is in addition to the table of costs identified above and would not otherwise be incurred but for the President's executive action.

10.     DPS has also observed that its driver license services do not grow on pace with the State's population growth. This is particularly true in areas like Houston, Dallas-Fort Worth, San Antonio, Austin, El Paso, Midland-Odessa, and the Rio Grande Valley, where the population growth rate exceeds that of less populated counties. Based on the Texas Data Center information, the more populated counties grow by 4-5% each year, while the less populated counties grow by 1-2%.

11.     The added customer base that may be created by the President's executive action, assuming an applicant will be able to demonstrate they are authorized to be in the United States, will substantially burden driver license resources without additional funding and support.

12.     All of the facts and information contained within this declaration are within my personal knowledge and are true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 7th day of January, 2015.


JOE PETERS

5

App. 0862

# Exhibit 1 to
# Declaration of Joe Peters

## MEMORANDUM OF AGREEMENT

BETWEEN THE DEPARTMENT OF HOMELAND SECURITY,
U.S. CITIZENSHIP AND IMMIGRATION SERVICES,
AND
**TEXAS DEPARTMENT OF PUBLIC SAFETY, DRIVER LICENSE DIVISION**

**STATE OR LOCAL GOVERNMENT AGENCY**

**I. PARTIES.**

The parties to this Memorandum of Agreement (MOA) are the Department of Homeland Security, U.S. Citizenship and Immigration Services (DHS-USCIS), and the **Texas Department of Public Safety, Driver License Division** (User Agency).

**II. AUTHORITY.**

The authorities governing this MOA include, but are not limited to, the following:

Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105, as amended.

Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, as amended.

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009, as amended.

Privacy Act, 5 U.S.C. § 552a, as amended.

The Inter-Governmental Cooperation Act, 31 U.S.C. § 1535, as amended.

Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, as amended.

TX Trans. Code § 521.001(3), as amended.

TX Trans. Code §521.101, as amended.

TX Trans. Code §521.142(c)(7), as amended.

TX Admin Code §15.171, as amended.

Pursuant to the requirements of OMB Circular A-97, which establishes the President's guidelines for implementing the Intergovernmental Cooperation Act, 31 U.S.C. Section 6501, et seq., as amended, the User Agency certifies that it cannot procure

1

Rev. Ver. 1/19/10

**App. 0864**

the immigration status verification services requested pursuant to this MOA reasonably and expeditiously through ordinary business channels.

## III.  PURPOSE.

The purpose of this MOA is to establish the terms and conditions governing the participation of the User Agency to provide the specified benefit in the DHS-USCIS Systematic Alien Verification for Entitlements (SAVE) Program for the purpose of verifying citizenship and immigration status information of non-citizen and naturalized or derived U.S. citizen applicants (applicant) applying for **Driver's Licenses and Identification Cards** (benefits).  The limited data will be provided to the User Agency by an:

1) Initial response (initial verification) by SAVE to an on-line inquiry by the User Agency; and

2) Additional verification procedures where applicable; or

3) A response to a properly submitted Form G-845.

## IV.  RESPONSIBILITIES.

### A.  DHS-USCIS agrees to:

(1) Maintain and make available to the User Agency in limited part and manner determined by DHS-USCIS after consultation with the User Agency, an immigration and naturalized or derived citizenship status information verification system under the SAVE Program known as the Verification Information System (VIS), which can be found at http://www.dhs.gov/xinfoshare/publications/gc_1185458955781.shtm#10;

(2) Respond through VIS to properly submitted verification requests from the User Agency by providing the limited information noted in point (1) of **PURPOSE** immediately above;

(3) Process and respond to properly submitted additional verification requests submitted by the User Agency through VIS or on Form G-845.  Response time may vary, depending on DHS-USCIS workload, resources available to process additional verification requests, and the applicant's specific circumstances;

(4) Provide to the User Agency operating instructions necessary to use VIS so that the User Agency can designate Users within the agency;

(5) Provide to the User Agency SAVE Program point of contact information for questions or problems regarding the User Agency's participation in SAVE;

2

Rev. Ver. 1/19/10

App. 0865

(6) Provide access to training and information regarding the laws, policies, and procedures that govern verifying, safeguarding, using, maintaining, and disclosing certain citizenship and immigration status information;

(7) Provide the User Agency access to Form G-845, and other forms and/or supplements as appropriate, which may be reproduced and/or computer generated without prior DHS-USCIS approval;

(8) Recover no more than its actual costs. The total estimated cost of the agreement is specified on the attached USCIS Anticipated Collections from Non-Federal Sources Addendum. The User Agency certifies that it has obligated at least the amount specified on the USCIS Anticipated Collections from Non-Federal Sources Addendum to pay for its SAVE usage. DHS-USCIS shall notify the User Agency's designated Point of Contact (POC) in writing when the amount paid plus what is owed for unpaid usage equals 80% percent of the estimated total costs. DHS-USCIS will not provide services that would result in the amount paid plus the amount owed for unpaid usage exceeding the amount specified on the USCIS Anticipated Collections from Non-Federal Sources Addendum. In this instance, DHS-USICS will be excused from further performance of the work unless and until the User Agency's authorized official increases estimated total cost of this agreement by modification pursuant to provision VIII of this MOA;

(9) Submit invoices to the User Agency's payment office at the address specified on the USCIS Anticipated Collections from Non-Federal Sources Addendum, with a copy furnished to the POC. DHS-USCIS may submit invoices when the work is completed or as otherwise authorized. The High Level Identifier, tax identification number, and associated dollar amounts will be referenced on all invoices; and

(10) Promptly initiate year-end and closeout adjustments once final costs are known.

**B. User Agency agrees to:**

(1) <u>System Use</u>.

(a) Establish the identity of the applicants and require each applicant to present the applicant's immigration or naturalization documentation that contains the information (e.g., alien registration number) required by the SAVE Program;

(b) Physically examine the documentation presented by the applicant and determine whether the document(s) reasonably appear(s) to be genuine and to relate to the individual;

(c) Provide to the SAVE Program the information the SAVE Program requires to respond to User Agency requests for verification of immigration or naturalized or derived citizenship status information, including (1) information from the applicant's immigration or naturalization documentation for initial automated verification, (2) additional information obtained from the alien's immigration or naturalization documentation for

3

App. 0866

automated additional verification, and (3) completed Forms G-845 and other documents and information required for manual additional verification. For manual only verification, ensure that Forms G-845 and other documents and information required for manual verification are provided;

(d) Ensure that, prior to using VIS, all Users performing verification procedures complete SAVE required training including: reading the SAVE Program Guide, taking the latest version of Web tutorial(s) and maintaining a working knowledge of requirements contained therein and in this MOA as updated;

(e) Ensure that User Agency representatives are provided with and maintain User Ids only while they have a need to perform verification procedures;

(f) Ensure all Users performing verification procedures comply with all requirements contained in the SAVE Program Guide, web-based tutorial, and this MOA, and updates to these requirements;

(g) Ensure that all Users performing verification procedures have contact information for the SAVE Program and SAVE Monitoring and Compliance;

(h) Ensure all Users perform any additional verification procedures the SAVE Program requires and/or the applicant requests after the User Agency initiates a request for verification;

(i) Use any information provided by DHS-USCIS under this MOA solely for the purpose of determining the eligibility of persons applying for the benefit issued by the User Agency and limit use of such information in accordance with this and all other provisions of this MOA;

(j) Comply with the requirements of the Federal Information Security Management Act (FISMA (PL-107-347), Title III, Section 301) and OMB guidance as applicable to electronic storage, transport of records between agencies, and the internal processing of records received by either agency under the terms of this MOA;

(k) Safeguard such information and access methods to ensure that it is not used for any other purpose than described in this MOA and protect its confidentiality; including ensuring that it is not disclosed to any unauthorized person(s) without the prior written consent of DHS-USCIS;[1]

(l) Comply with the Privacy Act, 5 U.S.C. Section 552a, and other applicable laws, regulations, and policies, including but not limited to all OMB and DHS privacy guidance, in conducting verification procedures pursuant to this MOA, and in

---

[1] Each applicant seeking access to information regarding himself/herself may do so by submitting a written signed request to DHS-USCIS. Instructions for submitting such requests may be found on the Freedom of Information/Privacy Act page of www.uscis.gov.

4

Rev. Ver. 1/19/10

safeguarding, maintaining, and disclosing any data provided or received pursuant to the MOA;

(m) Comply with federal laws prohibiting discrimination against applicants and discriminatory use of the SAVE Program based upon the national origin, color, race, gender, religion, or disability of the applicant;

(n) Provide all benefit-applicants who are denied benefits based solely or in part on the SAVE response with adequate written notice of the denial and the information necessary to contact DHS-USCIS (see attachment 1: Fact Sheet, which is subject to revision and reposting on the SAVE Website and Online Resources) so that such individual may correct their records in a timely manner, if necessary;

(o) Provide all benefit-applicants who are denied benefits based solely or in part on the SAVE response with the opportunity to use the User Agency's existing process to appeal the denial and to contact DHS-USCIS to correct their records prior to a final decision, if necessary; and

(p) Refrain from using SAVE, or assisting any person or entity, to comply with the employment eligibility verification requirements of section 274A of the Immigration and Nationality Act, 8 U.S.C. Section 1324a.

(2) Monitoring and Compliance.

(a) Provide the SAVE Program and SAVE Monitoring and Compliance with the current e-mail, U.S postal service address, physical address, name and telephone number of the User Agency authorized representative for any notifications, questions or problems that may arise in connection with the User Agency's participation in SAVE and with notification of changes in the benefit offered by the User Agency;

(b) Notify the SAVE Program and SAVE Monitoring and Compliance immediately whenever there is reason to believe a violation of this MOA has occurred;

(c) Notify the SAVE Program and SAVE Monitoring and Compliance immediately whenever there is reason to believe an information breach has occurred as a result of User Agency action or inaction pursuant to Office of Management and Budget (OMB) Memorandum M-07-16, "Safeguarding Against and Responding to the Breach of Personally Identifiable Information";

(d) Allow SAVE Monitoring and Compliance to monitor and review all records and documents related to the use, abuse, misuse, fraudulent use or improper use of SAVE by the User Agency, including, but not limited to original applicant consent documents required by the Privacy Act, 5 U.S.C. Section 552a or other applicable authority;

(e) Allow SAVE Monitoring and Compliance to conduct desk audits and/or site visits to review User Agency's compliance with this MOA and all other SAVE-related policy,

5

Rev. Ver. 1/19/10

App. 0868

procedures, guidance and law applicable to conducting verification and safeguarding, maintaining, and disclosing any data provided or received pursuant to this MOA;

(f) Allow SAVE Monitoring and Compliance to perform audits of User Agency's User Ids use and access, SAVE Training Records, SAVE financial records, SAVE biographical information, system profiles and usage patterns and other relevant data;

(g) Allow SAVE Monitoring and Compliance to interview any and all User Agency SAVE system users and any and all contact persons or other personnel within the User Agency regarding any and all questions or problems which may arise in connection with the User Agency's participation in SAVE;

(h) Allow SAVE Monitoring and Compliance to monitor system access and usage and to assist SAVE users as necessary to ensure compliance with the terms of this MOA and the SAVE Program requirements by its authorized agents or designees; and

(i) Take corrective measures in a timely manner to address all lawful requirements and recommendations on every written finding including but not limited to those of SAVE Monitoring and Compliance regarding waste, fraud, and abuse, and discrimination or any misuse of the system, non-compliance with the terms, conditions and safeguards of this MOA, SAVE Program procedures or other applicable law, regulation or policy.

(3) <u>Reimbursement</u>.

(a) Pay the transaction prices provided in the attached current standard billing rates, which along with methods of payment are subject to change upon prior written notification to the User Agency. Each year, the User Agency will obligate funds sufficient to reimburse DHS-USCIS under a current appropriation upon execution of the attached USCIS Anticipated Collections from Non-Federal Sources Addendum;

(b) Pay in full within 30 days of the invoice date. The User Agency will pay any applicable sales, use, excise, and like taxes, where required by law, that are stated on each invoice. Regardless of payment type, the User Agency will clearly indicate the High Level Identifier with remittance;

(c) If the User Agency pre-pays for its usage, it shall submit the entire committed amount before being allowed access to VIS; and

(d) Promptly discuss and resolve issues and questions with DHS-USCIS regarding payments. Delinquent payments shall be handled in accordance with the Debt Collection and Improvement Act of 1996, 31 U.S.C. Section 3701. Interest on all unpaid balances shall be charged at the rate of the current value of funds to the United States Treasury effective on the date of the invoice. The rate is the Treasury tax and loan rate. It is published annually or quarterly by the Secretary of the Treasury in the Federal Register and the Treasury Fiscal Requirements Manual Bulletins. Handling charges will accrue at monthly rates of $5.00 for each of the first two months of delinquency and $10.00 for

6

Rev. Ver. 1/19/10

App. 0869

each month thereafter.  In addition to interest and handling charges, if DHS-USCIS does not receive payment within 90 days of the invoice, 6% per annum additional interest will be assessed.  Charges will be computed from the date of the invoice and will accrue monthly with the applicable interest and handling charges.  In the case of any late payment, the amount received will be applied in this sequence: (1) to any accrued penalty and handling charges; (2) to any accrued interest; and (3) to outstanding principal. Failure to make timely payment may result in termination of services.

## V. POINTS OF CONTACT.

USCIS SAVE Program MS 2620, U.S. Citizenship and Immigration Services, Department of Homeland Security, Washington, DC 20529-2620, (888) 464-4218, Attn: SAVE Operations. E-mail: SAVEregistration@dhs.gov.

USCIS SAVE Monitoring and Compliance MS 2640, U.S. Citizenship and Immigration Services, Department of Homeland Security, Washington, DC 20529-2640, (888) 464-4218.  E-mail: SAVE.monitoring@dhs.gov.

USER AGENCY- Ron Coleman, Program Administrator, 5805 N. Lamar Blvd., Austin, TX 78752, (512) 424-7652.  E-mail: ron.coleman@txdps.state.tx.us.

## VI. OTHER PROVISIONS.

(A) MOA Responsibilities.  Only authorized employees, agents, or designees of DHS-USCIS and the User Agency will carry out the requirements of this MOA.  In carrying out these responsibilities, they will operate within the scope of applicable regulations, specifically delegated authorities, the program authorities and funding limitations and terms and conditions of this MOA.

(B) Determining Benefit Eligibility.  This MOA is limited to the provision of verification services.  DHS-USCIS will verify limited citizenship and immigration status information, but will not recommend to the User Agency whether to issue the benefit.  The DHS-USCIS response is not intended to be, and should not be construed as, an opinion on the part of DHS-USCIS or the United States regarding any right or benefit under any program administered by the User Agency.  The User Agency has the responsibility to determine the applicant's eligibility for the benefit.

(C) Criminal Penalties.

(1) DHS-USCIS reserves the right to use information from the User Agency for any purpose permitted by law, including, but not limited to, the prosecution of violations of Federal administrative or criminal law.

(2) The User Agency acknowledges that the information it receives from DHS-USCIS is governed by the Privacy Act, 5 U.S.C. Section 552a(i)(1), and that any person who

Rev. Ver. 1/19/10

App. 0870

obtains this information under false pretenses or uses it for any purpose other than as provided for in this MOA may be subject to criminal penalties.

(D) Third Party Liability.

(1) Each party to this MOA shall be solely responsible for its own defense against any claim or action by third parties arising out of or related to the execution and/or performance of this MOA, whether civil or criminal, and retain responsibility for the payment of any corresponding liability.

(2) Nothing in this MOA is intended, or should be construed, to create any right or benefit, substantive or procedural, enforceable at law by any third party against the United States, its agencies, officers, or employees or the User Agency.

(E) Disputes. Disagreements on the interpretation of the provisions of this MOA that cannot be resolved between the DHS-USCIS program office and the User Agency point of contact should be provided in writing to the authorized officials at both agencies for resolution. If settlement cannot be reached at this level, the disagreement will be elevated to the next level in accordance with DHS-USCIS procedures for final resolution.

(F) Conflicts. This MOA, its attachments and addenda constitute the full MOA on this subject between DHS-USCIS and the User Agency. Any inconsistency or conflict between or among the provisions of this MOA, will be resolved in the following order of precedence: (1) this MOA and (2) other documents incorporated by reference in this MOA, i.e., the USCIS Anticipated Collections from Non-Federal Sources Addendum, and standard billing rates.

(G) Severability. Nothing in this MOA is intended to conflict with current law or regulation or the directives of DHS, DHS-USCIS, or the User Agency. If a term of this MOA is inconsistent with such authority, then that term shall be invalid but, to the extent allowable, the remaining terms and conditions of this MOA shall remain in full force and effect. In the event of a conflict that prevents either party from fulfilling its obligations, this MOA may be immediately canceled without providing the 30 day notice period referenced in Section IX.

(H) Assignment. The User Agency may not assign this MOA, nor may it assign any of its rights or obligations under this MOA. To the extent allowable by law, this MOA shall inure to the benefit of, and be binding upon, any successors to DHS-USCIS and the User Agency without restriction.

(I) Waiver. No waiver by either party of any breach of any provision of this MOA shall constitute a waiver of any other breach. Failure of either party to enforce at any time, or

8

Rev. Ver. 1/19/10

**App. 0871**

from time to time, any provision of this MOA shall not be construed to be a waiver thereof.

## VII.  EFFECTIVE DATE.

This MOA shall be effective when the DHS-USCIS authorized official and User Agency authorized official have both signed the MOA.  This MOA shall continue in effect unless modified or terminated in accordance with the provisions of this MOA.

## VIII.  MODIFICATION.

(A) This MOA is subject to periodic review by DHS-USCIS, its authorized agents or designees, and, if necessary, periodic modification and/or renewal to assure compliance with current law, policy, and standard operating procedure(s).  This MOA and the attached USCIS Anticipated Collections from Non-Federal Sources Addendum constitute the complete MOA between the parties for its stated purpose, and no modification or addition will be valid unless entered into by mutual consent of both parties evidenced in writing and signed by both parties and appended to this agreement; and

(B) The User Agency may accomplish a unilateral administrative modification to add funds to the MOA, and either party may accomplish a unilateral administrative modification to change POC information.  A written bilateral modification (i.e., agreed to and signed by authorized officials of both parties) is required to change any other term of this MOA.

## IX.  TERMINATION.

Either party may terminate this MOA at any time by providing 30 days written notice of intent.  DHS-USCIS, when feasible, will consult with the User Agency and attempt to reconcile issues before terminating this MOA.  Notwithstanding any other provision in the MOA, DHS-USCIS may suspend or terminate this MOA without prior notice if deemed necessary because of a requirement of law or policy, upon a determination by DHS-USCIS that there has been a breach of system integrity or security by the User Agency or a failure by the User Agency to comply with established procedures or legal requirements, including but not limited to failure to pay.

Written notices shall be sent to the addresses of the POCs listed herein and shall be effective upon receipt.  Either party may change its POC by written notice to the other party.

The foregoing, in conjunction with the referenced and incorporated attachments, constitutes the full agreement on this subject between DHS-USCIS and the User Agency.

9

Rev. Ver. 1/19/10

App. 0872

This MOA supersedes all previous agreements governing the provision of verification services. Those agreements are explicitly acknowledged to be null and void.

Rev. Ver. 1/19/10

**App. 0873**

The undersigned represent that they are authorized to enter into this MOA on behalf of DHS-USCIS and the User Agency, respectively.

John B. Roessler
Chief, SAVE Program
U.S. Citizenship and Immigration Services
Department of Homeland Security

Cheryl MacBride
Deputy Director,
Services
Texas Department of Public Safety

6/3/11
Date

6/8/11
Date

11

Rev. Ver. 1/19/10

App. 0874

U.S. Department of Homeland Security
U.S. Citizenship and Immigration
Services
Verification Division
Washington, DC 20024



U.S. Citizenship
and Immigration
Services

# Fact Sheet

### Information for Applicants: Verification of Immigration Status and
### How to Correct Your Record with USCIS

Many federal, state and local agencies verify the immigration status of benefit applicants to ensure that only qualified aliens or naturalized and derived citizens receive benefits. These agencies verify immigration status by using the Systematic Alien Verification for Entitlements (SAVE) Program of the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS).

The benefit-granting agency has submitted your information to the SAVE Program for verification. Because the SAVE Program cannot confirm your immigration status after completion of a process that includes the agency providing USCIS with a copy of your immigration documentation, you must be given an opportunity to correct your records with USCIS and reapply for the benefit and/or appeal the denial of the benefit. Please note that there are a number of reasons why the SAVE Program may not be able to verify your immigration status. The inability of the SAVE Program to verify your status does not necessarily mean that you are not authorized to be in the United States or are ineligible to receive the benefit for which you applied.

If you believe that the SAVE Program response to the benefit-granting agency did not provide accurate information about your actual immigration status and/or you need to make corrections to your immigration record, please contact USCIS by using one of the following methods:

**1. Schedule an appointment for an in-person interview at a local USCIS office.** You may schedule an appointment at a local USCIS office at the InfoPass website, **http://infopass.uscis.gov**, or by calling the National Customer Service Center, **1-800-375-5283**. Scheduling an appointment is the fastest way to correct your records. We recommend that you bring to your appointment this Fact Sheet, documentation evidencing your immigration status, and any information provided by the benefit-granting agency concerning why your immigration status makes you ineligible to receive the benefit.

**2. Submit a request in writing.** If you know the information that needs to be corrected in your record, you may submit a request to correct your records to the Freedom of Information Act/Privacy Act (FOIA/PA) Office at the following address:

Privacy Act Amendment
U.S. Citizenship and Immigration Services
National Records Center
FOIA/PA Office

Rev. Ver. June 16, 2009

**App. 0875**

P.O. Box 648010
Lee's Summit, MO 64064-8010

**We recommend that you include the following information in your submission, if available:**

- State that you were denied benefits
- Information that is inaccurate
- Proposed change(s) to the record
- Date and place of birth
- A return address

- Copies of your immigration /naturalization status documents
- Reason it is inaccurate
- A-File number and/or the full name
- Notarized signature of the applicant
- Other information that may assist in locating the record

If you do not know the information you need to correct, you may submit a written request to **obtain** your records by submitting Form G-639, *FOIA/PA Request*. This form is available from the nearest USCIS office or online at **http://www.uscis.gov/files/form/g-639.pdf** . You should use the address specified above, but mark the envelope *"Privacy Act Request"* rather than *"Privacy Act Amendment."*

Rev. Ver. June 16, 2009

**App. 0876**



U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Office of Verification, SAVE Program*
Washington, DC 20529

**U.S. Citizenship
and Immigration
Services**

## USCIS Anticipated Collections from Non-Federal Sources Addendum

*The following information must be listed on this addendum and submitted to complete the Memorandum of Agreement*

| All Participating Agencies Please Complete the Below Information | | Please Update Information as Necessary in this column |
|---|---|---|
| **1.  Agency Name:** | Texas Department of Public Safety | |
| **2.  Billing (Accounts Payable) Point of Contact** | | |
| Name: | Courtney Behrens | |
| Phone # (Area Code): | 512-424-2070 | |
| Fax # (Area Code): | 512-424-2816 | |
| E-mail: | apinvoices@txdps.state.tx.us | |
| Address: | PO Box 4087 | |
| Address (2nd line): | | |
| City, State Zip: | Austin, Texas 78773 | |
| **3.  Identifying Information** | | |
| Tax Identification Number (TIN): | 74-6000130 | |
| Data Universal Numbering System (DUNS) **or** Business Partner Network (BPN) number - *You may obtain your DUN/BPN at http://www.ccr.gov/* | 806782272 | |
| **4.  Payment & Budgeting Information** | | |
| Purchase Commitment Number: | 405-11-06599 | Update: |
| Payment Method *(Choose and insert one of the following: wire transfer, check, or credit card).* | Check | Update: |
| Amount Obligated (Budgeted): | $349,904.00 | Update: |
| Funds Expiration Date: | June 30, 2012 | Update: |
| **5.  Program Point of Contact** | | |
| Name: | Ron Coleman | |
| Phone Number: | 512-424-7652 | |
| POC e-mail address: | ron.coleman@txdps.state.tx.us | |

This agreement will commence as soon as all signatures are obtained in accordance with the Memorandum of Agreement.  Both parties must agree to any amendments prior to their implementation in accordance with the Memorandum of Agreement.

Agency High Level Identifier

DLTX

Cheryl MacBride
Deputy Director - Services

John E. Roessler
Chief, SAVE Program, DHS USCIS

Date   5/24/11

Date   5/13/11

**Please return this document to the SAVE Program by one of these three methods.**

1. By E-mail: save.help@dhs.gov

2. By US mail
SAVE Program MS 2620
U.S. Citizenship and Immigration Services
Department of Homeland Security
Washington, DC 20529-2620
Attention: SAVE Operations



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of Verification, SAVE Program*
Washington, DC 20529

**U.S. Citizenship
and Immigration
Services**

## USCIS Anticipated Collections from Non-Federal Sources Addendum

*The following information must be listed on this addendum and submitted to complete the Memorandum of Agreement*

Please return this document to the SAVE Program by one of these three methods.

1. By Fax:    202-358-7867
2. By e-mail:   Save.Help@dhs.gov (must be a signed scan)

3. By US mail:    SAVE Program
490 L'Enfant Plaza East, SW, Suite 7112
Washington, DC 20024-2135
Attention: Chief, SAVE Liaison