# EXHIBIT 29

App. 0976



U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Office of the Director (MS 2000)
Washington, DC 20529-2000

**U.S. Citizenship and Immigration Services**

OCT 0 9 2014

The Honorable Charles Grassley
Ranking Member
Committee on the Judiciary
United States Senate
Washington, DC 20510

Dear Senator Grassley:

Thank you for your August 29, 2014 letter to Secretary Johnson requesting information about the Deferred Action for Childhood Arrivals program implemented by U.S. Citizenship and Immigration Services. I was asked to respond to you directly.

I appreciate the opportunity to respond to your request for data and your questions regarding the program. In Enclosure 1, to the extent possible in light of limitations on data availability as described therein, you will find detailed responses to your questions.

Thank you again for your letter and your interest in this important matter. A separate, identical response will be sent to Chairman Goodlatte, who cosigned your letter. Should you wish to discuss this further, please do not hesitate to contact me.

Respectfully,

León Rodríguez
Director

Enclosures

www.uscis.gov      App. 0977

Enclosure 1

**Department of Homeland Security Responses to Chairman Goodlatte and Senator Grassley Regarding the Deferred Action for Childhood Arrivals (DACA) Program**

1) **Data**
   a. **How many DACA applications have been approved to date?**

   From August 15, 2012, through July 31, 2014, USCIS approved 591,555 requests for DACA (Form I-821D, *Consideration of Deferred Action for Childhood Arrivals*), including 591,362 initial requests and 193 requests for renewal.

   b. **How many DACA applications have been denied to date?**

   From August 15, 2012, through July 31, 2014, USCIS denied 26,130 requests for DACA, including 26,128 initial requests and 2 requests for renewal.

   c. **How many DACA applications have been rejected to date? Please explain the various reasons why applications are rejected.**

   Beginning August 15, 2012, requests for deferred action under the DACA program have been filed with the USCIS Lockbox facility. From August 15, 2012, through August 31, 2014, USCIS rejected 42,906 requests for DACA (Form I-821D). The top 4 rejection reasons are as follows:
   - Using an expired version of the Form I-821D
   - Failure to provide a valid signature
   - Failure to file the Form I-765, *Application for Employment Authorization*, failure to provide the correct fee associated with that form, or filing an incomplete Form I-765 with the Form I-821D
   - Filing while under the age of 15

   d. **How many times, to date, has DACA status been terminated? Please list the specific reasons for each termination.**

   DACA does not confer any lawful immigration status. Deferred action, for any reason, is an exercise of prosecutorial discretion to defer removal action against an individual for a certain period of time. USCIS guidance provides that DACA can be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion. Some examples of reasons to terminate include, but are not limited to: approval in error, fraud, conviction of a disqualifying offense, and posing a threat to national security or public safety.

   Generally, USCIS will issue a Notice of Intent to Terminate DACA before issuing a Termination Notice. However, DACA terminates automatically as of

the date that U.S. Immigration and Customs Enforcement (ICE) or U.S. Customs and Border Protection (CBP) issue a Notice to Appear (NTA) for removal proceedings. USCIS notifies DACA recipients of the automatic termination by issuing a Notice of Action informing the individual that his or her DACA is terminated as of the date the NTA was issued. DACA also terminates automatically as of the date of departure if an individual travels outside of the United States (on or after August 15, 2012) without advance parole.

As of August 31, 2014, USCIS has terminated 113[1] DACA cases based on the following reasons:
- Issuance of an NTA by U.S. Immigration and Customs Enforcement (ICE) or U.S. Customs and Border Protection (CBP) – 68 cases
- DUI conviction – 11 cases
- USCIS error (e.g., upon further review, USCIS determined the requestor did not satisfy all DACA guidelines at the time of filing) – 11 cases
- Felony conviction – 5 cases
- Acquired lawful status – 5 cases
- ICE enforcement priority (not including issuance of an NTA or deportation after DACA approval) – 4 cases
- Drug-related conviction – 3 cases
- Significant misdemeanor conviction (other than DUI) – 2 cases
- Deportation after DACA approval – 1 case
- International travel without advance parole – 1 case
- Aggravated assault conviction – 1 case
- Gang membership/public safety – 1 case

e. **Of the total number of DACA terminations, how many were terminated on the grounds that the applicant was a member of a criminal alien gang (such as MS-13) or participated in the activities of a criminal alien gang?**

As of August 31, 2014, one case has been terminated on the grounds that the DACA recipient was a member of a criminal street gang. A favorable exercise of discretion would not be extended to a member of a criminal street gang.

---

[1] Based upon its records, USCIS initially determined that 147 DACA cases had been terminated. (The number 147 was also shared in Director Rodriguez's July 29, 2014 testimony before the House Judiciary Committee). USCIS has subsequently determined the number of 147 was inaccurate because USCIS had recorded 34 of these cases as "terminations" in error within USCIS systems, leaving a total of 113 terminations. Of the 34 cases, 10 cases were approved, 11 acquired lawful immigration status through other means, and 13 were denied.

2

App. 0979

f. **Of the total number of DACA terminations, how many were terminated on criminal activity grounds? Please break these out as to felonies, significant misdemeanors and other misdemeanors.**

USCIS has terminated DACA cases according to the following criminal grounds:
- 11 cases were terminated due to DUI convictions (significant misdemeanor)
- 2 were terminated due to other significant misdemeanor convictions
- 3 cases were terminated due to disqualifying drug-related convictions (felony)
- 1 case was terminated due to an aggravated assault conviction (felony)
- 5 cases were terminated due to other felony convictions

g. **Of the total number of DACA terminations, how many of those individuals remain in the United States? What is their status? How many have been removed?**

Pursuant to an ICE ERO review completed on September 17, 2014 of a USCIS-provided list of 113 alien file numbers reflecting DACA terminations:
- 21 of these aliens were removed in FY13 and FY14YTD.
- 92 aliens remain in the United States.
  - 56 are currently non-detained pending a final order of removal.
  - 7 are currently non-detained with a final order of removal.
  - 3 are currently detained and are all pending a final order of removal.
  - 21 were identified by USCIS as a DACA termination but to date, ICE systems do not reflect any subsequent action taken.
  - 5 acquired lawful status

h. **How many DACA recipients have applied for advance parole?**

As of July 31, 2014, DHS has received 6,458 advance parole applications (Form I-131, *Application for Travel Document*) submitted by DACA recipients.

i. **How many DACA recipients have received advance parole?**

As of July 31, 2014, DHS has approved 4,000 advance parole applications submitted by DACA recipients.

j. **How many DACA recipients have been denied advance parole?**

3

App. 0980

As of July 31, 2014, DHS has denied 566 advance parole applications submitted by DACA recipients.

**k. For each advance parole approval, what purposes has advance parole been approved for DACA recipients and how many grants were based on each purpose?**

DHS does not track this information. However, advance parole may be granted to DACA recipients if they demonstrate that travel abroad will be for the following:
- Educational purposes;
- Employment purposes; or
- Humanitarian purposes.

**l. How many DACA recipients who have received advance parole subsequently applied for lawful permanent resident (LPR) status? Of the number who have applied for LPR, how many have received such status?**

DHS does not track this information for DACA recipients.

**m. How many DACA recipients have no legal status because of a visa overstay?**

DHS does not track this information.

**n. How many individuals who have had their status terminated in SEVIS have been granted DACA? For each, what was the reason for their terminated student visa status? What process do adjudicators follow when an applicant's status is terminated?**

DHS does not track this information.

**o. Please provide a chart that breaks down the number of DACA recipients according to country of origin.**

The total number of individuals approved for DACA as of July 31, 2014, is 591,362.[2] Enclosure 2 provides a breakdown by country of birth.

---

[2] Please note that this number is lower than the 591,555 *total* approved DACA requests stated in response to Question 1)a. above because that response also incorporated renewal requests from 193 individuals previously granted DACA. In order to avoid duplicate counting of individual DACA recipients for this question, we subtracted the renewals.

4

> p. How many DACA recipients are currently enrolled in public school? Private school? Elementary school? Junior high or middle school? High school? An alternative program? Home schooled?

USCIS does not track this information.

> q. How many DACA recipients have been denied employment authorization?

As of July 31, 2014, USCIS has denied 635 applications for employment authorization (Form I-765), submitted based on DACA eligibility category (c)(33).

2) **What immigration benefit categories are currently being adjudicated by USCIS adjudicators who will be responsible for adjudicating DACA renewals?**

USCIS uses and shifts its resources as needed to maintain processing times and avoid backlogs to the extent possible. As USCIS has been hiring and training additional adjudicators to meet workload demands, some will be initially assigned to adjudicate DACA requests. Other immigration services officers have been added from the team located at the Nebraska Service Center that adjudicates Form I-90, *Application to Replace Permanent Resident Card*, and from the team at the Texas Service Center that adjudicates Form I-129F, *Petition for Alien Fiancé(e)*, and Form I-130, *Petition for Alien Relative*.

3) **Please provide the definition of "alternative program" as stated in FAQ 33, and the rationale for expanding the education requirement to include this type of program.**

An alternative school or program addresses the needs of students that typically cannot be met in a regular school program either as (i) a stand-alone elementary or secondary school or (ii) a program adjunct to or within a school. The school or program provides nontraditional education and falls outside of the categories of regular education, special education, or vocational education.

4) **On what date did DHS initially contact the Department of Education about the need for a definition for "alternative program"?**

DHS and the Department of Education have been partnering together since 2012 on the development of the DHS education guidelines related to the DACA program, including the understanding of the use of the term "alternative program."

5) **Please provide any communications between DHS and the Department of Education regarding the concept of and definition of "alternative program."**

5

As noted above, DHS and the Department of Education have had multiple discussions regarding the use of the term "alternative program" in order to reach an agreed-upon definition.

6) **Will English as a Second Language, and other programs for which DACA eligibility exists, include programs that last only one or two weeks or a matter of days?**

There is no minimum length requirement. To be considered "currently in school" under the DACA guidelines, at the time of filing the DACA request an individual must be in:
- a public, private, or charter elementary school, junior high school or middle school, high school, secondary school, alternative program, or homeschool program meeting state requirements;
- an education, literacy, or career training program (including vocational training) that has a purpose of improving literacy, mathematics, or English or is designed to lead to placement in postsecondary education, job training, or employment, and the individual is working toward such placement; or
- an education program assisting students either in:
  - obtaining a regular high school diploma or its recognized equivalent under state law (including a certificate of completion, certificate of attendance, or alternate award), or
  - passing a GED exam or other state-authorized exam (e.g., HiSet or TASC) in the United States.

7) **What standard will adjudicators be given to assess the alternative, literacy or language programs? Will such programs be required to be certified, which is the case for inclusion in the Student Exchange and Visitor Program?**

Adjudicators will evaluate if a requestor is enrolled in a qualifying alternative program by determining whether or not the program addresses student needs that typically cannot be met in a regular school program either as (i) a stand-alone elementary or secondary school or (ii) a program adjunct to or within a school. Such a school or program provides nontraditional education and falls outside of the categories of regular education, special education, or vocational education.

USCIS adjudicators are instructed that literacy or ESL programs may be acceptable to meet the "currently in school" guideline for DACA, if they are funded in whole or in part by Federal, state, county or municipal grants or are administered by a nonprofit, federally tax exempt organization. If the literacy or ESL program is not publically funded and not administered by a nonprofit, federally tax exempt organization, then

6

App. 0983

the requestor must show that the program is of demonstrated effectiveness. These programs are not required to be certified.

8) **How many DACA applicants with felony criminal convictions, as defined in FAQ 58, have been granted DACA because the "totality of circumstances" waiver ability set out in FAQ 59 has been utilized?**

As of September 11, 2014, DHS has not granted any DACA request from an individual found to have been convicted of a disqualifying offense. No exceptional circumstances have been found to overcome criminal, national security, or public safety grounds for denial.

9) **Will Congress be briefed about the revised standards for filing of advance parole by DACA applicants prior to the revisions being implemented?**

DHS has previously provided information to congressional staff through GovDelivery as well as teleconferences regarding parameters of the DACA renewal program. We will be glad to provide further information regarding any changes to the standards for advance parole filing prior to implementation of such revisions.

10) **Will there be any exceptions to the limitations set out in FAQ 54 for a DACA applicant or recipient to receive advance parole?**

DHS will continue to evaluate the progress of the DACA program and make any necessary changes to the parameters as appropriate.

11) **Please provide a complete list of situations in which a person was granted advance parole for humanitarian purposes.**

DHS does not track this information. However, examples of acceptable humanitarian purposes include travel to obtain medical treatment, attend funeral services for a family member, or visit an ailing relative.

12) **Does USCIS investigate whether a DACA applicant's diploma was awarded by a diploma mill or was otherwise illegitimately earned? If so, explain how.**

USCIS officers are trained to identify educational documents of questionable authenticity, as well as to identify documents issued by suspect institutions. In those circumstances where a USCIS officer recognizes or suspects that a DACA requestor's educational credentials are awarded by a suspect institution or otherwise question their validity, the USCIS officer will take appropriate action. Specifically, where an entity that does not appear to provide the acceptable educational programs described in USCIS's DACA guidelines or it appears the requestor's credentials were otherwise

7

illegitimately obtained, the immigration services officer will forward the case to a fraud officer to further investigate the validity of the documents or the institution.

13) **How many cases of diploma mills and/or illegitimate school enrollments by DACA applicants, if any, has USCIS discovered? How many were discovered post-adjudication?**

DHS does not track the number of DACA requests that have been submitted with educational credentials from questionable institutions. USCIS evaluates each DACA request on a case-by-case basis to determine whether or not the requestor's educational credentials meet the guidelines.

14) **Is DACA terminated if the recipient is found to have been enrolled at an illegitimate school or provided evidence from a diploma mill?**

If USCIS discovers it approved a DACA request in error because the requestor did not meet the guidelines—including the educational guidelines for initial requests—the agency may issue a Notice of Intent to Terminate DACA. If the requestor's response does not overcome the grounds of concern, the DACA would subsequently be terminated.

15) **In FAQ 21, and during a June 5, 2014, conference call with congressional staff, USCIS has emphasized the fact that the validity of documentary evidence submitted in support of a DACA application is not routinely verified by government officials. Did you approve including FAQ 21, which clearly announces to applicants that documents, facts, and statements are not routinely verified with educational institutions, other government entities, or employers, in the USCIS materials? Why was this included in the FAQs?**

FAQ 21 does not signify that USCIS will not routinely verify documents, facts, or statements with educational institutions. USCIS immigration officers are trained to evaluate evidence submitted to satisfy the DACA guidelines on a case-by-case basis and to identify indicators of fraud. USCIS has the authority to contact educational institutions, government agencies, employers, or other entities in order to verify information where there is an indication of fraud. DACA requestors are cautioned that knowingly misrepresenting or failing to disclose facts in an attempt to receive DACA subjects them to criminal prosecution and possible removal from the United States.

16) **What actions are taken if DHS finds out that a criminal alien gang member has received DACA? Is the individual issued a Notice of Intent to Terminate and then allowed time to rebut the criminal gang affiliation?**

8

If an egregious public safety concern, such as certain criminal gang activity, arises after a grant of DACA, USCIS will refer the case to ICE and follow the procedures outlined in the November 7, 2011, Notice to Appear memorandum for egregious public safety cases.

If ICE accepts the case, its issuance of the Notice to Appear will result in automatic termination of DACA and the associated employment authorization. If ICE does not accept the case, USCIS will reopen the case on a service motion and either issue a Notice of Intent to Terminate or a Termination Notice, depending on the specific facts of the case.

If a Notice of Intent to Terminate is issued, and the adverse grounds are not overcome, USCIS will subsequently issue a Termination Notice. This will indicate that the DACA and the associated employment authorization are terminated as of the date of the Termination Notice. USCIS will then refer the case to ICE post-adjudication.

### 17) Has USCIS ever allowed an applicant or recipient of DACA to renounce their gang member affiliation in order to receive deferred action?

No. If USCIS discovers evidence that a requestor is or has been affiliated with a gang, USCIS will evaluate the case based on the totality of evidence available to determine whether the individual poses a threat to public safety. USCIS may conduct a field interview with a suspected gang member or former gang member in an attempt to gather additional information. However, if the information available to USCIS (through background checks, ICE Homeland Security Investigations, and local police) indicates that a DACA requestor is or has been affiliated with a gang, the requestor would have to provide compelling evidence to the contrary. The requestor would also have to show that he or she does not pose a threat to public safety. Simply renouncing gang affiliation would not be sufficient to overcome public safety concerns.

### 18) Please explain the interagency cooperation between USCIS and Immigration and Customs Enforcement (ICE) when a DACA recipient has DACA terminated or has committed actions making the individuals eligible for termination.

ICE generally issues a Notice to Appear if it identifies that a DACA recipient has been convicted of a disqualifying crime or is otherwise an enforcement priority. The NTA automatically terminates the DACA and the accompanying employment authorization. ICE will notify USCIS of the NTA so that USCIS may update its records. USCIS will also inform the DACA recipient of the automatic termination as of the date that ICE issued the notice.

9

If USCIS identifies that a DACA recipient has committed a criminal action that potentially warrants termination of DACA and a NTA has not been issued, USCIS will send the recipient a Notice of Intent to Terminate. After the 33-day period for a response expires, USCIS will review the evidence submitted in response to the Notice of Intent to Terminate, including any response, and determine whether or not to terminate DACA. If DACA and the accompanying employment authorization are terminated, USCIS will notify ICE of the termination.

19) **Please explain the interagency cooperation between USCIS and the Federal Bureau of Investigation when a DACA recipient is the subject of an FBI investigation.**

If USCIS discovers that a DACA requestor is the subject of an FBI investigation, USCIS will contact the FBI record owner to discuss the impact that processing the DACA request may have on the investigation.

The FBI may request that USCIS hold the case in abeyance while the investigation is completed or indicate that the continued processing of the DACA request would not impede their ongoing investigation. USCIS will take into account all relevant information prior to determining whether an exercise of prosecutorial discretion is warranted.

20) **Does USCIS share information in a DACA application with law enforcement agencies or officials, upon request, even if the application is pending?**

USCIS will share information in a pending DACA request with national security and law enforcement agencies, including ICE and CBP, for authorized law enforcement purposes other than removal, including:
- assistance in the consideration of DACA;
- identifying or preventing fraudulent claims;
- national security purposes; or
- investigating or prosecuting a criminal offense.

USCIS will provide such information in accordance with relevant privacy, confidentiality and other disclosure-related laws, regulations, and policies.

21) **In order to *initially* obtain DACA, an alien must show that he or she is enrolled in "a public, or charter elementary school, a junior high or middle school, high school or secondary school; alternative program, or homeschool program meeting state requirements." Will all DACA *renewal* applicants be required to submit evidence showing that they remain enrolled in, or have actually completed, the educational program in which they stated they were enrolled for**

10

App. 0987

the purposes of obtaining the initial DACA grant? If not, why not? If so, how will USCIS verify the enrollment of completion?

Individuals who initially received DACA will be considered for renewal unless they engaged in certain criminal activity, departed the country without the government's permission, or stopped residing in the United States. DHS recognizes that a variety of circumstances may have led individuals enrolled in school at the time of their initial request to stop attending. DHS has determined that such a circumstance does not, by itself, necessarily merit denying a request to renew DACA.

22) **An alien can have a criminal record and still receive DACA. Please provide a list of all crimes of which DACA recipients have been convicted and how many DACA recipients have been convicted of each of those crimes.**

DHS does not track this information.

23) **What is USCIS's policy regarding DACA termination for an individual who has, subsequent to the DACA grant, been convicted of a felony?**

If a recipient is convicted of a felony after the DACA grant, the DACA will be terminated in one of two ways:

1. If the disqualifying criminal offense is deemed to be an egregious public safety concern, USCIS will refer the case to ICE and follow the procedures outlined in the November 7, 2011, Policy Memorandum 602-0050 Revised Guidance for the Referral of Cases and Issuance of Notices to Appear memorandum for egregious public safety cases.

    If ICE accepts the case, its issuance of the NTA will result in an automatic termination of DACA and employment authorization. If ICE does not accept the case, USCIS will reopen the case on a service motion and either issue a Notice of Intent to Terminate or a Termination Notice, depending on the specific facts of the case.

    If a Notice of Intent to Terminate is issued, the individual has 33 days to respond. If the adverse grounds are not overcome, USCIS will subsequently issue a Termination Notice, indicating that the DACA and the associated employment authorization are terminated as of the date of the notice. USCIS will then refer the case to ICE post-adjudication.

2. If the disqualifying criminal offense is deemed to be a non-egregious public safety concern, USCIS will reopen the case on a service motion and either issue a Notice

11

App. 0988

of Intent to Terminate or a Termination Notice, depending on the specific facts of the case.

If a Notice of Intent to Terminate is issued, and the adverse grounds are not overcome, USCIS will subsequently issue a Termination Notice. This will indicate that the DACA and the associated employment authorization are terminated as of the date of the notice. USCIS will then refer the case to ICE post-adjudication.

24) **The current DACA fee is $465.00, but that consists of the normal $380 fee to cover the I-765 Application for Employment Authorization processing and the standard $85.00 biometric fee. What funds are used to cover the processing of the form I-821D Consideration of Deferred Action for Childhood Arrivals?**

Most of USCIS's budgetary resources are derived from fee collections. In managing the agency's operations, USCIS works to ensure revenue collected is sufficient to fund the agency's operations. With respect to DACA, total revenue has been sufficient to fund agency costs.

25) **Please provide a list of each document that has been deemed acceptable for purposes of showing continuous presence, lack of criminal history, illegal presence prior to June 15, 2012, illegal entrance prior to age 16, physical presence in the U.S. as of June 15, 2012, and attainment of the education requirements for DACA.**

Under the Secretary of Homeland Security's June 15, 2012 memorandum, in order to be considered for DACA, individuals must submit evidence, including supporting documents, showing that they:

- were under the age of 31 as of June 15, 2012;
- came to the United States before reaching their 16th birthday;
- have continuously resided in the United States since June 15, 2007, up to the present time;
- were physically present in the United States on June 15, 2012, and at the time of making their requests for consideration of deferred action with USCIS;
- had no lawful status on June 15, 2012;
- are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a General Educational Development (GED) certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and

12

App. 0989

- have not been convicted of a felony, significant misdemeanor, three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety.

DHS does not track all of the evidence that has been deemed sufficient to meet these guidelines. Examples of documents that individuals may submit (alone or in conjunction with other evidence) to demonstrate that they meet these guidelines include, but are not limited to:

- Passport with admission stamp
- School records from the U.S. schools they have attended showing the name of the school and periods of school attendance and the educational or grade level achieved
- School records (such as transcripts or report cards) from the school that they are currently attending in the United States showing the name of the school and periods of school attendance and the current educational or grade level
- Any Immigration and Naturalization Service or DHS document stating their date of entry (e.g., Form I-862, *Notice to Appear;* Form I-94/I-95/I-94W with authorized stay expiration date)
- Travel records
- Hospital or medical records
- Rent receipts or utility bills
- Employment records (pay stubs, W-2 forms, etc.)
- Official records from a religious entity confirming participation in a religious ceremony
- Copies of money order receipts for money sent in or out of the country
- Birth certificates of children born in the United States
- Military records (Form DD-214 or NGB Form 22)
- Passport entries
- Dated bank transactions
- Automobile license receipts or registration
- Deeds, mortgages, or rental agreement contracts
- Tax receipts
- Insurance policies
- Final order of exclusion, deportation, or removal issued as of June 15, 2012
- A charging document placing individuals into removal proceedings
- U.S. high school diploma, certificate of completion, or other alternate award
- High school equivalency diploma or certificate recognized under state law
- Evidence that the person passed a state-authorized exam, including the GED or other state-authorized exam (for example, HiSet or TASC) in the United States

Additionally, all DACA requestors who have been arrested for, or charged with, any felony or misdemeanor in the United States, or a crime in any other country, must submit

evidence of the results of the arrests or charges. A felony is defined as a Federal, state, or local criminal offense punishable by imprisonment for a term exceeding one year. A misdemeanor is defined as a Federal, state, or local criminal offense for which the maximum term of imprisonment authorized is one year or less but greater than five days. If the charges were handled in juvenile court, and the records are from a state with laws prohibiting their disclosure, this evidence is not required.

If a DACA requestor has ever been arrested for any felony or misdemeanor in the United States, or a crime in any other country, and no charges were filed, he or she must submit an original official statement by the arresting agency or a court order confirming that no charges were filed for each arrest.

If a DACA requestor has ever been charged with or convicted of a felony or misdemeanor in the United States, or a crime in any other country, he or she must submit an original or court-certified copy of the complete arrest record and disposition for each incident. Examples include a conviction and sentencing record, dismissal order, or acquittal order.

If a DACA requestor has ever had any arrest or conviction vacated, set aside, sealed, expunged, or otherwise removed from his or her record, the requestor must submit:

- An original or court-certified copy of the court order vacating, setting aside, sealing, expunging, or otherwise removing the arrest or conviction; or
- An original statement from the court that no record exists of the arrest or conviction.

If the DACA requestor is unable to provide any of the documentation listed above, the requestor must provide an explanation, including a description of his or her efforts to obtain such evidence.

Enclosure 2

| Consideration of Deferred Action for Childhood Arrivals (I-821D) Initial Application Approvals through July 2014 | |
|---|---|
| **Country of Birth** | **I-821D Approvals** |
| MEXICO | 458,590 |
| EL SALVADOR | 21,458 |
| GUATEMALA | 14,283 |
| HONDURAS | 14,067 |
| PERU | 7,603 |
| SOUTH KOREA | 7,594 |
| BRAZIL | 6,088 |
| COLOMBIA | 5,670 |
| ECUADOR | 5,408 |
| PHILIPPINES | 3,825 |
| ARGENTINA | 3,640 |
| JAMAICA | 2,738 |
| INDIA | 2,711 |
| VENEZUELA | 2,538 |
| DOMINICAN REPUBLIC | 2,331 |
| TRINIDAD AND TOBAGO | 2,155 |
| BOLIVIA | 1,717 |
| COSTA RICA | 1,707 |
| URUGUAY | 1,682 |
| CHILE | 1,453 |
| PAKISTAN | 1,436 |
| POLAND | 1,409 |
| NICARAGUA | 1,169 |
| GUYANA | 1,085 |
| NIGERIA | 1,076 |
| CHINA, PEOPLE'S REPUBLIC OF | 857 |
| BELIZE | 724 |
| KENYA | 702 |
| CANADA | 678 |
| INDONESIA | 616 |
| BANGLADESH | 529 |
| UNITED KINGDOM | 500 |
| GHANA | 480 |
| MONGOLIA | 480 |
| PANAMA | 443 |
| PORTUGAL | 429 |
| ISRAEL | 348 |

| | |
|---|---|
| ITALY | 325 |
| ST. LUCIA | 289 |
| TAIWAN | 276 |
| BAHAMAS | 273 |
| TURKEY | 268 |
| ALBANIA | 266 |
| JORDAN | 242 |
| THAILAND | 217 |
| EGYPT | 205 |
| HONG KONG | 205 |
| PARAGUAY | 202 |
| ARMENIA | 201 |
| SAUDI ARABIA | 199 |
| SOUTH AFRICA | 193 |
| ZAMBIA | 190 |
| UKRAINE | 186 |
| UNITED ARAB EMIRATES | 186 |
| GERMANY | 185 |
| LITHUANIA | 181 |
| GRENADA | 171 |
| MOROCCO | 164 |
| MALAYSIA | 163 |
| RUSSIA | 163 |
| FRANCE | 157 |
| SENEGAL | 157 |
| GUINEA | 153 |
| ST. VINCENT/GRENADINES | 148 |
| GAMBIA | 138 |
| CAMEROON | 136 |
| LIBERIA | 134 |
| ZIMBABWE | 133 |
| LEBANON | 131 |
| SRI LANKA | 131 |
| HAITI | 127 |
| JAPAN | 123 |
| SURINAME | 123 |
| COTE D'IVOIRE | 120 |
| ROMANIA | 115 |
| SIERRA LEONE | 112 |
| SPAIN | 111 |
| BARBADOS | 104 |
| CZECH REPUBLIC | 104 |
| GREECE | 96 |
| FIJI | 94 |

| | |
|---|---|
| DOMINICA | 88 |
| HUNGARY | 88 |
| MALAWI | 85 |
| ANTIGUA-BARBUDA | 83 |
| NEPAL | 78 |
| IRAN | 75 |
| TANZANIA | 75 |
| BULGARIA | 73 |
| MACEDONIA | 69 |
| CAPE VERDE | 68 |
| UGANDA | 66 |
| ANGOLA | 60 |
| VIETNAM | 60 |
| KUWAIT | 59 |
| NEW ZEALAND | 58 |
| UZBEKISTAN | 53 |
| SLOVAK REPUBLIC | 51 |
| AUSTRALIA | 49 |
| NETHERLANDS | 48 |
| MALI | 47 |
| TONGA | 47 |
| CAMBODIA | 46 |
| MONTENEGRO | 45 |
| YUGOSLAVIA (FORMER) | 44 |
| ETHIOPIA | 40 |
| NETHERLANDS ANTILLES | 40 |
| DEMOCRATIC REPUBLIC OF CONGO | 36 |
| SINGAPORE | 36 |
| TOGO | 36 |
| SYRIA | 35 |
| ESTONIA | 34 |
| YEMEN-SANAA | 30 |
| QATAR | 29 |
| SWEDEN | 29 |
| AUSTRIA | 28 |
| ST. KITTS-NEVIS | 28 |
| TURKS AND CAICOS ISLANDS | 28 |
| BELGIUM | 27 |
| SERBIA | 27 |
| GEORGIA | 25 |
| BRITISH VIRGIN ISLANDS | 24 |
| GABON | 23 |
| BAHRAIN | 22 |

| | |
|---|---|
| BOTSWANA | 22 |
| IRELAND | 22 |
| CONGO | 21 |
| SAMOA | 21 |
| WESTERN SAMOA | 21 |
| USSR (FORMER) | 20 |
| LAOS | 19 |
| BENIN | 18 |
| LATVIA | 18 |
| CAYMAN ISLANDS | 17 |
| KOSOVO | 17 |
| MACAU | 15 |
| SWITZERLAND | 15 |
| AFGHANISTAN | 12 |
| BURKINA FASO | 12 |
| MOLDOVA | 12 |
| NAMIBIA | 12 |
| NIGER | 12 |
| NORTH VIETNAM | 12 |
| ALGERIA | 11 |
| BURUNDI | 11 |
| FRENCH GUIANA | 11 |
| MONTSERRAT | 11 |
| SLOVENIA | 11 |
| LIBYA | 10 |
| NORWAY | 10 |
| OTHER* | 222 |
| UNKNOWN OR NOT REPORTED** | 839 |
| **Grand Total** | **591,362** |

**\*OTHER:** This group includes those countries with fewer than 10 DACA approvals per country.

**\*\*UNKNOWN OR NOT REPORTED:** USCIS has determined that individuals in this group do qualify for DACA based on their nationality even though country of birth is not available.