App. 1023

# EXHIBIT 32

# Memorandum



| Subject | Date |
|---|---|
| Supplemental Guidance on Battered Alien Self-Petitioning Process and Related Issues | MAY - 6 1997 |

| To | From |
|---|---|
| Regional Directors<br>District Directors<br>Officers-in-Charge<br>Service Center Directors | Office of Programs |

This memorandum outlines changes in the handling of I-360 self-petitions for immigrant status filed by battered spouses and children of U.S. citizens and permanent residents aliens and addresses related issues. It should be read as a supplement to the guidance issued by the Office of Programs on April 16, 1996.

## Background

The issue of domestic violence and its potential impact on spouses and children who would normally be entitled to immigration benefits under the I-130 petitioning process was first addressed by Congress in the Violence Against Women Act ("VAWA") which was enacted as part of the Violent Crime Control Act of 1994 ("Crime Bill"). The VAWA contains provisions to limit the ability of an abusive U.S. citizen ("USC") or lawful permanent resident ("LPR") to utilize the spouse' or child's immigration status in order to perpetuate the abuse. The Service published an interim rule on March 26, 1996 (59 FR 13061-13079) establishing the procedures for qualified abused spouses and children to self-petition for immigrant classification using the Form I-360. This rule was accompanied by extensive field instructions in the Office of Programs' memorandum of April 16, 1996.

In the autumn of 1996, Congress enacted various new provisions relating to battered aliens, in both the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA" or "the welfare law") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA" or "the immigration bill"). <u>None of these new provisions directly affect the legal standards applicable to adjudication of I-360 applications.</u> The new provisions do, however, provide additional benefits and protections for battered aliens, and have created the need for INS to restructure how we handle this category of very sensitive cases. This memorandum outlines those changes, and instructs field offices on the handling of pending cases and new cases received.

App. 1024

Form G-2
(Rev. 1-2-80)

Guidance on Battered Alien Issues
Page 2

### Centralization at the Vermont Service Center

On April 7, 1997, the Service published a notice in the Federal Register at 16607-08 establishing the Vermont Service Center as the direct mail filing location for all Forms I-360 filed by self-petitioning battered spouses and children (Attachment A). This centralization was necessitated by the new welfare provisions which make certain battered aliens -- including self-petitioners and others -- eligible for public benefits. In addition to adjudicating I-360 self-petitions, the Vermont Service Center will serve as a central "clearinghouse" for inquiries from federal, state and local benefit-granting agencies regarding pending or recently-adjudicated cases, as discussed in more detail in the Verification section, below. Finally, as an alien may be eligible for public benefits not only upon the approval of the relevant immigrant status, but also upon having filed a petition which makes a prima facie case for such status, the Vermont Service Center will also begin making prima facie determinations pursuant to an interim rule expected to be published in the Federal Register prior to June 1, 1997.

While these are sensitive cases which require special handling, the move to centralized filing is expected to have only minimal impact on caseloads in the district offices. Since the beginning of the fiscal year, according to G-22 statistics, fewer than 500 cases have been filed Servicewide. Centralization allows the Service to have a small corps of officers well-versed in the complexity and sensitivity of VAWA adjudications, and will also allow for better monitoring of the caseload and any fraud trends.

Although the direct mail notice allows self-petitioners to continue to file locally until May 7, INS field offices and the other service centers are encouraged to forward to the Vermont Service Center those I-360s for which review/adjudication has not been initiated. All I-360 self-petitions received on or after May 7 shall be forwarded to the Vermont Service Center, but the 30 day transition period requires that no office refuse to receive an I-360 submitted before June 6, 1997. Immediate relatives, who were previously able to file concurrent I-360 self-petitions and I-485 adjustment applications, should be advised to retain their I-485s pending the Vermont Service Center's adjudication of the I-360 self-petition. The battered alien I-360s are to be mailed to:

> INS Vermont Service Center
> Attn: Family Services Product Line (VAWA)
> 75 Lower Weldon Street
> St. Albans, VT 05479-0001

As inquiries from benefit-granting agencies can be expected in many cases, offices are encouraged to expedite handling of all pending cases which they do not forward to the Vermont Service Center. Nothing in this move to centralize direct mail filing changes the ability of the Vermont Service Center to transfer I-360s to district offices when an interview or investigation of suspected fraud is merited.

Guidance on Battered Alien Issues
Page 3

## Deferred Action and Employment Authorization

In the April 16 memorandum, INS offices were encouraged to utilize voluntary departure and deferred action in order to provide approved VAWA self-petitioners with employment authorization pending the availability of a visa number. Since that time, in IIRIRA, Congress has limited grants of voluntary departure to no more than 120 days, and INS regulations no longer allow for work authorization during any period of voluntary departure.

Starting June 1, when the Vermont Service Center approves a VAWA self-petition, it will then also assess, on a case-by-case basis, whether to place the alien in deferred action status pursuant to new deferred action guidelines in the Interim Enforcement Procedures (a forthcoming document which will be available on the 96Act bulletin board, as well as in printed versions). By their nature, VAWA cases generally possess factors that warrant consideration for deferred action. In an unusual case, there may be factors present that would militate against deferred action; cases should therefore receive individual scrutiny. Although the Vermont Service Center is not required to obtain Regional Director approval for deferred action, it will report all grants of deferred action to the Eastern Regional Office for statistical and tracking purposes. In addition, a process for periodic review of the deferred action decisions made by the Vermont Service Center is planned.

If the alien is placed in deferred action, the Vermont Service Center will notify the alien that he or she may submit an I-765, Application for Employment Authorization. After the initial deferred action decision and issuance of a one-year employment authorization document, the Vermont Service Center will hold these files and review the deferred action decision upon each application for extension of work authorization. When the Vermont Service Center is notified by the National Visa Center or by an INS district office that the alien is seeking a visa abroad or has filed an adjustment application, the Vermont Service Center will forward the file to the appropriate office.

In cases where the I-360 was approved prior to April 1, many aliens may have current grants of voluntary departure. Upon expiration of voluntary departure, and for other cases adjudicated before June 1, district offices are strongly encouraged to utilize deferred action to provide work authorization pending the availability of a visa. As described in more detail below, battered aliens are now eligible for certain public benefits, which are often necessary for the victim to be able to leave the abusive situation. To deny such aliens work authorization when they are able to obtain public assistance is counter to the spirit of welfare reform. Moreover, for many individuals, the ability to work is necessary in order to save the funds necessary to pay for the adjustment application and the penalty fee. As it has already been determined that these aliens face extreme hardship if returned to the home country and as removal of battered aliens is not an INS priority, the exercise of discretion to place these cases in deferred action status will almost always be appropriate.

App. 1026

### Non-Disclosure Provisions and Other Limitations in IIRIRA § 384

Section 384 of IIRIRA strictly prohibits the release of <u>any</u> information relating to a VAWA self-petitioner, and also precludes any INS officer from making an adverse determination of admissibility or deportability based solely on information furnished by an abusive relative. Any violation of this section can subject an INS officer to disciplinary action and a fine of up to $5,000. This provision is discussed in more detail in IIRIRA Implementation Memo #96act.036 (Attachment B).

### Verification of Status for Benefit-Granting Agencies

Section 501 of IIRIRA amends the welfare law to provide that certain battered aliens are "qualified aliens" for purposes of eligibility for some public benefits. This includes not only those aliens who can self-petition for immigrant status under the VAWA provisions, but also other aliens who have been abused by a member of their household. In cases other than VAWA self-petitioning cases, it is the benefit-granting agency, not the INS, which will assess the claims of abuse. Benefit providers, however, will request that INS verify the alien's status or the fact that a petition is pending on behalf of the alien. Detailed procedures for verification of these and other categories of qualified aliens under welfare law are being provided to benefit-granting agencies by the Department of Justice in a document entitled "Interim Guidance on Verification," which is expected to be published in the Federal Register later this month. An INS field directive designed for immigration status verifiers will be issued in conjunction with publication of the Interim Guidance on Verification.

Although some verification inquiries relating to battered aliens will be handled through the normal status verification channels, many of the inquiries will fall outside the type of inquiries which status verifiers typically handle. For example, because of the dynamics of abusive relationships, the abuse victim will not always have access to approval notices or other documentation relating to their cases. Moreover, because aliens can be eligible for public benefits upon filing a petition which makes a prima facie case for status, benefit providers will sometimes be seeking information on pending cases, including a determination as to whether the petition makes a prima facie case for eligibility for the status sought.

The Vermont Service Center will serve as the "clearinghouse" for these unusual types of inquiries, which will be submitted by fax using an inquiry format patterned on the sample at Attachment C. It is anticipated that the Vermont Service Center will be able to handle the vast majority of inquiries, which should pertain to cases pending there or in one of the other service centers. For those inquiries which pertain to cases pending in district offices or sub-offices, the Vermont Service Center will forward the inquiries by fax to the attention of a designated Service

Guidance on Battered Alien Issues
Page 5

Center liaison officer in each district or sub-office. Each district and sub-office should complete the liaison designation form at Attachment D and fax to Lisa Batey at 202/514-9262 prior to May 20 (the list of designees will be shared with INS regional offices and all four Service Centers). The designated liaison should ensure that a response is provided to the requesting agency, with a copy to the Vermont Service Center, within five working days. Information on pending or completed cases should not be given over the telephone, but rather should be sent via facsimile.

As you will note, the sample inquiry format includes a limited waiver of the non-disclosure provisions of IIRIRA § 384. At present, such a waiver is necessary before INS can provide any information relating to a VAWA self-petitioner, even to another governmental entity for purposes of determining eligibility for public benefits. Because of IIRIRA § 642, no waiver is necessary in other categories of cases, such as where the alien seeking benefits is the beneficiary of a spousal I-130 petition, but has suffered abuse at the hands of another household member. If there is any doubt as to whether a waiver is required, the officer should seek guidance from his or her district counsel. If there are waiver questions which cannot be resolved locally, please contact Lisa Batey of the Headquarters Office of Programs, at 202/514-9089.

### Providing Information on Filing of I-360 Self-Petitions

Some battered aliens who are eligible to self-petition have chosen not to do so, instead relying upon the I-130 petition filed by their abuser. This not only allows the abuser to continue to control the spouse's or child's immigration status by withdrawing the petition, but also places a battered spouse at risk should the abuser subsequently obtain a divorce before the spouse is able to adjust status. For these and other reasons, such as easier determinations as to welfare eligibility and employment authorization, an immigration officer who deals with a battered alien should inform that alien about the process for self-petitioning, despite the fact that an I-130 petition is still pending on his or her behalf. The Interim Guidance on Verification similarly urges benefit agency caseworkers to give such aliens the number for the INS Forms Line [1-800-870-3676] and for the National Domestic Violence Hotline [1-800-799-7233] for assistance in preparing self-petitions.

### Making Prima Facie Determinations

As noted above, Section 501 of IIRIRA includes in the definition of "qualified alien" for public benefit purposes those aliens who have filed a self-petition, or are the beneficiary of a spousal or parental petition, which sets forth a prima facie case for immigrant status under a variety of provisions. Specifically, those with approved petitions or pending petitions which make a prima facie case for status under any of the following Immigration and Nationality Act ("INA") provisions are included:

App. 1028

Guidance on Battered Alien Issues
Page 6

- spouse or child of a USC under 204(a)(1)(A)(i)

- spouse, child or unmarried son or daughter of an LPR under 204(a)(1)(B)(i)

- widow(er) of a USC under 204(a)(1)(A)(ii)

- self-petitioning battered spouse or child of a USC or LPR under 204(a)(1)(A)(iii)-(iv) or 204(a)(1)(B)(ii)-(iii)

In all but the latter category, battery or abuse will not be part of the INS adjudication, but rather will be assessed by the benefit-granting agency pursuant to the Interim Guidance on Verification.

In the case of self-petitioning battered spouses and children, the Vermont Service Center will begin making prima facie determinations no later than June 1, 1997, following publication of an interim rule in the Federal Register. If the self-petition and accompanying documentation are adequate, the self-petitioner will receive a decision or a Notice of Prima Facie Determination ("NPFD") within three weeks of filing. The approval notice or NPFD may be presented to benefit granting agencies as evidence of the applicant's status as a "qualified alien". The NPFD will be valid for 150 days, to allow time for the submission of any supplemental evidence and for adjudication of the self-petition.

In those cases which are not handled by the Vermont Service Center, benefit-granting agencies will be expecting decisions or prima facie determinations within a similar three-week time frame. As the non-VAWA cases are simpler adjudications based purely on family relationship, there are no plans to define what would constitute a prima facie case. Instead, when a benefit-granting agency inquires about a pending case, INS offices should expedite the adjudication of the case in order to minimize the time during which the alien is unable to receive public assistance for which he or she may be eligible.

### Aliens Seeking Issuance of Notices to Appear

An individual may also be eligible for public benefits if he or she makes a prima facie case for cancellation of removal as a battered spouse or child under INA § 240A(b)(2). INS district offices shall promptly issue a Notice to Appear to any alien who makes a credible request to be placed in proceedings in order to raise a claim for cancellation of removal under section 240A(b)(2). District offices may want to do a search of the CLAIMS system to determine if a self-petition was filed and denied. It is important to note, however, that some individuals who are ineligible for status pursuant to the self-petitioning provisions will be eligible for cancellation (e.g., where the marriage has been terminated). Once proceedings have been initiated, the alien can contact the immigration court to seek a determination that he or she has demonstrated a prima facie case for cancellation of removal.

Guidance on Battered Alien Issues
Page 7

## Other District Office Issues

While centralizing I-360 adjudications was motivated in part by the goal of having a small corps of officers well-trained in domestic violence issues, district adjudications officers will still interact with self-petitioners during the adjustment process. The nature of domestic violence and the sensitivity needed in dealing with victims are topics to which few INS officers will have had exposure. District offices are strongly encouraged to identify two or more officers (depending upon the size of the district) to handle all adjustments following from I-360 approvals. The designated officers should have the experience, discretion and communications skills to be able to balance sensitivity in dealing with true victims with vigilance against fraud, and would ideally also serve as the designated Service Center liaison officer described at pages 4-5, above.

Recognizing the need for more training on complex and subtle domestic violence issues, Headquarters is looking into opportunities to provide informational materials and perhaps training sessions. In addition, a number of reputable non-profit organizations throughout the country provide training for personnel who work with domestic violence victims, and are willing to share their expertise with INS offices. Last year, for example, training for San Francisco adjudicators was provided by representatives of the Family Violence Prevention Fund. The training was well-received by district personnel, and was given at no cost to the district. Managers interested in obtaining materials or in fostering contacts with local organizations which work with victims of domestic violence should contact either of the persons named below for information about organizations active in their area.

\* \* \* \* \*

The Office of Field Operations concurs with this memorandum. Addressees are strongly encouraged to distribute copies of this memorandum widely, particularly to adjudications and investigations officers. Questions about this policy or about the interim rule published in the Federal Register may be directed to Lisa Batey, Headquarters Office of Programs, 202/514-9089, or Karen FitzGerald, Headquarters Benefits Division, at 202/305-4904.

Paul W. Virtue
for Acting Executive Associate Commissioner

App. 1030