**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:14-cv-254 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| JANE DOE #1, JANE DOE #2, and JANE | § | |
| DOE #3, | § | |
| | § | |
| Proposed Defendant- | § | |
| Intervenors | § | |
| | § | |

**PROPOSED DEFENDANT-INTERVENORS' MOTION FOR LEAVE TO INTERVENE**
**AS DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

# TABLE OF CONTENTS

**Page**

I.  STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT ....................1

II.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING.....................2

III.  SUMMARY OF THE ARGUMENT ....................................................................................5

IV.  THE PROPOSED DEFENDANT-INTERVENORS ARE ENTITLED TO
INTERVENTION AS OF RIGHT........................................................................................5

    A.  The Proposed Defendant-Intervenors' Motion to Intervene Is Timely ...................6

    B.  The Proposed Defendant-Intervenors Possess a Protectable Interest .....................8

    C.  The Proposed Defendant-Intervenors' Interests Would Be Subject to
Impairment If Intervention Were Denied ...............................................................10

    D.  The Proposed Defendant-Intervenors' Interests Cannot Be Adequately
Represented by the Existing Parties.......................................................................11

V.  PERMISSIVE INTERVENTION IS ALSO APPROPRIATE..........................................13

VI.  CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arpaio v. Obama*,
  No. 14-cv-1966, slip op. at 5 (D.D.C. Dec. 23, 2014) ............................................. 2

*Black Fire Fighters Ass'n of Dallas v. City of Dallas*,
  19 F.3d 992 (5th Cir. 1994) ...................................................................... 11

*Ceres Gulf v. Cooper*,
  957 F.2d 1199 (5th Cir. 1992) ............................................................. 7, 11

*Chiles v. Thornburgh*,
  865 F.2d 1197 (11th Cir. 1989) ........................................................... 9, 11

*Day v. Sebelius*,
  227 F.R.D. 668 (D. Kan. 2005) ............................................................ 9, 13

*Decker v. United States Dep't of Labor*,
  473 F. Supp. 770 (E.D. Wis. 1979) .......................................................... 10

*Diaz v. S. Drilling Corp.*,
  427 F.2d 1118 (5th Cir. 1970) ............................................................... 8, 9

*Dimond v. District of Columbia*,
  792 F.2d 179 (D.C. Cir. 1986) ................................................................ 12

*Edwards v. City of Houston*,
  78 F.3d 983 (5th Cir. 1996) .................................................................. 6, 8

*Ford v. City of Hunstville*,
  242 F.3d 235 (5th Cir. 2001) ..................................................................... 7

*Forest Conservation Council v. U.S. Forest Serv.*,
  66 F.3d 1489 (9th Cir. 1995), *rev'd on other grounds by Wilderness Soc'y v.
  U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) ....................................... 12

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*,
  446 U.S. 318 (1980) .............................................................................. 12

*Grutter v. Bollinger*,
  188 F.3d 394 (6th Cir. 1999) ................................................................... 11

*In re Lease Oil Antitrust Litig.*,
  570 F.3d 244 (5th Cir. 2009) ................................................................. 6, 8

*John Doe No. 1 v. Glickman*,
  256 F.3d 371 (5th Cir. 2001) ..................................................................... 6

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Lewis v. Stark*, 312 F. Supp. 197 (N.D. Cal. 1968), *rev'd on other grounds by Lewis v. Martin*, 397 U.S. 552 (1980) ..................................................................................... 9

*Martin v. Travelers Indem. Co.*,
    450 F.2d 542 (5th Cir. 1971) ................................................................................. 11

*Mich. State AFL-CIO v. Miller*,
    103 F.3d 1240 (6th Cir. 1997) .............................................................................. 11

*Natural Res. Def. Council v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977) .............................................................................. 12

*Ross v. Marshall*,
    426 F.3d 745 (5th Cir. 2005) .................................................................................. 8

*Saldano v. Roach*,
    363 F.3d 545 (5th Cir. 2004) .................................................................................. 5

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ............................................................................. 6, 11

*Sierra Club v. Fed. Emergency Mgmt. Agency*,
    No. 07-0608, 2008 U.S. Dist. LEXIS 47405 (S.D. Tex. June 11, 2008) ............... 12

*Stallworth v. Monsanto Co.*,
    558 F.2d 257 (5th Cir. 1977) ............................................................................... 6, 7

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) ......................................................................................... 12, 13

*United States v. LULAC*,
    793 F.2d 636 (5th Cir. 1986) ................................................................................ 14

*Usery v. Brandel*,
    87 F.R.D. 670 (W.D. Mich. 1980) ......................................................................... 10

## **STATUTES**

DHS Appropriations Act, Pub. L. No. 111-83, 123 Stat 2142, 2149 (2009) .................................. 3

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**RULES**

Fed. R. Civ. P. 24 advisory comm. note to 1966 Amendment ..................................................... 10

Fed. R. Civ. P. 24(a)(2)................................................................................................. passim

Fed. R. Civ. P. 24(b) ......................................................................................................... 14

Fed. R. Civ. P. 24(b)(1)(B) ............................................................................................ 1, 13

Fed. R. Civ. P. 24(c) ........................................................................................................... 1

The Proposed Defendant-Intervenors respectfully request that the Court grant them leave to intervene as defendants in this action as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, grant them permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B).  This motion is accompanied by the Proposed Defendant-Intervenors' Opposition to the States' Motion for Preliminary Injunction to comply with Fed. R. Civ. P. 24(c), attached hereto as Exhibit 1 and the Proposed Defendant-Intervenors' Answer to the First Amended Complaint, attached hereto as Exhibit 2.

Plaintiffs have advised the Proposed Defendant-Intervenors that they oppose the motion to intervene.  Defendants have been notified and have not responded.

## I.      STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

The Proposed Defendant-Intervenors Jane Doe #1, Jane Doe #2, and Jane Doe #3 (the "Proposed Defendant-Intervenors") are three individual undocumented immigrants who are directly impacted by the resolution of the challenged action in this case.  All three Proposed Defendant-Intervenors meet the DAPA[1] requirements and under the Deferred Action Guidance will be eligible for consideration of deferred action.  If DAPA is enjoined, the Proposed Defendant-Intervenors as well as millions of others similarly situated will not be eligible for deferred action , and could face deportation and separation from their families and their communities.  Moreover, they will remain ineligible for work authorization which accompanies a grant of deferred action, thereby limiting their access to employment opportunities and directly

---

[1]In the November 20, 2014 Memorandum issued by Secretary of the Department of Homeland Security, Jeh Johnson, entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who Are the Parent of U.S. Citizens or Permanent Residents" ("Deferred Action Guidance"), the Department of Homeland Security ("DHS") established guidelines for the application of prosecutorial discretion with regard to deferred action for specific categories of low-priority immigrants, including parents of U.S. citizens or Lawful Permanent Residents.

impacting their ability to support their children and families and to contribute to the U.S.

economy.  This unique, personal interest supports their intervention.  Accordingly, the Proposed

Defendant-Intervenors hereby respectfully submit the following Memorandum of Law in

Support of Motion to Intervene as Defendants.

## II.   <u>STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING</u>

Plaintiffs filed this lawsuit in order to halt the enforcement of the November 20, 2014

Deferred Action Guidance.  (Dkt. No. 38, Ex. 7.)  A central component of the Deferred Action

Guidance is Deferred Action for Parental Accountability ("DAPA"), which provides guidelines

for the application of prosecutorial discretion with regard to deferred action for specific

categories of low-priority immigrants, including parents of U.S. citizens or Lawful Permanent

Residents.  Deferred action is a type of prosecutorial discretion whereby the party tasked with

enforcement does not seek enforcement of a violation for a limited period of time.  (Dkt. No. 38

at 1.)  Deferred action under DAPA does not confer any "substantive right, immigration status or

pathway to citizenship" and "may be terminated at any time at the agency's discretion."  (*Id*., Ex.

7 at 2, 5.)  DAPA provides eligible individuals with the opportunity to apply for work

authorization and to live without fear of being unexpectedly separated from their children.  (*Id.* at

4.)

The purpose of DAPA is to ensure that DHS's limited resources are most effectively used

to eliminate threats to national security and public safety by prioritizing funds to remove

undocumented immigrants with criminal backgrounds, rather than those who have lived in the

United States for years and are contributing members of their communities.  (Dkt. No. 38 at 5-7.)

DHS estimates that while there are approximately 11.3 million undocumented immigrants

eligible for removal, the agency only has the resources to remove fewer than 400,000.  *Arpaio v.*

*Obama*, No. 14-cv-1966-BAH, slip op. at 5 (D.D.C. Dec. 23, 2014).  In light of these limited

resources, DAPA is a consequence of Congress's directive to DHS to prioritize "the identification and removal of [immigrants] … by the severity of the crime."  DHA Appropriations Act, Pub. L. No. 111-83, 123 Stat 214, 2149 (2009).  Eligibility for deferred action under DAPA reflects that qualifying individuals are the lowest priority for enforcement.

For an individual to be eligible under DAPA, she (1) must have a child who is a U.S. citizen or Lawful Permanent Resident as of November 20, 2014; (2) must have continuously resided in the United States since before January 1, 2010; (3) must have been physically present in the United States on November 20, 2014, and at the time of making a request for deferred action with USCIS; (4) must have had no lawful status on November 20, 2014; (5) must not fall within one of the categories of enforcement priorities set forth in another memorandum issued that same day; and (6) must present no other factors that, in the exercise of discretion, make the grant of deferred action inappropriate.  (Dkt. No. 38, Ex. 7 at 4.)

The Proposed Defendant-Intervenors satisfy the DAPA requirements and will be eligible for consideration of deferred action.  If DAPA is enjoined, the Proposed Defendant-Intervenors will remain subject to arrest, detention, and removal proceedings at any time.  Despite their low priority as candidates for deportation given DHS's limited resources and prioritization mandates, their lives could be upended.  Families could be split apart, including both those with young children, those with elderly parents requiring care, and those with children who are U.S. citizens or Legal Permanent Residents who are cared for by these Proposed Defendant-Intervenors or who are in school or employed.  Community relationships could be undone and work opportunities foreclosed.

Jane Doe #1 lives in Edinburg, Texas, and is the parent of U.S. citizen children. (Declaration of Jane Doe #1 ¶¶ 1, 7.)  She has lived in the United States for 15 years, residing

here continuously since before January 1, 2010.  (*Id.* ¶¶ 1, 7.)  She is married and has four children:  her eldest child is currently attending college while working; her second child is 21 years old and is attending college while working to help support the family; her third child is 14 years old and in the ninth grade; and her fourth child is eight years old and in the second grade.  (*Id.* ¶ 3.)  Ms. Doe #1 and her husband both work to support their family.  (*Id.* ¶ 4.)  She prepares and sells food, and is in catalog sales.  (*Id.*)  Ms. Doe #1 is also an active member in her community; she volunteers at her church and her children's schools.  (*Id.* ¶ 5.)

Ms. Jane Doe #2 lives in McAllen, Texas, and is the parent of U.S. citizen children. (Declaration of Jane Doe #2 ¶¶ 1, 6.)  She was brought to the United States from Mexico as a child by her parents and attended school through the tenth grade.  (*Id.* ¶ 2.)  Ms. Doe #2 has lived in the United States for 13 years, residing here continuously since before January 1, 2010.  (*Id.* ¶¶ 1, 6.)  She is married and has two children:  her eldest child is in the first grade; and her second child is four years old and attends a Head Start program.  (*Id.* ¶ 3.)  Ms. Doe #2 is a homemaker who takes care of her husband and children, as well as her mother, who lives with her and is suffering from Alzheimer's disease.  (*Id.* ¶ 4.)  She is also a contributing member of her community:  Ms. Doe #2 is a volunteer for her daughter's Head Start program, active within her church, and is currently studying for her GED.  (*Id.* ¶¶ 4, 5.)

Ms. Jane Doe #3 lives in Donna, Texas, and is the parent of a U.S. citizen child. (Declaration of Jane Doe #3 ¶¶ 1, 4.)  She has lived in the United States for 11 years, residing here continuously since before January 1, 2010.  (*Id.*)  She has one daughter, who is two years old.  (*Id.* ¶ 3.)  In order to support her daughter and herself, Ms. Doe #3 sells goods at flea markets and also makes and sells food.  (*Id.*)

III.   **SUMMARY OF THE ARGUMENT**

As set forth below, Plaintiffs' requested injunctive relief, if granted, would substantially impair the interests of the Proposed Defendant-Intervenors.  Defendants' attorneys cannot adequately represent the Proposed Defendant-Intervenors' interests because they are responsible for representing a broad range of public interests and are not subject to the consequences of the implementation of DAPA or the consequences of enjoining the implementation of DAPA. Allowing the Proposed Defendant-Intervenors to participate as intervenors will ensure that their direct, immediate interests are adequately protected and will provide them with the opportunity to offer evidence and argument that will assist the Court in rendering a decision in this important case.  Because the Proposed Defendant-Intervenors meet all the requirements for intervention under Rule 24(a)(2), they respectfully request that their motion to intervene be granted.

IV.   **THE PROPOSED DEFENDANT-INTERVENORS ARE ENTITLED TO INTERVENTION AS OF RIGHT**

Federal Rule of Civil Procedure 24(a)(2) provides:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

To intervene as of right under Rule 24(a)(2), an applicant must meet four requirements:  (1) the motion to intervene is timely; (2) the potential intervenor asserts an interest that is related to the basis of the controversy in the underlying case; (3) the disposition of the case may impair or impede the potential intervenor's ability to protect his interest; and (4) the existing parties do not adequately represent the potential intervenor's interests.  *See Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004).

The Fifth Circuit has construed Rule 24(a) broadly in favor of intervenors. *See John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001). "[T]he inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (internal quotation and citation omitted). "[I]ntervention of right must be measured by a practical rather than technical yardstick." *See id.* at 999 (internal quotation and citation omitted). Accordingly, courts, as a general matter, allow intervention where "no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citing *Glickman*, 256 F.3d at 375) (internal quotation omitted).

## A.     The Proposed Defendant-Intervenors' Motion to Intervene Is Timely

In determining whether a motion for intervention is timely under Fed. R. Civ. P. 24(a)(2), the Court should consider:  (1) the length of time between the potential intervenor's learning that its interest is no longer protected by the existing parties and its filing of a motion to intervene, (2) the extent of prejudice to the existing parties from allowing late intervention, (3) the extent of prejudice to the potential intervenor if the motion is denied, and (4) any unusual circumstances. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977); *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247-48 (5th Cir. 2009).

The Proposed Defendant-Intervenors' Motion to Intervene comes promptly after they learned of their interest in the case via the filing of Plaintiffs' December 2014 complaint.[2]  The litigation is currently in its early stages, and the timing of this motion poses no prospect of prejudicing the parties:  at this early juncture, Defendants have yet to file their answer, no discovery has been conducted, no scheduling order has been issued, and no trial date set.

---

[2] Plaintiffs filed their Complaint on December 3, 2014.

Although Plaintiffs have filed a motion for a preliminary injunction (*see* Dkt. No. 5), the Court has not ruled on this motion.  The Proposed Defendant-Intervenors do not intend to request any modification to the current hearing schedule, and intervention therefore poses no potential to prejudice the rights of any current party.  *See Ford v. City of Hunstville*, 242 F.3d 235, 240 (5th Cir. 2001) (finding that prejudice is only created by "the intervenor's delay in seeking to intervene after it learns of its interest") (citing *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 (5th Cir. 1992)); *see also Stallworth*, 558 F.2d at 265 ("[T]he prejudice to the original parties to the litigation that is relevant to the question of timeliness is only that prejudice which would result from the would-be intervenor's failure to request intervention as soon as he knew or reasonably should have known about his interest in the action").

On the other hand, the Proposed Defendant-Intervenors would be severely prejudiced if this Court denies this motion to intervene.  In *Stallworth*, the Fifth Circuit framed the question of prejudice against proposed intervenors who are denied intervention in terms of whether "a [Rule 24] section (a) intervenor 'may be seriously harmed if he is not permitted to intervene.'"  558 F.2d at 266 (internal quotation and citation omitted).  In this case, distinct from Defendants, the Proposed Defendant-Intervenors as undocumented immigrants eligible for consideration of deferred action under DAPA have a direct, personal, and financial stake in the outcome of this case.  In point of fact, the Proposed Defendant-Intervenors are the target of the outcome of this case:  if the Court enjoins the implementation of DAPA, the Proposed Defendant-Intervenors are unlikely ever to receive deferred action and are at risk of losing their families, their communities, and the opportunity to become legally employed.

As nonparties, the Proposed Defendant-Intervenors will be directly affected by any court-ordered remedy, but will not be able to participate in presenting evidence and argument in

support of their positions or to appeal the ruling. *See Edwards*, 78 F.3d at 1002–03; *see also Lease Oil Antitrust Litig.*, 570 F.3d at 249–50 ("Intervening in the existing federal lawsuit is the most efficient, and most certain, way for [the potential intervenor] to pursue its claim."). Without the ability to intervene, the Proposed Defendant-Intervenors will be relegated to the sidelines in a case in which their interests will be directly impacted by the outcome and their fate will be determined by other parties.

As the targets of Plaintiffs' lawsuit, the Proposed Defendant-Intervenors respectfully urge the Court to grant them an opportunity to present their case and protect their interests as undocumented immigrants eligible for DAPA. Considering each of the factors above, this intervention is timely because (1) the Proposed Defendant-Intervenors promptly filed this motion; (2) the existing parties will not be prejudiced if the Court permits intervention at this juncture; and (3) the Proposed Defendant-Intervenors will be greatly harmed if this motion is denied because they will not be able to protect their interests before the Court.

> ## B.    The Proposed Defendant-Intervenors Possess a Protectable Interest

The Proposed Defendant-Intervenors also satisfy the requirements of Rule 24(a)(2) because they have a protectable interest in the subject matter of this litigation that would be otherwise impaired by an adverse decision. Their protectable interest does not have "to be of a legal nature identical to that of the claims asserted in the main action." *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970). Indeed, "[a]ll that is required by the terms of the rule is an interest in . . . [the] rights that are at issue, provided the other elements of intervention are present." *Id.* Ultimately, "the interest 'test' is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005).

Here, the Proposed Defendant-Intervenors' interest is to uphold DAPA in order to maintain their eligibility for consideration for deferred actions.  If DAPA is enjoined and that eligibility eliminated, the Proposed Defendant-Intervenors' lives will be directly and adversely impacted.  Their interest is therefore sufficient under *Diaz*.

Courts have routinely granted intervention to parties seeking to protect their interest in government programs that affect them.  For example, in Kansas, a federal district court allowed students and Latino organizations to intervene in a case concerning a challenge to state legislation that made undocumented immigrant students eligible for in-state tuition rates.  *See Day v. Sebelius*, 227 F.R.D. 668, 670, 676 (D. Kan. 2005) (granting motion to intervene as defendants filed by the Kansas League of United Latin American Citizens, the Hispanic American Leadership Organization, and three college students); *see also Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989) (detainees seeking to intervene as a matter of right in an action brought by a U.S. Senator to challenge housing of immigrant felons at a particular facility had an interest relating to the main suit).  Similarly, in *Lewis v. Stark*, 312 F. Supp. 197 (N.D. Cal. 1968), *rev'd on other grounds by Lewis v. Martin*, 397 U.S. 552 (1980), the plaintiffs sought a declaration that the state welfare law, which provided that a man assuming the role of spouse in a home is bound to support children in the home, was unconstitutional and contrary to federal regulations interpreting the Social Security Act.  *Id*. at 199.  The court held that families with men assuming the role of spouse in the household were entitled to intervene as of right under Rule 24(a).  *Id*.  In the same way, the Proposed Defendant-Intervenors here have shown strong and legally cognizable interests related to DAPA.

In addition, the Proposed Defendant-Intervenors stand to lose economic opportunities if the Court grants Plaintiffs' request, because they would not be eligible to receive work

authorization.  Without the opportunity to apply for work authorization, their ability to support

themselves and their families, including their U.S. citizen children, is extremely limited.  Courts

have held that economic interests, especially those that would "afford [the Proposed Defendant-

Intervenors] greater recompense and satisfaction," are a significant protectable interest.  *Usery v.*

*Brandel*, 87 F.R.D. 670, 676 (W.D. Mich. 1980); *see also Decker v. United States Dep't of*

*Labor*, 473 F. Supp. 770 (E.D. Wis. 1979) (holding that a city archdiocese which received

financial benefits from a federal statute had a sufficient interest in the action to intervene as of

right under Rule 24(a)(2)).

The Proposed Defendant-Intervenors' interests diverge from the broader interests that

Defendants pursue:  Defendants are responsible for issuing and implementing DAPA, but none

of them are or ever will be directly affected by DAPA.  Instead, Defendants' interest in DAPA is

to allocate their limited resources effectively, concluding that individuals such as the Proposed

Defendant-Intervenors are the lowest priority.  (Dkt. No. 38 at 1.)  The outcome of this litigation

does not jeopardize Defendants' families' well-being or their ability to earn a living, but it does

jeopardize the Proposed Defendant-Intervenors, who ask the Court to provide them with the

opportunity to defend their own interests under DAPA.

### C.    The Proposed Defendant-Intervenors' Interests Would Be Subject to Impairment if Intervention Were Denied

The Proposed Defendant-Intervenors are "so situated that the disposition of the action

may as a practical matter impair or impede [its] ability to protect [its] interest."  Fed. R. Civ. P.

24(a)(2). Here, the advisory committee notes to Rule 24(a) are instructive:  "[i]f an absentee

would be substantially affected in a practical sense by the determination made in an action, he

should, as a general rule, be entitled to intervene."  Fed. R. Civ. P. 24 advisory committee note to

1966 Amendment.  To demonstrate "impairment," a prospective intervenor "must show only that

10

impairment of its substantial legal interest *is possible* if intervention is denied." *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (citing *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997)) (emphasis added).  "This burden is minimal."  *See Grutter*, 188 F.3d at 399 (rejecting the notion that Rule 24(a)(2) requires a specific legal or equitable interest).

There is no doubt that the relief Plaintiffs seek in this case—barring undocumented immigrant parents from the opportunity to apply for deferred action and work authorization— will directly impair the Proposed Defendant-Intervenors' lives, potentially resulting in deportation, disrupting and separating family members, fracturing communities, and preventing access to legal employment.

The Proposed Defendant-Intervenors cannot wait until the conclusion of the litigation to vindicate their interests.  Courts have recognized that parties seeking intervention would face a "practical disadvantage" in asserting their rights once a court has rendered a decision.  *Chiles*, 865 F.2d at 1214.  The Fifth Circuit has recognized that a prospective intervenor's interest may be practically "impaired by the *stare decisis* effect" of a court's rulings in subsequent proceedings.  *Sierra Club*, 18 F.3d at 1207 (quoting *Ceres Gulf*, 957 F.2d at 1204) (italics in original); *see also Martin v. Travelers Indem. Co.*, 450 F.2d 542, 554 (5th Cir. 1971) ("[S]tare decisis . . . would loom large" in any attempt by prospective intervenors "to achieve a favorable resolution of the coverage issue" on their own.); *Black Fire Fighters Ass'n of Dallas v. City of Dallas*, 19 F.3d 992, 994 (5th Cir. 1994) (to the extent that a lawsuit involves common legal issues, potential adverse effects on the prospective intervenors favor intervention).

### D.     The Proposed Defendant-Intervenors' Interests Cannot Be Adequately Represented by the Existing Parties

The burden under this prong is "satisfied if [the Proposed Defendant-Intervenors] show[] that representation of [their] interest 'may be' inadequate; and the burden of making that

11

showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).  Courts have recognized that "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1490 (9th Cir. 1995) (internal citation omitted), *rev'd on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).  Intervention is warranted when the proposed intervenors "occup[y] a different position and [have] different interests" than the existing defendants.  *Sierra Club v. Fed. Emergency Mgmt. Agency*, No. 07-0608, 2008 U.S. Dist. LEXIS 47405, at *18-19 (S.D. Tex. June 11, 2008).

Courts have recognized that governmental representation of private, non-governmental intervenors may be inadequate.  For example, in *Dimond v. District of Columbia*, the court held that because the government was responsible for representing a broad range of public interests rather than the more narrow interests of intervenors, the "application for intervention . . . falls squarely within the relatively large class of cases in this circuit recognizing the inadequacy of governmental representation of the interests of private parties in certain circumstances."  792 F.2d 179, 192 (D.C. Cir. 1986); *see Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 331 (1980) (granting individual aggrieved party's motion to intervene in order to protect its personal interests, which may at times be in conflict with those of the EEOC); *see also Natural Res. Def. Council v. Costle*, 561 F.2d 904, 911-12 (D.C. Cir. 1977) (holding that the government does not adequately represent private organizations because intervenors' interests are different).

As noted above, this prong is easily satisfied here.  Defendants and the Proposed Defendant-Intervenors' interests are profoundly different.  Defendants are responsible for issuing and implementing DAPA, but none of them are or ever will be directly affected by DAPA.

Defendants have no direct personal interest at stake.  *See, e.g.*, *Day*, 227 F.R.D. at 674 ("To the court's knowledge, none of these existing defendants are or ever will be personally impacted by [the in-state tuition law].").  Instead, Defendants will be merely required not to implement DAPA.  Not so for the Proposed Defendant-Intervenors if Plaintiffs are successful and obtain an injunction.  The Proposed Defendant-Intervenors will experience severe and direct negative consequences, chief among them the constant fear of deportation.

In addition, even assuming their best intentions, Defendants may be hesitant to advance relevant arguments because of the highly-charged political debate surrounding immigration as a social and political policy issue which could expose Defendants to severe public scrutiny and criticism.  Defendants' potential failure to advance certain arguments is sufficient to satisfy the Proposed Defendant-Intervenors' minimal burden that Defendants' representation "may be" inadequate.  *Trbovich*, 404 U.S. at 538 n.10.  The Proposed Defendant-Intervenors' interests are too divergent from the interests of Defendants, and too vital for the Proposed Defendant-Intervenors to be denied an active role as intervenor.  *See Day*, 227 F.R.D. at 674-75 (granting intervention and recognizing direct and personal interests of undocumented immigrant student in defending an in-state tuition law).  For these reasons, the Proposed Defendant-Intervenors seek to participate in this case as intervenors and respectfully request that the Court grant them intervention as a matter of right.

## V.    **PERMISSIVE INTERVENTION IS ALSO APPROPRIATE**

Even if this Court were to determine that the Proposed Defendant-Intervenors do not satisfy the requirements for intervention as of right, it should grant permissive intervention.  Rule 24(b)(1)(B) grants permissive intervention upon timely motion by anyone who "has a claim or defense that shares with the main action a common question of law or fact."  The Fifth Circuit has recognized that permissive intervention may be granted in the Court's discretion if (1) the

motion is timely; (2) an applicant's claim or defense has a question of law or fact in common with the existing action; and (3) intervention will not delay or prejudice the adjudication of the rights of the original parties.  Fed. R. Civ. P. 24(b); *see United States v. LULAC*, 793 F.2d 636, 644 (5th Cir. 1986) ("Although the court erred in granting intervention as of right, it might have granted permissive intervention under Rule 24(b) because the intervenors raise common questions of law and fact.").

As a threshold matter, the Proposed Defendant-Intervenors' motion to intervene is timely. *See supra* Section IV.A.  Second, the Proposed Defendant-Intervenors' defenses will share substantial questions of law and fact with the main action as the Proposed Defendant-Intervenors seek to preserve eligibility for deferred action consideration under the DAPA.  Third, as discussed above, intervention will not create delay or prejudice the existing parties.  *See id*. Adding the Proposed Defendant-Intervenors as defendant-intervenors at this juncture of the lawsuit will not needlessly increase cost, delay disposition of the litigation, or prejudice the existing parties.

Importantly, the Proposed Defendant-Intervenors' participation in this lawsuit will offer evidence and argument from the undocumented immigrants who are the real targets of this lawsuit and who have a direct and personal stake in the outcome of this case.  At a minimum, therefore, the Proposed Defendant-Intervenors ask the Court to exercise its broad discretion and grant them permissive intervention.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, the Proposed Defendant-Intervenors respectfully request that the Court grant their motion to intervene in this action as Defendants.

Dated:  January 14, 2015

**LAW OFFICE OF FRANK COSTILLA, L.P.**
Frank Costilla (Tex. Bar. No. 04856500)
5 E. Elizabeth Street
Brownsville, Texas 78520
Phone:  956-541-4982
Facsimile:  956-544-3152

Respectfully submitted,

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
**By** _/s/ Nina Perales_____
Nina Perales (Tex. Bar No. 24005046);
(Southern District of Tex. Bar No. 21127)
Attorney-in-Charge
David Hinojosa (Tex. Bar No. 24010689)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone:  (210) 224-5476
Facsimile:  (210) 224-5382

**O'MELVENY & MYERS LLP**
Linda Smith (Cal. Bar No. 78238)
Adam P. KohSweeney (Cal. Bar No. 229983)
J. Jorge deNeve (Cal. Bar No. 198855)
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Phone:  310-246-6801
Facsimile:  310-246-6779

(Requests for _pro hac vice_ admission to be filed)

Attorneys for the Proposed Defendant-Intervenors **JANE DOE #1**, **JANE DOE #2,** and **JANE DOE #3**

## CERTIFICATE OF CONFERENCE

I certify that conferred with Plaintiffs and Defendants.  Plaintiffs have advised the Proposed Defendant-Intervenors that they oppose the motion to intervene.  Defendants have been notified and have not responded.

*/s/ Nina Perales*
Nina Perales

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on the 14th day of January 2015, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046)
***Attorney for the Proposed Defendant-Intervenors***