Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Case No. 1:14-cv-254 |
| UNITED STATES OF AMERICA, *et al.*, | § § § | |
| Defendants, | § § § | |
| and | § § | |
| JANE DOE #1, JANE DOE #2, and JANE DOE #3, | § § § § | |
| Proposed Defendant–Intervenors | § § § | |

**[PROPOSED] DEFENDANT–INTERVENORS' JOINDER IN DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## **INTRODUCTION AND SUMMARY OF THE ARGUMENTS**

The Proposed Defendant-Intervenors adopt and incorporate in full the DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION as well as Exhibits 1-33 attached thereto (Dkt. No. 38) (the "Defendants' Memorandum") and submit the following supplemental brief to address the unique personal interests of Proposed Defendant-Intervenors Jane Doe #1, Jane Doe #2, and Jane Doe #3 ("Proposed Defendant-Intervenors"), three individual undocumented immigrants who will be directly and dramatically affected by the resolution of the challenged action in this case.

All three Proposed Defendant-Intervenors meet the DAPA requirements and under the Deferred Action Guidance will be eligible for consideration of deferred action. If Plaintiffs' Motion for Preliminary Injunction successfully halts the implementation of DAPA, barring undocumented immigrant parents from the opportunity to apply for deferred action and work authorization, that injunction will directly impair the Proposed Defendant Intervenors' lives, potentially resulting in deportation, separating families, disrupting communities, and preventing access to legal employment opportunities which will directly impact Proposed Defendant Intervenors' ability to support their families and to contribute to the U.S. economy.

When considering whether to grant this extraordinary motion for equitable relief, the Plaintiffs must "clearly carr[y] the burden of persuasion" for each of the elements of a preliminary injunction—irreparable harm, a likelihood of success on the merits, the balance of the equities, and the public interest. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003). A set forth below, the Proposed Defendant-Intervenors demonstrate that not only have the Plaintiffs failed to satisfy the four

requisite preliminary injunction requirements, but it is the Proposed Defendant-Intervenors, not the Plaintiffs, who are the ones deserving of equitable relief.

Further, while the Defendants' Memorandum explains in compelling detail the statutory, Congressional, and Supreme Court case authority for the nation's immigration policies and priorities as well as the Executive's well-recognized discretionary authority to prioritize enforcement resources through grants of deferred action including DAPA, it fails to address the direct impact of DAPA on individuals such as the Prospective Defendant-Intervenors who have lived in the United States and contributed to their communities for many years. By examining the impact of DAPA on the lives of individuals like the Proposed Defendant-Intervenors, it is evident that if the preliminary injunction is granted and implementation of DAPA is halted this will cause irreparable harm to individuals like Proposed Defendant-Intervernors as well as to the greater public interest.

For these reasons, the Proposed Defendant-Intervenors respectfully submit the following Supplemental Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction.

## **STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT**

In addition to the Statement put forth in Defendants' Memorandum (*see* Dkt. 38 at 12-13), Proposed Defendant-Intervenors raise whether they and individuals similarly situated who are considered low enforcement priority undocumented immigrants as parents of U.S. citizens and contributing members of their communities will suffer a greater harm than Plaintiffs if the preliminary injunction is granted. Proposed Defendant-Intervernors also ask this Court to consider whether DAPA's aim of enhancing the Federal Government's capacity to focus its limited resources on threats to national security and public safety while reducing the humanitarian cost of these enforcement efforts is in the public interest.

## ARGUMENT

I. **AS DEMONSTRATED BY THE LIVES OF THE PROSPECTIVE INTERVENORS, DAPA IS CONSISTENT WITH NATIONAL IMMIGRATION POLICIES AND PRIORITIZATION MANDATES**

On November 20, 2014, Defendant Secretary of the Department of Homeland Security ("DHS"), Jeh Johnson, issued a Memorandum entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who Are the Parent of U.S. Citizens or Permanent Residents" ("Deferred Action Guidance"). (Dkt. No. 38, Ex. 7.)  In light of DHS's limited resources, a central component in the Deferred Action Guidance is the establishment of an integrated directive that includes consideration of the deferred removal of low-priority undocumented immigrants on a case-by-case basis (*i.e.*, by granting them "deferred action").  These low-priority undocumented immigrants include parents of U.S. citizens or Lawful Permanent Residents, all of whom have lived in the United States for at least five years and who are determined by the Government not to pose a threat to national security or public safety ("DAPA").  (*See* Dkt. No. 38 at 1.)

The Proposed Defendant-Intervenors are three individuals who satisfy DAPA's requirements and thus are directly affected by Plaintiffs' attempt to halt its implementation.  All three Proposed Defendant-Intervenors have been in the United States for over a decade.  None of them have a criminal record or pose any threat to the communities they have actively contributed to for years.  All three Proposed Defendant-Intervenors are undocumented immigrants who could be separated from their young U.S. citizen children, families, and communities.  Finally, all three could benefit from the ability to obtain work authorization and become legal workers.

Jane Doe #2 has lived in the United States for 13 years and is the parent of two U.S. citizens. (Jane Doe #2 Declaration ("Decl."), ¶¶ 1, 3, 6.)  Jane Doe #2 takes care of her husband, children, and mother who lives with them and is suffering from Alzheimer's disease.

(*Id.*, ¶ 4.)  She also volunteers for her daughter's Head Start program, is active within her church, and is currently studying for her GED.  (*Id.*, ¶ 4, 5.)

Jane Doe #3 lives in Donna, Texas and is the parent of a two-year-old U.S. citizen.  (Jane Doe #3 Decl., ¶¶ 1, 3, 4.)  She has lived in the United States for 11 years.  (*Id.*, ¶ 1.)  In order to support her daughter and herself, Jane Doe #3 sells items at flea markets and also makes and sells food.  (*Id.*, ¶ 3.)

Jane Doe #1 has lived in the United States for over 15 years and is the mother of four U.S. citizens.  (Jane Doe Decl., ¶¶ 1, 3, 7.)  Jane Doe supports her family, including three children who still live at home, by preparing and selling food, and she also does catalog sales.  (*Id.*, ¶ 4.)  She routinely volunteers at her church and her children's schools.  (*Id.*, ¶ 5.)

## II.     BECAUSE ALL OF THE FACTORS FAVOR THE DEFENDANT-INTERVENORS, PLAINTIFFS' PRELIMINARY INJUNCTION MOTION MUST BE DENIED

Proposed Defendant-Intervenors, and millions like them, will be directly affected by this Court's decision to grant or deny Plaintiffs' Motion for a Preliminary Injunction.  To justify granting a preliminary injunction, Plaintiffs must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that a balance of equities tips in their favor, and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Plaintiffs cannot meet this burden.  As evidenced by Defendant-Intervenors themselves, DAPA is entirely consistent with the Executive Branch's discretionary authority to focus limited immigration resources on threats to national security, border security, and public safety, and to take into account humanitarian aspects of these enforcement efforts.  Moreover, it is Proposed Defendant-Intervenors, not Plaintiffs, who would suffer real and irreparable harm if the preliminary injunction were granted and DAPA's implementation was halted.  In addition, Plaintiffs' proposed preliminary injunction is not in the

public interest because it would undermine DHS's mandate to utilize its limited resources to remove individuals who are real threats to society, rather than those like Proposed Defendant-Intervenors with children, community ties, obligations to help support their families and no criminal record.

> **A. Proposed Defendant-Intervenors Demonstrate that DAPA is Consistent with National Immigration Enforcement Policies and Priorities, Thus Plaintiffs' Motion Fails on the Merits.**

As thoroughly outlined in Defendants' Memorandum, the Executive Branch has a well-recognized discretionary authority over the implementation of national immigration laws, specifically to defer action on enforcement. (Dkt. No. 38 at 44); *see also Reno v. American-Arab Anti-Discrimination Comm.* ("*AAADC*"), 525 U.S. 471, 483-84 (1999). The Secretary of DHS is specifically charged with "[e]stablishing national immigration enforcement policies and priorities," 6 U.S.C. § 202(5), to ensure that DHS's limited resources are expended in pursuit of its highest priorities in national security, border security, and public safety.

Therefore, DHS was well within its right to draft DAPA with two particular purposes in mind: "(1) enhancing DHS's capacity to focus its limited resources on threats to national security, border security, and public safety, and (2) reducing the humanitarian cost of enforcement efforts when doing so is consistent with these priorities." (Dkt. No. 38 at 1.) These purposes may be more fully understood and appreciated when examined with the lives of the individuals who are fundamentally impacted by DAPA—and its threatened elimination under Plaintiffs' motion—in mind. These purposes also form the cornerstone of why Plaintiffs' preliminary injunction motion fails on the merits.

First, national immigration laws support DHS's efforts to protect public safety by prioritizing funds to remove undocumented immigrants with criminal backgrounds, rather than those who have lived in the United States for years and are contributing members of their

communities. DHS estimates that while there are approximately 11.3 million undocumented immigrants eligible for removal, the agency only has the resources to remove fewer than 400,000. *Arpaio v. Obama*, No. 14-cv-1966-BAH, slip op. at 4-5 (D.D.C. Dec. 23, 2014); (Dkt. No. 38 at 5.) In light of these limited resources, DAPA is a rational response to Congress's directive to DHS to prioritize "the identification and removal of [immigrants] … by the severity of the crime." DHS Appropriations Act, Pub. L. No. 111-83, 123 Stat 2142, 2149 (2009).[1]

Proposed Defendant-Intervenors are three of the millions of low-priority immigrants whose deferment under DAPA would allow for the DHS's limited resources to be focused on removing individuals who threaten public safety and do not contribute positively to society. All three Proposed Defendant-Intervenors have lived in the United States for over a decade and are currently working to support their families or are getting an education. While studying for her GED, Jane Doe #2 also cares for her husband, her two U.S. citizen children, and her mother who lives with the family and is suffering from Alzheimer's disease. (Jane Doe #2 Decl., ¶ 4.) Jane Doe #1, who has lived in the United States for over 15 years and has four U.S. citizen children, helps support her family by preparing and selling food and doing catalog sales. (Jane Doe #1 Decl., ¶¶ 1, 3, 4, 7.) Jane Doe #3, who is the mother of a two-year-old U.S. citizen, provides for herself and for her young daughter by selling items at flea markets, and also by making and selling food. (Jane Doe #3 Decl., ¶¶ 3, 4.) Prior to this, Jane Doe #3 worked as a waitress at a taco restaurant and took care of others' children in her home. (*Id.*, ¶ 3.) Each Proposed Defendant-Intervenor has provided many years of vital support to her family and community,

---

[1] DAPA is also consistent with the Immigration and Nationality Act ("INA"), which includes provisions for the removal of recent border-crossers as well as individuals with a criminal background and those who threaten national security. *See* 8 U.S.C.§§ 1225; 1226(c); 1226a.

and under DAPA each could take full advantage of regulations allowing an immigrant subject to deferred action to seek employment authorization. 8 C.F.R. §274a.12(c)(14).

Proposed Defendant-Intervenors have also contributed to their communities through active participation in church and volunteering. For example, Jane Doe #2 attends church every Sunday and volunteers in church activities. (Jane Doe #2 Decl., ¶ 5.) She also assists in her four-year-old daughter's Head Start program. (*Id.*, ¶ 3.) Similarly, Jane Doe #1 volunteers at her church and participates in fields trips at her children's schools. (Jane Doe #1 Decl., ¶ 5.) Simply put, Proposed Defendant-Intervernors, and those like them, are not individuals who are or who should be a priority for removal from the United States.

Second, the Supreme Court has consistently recognized that humanitarian concerns, such as those emphasized by DAPA, may be pursued by the Executive Branch when enforcing immigration policy. *Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012) (recognizing the Federal Government may "decide whether it makes sense to pursue removal at all" because of "immediate human concerns"); *AAADC*, 525 U.S. at 483-84 (recognizing the "regular practice" of granting "deferred action" for "humanitarian reasons"). The Court has acknowledged that "[t]o ameliorate a harsh and unjust outcome, the INS may decline to institute proceedings, terminate proceedings, or decline to execute a final order of deportation." *AAADC*, 525 U.S. at 484.

If Plaintiffs' preliminary injunction motion is granted and DAPA's implementation halted, the theoretical "harsh and unjust outcome" described by the Supreme Court would become Proposed Defendant-Intervenors' reality. *Id.* Without the deferred action offered by DAPA, Proposed Defendants-Intervernors could be separated from their families, and similarly, these families—including children who are U.S. citizens—could lose important caregivers.

-7-

Efforts to prevent this potential hardship are not new to national immigration policy; in fact, "[t]he legislative history of the [INA] clearly indicates that Congress … was concerned with the problem of keeping families of United States citizens and immigrants united." *INS v. Errico*, 385 U.S. 214, 220 n.9 (1966). Here, if Plaintiffs' preliminary injunction motion is granted, and implementation of DAPA is halted, there is a real danger that Jane Doe #2 could be separated from her two children, her husband, and her mother with Alzheimer's disease for whom she is the primary caregiver. (Jane Doe #2 Decl. ¶¶ 3, 4.) Similarly, Jane Doe #1 could be removed from her four children, three of whom still live at home. She would also miss out on seeing her married oldest child start a family of his own. (Jane Doe #1 Decl. ¶ 3.). Finally, Jane Doe #3 could be separated from her two-year-old baby girl. (Jane Doe #3 Decl. ¶ 3). These women—and those like them—are the reason why the U.S. Government has recognized the value of implementing immigration policies that, like DAPA, weigh humanitarian concerns.

> **B.    The Irreparable Harm to Proposed Defendant-Intervernors and the Public Interest Establishes that Plaintiffs' Motion for a Preliminary Injunction Must Be Denied.**

Granting Plaintiffs' preliminary injunction and halting DAPA's implementation would cause great harm to Proposed Defendant-Intervenors, the millions of others similarly situated, and the public at large. The Supreme Court has dictated that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982) (citations omitted). In this instance, granting Plaintiffs' preliminary injunction motion would not only place millions like Proposed Defendant-Intervenors in a precarious position, *see supra* Section II.A, but would also threaten public safety by undermining policies intended to enhance DHS's capacity to focus limited resources on removing those individuals who pose a danger to society. If Plaintiffs' preliminary injunction is granted, it is Proposed Defendant-Intervenors who will be irreparably

harmed in contrast to the unsubstantiated claim of harm by plaintiffs if the injunction is not granted. As explained in detail in Defendants' Memorandum (*see* Dkt. No. 38 at 49), Plaintiffs' interest are in preventing, at best, a "speculative injury," *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013) (quotation and alterations omitted), while Proposed Defendant-Intervernors, and the millions similarly situated, would face "a real and immediate threat" of harm if the preliminary injunction motion were granted. *Grant v. Gilbert¸* 324 F.3d 383, 388 (5th Cir. 2003) (quotation omitted). The humanitarian rationale for DAPA discussed in Section II.A similarly supports a finding that halting the implementation of DAPA would irreparably harm individuals like Defendant-Intervenors.

The bottom line is that, if DAPA is enjoined the Proposed Defendant-Intervenors and millions like them will remain subject to deportation at any time. Despite their low priority as candidates for deportation, their lives could be upended. Families will be split apart, including those with children who are U.S. citizens or Lawful Permanent Residents and whose young children or elderly parents require care. These individuals would also be removed from communities that they have been a part of and contributed to—as friends, neighbors, volunteers—for many years. Moreover, Proposed Defendant-Intervenors, and those who are similarly situated, would remain ineligible for work authorization thereby limiting their access to employment opportunities and directly impacting their ability to support their children and families and to contribute to the U.S. economy.

For all these reasons, a preliminary injunction enjoining DAPA is not in the public's interest. DAPA was authorized specifically to enhance DHS's capacity to focus its limited resources on threats to national security, border security, and public safety, not on low priority,

law-abiding individuals like Prospective Defendant-Intervenors.  Any actions that undermine or hinder these efforts, such as enjoining DAPA, should be denied.

## CONCLUSION

For the foregoing reasons, Proposed Defendant-Intervenors respectfully request that the Court deny Plaintiffs' Motion for Preliminary Injunction.

Dated:  January 14, 2015

Respectfully submitted,

LAW OFFICE OF FRANK COSTILLA, L.P.
Frank Costilla (Tex. Bar. No. 04856500)
5 E. Elizabeth Street
Brownsville, Texas 78520
Phone:  956-541-4982
Facsimile:  956-544-3152

MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND
By  /s/ *Nina Perales*_____
Nina Perales (Tex. Bar No. 24005046;
Southern District of Tex. Bar No. 21127)
Attorney-in-Charge
David Hinojosa (Tex. Bar No. 24010689)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone:  (210) 224-5476 (telephone)
Facsimile:  (210) 224-5382 (facsimile)

O'MELVENY & MYERS LLP
Linda Smith (Cal. Bar No. 78238)
Adam P. KohSweeney (Cal. Bar No. 229983)
J. Jorge deNeve (Cal. Bar No. 198855)
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Phone: 310-246-6801
Facsimile: 310-246-6779

(Requests for *pro hac vice* admission to be filed )

Attorneys for the Proposed Defendant-Intervenors **JANE DOE #1**, **JANE DOE #2,** and **JANE DOE #3**

-11-

## **CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that, on the 14th day of January 2015, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

      /s/ *Nina Perales*
      Nina Perales (Tex. Bar No. 24005046)
      ***Attorney for Proposed Defendant-Intervenors***