**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, § § Plaintiffs, § § v. § § UNITED STATES OF AMERICA, *et al.*, § § Defendants, § § and § § JANE DOE #1, JANE DOE #2, AND JANE DOE #3, § § Proposed Defendant– Intervenors § § | Case No. 1:14-CV-254 |

**PROPOSED DEFENDANT-INTERVENORS' MOTION FOR LEAVE TO PROCEED
UNDER PSEUDONYMS AND MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

      A.    DHS's Deferred Action for Parental Accountability Initiative.................. 2

      B.    The Proposed Doe Defendant-Intervenors................................................... 4

STATEMENT OF THE ISSUE TO BE DECIDED BY THIS COURT...................................... 6

SUMMARY OF ARGUMENT .................................................................................................. 6

ARGUMENT ............................................................................................................................. 8

    I.    The Proposed Intervention Would Subject The Doe Intervenors To Severe Risk of Harassment And Deportation, Thus Fulfilling The Fifth Circuit's Criteria For Proceeding Anonymously .................................................................. 8

      A.    Legal Standard ............................................................................................ 8

      B.    Proposed Defendant-Intervenors Seek To Challenge Government Action—The Plaintiff States' Attack On DAPA—And Doing So Without Anonymity Would Subject Them To A Serious Risk Of Harassment, Violence, And Intimidation.................................................... 9

      C.    Proposed Defendant-Intervenors Admit To Their Undocumented Status By Participating In This Lawsuit, Making Them Vulnerable To Removal Proceedings ........................................................................... 12

    II.    Allowing The Doe Intervenors To Proceed Under Pseudonyms Would Help   Advance The Public Interest And Would Not Prejudice The Plaintiff  States ............................................................................................................. 12

CONCLUSION........................................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arizona v. United States*,
    132 S. Ct. 2492 (2012) ............................................................................................................3

*Doe v. Stegall*,
    653 F.2d 180 (5th Cir. 1981) ........................................................................................6, 8, 11

*Friendly House v. Whiting*,
    No. 2:10-cv-1061-SRB (D. Ariz. June 21, 2010) ...................................................................11

*Georgia Latino Alliance for Human Rights v. Deal*,
    No. 1:11-CV-1804-TWT (N.D. Ga. July 8, 2010)..................................................................11

*Heckler v. Chaney*,
    470 U.S. 821 (1985)..................................................................................................................3

*Hispanic Interest Coalition of Alabama v. Governor of Alabama*,
    691 F.3d 1236 (11th Cir. 2012) .........................................................................................10, 11

*Keller v. City of Fremont*,
    2011 WL 41902 (D. Neb. Jan. 5, 2011)..................................................................................11

*Lozano v. City of Hazelton*,
    496 F. Supp. 2d 477 (M.D. Pa. 2007), *affirmed in relevant part*, 620 F.3d 170 (3d Cir.
    2010), *vacated in other part*, City of Hazelton v. Lozano, 131 S. Ct. 2958 (2011) .................11

*Padilla v. Kentucky*,
    559 U.S. 356 (2010)................................................................................................................12

*Plyler v. Doe*,
    457 U.S. 202 (1982)................................................................................................................11

*Rose v. Beaumont Indep. Sch. Dist.*,
    240 F.R.D. 264 (E.D. Tex. 2007).............................................................................................8

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*,
    599 F.2d 707 (5th Cir. 1979) ...............................................................................................8, 10

**STATUTES**

6 U.S.C. § 202(5) ...........................................................................................................................3

8 U.S.C. § 1103(a)(1).....................................................................................................................2

8 U.S.C. § 1103(a)(3).....................................................................................................................3

8 U.S.C. § 1326(a) .......................................................................................................................11

**INTRODUCTION**

The Proposed Defendant-Intervenors (the "Doe Intervenors") are three individual undocumented immigrants who will be directly and dramatically affected by the resolution of the challenged action in this case. Because of their unique and personal interest, the Doe Intervenors have filed concurrently herewith a Motion to Intervene in this proceeding and a Supplemental Brief in Opposition to Plaintiff's Motion for Preliminary Injunction in order to address the direct impact of DAPA on individuals such as the Doe Intervenors who have lived in the United States and contributed to their communities for many years.[1]

All three Doe Intervenors meet the DAPA requirements and, under the Deferred Action Guidance, will be eligible for consideration for deferred action. If DAPA is enjoined, the Doe Intervenors as well as millions of others similarly situated are unlikely to receive consideration for deferred action and could face deportation and separation from their families and their communities. Moreover, they will remain ineligible for the work authorization for which a grant of deferred action is a prerequisite, thereby limiting their access to employment opportunities and directly impacting their ability to support their children and families and to contribute to the U.S. economy.

In order for the Doe Intervenors to be able to safely make the Motion for Intervention and to file the Supplemental Brief, the Doe Intervenors request leave to proceed under pseudonyms for their protection. Groups of individuals, and even some officials, have created an atmosphere of fear, bias, and xenophobia in South Texas. In the past year, areas in the Rio Grande Valley, where the Doe Intervenors live with their families, have seen the arrival of armed "militias" that

---

[1] The Doe Intervenors have adopted and incorporated in full the Defendants' Memorandum of Points and Authorities In Opposition to Plaintiffs' Motion for Preliminary Injunction as well as Exhibits 1-33 attached thereto. *See* Docket No. 38 ("Defendants' Memorandum").

advocate a culture of violence and intimidation against undocumented immigrants. *See, e.g.*, Perales Decl. Ex. A (January 6, 2015 Houston Chronicle article reporting a surge in armed border militias and quoting a militia member's statement that "You see an illegal. You point your gun dead at him, right between his eyes, and you say, 'Get back across the border or you will be shot").[2] Meanwhile, some of Texas's own high-ranking elected officials have contributed to this atmosphere of intolerance, claiming that undocumented immigrants such as the Doe Intervenors are a threat to Texas. *See, e.g.*, Ex. B (Houston Chronicle article recording 2014 statement of Texas Lieutenant Governor-elect Dan Patrick that undocumented immigrants "threaten your family. They threaten your life. They threaten your business. They threaten our state."). The Doe Intervenors rightfully fear that they and their families will be subject to unlawful intimidation, violence, and harassment if they are publicly named in this suit. Moreover, because grants of deferred action under the DAPA program that Plaintiffs challenge are discretionary, Plaintiffs reasonably fear that Defendants may act to deport them if they are named in this suit. Accordingly, the Doe Intervenors respectfully request that this Court grant their motion to proceed under pseudonyms as Defendant-Intervenors.

## BACKGROUND

### A.     DHS's Deferred Action for Parental Accountability Initiative

The Secretary of the Department of Homeland Security ("DHS") is "charged with the administration and enforcement of this chapter [the Immigration and Nationality Act ("INA")] and all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1). Although charged with enforcement of the statutory scheme, "[a]n agency generally cannot act against each technical violation of the statute it is charged with enforcing," *Heckler v.*

---

[2] All exhibits referred to are those attached the Declaration of Nina Perales filed concurrently herewith.

*Chaney*, 470 U.S. 821, 831–32 (1985), and indeed "[a]principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012). Thus, to enable the "proper ordering of its priorities," *Heckler*, 470 U.S. at 832, and the marshalling of extant resources to address those priorities, the INA provides the Secretary of DHS with the authority to "establish such regulations; . . . issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under [the INA]." 8 U.S.C. § 1103(a)(3). Further, the Secretary of DHS is specifically charged with "establishing national immigration enforcement policies and priorities," 6 U.S.C. § 202(5), to ensure that DHS's limited resources are expended in pursuit of its highest priorities in national security, border security, and public safety.

On November 20, 2014, Defendant Secretary of the Department of Homeland Security, Jeh Johnson, issued a Memorandum entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who Are the Parent of U.S. Citizens or Permanent Residents" ("Deferred Action Guidance"). Docket. No. 38, Ex. 7. In light of DHS's limited resources, a central component in the Deferred Action Guidance is the establishment of an integrated directive that institutes the deferred removal of low-priority undocumented immigrants on a case-by-case basis by granting them consideration for deferred action. These low-priority undocumented immigrants include parents of U.S. citizens or Lawful Permanent Residents, all of whom have lived in the United States for at least five years and who are determined by the Government not to pose a threat to national security or public safety ("DAPA"). *See also* Docket. No. 38 at 1.

To be considered for a grant of deferred action, undocumented individuals must meet six factors, namely (1) that they have a U.S. citizen son or daughter as of November 20, 2014; (2)

have continually resided in the United States since before January 1, 2010; (3) been physically present in the United States on November 20, 2014 and on the date of making the request for deferred action; (4) have had no lawful status on November 20, 2014; (5) not fall within one of the categories of enforcement priorities set forth by the Secretary in a concurrently released memorandum; and (6) present no other factors that, in the exercise of discretion, make the grant of deferred action inappropriate.  Applicants for deferred action must also submit personal and biometric information for a background check.  DHS immigration officers will consider each application individually and make grants of deferred action on a case-by-case basis.  Deferred action does not confer any sort of legal status on an undocumented immigrant; it merely allows the immigrant to remain in the United States for a period of up to three years, and it can be terminated at any time at the discretion of the federal government.

The State of Texas and the other Plaintiffs here brought suit to enjoin DAPA in this Court on December 4, 2014.  If allowed by this Court, the Doe Intervenors intend to defend their direct interest in having consideration for deferred action available to them under DAPA.

### B. The Proposed Doe Defendant-Intervenors

The Doe Intervenors are three undocumented women, residents of the Rio Grande Valley region of South Texas, who are the mothers of U.S. citizen children.

Jane Doe #1 is an undocumented immigrant, a 15-year resident of the United States, and a mother of four, who lives in Edinburg, Texas.  *See* Declaration of Defendant Intervenor Movant Jane Doe Doe #1 ("Doe #1 Decl.") ¶¶ 9, 6, 3.[3]  She was born in 1971 in Tamaulipas,

---

[3] The Declarations of Jane Does #1 - #3 referred to herein are filed concurrently with this motion and with the Doe Intervenors' Motion to Intervene.  If this Court grants the Doe Intervenors' request to proceed in this case under pseudonyms, at the Court's request the Doe Intervenors will file under seal or in camera a second, otherwise identical set of declarations executed on the same day as the pseudonymous set, under which their true names are revealed.

Mexico, where she attended school until the 8th Grade, and later worked as a laborer and food seller. *Id.* ¶ 2. In 1999, she came to the United States, where she has lived ever since. *Id.* ¶ 6. Jane Doe #1 is married and has four children. *Id.* ¶ 3. Her oldest son, J., is a recipient of deferred action under DACA, is married, attends college, and works. *Id.* ¶ 3. Her three younger children, R. (21), G.(14), and E. (8) are U.S. citizens, who attend school in the United States and get good grades. *Id.* Outside of Jane Doe #1's family obligations, she helps her husband support their family by making and selling tamales and other food, and by doing catalog sales. *Id.* ¶ 4. Additionally, she volunteers at her church and is active in her promoting her children's education. *Id.* ¶ 5. Jane Doe #1 wishes to remain anonymous because disclosure of her immigration status could subject her to contempt and harassment, and could lead to her arrest, detention, and deportation. *Id.* ¶ 9. Her fears are driven by what she has seen in the Texas media about the immigration debate. *Id.*

Jane Doe #2 is an undocumented immigrant residing in McAllen, Texas, who has lived in the United States for 13 years, nearly half her life. *See* Declaration of Jane Doe #2 ("Doe #2 Decl.") ¶¶ 6, 1, 2. She was born in 1987 in Michoacan, Mexico, where she attended school through the 5th grade. *Id.* ¶ 2. After her parents brought her to the United States, she attended school until the 10th grade. *Id.* Jane Doe #2 is married and has two young children who are U.S. citizens: A. (6), who is in the 1st grade, and A. (4), who is in a Head Start program. *Id.* ¶ 3. Jane Doe #2 cares for her husband and children and is the sole caretaker of her mother, who lives with her and has Alzheimer's disease. *Id.* ¶ 4. She is currently taking GED classes, is an active member of her church, and volunteers in her daughter's Head Start program. *Id.* ¶ 5. She wishes to remain anonymous because she sees how the immigration debate has been portrayed in the media and the harassment some immigrants have faced. *Id.* ¶ 8. Further, she fears that if her

unlawful immigration status becomes known, then she will be detained or deported. *Id.* As the cornerstone of three generations of her family, detention or deportation would have devastating consequences. *See id.* ¶ 3

Jane Doe #3 is an undocumented immigrant residing in Donna, Texas. Declaration of Jane Doe #3 ("Doe #3 Decl.") ¶¶ 1, 4. She is an 11-year resident of the United States and the mother of a two-year old daughter, who is a U.S. citizen. *Id.* ¶¶ 3, 4. She was born in 1983 in Chiapas, Mexico, and completed high school there. *Id.* ¶ 2. She supports herself and her daughter by selling items in a flea market, and making food. *Id.* ¶ 3. She hopes that DAPA will allow her stay with her daughter and find better work opportunities so that she can provide for her. Having seen how immigrants can be portrayed in the media, she fears that proceeding under her own name will subject her to scorn and harassment. *Id.* ¶ 6. Also, revealing her name could lead to arrest, detention, or removal. *Id.*

## STATEMENT OF THE ISSUE TO BE DECIDED BY THIS COURT

The issue this Court must decide is whether in the current atmosphere of hostility towards undocumented immigrants along the Texas border and in Texas politics and the ever-present threat of deportation, the Doe Intervenors, as undocumented immigrants, meet the criteria for proceeding under pseudonyms in this Court. *See Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). There is no doubt that the answer is in the affirmative.

## SUMMARY OF ARGUMENT

The Doe Intervenors should be granted leave to proceed under pseudonyms. Although there is no bright-line rule for when a party should be allowed to participate anonymously, the Fifth Circuit has laid out certain factors, all of which counsel toward allowing anonymity in this case.

First, the current atmosphere of hostility toward undocumented immigrants in the areas near the Texas-Mexico border, including in the Rio Grande Valley makes clear that the Doe Intervenors' fear of harassment, violence, and intimidation is valid. Armed militias in the border region, coupled with incendiary statements from leading political figures, demonstrate that the Doe Intervenors would be at risk should their names be released in this high-profile lawsuit.

Second, and an independent reason for granting anonymity, is that by participating in this media-intensive litigation, the Doe Intervenors put themselves at risk of arrest, detention and removal proceedings, which threaten to separate them from their homes, their families and their communities.

Finally, allowing the Doe Intervenors to proceed under pseudonyms would promote the public interest by allowing the Doe Intervenors to participate in this lawsuit. The outcome of this case could have a direct impact on the Doe Intervenors' lives as well as those of the three million other undocumented immigrants similarly situated. No other party to this case faces that impact. The Defendants pursue broader immigration policies. They are responsible for issuing and implementing DAPA, but none of them are or ever will be directly affected by DAPA. Instead, Defendants' interest in DAPA is to allocate their limited resources effectively, concluding that individuals such as the Doe Intervenors are a low priority for enforcement. Unlike the Doe Intervenors and their families, the outcome of this litigation does not jeopardize Defendants' families' well-being or their ability to earn a living. The Doe Intervenors ask the Court to provide them with the opportunity to defend their own interests under DAPA.

**ARGUMENT**

I. **THE PROPOSED INTERVENTION WOULD SUBJECT THE DOE INTERVENORS TO SEVERE RISK OF HARASSMENT AND DEPORTATION, THUS FULFILLING THE FIFTH CIRCUIT'S CRITERIA FOR PROCEEDING ANONYMOUSLY**

    A. **Legal Standard**

The Fifth Circuit does not recognize a "hard and fast formula for ascertaining whether a party may sue anonymously." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). Rather, "[t]he decision requires a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* Although the threat of a hostile public reaction to a lawsuit, without more, generally does not justify anonymity, the threat of "extensive harassment and perhaps even violent reprisals if . . . identities are disclosed" will often tip the balance in favor of allowing parties to proceed under pseudonyms. *Id.* In addition to and in conjunction with threats of harassment and violence, three other factors are commonly considered, although none of them is dispositive and they do not constitute a "rigid, three step test" for determining a party's right to proceed anonymously. *Id.* at 185 (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979). These factors, which favor anonymity, are that (1) the parties seeking anonymity are suing to challenge government activity; (2) the bringing of the lawsuit compelled the parties to disclose information "of the utmost intimacy"; and (3) by filing suit, the parties are compelled to admit their intention to engage in illegal conduct. *Stegall*, 653 F.2d at 185. These factors are not exhaustive, however, *see Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 266 (E.D. Tex. 2007), and other factors may be considered as well.

### B. Proposed Defendant-Intervenors Seek To Challenge Government Action—The Plaintiff States' Attack On DAPA—And Doing So Without Anonymity Would Subject Them To A Serious Risk Of Harassment, Violence, And Intimidation

As explained above, all three Doe Intervenors are fearful for their and their families' safety if their names are revealed in this suit. *See* Doe #1 Decl. ¶ 9; Doe #2 Decl. ¶ 8; Doe #3 Decl. ¶ 6. This Court needs no primer on the reasons why. The past year has seen an unprecedented surge in vitriol against undocumented immigrants, including in South Texas, which has seen an influx of armed "militia" groups, some of which have expressly advocated for harassment, violence, and intimidation toward undocumented immigrants. *See* Ex. A (reporting a militia member's statement that "You see an illegal. You point your gun dead at him, right between his eyes, and you say, 'Get back across the border or you will be shot.'"); Ex. D (Los Angeles Times article reporting on increased militia presence in Texas); *see also* Ex. F (report of anti-immigrant rallies in Texas by Neo-Nazi and Ku Klux Klan groups). Similar militia groups have previously been linked to murders of Latinos, most notably in a heavily reported incident in Arizona in 2011, and the Doe Intervenors reasonably fear similar violence should their names be released. *See* Ex. A (discussing the murder of a 29-year-old Latino man and his 9-year-old daughter by anti-immigrant militia members).

Moreover, anti-immigrant vitriol has not merely been limited to these vigilante groups. Rather, it has been cultivated by prominent elected officials from Texas and other of the Plaintiff States, notably including Texas Lieutenant Governor-elect Dan Patrick, who has referred to undocumented immigrants as "diseased" and stated at a campaign event that they "threaten your family . . . They threaten your life. They threaten your business. They threaten our state." Ex. B; Ex. C. Even if Texas officials do not harbor anti-immigrant views, stating such views has become an integral part of Texas electoral politics. Similar beliefs have also been expressed, to

name just one example, by Plaintiff Kansas's Secretary of State Kris Kobach, who implied on his radio program that undocumented immigrants intend to conduct an ethnic cleansing of white Americans. *See* Ex. E (newspaper article reporting on Kobach's remarks and the controversy they engendered); *see also* Ex. G (article reporting statements of Republican Congressman Steve King that even undocumented immigrants wanting to join the U.S. Military should be deported: "As soon as they raise their hand and say, 'I'm unlawfully present in the United States,' we're not going to take your oath into the military, but we're going to take your deposition and we have a bus for you to Tijuana[.]"). These comments serve to give implicit backing to anti-immigrant violence, and the Doe Intervenors are reasonably fearful that they would be at serious risk of harassment, violence, and intimidation if they are forced to proceed under their own names.

The fact that the Doe Intervenors seek to join this suit to challenge a high-profile governmental action makes the threat of harassment and violence particularly acute and boosts the case for anonymity. *Cf. S. Methodist Univ. Ass'n of Women Law Students*, 599 F.2d at 713 (noting that most cases allowing anonymity deal with parties opposing the government rather than other private parties). Granted, the Doe Intervenors are not challenging (for example) the constitutionality of a state statute, but they are nonetheless seeking to challenge a government action: the Plaintiff States' decision to request an injunction that, if granted, would eliminate a federal government initiative that could allow the Doe Intervenors to come out of the shadows to lawfully support their families and participate in the public lives of their local communities. And at the same time the Doe Intervenors are seeking to *defend* the actions of the federal government in a case that is under the national spotlight. *See, e.g.*, Ex. A (mentioning this case); Ex. H (news article reporting on January 14, 2015 vote by the House of Representatives to block

DAPA, and mentioning this lawsuit). There is ample reason to expect that undocumented immigrants intervening in a high-profile court battle court be the target of—at the very least—intimidating protests, such as the recent protests in Murrietta, California, where anti-immigrant activists went so far as to harass and intimidated undocumented children who were already in federal custody. *See* Ex. I (article reporting that "angry crowds thwarted detained migrants from entering their community").

More than "simply" challenging governmental action, without anonymity the Doe Intervenors would be required to disclose to the world information of the utmost intimacy: their undocumented status. An individual's immigration status is incredibly sensitive information, the exposure of which can subject the individual to severe negative consequences, such as "criminal prosecution, harassment, and intimidation," depending on the circumstances. *Hispanic Interest Coalition of Alabama v. Governor of Alabama*, 691 F.3d 1236, 1247 (11th Cir. 2012). Indeed, "this reality has led federal courts . . . to permit the plaintiffs to proceed anonymously in immigration-related cases." *Id.* at 1247 n.8; *see, e.g.*, *Plyler v. Doe*, 457 U.S. 202 (1982); *Lozano v. City of Hazelton*, 496 F. Supp. 2d 477, 507-12 (M.D. Pa. 2007) (citations omitted), *affirmed in relevant part*, 620 F.3d 170, 194-96 (3d Cir. 2010), *vacated in other part*, *City of Hazelton v. Lozano*, 131 S. Ct. 2958 (2011); *Keller v. City of Fremont*, Nos. 8:10-cv-0270-LSC-FG3; 4:10-cv-3140-LSC-FG3, 2011 WL 41902, at *2-3 (D. Neb. Jan. 5, 2011) (following *Lozano*); *Georgia Latino Alliance for Human Rights v. Deal*, No. 1:11-CV-01804-TWT, at ECF No. 101 (N.D. Ga. July 8, 2010). Indeed, immigration status is so sensitive that immigrants are often allowed to file suit anonymously even when they are not undocumented but are actually lawfully present after, for example, receiving asylum after suffering persecution. *See, e.g.*, *Friendly House v. Whiting*, No. 2:10-cv-1061-SRB, at ECF. No. 212 (D. Ariz. June 21, 2010);

*see also Lozano*, 496 F. Supp. 2d at 513-14 ("[F]ederal courts have recognized that inquiries into immigration status can have an *in terrorem*, effect, limiting the willingness of plaintiffs to pursue their rights out of fears of the consequences of an exposure of their position.").

### C. Proposed Defendant-Intervenors Admit To Their Undocumented Status By Participating In This Lawsuit, Making Them Vulnerable To Removal Proceedings

Moreover, proceeding without anonymity in this case would subject the Doe Intervenors to potential arrest, detention and removal proceedings and "an opprobrium analogous to the infamy associated with criminal behavior." *Stegall*, 653 F.2d at 186. Although the Doe Intervenors do not admit criminal activity or criminal prosecution *per se* by appearing in this case, they admit to their undocumented status, an admission that subjects them to the quasi-criminal sanction of removal proceedings. The Supreme Court has "long recognized that deportation is a particularly severe penalty [though] it is not, in a strict sense, a criminal sanction. Although removal proceedings are civil in nature, deportation is intimately related to the criminal process." *Padilla v. Kentucky*, 559 U.S. 356, 365-66 (2010) (citations and quotations omitted). Because the Doe Intervenors make themselves vulnerable to the quasi-criminal penalty of deportation by appearing in this case, a vulnerability that will continue unless and until they successfully apply for a grant of deferred action under DAPA (the success of which hinges on the exercise of the Secretary's discretion), they should also be allowed to proceed under pseudonyms.

### II. ALLOWING THE DOE INTERVENORS TO PROCEED UNDER PSEUDONYMS WOULD HELP ADVANCE THE PUBLIC INTEREST AND WOULD NOT PREJUDICE THE PLAINTIFF STATES

Finally, allowing the Doe Intervenors to proceed under pseudonyms would promote the public interest and would not prejudice the Plaintiff States. As discussed at more length in the

concurrently filed motion to intervene, the Doe Intervenors bring a unique viewpoint to this case by having a direct personal interest in the outcome of this case and by representing the millions of undocumented immigrants and family members of undocumented immigrants who may be able to benefit from DAPA. Given the risks of harassment, violence, and deportation that would accompany disclosure of their names, these interests will not be able to be adequately served if anonymity is denied. Moreover, the Plaintiff States will not be prejudiced by anonymity. The issues to be decided in this case are largely legal, and they may be litigated without knowledge of the Doe Intervenors' identities.

## CONCLUSION

Proposed Defendant-Intervenors respectfully request that their Motion for Leave to Proceed Under Pseudonyms be granted.

Dated:  January 14, 2015

LAW OFFICE OF FRANK COSTILLA, L.P.
Frank Costilla (Tex. Bar. No. 04856500)
5 E. Elizabeth Street
Brownsville, Texas 78520
Phone:  956-541-4982
Facsimile:  956-544-3152

Respectfully submitted,

MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
By  /s/ *Nina Perales*
Nina Perales (Tex. Bar No. 24005046;
Southern District of Tex. Bar No. 21127
Attorney-in-Charge)
David Hinojosa (Tex. Bar No. 24010689)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone:  (210) 224-5476 (telephone)
Facsimile:  (210) 224-5382 (facsimile)


O'MELVENY & MYERS LLP
Linda Smith (Cal. Bar No. 78238)
Adam P. KohSweeney (Cal. Bar No. 229983)
J. Jorge deNeve (Cal. Bar No. 198855)
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Phone: 310-246-6801
Facsimile: 310-246-6779

(Requests for *pro hac vice* admission to be filed)

Attorneys for the Proposed Defendant-Intervenors **JANE DOE #1**, **JANE DOE #2,** and **JANE DOE #3**

-15-

## **CERTIFICATE OF CONFERENCE**

  I hereby certify that I and my co-counsel have attempted to obtain consent to this motion from Plaintiffs' counsel and from Defendants' counsel, but have not received any response from them as of the filing of this motion.

/s/ *Nina Perales*
Nina Perales (Texas Bar No. 24005046)
***Attorney for Proposed Defendant-Intervenors***

## **CERTIFICATE OF SERVICE**

  I, the undersigned, hereby certify that, on the 14th day of January 2015, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ *Nina Perales*
Nina Perales (Texas Bar No. 24005046)
***Attorney for Proposed Defendant-Intervenors***
