EXHIBIT 37



Secretary
U.S. Department of Homeland Security
Washington, DC 20528

November 20, 2014

MEMORANDUM FOR: Thomas S. Winkowski
Acting Director
U.S. Immigration and Customs Enforcement

Megan Mack
Officer
Office of Civil Rights and Civil Liberties

Philip A. McNamara
Assistant Secretary for Intergovernmental Affairs

FROM: Jeh Charles Johnson
Secretary

SUBJECT: **Secure Communities**

The Secure Communities program, as we know it, will be discontinued.

The goal of Secure Communities was to more effectively identify and facilitate the removal of criminal aliens in the custody of state and local law enforcement agencies. But the reality is the program has attracted a great deal of criticism, is widely misunderstood, and is embroiled in litigation; its very name has become a symbol for general hostility toward the enforcement of our immigration laws. Governors, mayors, and state and local law enforcement officials around the country have increasingly refused to cooperate with the program, and many have issued executive orders or signed laws prohibiting such cooperation. A number of federal courts have rejected the authority of state and local law enforcement agencies to detain immigrants pursuant to federal detainers issued under the current Secure Communities program.

The overarching goal of Secure Communities remains in my view a valid and important law enforcement objective, but a fresh start and a new program are necessary. As recommended by the Homeland Security Advisory Council Task Force, Secure Communities "must be implemented in a way that supports community policing and sustains the trust of all elements of the community in working with local law enforcement."

1

Accordingly, I am directing U.S. Immigration and Customs Enforcement (ICE) to discontinue Secure Communities. ICE should put in its place a program that will continue to rely on fingerprint-based biometric data submitted during bookings by state and local law enforcement agencies to the Federal Bureau of Investigation for criminal background checks. However, ICE should only seek the transfer of an alien in the custody of state or local law enforcement through the new program when the alien has been convicted of an offense listed in Priority 1 (a), (c), (d), and (e) and Priority 2 (a) and (b) of the November 20, 2014 Policies for the Apprehension, Detention and Removal of Undocumented Immigrants Memorandum, or when, in the judgment of an ICE Field Office Director, the alien otherwise poses a danger to national security. In other words, unless the alien poses a demonstrable risk to national security, enforcement actions through the new program will only be taken against aliens who are convicted of specifically enumerated crimes.

Further, to address the increasing number of federal court decisions that hold that detainer-based detention by state and local law enforcement agencies violates the Fourth Amendment,[1] I am directing ICE to replace requests for detention (*i.e.*, requests that an agency hold an individual beyond the point at which they would otherwise be released) with requests for notification (*i.e.*, requests that state or local law enforcement notify ICE of a pending release during the time that person is otherwise in custody under state or local authority).

If in special circumstances ICE seeks to issue a request for detention (rather than a request for notification), it must specify that the person is subject to a final order of removal or there is other sufficient probable cause to find that the person is a removable alien, thereby addressing the Fourth Amendment concerns raised in recent federal court decisions.

---

[1] *See, e.g., Miranda-Olivares*, 2014 WL 1414305, at *11 (D. Ore. Apr. 11, 2014) (holding that county violated the Fourth Amendment by relying on an ICE detainer that did not provide probable cause regarding removability); *Morales v. Chadbourne*, 996 F. Supp. 2d 19, 29 (D.R.I. 2014) (concluding that detention pursuant to an immigration detainer "for purposes of mere investigation is not permitted"). *See also Moreno v. Napolitano*, Case No. 11 C 5452, 2014 WL 4814776 (N.D. Ill. Sept. 29, 2014) (denying judgment on the pleadings to the government on plaintiffs' claim that ICE's detainer procedures violate probable cause requirements); *Gonzalez v. ICE*, Case No. 2:13-cv-0441-BRO-FFM, at 12-13 (C.D. Cal. July 28, 2014) (granting the government's motion to dismiss, but allowing plaintiffs to file an amended complaint and noting that plaintiffs "have sufficiently pleaded that Defendants exceeded their authorized power" by issuing "immigration detainers without probable cause resulting in unlawful detention"); *Villars v. Kubiatoski*, --- F. Supp. 2d ----, 2014 WL 1795631, at * 10 (N.D. Ill. May 5, 2014) (rejecting dismissal of Fourth Amendment claims concerning an ICE detainer issued "without probable cause that Villars committed a violation of immigration laws"); *Galarza v. Szalczyk*, Civ. Action No. 10-cv-06815, 2012 WL 1080020, at *14 (E.D. Penn. March 30, 2012) (denying qualified immunity to immigration officials for unlawful detention on an immigration detainer issued without probable cause), rev'd and remanded on other grounds, 745 F.3d 634 (reversing district court's finding of no municipal liability); *Uroza v. Salt Lake City*, No. 2:11CV713DAK, 2013 WL 653968, at *6-7 (D. Utah Feb. 21, 2013) (denying dismissal on qualified immunity grounds where plaintiff claimed to have been held on an immigration detainer issued without probable cause). *Cf. Makowski v. United States*, --- F. Supp. 2d ---, 2014 WL 1089119, at *10 (N.D. Ill. 2014) (concluding that plaintiff stated a plausible false imprisonment claim against the United States where he was held on a detainer without probable cause).

This new program should be referred to as the "Priority Enforcement Program" or "PEP."

Nothing in this memorandum shall prevent ICE from seeking the transfer of an alien from a state or local law enforcement agency when ICE has otherwise determined that the alien is a priority under the November 20, 2014 Policies for the Apprehension, Detention and Removal of Undocumented Immigrants Memorandum and the state or locality agrees to cooperate with such transfer. DHS will monitor these activities at the state and local level, including through the collection and analysis of data, to detect inappropriate use to support or engage in biased policing, and will establish effective remedial measures to stop any such misuses.[2] I direct the Office of Civil Rights and Civil Liberties to develop and implement a plan to monitor state and local law enforcement agencies participating in such transfers.

Finally, acquainting state and local governments, and their law enforcement components, with this policy change will be crucial to its success. I therefore direct the Assistant Secretary for Intergovernmental Affairs to formulate a plan and coordinate an effort to engage state and local governments about this and related changes to our enforcement policies. I am willing to personally participate in these discussions.

---

[2] *See* Homeland Security Advisory Council, *Task Force on Secure Communities Findings and Recommendations*, September 2011.