EXHIBIT 40



Secretary
U.S. Department of Homeland Security
Washington, DC 20528

November 20, 2014

MEMORANDUM FOR:   León Rodríguez
　　　　　　　　　　Director
　　　　　　　　　　U.S. Citizenship and Immigration Services

　　　　　　　　　　Thomas S. Winkowski
　　　　　　　　　　Acting Director
　　　　　　　　　　U.S. Immigration and Customs Enforcement

FROM:   Jeh Charles Johnson
　　　　Secretary

SUBJECT:   **Policies Supporting U.S. High-Skilled Businesses and Workers**

　　　I hereby direct the new policies and regulations outlined below. These new policies and regulations will be good for both U.S. businesses and workers by continuing to grow our economy and create jobs. They will support our country's high-skilled businesses and workers by better enabling U.S. businesses to hire and retain highly skilled foreign-born workers while providing these workers with increased flexibility to make natural advancements with their current employers or seek similar opportunities elsewhere. This increased mobility will also ensure a more-level playing field for U.S. workers. Finally, these measures should increase agency efficiencies and save resources.

　　　These new policies and regulations are in addition to efforts that the Department of Homeland Security is implementing to improve the employment-based immigration system. In May, for example, U.S. Citizenship and Immigration Services (USCIS) published a proposed rule to extend work authorization to the spouses of H-1B visa holders who have been approved to receive lawful permanent resident status based on employer-sponsorship. USCIS is about to publish the final rule, which will incentivize employer sponsorship of current temporary workers for lawful permanent residence so they can become Americans over time, while making the United States an even more competitive destination for highly skilled talent. Also, USCIS has been working on guidance to strengthen and improve various employment-based temporary visa programs. I expect that such guidance, consistent with the proposals contained in this memorandum, will be published in a timely manner.

www.dhs.gov

488

### A. Modernizing the Employment-Based Immigrant Visa System

As you know, our employment-based immigration system is afflicted with extremely long waits for immigrant visas, or "green cards," due to relatively low green card numerical limits established by Congress 24 years ago in 1990. The effect of these caps is further compounded by an immigration system that has often failed to issue all of the immigrant visas authorized by Congress for a fiscal year. Hundreds of thousands of such visas have gone unissued in the past despite heavy demand for them.

The resulting backlogs for green cards prevent U.S. employers from attracting and retaining highly skilled workers critical to their businesses. U.S. businesses have historically relied on temporary visas—such as H-1B,[1] L-1B,[2] or O-1[3] visas—to retain individuals with needed skills as they work their way through these backlogs. But as the backlogs for green cards grow longer, it is increasingly the case that temporary visas fail to fill the gap. As a result, the worker's temporary status expires and his or her departure is required. This makes little sense, particularly because the green card petition process for certain categories requires the employer to test the labor market and show the unavailability of other U.S. workers in that position.

To correct this problem, I hereby direct USCIS to take several steps to modernize and improve the immigrant visa process. *First*, USCIS should continue and enhance its work with the Department of State to ensure that all immigrant visas authorized by Congress are issued to eligible individuals when there is sufficient demand for such visas. *Second*, I ask that USCIS work with the Department of State to improve the system for determining when immigrant visas are available to applicants during the fiscal year. The Department of State has agreed to modify its visa bulletin system to more simply and reliably make such determinations, and I expect USCIS to revise its current regulations to reflect and complement these proposed modifications. *Third*, I direct that USCIS carefully consider other regulatory or policy changes to better assist and provide stability to the beneficiaries of approved employment-based immigrant visa petitions. Specifically, USCIS should consider amending its regulations to ensure that approved, long-standing visa petitions remain valid in certain cases where they seek to change jobs or employers.

---

[1] INA § 101(a)(15)(H)(i)(b), 8 U.S.C. § 101(a)(15)(H)(i)(b).

[2] INA § 101(a)(15)(L), 8 U.S.C. § 101(a)(15)(L).

[3] INA § 101(a)(15)(O)(i), 8 U.S.C. § 101(a)(15)(O)(i).

489

### B. Reforming "Optional Practical Training" for Foreign Students and Graduates from U.S. Universities

Under long-standing regulations, foreign nationals studying in the United States on non-immigrant F-1 student visas[4] may request twelve additional months of F-1 visa status for "optional practical training" (OPT), which allows them to extend their time in the United States for temporary employment in the relevant field of study. OPT, which may occur before or after graduation, must be approved by the educational institution.

This program provides important benefits to foreign students and the U.S. economy. Foreign students are able to further their full course of study in the United States and gain additional, practical experience in their fields by training in those fields with employers in the United States. In turn, foreign students put into practice the skills and education they gain at U.S. universities to benefit the U.S. economy. By regulations adopted in 2007, students in science, technology, engineering, and mathematics (STEM) fields are eligible for an additional 17 months of OPT, for a total of 29 months. This extension has the added benefit of helping America keep many of its most talented STEM graduates from departing the country and taking their skills overseas.

The OPT program should be evaluated, strengthened, and improved to further enhance American innovation and competitiveness, consistent with current legal authority. More specifically, I direct that Immigration and Customs Enforcement (ICE) and USCIS develop regulations for notice and comment to expand the degree programs eligible for OPT and extend the time period and use of OPT for foreign STEM students and graduates, consistent with law. I am also directing ICE and USCIS to improve the OPT program by requiring stronger ties to degree-granting institutions, which would better ensure that a student's practical training furthers the student's full course of study in the United States. Finally, ICE and USCIS should take steps to ensure that OPT employment is consistent with U.S. labor market protections to safeguard the interests of U.S. workers in related fields.

### C. Promoting Research and Development in the United States

To enhance opportunities for foreign inventors, researchers, and founders of start-up enterprises wishing to conduct research and development and create jobs in the United States, I hereby direct USCIS to implement two administrative improvements to our employment-based immigration system:

*First*, the "national interest waiver" provided in section 203(b)(2)(B) of the *Immigration and Nationality Act* (INA) permits certain non-citizens with advanced

---

[4] INA § 101(a)(15)(F)(i), 8 U.S.C. § 101(a)(15)(F)(i).

3

490

degrees or exceptional ability to seek green cards without employer sponsorship if their admission is in the national interest.[5] This waiver is underutilized and there is limited guidance with respect to its invocation. I hereby direct USCIS to issue guidance or regulations to clarify the standard by which a national interest waiver can be granted, with the aim of promoting its greater use for the benefit of the U.S economy.

*Second*, pursuant to the "significant public benefit" parole authority under section 212(d)(5) of the INA,[6] USCIS should propose a program that will permit DHS to grant parole status, on a case-by-case basis, to inventors, researchers, and founders of start-up enterprises who may not yet qualify for a national interest waiver, but who have been awarded substantial U.S. investor financing or otherwise hold the promise of innovation and job creation through the development of new technologies or the pursuit of cutting-edge research. Parole in this type of circumstance would allow these individuals to temporarily pursue research and development of promising new ideas and businesses in the United States, rather than abroad. This regulation will include income and resource thresholds to ensure that individuals eligible for parole under this program will not be eligible for federal public benefits or premium tax credits under the Health Insurance Marketplace of the Affordable Care Act.

### D. Bringing Greater Consistency to the L-1B Visa Program

The L-1B visa program for "intracompany transferees" is critically important to multinational companies. The program allows such companies to transfer employees who are managerial or executives, or who have "specialized knowledge" of the company's products or processes to the United States from foreign operations. It is thus an essential tool for managing a global workforce as companies choose where to establish new or expanded operations, research centers, or product lines, all of which stand to benefit the U.S. economy. To date, however, vague guidance and inconsistent interpretation of the term "specialized knowledge" in adjudicating L-1B visa petitions has created uncertainty for these companies.

To correct this problem, I hereby direct USCIS to issue a policy memorandum that provides clear, consolidated guidance on the meaning of "specialized knowledge." This memorandum will bring greater coherence and integrity to the L-1B program, improve consistency in adjudications, and enhance companies' confidence in the program.

---

[5] INA § 203(b)(2)(B), 8 U.S.C. § 1153(b)(2)(B).

[6] INA § 205(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A).

### E.     Increasing Worker Portability

Currently, uncertainty within the employment-based visa system creates unnecessary hardships for many foreign workers who have filed for adjustment of status but are unable to become permanent residents due to a lack of immigrant visas. Current law allows such workers to change jobs without jeopardizing their ability to seek lawful permanent residence, but only if the new job is in a "same or a similar" occupational classification as their old job. Unfortunately, there is uncertainty surrounding what constitutes a "same or similar" job, thus preventing many workers from changing employers, seeking new job opportunities, or even accepting promotions for fear that such action might void their currently approved immigrant visa petitions.

To help eliminate this uncertainty, I hereby direct USCIS to issue a policy memorandum that provides additional agency guidance, bringing needed clarity to employees and their employers with respect to the types of job changes that constitute a "same or similar" job under current law. This guidance should make clear that a worker can, for example, accept a promotion to a supervisory position or otherwise transition to related jobs within his or her field of endeavor. By removing unnecessary restrictions to natural career progression, workers will have increased flexibility and stability, which would also ensure a more level playing field for U.S. workers.