EXHIBIT 45

February 8, 1990

Decision Memo

To: Gene McNary, Commissioner

Subject: The implementation of the Family Fairness Policy -- Providing For Voluntary Departure under 8 CFR 242.5 and Employment Authorization under 8 CFR 274a.12 for the spouses and children of legalized aliens (section 245a and section 210).

The family fairness policy provides voluntary departure and employment authorization to potentially millions of individuals. The Service must establish specific procedures to ensure consistency of processing requests for voluntary departure and employment authorization from ineligible family members of temporary resident aliens legalized under the legalization (section 245a) and special agricultural (section 210) programs. The following processing options are submitted for consideration.

<u>Traditional processing pursuant to 8 CFR 242.5 (voluntary departure) and 8 CFR 274a.12 (employment authorization).</u>

o  request for voluntary departure will be made in writing to the district director in whose jurisdiction the ineligible spouse or child resides.

o  the district's records section will create an A-file, if a file has not been previously opened.

o  the district's investigations section will prepare form I-213, "Record of Deportable Alien" for each ineligible spouse or child, a determination will be made to grant or deny voluntary departure, and the aliens will be placed under docket control.

o  the district's deportation section will control both granted and denied cases that have been placed under docket control. One year call-ups will be maintained for granted cases. Requests for extensions will be processed by deportation personnel. Denied cases will be processed for Orders to Show Cause if the alien has not departed the United States within the required time frame.

o  application for employment authorization will be made on form I-765, "Application for Employment Authorization", with fee.

<u>PROS</u>

o  follows established regulatory procedures and guidelines.

o  utilizes personnel experienced in processing requests for voluntary departure, employment authorization, and file creation.

o does not "link" to legalization's promise of confidentiality and "no risk" if alien comes forward to request voluntary departure. (alien can be denied and placed into deportation proceedings, etc.)

o does not impact on legalization processing, thus complying with Congressional intent for a temporary legalization program that will continue to phase down (adjudicating the remaining 700,000+ Phase I 245a and 210 cases, the remaining 800,000 Phase II 245a cases, replacement card applications, processing the 60,000 ongoing litigation cases etc.)

o  allows for maximum use of district director's exercise of discretion.

## CONS

o places large workload on in place INS structure, that will strain existing resources.

o jeopardizes the Regional Commissioners and the District Directors performance goals in other operational activities.

o operational budgets do not contain sufficient funds for this effort. ( a "user fee" may have to be charged generating negative publicity and charges that the Service's policy was a ruse to raise money)

o large numbers of individuals will visit in place INS offices that already experience unacceptable crowds and long waiting times. (Again, the risk of negative publicity is great)

o  congressional complaints are likely to increase as resources are diverted from other activities, slowing the disbursement of benefits and services associated with these activities)

o  the morale of personnel in investigations and deportation is likely to suffer in that the perception of this program will not "fit" with their regular mission assignments. (Low morale can translate into inadequate processing and poor service and consequently reflecting badly on the Service)

o not an efficient way to consistently process large numbers.

10