## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § § § § § § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | Case No. 1:14-cv-254 |
| UNITED STATES OF AMERICA, *et al.*, | | |
| Defendants, | | |
| and | | |
| JANE DOE #1, JANE DOE #2, and JANE DOE #3, | | |
| Proposed Defendant-Intervenors | | |

## PROPOSED DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO INTERVENE

**TABLE OF CONTENTS**

Page

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................................... 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING, AND OF
     THE ISSUES TO BE RULED ON BY THE COURT ....................................................... 4

ARGUMENT ..................................................................................................................................... 4

I.     THE DOE INTERVENORS ARE ENTITLED TO INTERVENTION AS OF
     RIGHT ................................................................................................................................ 4

     A.     The Does' Interest In Maintaining Their Eligibility For Deferred Action
          Consideration Is Sufficiently Substantial And Direct To Satisfy The
          Requirements For Intervention As Of Right ............................................................. 4

     B.     The Government Cannot Adequately Defend The Does' Individual
          Interests In Maintaining A Pathway To Deferred Action, Which Are In
          Direct Conflict With The Government's Own Interests In Efficient
          Enforcement Of The Immigration Laws .................................................................. 7

II.    ALTERNATIVELY, PERMISSIVE INTERVENTION IS APPROPRIATE ................. 10

CONCLUSION .............................................................................................................................. 11

# TABLE OF AUTHORITIES

Page

**CASES**

*Adetiba v. Ashcroft*,
    2002 WL 236665 (N.D. Tex. Jan. 30, 2002) ................................................................. 5

*Baker v. Wade*,
    743 F.2d 236 (5th Cir. 1984) ....................................................................................... 8

*Bear Ranch, LLC v. HeartBrand Beef, Inc.*,
    286 F.R.D. 313 (S.D. Tex. 2012) ................................................................................. 6

*Edwards v. City of Houston*,
    37 F.3d 1097 (5th Cir. 1994) ....................................................................................... 5

*Edwards v. City of Houston*,
    78 F.3d 983 (5th Cir. 1996) ..................................................................................... 4, 5

*Hopwood v. Texas*,
    21 F.3d 603 (5th Cir. 1994) ...................................................................................... 8, 9

*John Doe No. 1 v. Glickman*,
    256 F.3d 371 (5th Cir. 2001) ....................................................................................... 4

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co (NOPSI)*,
    732 F.2d 452 (5th Cir. 1984) ..................................................................................... 4, 6

*Sierra Club v. Epsy*,
    18 F.3d 1202 (5th Cir. 1994) ..................................................................................... 5, 6

*Texas v. U.S. Dep't of Energy*,
    754 F.2d 550 (5th Cir. 1985) ....................................................................................... 1

*Velasco-Gutierrez v. Crossland*,
    732 F.2d 792 (10th Cir. 1984) ..................................................................................... 5

*WildEarth Guardians v. Nat'l Park Serv.*,
    604 F.3d 1192 (10th Cir. 2010) ................................................................................ 1, 6

**RULES**

Fed. R. Civ. P. 24 ............................................................................................................ 3, 9

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

In their Motion to Intervene, the Proposed Defendant-Intervenors demonstrated that they should be allowed to intervene as of right because they have a personal interest in defending DAPA to maintain their eligibility for consideration for deferred action, that interest would be impaired if the States' requested relief is granted, and the Government cannot adequately defend that interest. Neither the States nor the Government have been able to show anything to the contrary.[1] Neither side contests two core elements of the test for intervention as of right— timeliness and impairment—*see* Dkt. No. 131, Pls.' Resp. at 1, 4; Dkt. No. 136, Defs.' Resp. at 1, 3-4. Instead, both sides mischaracterize the Does' asserted interest and cite inapposite case law in their attempt to block a clear entitlement to intervention. The States and Government have made three main arguments regarding the Proposed Defendant-Intervenors' interest, all of which are wrong for the reasons discussed herein.

First, the Government incorrectly conflates the lack of a *constitutional right* to be considered for deferred action with the lack of a *legal interest* justifying intervention. In doing so, they cite inapposite due process case law, rather than cases applying the test for intervention as a matter of right. It is well-established that likely future beneficiaries of agency action have a legal interest that is direct and substantial enough to support intervention against a prospective challenge to the legality of that action. *See, e.g.*, *Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 552 (5th Cir. 1985); *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1200-01 (10th Cir. 2010). Thus, the Doe Intervenors, as likely candidates for grants of deferred action, have a direct and substantial legal interest in the outcome of this suit.

---

[1] For the Court's ease of reference, this reply will generally refer to the Plaintiffs as the "States," to the Defendants as the "Government," and to Proposed Defendant-Intervenors as the "Does" or "Doe Intervenors."

1

Second, the States go so far as to actually misidentify the Doe Intervenors' asserted interest as the supposed absolute right to receive deferred action. In doing so, they mischaracterize both the effect of DAPA and the Doe Intervenors' arguments. As explained in greater length in the briefing already before this Court, DAPA does not itself grant an absolute right to deferred action since, in every case, it places discretion whether to grant deferred action in the hands of DHS. The Doe Intervenors have never argued differently, and indeed have expressly stated that their interest in this suit "is to uphold DAPA in order to maintain their *eligibility for consideration* for deferred actions." Dkt. No. 91, Mot. to Intervene at 9 (emphasis added). As already explained, the interest in maintaining eligibility for deferred action consideration is itself substantial enough to warrant intervention, the States' confusion aside.

Third, both parties inexplicably misstate the nature of the asserted interest in arguing that the Government can adequately defend it. The Doe Intervenors are **not** an advocacy group with a generalized organizational interest in defending immigrants, as the Government incorrectly implies. *See* Dkt. No. 136, Defs.' Resp. at 5 (equating the Does with *amicus curiae* American Immigration Council). Rather, the Doe Intervenors are immigrants themselves, and their interest in maintaining eligibility for consideration for deferred action is intense, personal, and unique among the parties to this litigation. Put another way, the Government's interest here is in the orderly allocation of limited immigration enforcement resources, while the Does' interest is in avoiding removal and remaining with their families. And the risk that the Does' will be removed is substantial, as in fiscal year 2014 alone the Government conducted over 315,000 removals. *See FY 2014 ICE Immigration Removals*, http://www.ice.gov/removal-statistics (last visited Feb. 6, 2015). To state that the Government can defend the Does' interests, when that same

Government has an institutional interest in beginning removal proceedings against the Does and could act to do so at any moment, tests credulity.

In the alternative, even if this Court disagrees and holds that intervention as of right is improper, permissive intervention is appropriate. Granting permissive intervention will not add to the Court's burden in resolving the pending motions, as the Doe Intervenors' proposed opposition to the States' preliminary injunction motion is both short and is already on file in this Court. Moreover, the Doe Intervenors will be able to assist the Court's resolution of the issues at stake at later stages of the case as it progresses to its ultimate resolution. For instance, in a case where the Plaintiffs have alleged that DAPA will lead to undocumented immigrants becoming entitled to state benefits, the Does will be able to submit evidence concerning whether and how lead Plaintiff Texas actually implements its own laws and policies with respect to undocumented immigrants. Moreover, the Does will be able to submit evidence from their own experiences and the experiences of other undocumented immigrants to rebut the States' claims that DAPA will have negative economic and social effects; the Government, in contrast, is unlikely to be able to present such evidence, other than in broad generalizations. The States' argument that evidence of DAPA's positive effects is irrelevant to the merits of this case falls flat, particularly given the States' arguments for irreparable injury and Article III standing, which rest on unsupported claims of the supposed chaos that will result from DAPA. The Doe Intervenors respectfully request that this Court grant their motion for leave to intervene as of right, or, in the alternative, for permissive intervention.[2]

---

[2] Additionally, neither the States nor the Government have filed timely responses to the Doe Intervenors' motion for leave to proceed under pseudonyms (Dkt. No. 92), which this Court should therefore grant as unopposed.

3

### STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING, AND OF THE ISSUES TO BE RULED ON BY THE COURT

The Doe Intervenors' incorporate by reference the Statement Of The Nature And Stage Of The Proceedings, as well as the Statement Of The Issues To Be Ruled On By The Court, that are set forth in their intervention motion. *See* Dkt. No. 91, Mot. to Intervene at 1-4.

### ARGUMENT

**I.  THE DOE INTERVENORS ARE ENTITLED TO INTERVENTION AS OF RIGHT**

The States and the Government dispute only two elements of the test for intervention as of right under Federal Rule of Civil Procedure 24(a)(2): the sufficiency of the interest asserted, and whether the existing parties adequately represent the proposed intervenors' interest. *See* Fed. R. Civ. P. 24(a)(2); *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001). Their responses, however, fail to directly address the arguments raised by the motion. Because the Doe Intervenors have properly asserted an interest that is legally cognizable under Rule 24(a)(2), and because the Government cannot adequately represent that interest, they are entitled to intervention as of right.

**A.  The Does' Interest In Maintaining Their Eligibility For Deferred Action Consideration Is Sufficiently Substantial And Direct To Satisfy The Requirements For Intervention As Of Right**

The key points under the "interest" element of the test for intervention as of right is that the interest asserted be direct, substantial, and legally protectable. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co (NOPSI)*, 732 F.2d 452, 463-64 (5th Cir. 1984) (en banc). However, "the inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application. . . . [I]ntervention as of right must be measured by a practical rather than technical yardstick." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (*Edwards II*) (citations and marks omitted). The Fifth Circuit has suggested that in

"public law" cases, rather than in simple commercial cases involving property interests, the requirement is satisfied when the proposed intervenor's asserted interest is within the "zone of interests" protected or regulated by the provision at issue. *NOPSI*, 732 F.2d at 465. Crucially, a prospective, future interest is sufficient for intervention, and no past or present impairment of that interest need be shown; it is enough that the legal provision or challenge at stake in the suit is reasonably likely to affect the intervenor's interest in the future. *See, e.g.*, *Edwards v. City of Houston*, 37 F.3d 1097, 1107 (5th Cir. 1994) (*Edwards I*) (error to deny intervention to minority police officer groups that would be affected by a discrimination consent decree because the groups had an "interest in making sure that the promotional system is not manipulated in such a manner, that it discriminates against them"); *Sierra Club v. Epsy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (error to deny intervention to timber companies that were potentially threatened by an environmental group's challenge to an agency's forest management program); *Edwards II*, 78 F.3d at 999.

On this background, the Government's argument on this element fails because it takes too narrow a view of what qualifies as a protectable interest. In the Government's view, intervention cannot be justified because undocumented immigrants do not have a constitutionally protected liberty interest in being considered for a grant of deferred action. *See* Dkt. No. 136, U.S. Resp. at 2-3 (citing *Velasco-Gutierrez v. Crossland*, 732 F.2d 792 (10th Cir. 1984), and *Adetiba v. Ashcroft*, 2002 WL 236665 (N.D. Tex. Jan. 30, 2002)). But whether an undocumented immigrant going through removal proceedings has a *constitutional right* to be considered for deferred action is simply not relevant to whether the Does have a direct and substantial *legal interest* in maintaining eligibility for deferred action consideration under DAPA. The cases the Government relies on are not even intervention cases, and it cites no other authority that could

5

support the importation of a strict, constitutional standard into the liberal, flexible intervention test. *See Epsy*, 18 F.3d at 1205 (courts "should allow intervention where no one would be hurt and greater justice could be attained" (citation omitted)).

Indeed, under the Fifth Circuit's flexible "zone of interests" standard discussed in *NOPSI*, it is clear that the Doe Intervenors have a direct and substantial legal interest in the subject of this suit. *NOPSI*, 732 F.2d at 463-64. It is well-established that a current or likely future beneficiary of a government program has an interest that is sufficient to allow intervention to defend a challenge to the legality of that program. *See Epsy*, 18 F.3d at 1207; *Dep't of Energy*, 754 F.2d at 552 (Higginbotham, J.) (holding that utilities that contributed to a federal offset fund could not intervene to defend a challenge to a distantly related waste-disposal-site designation program, but noting there would be a stronger case for intervention if the legality of the fund itself were challenged); *Bear Ranch, LLC v. HeartBrand Beef, Inc.*, 286 F.R.D. 313, 316 (S.D. Tex. 2012) (Costa, J.) (emphasizing the importance of the *Dep't of Energy* court's note "that intervention might be appropriate if the legality of the offset fund itself was challenged"); *see also WildEarth*, 604 F.3d at 1200-01 (hunting group had a sufficient future interest to intervene as of right to defend a Forest Service proposal to allow some future elk culls). Because the Doe Intervenors are exactly the types of individuals who are likely to qualify for discretionary grants of deferred action, their interest is in the precise "zone of interests" that DAPA addresses, and they are entitled to intervene to defend against the States' attempted impairment of that interest.

The States' response on this point merits only a short reply, since they decline to address the actual arguments raised in the motion to intervene. Instead of recognizing that the Doe Intervenors are asserting a legally protectable interest in defending DAPA in order to maintain their eligibility for deferred action *consideration*, the States wrongly argue that the Does are

6

asserting a substantive *right to receive* deferred action. *Compare* Dkt. No. 91, Mot. to Intervene at 9 ("Here, the Proposed Defendant-Intervenors' interest is to uphold DAPA in order to maintain their *eligibility for consideration* for deferred actions." (emphasis added)), *with* Dkt. No. 131, Pls.' Resp. at 4 ("The Jane Does' entire basis for intervening is their *agreement* with the Plaintiffs that the DHS Directive creates substantive rights — namely, legally cognizable rights to stay and work in the United States lawfully — for anyone who meets the Directive's eligibility criteria." (emphasis original)).

Based on this misconception, the States spend much of their opposition trying to craft an awkward catch-22 in which the appropriateness of intervention is somehow proof that the States are entitled to enjoin DAPA. *See* Dkt. No. 131, Pls.' Resp. at 1, 4-5. But the Doe Intervenors have *not* asserted any interest in an absolute, substantive right to actually receive deferred action. Moreover, even if they had, this absolute right does not actually exist, as the Government's preliminary injunction briefing has made amply clear. *See* Dkt. No. 38, Defs' Opp. to Preliminary Inj. at 31-44; Dkt. No. 38, Ex. 7 at 4 (text of Deferred Action Guidance stating that deferred action may only be granted under DAPA if an applicant meets all other criteria and "present[s] no other factors that, in the exercise of discretion, make the grant of deferred action inappropriate"). The Doe Intervenors' asserted personal interest in maintaining eligibility for consideration for deferred action is sufficient for intervention.

### B. The Government Cannot Adequately Defend The Does' Individual Interests In Maintaining A Pathway To Deferred Action, Which Are In Direct Conflict With The Government's Own Interests In Efficient Enforcement Of The Immigration Laws

The States and the Government both argue incorrectly that intervention is not necessary or justified because the Government can adequately defend the Doe Intervenors' interests. At the root of this error is the flawed assumption that since both the Does and the Government wish

7

to defend DAPA, they must have the same interests, and the similarly flawed presumption that the Government will adequately represent the needs of individual immigrants. *See* Dkt. No. 131, Pls.' Resp. at 5-6; Dkt. No. 136, Defs.' Resp. at 3-4. Nothing could be further from the truth.

While the Does and the Government may *currently* have the same immediate *objective* of defending DAPA in its current form, their underlying *interests* are distinct and separate, and their ultimate objectives may well diverge over time. The Government's primary interest in defending DAPA is to promote a means by which it can enhance the efficiency of its use of limited immigration enforcement resources. In contrast, the Does' interest in defending DAPA is their own, intensely personal interest in maintaining eligibility for consideration for deferred action and work authorization, and in avoiding removal, a penalty that would sever them from their homes and families, particularly their U.S. citizen children.[3] It is beyond dispute that the Government, which is statutorily bound to remove undocumented immigrants (subject to prosecutorial discretion), does not share and cannot represent the Does' personal interest in avoiding removal. Indeed, in some ways at least, the interests of the Government and the Doe Intervenors may well be opposed. Contrary to the States' and the Government's assertion, no presumption of adequate representation arises in such an instance. *See Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994) (per curiam) (lack of adequate representation proven if the intervenor can show that "its interest is in fact different from that of the state and that the interest will not be represented by the state"); *Baker v. Wade*, 743 F.2d 236, 240-41 (5th Cir. 1984)

---

[3] The divergent interests are further demonstrated by the fact that the Government has no interest beyond the interest in defending its authority to issue the challenged guidelines and apply them in a general fashion, regardless of whether they are specifically applied to the Does. The Does, by contrast, have an individualized interest in having those guidelines available to the actual agency employees and CIS agents who will be in a position to choose whether to apply prosecutorial discretion to the Does.

8

(credible allegation of antagonistic interests will destroy any presumption of adequate representation, even if the parties' ultimate objectives are the same).

The Government's potential antagonism to the Doe Intervenors' interests is strongly suggested by its failure even to correctly acknowledge the nature of their interests in this action. As the Does pointed out at length in their intervention motion, they are asserting a "personal" interest based on their own status as undocumented immigrants. *See* Dkt. No. 91, Mot. to Intervene at 1, 7, 11-13. Yet, in its response, the Government implies that the Does' interests will be adequately represented because they are merely another advocacy group with generalized interests like *amicus curiae* American Immigration Council and "others *representing* similarly-situated undocumented immigrants . . . in this case." Dkt. No. 136, Defs.' Resp. at 5 (emphasis added). However, those groups do not have a personal interest in maintaining eligibility for deferred action consideration. They are not subject to being removed from the United States; the Doe Intervenors are.

Finally, contrary to the parties' suggestions, this point further demonstrates that the potential differences in litigation strategy are themselves reason enough to find a lack of adequate representation. This is not a case like *Hopwood*, 21 F.3d at 605-06 , where the defendant Texas had mere minor differences with a proposed intervenor advocacy group. If the Government's case suffers in this litigation and DAPA is enjoined, it can change its policy (either as part of a settlement or otherwise), for it has no personal stake in the outcome. Indeed, the Government could at any point choose an entirely different way of allocating its limited resources, including, potentially, by implementing an enforcement strategy that focuses on low-priority immigrants like the Does, or by choosing only to implement the DACA program for childhood arrivals. The same is not true for the Doe Intervenors. While the Government may

9

well be incentivized to make legal arguments or to obtain rulings that are in direct conflict with defending DAPA and the Doe Intervenors' interests, for the Doe Intervenors, DAPA is the only practical avenue to obtaining deferred action and work authorization.

Because the States' and the Government's arguments on the asserted interests and the adequacy of representation fail, and because they do not contest timeliness or impairment, this Could should grant the Does permission to intervene as a matter of right.

## II. ALTERNATIVELY, PERMISSIVE INTERVENTION IS APPROPRIATE

The parties' arguments against permissive intervention under Rule 24(b) are largely duplicative of their arguments against intervention as of right and fail for the same reasons. However, two additional points raised by the States are worth mentioning. First, allowing intervention would not burden the Court or delay this litigation. The Doe Intervenors have already filed no more than a short proposed opposition to the States' preliminary injunction motion. *See* Dkt. No. 91-1. The States' assertion that allowing intervention would delay the proceedings is not only unsupported, but also simply incorrect.

Second, allowing intervention would assist the Court in resolving the numerous factual issues raised by the States' allegations in support of their claims of, *inter alia*, irreparable injury and Article III standing. Although the States argue in their response that factual development is not necessary to the legal issues in this case, that assertion is belied by the States' many pages dedicated to unsupported factual assertions that DAPA will encourage undocumented immigration, provoke humanitarian crises, and cause the States to incur heavy economic and social costs. *See* Dkt. No. 5, Mot. for Preliminary Inj. at 25-28; Dkt. No. 64, Pls.' Reply In Support Of Preliminary Inj. at 42-64. As the case moves forward, the Doe Intervenors will be of great assistance in presenting the Court with evidence relating to the actual economic and social

effects of DAPA, evidence that will tend to rebut the States' allegations of injury. The Court should allow the Doe Intervenors to participate and thus to do so.

## CONCLUSION

For the foregoing reasons, Proposed Defendant-Intervenors respectfully request that the Court grant their motion to intervene in this action as Defendants.

Dated: February 6, 2015

Respectfully submitted,

**LAW OFFICE OF FRANK COSTILLA, L.P.**
Frank Costilla (Tex. Bar. No. 04856500)
5 E. Elizabeth Street
Brownsville, Texas 78520
Phone: 956-541-4982
Facsimile: 956-544-3152

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
By */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046; Southern District of Tex. Bar No. 21127)
Attorney-in-Charge
David Hinojosa (Tex. Bar No. 24010689)
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone: (210) 224-5476
Facsimile: (210) 224-5382

**O'MELVENY & MYERS LLP**
Linda Smith (Cal. Bar No. 78238)*
Adam P. KohSweeney (Cal. Bar No. 229983)*
J. Jorge deNeve (Cal. Bar No. 198855)*
Gabriel Markoff (Cal. Bar No. 291656)*
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Phone: 310-246-6801
Facsimile: 310-246-6779

*Admitted *pro hac vice*.

Attorneys for the Proposed Defendant-Intervenors **JANE DOE #1**, **JANE DOE #2,** and **JANE DOE #3**

## **CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that, on the 6th day of February 2015, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

>*/s/ Nina Perales*
>Nina Perales (Tex. Bar No. 24005046)
>*Attorney for the Proposed Defendant-Intervenors*