## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

---

|  |  |  |
|---|---|---|
| STATE OF TEXAS, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 1:14-cv-254 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS' EMERGENCY EXPEDITED MOTION TO STAY THE COURT'S FEBRUARY 16, 2015 ORDER PENDING APPEAL AND SUPPORTING MEMORANDUM

## **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF THE ARGUMENT ...................................................... 1

NATURE AND STATE OF THE PROCEEDING ......................................................................... 3

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ........................................... 4

ARGUMENT .................................................................................................................................. 5

I.      DEFENDANTS HAVE A SUBSTANTIAL LIKELIHOOD OF PREVAILING
        ON THEIR APPEAL FROM THE PRELIMINARY INJUNCTION, AND AT A
        MINIMUM, A SUBSTANTIAL CASE ON APPEAL ....................................................... 5

II.     THE GOVERNMENT WILL BE IRREPARABLY HARMED ABSENT A
        STAY ................................................................................................................................ 10

III.    THE PUBLIC INTEREST FAVORS A STAY ................................................................. 14

IV.     PLAINTIFFS WILL NOT BE HARMED BY A STAY .................................................. 16

V.      IN THE ALTERNATIVE, THE COURT SHOULD STAY THE PRELIMINARY
        INJUNCTION TO THE EXTENT THAT IT PURPORTS TO APPLY OUTSIDE
        OF TEXAS ........................................................................................................................ 18

CONCLUSION ............................................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*Arizona Dream Act Coalition v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014) ................................................................................ 7

*Arizona v. United States*,
    132 S. Ct. 2492 (2012) ....................................................................... 9, 10, 14, 15

*Arpaio v. Obama*,
    27 F. Supp. 3d 185 (D.D.C. 2014) .................................................................. 8, 9, 14

*C.F.T.C. v. Hudgins*,
    No. 6:08-CV-187, 2009 WL 3645053  (E.D. Tex. Nov. 2, 2009) .......................... 4, 6

*Canal Authority of Florida v. Callaway*,
    489 F.2d 567 (5th Cir. 1974) ................................................................................ 12

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979) .............................................................................................. 10

*Crane v. Napolitano*,
    920 F. Supp. 2d 724 (N.D. Tex. 2013) .................................................................. 8

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ................................................................................................ 9

*Lincoln v. Vigil*,
    508 U.S 182 (1993) ............................................................................................... 10

*Lion Health Servs., Inc. v. Sebelius*,
    635 F.3d 693 (5th Cir. 2011) ............................................................................... 18

*Louisiana Envtl. Soc'y, Inc. v. Coleman*,
    524 F.2d 930 (5th Cir. 1975) ............................................................................... 17

*Mathews v. Diaz*,
    426 U.S. 67 (1976) ............................................................................................... 10

*Munaf v. Geren*,
    553 U.S. 674 (2008) ................................................................................................ 7

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................................ 5, 14

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
  734 F.3d 406 (5th Cir. 2013) ............................................................................ 4

*Reno v. Am.-Arab Anti-Discrimination Comm.* ("AAADC"),
  525 U.S. 471 (1999) ................................................................................. 10, 11

*Ruiz v. Estelle*,
  650 F.2d 555 (5th Cir. 1981) ....................................................................... 5, 13

*State of Tex. v. United States*,
  106 F.3d 661 (5th Cir. 1997) ............................................................................ 8

*Stieberger v. Bowen*,
  801 F.2d 29 (2d Cir. 1986) ............................................................................... 11

*United States v. Baylor Univ. Med. Ctr.*,
  711 F.2d 38 (5th Cir. 1983) .......................................................................... 5, 6

*United States v. Mendoza*,
  464 U.S. 154 (1984) ...................................................................................... 18

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
  559 F.2d 841 (D.C. Cir. 1977) .......................................................................... 6

## CONSTITUTION

U.S. Const. art. II, § 3 ........................................................................................ 3

## STATUTES

5 U.S.C. § 553 .................................................................................................... 3

5 U.S.C. § 706 .................................................................................................... 3

6 U.S.C. § 202(5) ............................................................................................. 10

## RULES

Fed. R. Civ. P. 62 ............................................................................................... 4

## EXHIBITS

Decl. of Sarah R. Saldaña, Director of ICE ............................................... Ex. A

Decl. of R. Gil Kerlikowske, Commissioner of CBP .................................. Ex. B

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Defendants respectfully move for a stay, pending appeal, of the preliminary injunction entered in this case on February 16, 2015 [ECF No. 144], concerning the November 20, 2014, memorandum issued by the Secretary of Homeland Security ("Secretary"), setting forth guidelines for the consideration of deferred action for the parents of U.S. citizens or lawful permanent residents ("DAPA") and modifying existing guidelines for the consideration of deferred action for certain individuals who came to the United States as children ("modified DACA") (collectively, "Deferred Action Guidance" or "Guidance").  Defendants have filed a Notice of Appeal [ECF No. 149] from the Court's February 16, 2015 Opinion and Orders granting Plaintiffs' Motion for Preliminary Injunction [ECF Nos. 144 & 145].

A stay pending appeal is necessary to ensure that the Department of Homeland Security ("DHS" or "Department") is able to most effectively protect national security, public safety, and the integrity of the border.  Specifically, the Deferred Action Guidance enjoined by this Court is an integral part of the Department's comprehensive effort to set and effectuate immigration enforcement priorities that focus on the removal of threats to public safety, national security risks, and recent border crossers, thereby best securing the Homeland in the face of limited resources.  Absent a stay, DHS will sustain irreparable harm—harm that would not be cured, even if Defendants ultimately prevail on that appeal.  Allowing the preliminary injunction to remain in place pending appeal would also harm the interests of the public and of third parties, who will be deprived of the significant law enforcement and humanitarian benefits of prompt implementation of the Guidance.  When these harms are weighed against the financial injuries claimed by Plaintiffs (and found by the Court only as to Texas), the balance of hardships tips

decidedly in favor of a stay; the harms claimed by Plaintiffs are not imminent and are fully within their power to avoid.

A stay is also warranted in view of Defendant's substantial case that the preliminary injunction was issued in error—all that Defendants must establish concerning a likelihood of success in order to warrant the requested stay. Defendants' case is substantial indeed: the Court lacked authority to issue the preliminary injunction, both because Plaintiffs lack standing and because the Deferred Action Guidance is an exercise of prosecutorial discretion by the Secretary that is neither subject to challenge by the States, nor required to be issued through notice-and-comment rulemaking. That the Court's reasoning on standing and the merits has been rejected by other district courts further underscores the fact that Defendants have a substantial case on appeal.

Finally, Defendants request in the alternative a partial stay of the injunction to the extent that it purports to apply nationwide. The injunction vastly exceeds the relief necessary to redress the limited alleged harms the Court credited in its Opinion. Specifically, the injunction purports to extend beyond implementation of the Guidance in Texas (the only State whose claims of harm the Court credited) to States the Court did not find to have established any injury, and even to States that have informed this Court that they desire and expect to *benefit* from implementation of the Deferred Action Guidance. Thus, although a full stay is warranted, at the very least, the injunction should be stayed so that it applies only to the implementation of the Guidance in Texas.

In light of the immediacy of the harm to Defendants and the public in the absence of a stay of the Court's Order, which prevents Defendants from complying with the timeline set forth in the Guidance for U.S. Citizenship and Immigration Services ("USCIS") to begin accepting

requests for deferred action, Defendants respectfully request expedited consideration of their

motion and a ruling as soon as possible.  Absent a ruling by the close of business on Wednesday,

February 25, Defendants may seek relief from the Court of Appeals in order to protect their

interests.

<u>**NATURE AND STATE OF THE PROCEEDING**</u>

On December 3, 2014, Plaintiffs filed this suit, challenging the Secretary's authority to

issue the Deferred Action Guidance.  Plaintiffs' Complaint includes three causes of action:  that

the Guidance allegedly (1) violates the Take Care Clause of the Constitution, art. II, § 3;

(2) violates the substantive requirements of the Administrative Procedure Act ("APA"), *see* 5

U.S.C. § 706; and (3) violates the APA's notice-and-comment requirement, *see* 5 U.S.C. § 553.

Plaintiffs moved for a preliminary injunction on all counts on December 4, 2014, seeking to

enjoin implementation of the Deferred Action Guidance.  *See* Pls.' Mot. for Prelim. Inj. [ECF

No. 5]; *see also* Proposed Order [ECF No. 5-1].

DHS was to begin accepting requests for modified DACA on February 18, 2015.  On

February 16, 2015, the Court granted Plaintiffs' Motion and preliminarily enjoined Defendants

from "implementing any and all aspects or phases" of DAPA and modified DACA, as set forth

in the Guidance.  Order of Temporary Inj. ("Order") at 1-2 [ECF No. 144].  The Court found that

"at least" Texas has standing to sue, stating that Texas would be required under the existing

terms of state law to expend funds to provide driver's licenses to individuals who receive DAPA

and modified DACA at some point in the future.  Mem. Op. & Order ("Op.") at 22-36 [ECF No.

145].  The Court also indicated that "at least" Texas has standing based on what it termed an

"abdication" theory, acknowledging that no other court has based standing on this novel theory.

*Id.* at 67 & n.48.  The Court then held that the States are likely to succeed on the merits of one of

their claims: that the challenged guidance was a substantive rule that, under the APA, could have been issued only through notice-and-comment rulemaking. Finally, the Court concluded that the alleged financial injury to Texas based on the provision of driver's licenses amounts to irreparable harm and that the balance of the equities favored a preliminary injunction. The Court did not purport to limit its relief, however, to Texas—much less to the particular injury to Texas that the Court identified concerning the issuance of driver's licenses. Nor did the Court even purport to limit its relief to the States joined as Plaintiffs in this action. Instead, it purported to enjoin the Government's implementation of the Deferred Action Guidance nationwide, notwithstanding the fact that twelve States and the District of Columbia filed an amicus brief in this case in support of the Guidance, explaining that they expect to *benefit* from it. *See* Amicus Br. of State of Washington, *et al.* [ECF No. 81].

Defendants have appealed the Court's Order and Opinion to the Fifth Circuit. [ECF No. 149].

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

Defendants request a stay pending appeal of the Court's preliminary injunction. Federal Rule of Civil Procedure 62 permits the trial court, in its discretion, to suspend an injunction during the pendency of an appeal.

Courts typically consider four factors in evaluating a request for a stay pending appeal: (1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant will be irreparably harmed if the stay is not granted; (3) whether issuance of a stay will substantially harm the other parties; and (4) whether the granting of the stay serves the public interest. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013); *see also C.F.T.C. v. Hudgins*, No. 6:08-CV-187, 2009 WL

4

3645053, at *2 (E.D. Tex. Nov. 2, 2009).  Where the Government is a party, its interests and the public interest overlap in the balancing of harms.  *See Nken v. Holder*, 556 U.S. 418, 420 (2009).  Moreover, a party seeking such a stay need only present a "substantial case on the merits," as opposed to a likelihood of success on the merits, where—as here—"a serious legal question is involved and . . . the balance of equities weighs heavily in favor of granting the stay."  *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)).

## ARGUMENT

### I.    DEFENDANTS HAVE A SUBSTANTIAL LIKELIHOOD OF PREVAILING ON THEIR APPEAL FROM THE PRELIMINARY INJUNCTION, AND AT A MINIMUM, HAVE A SUBSTANTIAL CASE ON APPEAL

The Court is already familiar with the Government's arguments regarding Plaintiffs' challenge to the Deferred Action Guidance, and, in particular, the lack of any basis for a preliminary injunction.  Although Defendants recognize that the Court has already rejected several of these arguments, Defendants respectfully submit that they are likely to prevail on appeal from the preliminary injunction for all of the reasons set forth in their Opposition to Plaintiffs' Motion for Preliminary Injunction ("Defs.' Opp.") [ECF No. 38], and their Sur-Reply in further opposition thereto [ECF No. 130].  Defendants' appeal presents multiple independent bases on which the Fifth Circuit could find that Plaintiffs are not entitled to the extraordinary relief of the preliminary injunction that this Court granted, including: that Plaintiffs lack Article III standing; that Plaintiffs lack prudential zone-of-interest standing; that the exercise of enforcement discretion through DACA and DAPA is unreviewable under the APA; and that the Guidance falls within the well-established exception to the APA's notice-and-comment requirements for general statements of policy to be applied prospectively.

This Court need not agree that Defendants are likely to prevail on appeal from the preliminary injunction in order to conclude that Defendants are entitled to the relief sought. *See Baylor*, 711 F.2d at 39. Indeed, "[p]rior recourse to the [district court] would hardly be required as a general matter if it could properly grant interim relief only on a prediction that it has rendered an erroneous decision." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). Where a "serious legal question" is involved, the movant can satisfy this first prong of the four-part test by demonstrating a "substantial case on the merits." *Baylor*, 711 F.2d at 39. This less-exacting standard applies where – as here – "there are legal issues having far-reaching effects, involving significant public concerns . . . ." *Hudgins*, 2009 WL 3645053, at *3.

Plaintiffs' challenge to the lawfulness of the Secretary's enforcement of the immigration laws, an area of exclusive federal control, unquestionably presents "serious legal question[s]." These questions include the role, if any, of the States and the federal judiciary in countermanding discretionary decisions by the Secretary about the best way to prioritize scarce enforcement resources and to allow those resources to be deployed most effectively. Plaintiffs have essentially acknowledged as much. *See* Pls. Mot. to Exceed Page Limits at 2 [ECF No. 6] ("Plaintiffs' motion raises complex issues in a case of national importance."). Thus, the applicable standard for evaluating this stay request is whether Defendants have a "substantial case" for prevailing on appeal.

Defendants clearly have a substantial case on appeal (and, indeed, are likely to prevail on one or more of the dispositive bases noted above). First, the States lack Article III standing, as a matter of law, to bring this suit to enjoin the Secretary from implementing federal immigration policy, for all the reasons previously articulated in Defendants' papers. The Court's

unprecedented conclusion to the contrary would mark a significant expansion of the powers of the federal judiciary and the States.  At a minimum, the Court's standing ruling is subject to serious question; the existence of a substantial jurisdictional issue undermines Plaintiffs' likelihood of success on the merits and thus their entitlement to a preliminary injunction.  *See Munaf v. Geren*, 553 U.S. 674, 690-91 (2008).

With respect to standing, Defendants' appeal will present a substantial challenge to the notion that a State may establish standing to challenge an immigration policy simply because that policy has the incidental effect of making individuals eligible under state law for benefits that a State has chosen to make available by reference to federal law or policy.  Such an unprecedented theory of standing would apparently permit States to challenge a federal law or policy simply because they have borrowed some concept of federal law or policy and incorporated it into state law.  It also would appear to allow standing by States to challenge countless individual decisions to grant immigration relief or status, every one of which could potentially subject a State to a modest additional burden.  Such a basis for standing would drastically expand standing beyond the doctrine's well-settled limits, a particularly unwarranted result in the context of immigration, where federal power is exclusive.  There is also a substantial argument that this Court erred in reading the Government's amicus brief in *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053 (9th Cir. 2014), to establish that "any move by a plaintiff state to limit the issuance of driver's licenses would be viewed as illegal" by the Government, Op. at 25.  The Court's speculation about the position the Government would take in the future on such issues ignores not only the actual, much more limited argument advanced by the Government in the *Arizona Dream Act* case, but also the representations made by Defendants in this litigation.  *See*, *e.g.*, Defs.' Sur-Reply at 6-7.  It is the Government's position that Texas is free to implement a

7

scheme that does not offer driver's licenses to DAPA and DACA recipients, so long as it does not employ any new, non-federal immigration classification. *See id.*

Defendants also will mount a substantial and compelling challenge to this Court's alternative and decidedly novel "abdication" theory of standing—a theory that this Court acknowledged has never been found sufficient to justify an exercise of Article III jurisdiction, Op. at 67 n.48. This theory of standing erroneously conflates the merits of the States' APA claim with the threshold question of standing. It also turns the well-recognized *bar* to the exercise of authority by States in the field of immigration into a justification for allowing the States to interfere with federal enforcement discretion in the federal courts. And in any event, the Deferred Action Guidance is not an abdication in any respect: it reflects the Secretary's determination about how best to deploy limited enforcement resources in furtherance of discretionary enforcement priorities. *See* Defs.' Opp. at 37-44; Defs.' Sur-Reply at 25-30.

Finally, the existence of a substantial case as to the lack of Article III jurisdiction is confirmed by the fact that the only other district courts to have considered a state or local entity's standing to challenge federal immigration policies have dismissed those claims for lack of standing. *Arpaio v. Obama*, 27 F. Supp. 3d 185 (D.D.C. 2014), *appeal pending*, No. 14-05325 (D.C. Cir.); *Crane v. Napolitano*, 920 F. Supp. 2d 724, 745-46 (N.D. Tex. 2013), *appeal pending*, No. 14-10049 (5th Cir.) (argued Feb. 3, 2015); *Texas v. United States*, No. B-94-228, at *7 (S.D. Tex. Aug. 7, 1995), *aff'd on other grounds*, 106 F.3d 661 (5th Cir. 1997).

Plaintiffs would not be entitled to review of their claims even if they had Article III standing. As Defendants have amply demonstrated in their prior papers, and as they will demonstrate on appeal, Plaintiffs are not within the zone of interests sought to be protected by the relevant provisions of the Immigration and Nationality Act ("INA"). The Court's conclusion

that States may invoke the aid of federal courts to police the Federal Government's implementation of immigration laws conflicts with the well-established and fundamental allocation of responsibilities between the Federal Government and the States in the field of immigration.  *See Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012).

Defendants also have a "substantial case" regarding the legal errors that underlie the Court's evaluation of the merits of Plaintiffs' claim.  Defendants will present substantial arguments that Plaintiffs cannot challenge the Secretary's exercise of discretion in issuing the Deferred Action Guidance.  *See Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (agency's decision not to exercise its enforcement authority, or to exercise it in a particular way, is "presumed" to be "immune from judicial review" under the APA); *see also Arizona*, 132 S. Ct. at 2499. ("[A] principal feature of the removal system is the broad discretion exercised by immigration officials.").  That Defendants' arguments are substantial is again confirmed by the fact that another district court has confronted this same issue and has agreed with Defendants' arguments. In *Arpaio*, the district court rejected a similar challenge to the Deferred Action Guidance, concluding that even if the plaintiff were able to establish standing, he had failed to establish a likelihood of success on the merits, because the Guidance is "consistent with, rather than contrary to, congressional policy" and is a "valid exercise of prosecutorial discretion" that "merely provide[s] guidance to immigration officials in the exercise of their official duties."  27 F. Supp. 3d at 208-210.

Defendants also have a substantial case on appeal concerning the Court's specific merits holding with respect to notice-and-comment procedures.  The Supreme Court has made clear that notice-and-comment procedures are not required for precisely the type of agency guidance at issue here:  "statements issued by an agency to advise the public prospectively of the manner in

9

which the agency proposes to exercise a discretionary power." *Lincoln v. Vigil*, 508 U.S 182,

197 (1993) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979)).  The challenged

policy creates no binding legal duty on any regulated person or entity, and, at the same time,

imposes no binding legal restriction on DHS's discretion to enforce the immigration laws against

any individual.  It therefore falls squarely within the APA exception for statements of policy.

Defendants respectfully submit that they are likely to succeed on the merits of this argument on

appeal, consistent with well-established precedent and the express terms of the Guidance.  And at

a minimum, Defendants' appeal presents a "substantial case" that notice-and-comment

procedures were not required in this instance, thus warranting a stay.

## II.     THE GOVERNMENT WILL BE IRREPARABLY HARMED ABSENT A STAY

The Government will suffer irreparable harm absent a stay.  The preliminary injunction

blocks DHS from exercising its authority, conferred by Congress, to establish "policies and

priorities" to enforce the Nation's immigration laws.  *See* 6 U.S.C. § 202(5); *see also Reno v.*

*Am.-Arab Anti-Discrimination Comm. ("AAADC")*, 525 U.S. 471, 483-84 (1999).  The

preliminary injunction was entered at the urging of States that unquestionably lack any authority

over the Nation's immigration policies, which the Constitution and the INA commit exclusively

to the Federal Government.  *See Arizona*, 132 S. Ct. at 2499.  An injunction interfering with

federal immigration enforcement, issued at the behest of the States, is directly contrary to the

allocation of powers between the federal and state governments.  The injunction also offends

basic separation-of-powers principles, impinging on core Executive functions concerning the

exercise of discretion in the complex task of enforcing the immigration laws, and is contrary to

the preclusion of judicial review of discretionary matters under the INA.  *Cf. Mathews v. Diaz*,

426 U.S. 67, 81 (1976) ("For reasons long recognized as valid, the responsibility for regulating

the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government").  As such, the preliminary injunction necessarily causes an irreparable harm to the Defendants that will not be cured even if the Guidance is later upheld.  *Cf. Stieberger v. Bowen*,  801 F.2d 29, 33-34 (2d Cir. 1986) (finding that injunction poses significant harm where it "has the potential for bringing the Judicial Branch into protracted involvement with the Executive Branch in the administration of a complex regulatory scheme affecting hundreds of thousands of persons").

A stay of the preliminary injunction pending appeal is also necessary to prevent practical impairment to the Department's ability to most effectively and efficiently protect the Homeland and secure our borders.  The Guidance is part of a comprehensive and integrated effort by the Department to prioritize immigration enforcement efforts so as to best protect the Nation, and results from its considered judgment as to the best means to order and effectuate its enforcement priorities.  As the Court appropriately recognized, "[t]he law is clear that the Secretary's ordering of DHS priorities is not subject to judicial second-guessing."  Op. at 69.  As a result, the Court indicated that its Order "does not enjoin or impair the Secretary's ability to marshal his assets or deploy [DHS's] resources," and it "does not enjoin the Secretary's ability to set priorities for . . . DHS."  *Id.* at 123.

The Court's assumption that DAPA and modified DACA are somehow separate from these exclusive and discretionary authorities of the Secretary was simply incorrect.  *See AAADC*, 525 U.S. at 483-84 (recognizing the Government's "regular practice" of granting "deferred action" as an exercise of agency discretion).  By encouraging certain aliens to come forward, identify themselves to USCIS, and pay for their own background checks, the Deferred Action Guidance advances the objectives of the Secretary's comprehensive prioritization efforts.

11

Specifically, grants of deferred action pursuant to the Guidance allow U.S. Immigration and

Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP")—which

conduct enforcement actions and inspect aliens near the border—to quickly and efficiently

distinguish between criminals and other enforcement priorities (who may be removed quickly

under existing statutory authority) from aliens who do not fall within the Department's priorities

for removal and whose cases may impose additional burdens on already backlogged

immigrations courts.  *See* Decl. of Sarah R. Saldaña, Director of ICE ("Saldaña Decl.") (Ex. A)

¶¶ 15-17; Decl. of R. Gil Kerlikowske, Commissioner of CBP ("Kerlikowske  Decl.") (Ex. B)

¶¶ 7-9; *see also* Decl. of Donald W. Neufeld ("Neufeld Decl.") ¶¶ 5, 26 [ECF No. 130-11].

Instead of spending valuable, limited resources to determine whether encountered individuals are

enforcement priorities, DHS and its component agencies (as well as state and local law

enforcement officers) can rely on proof of deferred action to quickly and efficiently confirm that

they are not.  This, in turn, allows the Department to focus its limited resources on aliens who are

a high priority for removal—including aliens who pose national security risks, serious criminals,

and recent border crossers—rather than on aliens with significant ties to the community and no

serious criminal records.  *See id.*  DAPA and modified DACA will thus support DHS's overall

mission to secure the border and protect the public, while also recognizing important

humanitarian considerations.  *See id.*

The Court's assertion that the preliminary injunction merely preserves the status quo, Op.

at 119, is not a sound basis for concluding that Defendants will not be irreparably harmed absent

a stay pending appeal.  The focus of the irreparable harm inquiry "must be on prevention of

injury by a proper order, not merely on preservation of the status quo."  *Canal Authority of*

*Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).  By enjoining Defendants' ability to

implement guidance that the Secretary has determined is necessary in the exercise of authority vested in him by Congress to administer the immigration laws, the Order jeopardizes the efficiencies to immigration enforcement (and thus the protection of the Homeland) that the Guidance would otherwise be expected to provide, "making it more difficult [for the Department] to efficiently and effectively carry out its mission."  Saldaña Decl. ¶ 19. Defendants would thus unquestionably suffer irreparable harm if a stay is denied, regardless of whether the injunction is characterized as preserving or altering the status quo.

Moreover, the Court's assertion that its Order does not affect the status quo is at odds with the Court's recognition that DHS had already begun preparing to effectuate the Deferred Action Guidance.  *See* Op. at 76.  The Court issued its injunction one business day before USCIS was scheduled to begin accepting requests for deferred action under the modified DACA guidelines.  USCIS had spent the prior 90 days—the time period established by the Guidance for implementation—preparing to receive such requests.  The injunction sets back substantial preparatory work that has already been undertaken.  Among other things, the Court acknowledged that DHS had leased space, initiated the hiring process for employees, and taken other preparatory steps concerning the Guidance.  *Id.* at 76 & n.55; *see also* Neufeld Decl. ¶ 28. Ceasing these efforts now would jeopardize full implementation of the policy itself, as well as require DHS to incur considerable administrative costs in the future to repeat the preparatory work necessary for full implementation.  *Cf. Ruiz*, 650 F.2d at 571 (granting stay to relieve state agency of "burden . . . in terms of time, expense, and administrative red tape" of complying with order).  Overall, for the Deferred Action Guidance to work, DHS needs to have the appropriate infrastructure set up and ready before the first request is submitted (including significant preparatory work to implement the new DAPA guidelines, under which applications were

13

expected to be accepted by mid-May).  This means that, absent a stay of the injunction, implementation of the Guidance will not merely be paused, but will suffer a significant and irreparable setback, to the detriment of the agency and the potential requestors, as well as the national security, border security, and public safety interests promoted by the Deferred Action Guidance and interrelated policies.

## III.   THE PUBLIC INTEREST FAVORS A STAY

For many of the reasons that Defendants will experience irreparable harm absent a stay, the interests of the public and of third parties also strongly counsel in favor of a stay pending appeal of the preliminary injunction.[1]  It is the Department's considered judgment that the Deferred Action Guidance—part of DHS's integrated efforts to maximize border security—will advance important public safety and national security goals in the public interest.  DHS, not the Court, is properly positioned to make this discretionary judgment.  *See Arizona*, 132 S. Ct. at 2499.  By preventing the Secretary of Homeland Security from implementing his considered policy determinations for best achieving these important goals, the preliminary injunction harms not only Defendants but also the public.  *See Nken*, 556 U.S. at 420 (recognizing the public interest and interest of Federal Government may merge).

The preliminary injunction entered by the Court also harms the public by halting policies that respond to humanitarian concerns and promote family unification.  The Supreme Court recognized in *Arizona* that "[d]iscretion in the enforcement of immigration law embraces immediate human concerns."  132 S. Ct. at 2499.  Such discretion may properly recognize the

---

[1] In analyzing the public interest prong and denying a similar request for preliminary injunction, the district court in *Arpaio* explained: "[h]alting these deferred action programs would inhibit the ability of DHS to focus on its statutorily proscribed enforcement priorities (national security, border security, and public safety) and would upset the expectations of the DACA program's participants and the potentially eligible participants in the other challenged programs when none of those participants are currently before this Court."  27 F. Supp. 3d at 210-211.

difference between "unauthorized workers trying to support their families" and "alien smugglers" or those "who commit a serious crime" *id.*, as does the Guidance at issue here. Leaving the injunction in place would work immense harm to the public interest by undermining the Department's efforts to encourage illegal aliens with significant ties to the community and no serious criminal record to come out of the shadows and to request the ability to work legally.  It also prevents the Secretary from implementing deferred action policies where the use of such discretion is not only appropriate, but beneficial to a large number of individuals, including U.S. citizens.  *See*, *e.g.*, Amicus Br. of Am. Immigration Council, *et al.* at 9-15 [ECF No. 39-1] (describing harm to eleven individuals and their families from the Court's potential injunction).

Moreover, there are a number of other public and third-party interests that will be harmed in the absence of a stay, including the interests of local law enforcement and of city and state governments.  Local law enforcement and city governments will be deprived of the significant (and undisputed) benefits of those policies, which will encourage individuals who are not enforcement priorities and who are granted temporary relief under the Guidelines to cooperate with federal, state, and local law enforcement officers where they might otherwise fear coming forward.  *See* Kerlikowske Decl. ¶ 13; Saldaña Decl. ¶ 18; *see also* Amicus Br. of Major Cities Chiefs Ass'n, *et al.* at 6, 8 [ECF No. 83-1]; Amicus Br. of the Mayors of New York and Los Angeles, *et al.* at 10-11 [ECF No. 121].  State and local governments will likewise be injured in the absence of a stay, because without deferred action, these same individuals who are not enforcement priorities cannot apply for federal work authorization, thereby depriving state governments of significant payroll tax revenue.  *See* Amicus Br. of State of Washington, *et al*. at 6, 8; Amicus Br. of the Mayors of New York and Los Angeles, *et al.* at 8-9.

## IV.     PLAINTIFFS WILL NOT BE HARMED BY A STAY

In contrast to the clear and imminent harm to Defendants, to third parties, and to the public interest, Plaintiffs will not face an imminent threat of irreparable harm if the Court stays its preliminary injunction pending appeal.  For the reasons articulated above and in Defendants' prior papers, the injuries the States claim they will suffer during the pendency of proceedings are not imminent and, at most, stem from policy choices the States themselves have made.  *See* Ltr. from Rick Perry to Greg Abbott (Aug. 16, 2012) [ECF No. 130-1] ("In Texas, the legislature has passed laws that reflect the policy choices that they believe are right for Texas," and the Government's deferred action policy "does not undermine or change our state laws" or "change our obligations . . . to determine a person's eligibility for state and local public benefits").

Defendants recognize that this Court has credited Texas's claim that it will spend "millions of dollars" to provide driver's licenses to future recipients of DAPA and modified DACA if the guidance is allowed to be implemented, and that the Court has also found these costs attributable to the Guidance.  *See* Op. at 115.  However, it is Texas *state law* that makes licenses available to such individuals.[2]  Texas is under no obligation to structure its licensing scheme this way as a result of any federal statute, let alone the challenged Guidance.  Texas's alleged expenditure of funds to provide licenses is also hardly immediate, as it is tied to predicted future grants of deferred action under the Guidance, rather than to predicate stages of implementation, and the magnitude of the alleged expenditure bears no relation to the number of requests for DAPA and modified DACA that could even plausibly be granted during the

---

[2] Texas likewise sets (and is thus free to alter) the price at which individuals may obtain a driver's license—a price that presumably reflects its view that the public safety benefits gained by providing licenses outweigh the cost.  *Cf.* Amicus Br. of Major Cities Chiefs Ass'n *et al.* at 7-9 (explaining that driver's licenses promote road safety and assist law enforcement efforts).

pendency of the appeal.[3]  *See La. Envtl. Soc'y, Inc. v. Coleman*, 524 F.2d 930, 933 (5th Cir. 1975) (preliminary injunction not warranted where district court had sufficient time to decide the merits or devise other relief before any harm occurred).  Furthermore, any such ultimate expenditure by Texas likely will be outweighed by the increase in state tax revenues obtained from aliens who may become eligible for work authorization as a result of the grant of deferred action.  *See* Amicus Br. of Washington, *et al.* at 6 (noting that grant of work authorization to individuals who may receive DACA or DAPA in Texas will lead to estimated $338 million increase in the state tax base over five years).  The Court itself recognized that the future net economic effect of the Deferred Action Guidance is at best indeterminate, in light of the potential that the "economic benefits that States will reap by virtue of" the issuance of work authorizations will offset any increase in costs.  Op. at 54-55.  A speculative or indeterminate future financial injury does not constitute irreparable injury to Plaintiffs justifying denial of the requested stay.

---

[3] While it is conceivable that, in the absence of the injunction, some small number of requests for modified DACA could be acted on after March 4—the date that Defendants previously provided as the earliest that USCIS could act on any (not all) such requests—it takes considerable time to process a request for deferred action, given the multi-stage process, including background checks, and case-by-case review, and given the adjudication capacity of USCIS and the volume of requests (of all types) that it processes.  *See* Neufeld Decl. ¶ 13 (discussing multi-stage process for reviewing requests under existing DACA). The average processing time for DACA requests, which is publicly available on USCIS websites, is 5-6 months from receipt to adjudication, https://egov.uscis.gov/cris/processTimesDisplay.do, although DHS anticipates that it may have been able to act more quickly on a small number of requests previously submitted under the 2012 DACA Guidelines but which USCIS could have considered under the revised DACA guidelines after February 18, absent the preliminary injunction.  Moreover, the Guidance does not require USCIS even to begin accepting requests for DAPA until mid-May; and as this Court has recognized, DAPA is a new policy, requiring further implementation steps before any requests could be entertained and acted upon.  Furthermore, grants of deferred action can be revoked at any time, and thus could readily be reversed in the unlikely event that the States ultimately prevail.  In short, there is little to no immediate injury to the Texas even under its theory of harm, and any such injury could be unwound if Plaintiffs ultimately prevail on appeal.

V.    **IN THE ALTERNATIVE, THE COURT SHOULD STAY THE PRELIMINARY INJUNCTION TO THE EXTENT THAT IT PURPORTS TO APPLY OUTSIDE OF TEXAS**

For all the foregoing reasons, the preliminary injunction should be stayed in its entirety pending appeal.  In the alternative, the Court should grant a more limited stay of the injunction to the extent that it purports to reach implementation of the Guidance outside of Texas, including in States that have not made any effort to demonstrate irreparable harm and, indeed, in States not even joined as plaintiffs in this action.  Injunctive relief must be tailored to the parties properly before the court and to the harm that those parties are able to demonstrate.  *See* Defs.' Opp. at 50 n.40; *see also Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011).  Nationwide injunctive relief is particularly inappropriate in the context of government programs. *See United States v. Mendoza*, 464 U.S. 154, 159 (1984).

The only specific harm the Court found here was the potential cost that Texas would allegedly incur from having to issue driver's licenses to future recipients of DAPA and modified DACA by operation of *state* law.  A nationwide preliminary injunction barring the implementation of the Secretary's Guidance for the exercise of discretion in the administration and enforcement of *federal* law is plainly not necessary to provide Texas with relief from this alleged harm.  At the same time, a nationwide injunction trenches on the authority and discretion of the Secretary in the administration and enforcement of the immigration laws.  It also impairs the interests of individuals who may benefit from DAPA and modified DACA and the interests of nonparty States in having DAPA and modified DACA implemented—including the interests of those twelve States and the District of Columbia that filed an amicus brief *in support* of the Deferred Action Guidance, on the ground that it will "substantially benefit," rather than harm, them and their residents.  *See* Amicus Br. of Washington, *et al.* at 2.  Without at least a partial

18

stay, the Court's Order would needlessly deprive those States of the anticipated benefits of

DAPA and modified DACA during the pendency of any appeal.  Thus, at a minimum,

Defendants are entitled to a stay of that portion of the Order that applies to the Government's

implementation of the Deferred Action Guidance in States other than Texas, or, at the very least,

in States not joined in this action.

## CONCLUSION

Defendants request that this Court stay, pending appeal, its February 16, 2015 Order, or

in the alternative, stay its Order beyond application in Texas.  Given the exigencies, Defendants

respectfully request expedited consideration of their motion and a ruling as soon as possible.

Absent a ruling by the close of business on Wednesday, February 25, Defendants may seek relief

from the Court of Appeals in order to protect their interests.

Dated:  February 23, 2015                              Respectfully submitted,

KENNETH MAGIDSON                          JOYCE R. BRANDA
United States Attorney                          Acting Assistant Attorney General

DANIEL DAVID HU                              KATHLEEN R. HARTNETT
Assistant United States Attorney                  Deputy Assistant Attorney General
Deputy Chief, Civil Division
                                              DIANE KELLEHER
                                              Assistant Branch Director

                                                _/s/ Kyle R. Freeny_____
                                              KYLE R. FREENY (Cal. Bar No. 247857)
                                                Attorney-in-Charge
                                              HECTOR G. BLADUELL
                                              BRADLEY H. COHEN
                                              ADAM D. KIRSCHNER
                                              JULIE S. SALTMAN
                                              Civil Division, Federal Programs Branch
                                              U.S. Department of Justice
                                              P.O. Box 883, Washington, D.C. 20044
                                              Tel.: (202) 514-5108 / Fax: (202) 616-8470
                                              Kyle.Freeny@usdoj.gov
                                              *Counsel for Defendants*

**CERTIFICATE OF CONFERRAL**

Pursuant to Local Civil Rule 7.1.D, undersigned counsel hereby certifies that she contacted counsel for Plaintiffs, Angela Colmanero, who indicated that Plaintiffs oppose all forms relief sought in the foregoing Emergency Expedited Motion to Stay.

*/s/ Kyle R. Freeny*
Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Emergency Motion to Stay has been delivered electronically on February 23, 2015, to counsel of record via the District's ECF system.

*/s/ Kyle R. Freeny*
Counsel for Defendants