IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | ) )  ) |
| *Plaintiffs*, | ) ) |
| vs. | ) ) Case No. 1:14-cv-254 |
| UNITED STATES OF AMERICA, *et al.*, | ) ) ) |
| *Defendants*. | ) ) |

**PLAINTIFFS' OPPOSED MOTION FOR EARLY DISCOVERY**

On March 3, Defendants reported to the Court that, after this suit was filed and until the Court entered a preliminary injunction on February 16, 2015, the U.S. Citizenship and Immigration Services (USCIS) took "certain actions" pursuant to the "November 20, 2014 deferred action memorandum at issue in this case." Advisory 1, ECF No. 176. This is surprising to Plaintiffs, as Defendants had represented on several prior occasions that USCIS would not consider requests for deferred action under that memorandum until at least February 18, 2015.

Plaintiffs find themselves hard-pressed to reconcile Defendants' past representations with Defendants' actions as reported in their advisory. Because the nature and extent of those actions inform remedies Plaintiffs may pursue, related to both Defendants' past representations and to their current compliance with the preliminary injunction, Plaintiffs move for early discovery focused on the subject. Defendants oppose this motion.

I.  **The Court Should Allow Limited Early Discovery Into the Extent of Defendants' Compliance With Their Representations and With the Preliminary Injunction.**

    A.  **Standard for early discovery**

District courts may authorize discovery from any source before the parties have conferred under Federal Rule of Civil Procedure 26(f). *See* Fed. R. Civ. P. 26(d)(1). Discovery prior to a Rule 26(f)(1) conference is generally permitted where the party seeking discovery demonstrates "good cause." *See, e.g., St. Louis Group, Inc. v. Metals and Additives Corp., Inc.*, 275 F.R.D. 236, 240 (S.D. Tex. Apr. 26, 2011); *Paul v. Aviva Life & Annuity Co.*, No. 3-09-CV-1490-B, 2009 WL 3815949, at * 1 (N.D. Tex. Nov 12, 2009); *Combat Zone Corp. v. John/Jane Does 1-2*, No. 2:12-CV-00509, 2012 WL 6684711, at *1 (E.D. Tex. Dec. 21, 2012). Good cause exists "where the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party." *St. Louis Group, Inc.*, 275 F.R.D. at 239. That good cause exists here, as explained below and perhaps best demonstrated by Defendants' own perceived need to self-report their actions.

    B.  **Defendants represented that they would not entertain or grant Expanded DACA applications until February 2015.**

A timeline of pertinent events places Defendants' self-reporting into context:

- **November 20, 2014:** The DHS Directive that creates DAPA and Expanded DACA is promulgated. USCIS subsequently publishes a notice indicating that it "expects to begin accepting requests" for Expanded DACA on February 18, 2015 (and for DAPA in May 2015).[1]

- **December 4, 2014:** Plaintiffs move for a preliminary injunction against "all enforcement or implementation" of the DHS Directive. ECF No. 5-1.

---

[1] U.S. Citizenship & Immigr. Svcs., Executive Actions on Immigration, http://www.uscis.gov/immigrationaction.

2

In their motion, Plaintiffs request an expedited hearing by December 31 "[g]iven the emergency created by Defendants' actions." ECF No. 5, at 2.

- **December 19, 2014:** This Court holds a telephone conference to discuss the schedule for briefing and hearing on the motion. Plaintiffs understand from Defendants' representations in the conference that they **will not begin implementing DAPA or Expanded DACA until February 2015 at the earliest**. (Plaintiffs have ordered a transcript of that recorded conference, and understand that it will be provided next week.)

   As a result, Plaintiffs agree to a proposed schedule that provides Defendants until December 24 to file a motion response, sets January 2 as Plaintiffs' deadline to reply, and schedules January 9 for a hearing on the motion for a preliminary injunction.

- **January 5, 2015:** On agreement by the parties—based on Plaintiffs' reliance on Defendants' representations about when they will begin implementing the Directive—the Court extends the deadlines and resets the preliminary-injunction hearing for January 15, 2015. ECF No. 41.

- **January 14, 2015:** On the eve of the Court's January 15 hearing, Defendants move for an extension of time to file a sur-reply in opposition to Plaintiffs' preliminary-injunction motion. ECF No. 90. In that motion, Defendants seek a two-week extension that would give them until February 2 to sur-reply. *Id.* In support of their extension motion (which the Plaintiffs opposed), Defendants state that "Plaintiffs will not be prejudiced" by the extension "because U.S. Citizenship and Immigration Services (USCIS) **does not intend to entertain requests for deferred action under the challenged policy until February 18, 2015**." *Id.* at 3.

- **January 15, 2015:** The next day, at the hearing, Defendants take the same position. In a colloquy with the Court, Defendants' counsel states:

   > MS. HARTNETT: In that document [Defendants' January 14 motion for extension of time] we reiterated that **no applications for the revised DACA -- this is not even DAPA -- revised DACA would be accepted until the 18th of February**, and that no action would be taken on any of those applications until March the 4th.

   Hr'g Tr. at 133 (attached as Ex. A). When pressed further by the Court, Defendants' counsel reiterates that no action will be taken on Expanded DACA for the next three weeks:

3

> THE COURT: But as far as you know, **nothing is going to happen in the next three weeks**?
>
> MS. HARTNETT: **No, Your Honor.**
>
> THE COURT: Okay. On either.
>
> MS. HARTNETT: In terms of accepting applications **or granting any up or down applications.**
>
> THE COURT: Okay.
>
> MS. HARTNETT: For revised DACA, just to be totally clear.

*Id.* at 134. In light of these representations, the Court allows Defendants until January 30 to file their sur-reply. *Id.* at 133-34; *see* ECF No. 96.

The Court's opinion granting the preliminary injunction reflects the Court's own understanding that USCIS will "begin accepting applications under the new [DACA] criteria" in "less than a week." Op. 76, ECF No. 145. The Court also explained that Plaintiffs do not here challenge the 2012 Original DACA Directive issued by then-Secretary Napolitano, but do challenge the 2014 DHS Directive issued by Secretary Johnson, Op. 4-5, which "implement[s] the DAPA program and expand[s] the DACA program." Op. 11.

### C. Defendants disclose that they have implemented Expanded DACA by granting relief available only under that program to approximately 100,000 aliens.

Defendants' advisory observes that they have not yet implemented two of the three DACA expansions (removal of the age cap, and widening of the arrival window). But it discloses that Defendants have, in fact, implemented Expanded DACA's last component: changing the duration of deferred-action grants from two to three years. And Defendants implemented this aspect of Expanded DACA over an extended period of time, granting Expanded DACA benefits to approximately 100,000 unauthorized

4

aliens between late November 2014 and the Court's mid-February preliminary injunction. Advisory 2-3.

This newly disclosed conduct is difficult to square with Defendants' prior representation to the Court that "nothing is going to happen" until weeks after the preliminary-injunction hearing. Hr'g Tr. at 134. Likewise, Plaintiffs do not understand why Defendants do not consider their implementation of Expanded DACA to be "granting" or "entertaining requests" for deferred action under the challenged DHS Directive. After all, Original DACA provided only for two-year relief; it is *only* Expanded DACA that provided for the three-year relief that Defendants granted to 100,000 aliens. Moreover, Defendants' advisory contains no details about how many of the aliens who received Expanded DACA relief applied for some form of DACA during the time period at issue, or the extent to which those applicants formally or informally requested or were told they would receive Expanded DACA relief.

The advisory also contains no details about whether Defendants and their counsel understood that USCIS was affording Expanded DACA relief, and what instructions were given to USCIS in that regard before Defendants made representations to the Court and to Plaintiffs. The advisory cites a footnote in an exhibit to their sur-reply filed on January 30, *see* Advisory 3, but that exhibit does not explain that Defendants were in fact implementing Expanded DACA. The cited language comes from page six of one of eleven exhibits attached to Defendants' sur-reply—as a footnote to a paragraph that Defendants did not cite at all in their sur-reply. That foot-

5

note, in turn, describes what the challenged November 20, 2014 Directive says: "Pursuant to the November 20, 2014 memo issued by Secretary Johnson, as of November 24, 2014, all first-time DACA requests and requests for renewal now receive a three-year period of deferred action." Neufeld Decl. ¶ 12 n.6, ECF No. 130-11. That is an accurate description of the DHS Directive. It does not disclose that the Directive was in fact being implemented, conferring expanded periods of deferred action on tens of thousands of unauthorized aliens.

Moreover, as recently as February 23, 2015—seven days after this Court's preliminary injunction—Defendants confirmed the impression that Expanded DACA benefits were not being issued. In their motion for a stay of that injunction pending appeal, Defendants argued that Plaintiffs would not be harmed by a stay of the injunction, i.e., by allowing the DHS Directive to go into effect. ECF No. 150, at 16-17. As part of that argument, Defendants referred to the anticipated timing for acting on DACA requests "under the revised DACA guidelines." *Id.* at 17 n.3. And Defendants indicated that, absent the injunction, they would have been able to act under the new DACA guidelines only after February 18. *Id.* ("DHS anticipated that it may have been able to act more quickly on a small number of requests previously submitted under the 2012 DACA Guidelines but which USCIS could have considered under the revised DACA guidelines after February 18, absent the preliminary injunction."). Defendants did not state that, for several months, they had already been considering DACA requests under one aspect of the new 2014 Expanded DACA "guidance."

6

> **D. The difficulty of reconciling Defendants' representations and conduct is good cause for early discovery into the nature and extent of their actions to implement Expanded DACA.**

At present, the record is not sufficiently developed to draw firm conclusions about the nature and extent of the actions Defendants took to implement Expanded DACA while litigating this case. The need to clarify the record in that regard, given the substantial questions raised by the difficulty of squaring Defendants' representations in this case with their newly disclosed conduct, is good cause to allow early discovery into that limited matter.

There is at least a substantial possibility that the facts revealed by early discovery would prompt Plaintiffs to pursue remedies related to Defendants' representations and actions. Plaintiffs have proceeded in this litigation based on their understanding, from Defendants' representations, that neither DAPA nor Expanded DACA would be implemented until February 18, 2015. Had Plaintiffs known that Defendants began granting Expanded DACA relief as soon as the DHS Directive was promulgated, they would have explored seeking a temporary restraining order to block that implementation of the Directive. This, in turn, would have avoided any need to litigate potential remedies now. Likewise, Plaintiffs may have requested discovery from Defendants, in the context of the motion for preliminary injunction, to explore the manner in which Defendants were implementing Expanded DACA, as that might be relevant to their standing and irreparable-harm arguments. Good cause exists to authorize limited early discovery.

## II. The Early Discovery Should Be Phased and, Initially, Limited to the Implementation of Expanded DACA.

Plaintiffs propose pursuing early discovery in a phased manner, initially limited to documentary information related to the implementation of Expanded DACA to date. At the Court's discretion, Plaintiffs are willing to submit to the Court an initial document request or to discuss the scope of such a request at a hearing. It would likely seek information related to when Expanded DACA deferred action began issuing; which supervisory officials were involved in granting that deferred action and the extent to which they described that practice to Defendants and their counsel; details about how many of the approximately 100,000 aliens who received Expanded DACA relief applied during the time period in dispute; and the extent to which those applicants requested Expanded DACA relief.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for early discovery.

Respectfully submitted.

| | |
|---|---|
| LUTHER STRANGE<br>*Attorney General of Alabama* | KEN PAXTON<br>*Attorney General of Texas* |
| MARK BRNOVICH<br>*Attorney General of Arizona* | CHARLES E. ROY<br>*First Assistant Attorney General* |
| DUSTIN MCDANIEL<br>*Attorney General of Arkansas* | SCOTT A. KELLER<br>*Solicitor General* |
| PAMELA JO BONDI<br>*Attorney General of Florida* | /s/ Angela V. Colmenero<br>ANGELA V. COLMENERO<br>*Assistant Attorney General*<br>  Attorney-in-Charge<br>  State Bar No. 24048399 |
| SAMUEL S. OLENS<br>*Attorney General of Georgia* | |
| LAWRENCE G. WASDEN<br>*Attorney General of Idaho* | J. CAMPBELL BARKER<br>*Deputy Solicitor General* |
| JOSEPH C. CHAPELLE<br>PETER J. RUSTHOVEN<br>*Counsel for the State of Indiana* | ADAM N. BITTER<br>*Assistant Attorney General*<br><br>Office of the Attorney General of Texas |
| DEREK SCHMIDT<br>*Attorney General of Kansas* | P.O. Box 78711<br>Austin, Texas 78711-2548<br>512-936-1700 |
| JAMES D. "BUDDY" CALDWELL<br>*Attorney General of Louisiana* | |
| TIMOTHY C. FOX<br>*Attorney General of Montana* | |
| JON C. BRUNING<br>*Attorney General of Nebraska* | |
| ADAM PAUL LAXALT<br>*Attorney General of Nevada* | |
| WAYNE STENEHJEM<br>*Attorney General of North Dakota* | |

9

MICHAEL DEWINE
*Attorney General of Ohio*
ERIC E. MURPHY
*Co-counsel for the State of Ohio*

E. SCOTT PRUITT
*Attorney General of Oklahoma*

ALAN WILSON
*Attorney General of South Carolina*

MARTY J. JACKLEY
*Attorney General of South Dakota*

HERBERT SLATERY III
*Attorney General and Reporter of
    Tennessee*

SEAN D. REYES
*Attorney General of Utah*

PATRICK MORRISEY
*Attorney General of West Virginia*

BRAD D. SCHIMEL
*Attorney General of Wisconsin*

BILL SCHUETTE
*Attorney General for the People of
    Michigan*

DREW SNYDER
*Counsel for the Governor of Mississippi*

PAUL R. LEPAGE
*Governor of Maine*

ROBERT C. STEPHENS
*Counsel for the Governor of North
    Carolina*

TOM C. PERRY
CALLY YOUNGER
*Counsel for the Governor of Idaho*

## CERTIFICATE OF CONFERENCE

On March 4, 2015, counsel for Plaintiffs conferred with counsel for Defendants regarding the relief requested in this motion.  Counsel for Defendants has indicated that they are opposed to the motion.

/s/ Angela V. Colmenero
ANGELA V. COLMENERO

## CERTIFICATE OF SERVICE

I certify that I served a copy of this pleading on all counsel of record via this Court's CM/ECF system.

/s/ Angela V. Colmenero
ANGELA V. COLMENERO
