IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
Brownsville Division

**STATE OF TEXAS, et al.**

                Plaintiffs,

   v.

**UNITED STATES OF AMERICA, et al.**

                Defendants

Case No. 1:14-cv-254

### SUPPLEMENTAL *AMICUS CURIAE* BRIEF BY AMICUS CURIAE SHERIFF JOE ARPAIO FILING TRANSCRIPT OF DEFENDANTS' ARGUMENT DECEMBER 22, 2014 BY DEPUTY ASSISTANT ATTORNEY GENERAL KATHLEEN HARTNETT AND OTHER APPROPRIATE RELIEF

Sheriff Joe Arpaio hereby files as *Amicus Curiae* the attached transcript from his own litigation, *Arpaio v. Obama,* in the U.S. District Court for the District of Columbia ("D.C. District Court"), Civil Action No. 1:14-cv-01966, from a hearing December 22, 2014, before the Honorable Beryl Howell.

This Court is now deciding – according to reports and the *Amicus Curiae's* understanding of the proceedings of the March 19, 2015, hearing before the Court – whether the Defendants, by counsel, intentionally misled the Court in defense of the Plaintiff's Motion for Preliminary Injunction on the question of when the Executive Branch of the U.S. Government actually began to implement the Defendants' challenged executive action programs launched by various Memoranda on November 20, 2014.

A pivotal factual question for the Court in considering the Motion for Preliminary Injunction was to what extent implementation of the Executive Branch's "deferred action" programs ordered by executive action would begin imminently. That is, the Court needed to know whether the Court would have time to rule before the programs would begin and on what timetable the Court should schedule, consider, and decide issues in the case.

The transcript from *Arpaio v. Obama* reveals that the Defendants have intentionally misled the courts, the public, and the U.S. Congress. Defendants' claimed in December 2014 that there was no need for a preliminary injunction because the amnesty programs were not imminent. Those claims were a premeditated and intentional misrepresentation.

As a result, the Court should sanction the Defendants. Given the Court's concern that a monetary penalty against the U.S. Government would simply be borne by the citizens of the Plaintiff States, the Court can consider other forms of sanctions to ensure ethical and honest conduct by the Obama Justice Department and its clients in the future.

Sheriff Arpaio's counsel directly challenged this same point in pleadings in December 2014 but also directly live, in person, to Deputy Assistant Attorney General Kathleen Hartnett in the December 22, 2014, hearing. Because the same point has previously been addressed and challenged in open court in the D.C. District Court, Ms. Hartnett's continuing the same claim in Brownsville, Texas, is neither accidental nor an innocent mistake. Motions for preliminary injunctions had already been filed by December 22, 2014, in both cases, so that Defendants knew the implementation of the programs to be an issue in both court cases before December 22, 2014.

In *Arpaio v. Obama*, the issue being discussed was that the November 20, 2014, Memorandum Opinion went into effect immediately because they immediately suspended deportation proceedings and enforcement with regard to every citizen of a foreign country who

merely might potentially meet the criteria of the Memoranda, even though the person has not filed any request for deferred action status under the programs.

The colloquy on that point on December 22, 2014, in *Arpaio v. Obama,* reveals that Ms. Hartnett misled this Court in *State of Texas v. United States of America,* by claiming that there was no need for an injunction because the implementation of the November 20, 2014 programs was not imminent. Ms. Hartnett falsely argued to this Court that the Memoranda programs would not go into effect until February 18, 2015. In fact, they had already gone into effect immediately on November 20, 2014, in many respects. But this was pointed out in Ms. Harnett's presence in the court in the D.C. District Court on December 22, 2014. Therefore, Ms. Hartnett knew her representation was not true – or at least highly fallible – when she made that claim in this Court in Brownsville, Texas, in January and February 2015.

In the hearing before Judge Hanen in the March 19, 2015, hearing, the revelation emerged that the Executive Branch began implementation of the new rules from November 20, 2014, for renewals under the Deferred Action for Childhood Arrivals ("DACA") after assuring this Court that there was no need for a temporary injunction because there was no imminent application of the new November 20, 2014, Memoranda or programs. But in fact 100,000 DACA beneficiaries had received three-year renewals under the new November 20, 2014, rules, according to the Defendants' Advisory.

That precise issue did not arise in *Arpaio v. Obama*. However, Ms. Hartnett, the Obama Department of Justice and the Defendants clearly knew back on December 22, 2014, that imminent implementation of the programs was highly relevant to the motions for preliminary injunctions in both this Court and in *Arpaio v. Obama*. Ms. Hartnett assured Judge Howell in the

3

U.S. District Court for the District of Columbia that no aspect of the November 20, 2014, programs would go into effect any earlier than February 18, 2015.

The Defendants were represented in this Court in this case on March 19, 2015, by attorney for the Defendants Deputy Assistant Attorney General Kathleen Hartnett, in the Court's hearing upon the Plaintiffs' Motion for Early Discovery.

The Defendants were also represented in this Court in this case in hearings in January and February 2015, by the same attorney for the Defendants Deputy Assistant Attorney General Kathleen Hartnett, in the Court's hearing upon the Plaintiffs' Motion for Preliminary Injunction.

However, in the D.C. District Court on December 22, 2014, the same Deputy Assistant Attorney General Kathleen Hartnett also represented the Defendants there[1] in *Amicus Curiae* Sheriff Arpaio's lawsuit also challenging the same amnesty programs by the same November 20, 2014, executive action Memoranda.

The December 22, 2014, hearing before Judge Howell confronted the Defendants' counsel with the falsehood of the Defendants' claim that the executive action programs had not yet begun and would not start imminently. Therefore, by the time that Defendants' counsel Ms. Hartnett appeared before this Court in January and February 2015, <u>she had actual knowledge, first-hand, that the claims made in this Court were subject to serious question or untrue.</u>

**The transcript addressed these issues at pages 25:7-25:**

> THE COURT: But it hasn't been implemented yet. It's been announced, but I think it has a 180-day lag period even before, you know, applications for eligibility determinations are made. Am I right on that date?
>
> MR. KLAYMAN: Your Honor, having relied upon the argument in the Justice Department's brief, which was frankly misleading, notice that they didn't submit one

---

[1] The Defendants are slightly different between the two cases, but generally represent the officials and departments of the Executive Branch responsible for the Obama administration's amnesty programs using deferred action ordered by executive action Memoranda.

4

affidavit. They did not go under oath on anything. They didn't want to put their money where their mouth is. There is nothing in that record which contravenes our affidavit. They just threw in a bunch of documents. Why didn't they go under oath and swear what was going on, because what we know --

THE COURT: But Mr. Klayman, let's not -- let's not play to the gallery here. We all understand as lawyers, that it is your burden, not the government's to establish standing. It's your burden to introduce the affidavits --

MR. KLAYMAN: And we have.

**The transcript further reveals at pages 29:2—9:**

THE COURT: Well, you keep saying "in effect," but what you mean is after the president's policies were announced, they are not in effect. And they are not even accepting applications, I think, until 180 days after the November 20 announcement; right?

MR. KLAYMAN: They are in effect -- you have 180 days to apply, okay.

THE COURT: Right.

**The transcript further reveals at pages 51:13 - 52:18:** *(Emphasis added):*

THE COURT: All right. Could you clarify for me, because maybe it's just confused in my head, the effective date of the DAPA program and the revised DACA program, because I thought the revised DACA program had a 90-day date before it became effective and the DAPA program had 180-day date to be effective. So could you just explain how those two dates operated. Are they effective now, as Mr. Klayman says, and the government's just receiving applications for a 90-day period and a 180-day period? Could you just explain whether I'm confused on the effective date.

MS. HARTNETT: No, you're not confused, and the programs are pursuant to memoranda. *The terms of the memoranda are not yet in effect. The revised DACA program applications should be, begin to be received starting on February 18 of 2015, approximately, but that would be the date, the 90-day date from the date of announcement.* And for the DAPA program, that would take you to May 19, 2015, to even be able to submit an application. Because at that point there would still have to be a period of time for the consideration of the application, so even those dates would not be dates of necessarily beginning to grant requests under those applications.

Now, there is the ongoing DACA process from 2012, and that continues. But these, the revisions to the process will take effect pursuant to the memoranda.

THE COURT: So just so we're absolutely clear, the earliest date that anybody could be granted a DAPA deferred removal status is 180 days after November 20; is that right?

MS. HARTNETT: Correct, for DAPA, yes.

**The transcript further reveals at pages 55:23 – 57:8:** *(Emphases added):*

[KLAYMAN]  The other thing I might add, and this was what was not stated accurately, is that in the memoranda today that are at issue here that you clarified at the beginning.  The other thing I might add, and this was what was not stated accurately, is that in the memoranda today that are at issue here that you clarified at the beginning of this hearing, ***it states explicitly that enforcement is to stop immediately***. Everything stops to allow these people to come out from, you know, underground and come forward. And I ask you –

THE COURT: Where is that in, in which memorandum are you talking about? Are you talking about the November 20th memoranda?

MR. KLAYMAN: Yes. It's Exhibit D, Your Honor.

THE COURT: I mean, I'm looking another document, ECF 6-4, and on page 3 of that document where it states -- it has a justification for the case-by-case exercises of deferred action to encourage people to come out of the shadows, submit to background checks and so on, but I didn't see any reference in here to stopping removal proceedings for the priority, undocumented immigrants.

MR. KLAYMAN: If you look at page 5, it's the corollary what's being set there. It's implicit in that. Wherein it says, "ICE and CBP are instructed to immediately begin identifying persons in their custody as well as newly encountered individuals who meet the above criteria and may thus be eligible for deferred action to prevent the further expenditure and enforcement resources with regard to these individuals."

***So what they are saying is we want to identify these people immediately because we don't want to have them subject to deportation*** so as to prevent the further expenditure of enforcement resources. ***So it does have immediate effect in that regard.*** And the other two paragraphs are similar. So that's the immediate harm. And -- but it doesn't have to be immediate harm. It has -- it can even just be imminent harm or respective harm, and that's what's important here.

This misrepresentation is consistent with the announced policy of the Defendants. As reported in The Washington Times, where Leon Rodriquez, Director of USCIS of DHS, announced to his DHS employees in a town hall meeting that:[2]

> "If this program does what we want it to do, you will now have literally millions of people who will be working on the books, paying taxes, being productive. You cannot so easily by fiat now remove those people from the economy."

Therefore, Director Rodriquez admits that one purpose of the program's design is to prevent President Obama's unilateral executive action amnesty program from being unraveled. The purpose of rushing the new November 20, 2014 programs into implementation before anyone can react is an admitted purpose of the Defendants and related to the assurances before the courts that there is no need for a preliminary injunction because the programs have not yet been implemented.

The *Amicus Curiae* previously filed a pleading urging this Court to examine the question of whether the Executive Branch was defying this Court's Temporary Injunction, titled Notice, Suggestion and Recommendation for Issuance of Order to Show Cause Concerning Enforcement of Court's Order by *Amicus Curiae* Sheriff Joe Arpaio.

In response to that pleading by the *Amicus Curiae*, the Defendants filed their "Advisory" revealing that the Defendants had in fact processed 100,000 deferred action renewals under the new November 20, 2014, Memoranda rules.

Specifically, the *Amicus Curiae* brought to the Court's attention that several reports indicate that the Executive Branch under the Obama administration has not complied with this

---

[2] "**Obama immigration chief says amnesty designed to cement illegals place in society**," Stephen Dinan, The Washington Times, December 9, 2014, http://www.washingtontimes.com/news/2014/dec/9/obama-amnesty-designed-cement-illegals-place-socie/

7

Court's temporary injunction, but continues full-speed to implement a grant of amnesty and related benefits to approximately 5 million citizens of foreign countries who are illegally in the United States under the Defendants' November 20, 2014, executive action programs implemented by several Memoranda issued by Secretary of Homeland Security Jeh Johnson.

At a town hall meeting in Miami, Florida, on February 25, 2015, as reported in "**Obama Says He Won't be Deterred by 'One Federal Judge' on Immigration**," by Ben Wolfgang, The Washington Times, February 26, 2015, p. A3, attached as Exhibit 1, President Barack Obama told a Miami crowd that he will move ahead with his executive action on immigration and vowed that his administration will become even more aggressive in the weeks and months to come.

In the town hall meeting sponsored by MSNBC and Telemundo, a Spanish language television network, President Obama stated, according to The Washington Times:

> "This is just one federal judge. We have appealed it very aggressively. We're going to be as aggressive as we can."

The Obama administration is continuing to signal not only its disagreement with the Court's order, which is its right, but beyond that its non-compliance with the Court's order.

On February 20, 2015, the public interest organization Judicial Watch reported from a source within the U.S. Government contracting industry that the U.S. Department of Homeland Security is continuing at full speed to implement the "deferred action" programs created on November 20, 2014, by Memorandum orders signed by Secretary of Homeland Security Jeh Johnson which this Court enjoined on February 16, 2015.

> "The complex contract is being pushed at a "full-throttle pace," a government source told Judicial Watch on Friday."

8

*See* "**DHS rushing amnesty contracts at 'full-throttle pace': source**," by Kellan Howell, The Washington Times, February 21, 2015, attached as Exhibit 2.[3]  *See, also*, "**Report: Obama Hustling 'Full Throttle' to Set Up Amnesty Contracts**,"[4] by Bob Unruh, World Net Daily, February 20, 2015, attached as Exhibit 3.  *See, also*, ""Obama defies judge, forges ahead with amnesty," by Bob Unruh, World Net Daily, February 26, 2015, attached as Exhibit 4.[5][6]

However, following news coverage of that story, it appeared that the U.S. Department of Homeland Security ("DHS") then cancelled the Request for Proposal ("RFP") for the contracting process of engaging hundreds of contractor personnel to process the millions of applications for deferred action amnesty.   As a result, the cancellation of the RFP did suggest that maybe DHS was moving to belatedly comply.

President Obama's defiant pledge in Miami, Florida, on February 25, 2015, to move forward aggressively with implementation of his deferred action amnesty by executive over-reach casts into doubt whether overall the Obama administration is continuing to implement the executive action amnesty in defiance of the Court's temporary injunction.

---

[3]     Available on-line at http://www.washingtontimes.com/news/2015/feb/21/dhs-rushing-amnesty-contracts-at-full-throttle-pac/#ixzz3SQvdJHzo

[4]     Available on-line at http://www.wnd.com/2015/02/report-obama-full-throttle-to-set-up-amnesty-contracts/

[5]     Available on-line at http://www.wnd.com/2015/02/obamas-amnesty-moves-ahead-despite-judges-order/

[6]     In 1994, Larry Klayman, founded Judicial Watch as a public interest organization devoted to transparency in government and promoting honest government and the rule of law through litigation and use of the freedom of information act.  Larry Klayman is no longer associated with Judicial Watch, but he did establish it and organize its mission, strategies, and techniques.  After departing Judicial Watch and taking a period of time for other pursuits, Klayman later created Freedom Watch also as a public interest organization using litigation, and other legal proceedings to promote good government, transparency, and the rule of law.

Given the strong reports that DHS is continuing to implement the programs that the Court enjoined, the Court should issue an order to show cause and call for clarification and assurance from the Defendants that they are and will comply with the Court's temporary injunction.

The U.S. Department of Homeland Security had previously published a "Request for Proposals" as part of the Federal contracting and procurement process to invite competitive bids for multi-year, complex contracts to process the estimated 5 million deferred action applications expected under the Obama Administration's November 20, 2014, programs.

In conclusion, the Court cannot and should not permit the misconduct of the Defendants and their counsel to go unpunished. The Obama Justice Department has systematically lied to this Court and the D.C. District Court. Appropriate sanctions should be imposed, including but not limited to the commencement of contempt proceedings, as well as a formal reprimand of counsel or referrals to appropriate State Bars, to redress the serious flouting of and disrespect for the legal process and this Court. No one is above the law, not even the Defendants, the President or his Justice Department.

Dated:   March 24, 2015                                        Respectfully submitted,

Larry Klayman, Esq.
Washington, D.C. Bar No. 334581
Freedom Watch, Inc.
2020 Pennsylvania Avenue N.W., Suite 345
Washington, D.C. 20006
(310) 595-0800
leklayman@gmail.com
Of Counsel

_____
Jonathon Moseley, Esq.

Virginia State Bar No. 41058
Freedom Watch, Inc.
2020 Pennsylvania Avenue N.W., Suite 345
Washington, D.C. 20006

(310) 595-0800
leklayman@gmail.com
Attorney for Plaintiff
*Pro Hac Vice Approved*

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing Supplemental *Amicus Curiae* Brief by Sheriff Joe Arpaio for Leave of Court Filing Transcript of Defendants' Argument December 22, 2014, by Deputy Assistant General Kathleen Hartnett will be delivered electronically on March 24, 2015, to counsel for Plaintiffs and Defendants through the District's Electronic Case Filing system.

Jonathon Moseley, Esq.

11