IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, ET AL., | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL NO. B-14-254 |
| | § | |
| UNITED STATES OF AMERICA, ET AL., | § | |
| Defendants. | § | |

# ORDER

The Plaintiff States[1] (hereinafter "Plaintiffs" or "States") have filed an Opposed Motion for Early Discovery, alleging that certain misrepresentations were made by counsel for the United States and the various officials of the Department of Homeland Security (hereinafter "DHS") who are defendants in this matter (hereinafter "Defendants" or the "Government") [Doc. No. 183].[2] The Government has filed its Opposition thereto [Doc. No. 207], and the States have filed a Reply [Doc. No. 209]. This Court held a hearing on the States' Motion on March 19, 2015.

The States' discovery motion stems from one of the most recent pleadings filed by the Government entitled "Defendants' Advisory" (hereinafter "Advisory"), where, in pertinent part, the Government disclosed to the Court and the States the following:

---

[1] The Plaintiffs include: the State of Texas; State of Alabama; State of Arizona; State of Arkansas; State of Florida; State of Georgia; State of Idaho; State of Indiana; State of Kansas; State of Louisiana; State of Montana; State of Nebraska; State of Nevada; State of North Dakota; State of Ohio; State of Oklahoma; State of South Carolina; State of South Dakota; State of Tennessee; State of Utah; State of West Virginia; State of Wisconsin; Attorney General Bill Schuette, People of Michigan; Governor Phil Bryant, State of Mississippi; Governor Paul R. LePage, State of Maine; Governor Patrick L. McCrory, State of North Carolina; and Governor C. L. "Butch" Otter, State of Idaho.

[2] This Court previously denied a Motion for Leave of Court to File a Motion Seeking an Order to Show Cause [Doc. No. 160] based upon the same alleged misrepresentations. The Court denied the motion because it was filed by an *amicus curiae* and not by a party to this action. It is beyond the role of an *amicus curiae* to file substantive motions.

1

**DEFENDANTS' ADVISORY**

Defendants file this Advisory <u>to inform the Court of certain actions that U.S. Citizenship and Immigration Services ("USCIS") took pursuant to the November 20, 2014 deferred action memorandum at issue in this case before the Court issued its preliminary injunction on February 16, 2015.</u> Defendants do not believe that the preliminary injunction requires them to take any affirmative steps concerning those pre-injunction actions, but Defendants nevertheless wish to ensure that the Court is fully aware of those actions.

* * *

Out of an abundance of caution, however, Defendants wish to bring one issue to the Court's attention. <u>Specifically, between November 24, 2014 and the issuance of the Court's Order, USCIS granted three-year periods of deferred action to approximately 100,000 individuals who had requested deferred action under the *original* 2012 DACA guidelines (and were otherwise determined to warrant such relief), including the issuance of three-year EADs for those 2012 DACA recipients who were eligible for renewal. These pre-injunction grants of three-year periods of deferred action to those already eligible for 2012 DACA were consistent with the terms of the November Guidance.</u> Deferred Action Guidance at 3; *see also* Neufeld Decl. ¶ 12 n.6 ("Pursuant to the November 20, 2014 memo issued by Secretary Johnson, as of November 24, 2014, all first-time DACA requests and requests for renewal now receive a three-year period of deferred action.") [ECF No. 130–11]. <u>Defendants nevertheless recognize that their identification of February 18, 2015, as the date by which USCIS planned to accept requests for deferred action under the new and expanded DACA eligibility guidelines, and their identification of March 4, 2015, as the earliest date by which USCIS would make final decisions on such expanded DACA requests, may have led to confusion about when USCIS had begun providing three-year terms of deferred action</u> to individuals already eligible for deferred action under 2012 DACA. *See, e.g.*, Defs.' Mot. for Extension of Time to File Resp. to Pls.' Prelim. Inj. Reply Mem. at 3.

[Doc. No. 176 at 1, 3 (emphasis added)].[3]  The only way to interpret this Advisory is that, despite the Government's multiple assurances that no action would be taken prior to February 18, 2015, in reality, between November 24, 2014, and February 16, 2015, the DHS granted approximately

---

[3] "DACA" is the acronym for Deferred Action for Childhood Arrivals. "DAPA" is the acronym for Deferred Action for Parents of Americans and Lawful Permanent Residents. DAPA was created by the November 20, 2014 Memorandum issued by DHS Secretary Jeh Johnson (hereinafter the "2014 DHS Directive" or "Directive"). The 2014 amendments to DACA (or "revised DACA") were also established in the 2014 DHS Directive.

100,000 applications[4] pursuant to the revised DACA, the terms of which were established in the 2014 DHS Directive that is the subject of this suit. Indeed, the opening sentence of the Advisory notes that these actions were taken "pursuant to the November 20, 2014 . . . memorandum at issue in this case." [*Id.* at 1]. Counsel for the Government confirmed this interpretation in open court.

This Court expects all parties, including the Government of the United States, to act in a forthright manner and not hide behind deceptive representations and half-truths. That is why, whatever the motive for the Government's actions in this matter, the Court is extremely troubled by the multiple representations made by the Government's counsel—both in writing and orally—that *no action* would be taken pursuant to the 2014 DHS Directive until February 18, 2015. At the January 15, 2015 injunction hearing, the Court established through counsel for both sides that revised DACA as set forth in the amendments contained in the 2014 DHS Directive were indeed at issue in the case. [P.I. Hr'g Tr. 90–92, Jan. 15, 2015]. Thereafter, the following exchange between the Court and counsel occurred in response to the Government's request for time to file a sur-reply to Plaintiffs' pleadings on the temporary injunction:

> **THE COURT:** I'm a little concerned about how much time you asked for. If I give you until the 28th [of January 2015], can you work with that?
>
> **MS. HARTNETT [Counsel for the Government]:** Let me confer with my co-counsel, but I believe so.
>
> Your Honor, in part we're just discussing about the need to respond to some of the voluminous factual material. If we could have until the 30th, that Friday, that would be preferable.

---

[4] Counsel for the Government at the hearing on March 19, 2015, indicated that the actual number was 108,081. [Hr'g Tr. 25, Mar. 19, 2015]. This number, according to the Government, does not include the fifty-five applicants who counsel told the Court mistakenly received benefits pursuant to the revised DACA after February 16, 2015—the date the Order of Temporary Injunction was issued. Counsel for the Government voluntarily promised the Court that the applications granted after the February Injunction would be rescinded.

**THE COURT:**    Okay.  And then what is the -- I guess to preempt Mr. Oldham **[Counsel for the States]** when I ask him does he have any problem with that, he's going to want to know what's happening when?

**MS. HARTNETT:**    And we set this -- we did file yesterday afternoon, Your Honor.

**THE COURT:**    I can't find it.

**MS. HARTNETT:**    My apologies.

**THE COURT:**    No, no.  It's here.  I just buried it with all my paper.

**MS. HARTNETT:**    In that document [Motion for Extension of Time, Doc. No. 90] we reiterated that <u>no applications for the revised DACA -- this is not even DAPA -- revised DACA would be accepted until the 18th of February, and that no action would be taken on any of those applications until March the 4th</u>.

**THE COURT:**    And nothing is happening on DAPA?

**MS. HARTNETT:**    So the memorandum said that DAPA should be implemented no sooner than mid May, so DACA is really the first -- <u>the revised DACA is the first deadline</u>.

**THE COURT:**    Okay.  Then you can have until the 30th.

**MS. HARTNETT:**    Okay.  Thank you.

**THE COURT:**    Wait, wait.  You're being flagged.

**MS. HARTNETT:**    Oh, sorry.  Just to be clear, I meant no later than.  So the memorandum provides that by mid May, DAPA will be stood up.

**THE COURT:**    Okay.

**MS. HARTNETT:**    But the main -- the driver here would be –

**THE COURT:**    But as far as you know, nothing is going to happen in the next three weeks?

**MS. HARTNETT:**    <u>No, Your Honor.</u>

**THE COURT:**    Okay.  On either.

**MS. HARTNETT:**    <u>In terms of accepting applications or granting any up or down applications.</u>

      **THE COURT:** Okay.

      **MS. HARTNETT:** <u>For revised DACA, just to be totally clear.</u>[5]

[P.I. Hr'g Tr. 133–34 (emphasis added)].

      Just prior to the exchange quoted above, Plaintiffs' counsel made it clear during that same hearing that the States were seeking to enjoin "the series of executive actions that were taken on November 20, 2014," which would obviously include the revision to DACA increasing DACA's term from two to three years, effective November 24, 2015 (as expressly provided for in the 2014 DHS Directive). [P.I. Hr'g Tr. 91–92]. Counsel for the Government also understood this change to be a contested issue in the case, as evidenced by her statement during the injunction hearing:

> **MS. HARTNETT:** And just to be clear on that last point, . . . there's one directive that the plaintiffs are challenging in the complaint, and that both is directed toward the DAPA program, <u>but also is a expansion or revision of the DACA program</u>. So to the extent that there's a revision or expansion of the group that would be eligible to apply for that, <u>we do understand the plaintiffs to be challenging that</u>.[6]
>
> **THE COURT:** The increase in years?
>
> **MR. OLDHAM:** Your Honor –

---

[5] Thus, the Government's attorneys affirmatively assured the Court that applications for revised DACA (which includes the change from two-year-renewable terms to three-year terms) were not being accepted until mid-February (and action on those applications would not be taken until March). While counsel admitted that these extensions were done pursuant to the 2014 DHS Directive in the "Advisory" [*see* Doc. No. 176 at 1], the Government now seems to take the position that the three-year extensions given on and after November 24, 2014, to 2012 DACA recipients were actions somehow not taken pursuant to the revised DACA terms contained in the 2014 DHS Directive. This position is disingenuous. Nevertheless, even if it were true, the passage quoted here indicates a distinct lack of candor. If counsel knew three-year renewals pursuant to the 2014 DHS Directive were being granted (even if counsel viewed these actions as falling outside the umbrella of the irreparable harm claimed by the States), counsel should have disclosed these facts instead of telling the Court that nothing would happen prior to February 18, 2015.

[6] Construing this last sentence in the light most favorable to the Government, to the extent counsel was somehow mentally subdividing the group of putative beneficiaries under the 2014 DACA revisions (and defining the "group" not involved in this case as recipients of 2012 DACA relief applying for renewals), counsel should have been forthright about this. At no time did counsel for either side exclude the 2012 DACA recipients who would be eligible for the three-year renewal under the 2014 DHS Directive from what was being challenged in this case. It is—and was—abundantly clear that the 2014 DHS Directive <u>in full</u> is at issue.

> **MS. HARTNETT:** They ask to have you direct and enjoin, and that directive would allow the revisions to the DACA program that we described in our brief.[7]

[*Id.* at 91].

Clearly, if a "clarification" on any ongoing actions taken by the DHS was ever necessary, which of course it was, this was the time. Silence here, and then later during the scheduling discussion, was misleading. Whether by ignorance, omission, purposeful misdirection, or because they were misled by their clients, the attorneys for the Government misrepresented the facts. The Court, relying on counsels' representations, not only gave the Government extra time for its briefing, but it also took February 18, 2015, as the agreed-upon date by which to rule on the motion for a temporary injunction.

The specific document to which the Government's attorney referred in her request for more time during the injunction hearing was the Motion for Extension of Time to File a Response to Plaintiffs' Preliminary Injunction Reply [Doc. No. 90 (filed on January 14, 2015)]. In that Motion, counsel stated:

> Plaintiffs will not be prejudiced by the two-week extension sought in this Motion, because U. S. Citizenship and Immigration Services (USCIS) does not intend to entertain requests for deferred action under the challenged policy until February 18, 2015, and even after it starts accepting requests, it will not be in a position to make any final decisions on those requests *at least* until March 4, 2015.

[Doc. No. 90 at 3 (emphasis in original)].

Four weeks earlier, in response to a question by Plaintiffs' counsel as to whether any activity pursuant to the 2014 DHS Directive would occur between December 19, 2014, and the anticipated January 9, 2015 hearing,[8] counsel for the Government told the Court:

---

[7] The Government describes the Directive in its brief as "revis[ing] three aspects of DACA . . . . Second, it extended the period of DACA from two to three years." [Doc. No. 38 at 29].

[8] The preliminary injunction hearing was originally scheduled for January 9, 2015.

> **THE COURT:** Okay. Ms. Freeny, do you anticipate that happening?
>
> **MS. FREENY [Counsel for the Government]:** No, I do not, your Honor. The agency was directed to begin accepting requests for deferred action I believe beginning sometime in -- by mid-February but even after that we wouldn't anticipate any decisions on those for some time thereafter. <u>So there -- I really would not expect anything between now and the date of the hearing.</u>[9]

[Hr'g Tr. 10–11, Dec. 19, 2014].

As stated earlier, 2012 DACA only provided for two-year terms for both original applications and renewal applications. If 108,081 individuals received renewals for three-year terms, those renewals could only have been granted pursuant to the 2014 DHS Directive (containing the revised DACA), which is the very Directive at issue in this case. That is the same Directive that the Government, when it was seeking more time to file a response, told this Court:

> [N]o applications for the revised DACA -- this is not even DAPA -- revised DACA would be accepted until the 18th of February, and that no action would be taken on any of those applications until March the 4th.

[P.I. Hr'g Tr. 133]. This representation was made even as the Government was in the process of granting over 100,000 three-year renewals under the revised DACA. In response to this representation, counsel for the States agreed to a schedule more favorable to the Government, and the Court granted the Government's request not only to file a sur-reply,[10] but also to have additional time to do so. The States now argue that they would have sought a temporary restraining order, but for the Government's misrepresentations. A review of the Chronology of Events, attached as an appendix to this Order, certainly lends credence to the States' claims.

---

[9] Again, there was no mention that the DHS was already awarding three-year extensions under the 2014 DHS Directive to previous 2012 DACA recipients.

[10] Filing a sur-reply is not an automatic right. The Court's local rules do not anticipate any additional or supplemental filings after the motion, response, and reply are filed. When a party requests briefing beyond the motion, response, and reply, the Court must determine whether, in the interests of justice, the party should be granted leave to do so. *See* L.R. 6D.

The explanation by Defendants' counsel for their conduct *after the fact* is even more troublesome for the Court. Counsel told the Court during its latest hearing that she was unaware that these 2014 DACA amendments were at issue until she read the Court's February 16, 2015 Order of Temporary Injunction and Memorandum Opinion and Order (referred to jointly as the "February Opinion"). [Hr'g Tr. 16, Mar. 19, 2015]. Counsel then claimed that the Government took "prompt" remedial action. This assertion is belied by the facts. Even if one were to assume that counsel was unaware that the 2014 DACA amendments in their entirety were at issue until reading this Court's February Opinion, the factual scenario still does not suggest candor on the part of the Government. The February Opinion was issued late in the evening on February 16, 2015 (based on the representation that "nothing" would happen on DAPA or revised DACA until at least February 18, 2015). As the February Opinion was finalized and filed at night, counsel could not have been expected to review it until the next day; yet, for the next two weeks, the Government did nothing to inform the Court of the 108,081 revised DACA approvals. Instead, less than a week later, on February 23, 2015, the Government filed a Motion to Stay and a Notice of Appeal. Despite having had almost a week to disclose the truth—or correct any omission, misunderstanding, confusion, or misrepresentation—the Government did *not* act promptly; instead it again did nothing. Surely, an advisory to this Court (or even to the Court of Appeals) could have been included in either document filed during this time period. Yet, counsel for the Government said nothing.

Mysteriously, what *was* included in the Government's February 23, 2015 Motion to Stay was a request that this Court rule on the Motion "by the close of business on Wednesday, February 25 . . . ." —in other words, within two days. [Doc. No. 150 at 7]. Had the Court complied with this request, it would have cut off the States' right to file any kind of reply. If this

Court had ruled according to the Government's requested schedule, it would have ruled without the Court or the States knowing that the Government had granted 108,081 applications pursuant to the revised DACA despite its multiple representations to the contrary. While this Court is skeptical that the Government's attorneys could have reasonably believed that the DACA amendments contained in the 2014 DHS Directive were not at issue prior to the injunction hearing on January 15, 2015, this Court finds it even less conceivable that the Government could have thought so after the January 15, 2015 hearing, given the interplay between the Court and counsel at that hearing. Regardless, by their own admission, the Government's lawyers knew about it at least as of February 17, 2015. Yet, they stood silent. *Even worse, they urged this Court to rule before disclosing that the Government had already issued 108,081 three-year renewals under the 2014 DACA amendments despite their statements to the contrary.*

Another week passed after the Motion to Stay was filed and still the Government stood mute. On February 24, 2015, this Court gave the States until 5:00 p.m. on March 3, 2015, to file a reply to the Motion to Stay. Still, the Government's lawyers were silent. The States filed their response on March 3, 2015, at 4:46 p.m. CST. Finally, after waiting two weeks, and after the States had filed their reply, the Government lawyers filed their Advisory that same night at 6:57 p.m. CST. Thus, even under the most charitable interpretation of these circumstances, and based solely upon what counsel for the Government told the Court, the Government knew its representations had created "confusion," but kept quiet about it for two weeks while simultaneously pressing this Court to rule on the merits of its motion. At the March 19, 2015 hearing, counsel for the Government repeatedly stated to the Court that they had acted "promptly" to clarify any "confusion" they may have caused. But the facts clearly show these

9

statements to be disingenuous. The Government did anything but act "promptly" to clarify the Government-created "confusion."

Section 3.3 of the ABA Model Rules of Professional Conduct and Section 3.03 of the Texas Disciplinary Rules of Professional Conduct (which are incorporated as the standards for conduct in the Southern District of Texas pursuant to its Local Rules―Appendix "A" Rule 1(B)) require a lawyer to act with complete candor in his or her dealings with the Court. Under these rules of conduct, a lawyer must be completely truthful and forthright in making representations to the Court. Fabrications, misstatements, half-truths, artful omissions, and the failure to correct misstatements may be acceptable, albeit lamentable, in other aspects of life; but in the courtroom, when an attorney knows that both the Court and the other side are relying on complete frankness, such conduct is unacceptable.

Any number of federal judges, given this misconduct, would consider striking the Government's pleadings. *See, e.g.*, *Tesco Corp. v. Weatherford Int'l, Inc., et al.*, No. 4-08-2531 (S.D. Tex. Aug. 25, 2014). Under different circumstances, this Court might very well do so. The Court, however, finds that the issues at stake here have national significance and deserve to be fully considered on the merits by the Fifth Circuit Court of Appeals and, in all probability, the Supreme Court of the United States. If this Court were to strike the Government's pleadings at this juncture, the case would be over. The Plaintiffs would prevail by default. The Court finds at the present time that the ends of justice would not be served by striking pleadings in this case.[11] Such a ruling would not only penalize those with an interest in the outcome, but would more importantly penalize the country, which needs and deserves a resolution on the merits.

---

[11] This Court's ruling that it will not strike the Government's pleadings at this stage does not bar such a sanction in the future should the facts and law warrant that action.

That does not necessarily leave this Court impotent to fashion an appropriate remedy or sanction. Nevertheless, before it does so, it must first be able to determine the extent to which remedial action or sanctions are appropriate, if at all. Consequently, this Court hereby partially grants the States' Motion for Early Discovery.

The Court agrees with counsel for the Government that discovery at this stage of the case may be the exception, not the norm. The facts, as recounted above, certainly establish exceptional circumstances created by the Government that may ultimately require an exceptional remedy. At a minimum, however, Defendants have created special circumstances that necessitate further investigation. The Court finds that good cause exists for the pursuit of tailored discovery.

The Court orders the attorneys for the Government to file, complete with courtesy copies to the Court and Plaintiffs, the following: (i) any and all drafts of the March 3, 2015 Advisory [Doc. No. 176], including all corresponding metadata and all other tangible items that indicate when each draft of the document was written and/or edited or revised; and (ii) a list of each person who knew about this Advisory, or about the DHS activity discussed therein, and each person who reviewed or approved its wording or filing, as well as the date and time when each person was apprised of this document and/or its contents, or of the DHS activity that is the subject matter thereof. No documents, electronic mails, texts, communications, or tangible items (including without limitation all computer records, hard drives, and servers) of any kind that deal with the Advisory or the subject matters discussed in the Advisory, whether or not owned by the Government, are to be destroyed or erased. While this Court does not foresee any privilege problems impacting the merits of this case, given that a ruling on the merits of the Government's

Motion to Stay is being issued simultaneously with this Order, any privileged material shall be filed *in camera* with a privilege log supplied to the Court and opposing counsel.

The Government has until **April 21, 2015**, to comply with this Order. Following their review of the documents produced, the Plaintiff States shall file with the Court a list of any further discovery that they may deem necessary, with a brief summary of why that discovery is relevant. The States have until **May 1, 2015**, to do so. The Government shall have until **May 8, 2015**, to respond to the States' request. The Court will then consider those requests and issue an appropriate order as promptly as its schedule allows.

Signed this 7th day of April, 2015.

                                                       _____
                                                     Andrew S. Hanen
                                                     United States District Judge

# Appendix

**Chronology of Events**

The States' contention that they would have sought a temporary restraining order is quite credible when one views a timeline of the pertinent events in this matter:

1.  *November 20, 2014*   2014 DHS Directive (with the revised DACA, including the new, three-year terms) issued.

2.  *November 24, 2014*   Unbeknownst to the Court (or Plaintiffs), the DHS begins granting three-year DACA extensions pursuant to the revised DACA terms contained in the 2014 DHS Directive's amendments to DACA.

3.  *December 3, 2014*   Original Complaint filed. [Doc. No. 1].

4.  *December 4, 2014*   Motion for Preliminary Injunction filed. [Doc. No. 5].

5.  *December 9, 2014*   First Amended Complaint filed (additional plaintiffs added). [Doc. No. 14].

6.  *December 19, 2014*   Teleconference between Court and attorneys for both sides. (Government attorney tells the Court: "The agency was directed to accept requests . . . by mid-February but even after that we wouldn't anticipate any decisions on those for some time thereafter. So there -- <u>I really would not expect anything between now and the date [January 9, 2015] of the hearing</u>.") (The hearing was rescheduled at the request of the parties to January 15, 2015.)

7.  *December 24, 2014*   Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Preliminary Injunction filed. [Doc. No. 38].

8.  *January 7, 2015*   Plaintiffs' Reply in Support of Motion for Preliminary Injunction filed. [Doc. No. 64].

9.  *January 14, 2015*   Motion for Extension of Time to Respond to Plaintiffs' Reply filed by the Government. ("Plaintiffs will not be prejudiced by the two-week extension sought in this Motion, because <u>U.S. Citizenship and Immigration Services (USCIS) does not intend to entertain requests for deferred action under the challenged policy until February 18, 2015</u>, and even after it starts accepting requests, it will not be in a position to make any final decisions on those requests *at least* until March 4, 2015.") [Doc. No. 90].

10.  *January 15, 2015*   Hearing on the preliminary injunction. Counsel for the Government stated, in pertinent part, the following:

    (a) "[N]o applications for the revised DACA -- this is not even DAPA -- <u>revised DACA would be accepted until the 18th of February and that no action would be taken on any of those applications until March the 4th</u>."

i.

|     |                              |                                                                                                                                                                                                                                                                         |
|-----|------------------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|     |                              | (b)  In response to a question by the Court about whether any activity was going to happen on either revised DACA or DAPA in the next three weeks, Counsel for the Government stated:  "No, Your Honor . . . In terms of accepting applications or granting any up or down applications . . . <u>For revised DACA, just to be totally clear.</u>" |
| 11. | *February 16, 2015*          | Court issued Order of Temporary Injunction and Memorandum Opinion and Order.  [Doc. Nos. 144 & 145].                                                                                                                                                                      |
| 12. | *February 23, 2015*          | Government's Notice of Appeal to the Fifth Circuit filed.  [Doc. No. 149].                                                                                                                                                                                                |
| 13. | *February 23, 2015*          | Government's Motion to Stay Injunction (requesting an expedited ruling from this Court by February 25, 2015) filed.  [Doc. No. 150].                                                                                                                                      |
| 14. | *February 23, 2015*          | States' Advisory (requesting time to respond to Government's Motion to Stay Injunction) filed.  [Doc. No. 151].                                                                                                                                                           |
| 15. | *February 24, 2015*          | Court ordered States to respond to Motion to Stay by specified deadline. [Doc. No. 156].                                                                                                                                                                                  |
| 16. | *February 27, 2015*          | Sheriff Joe Arpaio's (*amicus curiae*) Motion to Show Cause filed.  [Doc. No. 160].  (This Motion was subsequently denied by the Court.)                                                                                                                                  |
| 17. | *March 3, 2015* <br> *(4:46 p.m. CST)* | States' Response in Opposition to Government's Motion to Stay filed. [Doc. No. 175].                                                                                                                                                                                      |
| 18. | *March 3, 2015* <br> *(6:57 p.m. CST)* | Government's Advisory (revealing that over 100,000 three-year extensions had been granted pursuant to DACA revisions contained in the 2014 DHS Directive) filed.  [Doc. No. 176].                                                                                         |
| 19. | *March 4, 2015*              | Government's (Procedural) Advisory (noting that it will not respond to the States' Response, and requesting an expedited ruling by March 9, 2015) filed.  [Doc. No. 180].                                                                                                 |
| 20. | *March 5, 2015*              | States' Opposed Motion for Early Discovery filed.  [Doc. No. 183].                                                                                                                                                                                                        |
| 21. | *March 6, 2015*              | States' Supplement to Motion for Discovery filed.  [Doc. No. 188].                                                                                                                                                                                                        |
| 22. | *March 9, 2015*              | Court ordered hearing on States' Motion for Discovery and Government's March 3, 2015 Advisory.                                                                                                                                                                            |
| 23. | *March 19, 2015*             | Hearing held on pending motions.                                                                                                                                                                                                                                          |
| 24. | *March 21, 2015*             | Government's Response in Opposition to States' Motion for Discovery filed.  [Doc. No. 207].                                                                                                                                                                               |
| 25. | *March 23, 2015*             | States' Reply in Support of Motion for Discovery filed.  [Doc. No. 209].                                                                                                                                                                                                  |