IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, ET AL., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL NO. B-14-254 |
| | § | |
| UNITED STATES OF AMERICA, ET AL., | § | |
| Defendants. | § | |

## SUPPLEMENTAL ORDER

On April 7, 2015, this Court issued an Order denying the Government's Motion to Stay [Doc. No. 225]. That Order cited statements made by the President to the effect that there would be consequences for any Executive Branch employee who did not follow the requirements of the November 20, 2014 DHS Directive, and instead sought to enforce the Immigration and Naturalization Act (hereinafter the "INA"), which in essence requires that individuals who are the subject of that Directive be placed in removal proceedings. Those statements by the President were relevant to the Court's ruling on the Motion to Stay because they served to affirm the finding that the Executive Branch was abdicating its duty to enforce this country's immigration laws.

The Court supplements its Order solely to acknowledge the existence of congressional testimony that confirms the President's statements. The Director of Immigration and Customs Enforcement, Sarah Saldaña, testified before the House Judiciary Committee on April 14, 2015. Her testimony reiterated that any officer or agent who did not follow the dictates of the 2014 DHS Directive would face the entire gamut of possible employee sanctions, including termination.[1] While this Court had no reason to doubt President Obama's statements, and while the Government

---

[1] *See Oversight of U.S. Immigration and Customs Enforcement: Hearing Before the House Judiciary Committee*, 114th Cong. (Apr. 14, 2015) (statement of Sarah R. Saldaña, Director, U.S. Immigration and Customs Enforcement), *available at* http://judiciary.house.gov/index.cfm/2015/4/hearing-oversight-of-u-s-immigration-and-customs-enforcement.

has assured the Court that it can rely on what the President says, the Court issues this Supplemental Order to denote that the President's statements have now been reaffirmed under oath by the very person in charge of immigration enforcement.[2]

In its February Opinion, the Court found standing on multiple bases, one of which was the Government's abdication of its duty to enforce the INA. As previously explained in detail, this ruling is supported by case law from the Fifth Circuit, the D.C. Circuit, and the Supreme Court. Of particular interest is the D.C. Circuit's opinion in *Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973) (*en banc*). In that case, brought by citizens, taxpayers, and others, the Government did not abandon enforcement of the Civil Rights Act; rather, it sought to enforce the law by soliciting voluntary compliance. The Court held that merely seeking voluntary compliance was an abdication of the Government's duty to enforce the law. The Government in *Adams* had argued that its actions were justified by its inherent prosecutorial discretion and were therefore not reviewable. The D.C. Circuit first noted that the "agency discretion" exception to the Administrative Procedure Act is "narrow." *Id.* at 1162. The Court then found that abdication of a statutorily-imposed duty makes the action (or non-action) reviewable. It stated the following:

> More significantly, this suit is not brought to challenge HEW's decisions with regard to a few school districts in the course of a generally effective enforcement program. <u>To the contrary, appellants allege that HEW has consciously and expressly adopted a general policy which is in effect an abdication of its statutory duty.</u> We are asked to interpret the statute and determine whether HEW has correctly construed its enforcement obligations.
>
> A final important factor distinguishing this case from the prosecutorial discretion cases cited by HEW is the nature of the relationship between the agency and the institutions in question. HEW is actively supplying segregated institutions with federal funds, contrary to the expressed purposes of Congress. <u>It is one thing to say the Justice Department lacks the resources necessary to locate and prosecute every civil rights violator; it is quite another to say HEW may affirmatively continue to</u>

---

[2] Although the Court has been advised that it may rely on the President's statements, it also recognizes that the President was speaking in a political, "town hall" setting as opposed to a formal proceeding. Unlike the President's remarks, the statements made by Director Saldaña (a party-defendant in this case) were official, sworn testimony.

>channel federal funds to defaulting schools. The anomaly of this latter assertion fully supports the conclusion that Congress's clear statement of an affirmative enforcement duty should not be discounted.
>
> * * *
>
>[I]t is clear that a request for voluntary compliance, if not followed by responsive action on the part of the institution within a reasonable time, does not relieve the agency of the responsibility to enforce Title VI by one of the two alternative means contemplated by the statute. A consistent failure to do so is a dereliction of duty reviewable in the courts.

*Id.* at 1162-63 (emphasis added).

Just like HEW giving federal funds to those violating the civil rights laws in *Adams*, the DHS in this case is giving a variety of rewards to individuals violating the country's immigration laws. This general policy of affirmatively awarding benefits is not merely an exercise of prosecutorial discretion. The Government has announced, and has now confirmed under oath, that it is pursuing a policy of mandatory non-compliance (with the INA), and that any agent who seeks to enforce the duly-enacted immigration laws will face sanctions—which could include the loss of his or her job.[3] If the solicitation of voluntary compliance (questioned by taxpayers who are rarely accorded standing) equates to abdication, certainly mandatory non-compliance by the Government (questioned by twenty-six states) does as well.

In the presence of clear abdication of the law by the Government—a law that is only enforceable by the Government and outside the province of the states—the Plaintiff-States have standing to bring this suit.

Signed this 8th day of May, 2015.

_____<br>
Andrew S. Hanen<br>
United States District Judge

---

[3] This testimony is also relevant to other issues in this case, including the fact that it confirms the evidence, already found by this Court to be probative, that DHS employees have no real discretion to exercise in this area.