

**U.S. Department of Justice**

Civil Division

_____

*Washington, DC 20530*

July 17, 2015

**VIA E-MAIL**

Angela V. Colmenero
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
angela.colmenero@texasattorneygeneral.gov

       RE:    *Texas v. United States*, Case No. 14-cv-254 (S.D. Tex.)

Dear Ms. Colmenero:

      This letter follows your letter of July 6, 2015, and our conversation of Wednesday, July 15, 2015. As we have previously discussed, Defendants are hereby providing certain information as part of our ongoing meet-and-confer process.

      As discussed Wednesday and further described below, Defendants are willing to provide information to resolve all of Plaintiffs' outstanding discovery requests (with most of that information provided below). Based on that information, and the Court's July 7 Order requiring the parties to address any resolution of the 108,081 pre-injunction approvals in the July 31 joint status report, we believe the next step is for Plaintiffs to clearly set forth their position on what would constitute appropriate "resolution" of those 108,081 grants. As set forth below, we request that you provide us with your position no later than next Wednesday, July 22, 2015.

**I.    DHS Has Completed Its Internal Fixes.**

      DHS has identified and implemented aggressive plans for taking corrective action for both the 2128 previously identified post-injunction issuances (discussed in the May 7 Advisory), as well as the approximately 500 post-injunction re-mailings (discussed in the July 9 Advisory). Those plans are set forth in two Directives from the Department of Homeland Security to U.S. Citizenship and Immigration Services, which I provided to you on July 15, 2015, and which were filed with the Court on that same date. *See* ECF No. 283.

      Your letter of July 6, 2015, requested confirmation that all 2128 individuals have been provided with a two-year EAD, instructed to return the invalid three-year EAD, and been updated in the SAVE system to reflect a two-year term. As described in the July 10 Directive, those steps have been completed for all 2128 individuals. Additionally, as a result of Defendants' actions both before and after the July 10 Directive, the latest daily report suggests that approximately 1500 invalid three-year EADs have been accounted for—meaning that the invalid three-year EAD has been returned to DHS, the individual has certified that they are

unable to return the three-year EAD for good cause (*e.g.*, it was lost, destroyed, etc.), or DHS has determined that the individual did not receive the three-year EAD (*e.g.*, it was returned as undeliverable, etc.). We will continue to provide updates of that number, including as part of the July 31 status report to the Court.

With respect to the approximately 500 post-injunction re-mailings, based on current data, DHS's best calculation indicates such number to be 484 post-injunction re-mailings. Pursuant to the July 14 Directive, DHS is undertaking an expedited, accelerated process of remediation. As of today, DHS has updated USCIS's records to reflect two years (rather than three years) of deferred action and employment authorization for all of these individuals; issued corrected two-year EADs to all of those individuals; and sent an initial notification to all of those individuals requiring the return of the invalidated three-year EADs. DHS continues to update USCIS's systems, including the systems that determine the responses to SAVE queries, to reflect two years (rather than three years) of deferred action and employment authorization. DHS anticipates that the USCIS systems that determine the responses to SAVE queries will be updated within the next week.

We will continue to update you on the progress of these corrective actions during this meet-and-confer process, and in connection with the parties' July 31 joint status report.

## II. Defendants Will Provide Information to Resolve All of Plaintiffs' Outstanding Discovery Requests.

In my letter of June 19, 2015, we provided a state-by-state breakdown of the 2128 individuals residing in Plaintiff states, and information regarding the number of SAVE queries for those individuals residing within Texas. Following our discussion of Wednesday afternoon, set forth below is additional information you have requested. In short, we are providing, or are willing to provide, information in response to all of your outstanding discovery requests.

### a) SAVE Queries for Plaintiff States for 2128 Post-Injunction Issuances

The following table sets forth, on a state-by-state basis for the Plaintiff States, DHS's current analysis of queries submitted to SAVE by each state's driver's license office, through July 13, 2015, for the 2128 individuals previously identified. The numbers include results where the SAVE Program Office provided a response on or after February 16, 2015, based on an employment authorization validity period that was greater than two years. These queries do not indicate whether they resulted in the issuance of driver's licenses by a state. The below numbers do not include SAVE queries from other state agencies, or for other non-driver's license purposes (*e.g.*, state identification cards).

| State | Total Queries | Individuals Queried |
|---|---|---|
| AL | 6 | 3 |
| AR | 5 | 4 |
| AZ | 0 | 0 |

| | | |
|---|---|---|
| FL | 31 | 31 |
| GA | 67 | 39 |
| ID | 0 | 0 |
| IN | 7 | 6 |
| KS | 2 | 2 |
| LA | 2 | 1 |
| ME | 0 | 0 |
| MI | 5 | 5 |
| MS | 2 | 2 |
| MT | 0 | 0 |
| NC | 22 | 17 |
| ND | 1 | 1 |
| NV | 10 | 7 |
| OH | 5 | 4 |
| OK | 0 | 0 |
| SC | 1 | 1 |
| SD | 7 | 4 |
| TN | 9 | 9 |
| TX | 81[*] | 69[*] |
| UT | 14 | 12 |
| WI | 10 | 8 |
| WV | 2 | 1 |
| **Total** | **289** | **226** |

---

[*] These numbers have been reduced by 1 from the numbers provided in the June 19, 2015 letter (which were 82 and 70). At the time of that letter, it was unclear whether one individual had been queried in SAVE by the Texas Department of Public Safety, and thus the individual was included in both counts out of an abundance of caution. It has since been determined that no SAVE query occurred for this individual when the individual had an employment authorization validity period that was greater than two years, and thus the numbers have been reduced to 81 and 69.

**b) State-by-State Breakdown for 484 Post-Injunction Re-Mailings**

The following table sets forth a state-by-state breakdown for the currently identified 484 post-injunction re-mailings, based on the individual's state of residence:

| State | Individuals |
|:---:|:---:|
| AL | 2 |
| AR | 3 |
| AZ | 20 |
| CA | 111 |
| CO | 9 |
| CT | 3 |
| DE | 1 |
| FL | 24 |
| GA | 14 |
| ID | 1 |
| IL | 39 |
| KS | 9 |
| KY | 1 |
| LA | 2 |
| MA | 5 |
| MD | 7 |
| MI | 4 |
| MN | 2 |
| MO | 1 |
| NC | 15 |
| NE | 5 |
| NH | 1 |

Case 1:14-cv-00254 Document 285-4 Filed on 07/31/15 in TXSD Page 5 of 12

Page 5 of 12

| | | |
|---|---|---|
| NJ | 10 |
| NM | 5 |
| NV | 7 |
| NY | 20 |
| OH | 6 |
| OK | 2 |
| OR | 13 |
| PA | 2 |
| PR | 3 |
| RI | 2 |
| SC | 4 |
| SD | 1 |
| TN | 3 |
| TX | 96 |
| UT | 5 |
| VA | 6 |
| WA | 10 |
| WI | 10 |
| **Total** | **484** |

### c) SAVE Queries for 484 Post-Injunction Re-Mailings

The following table sets forth, on a state-by-state basis for the Plaintiff States, DHS's current analysis of queries submitted to SAVE by each state's driver's license office, through July 13, 2015, for the 484 currently identified individuals who were re-mailed a three-year EAD post-injunction. The numbers include results where the SAVE Program Office provided a response on or after February 16, 2015, based on an employment authorization validity period that was greater than two years. These queries do not indicate whether they resulted in the issuance of driver's licenses by a state. The below numbers do not include SAVE queries from other state agencies, or for other non-driver's license purposes (*e.g.*, state identification cards).

| State | Total Queries | Individuals Queried |
|---|---|---|
| AL | 2 | 1 |
| AR | 4 | 3 |
| AZ | 0 | 0 |
| FL | 14 | 13 |
| GA | 16 | 11 |
| ID | 0 | 0 |
| IN | 0 | 0 |
| KS | 8 | 6 |
| LA | 0 | 0 |
| ME | 0 | 0 |
| MI | 3 | 3 |
| MS | 0 | 0 |
| MT | 0 | 0 |
| NC | 26 | 9 |
| ND | 0 | 0 |
| NE | 1 | 1 |
| NV | 5 | 4 |
| OH | 3 | 3 |
| OK | 0 | 0 |
| SC | 5 | 5 |
| SD | 0 | 0 |
| TN | 1 | 1 |
| TX | 49 | 44 |
| UT | 5 | 4 |
| WI | 9 | 7 |

| | | |
|---|---|---|
| WV | 0 | 0 |
| **Total** | **151** | **115** |

### d) State-by-State Breakdown for 108,081 Pre-Injunction Approvals

The following table sets forth a state-by-state breakdown for the currently identified 108,081 pre-injunction approvals,[*] based on the individual's state of residence:

| State | Total |
|---|---|
| AA | 8 |
| AK | 10 |
| AL | 603 |
| AR | 921 |
| AZ | 4,096 |
| CA | 28,347 |
| CO | 2,621 |
| CT | 701 |
| DC | 77 |
| DE | 217 |
| FL | 3,747 |
| FM | 1 |
| GA | 3,534 |
| GU | 3 |
| HI | 52 |
| IA | 412 |

---

[*] Because the 108,081 figure is based on *approvals*, the vast majority of the 2128 previously identified individuals are encompassed within the 108,081 figure (*i.e.*, because the vast majority of the 2128 individuals were approved for three-year terms of deferred action and employment authorization prior to the injunction, but their EADs were issued and mailed after the injunction, *see* Neufeld Decl. (ECF No. 256-2) ¶ 19). The same is true of all of the 484 individuals who were approved prior to the injunction, but whose EADs were re-mailed after the injunction.

| | |
|---|---|
| ID | 512 |
| IL | 6,214 |
| IN | 1,185 |
| KS | 1,046 |
| KY | 524 |
| LA | 320 |
| MA | 891 |
| MD | 1,705 |
| ME | 5 |
| MI | 948 |
| MN | 921 |
| MO | 461 |
| MP | 3 |
| MS | 228 |
| MT | 13 |
| NC | 2,936 |
| ND | 15 |
| NE | 524 |
| NH | 52 |
| NJ | 2,963 |
| NM | 795 |
| NV | 1,193 |
| NY | 5,011 |
| OH | 607 |
| OK | 880 |
| OR | 1,865 |

| | |
|---|---|
| PA | 780 |
| PR | 23 |
| RI | 170 |
| SC | 1,065 |
| SD | 36 |
| TN | 881 |
| TX | 21,282 |
| UT | 1,447 |
| VA | 1,473 |
| VI | 2 |
| VT | 2 |
| WA | 2,528 |
| WI | 1,105 |
| WV | 17 |
| WY | 103 |
| **Total** | 108,081 |

### e) <u>SAVE Queries for 108,081 Pre-Injunction Approvals</u>

Your letter of July 6, 2015 also requested SAVE query information for the 108,081 pre-injunction approvals. As discussed on Wednesday, compiling this SAVE information for such a large universe could impose a significant burden on DHS. Specifically, obtaining exact numbers can require some case-by-case review of individual files in order to determine whether an individual was queried through SAVE at a time when the individual possessed an EAD with a validity period of greater than two years.

Nonetheless, DHS is willing to provide approximate SAVE query information for the 108,081 pre-injunction approvals in each of the Plaintiff States. These approximations will significantly decrease the burden on DHS, but will still provide the Plaintiff States with sufficient information to estimate the cost of potential corrective actions being considered. DHS will provide this information as soon as possible, but no later than July 29, 2015.

### f)   **Personally Identifiable Information.**

In your letter of July 6, 2015, you requested "some form of personally identifiable information" for the post-injunction individuals.  As discussed Wednesday afternoon, Defendants are willing to provide the Plaintiff States with personally identifiable information, subject to an appropriate protective order, with regard to the 2128 and 484 individuals identified above.

During our phone call Wednesday afternoon, you suggested two potential types of personally identifiable information: (1) an EAD number, or other input used for querying the SAVE system, to allow the Plaintiff States to evaluate the cost of potentially correcting driver's licenses; and (2) individuals' names and addresses, to allow the Plaintiff States to evaluate the cost of potentially correcting any other professional licenses or other state benefits that individuals may have received.  Defendants are willing to provide both sets of requested information, subject to an appropriate protective order, and notwithstanding our concern that Plaintiffs still have not articulated the rationale for why this sensitive information is necessary.

First, with respect to EAD numbers, each individual's EAD contains two different numbers—the alien registration number (or "A Number"), and a card number that corresponds to the I-765 form submitted by an individual (what we will refer to as the "Receipt Number").  For purposes of fulfilling your discovery request as soon as possible, Defendants are willing to provide both the A Number and the Receipt Number for these approximately 2600 individuals, subject to an appropriate protective order.  We believe this information should provide Plaintiffs with all necessary information to decide whether to undertake corrective action with respect to driver's licenses.

Second, with respect to your request for names and addresses, Defendants are likewise willing to provide this information subject to an appropriate protective order.  As discussed on Wednesday's phone call, however, we continue to believe that Plaintiffs have not established any basis for requesting this information.  Specifically, aside from driver's licenses, Plaintiffs have not identified (a) any other licenses or other state benefits at issue; and (b) the potential corrective action being considered by Plaintiffs based upon an individual's EAD being converted from three years down to only two years.

We understand your position to be that you do not intend to expend the resources necessary to identify all of the potential licenses or other state benefits that could be affected by issuance of a three-year EAD.  If Plaintiffs are unwilling even to *identify* those licenses and other state benefits, then *a fortiori* you do not intend to undertake any corrective actions with respect to those licenses or state benefits (and thus do not require any additional personally identifiable information for purposes of evaluating potential corrective actions).

Nonetheless, for purposes of resolving all of your outstanding discovery requests, Defendants are willing to provide the requested names and addresses for the approximately 2600 individuals, subject to an appropriate protective order.  In short, DHS is willing to provide, subject to an appropriate protective order, for the approximately 2600 individuals (1) those individuals' A Numbers and Receipt Numbers; and (2) names and addresses.

We will be in touch with you early next week to discuss the specific terms of the necessary protective order. In general, however, the protective order would prohibit the information from being publicly disclosed, or used in any way except in accordance with Plaintiffs' stated rationale for needing this information—*i.e.*, to evaluate the cost of potential corrective actions being considered. In the event that any of the Plaintiff States decide that they wish to undertake such corrective action, negotiation of a separate protective order would be necessary. We look forward to discussing with you next week the specific terms of this initial protective order.

### III. Next Step for the July 31 Status Report:  Discussion of Potential Resolution of the 108,081 Pre-Injunction Three-Year Terms.

Based on the above provision of information, we believe that Defendants have now satisfied all of Plaintiffs' outstanding discovery requests (or have pledged to satisfy those requests). *See* Plaintiffs' Letter of July 6, 2015 at 2. During our conversation on Wednesday, you agreed that the above issues were the only outstanding requests. We look forward to finalizing these issues and reporting on them in the July 31 joint status report to the Court.

Also in connection with the July 31 joint status report, and as discussed on our phone call Wednesday afternoon, we believe that the Court's July 7 Order requires the parties to file on July 31 a statement regarding potential resolution of the 108,081 pre-injunction grants. *See* ECF No. 281 at 1 ("The parties are to file a status report with the Court describing . . . any resolution with regard to the approximately 108,800 individuals who were granted benefits pursuant to the 2014 DHS Memorandum between the date of that Memorandum and this Court's injunction.").

As stated on Wednesday's phone call, Defendants are actively considering this issue. To inform our consideration and decisionmaking, we would like to know Plaintiffs' views on what an appropriate resolution would be for the 108,081 pre-injunction grants.

On Wednesday, you stated that you needed to discuss further with your co-counsel before providing Plaintiffs' position on an appropriate resolution. For purposes of making our meet-and-confer process as efficient as possible, particularly given the July 31 deadline for our joint status report, we would like to know the following:

(a) Whether Plaintiffs intend to request that the Court order Defendants to convert the 108,081 pre-injunction three-year terms to two-year terms;

(b) Whether Plaintiffs believe that any alternative actions would constitute an appropriate resolution; and

(c) The rationale underlying any proposals for resolution of the 108,081.

In order to have time to consider any such proposals in advance of the July 31 filing deadline, we request that you provide us answers to these questions by next Wednesday, July 22, 2015 (one week after we raised this issue with you on our telephone call of July 15, 2015).

We look forward to hearing from you on the above issues, and we will continue to discuss on our end as well. Please do not hesitate to contact me if you have any questions.

Sincerely,

Daniel Schwei