# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| _____ ) | |
| STATE OF TEXAS, et al.                                  ) | |
|                                                                        ) | |
|                                      Plaintiffs,       ) | |
|                                                                        )   No. 1:14-CV-254 | |
|                              v.                             ) | |
|                                                                        ) | |
| UNITED STATES OF AMERICA, et al.             ) | |
|                                                                        ) | |
|                                      Defendants.     ) | |
| _____) | |

## <u>DECLARATION OF  LEÓN RODRÍGUEZ</u>

I, León Rodríguez, hereby make the following declaration with respect to the above captioned matter.

1)       I am the Director of United States Citizenship and Immigration Services ("USCIS").  I was confirmed by the United States Senate on June 24, 2014, and began serving on July 9, 2014. USCIS has a workforce of approximately 18,500 people, including both federal employees and contractors, and handles approximately 8 million matters each year.

2)       I have spent a large portion of my professional career as a state and Federal prosecutor. Throughout my career I have also served in a number of leadership positions in Federal and local government.

3)       I make this declaration on the basis of my personal knowledge and information made available to me in the course of my official duties.  This declaration supplements the representations and commitments made in my declaration of May 15, 2015, and is also intended to be responsive to the Court's order of July 7, 2015.  The statements made in this declaration are based on USCIS's current understanding of information available at this time.

## Introduction

4)      As I will further describe below, USCIS has taken corrective action regarding (1) the approximately 2100 three-year Employment Authorization Documents[1] ("EADs") described in the Defendants' May 7 Advisory that were inadvertently issued, instead of two-year EADs, following the Court's February 16, 2015, preliminary injunction (hereinafter, "post-injunction three-year EADs")[2] and (2) the approximately 500 *re-mailed* three-year EADs described in the July 9 Advisory (hereafter "re-mailed EADs") that were originally mailed prior to the injunction, but returned to USCIS as undeliverable, and then re-mailed following the injunction.[3]  All of the individuals in these cases were approved for deferred action and employment authorization under the eligibility guidelines of the 2012 DACA policy.  The May 15, 2015, declaration of Donald W. Neufeld describes the circumstances surrounding the issuance of the post-injunction three-year EADs, and his declaration of July 31 describes the circumstances surrounding the re-mailed EADs.  This declaration describes the corrective actions undertaken by USCIS with respect to both sets of three-year EADs, and the results of those actions as of this date.

5)      In both the cases involving post-injunction three-year EADs and the cases in which three-year EADs were re-mailed, USCIS has taken the following actions:

---

[1] A sample EAD is attached as Attachment L.

[2] For ease of reference, although a small number of the EADs discussed in this declaration were issued for terms greater than two years but not exactly three years, the term "three-year EADs" will be used rather than "EADs with validity periods of greater than two years."  Determining the exact number of the group of approximately 2100 EADs issued after the injunction is not a straightforward task, but USCIS's best calculation of the number at this time is 2128.

[3] As of July 9, USCIS's calculation of the number of three-year re-mailed EADs was 484.  However, as a result of its ongoing checks and corrective action, USCIS has recently identified an additional three-year re-mailed EAD which was turned in by the recipient at a USCIS field office.  USCIS is taking additional corrective action to convert the newly-identified individual's term of deferred action and employment authorization to two years in USCIS's databases, including the SAVE and E-Verify systems.

- Converted each individual's term of deferred action and employment authorization, as reflected in the official records system used to track and update the actions taken in individual cases, from three years to two years.

- Issued new two-year approval notices (for deferred action and employment authorization) to each of these individuals.

- Issued replacement two-year EADs to each of these individuals.

- Updated the electronic system used by SAVE[4] and E-Verify[5] to reflect the updates to each of these individuals' records, so that state agencies and employers can accurately verify their two-year terms of deferred action and employment authorization.

6)   USCIS also has taken steps not ordinarily used in its operations to seek return of the three-year EADs in these cases.  Specifically, USCIS has mobilized agency personnel across the country, including at all four USCIS service centers, all 83 field office locations, and all 70 stand-alone application support centers.  USCIS has taken the following actions to contact individuals in order to secure the return of all the post-injunction and re-mailed three-year EADs:

- Made 4674 phone calls to 1511 individuals and their representatives.

- Responded to 20,197 phone calls to a "hotline" established for purposes of this effort at the USCIS National Customer Service Center.

- Sent more than 2990 text messages to individuals and their representatives.

- Sent 1627 emails to individuals and their representatives.

- Hosted 13 stakeholder engagements with over 1300 participants to raise community awareness regarding return of the three-year EADs.

---

[4] The SAVE Program is a service that helps federal, state and local benefit-issuing agencies, institutions, and licensing agencies to obtain immigration information about benefit applicants so only those entitled to benefits receive them.

[5] E-Verify is an Internet-based system that allows businesses to determine the eligibility of their employees to work in the United States.

3

- Conducted 721 home visits by 306 USCIS officers from over 50 field office locations.

- Issued notices that USCIS intended to terminate individuals' deferred action and employment authorization if they did not return their three-year EADs.

7)      As a result of these efforts, by July 30, 2015, 2117 individuals in the 2128 identified cases involving post-injunction three-year EADs, and 473 individuals in the 484 identified cases involving re-mailed EADs returned their three-year EADs, attested to their inability to do so for good cause, or their EADs were otherwise accounted for by USCIS.  On July 31, 2015, USCIS terminated the deferred action and employment authorization of the remaining 11 individuals in the cases involving post-injunction three-year EADs, and the remaining 11 individuals in the cases involving re-mailed EADs.  The deferred action and employment authorization of these individuals were terminated even though they remained eligible for two-year terms.  USCIS also has updated its records in the CLAIMS 3 system, discussed below, and is currently doing so for systems used by SAVE and E-Verify, to reflect that those individuals' deferred action and employment authorization has been terminated.

**Corrective Action Regarding the Approximately 2100 Post-Injunction EADs**

8)      In its May 7 Advisory, the Government informed the Court that approximately 2100 individuals had been issued three-year EADs after the Court issued the preliminary injunction. Based on its best analysis, USCIS identified 2128 cases in which post-injunction three-year EADs were issued and took the actions described below in those cases.

9)      As discussed in the Government's May 7 Advisory and further explained in the Government's supplement thereto on May 15, the cases involving post-injunction three-year EADs included both "EAD-pending" cases and "manual error" cases.  As explained in the May 15 Declaration of Donald Neufeld, the EAD-pending cases are those in which three-year terms of deferred action and employment authorization had been approved (under the 2012

4

DACA guidelines) before entry of the preliminary injunction, but for which EADs had not yet been printed and prepared for mailing by that time; those three-year EADs were inadvertently issued notwithstanding USCIS's intention to hold them pending conversion of the authorized terms from three to two years.  The manual error cases are a group in which deferred action and/or employment authorization was approved after the injunction (under the 2012 DACA guidelines), but due to manual errors, USCIS systems indicated approved terms of three years, not two, resulting in the issuance of three-year EADs.  To prevent human errors of this kind in the future, USCIS technically modified the relevant system, known as CLAIMS 3, to prevent USCIS employees (effective June 1, 2015) from entering terms of deferred action or employment authorization greater than two years.

10)     As detailed in my May 15 declaration, when the Court issued its February 16, 2015 injunction prohibiting implementation of any and all aspects of the Secretary's 2014 Deferred Action Guidance, I immediately directed that USCIS take a series of steps (beginning less than two hours after the injunction was issued) to ensure that the agency complied with the Court's order.  On February 17, 2015, I informed Secretary of Homeland Security Jeh Johnson of the steps USCIS had taken.  The Secretary approved of these measures and directed that I continue to closely oversee USCIS's compliance efforts.  On February 20, the Secretary followed this instruction with a memorandum to senior DHS officials directing that the Department and its components continue to suspend implementation of both DAPA and modifications to DACA, and to ensure compliance with the Court's order.  See Attachment A.

11)     Among the steps taken at my direction, USCIS put a hold on still-pending EADs where three-year terms of deferred action and employment authorization had already been approved prior to the injunction.  However, as described in Mr. Neufeld's May 15 declaration, these pending three-year EADs were inadvertently released beginning on February 20, 2015 because

006

(unknown to USCIS operational personnel) they had not been removed from but only "paused" in the automated production queue. Once post-injunction approval of two-year EADs began again, the production queue also resumed and the three-year EADs pending in the queue were printed and mailed. When USCIS discovered the unintended issuance of these three-year EADs in early May 2015, I informed the Secretary, who agreed that the situation must be addressed and directed me to ensure that USCIS took prompt corrective action. The Secretary—who also requested the DHS Inspector General to investigate and report on the circumstances under which these three-year EADs were issued—has consistently supported the corrective measures (discussed below) that USCIS undertook at my direction.

12)     USCIS determined that it would take the following actions to correct the post-injunction issuance of these approximately 2100 three-year EADs:  (i) convert the term of deferred action and employment authorization in each individual's official paper case file, and in each individual's electronic case record in CLAIMS 3, from three to two years; (ii) issue each individual a replacement two-year EAD; (iii) update the electronic systems used by SAVE and E-Verify to reflect each individual's two-year term of deferred action and employment authorization; and (iv) retrieve the three-year EADs.  To understand the time and effort required to complete a number of these tasks, a brief description of the process by which USCIS's records are updated, EADs are produced, and the relationship between the production of EADs and updates to the systems that support SAVE and E-Verify is helpful.

13)     CLAIMS 3 is an electronic records system used by USCIS service centers to track and update the actions taken in individuals' cases.  CLAIMS 3 reflects USCIS's official decisions, documented in individuals' paper files (known as "A-Files"), on individuals' requests for deferred action under DACA and any associated applications for employment authorization.  All other databases, systems, or documentation that reflect an individual's deferred action or

employment authorization, including the approved term, are based on the data contained in CLAIMS 3. Regardless of any prior documentation or notifications an individual may have received, USCIS considers CLAIMS 3 to be the authoritative system of records documenting individuals' deferred action and/or work authorization. An EAD, by contrast, is evidence of an individual's work authorization but does not itself confer such authorization.

14)     To update the authorized term of an individual's deferred action or employment authorization in USCIS records, a USCIS service center adjudicator—an Immigration Service Officer ("ISO")—must re-open the individual's case in the CLAIMS 3 system and make the necessary change. Once the term of an individual's deferred action and employment authorization is updated by an ISO, a separate notice of action is generated for each by the CLAIMS 3 system and mailed to the individual to inform him or her of the change. These notices are generated at and mailed from USCIS service centers.

15)     When an update is made in CLAIMS 3 to an individual's term of employment authorization, an EAD reflecting the change is also produced and mailed to the individual. EADs are produced at USCIS card-production facilities, which are separately located from USCIS service centers. The process begins with the electronic transfer of approval data and relevant biometric and biographic information from the CLAIMS 3 system to one of USCIS's card-production facilities, for actual production and mailing via the Integrated Card Production System ("ICPS"). The CLAIMS 3 system sends an order to print an EAD, along with data relevant for production of the EAD, through the ICPS interface to the National Production System ("NPS"). To allow time for the service centers to conduct quality-control checks and provide time to make any associated corrections, the NPS holds the order for a 48-hour period (excluding holidays and weekends) prior to moving to physical production. After the 48-hour hold, the card production request is transmitted to the Card Personalization System Tech Refresh

7

("CPSTR") system, the automated print queue that manages card printing at the USCIS card-production facility. The card is then printed, checked for quality, and packaged for mailing to the individual. CLAIMS 3 and the card-production systems (e.g., NPS, CPSTR) indicate whether an EAD has been issued (that is, physically produced), but do not indicate whether the EAD has actually been mailed.

16)     Once an EAD is issued, that information is electronically transmitted via the CPSTR, NPS, and ICPS systems to the CLAIMS 3 system, which electronically updates the individual's record to reflect that a new EAD has been produced. Once the update in CLAIMS 3 occurs, the system then transfers information regarding the individual's employment authorization, including the approved term, to other systems that interface (as noted below) with the electronic system used by the SAVE Program and E-Verify, the Verification Information System ("VIS"). VIS, a composite information system incorporating data from various DHS and other Government databases, is the underlying information technology platform that supports SAVE and E-Verify. With respect to SAVE, the relevant information is first electronically transferred from CLAIMS 3 to the USCIS Central Index System ("CIS"), after which a copy of select data fields are transferred to VIS. With respect to E-Verify, the relevant information is electronically transferred from CLAIMS 3, to NPS, to the Customer Profile Management System ("CPMS"), and to VIS. Because of the time required for these systems to complete the electronic transfer of data from CLAIMS 3 to VIS, it may take up to a week before updates to records in the CLAIMS 3 system are reflected in VIS. In the event that information about an individual is not available in CIS or CPMS, USCIS employees will reference other DHS systems, and if necessary will check the official paper file, the A-File, thus increasing the time required to complete an update.

17)     Within days of learning that three-year EADs had been issued after the injunction, USCIS began updating the records of these cases in CLAIMS 3 to reflect two-year (rather than three-

year) terms of deferred action and employment authorization.  The process of re-opening and updating the EAD-pending cases was completed by June 29.  (The manual-error cases that were identified on March 18 were updated on that very same day in March.)  As the term of deferred action and employment authorization in each of the post-injunction cases was converted to two years, CLAIMS 3 automatically ordered production of an EAD reflecting the same two-year term.  Because of the multi-step production process explained in paragraphs 14-15, above, it takes approximately three to five days following a production order before an EAD is mailed.  USCIS began issuing and mailing the replacement two-year EADs in mid-May.  While the majority of updated two-year EADs were produced with no incident, a small number of EADs took more time to produce because, for example, they were rejected for quality-control issues (e.g., poor image quality).  When an EAD is rejected, that information is sent back from CPSTR through NPS and ICPS to CLAIMS 3.  Only then can an ISO resolve the issue that led to rejection of the EAD, upon which CLAIMS 3 re-orders the EAD for production, thereby restarting the multi-step EAD production process.  Furthermore, because of fraud-prevention protocols embedded in NPS, that system will not process multiple card-production requests for a single individual within a 72-hour span, thus further extending the time required to produce an EAD when it has been initially rejected for quality-control reasons.  Among the post-injunction cases, a small number of replacement two-year EADs were rejected on multiple occasions, thus significantly extending the time required to produce and mail them.  The last updated two-year EAD for the post-injunction three-year EAD cases was issued on July 8, although 2114 of the 2128 had been issued by June 22.

18)     Once an updated two-year EAD was issued in each case, notification was electronically transferred to CLAIMS 3, which then transferred the individual's employment authorization data (including the updated term) to the VIS system that supports SAVE and E-Verify (see paragraph

16, above).  By June 22, at least 2085 individuals' information in SAVE, and 2113 individuals'
information in E-Verify, had been updated to reflect two years of deferred action and
employment authorization instead of three.  Some anomalies required case-by-case review and
resolution by service center, information technology, and Enterprise Services Directorate
("ESD") Verification Division.[6]  By July 9, all post-injunction three-year EAD cases had been
updated in the VIS system used by SAVE and E-Verify.  Thus, by this date, all pertinent
electronic records maintained by USCIS, including all of those relied on by state agencies and
employers for verification purposes, reflected two-year terms of deferred action and employment
authorization for the individuals in this entire group of cases.

19)      USCIS also undertook extensive efforts to retrieve the invalid three-year EADs even
though the individuals' records had been updated.  As noted above, in USCIS's view, the EAD is
only evidence of someone's work authorization, whereas the information contained in USCIS
records systems and files are the official records of the agency's decisions and individuals' work
authorization, on which information contained in or provided by other systems, such as SAVE
and E-Verify, is based.  Therefore, in the normal course, when an EAD has been erroneously
issued, USCIS typically requests that the individual return the erroneously issued card to USCIS,
but there is no precedent, in recent memory, of USCIS taking steps to physically retrieve a card,
such as through a home visit upon an individual's failure to return an EAD.

20)      In this instance, to begin the process of collecting EADs, following updates to the
CLAIMS 3 system, USCIS sent letters to individuals tailored to the circumstances of their cases.
The letters generally advised them that USCIS had re-opened their cases and approved them for

---

[6] ESD provides identity, immigration status and employment authorization information to
appropriate customers and stakeholders, for example, among others, federal, state and local
benefit-issuing agencies, institutions, and licensing agencies that use SAVE and employers that
use E-Verify.

two years of deferred action and employment authorization rather than the previously approved three-year terms, and that the individuals should return any three-year approval notices still in their possession.  Because individuals accorded deferred action are not required to keep such notices, and because notices of employment authorization do not constitute proof of employment authorization, USCIS did not require the return of such approval notices.  Further, the letters advised the individuals that USCIS would be sending them replacement two-year EADs, that the individuals must return the three-year EADs upon receipt of the replacement EADs, and that failure to do so may result in adverse action.  To encourage individuals' compliance, USCIS did not require the return of the three-year EADs until the individuals received their replacement two-year EADs.  USCIS also enclosed self-addressed, postage-paid envelopes in which to return the three-year EADs to facilitate their return, another step USCIS does not normally take. USCIS completed mailing these notices in June.  An example of these letters is attached as Attachment B.

21)     By July 2, 2015, USCIS had received 1135 of the post-injunction three-year EADs. Starting on July 6, 2015, USCIS sent follow-up warning letters to the remaining individuals who had not returned their three-year EADs.  These letters instructed individuals that they must return their three-year EADs by July 17, 2015, or certify good cause for not possessing their EADs (e.g., because they had been lost, stolen, destroyed, or never received).  The follow-up letters also emphasized that failure to return the three-year EADs (or to certify good cause for not doing so) may affect the individuals' deferred action and employment authorization.  USCIS again enclosed postage-paid envelopes with these letters in which individuals could return their three-year EADs or submit their good-cause certifications.  An example of these follow-up letters is attached as Attachment C.

22)     To facilitate return of the three-year EADs, the follow-up warning letters also included the toll-free number of USCIS's National Customer Service Center ("NCSC") and advised individuals that they could call this number with any questions they had about the instructions in the letters.  Beginning on July 7, the calls were routed to customer-service representatives who had been prepared specifically to provide callers with accurate information and responses to their questions.  While the NCSC is usually closed on weekends, USCIS staffed the NCSC on Saturday, July 25 specifically to handle calls from this population.  Between July 7 and July 30, USCIS received 20,197 calls related to the return of three-year EADs.

23)     On July 6, concurrent with sending out the follow-up warning letters and as a further means of contacting individuals to urge return of their three-year EADs, USCIS began gathering additional contact information for those individuals who had not yet returned their three-year EADs, including telephone numbers and email addresses,[7]  as well as telephone numbers and email addresses for representatives of those individuals where applicable. While much of this additional contact information could be retrieved electronically from CLAIMS 3, USCIS devoted considerable resources –22 USCIS employees spent over 290 hours – to obtain the remaining contact information by manually reviewing over 1350 Enterprise Document Management System ("EDMS") files.  EDMS is the electronic records system that stores scanned images of deferred action requests and employment authorization applications.

24)     Based on the process initiated on July 6, as discussed in paragraph 23, above, USCIS made in-person (not automated) telephone calls on July 9 and 10 to individuals who had not yet returned their three-year EADs.[8]  Representatives informed the contacted individuals that USCIS had issued them three-year EADs after the Court's injunction and had subsequently issued them

---

[7] The submission of a telephone number and an email address is not required when applying for deferred action or employment authorization.

[8] Telephone calls were made to individuals for whom a telephone number was available.

replacement two-year EADs.  The customer service representatives also informed these individuals that they must return their three-year EADs (or certify good cause for not doing so) by mail.  Further, representatives informed individuals that failure to return their three-year EADs (or to certify good cause for not doing so) may affect their deferred action and employment authorization.  Between July 9 and 10, USCIS made calls to 1026 individuals who had not yet returned their three-year EADs and their designated representatives.

25)    On July 10, 2015, Secretary Johnson issued a Directive requiring still further actions to be taken to retrieve the remaining three-year EADS, which he instructed USCIS to complete by July 31.  A copy of the Directive previously filed with the Court is attached as Attachment D.

26)    Specifically, Secretary Johnson directed USCIS to take the following steps, without intending to preclude other actions USCIS might lawfully take to retrieve the outstanding three-year cards, or to impact the ongoing meet-and-confer process with the States:  (1) by July 17 mail Notices of Intent to Terminate individuals' deferred action and employment authorization if they did not return their three-year EADs by July 30; (2) dispatch USCIS personnel to visit individuals' homes to retrieve their three-year EADs, or, in the alternative issue them notices with scheduled appointments to appear at USCIS field offices to surrender their EADs, but, in every case, by July 30 either (i) retrieve the three-year EAD; (ii) visit the individual's home address (as listed in USCIS records) for purposes of retrieving the three-year EAD; or (iii) receive from the individual a written certification that he or she does not have the three-year EAD in his or her possession because it was lost, stolen, destroyed, or due to other good cause; and (3) on July 31 terminate the deferred action and employment authorization of individuals whose three-year EADs had not been returned or otherwise accounted for.  The Secretary also directed USCIS to communicate with immigrant advocacy organizations and other suitable representatives about its plan of action for compliance with the Secretary's Directive in an effort

to ensure as many individuals as possible were provided clear and accurate information on compliance by July 31.

27)     On July 13, USCIS sent Notices of Intent to Terminate deferred action and employment authorization to the 887 remaining individuals from whom USCIS had not yet received their three-year cards, as well as to 381 representatives of those individuals.  The notices informed the individuals and their representatives that:  (i) USCIS had issued them three-year EADs after the Court issued its injunction; (ii) USCIS had sent them two previous notices instructing them to return their three-year EADs; (iii) USCIS had not received their three-year EAD or a response certifying good cause for not doing so; (iv) they must either return their three-year EAD or certify good cause for not doing so by visiting the nearest USCIS field office; (v) failure to return their three-year EADs (or to certify good cause for not doing so) would result in termination of their deferred action and employment authorization effective July 31, 2015; and (vi) failure to return their 3-year EADs, and subsequent termination of their deferred action and employment authorization, may be considered negative factors in weighing whether to approve any future requests they might make for deferred action or any other discretionary action.  A copy of the notice is attached as Attachment E.

28)     In an effort to secure the cooperation and/or assistance in collecting post-injunction three-year EADs from stakeholders, USCIS began on July 14 hosting regular stakeholder engagements to discuss USCIS's effort to secure the return of these three-year EADs.  Participating stakeholders included immigrant advocacy organizations, state and local government agencies, congressional staffers, and immigration law firms.  USCIS hosted thirteen stakeholder engagements with approximately 1300 participants.

29)     On July 16, in another unprecedented action for USCIS and in accordance with Secretary Johnson's directive, the USCIS Field Operations Directorate initiated a home visit program for

14

the purposes of facilitating the return of outstanding three-year EADs from the EAD-pending and manual error cases nationwide.[9]  A map showing the locations of the outstanding post-injunction three-year EADs as of July 16, some of which required hours of travel to reach, is attached as Attachment F.  Because of the unprecedented nature of this undertaking, USCIS had to immediately develop and implement a plan to visit hundreds of homes nationwide to collect EADs, without an existing cadre of personnel sufficient to meet the geographic coverage required for this nationwide level of effort.  Residential site visits initially began in Chicago, Los Angeles, Dallas, and Houston, the metropolitan areas with the highest concentration of unreturned three-year EADs.  To ensure efficiency and timely receipt of outstanding EADs, initial priority was further given to contacting individuals for whom USCIS did not have a current telephone number.  Each site visit was conducted by a team of two USCIS officers who regularly conduct site visits as part of their daily duties and are specifically trained in outreach to USCIS customers and officer safety.  To the extent possible, each team had at least one bilingual officer.  USCIS officers conducting the home visits emphasized the possibility of termination of deferred action and employment authorization for failure to return an individual's three-year EAD (or to provide a good-cause certification).  Further, USCIS Field Operations Directorate established an internal hotline to address any questions that arose while USCIS officers were conducting site visits.  USCIS officers conducting the visits recorded the results of each site visit, including whether contact was made with the holder of the three-year EAD, whether the EAD was returned, and, if applicable, whether the individual provided written certification of good cause for not returning the EAD.

---

[9] Although USCIS has a well-staffed Fraud Detection and National Security directorate, USCIS is not specifically authorized to have sworn law enforcement officers as part of its staff.  The primary area in which USCIS conducts home visits is to verify marriages in family-based visa cases.  USCIS does not ordinarily utilize home visits for the purpose of document retrieval.

30)      USCIS on July 16 sent text messages to individuals from whom USCIS had not yet received their returned three-year EADs, as well as their designated representatives, as still another means of alerting individuals that they needed to return their three-year EADs.  The text message alerted them that they needed to call the USCIS NCSC or visit a field office to obtain urgent information about their work authorization and DACA.  USCIS also began sending daily text messages on July 23 to the individuals from whom USCIS had not yet received their three-year EADs, as well as their designated representatives.

31)      Beginning on July 17, USCIS field offices in 83 locations provided special walk-in service between the hours of 9:00 am and 3:00 pm for DACA recipients to appear and return their invalid EAD or submit a certification that they are unable to return the invalid EAD for good cause.

32)      On July 21, as another method of alerting individuals that they needed to return their three-year EADs, USCIS sent emails[10] to the individuals from whom USCIS had not yet received their three-year EADs, as well their designated representatives.  The email alerted them that they needed to immediately return their three-year EADs or their deferred action and employment authorization would terminate effective July 31.  The email further provided instructions for returning their three-year EADs or certification of good cause by visiting a USCIS field office or by mail.  USCIS continued to send follow-up emails through July 29.  An example of these emails is attached as Attachment G.

33)      As a result of these efforts, USCIS succeeded by July 30 in retrieving 1906 of the 2128 three-year cards.  In addition, USCIS received certifications in another 98 cases that the cards had been lost, stolen, destroyed, or never received.  Based on certifications received, USCIS reviewed its records and verified that in 102of the post-injunction three-year EADs were in fact

---

[10] Emails were sent to individuals for whom an email address was available.

16

never sent to the intended individuals.  Another 11 three-year EADs had been returned as

undeliverable by the U.S. Postal Service; USCIS will send two-year replacement cards to those

individuals for whom it may obtain current addresses.  In total, 2117 cards were retrieved or

otherwise accounted for by July 30, representing 99.5 percent of the three-year post-injunction

EADs.

34)     On July 31, as directed by the Secretary, USCIS terminated the deferred action and

employment authorization of the remaining 11 individuals who did not return their three-year

EADs or otherwise certify good cause for not doing so.  On July 31, USCIS mailed Termination

Notices to the 11 individuals informing them that:  (i) effective July 31, their deferred action and

all associated employment authorizations (including their recently issued two-year terms) were

terminated because USCIS had received neither their three-year EAD nor a certification from

them providing good cause for not doing so, (ii) they must return their two- and three-year EADs

to USCIS immediately; (iii) fraudulent use of their EADs could result in referral to law

enforcement authorities; and (iv) failure to return their two- and three-year EADs may be

considered a negative factor in weighing whether to approve any future requests for deferred

action or any other discretionary requests.

35)     Notwithstanding that USCIS has terminated deferred action and employment

authorization for these 11 individuals, USCIS plans to take the following actions after July 31:

(i) continue to receive outstanding EADs; (ii) establish a committee to determine targeted

additional efforts to effect collection of outstanding EADs; and, (iii) determine on a case-by-case

basis whether to restore deferred action and employment authorization for certain individuals

who return their three-year EAD late.

36)     As a result of these extraordinary efforts, outlined above, to motivate individuals to return

their three-year EADs, as well as aggressive efforts by USCIS to continue monitoring the DACA

caseload for any additional three-year EADs issued post-injunction, USCIS has preliminarily identified another small number of three-year EADs that were issued after the injunction.  An individual seeking to comply with our instructions to return invalid EADs recently visited a USCIS field office to turn in a three-year EAD that had been issued post-injunction; however, this EAD was on neither the list of post-injunction three-year EADs, nor the list of re-mailed EADs.  In addition, this individual's term of deferred action and employment authorization recorded in CLAIMS 3 was only two years.  USCIS immediately conducted research into this case and has preliminarily determined that, in the midst of the aggressive compliance efforts undertaken shortly after the injunction was issued, one information-technology specialist located at a service center converted the terms of deferred action and employment authorization for a group of cases, approved prior to the injunction, to two-year instead of three-year terms. Although this action successfully prevented three-year EADs from being produced in some cases, because CLAIMS 3 had not yet ordered their EAD card production, the EADs in the remaining cases, approximately 50, were already in the print queue, and were printed and mailed. Because CLAIMS 3 was already updated to show two-year terms in these cases, the query that was run in May to identify the number of three-year EADs produced post-injunction failed to identify this group of cases.  USCIS continues to research the situation to more fully understand why it occurred and to identify any other cases.  Nonetheless, where USCIS has confirmed that a three-year card was issued, USCIS has begun to take corrective action, including issuing two-year EADs, ensuring that SAVE and E-Verify are appropriately updated, and retrieving any three-year EADs that were in fact issued after the injunction.  As other cases are identified and confirmed, USCIS will take similar corrective action.

### Corrective Action Regarding the Re-Mailed EAD Cases

37)    As discussed in the Government's July 9 Advisory, USCIS discovered a group of cases in

which individuals had been approved for three-year terms of deferred action and employment

authorization, their three-year EADs had been mailed prior to the injunction but returned by the

U.S. Postal Service as undeliverable, and the EADs were then re-mailed after the injunction had

issued.  Based on its best analysis on July 9, USCIS identified 484 re-mailed EADs.  The

circumstances surrounding the post-injunction re-mailing of these three-year EADs are described

in more detail in the July 31 declaration of Donald Neufeld.  This declaration describes the

corrective actions USCIS has undertaken regarding these cases.

38)    Once it was discovered that these three-year EADs had been re-mailed after the

injunction, USCIS took prompt corrective action.  First, as discussed in Mr. Neufeld's July 31

declaration, a supervisory hold was placed in CLAIMS 3 on cases in which three-year EADs had

been issued prior to the injunction, as a preventive measure against their being re-mailed should

any of them be returned as undeliverable at some future point.  To prevent the re-mailing of

undeliverable three-year EADs that have already been returned and are currently in storage,

USCIS has identified, sequestered, and (to render them unusable) clipped the corners of all such

EADs.

39)    In addition, USCIS determined that it should implement corrective action in these re-

mailing cases similar to the action it had taken in the cases of the post-injunction three-year

EADs.  These actions included converting each individual's term of deferred action and

employment authorization in CLAIMS 3 from three to two years; issuing each individual an

updated two-year EAD; updating the VIS system that supports SAVE and E-Verify to reflect

two-year authorizations; issuing notices of intent to terminate individuals' deferred action and

associated employment authorization; and retrieving each individual's three-year EAD.

40)     As with the cases involving post-injunction three-year EADs, USCIS service centers started by individually converting the terms of deferred action and employment authorization in each of the cases of re-mailed EADs, as reflected in CLAIMS 3, from three years to two.  All 484 re-mailed EAD cases were updated in CLAIMS 3 by July 13.

41)     On July 14, Secretary Johnson issued a directive instructing USCIS to take the following additional corrective measures:  (1) immediately issue new approval notices and EADs to these individuals reflecting two years of deferred action and work authorization; (2) immediately update the SAVE and E-Verify systems to reflect their two-year terms of work authorization; (3) by July 17 mail Notices of Intent to Terminate to all individuals informing them that their deferred action and employment authorization would be terminated on July 31 if they had not returned their three-year EADs (or certified good cause for failing to do so) either by mail or by appearing at a USCIS field office; (4) make telephone calls to these individuals by no later than July 17 informing them that they had been sent Notices of Intent to Terminate; (5) dispatch USCIS personnel to visit the homes of these individuals to retrieve their cards, or, in the alternative, issue them notices with scheduled appointments to appear at a USCIS field office to surrender their cards, but, in every case, by July 30 (i) retrieve the three-year EAD; (ii) visit the individual's home address (as listed in USCIS records) for purposes of retrieving the three-year EAD; or (iii) receive from the individual a written certification that he or she does not have the three-year EAD in his or her possession because it was lost, stolen, destroyed or for other good cause; and (6) on July 31 terminate the deferred action and work authorization of those individuals whose three-year EADs have not been returned or otherwise accounted for.  The Secretary also directed USCIS to communicate with immigrant advocacy organizations and other suitable representatives its plan of action for compliance with this Directive to ensure their assistance and cooperation.  A copy of the Directive is attached as Attachment H.

42)      On July 15, USCIS sent Notices of Intent to Terminate deferred action and employment authorization to all the individuals in the 484 re-mailing cases, as well as to 286 representatives of those individuals.  The notices informed the individuals and their representatives that:  (i) USCIS had sent them EADs valid for longer than two years after the Court issued its injunction; (ii) their deferred action requests and employment authorization applications had been re-opened and approved for two years instead of three; (iii) USCIS had issued them updated two-year EADs; (iv) their three-year EADs were no longer valid and they must either return them or certify good cause for not doing so by visiting the nearest USCIS field office or by mailing their EADs or good-cause certifications to USCIS; (v) failure to return their  three-year EADs (or to certify good cause for not doing so) would result in termination of their deferred action and employment authorization effective July 31, 2015; and (vi) failure to return their three-year EADs, and subsequent termination of their deferred action and employment authorization, may be considered negative factors in weighing whether to approve any future requests they might make for deferred action or any other discretionary action.  In an effort to retrieve as many three-year EADs as possible before July 31, USCIS sent these notices before the issuance of the updated two-year approval notices for deferred action and employment authorization and two-year EADs in order to give individuals adequate time to comply with the notice.  A copy of the notice is attached as Attachment I.

43)      As directed by the Secretary, USCIS issued updated two-year EADs to all individuals in the 484 re-mailing cases by July 17.

44)      Once an updated two-year EAD was issued in each case, notification was electronically transferred to CLAIMS 3, which then transferred the individual's employment authorization data (including the updated term) to the VIS system that supports SAVE and E-Verify (see paragraph 15, above).  As of July 20, 470 of the 484 re-mailed EAD cases had been updated in the VIS

system used by SAVE and E-Verify.  The remaining 14 cases involved anomalies that had to be reviewed and resolved by ISOs, IT personnel, and ESD.  By July 27, USCIS had updated the VIS system supporting SAVE and E-Verify to reflect two-year terms of deferred action and work authorization for all 484 individuals.

45)     On July 16 and 17, in accordance with the Secretary's instructions, USCIS made in-person telephone calls to 334 individuals in the re-mailing cases.  USCIS representatives informed the contacted individuals that:  (i) USCIS had sent them EADs valid for longer than two years after the Court issued its injunction; (ii) their deferred action requests and employment authorization applications had been re-opened and approved for two-years instead of three; (iii) USCIS had issued them updated two-year EADs; (iv) their three-year EADs were no longer valid and they must return them (or certify good cause for not doing so) by visiting the nearest USCIS field office or by mailing the EADs (or good-cause certifications) to USCIS; and (v) failure to return their three-year EADs or to certify good cause for not doing so would result in termination of their deferred action and employment authorization effective July 31, 2015.

46)     USCIS's  engagement with immigrant advocacy organizations and other stakeholders, as discussed in paragraph 28 above, also addressed the effort to secure the return of the re-mailed three-year EADs, as well as the post-injunction three-year EADs.

47)     On July 16, USCIS also sent text messages to individuals, as well as their designated representatives, in the re-mailing cases for whom contact information could be located to alert them that they needed to call the NCSC or visit a field office to obtain urgent information about their work authorization and DACA.  USCIS continued sending text messages every weekday to the individuals from whom USCIS had not yet received their three-year EADs, as well as their designated representatives.

48)     On July 20, in accordance with Secretary Johnson's directive, USCIS extended the nationwide residential site visit program to include individuals in the re-mailing cases who had not yet returned their three-year EADs, for the purpose of either retrieving their EADs or obtaining written good-cause certifications for the failure to return them.  A map showing the locations of the re-mailed three-year EADs that remained outstanding as of July 20, some of which required hours of travel to reach, is attached as Attachment J.

49)     On July 21, as another method of alerting individuals that they needed to return their three-year EADs, USCIS sent emails to the individuals from whom USCIS had not yet received their three-year EADs and their designated representatives, where email addresses were identified.  The emails alerted them that they needed to immediately return their three-year EADs or their deferred action and employment authorization would terminate effective July 31. USCIS continued to send follow-up emails through July 29.  An example of these emails is attached as Attachment K.

50)     As a result of these efforts, USCIS succeeded by July 30 in retrieving 420 of the 484 re-mailed EADs, and received certifications from the individuals in another 39 cases that the cards had been lost, stolen, destroyed, or never received.  Another 14 three-year cards were returned as undeliverable by the U.S. Postal Service; USCIS will send two-year replacement cards to those individuals for whom it may obtain current addresses.  In total, 473 cards were retrieved or otherwise accounted for by July 30, representing 97.7 percent of the 484 re-mailed EADs.

51)     On July 31, as directed by the Secretary, USCIS terminated the deferred action and employment authorization of the remaining 11 individuals in the re-mailing cases who had not returned their three-year EADs or certified good cause for not doing so.  On July 31, USCIS mailed Termination Notices to the 11 individuals providing them notice that:  (i) effective July 31, their deferred action and all associated employment authorizations (including their recently

issued two-year terms) were terminated because USCIS had not received their invalid three-year EADs nor certifications of good cause for being unable to do so; (ii) they must return all EADs (including their recently issued two-year EADs) to USCIS immediately; (iii) fraudulent use of their EADs could result in referral to law enforcement authorities; and, (iv) failure to return their invalid EADs may be considered a negative factor in weighing whether to approve any future requests for deferred action or any other discretionary requests.

52)     As in the cases involving post-injunction three-year EADs, notwithstanding that USCIS has terminated deferred action and employment authorization for these 11 individuals in the re-mailing cases, , USCIS plans to take the following actions after July 31:  (i) continue to receive outstanding EADs; (ii) establish a committee to determine targeted additional efforts to effect collection of outstanding EADs; and, (iii) determine on a case-by-case basis whether to restore deferred action and employment authorization for certain individuals who return their three-year EAD late.

**Conclusion**

53)     USCIS is continuing its efforts to make sure that it has identified all cases in which individuals may have been erroneously approved for three-year terms of deferred action or employment authorization, and/or mailed EADs reflecting three-year terms of work authorization, after the Court's injunction was issued.  These efforts remain ongoing, and USCIS understands that ongoing verification is required to ensure that it has identified all cases that may require corrective action.  To the extent USCIS identifies additional cases in which three-year terms of deferred action and employment authorization were erroneously approved and EADs were erroneously issued or sent, after the injunction, it will take corrective action similar to that described above.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 31st day of July of 2015.

LEÓN RODRÍGUEZ