# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.* )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, *et al.* )<br>)<br>Defendants. )<br>) | No. 1:14-CV-254 |

### **DECLARATION OF DONALD W. NEUFELD**

I, Donald W. Neufeld, hereby make the following declaration with respect to the above captioned matter.

1. I am the Associate Director for Service Center Operations ("SCOPS") for U.S. Citizenship and Immigration Services ("USCIS"), a component within the U.S. Department of Homeland Security ("DHS"). I have held this position since January 2010. In this position, I oversee all policy, planning, management and execution functions of SCOPS. My current job duties include overseeing a workforce of more than 4,500 government and contract employees at the USCIS service centers. These service centers handle about four million immigration-related applications and requests annually, including all requests for deferred action under the Deferred Action for Childhood Arrivals ("DACA") process. I previously submitted declarations in this case on January 30, 2015, and May 15, 2015.

2. I make this declaration on the basis of my personal knowledge and information made available to me in the course of my official duties. The statements made in this declaration are based on USCIS's current understanding of information available at this time.

**Introduction**

3. This declaration describes the circumstances surrounding the approximately 500 three-year[1] Employment Authorization Documents ("EADs"), described in Defendants' July 9 Advisory, that were originally mailed prior to the Court's February 16, 2015 preliminary injunction, but returned to USCIS as undeliverable, and then re-mailed following the injunction (hereinafter "re-mailed EADs"). All of the individuals in these cases were granted deferred action and employment authorization before the Court's preliminary injunction, under the existing 2012 DACA eligibility guidelines.

4. After USCIS discovered in May 2015 that approximately 2100 individuals had been sent three-year EADs after the preliminary injunction, USCIS continued to undertake efforts to verify that all such cases had been identified. With that purpose in mind, in June 2015, the USCIS Office of Performance and Quality ("OPQ") was asked to review the data and confirm whether the approximately 2100 identified cases represented all cases in which three-year EADs had been sent after the injunction. During the course of its review, OPQ identified approximately 500 cases[2] in which three-year EADs had been *re-mailed* after the injunction. In each case, the EAD had been approved, printed, and mailed prior to the injunction, but was returned to USCIS as undeliverable and subsequently re-mailed to a different address after February 16, 2015.

---

[1] For ease of reference, although a small number of the Employment Authorization Documents ("EADs") discussed in this declaration were issued for terms greater than two years but not exactly three years, the term "three-year EADs" will be used rather than "EADs with validity periods of greater than two years."

[2] As of July 9, USCIS's calculation of the number of three-year EADs re-mailed was 484. However, as a result of its ongoing checks and corrective action, USCIS has recently identified an additional three-year re-mailed EAD which was turned in by the recipient at a USCIS field office. USCIS is taking additional corrective action to convert the newly-identified individual's term of deferred action and employment authorization to two years in USCIS's databases, including the SAVE and E-verify systems.

5. After discovering these re-mailed EADs, USCIS took a number of steps to prevent additional three-year EADs from being re-mailed in the future. USCIS service centers have identified and sequestered all other three-year EADs in their possession that were returned as undeliverable, clipped their corners, which is standard practice to identify EADs as invalidated, and placed them in locked storage in order to prevent re-mailing. Additionally, USCIS's Office of Information Technology ("OIT") has placed a "supervisory hold" on the electronic records of all cases in which three-year EADs were issued prior to the injunction, which prevents any action being taken in these cases without approval of a CLAIMS 3 user with supervisory permissions, who have been instructed that three-year EADs cannot be re-mailed.

6. As described in the July 31 Declaration of USCIS Director León Rodríguez, USCIS has also taken prompt corrective action with respect to recovering the re-mailed EADs.

## Background on the Processing of Returned Undeliverable Mail

7. In order to understand how these post-injunction re-mailings of three-year EADs occurred, it is necessary to understand generally how USCIS service centers process mail that is returned as undeliverable. This process applies to all EADs, issued on any basis, and thus is not specific to DACA or deferred action. This same process also applies to other cards issued by USCIS, such as Permanent Resident Cards.

8. To ensure consistency and maintain security, EADs and other cards issued by USCIS are printed and mailed at USCIS's two card-production facilities. EADs are not produced at, or by personnel located at, USCIS service centers. Nevertheless, while all EADs are printed at, and mailed from, USCIS card-production facilities, the return addresses printed on the envelopes are the addresses of the service centers that approved the underlying applications for employment authorization. For example, if the United States Postal Service ("USPS") is unable to deliver an EAD that was approved at the Nebraska Service Center, but printed and mailed from the card-

production facility in Corbin, Kentucky, the USCIS parcel containing the EAD will be returned to the Nebraska Service Center.

9.  USCIS envelopes are marked "Do Not Forward." Thus, even when USPS has a forwarding address for the intended recipient, USPS does not forward the USCIS parcel directly to that new address. Rather, it is returned to USCIS affixed with a yellow label that bears the intended recipient's forwarding address. This procedure is another safeguard intended to enhance the security and protect the integrity of cards produced by USCIS, and also allows USCIS to capture the individual's current address.

10. All mail returned to USCIS service centers is opened and sorted by contract employees working under USCIS direction. The contractors record the receipt of returned cards (including each returned card's identifying information) on a manifest, and convey both the received cards and the manifest to USCIS Records Management personnel at the service center.

11. Upon receipt of the cards, USCIS Records Management personnel ensure that all cards noted on the manifest have been accounted for. They then make an entry in each recipient's record in CLAIMS 3, noting that the recipient's card had been returned as undeliverable. CLAIMS 3 is the system used by USCIS service centers to electronically track and update the status of DACA recipients' cases, as well as many other types of cases that USCIS handles. The CLAIMS 3 system reflects the agency's official adjudication decision, whereas the EAD is merely evidence of that decision. Next, Records Management personnel at the service center attempt to locate a current address for the recipient. As noted above, in some cases USPS places a yellow label on the envelope with the recipient's forwarding address. If USPS has not included a forwarding address, Records Management personnel will search USCIS databases to determine if the recipient has notified USCIS of his or her new address. Once they have obtained a current address, Records Management personnel will place the EAD in a new envelope, and make

entries in CLAIMS 3 noting the recipient's new address and the fact that the card will be re-mailed. The card is then re-mailed to the recipient at the updated address, usually within one or two business days.

12. In cases where no forwarding addresses can be found, Records Management personnel will secure the cards in a locked cabinet, where they will be stored for up to one year. If during that time a current address for the recipient is obtained, Records Management personnel will place the EAD in a new envelope, make the appropriate updates in CLAIMS 3, and then re-mail the card. If at the end of one year the card is still in secure storage, Records Management personnel will conduct a final check within USCIS databases for a current address. If a new address is located, the card will be re-mailed and the recipient's record in CLAIMS 3 will be updated, as outlined above. If not, the card will be destroyed.

13. While Records Management personnel, who are responsible for re-mailing EADs and other secure documents, are located at USCIS service centers, they are not adjudicators and have no role in adjudicating applications for employment authorization or requests for relief of any kind, including deferred action, nor do they have authority to determine or adjust the validity periods of deferred action or work authorization.

## USCIS's Actions Following the Preliminary Injunction

14. On February 17, 2015, hours after the Court issued the preliminary injunction, Director Rodríguez issued an order that the agency take no further action to implement the enjoined policies. Among other specific instructions, USCIS leadership directed that the service centers suspend the approval of deferred action and/or employment authorization under DACA until further notice. Immediate steps were also taken after the injunction to prevent the issuance of three-year approval notices or EADs, even in cases where deferred action and employment authorization had already been approved prior to the injunction. The intent of these actions was

to halt new approvals of three-year terms of deferred action and employment authorization (and any associated three-year approval notices and EADs).  These instructions were conveyed, therefore, to service center adjudicators (and their supervisors) responsible for processing deferred action requests and applications for employment authorization, and to personnel at USCIS card-production facilities responsible for printing and mailing EADs.

15.  As discussed above, the Records Management personnel responsible for handling the process of re-mailing EADs are a separate group of employees who have nothing to do with the adjudication of requests for deferred action or employment authorization, or with the initial printing and/or mailing of newly produced EADs.  Thus, they did not receive the instructions given to service center adjudicators to stop DACA approvals, or to personnel at the card-production facilities to cease printing and mailing new three-year EADs.  Moreover, in the press of business to ensure that new three-year EADs were not issued after the injunction, USCIS leadership did not contemplate the scenario in which three-year EADs, which had already been issued and mailed before the injunction, could be returned as undeliverable, and then re-mailed after the injunction.  Nor was this issue raised to them by personnel who are closer to the performance of that activity.  Because of this oversight, Records Management personnel at the service centers were not issued an instruction directing them not to re-mail DACA-related three-year EADs.

## Discovery of the Re-Mailed Pre-Injunction Three-Year EADs

16. After USCIS discovered that some number of three-year EADs had inadvertently been printed and mailed after the injunction, notwithstanding USCIS's intention to hold them (as described in my May 15 Declaration), SCOPS identified approximately 2100 cases in which this had occurred.  SCOPS made this determination by querying CLAIMS 3 for cases with a history action code indicating that an EAD had been issued, or that production of the EAD had been

6

stopped, after February 16, 2015. Using these two history action codes, SCOPS identified the universe of cases in which CLAIMS 3 indicated that three-year EADs were issued (that is, physically produced) after the injunction.

17. In June 2015, as a part of the agency's ongoing efforts to verify that it had identified all three-year EADs issued after the injunction, USCIS requested OPQ—which, among other functions, collects and validates agency data for internal and external reporting—to review the data and queries relied on by SCOPS, and verify whether the cases identified by SCOPS represented the entirety of the cases in which three-year EADs were issued after the injunction.

18. In the course of its audit, OPQ designed its own electronic queries of CLAIMS 3 that included an additional history action code, indicating whether a card had been re-mailed after being returned as undeliverable, not simply the date when it was originally issued. On June 29, OPQ determined that there were cases in which three-year EADs had been approved, issued, and mailed prior to the injunction, but were then returned to USCIS as undeliverable and subsequently re-mailed to a new address after February 16, 2015. On July 9, USCIS's analysis of its then-available data indicated that there were 484 such EADs.

19. Once the post-injunction re-mailing of these three-year EADs was discovered, USCIS began prompt corrective action. Specifically, on Sunday, July 5, 2015, the Director issued an order to halt all re-mailings of undeliverable mail that may contain three-year EADs, and to begin reviewing measures to prevent re-mailings of three-year EADs in the future. On the morning of Monday, July 6, 2015, the service centers confirmed that they had received the Director's order and had suspended re-mailings until further notice. USCIS leadership subsequently narrowed the hold and instructed the service centers to resume re-mailing returned-as-undeliverable mail, with the exception of three-year DACA-related EADs.

20. In order to prevent three-year EADs that may be returned as undeliverable in the future from being re-mailed, on July 8, OIT placed "supervisory holds" on all cases in CLAIMS 3 where three-year EADs were issued before the injunction. The supervisory holds will prevent any action from being taken in the system for these cases unless the hold in a particular circumstance has been released by a CLAIMS 3 user with supervisory permissions; Records Management personnel with supervisory access have been instructed that three-year EADs cannot be re-mailed. In addition, SCOPS leadership has issued instructions that three-year EADs cannot be re-mailed.

21. To prevent the re-mailing of undeliverable three-year EADs that are currently in secure storage, Records Management personnel have identified, sequestered, and (to identify them as invalidated) clipped the corners of all such EADs. In those cases where new addresses for the recipients can be obtained before a year in storage has passed, the recipients' terms of deferred action and employment authorization will be converted from three to two years, and they will be issued replacement two-year EADs.

22. On July 9, 2015, Defendants filed an Advisory with the Court, reporting, *inter alia*, that approximately 500 three-year EADs that had been approved, issued, and mailed prior to the injunction were then returned as undeliverable and subsequently re-mailed to an updated address after the Court's entry of its injunction. As discussed further in the July 31 Declaration of Director Rodríguez, by July 9, DHS had already begun an expedited process of corrective action to retrieve these three-year EADs.

23. USCIS is continuing its efforts to identify all cases in which individuals were issued or mailed three-year EADs after the injunction. These efforts remain ongoing, and USCIS understands that ongoing verification is necessary to ensure that it has identified all cases that may require corrective action. To the extent USCIS identifies additional cases in which three-

9

year EADs were re-mailed after the injunction, it will take prompt corrective action similar to the actions described in the July 31 Declaration of Director Rodríguez.

[Remainder of page intentionally left blank.]

I declare under penalty of perjury that the foregoing is true and correct. Executed this 31 day of July of 2015.

_____
DONALD W. NEUFELD