# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

STATE OF TEXAS, et al.

        Plaintiffs,

v.

UNITED STATES OF AMERICA, et al.

        Defendants.

No. 1:14-cv-254

### DECLARATION OF R. GIL KERLIKOWSKE

I, R. Gil Kerlikowske, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Commissioner of U.S. Customs and Border Protection (CBP), which is a component within the U.S. Department of Homeland Security (DHS). I have held this position since March 7, 2014. My current work address is 1300 Pennsylvania Ave., N.W., Washington, D.C.

2. I am submitting this declaration in connection with the Court's Order of July 7, which directs me and the other individual defendants to appear at a hearing on August 19 concerning the Government's compliance with the Court's February 16 preliminary injunction. As explained in more detail below, as Commissioner of CBP, I have no responsibility for the compliance/remedial efforts at issue in the Court's Order, which involve U.S. Citizenship and Immigration Services (USCIS), and no first-hand knowledge of those

083

efforts. In addition, requiring my personal attendance at the hearing would take me away from my performance of my duties as the Commissioner of CBP.

3. I make this declaration on the basis of my personal knowledge as well as information made available to me in the course of my official duties.

4. The President appointed me as Commissioner on August 1, 2013, and I was confirmed by the U.S. Senate on March 6, 2014. Under 5 U.S.C. § 5314, the Commissioner of CBP is a Level III Presidential appointment.

5. Prior to my tenure as CBP Commissioner, I had approximately four decades of experience with law enforcement and drug policy. From 2009 to 2014, I served as the Director of the Office of National Drug Control Policy. From 2000 to 2009, I served as the Chief of Police for Seattle, Washington, and from 1998 to 2000 I served as Deputy Director for the U.S. Department of Justice Office of Community Oriented Policing Services. In addition, I served as the Police Commissioner of Buffalo, New York, from 1994 to 1998. I began my law enforcement career as a police officer in St. Petersburg, Florida, in 1972.

6. Following the creation of DHS by the Homeland Security Act of 2002, CBP was established by merging the legacy organizations of the U.S. Customs Service; major elements of the U.S. Immigration and Naturalization Service, including the Immigration Inspections Program; the U.S. Border Patrol; and the U.S. Department of Agriculture's Animal and Plant Health Inspection Service. Later, CBP added the Air and Marine Operations Division of U.S. Immigration and Customs Enforcement, and most recently, select elements of DHS's former U.S. Visitor and Immigrant Status Indicator Technology (US-VISIT).

7. The resulting unified Federal law enforcement agency now called CBP has become the Nation's first comprehensive border-security agency focused on securing our

country's borders while facilitating legal trade and travel. CBP secures the borders at and between ports of entry, preventing the admission of inadmissible aliens, removing aliens who are in the country unlawfully, and preventing the entry of illicit goods. CBP officers also protect our Nation's borders and safeguard national security by keeping criminal organizations, terrorists, and their weapons out of the United States while facilitating lawful international travel and trade.

8. By statute, my responsibilities as Commissioner of CBP include, among other things, preventing the entry of terrorists and the instruments of terrorism into the United States; securing the borders, territorial waters, ports, terminals, waterways, and air, land, and sea transportation systems of the United States, including managing and coordinating those functions at and between ports of entry; administering customs laws of the United States; and conducting the inspection of agricultural products entering the United States. To carry out these duties and responsibilities, as CBP Commissioner I oversee approximately 60,000 CBP employees.

9. I am familiar with the November 20, 2014, memorandum by the Secretary of Homeland Security, entitled *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who are the Parents of U.S. Citizens or Permanent Residents* ("November 2014 memorandum"). The bulk of that memorandum provides instruction to U.S. Citizenship and Immigration Services (USCIS), another component within DHS, for the implementation of new policies regarding Deferred Action for Childhood Arrivals (DACA), and implementation of a new initiative, Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA). The sole responsibility placed on CBP by the Secretary's November 2014 memorandum is to identify persons in CBP custody, as well as recently encountered individuals, who might be eligible for deferred action under the new DACA or DAPA guidelines (whom USCIS may then consider for deferred

085

action). The Secretary tasked USCIS, not CBP, with responsibility for the approval or denial of requests for deferred action and employment authorization under the two policies. USCIS, not CBP, was made responsible for issuing notices of approval of deferred action to individuals found to merit deferred action under the revised DACA and DAPA policies, and for issuing employment authorization documents (EADs) to those who qualify for and are approved by USCIS for employment authorization.

10. In sum, CBP was not tasked with adjudicating requests for deferred action under the new DACA or DAPA guidelines, nor was CBP tasked with adjudicating requests under the DACA guidelines announced in 2012. It is also not CBP's practice to issue notices of approval under DACA, and CBP does not determine the length of time for which deferred action under DACA will be accorded. Further, even outside of the context of DACA, CBP does not issue notices of approval for employment authorization, does not determine the length of any employment authorization, and does not issue EADs.

11. When the Court issued its February 16, 2015 injunction prohibiting implementation of the Secretary's November 2014 memorandum, I directed that CBP take a series of steps to ensure that the agency complied with the Court's order. On February 18, 2015, I issued an agency-wide directive advising the entire agency of the injunction and directing immediate compliance. The directive instructed all relevant personnel immediately (i) to cease any consideration of the new DAPA and the expanded DACA guidelines when processing individuals, (ii) not to attempt to determine whether individuals could request deferred action under the November 20, 2014 memorandum, and (iii) not to refer such individuals to USCIS. The Secretary also issued a February 20, 2015 memorandum to senior DHS officials directing that the Department and its components continue to suspend implementation of both DAPA and

the November 2014 changes to DACA, and to ensure compliance with the Court's order. CBP further responded to the injunction by revising its training materials, website, and other publicly-available resources to bring them into conformity with the injunction.

12. I am familiar with the Defendants' May 7 Advisory, in which the Government notified the Court that USCIS had issued approximately 2,000 three-year EADs instead of two-year EADs, to DACA recipients after the February 16 preliminary injunction was issued. I am also familiar with the Court's July 7, 2015 Order, in which the Court expressed concern that this situation had not yet been fully rectified, and instructed each of the DHS officials named as defendants in this case, including myself, to attend a hearing on August 19, 2015, and to be prepared to show why he or she should not be held in contempt of Court. As discussed below, as CBP Commissioner I do not have responsibility for, authority over, or personal knowledge about the matters raised in the Court's July 7 Order.

13. I am also familiar with the Defendants' July 9 Advisory, in which the Government notified the Court that USCIS had re-mailed after the injunction approximately 500 three-year EADs that had previously been issued before the injunction but had been returned as undeliverable. As discussed below, as CBP Commissioner I do not have responsibility for, authority over, or personal knowledge about this matter.

14. With the exception of identifying persons in CBP custody and other encountered individuals who may be eligible to request that they be considered for DACA or DAPA, CBP was assigned no role in the administration of the Secretary's November 2014 memorandum. Likewise, CBP does not accept, review, grant, deny, or otherwise process requests for deferred action or employment authorization under 2012 DACA (or renewals thereof). CBP does not issue notices of approval or EADs to DACA recipients. CBP does not create, maintain, or

update records systems under the control of USCIS that reflect or relate to recipients' deferred action or employment authorization. To my knowledge, those functions are exclusively performed by USCIS. Therefore, in my capacity as Commissioner of CBP, I did not have responsibility for, authority over, or personal knowledge about any of the activities that resulted in the issuance of the three-year EADs discussed in Defendants' May 7 Advisory or the re-mailings discussed in Defendants' July 9 Advisory.

15.  I am familiar with the July 10, 2015 and the July 14, 2015 memoranda from the Secretary to Director Rodríguez of USCIS regarding USCIS's efforts to address the post-injunction issuance and/or re-mailing of three-year EADs to DACA recipients, which were filed with the Court on July 15, 2015. In my capacity as Commissioner of CBP I have had no responsibility for, authority over, or personal knowledge about the activities involved in correcting those three-year EADs that were issued or re-mailed after the injunction.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30TH day of July of 2015.

R. Gil Kerlikowske
Commissioner