# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 1:14-cv-254 |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, *et al.* ) | |
| ) | |
| Defendants. ) | |

### DECLARATION OF RONALD VITIELLO

I, Ronald Vitiello, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Deputy Chief of the U.S. Border Patrol, a component of U.S. Customs and Border Protection (CBP) within the U.S. Department of Homeland Security (DHS). I have been employed in this capacity since 2010, and I have been a Border Patrol agent for 30 years.

2. I am submitting this declaration in connection with the Court's Order of July 7, which directs me and the other individual defendants to appear at a hearing on August 19 concerning the Government's compliance with the Court's February 16 preliminary injunction. As explained in more detail below, as Deputy Chief of the Border Patrol, I have no responsibility for the compliance/remedial efforts at issue in the Court's Order, which involve U.S. Citizenship and Immigration Services (USCIS), and no first-hand knowledge of those efforts. In addition, requiring my personal attendance at the hearing would take me away from my performance of my duties as the Deputy Chief of the Border Patrol.

098

3. I make this declaration on the basis of my personal knowledge as well as information made available to me in the course of my official duties.

4. In my capacity as Deputy Chief, I am responsible for the daily operations of the Border Patrol, and I assist the Chief of the Border Patrol in planning and directing nationwide enforcement and administrative operations. These responsibilities extend to oversight of the nearly 21,000 Border Patrol Agents employed by CBP.

5. BP is the mobile, uniformed law enforcement arm of CBP responsible for securing U.S. borders between ports of entry. The Border Patrol is specifically responsible for patrolling nearly 6,000 miles of Mexican and Canadian international land borders and over 2,000 miles of coastal waters surrounding the Florida Peninsula, as well as the island of Puerto Rico.

6. One of the primary duties of a Border Patrol agent is to prevent, detect and apprehend individuals seeking to enter the country unlawfully. Together with other law enforcement officers, the Border Patrol facilitates the flow of legal immigration and goods while preventing the illegal trafficking of people and contraband.

7. I am familiar with the November 20, 2014, memorandum by the Secretary of Homeland Security, entitled *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who are the Parents of U.S. Citizens or Permanent Residents* ("November 2014 memorandum"). The bulk of that memorandum provides instruction to USCIS, another component within DHS, for the implementation of new policies regarding Deferred Action for Childhood Arrivals (DACA), and implementation of a new initiative, Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA). The sole responsibility placed on CBP—and by extension the Border Patrol—by the Secretary's November 2014 memorandum is to identify persons in CBP

and/or Border Patrol custody, as well as recently encountered individuals, who might be eligible for deferred action under the new DACA or DAPA guidelines (whom USCIS may then consider for deferred action). The Secretary tasked USCIS, not CBP or the Border Patrol, with responsibility for the approval or denial of requests for deferred action under the two policies. USCIS, not CBP or the Border Patrol, was made responsible for issuing notices of approval of deferred action and employment authorization to individuals found to merit deferred action under the revised DACA and DAPA policies, and for issuing employment authorization documents (EADs) to those who qualify for and are approved by USCIS for employment authorization.

8. In sum, CBP and the Border Patrol were not tasked with adjudicating requests for deferred action under the new DACA or DAPA guidelines, nor were CBP and the Border Patrol tasked with adjudicating requests under the DACA guidelines announced in 2012. It is also not the Border Patrol's practice to issue notices of approval under DACA, and the Border Patrol does not determine the length of time for which deferred action under DACA will be accorded. Further, even outside of the context of DACA, the Border Patrol does not issue notices of approval for employment authorization, does not determine the length of any employment authorization, and does not issue EADs.

9. When the Court issued its February 16, 2015 injunction prohibiting implementation of the Secretary's November 2014 memorandum, the Border Patrol immediately took steps to ensure that the agency complied with the Court's order. Based on instructions received from CBP, including a February 18, 2015 directive from Commissioner R. Gil Kerlikowske, Border Patrol agents were directed to (i) to cease any consideration of the new DAPA and the expanded DACA guidelines when processing individuals, (ii) not to attempt to

determine whether individuals could request deferred action under the November 20, 2014 memorandum, and (iii) not to refer such individuals to USCIS.

10. I am familiar with the Defendants' May 7 Advisory, in which the Government notified the Court that USCIS had issued approximately 2,000 three-year EADs instead of two-year EADs to DACA recipients after the February 16 preliminary injunction was issued. I am also familiar with the Court's July 7, 2015 Order, in which the Court expressed concern that this situation had not yet been fully rectified, and instructed each of the DHS officials named as defendants in this case, including myself, to attend a hearing on August 19, 2015, and to be prepared to show why he or she should not be held in contempt of Court. As discussed below, as Deputy Chief of the Border Patrol I do not have responsibility for, authority over, or personal knowledge about the matters raised in the Court's July 7 Order.

11. I am also familiar with the Defendants' July 9 Advisory, in which the Government notified the Court that USCIS had re-mailed after the injunction approximately 500 three-year EADs that had previously been issued before the injunction but had been returned as undeliverable. As discussed below, as Deputy Chief of the Border Patrol I do not have responsibility for, authority over, or personal knowledge about this matter.

12. With the exception of identifying persons in Border Patrol custody and other encountered individuals who may be eligible to request that they be considered for DACA, the Border Patrol was assigned no role in the administration of the Secretary's November 2014 memorandum. Likewise, the Border Patrol does not accept, review, grant, deny, or otherwise process requests for deferred action or employment authorization under 2012 DACA (or renewals thereof). The Border Patrol does not issue notices of approval or EADs to DACA recipients. The Border Patrol does not create, maintain, or update records systems under the

control of USCIS that reflect or relate to recipients' deferred action or employment authorization. To my knowledge, those functions are exclusively performed by USCIS. Therefore, in my capacity as Deputy Chief of the Border Patrol, I did not have responsibility for, authority over, or personal knowledge about any of the activities that resulted in the issuance of the three-year EADs discussed in Defendants' May 7 Advisory or the re-mailings discussed in Defendants' July 9 Advisory.

13. I am familiar with the July 10, 2015 and the July 14, 2015 memoranda from the Secretary to Director Rodríguez of USCIS regarding USCIS's efforts to address the post-injunction issuance and/or re-mailing of three-year EADs to DACA recipients, which were filed with the Court on July 15, 2015. In my capacity as Deputy Chief of the Border Patrol I have had no responsibility for, authority over, or personal knowledge about the activities involved in correcting those three-year EADs that were issued or re-mailed after the injunction.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __30th__ day of July of 2015.

Ronald Vitiello
Deputy Chief