IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | ) <br> ) <br> ) |
| *Plaintiffs*, | ) <br> ) |
| v. | ) Case No. 1:14-cv-254 <br> ) |
| UNITED STATES OF AMERICA, *et al.*, | ) <br> ) <br> ) |
| *Defendants*. | ) <br> ) |

**PLAINTIFFS' ADVISORY REGARDING REMEDIAL ACTION FOR THREE-YEAR GRANTS ISSUED BEFORE THE FEBRUARY 16 INJUNCTION**

Six months have passed since Defendants disclosed that DHS granted three-year terms of deferred action and employment authorization to over 108,000 individuals prior to the Court's February 16, 2015 injunction. As Defendants have acknowledged, these three-year terms can *only* be justified by the now-enjoined DHS Directive that expanded the eligibility for, and length of, DACA grants. Yet, at the same time that most of these three-year grants were being issued, Defendants repeatedly represented in this litigation that they were not implementing the DHS Directive.

Defendants have thus far refused to take any remedial action on the 108,000 pre-injunction grantees. They contend that remedial efforts are unnecessary for these individuals because the three-year grants were issued before the February 16 injunction and any inconsistency between Defendants' prior representations and

these grants is attributable to a series of misunderstandings and miscommunications. By contrast, Defendants have carried out substantial remedial efforts as to the approximately 2,600 three-year grants issued after the Court's injunction.

Immediately following Defendants' March 3 advisory, Plaintiffs moved for early, targeted discovery focused on implementation of the DHS Directive. Through their early discovery request and subsequent proceedings, Plaintiffs have pressed for full injunction compliance and sought to assess the scope of any potential corrective action as to the three-year grantees. The newly-imposed requirement that Defendants submit periodic status reports helps address Plaintiffs' concerns regarding injunction compliance. But it does not return the parties to the status quo that Defendants represented was being preserved during the pendency of Plaintiffs' preliminary injunction motion. Nor does it allow Plaintiffs to determine the feasibility of remedial efforts they may undertake for any pre-injunction three-year grantees—that is, steps that Plaintiffs will need to take if they ultimately prevail on the merits of their claims.

Accordingly, Plaintiffs request that the Court require Defendants, at a minimum, to (1) update their records to reflect a two-year term of authorization for all pre-injunction grantees; and (2) provide Plaintiffs with personally identifiable information for these individuals so that Plaintiffs can assess whether to take any corrective action.

1. **Plaintiffs have sought to ensure injunction compliance and determine whether to undertake any remedial action as to three-year grantees.**

On March 3, 2015, Defendants first advised the Court and Plaintiffs that DHS had issued over 100,000 three-year grants of deferred action and employment authorization documents (EADs) following the adoption of the DHS Directive in November 2014. Advisory, ECF No. 176. This disclosure contrasted sharply with Defendants' prior representations that any requests under the DHS Directive would not be considered until at least February 2015. Two days after Defendants' March 3 disclosure, Plaintiffs moved for early discovery. ECF No. 183. Plaintiffs' request was targeted at the implementation of the DHS Directive, focusing on the extent of Defendants' compliance with their prior representations and the February 16 injunction, in an effort to determine potential remedies that Plaintiffs could seek. *Id.* at 7-8; Reply, ECF No. 209 at 2-3. Defendants opposed the early discovery request, contending that their March 3 advisory represented an attempt to "alleviate any potential confusion" from their prior statements regarding the implementation of the DHS Directive. Defs.' Opp'n, ECF No. 207 at 5.

On April 7, the Court granted Plaintiffs' early discovery motion in part, concluding that Defendants had "created special circumstances that necessitate further investigation." Order, ECF No. 226 at 11. The Court found that "[t]he facts . . . certainly establish exceptional circumstances created by the Government that may ultimately require an exceptional remedy." *Id.* To that end, the Court ordered Defendants to produce documents relating to their March 3 advisory, along with lists

3

identifying who knew of the March 3 advisory (and the information contained in the advisory) and when they learned of the information. *Id.* at 11-12.

In response to the Court's April 7 Order, Defendants withheld over 1,100 pages of materials and reiterated that the disparity between their prior representations and the implementation of the DHS Directive was a result of "miscommunications" and a "misunderstanding" about the focus of Plaintiffs' preliminary injunction motion. ECF No. 243 at 1-3, 6-7, 9-10. Yet, a week later, Defendants disclosed that DHS also had erroneously issued approximately 2,000 three-year EADs *after* the February 16 injunction. ECF No. 247. The estimates of these post-injunction grants have evolved over the last four months—and last month's DHS Office of Inspector General report calls into question the reliability of any estimates of pre-injunction and post-injunction grants, ECF No. 291-1 at 2-3 & n.3—but Defendants' most recent figures place the number of post-injunction three-year grants at 2,612. Aug. 19, 2015 Hr'g Tr. at 5-6.

Over the last six months, Plaintiffs have continued to seek injunction compliance while endeavoring to determine the cost and feasibility of undertaking corrective action on any three-year grantees. *See, e.g.*, ECF No. 261 at 5-9. As to injunction compliance, Defendants are scheduled to submit status reports on September 25, 2015 and May 25, 2016 pursuant to the Court's August 19 order. Aug. 19, 2015 Hr'g Tr. at 21. Consistent with their prior requests for compliance monitoring, Plaintiffs expect these reports to reflect whether Defendants are, in fact, complying with the injunction.

4

Plaintiffs' attempts to determine the scope of any corrective action they would undertake as to three-year grantees remain incomplete, however, because Defendants have been willing to correct only a part of the problem. For instance, Defendants have identified remedial steps they have taken to address the approximately 2,600 three-year grants issued after the injunction, including updating federal databases and records to reflect a two-year term of authorization; providing replacement two-year EADs and demanding the return of three-year EADs; obtaining, or otherwise accounting for, nearly all three-year EADs; and terminating the deferred action and employment authorization of any individuals whose three-year EADs were not sent to, or otherwise accounted for by, DHS. ECF No. 285 at 2-3. Defendants also have provided Plaintiffs with personally identifiable information for these post-injunction grantees so that Plaintiffs can assess whether to take any corrective action as to these individuals. *Id.* at 3. By contrast, Defendants have not implemented any remedial efforts for the 108,081 individuals who were issued three-year grants before the February 16 injunction. Defendants contend that no remedial action is necessary for these individuals because the grants predated the injunction and Defendants' earlier statements regarding the DHS Directive's implementation resulted from miscommunications, not intentional misrepresentations. *Id.* at 10-11; ECF No. 287 at 46-50.

**2. Additional remedial efforts are necessary to return the parties to the status quo that Defendants represented was being preserved and allow Plaintiffs to assess whether to take any corrective action.**

As Plaintiffs have made clear since the March 3 advisory, Defendants' representations about the implementation of the DHS Directive guided the trajectory of

this case. Plaintiffs agreed to an extended briefing schedule on the preliminary injunction motion—and declined to seek a temporary restraining order—because Defendants repeatedly represented that they would not entertain or grant requests under the DHS Directive until February 2015. This Court, too, was guided by those representations, issuing the preliminary injunction two days before the date that Defendants had identified as the earliest they would begin implementing the DHS Directive.

In the end, it matters little whether Defendants' earlier statements in this litigation are labeled miscommunications, misrepresentations, or worse. The fact remains that over 108,000 individuals were issued, and continue to hold, three-year terms of deferred action and work authorization based on the now-enjoined DHS Directive—a program that Defendants expressly stated was not being implemented. Once these individuals received federal work authorization, they were entitled to obtain—and, to this day, still are entitled to obtain—certain State-issued licenses and benefits tied to the length of time for which the federal government represents they are authorized to work in the United States. Defendants thus altered the status quo that the Court and Plaintiffs believed was being preserved while the preliminary injunction motion was pending. And as the Court recognized in issuing the preliminary injunction, once the States begin providing individuals with licenses and benefits, there is "no effective way of putting the toothpaste back in the tube should Plaintiffs ultimately prevail on the merits." Op. 120, ECF No. 145-2 at 20.

6

In short, Defendants should be required to undertake remedial action as the pre-injunction three-year grants. At the same time, Plaintiffs recognize that their concerns may be sufficiently addressed by something short of the extensive steps that Defendants have taken as to the 2,612 post-injunction grants. Plaintiffs suggest that for all pre-injunction three-year grants, Defendants should be required, at a minimum, to (1) update federal databases and records to reflect an applicable term of authorization for two years, not three; and (2) provide Plaintiffs with the same type of personally identifiable information that Defendants have disclosed for the post-injunction grantees. These steps would not only return the parties to the status quo that Defendants represented was in place during the pendency of this litigation but also would allow Plaintiffs to adequately assess the cost and feasibility of taking corrective action on any pre-injunction grantees. Moreover, the proposed remedial approach would cure Defendants' continued maintenance of three-year terms of authorization in their databases and records contrary to the injunction. *See* ECF No. 285 at 9-10.[1]

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court require Defendants to implement remedial action as to all three-year grants of deferred action and employment authorization issued prior to the Court's February 16 injunction.

---

[1] Ordering Defendants to undertake these remedial efforts as to the pre-injunction grantees should also resolve any outstanding issues involving Defendants' privilege assertions regarding documents withheld in response to the Court's April 7 Order.

| | Respectfully submitted. |
|---|---|
| LUTHER STRANGE<br>*Attorney General of Alabama* | KEN PAXTON<br>*Attorney General of Texas* |
| MARK BRNOVICH<br>*Attorney General of Arizona* | CHARLES E. ROY<br>*First Assistant Attorney General* |
| DUSTIN MCDANIEL<br>*Attorney General of Arkansas* | SCOTT A. KELLER<br>*Solicitor General* |
| PAMELA JO BONDI<br>*Attorney General of Florida* | /s/ Angela V. Colmenero<br>ANGELA V. COLMENERO<br>*Assistant Attorney General*<br>Attorney-in-Charge<br>State Bar No. 24048399 |
| SAMUEL S. OLENS<br>*Attorney General of Georgia* | |
| LAWRENCE G. WASDEN<br>*Attorney General of Idaho* | J. CAMPBELL BARKER<br>*Deputy Solicitor General* |
| JOSEPH C. CHAPELLE<br>PETER J. RUSTHOVEN<br>*Counsel for the State of Indiana* | ERIC A. HUDSON<br>ADAM N. BITTER<br>*Assistant Attorneys General* |
| DEREK SCHMIDT<br>*Attorney General of Kansas* | Office of the Attorney General of Texas<br>P.O. Box 12548<br>Austin, Texas 78711-2548<br>512-936-1700 |
| JAMES D. "BUDDY" CALDWELL<br>*Attorney General of Louisiana* | |
| TIMOTHY C. FOX<br>*Attorney General of Montana* | |
| DOUGLAS J. PETERSON<br>*Attorney General of Nebraska* | |
| ADAM PAUL LAXALT<br>*Attorney General of Nevada* | |
| WAYNE STENEHJEM<br>*Attorney General of North Dakota* | |

MICHAEL DEWINE
*Attorney General of Ohio*
ERIC E. MURPHY
*Co-counsel for the State of Ohio*

E. SCOTT PRUITT
*Attorney General of Oklahoma*

ALAN WILSON
*Attorney General of South Carolina*

MARTY J. JACKLEY
*Attorney General of South Dakota*

HERBERT SLATERY III
*Attorney General and Reporter of Tennessee*

SEAN D. REYES
*Attorney General of Utah*

PATRICK MORRISEY
*Attorney General of West Virginia*

BRAD D. SCHIMEL
*Attorney General of Wisconsin*

BILL SCHUETTE
*Attorney General for the People of Michigan*

DREW SNYDER
*Counsel for the Governor of Mississippi*

PAUL R. LEPAGE
*Governor of Maine*

ROBERT C. STEPHENS
*Counsel for the Governor of North Carolina*

CALLY YOUNGER
*Counsel for the Governor of Idaho*

## CERTIFICATE OF SERVICE

    I certify that I served a copy of this pleading on all counsel of record via this Court's CM/ECF system.

                                                  /s/ Angela V. Colmenero
                                                  ANGELA V. COLMENERO