# EXHIBITS

**Exhibit (A)**

**Convention on Certain Questions relating to the Conflict of Nationality Laws**

**(The Hague, 12 April 1930)**

## CONVENTION ON CERTAIN QUESTIONS RELATING TO THE CONFLICT OF NATIONALITY LAWS

**CHAPTER I**

**GENERAL PRINCIPLES**

Article 1

It is for each State to determine under its own law who are its nationals. **This law shall be recognised by other States** in so far as it is consistent with international conventions, international custom, and the principles of law generally recognised with regard to nationality.

Article 2

Any question as to whether a person possesses the nationality of a particular State **shall be determined in accordance with the law of that State.**

**CHAPTER III**

**NATIONALITY OF MARRIED WOMEN**

**CHAPTER IV (NA)**

**NATIONALITY OF CHILDREN**

Article 12 (NA)

Article 13 (NA)

1

Naturalisation of the parents shall confer on such of their children as, according to its law, are minors the nationality of the State by which the naturalisation is granted. In such case the law of that State may specify the conditions governing the acquisition of its nationality by the minor children as a result of the naturalisation of the parents. In cases where minor children do not acquire the nationality of their parents as the result of the naturalisation of the latter, they shall retain their existing nationality.

(Article 14; 15; 16; 17. Omitted)

## GENERAL AND FINAL PROVISIONS

### Article 18

The High Contracting Parties agree to apply the principles and rules contained in the preceding Articles in their relations with each other, as from the date of the entry into force of the present Convention.

**Exhibit (B)**

**Hague Convention on the Civil Aspects of International Child Abduction**

The **Hague Convention on the Civil Aspects of International Child Abduction,** or **Hague Abduction Convention** is a multilateral treaty developed by the Hague Conference on Private International Law (HCCH) that provides an expeditious method to return a child internationally abducted by a parent from one member country to another.

The Convention was concluded 25 October 1980 and entered into force between the signatories on 1 December 1983. The Convention was drafted to ensure the prompt return of children who have been abducted from their country of habitual residence **or wrongfully retained** in a contracting state not their country of habitual residence.[2]

The primary intention of the Convention is to preserve whatever status quo child custody arrangement existed immediately before an alleged wrongful removal or retention thereby deterring a parent from crossing international boundaries in search of a more sympathetic court. The Convention applies only to children under the age of 16.

As of January 2014, 92 states are party to the convention.[1] In 2013, the treaty entered into force for South Korea and Kazakhstan. On 1 April 2014, the convention became effective for Japan, [3] while it will become effective for Iraq on 1 July 2014. [1]

3

Procedural nature

The Convention does not alter any substantive rights. The Convention requires that a court in which a Hague Convention action is filed should not consider the merits of any underlying child custody dispute, but should determine only that country in which those issues should be heard. **Return of the child is to the member country rather than specifically to the left-behind parent.**

The Convention requires the return of a child who was a "habitual resident" in a contracting party immediately before an action that constitutes a breach of custody or access rights.[4] The Convention provides that all Contracting States, as well as any judicial and administrative bodies of those Contracting States, "shall act expeditiously in all proceedings seeking the return of a children" and that those institutions shall use the most expeditious procedures available to the end that final decision be made within six weeks from the date of commencement of the proceedings.[5]

Wrongful removal or retention

The Convention provides that the removal or retention of a child is "wrongful" whenever:

"a. It is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

"b. at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or

4

retention." These rights of custody may arise by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of the country of habitual residence.[6]

"From the Convention's standpoint, the removal of a child by one of the joint holders without the consent of the other, is . . . wrongful, and this wrongfulness derives in this particular case, not from some action in breach of a particular law, but from the fact that such action has disregarded the rights of the other parent which are also protected by law, and has interfered with their normal exercise."[7]

Habitual residence

The Convention mandates return of any child who was "habitually resident" in a contracting nation immediately before an action that constitutes a breach of custody or access rights. The Convention does not define the term "habitual residence," but it is not intended to be a technical term. Instead, courts should broadly read the term in the context of the Convention's purpose to discourage unilateral removal of a child from that place in which the child lived when removed or retained, which should generally be understood as the child's "ordinary residence." The child's "habitual residence" is not determined after the incident alleged to constitute a wrongful removal or retention. A parent cannot unilaterally create a new habitual residence by wrongfully removing or sequestering a child. Because the determination of "habitual residence" is primarily a "fact based" determination and not one which is encumbered by legal technicalities, the court must look at those facts, the shared intentions of the

5

parties, the history of the children's location and the settled nature of the family prior to the facts giving rise to the request for return.[8]

Special rules of evidence

The Convention provides special rules for admission and consideration of evidence independent of the evidentiary standards set by any member nation. Article 30 provides that the Application for Assistance, as well as any documents attached to that application or submitted to or by the Central Authority are admissible in any proceeding for a child's return.[9] The Convention also provides that no member nation can require legalization or other similar formality of the underlying documents in context of a Convention proceeding.[10] Furthermore, the court in which a Convention action is proceeding shall "take notice directly of the law of, and of judicial or administrative decisions, formally recognized or not in the State of habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable" when determining whether there is a wrongful removal or retention under the Convention.[11]

Limited defenses to return

The Convention limits the defenses against return of a wrongfully removed or retained child. To defend against the return of the child, the defendant must establish to the degree required by the applicable standard of proof (generally determined by the lex fori, i.e. the law of the state where the court is located):

6

(a) that Petitioner was not "actually exercising custody rights at the time of the removal or retention" under Article 13; or

(b) that Petitioner "had consented to or acquiesced in the removal or retention" under Article 13; or

(c) that more than one year has passed from the time of wrongful removal or retention until the date of the commencement of judicial or administrative proceedings, under Article 12; or

(d) that the child is old enough and has a sufficient degree of maturity to knowingly object to being returned to the Petitioner and that it is appropriate to heed that objection, under Article 13; or

(e) that "there is grave risk that the child's return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation," under Article 13(b); or

(f) that return of the child would subject the child to violation of basic human rights and fundamental freedoms, under Article 20.

Non-compliance

2010 U.S. Report on Compliance with The Hague Abduction Convention [12]

Noncompliance with the terms and spirit of the Hague Convention has been a particularly difficult problem in the practical implementation of the Convention. In 2009, the United States declared Brazil, Chile, Honduras, Greece and Mexico displayed "patterns of non-compliance" or "noncompliance".

The Cuellar Versus Joyce case [13]was an example of the difficulties facing left behind parents applying to the US Central Authority.

**The U.S. Department of State has primary responsibility** over incoming Hague Convention abduction cases since April of 2008; however, the National Missing and Exploited Children organization provides technical assistance and resources to parents, attorneys, judges and law enforcement officials involved in incoming Hague Convention case.

The case of Sean Goldman, a four-year old boy abducted to Brazil, gained widespread media attention after the abducting mother died during the birth of another child. The mother's family, resident in Brazil, fought Sean's American father in Brazilian court to gain custody over Sean and keep him in the country. Ultimately, though, **the Brazilian Supreme Federal Tribunal decided the case constituted child abduction under the terms of the Hague Convention, and had Sean sent back to America to live with his father.**

Interpretation of article 13b: no return in case of "grave risks"

The principal purpose of the Abduction Convention is to cause the prompt return of a child to his or her "habitual residence." In certain exceptional cases under Article 13b, the court's mandatory return obligation is changed to a discretionary obligation, specifically, "the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." The duty to return a child is

8

however not abrogated by a finding under Art. 13(b) but merely changes from mandatory to discretionary. Since the general intent of the Convention is to cause the return of a child to his or her "habitual residence," unless there are some powerful and compelling reasons otherwise the court should normally and routinely exercise its discretion and return the child to his or her "habitual residence". [*according to whom?*]

In the primary source of interpretation for the Convention, the Explanatory Report, Professor E. Perez–Vera noted the following:

"it would seem necessary to underline the fact that the three types of exception to the rule concerning the return of the child must be applied only so far as they go and no further. This implies above all that they are to be interpreted in a restrictive fashion if the Convention is not to become a dead letter. In fact, the Convention as a whole rests upon the unanimous rejection of this phenomenon of illegal child removals and upon the conviction that the best way to combat them at an international level is <u>to refuse to grant them legal recognition</u>. The practical application of this principle requires that the signatory States be convinced that they belong, despite their differences, to the same legal community within which the authorities of each State acknowledge that the authorities of one of them—those of the child's habitual residence—are in principle best placed to decide upon questions of custody and access. As a result, a systematic invocation of the said exceptions, substituting the forum chosen by the abductor for that of the child's residence, would lead to the collapse of the whole structure of the Convention by depriving it of the spirit of mutual confidence which is its inspiration."

In spite of the spirit and intent of the Convention as conveyed by the Convention itself and further reinforced by the Perez–Vera report, Article 13b is frequently used by abductors as a vehicle to litigate the child's best interests or custody. Although Article 13(b) inquiries are not intended to deal with issues or factual questions appropriate for custody proceedings, many countries use article 13b to request psychological profiles, detailed evaluations of parental fitness, evidence concerning lifestyle and the nature and quality of relationships.[14]

(Omitted for brevity)   Table of contracting states as 2012 with date of entry into force United States 1 July 1988

**Exhibit C**

Federal laws

- Federal law (42 U.S.C. § 5772) defines a "missing child" as "any individual less than 18 years of age whose whereabouts are unknown to such individual's legal custodian."

- Regardless of the reason why a child goes missing, federal law requires law enforcement agencies to respond in a specific way. Federal law prohibits law enforcement agencies from establishing or maintaining a waiting period before accepting a missing child report (42 U.S.C. § 5780). Federal law also requires law enforcement agencies to enter the missing child's information into the FBI's National Crime Information Center database and state law enforcement system database within two hours of receiving a missing child report (42 U.S.C. § 5780).

**Exhibit D**

**Texas Penal Code Chapter 25- Harboring a Runaway**

**PENAL CODE TITLE 6. OFFENSES AGAINST THE FAMILY CHAPTER 25.
OFFENSES AGAINST THE FAMILY Sec. 25.03.  INTERFERENCE WITH CHILD
CUSTODY.**

Sec. 25.03.  INTERFERENCE WITH CHILD CUSTODY.  (a)  A person commits an offense if the person takes or retains a child younger than 18 years of age:

(1)  when the person knows that the person's taking or retention violates the express terms of a judgment or order, including a temporary order, of a court disposing of the child's custody;

(2)  when the person  has not been awarded custody of the child by a court of competent jurisdiction, knows that a suit for divorce or a civil suit or application for habeas corpus to dispose of the child's custody has been filed, and takes the child out of the geographic area of the counties composing the judicial district if the court is a district court or the county if the court is a statutory county court, without the permission of the court and with the intent to deprive the court of authority over the child; or

(3)  outside of the United States with the intent to deprive a person entitled to possession of or access to the child of that possession or access and without the permission of that person.

(c)  It is a defense to prosecution under Subsection (a)(2) that the actor returned the child to the geographic area of the counties composing the judicial district if the court is a district court or the county if the court is a statutory county court, within three days after the date of the commission of the offense.

12

(c-1)  It is an affirmative defense to prosecution under Subsection (a)(3) that:

(1)  the taking or retention of the child was pursuant to a valid order providing for possession of or access to the child; or

(2)  notwithstanding any violation of a valid order providing for possession of or access to the child, the actor's retention of the child was due only to circumstances beyond the actor's control and the actor promptly provided notice or made reasonable attempts to provide notice of those circumstances to the other person entitled to possession of or access to the child.

(c-2)  Subsection (a)(3) does not apply if, at the time of the offense, the person taking or retaining the child:

(1)  was entitled to possession of or access to the child; and

(2)  was fleeing the commission or attempted commission of family violence, as defined by Section 71.004, Family Code, against the child or the person.

(d)  An offense under this section is a state jail felony.

Acts 1973, 63rd Leg., p. 883, ch. 399, Sec. 1, eff. Jan. 1, 1974.  Amended by Acts 1979, 66th Leg., p. 1111, ch. 527, Sec. 1, eff. Aug. 27, 1979;  Acts 1987, 70th Leg., ch. 444, Sec. 1, eff. Sept. 1, 1987;  Acts 1989, 71st Leg., ch. 830, Sec. 1, eff. Sept. 1, 1989;  Acts 1993, 73rd Leg., ch. 900, Sec. 1.01, eff. Sept. 1, 1994;  Acts 2001, 77th Leg., ch. 332, Sec. 1, eff. May 24, 2001.

Amended by:

Acts 2007, 80th Leg., R.S., Ch. 272 (H.B. 95), Sec. 1, eff. September 1, 2007.

Acts 2011, 82nd Leg., R.S., Ch. 840 (H.B. 3439), Sec. 2, eff. September 1, 2011.

Acts 2011, 82nd Leg., R.S., Ch. 1100 (S.B. 1551), Sec. 3, eff. September 1, 2011.

Sec. 25.031.  AGREEMENT TO ABDUCT FROM CUSTODY.  (a)  A person commits an offense if the person agrees, for remuneration or the promise of remuneration, to abduct a child younger than 18 years of age by force, threat of force, misrepresentation, stealth, or unlawful entry, knowing that the child is under the care and control of a person having custody or physical possession of the child under a court order, including a temporary order, or under the care and control of another person who is exercising care and control with the consent of a person having custody or physical possession under a court order, including a temporary order.

(b)  An offense under this section is a state jail felony.

Added by Acts 1987, 70th Leg., ch. 444, Sec. 3, eff. Sept. 1, 1987.  Amended by Acts 1993, 73rd Leg., ch. 900, Sec. 1.01, eff. Sept. 1, 1994.
Amended by:

Acts 2007, 80th Leg., R.S., Ch. 272 (H.B. 95), Sec. 2, eff. September 1, 2007.

Sec. 25.04.  ENTICING A CHILD.  (a)  A person commits an offense if, with the intent to interfere with the lawful custody of a child younger than 18 years, he

14

knowingly entices, persuades, or takes the child from the custody of the parent or guardian or person standing in the stead of the parent or guardian of such child. Acts 1973, 63rd Leg., p. 883, ch. 399, Sec. 1, eff. Jan. 1, 1974.  Amended by Acts 1993, 73rd Leg., ch. 900, Sec. 1.01, eff. Sept. 1, 1994;  Acts 1999, 76th Leg., ch. 685, Sec. 7, eff. Sept. 1, 1999.

Sec. 25.06.  HARBORING RUNAWAY CHILD.  (a)  A person commits an offense if he knowingly harbors a child and he is criminally negligent about whether the child:

(1)  is younger than 18 years; and

(2)  has escaped from the custody of a peace officer, a probation officer, the Texas Youth Council, or a detention facility for children, or is voluntarily absent from the child's home without the consent of the child's parent or guardian for a substantial length of time or without the intent to return.

(b)  It is a defense to prosecution under this section that the actor was related to the child within the second degree by consanguinity or affinity, as determined under Chapter 573, Government Code.

(c)  It is a defense to prosecution under this section that the actor notified:

(1)  the person or agency from which the child escaped or a law enforcement agency of the presence of the child within 24 hours after discovering that the child had escaped from custody;  or

(2)  a law enforcement agency or a person at the child's home of the presence of the child within 24 hours after discovering that the child was voluntarily absent from home without the consent of the child's parent or guardian.

(d)  An offense under this section is a Class A misdemeanor.

(e)  On the receipt of a report from a peace officer, probation officer, the Texas Youth Council, a foster home, or a detention facility for children that a child has escaped its custody or upon receipt of a report from a parent, guardian, conservator, or legal custodian that a child is missing, a law enforcement agency shall immediately enter a record of the child into the National Crime Information Center.

Added by Acts 1979, 66th Leg., p. 1155, ch. 558, Sec. 1, eff. Sept. 1, 1979. Amended by Acts 1983, 68th Leg., p. 4750, ch. 831, Sec. 1, eff. Sept. 1, 1983;  Acts 1991, 72nd Leg., ch. 561, Sec. 40, eff. Aug. 26, 1991.  Renumbered from Sec. 25.07 by Acts 1993, 73rd Leg., ch. 900, Sec. 1.01, eff. Sept. 1, 1994.  Amended by Acts 1995, 74th Leg., ch. 76, Sec. 5.95(27), eff. Sept. 1, 1995.

Sec. 25.09.  ADVERTISING FOR PLACEMENT OF CHILD.  (a)  A person commits an offense if the person advertises in the public media that the person will place a child for adoption or will provide or obtain a child for adoption.

(b)  This section does not apply to a licensed child-placing agency that is identified in the advertisement as a licensed child-placing agency.

(c)  An offense under this section is a Class A misdemeanor unless the person has been convicted previously under this section, in which event the offense is a felony of the third degree.

(d)  In this section:

(1)  "Child" has the meaning assigned by Section 101.003, Family Code.

(2) "Public media" has the meaning assigned by Section 38.01.  The term also includes communications through the use of the Internet or another public computer network.

Added by Acts 1997, 75th Leg., ch. 561, Sec. 31, eff. Sept. 1, 1997.


Sec. 25.10.  INTERFERENCE WITH RIGHTS OF GUARDIAN OF THE PERSON. (a)  In this section:

(1)  "Possessory right" means the right of a guardian of the person to have physical possession of a ward and to establish the ward's legal domicile, as provided by Section 767(1), Texas Probate Code.

(2)  "Ward" has the meaning assigned by Section 601, Texas Probate Code.

(b)  A person commits an offense if the person takes, retains, or conceals a ward when the person knows that the person's taking, retention, or concealment interferes with a possessory right with respect to the ward.

(c)  An offense under this section is a state jail felony.

(d)  This section does not apply to a governmental entity where the taking, retention, or concealment of the ward was authorized by Subtitle E, Title 5, Family Code, or Chapter 48, Human Resources Code.

Added by Acts 2003, 78th Leg., ch. 549, Sec. 32, eff. Sept. 1, 2003.

17

**Exhibit (E)**

The actual text of the FIRST CONGRESS in 1790 states:

*"...children of CITIZENS of the United States...shall be considered as natural born citizens of the United States; Provided That the right of citizenship shall not descend to persons, whose fathers have never been resident in the United States..." (FIRST CONGRESS Session II Ch.4 1790,* Approved March 26, 1790, pp. 103-104. Document margin note: "Their children residing here, deemed citizens." Document margin note: "Also, children of citizens born beyond sea, & c. Exceptions.")

The actual text of the THIRD CONGRESS in 1795 states,

"...children of citizens of the United States...shall be considered citizens of the United States*; Provided That the right of citizenship shall not descend to persons, whose fathers have never been resident in the United States..."* (THIRD CONGRESS Session II. Ch.21. 1795, Approved January 29, 1795, pp. 414-415. Document margin note: "How children shall obtain citizenship through their parents" Document margin note: "Former Act repealed 1790

The actual text of the Eighth CONGRESS in 1802 states,

9. Sec. 4. That the children *of persons duly naturalized* under any of the laws of the United States, or who, previous to the passing of any law on that subject by the government of the United States, may have become citizens of any one of the said states, under the laws thereof, being under the age of twenty-one years, at the time *of their parents' being so naturalized* or admitted to the rights of citizenship, shall, if dwelling in the United States, be considered as citizens of the United States; and the children *of persons who now are, or have been,* citizens of the United States, shall, though **born out of the limits and jurisdiction** of the United States, be considered as citizens of the United States:

10. Provided, That the right of citizenship **shall not descend to persons** whose fathers have never resided within the United States:

The observation of a repetitive, requirement in all the above *"shall not descend"* should convince any who read this that, although you be born here of a father who is not a citizen, you are not a citizen; this is only the place of your birth. Further it is has to also be noted that being born here is not a requirement as citizenship is inherited from our parents (Fathers)[ *born out of the limits and jurisdiction]*

The observation of a repetitive, requirement in all the above *"shall not descend"* should convince any who read this that, although you be born here of a father who is not a citizen, you are not a citizen; this is only the place of your birth.

18

Under **Sec. 1992 of U.S. Revised Statutes** the same Congress who had adopted the Fourteenth Amendment, confirmed this principle: "*All persons born in the United States and not subject to any foreign power, excluding Indians not taxed, are declared to be citizens of the United States.*"

Who are the subjects of a foreign power? Thomas Jefferson said "Aliens are the subjects of a foreign power." Thus, the statute can be read as "*All persons born in the United States who are not aliens, excluding Indians not taxed, are declared to be citizens of the United States.*"