IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

_____
                                   )
STATE OF TEXAS, *et al.*,          )
                                   )
            Plaintiffs,            )
                                   )
      v.                           )   No. 1:14-cv-254-ASH
                                   )
UNITED STATES OF AMERICA, *et al.*,)
                                   )
            Defendants.            )
_____)

# MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
# TO STAY MAY 19, 2016, ORDER PENDING FURTHER REVIEW

Dated: May 31, 2016

KENNETH MAGIDSON
United States Attorney

DANIEL DAVID HU
Assistant United States Attorney
Chief, Civil Division

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JOYCE R. BRANDA
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel

JENNIFER D. RICKETTS
Director, Federal Programs Branch
Attorney-in-Charge (VA Bar No. 29281)

JAMES J. GILLIGAN
Special Litigation Counsel

Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
Tel.: (202) 514-3358
Fax: (202) 616-8470
james.gilligan@usdoj.gov

*Counsel for Defendants*

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

NATURE AND STATE OF THE PROCEEDINGS ................................................................ 2

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ........................................ 3

ARGUMENT ............................................................................................................................ 3

    I.    DEFENDANTS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON FURTHER REVIEW ........................................................................ 3

        A.    The Court's Findings of Intentional Misrepresentations Are Not Supported by the Evidence, and Certainly Not by Clear and Convincing Evidence. ............................................................................ 3

        B.    The Court Did Not Provide Necessary Procedural Protections. ................. 4

        C.    The Sanctions Imposed Exceed the Court's Authority .............................. 4

    II.    THE GOVERNMENT WILL BE IRREPARABLY HARMED ABSENT A STAY ................................................................................................................. 8

    III.    THE PUBLIC INTEREST AND BALANCE OF EQUITIES FAVOR A STAY ................................................................................................................. 10

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

**PAGE(S)**

**FEDERAL CASES**

*Bond v. United States*,
　564 U.S. 211 (2011) ................................................................................................. 8

*Cadle Co. v. Moore* (*In re Moore*),
　739 F.3d 724 (5th Cir. 2014) .................................................................................... 3

*Chafin v. Chafin*,
　133 S. Ct. 1017 (2013) ........................................................................................... 10

*Chambers v. NASCO, Inc.*,
　501 U.S. 32 (1991) ................................................................................................... 5

*City of Alexandria v. Cleco, Corp.*,
　547 F. App'x 568 (5th Cir. 2013) ............................................................................. 3

*Crowe v. Smith*,
　151 F.3d 217 (5th Cir. 1998) ............................................................................... 3, 5

*FCC v. Pottsville Broad. Co.*,
　309 U.S. 134 (1940) ................................................................................................. 9

*FDIC v. Maxxam, Inc.*,
　523 F.3d 566 (5th Cir. 2008) ................................................................................ 4, 7

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
　561 U.S. 477 (2010) ................................................................................................. 8

*Heckler v. Lopez,*
　463 U.S. 1328 (1983) ............................................................................................... 9

*In re FEMA Trailer Formaldehyde Prods. Liab.*,
　401 F. App'x 877 (5th Cir. 2010) ......................................................................... 5, 7

*INS v. Legalization Assistance Project of Los Angeles Cty. Fed'n of Labor*,
　510 U.S. 1301 (1993) ............................................................................................... 9

*Kenyon Int'l Emergency Servs., Inc. v. Malcolm*,
　2013 WL 2489928 (5th Cir. May 14, 2013) ............................................................ 6

*Maguire Oil Co. v. City of Hous.*,
　143 F.3d 205 (5th Cir. 1998) .................................................................................... 4

**Page(s)**

*Miller v. French*,
  530 U.S. 327 (2000) .................................................................................................... 8

*Myers v. United States*,
  272 U.S. 52 (1926) ...................................................................................................... 8

*New York v. United States*,
  505 U.S. 144 (1992) .................................................................................................... 8

*Nken v. Holder*,
  556 U.S. 418 (2009) .................................................................................................. 10

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
  734 F.3d 406 (5th Cir. 2013) ...................................................................................... 3

*Positive Software Solutions, Inc. v. New Century Mortg. Corp.*,
  619 F.3d 458 (5th Cir. 2010) ...................................................................................... 7

*Ruiz v. Estelle*,
  650 F.2d 555 (5th Cir. 1981) .................................................................................... 11

*Stieberger v. Bowen*,
  801 F.2d 29 (2d Cir. 1986) ......................................................................................... 9

*Union Pump. Co. v. Centrifugal Tech., Inc.*,
  404 F. App'x 899 (5th Cir. 2010) ............................................................................... 5

## **FEDERAL STATUTES**

28 U.S.C. § 517 .................................................................................................................. 8

28 U.S.C. § 519 .................................................................................................................. 8

## **FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 62(c) .......................................................................................................... 3

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

The sanctions ordered by the Court far exceed the bounds of appropriate remedies for what this Court concluded were intentional misrepresentations, a conclusion that was reached without proper procedural protections and that lacks sufficient evidentiary support. Compounding matters, the sanctions imposed by this Court exceed the scope of its authority and unjustifiably impose irreparable injury on the Department of Justice, the Department of Homeland Security (DHS), and thousands of innocent third parties.

The Department of Justice takes with utmost seriousness the public trust committed to it to represent the interests of the American people in the courts of the United States, and insists that its attorneys adhere to the high standards of ethical conduct and professionalism required to carry out that critical mission. The Court found that certain representations made to it in this case were made in bad faith or with intent to deceive. We respectfully but emphatically disagree with that conclusion. It is wrong, and made worse by (and perhaps explained by) the absence of the required fair process for the Department and its attorneys. The Government accordingly will seek immediate review, whether by appeal, mandamus, or both, and moves for a stay of the Court's public order pending that review.[1]

All factors that a court must consider when ruling on a request for a stay support the Government's motion. First, the Government is likely to prevail on appeal, because (1) the Court's finding of bad-faith misrepresentations is not supported by the evidence, and certainly not by clear and convincing evidence, as required; (2) the Court imposed sanctions without observing required procedural protections; and (3) the sanctions imposed place onerous

---

[1] The Court issued a public Memorandum Opinion and Order on May 19, 2016 (ECF No. 347) ("May 19 Order") accompanied by a Sealed Order also entered on May 19, 2016 (ECF No. 348), received by the Government on May 27, 2016.

administrative obligations on DHS that are unjustified by any demonstrated remedial purpose; impermissibly encroach on the Attorney General's authority to supervise the conduct of litigation involving the United States; and improperly seek to regulate the conduct of and standards for appearance by Department of Justice attorneys before other state and federal courts in twenty-six States.  Second, the Government will suffer irreparable injury if the Court's May 19 Order is not stayed, resulting from impaired enforcement of immigration law, including through the unchallenged 2012 Deferred Action for Childhood Arrivals (DACA) policy; judicial intrusion into the internal administration of the Department of Justice; regulation of Department of Justice attorneys appearing before other courts; and the unrecoverable expenditure of significant financial and personnel resources required to comply with the Order.  Finally, the balance of equities and the public interest, including the interests of tens of thousands of innocent third parties whose personally identifying information DHS has been ordered to produce, also weigh in favor of a stay.  For all of these reasons, the Government's motion to stay should be granted.

## **NATURE AND STATE OF THE PROCEEDING**

The Court's February 16, 2015, preliminary injunction is currently under review by the United States Supreme Court.  Pending that review, further proceedings on the merits of this case have been stayed.  The Court issued the May 19 Order and the accompanying Sealed Order imposing sanctions against the Department of Justice, certain of its attorneys, and DHS based on findings of intentional misrepresentations by the Government and its attorneys concerning the timeline for implementing provisions of the November 2014 Deferred Action Policy Memorandum.  The Government intends immediately to seek further review, and moves in this Court for a stay of the May 19 Order pending review.

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

Defendants request a stay pending further review of the Court's May 19 Order.  The Court has the inherent power to stay matters within the control of its docket.  *See* Fed. R. Civ. P. 62(c) (authorizing stays of interlocutory injunctions pending appeal).

Courts typically consider four factors in evaluating a request for a stay pending further review:  (1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant will be irreparably harmed if the stay is not granted; (3) whether issuance of a stay will substantially harm the other parties; and (4) whether granting the stay serves the public interest.  *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013).

## ARGUMENT

### I. DEFENDANTS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON FURTHER REVIEW.

#### A. The Court's Findings of Intentional Misrepresentations Are Not Supported by the Evidence, and Certainly Not by Clear and Convincing Evidence.

We respectfully submit that the Defendants are substantially likely to prevail on further review because the sanctions imposed by the Court are not supported by the evidence, and certainly not by clear and convincing evidence of bad faith.  A sanction issued under the Court's inherent authority and predicated on a putative finding of bad-faith misconduct by a party or its attorneys, like the one here, May 19 Order at 19, must be supported by a specific finding that is based on clear and convincing evidence.  *In re Moore*, 739 F.3d 724, 730 (5th Cir. 2014); *City of Alexandria v. Cleco Corp.*, 547 F. App'x 568, 569 (5th Cir. 2013); *Crowe v. Smith*, 151 F.3d 217, 236 (5th Cir. 1998).  "[M]ere

3

negligence does not trigger a court's inherent sanctioning power." *Maguire Oil Co. v. City of Hous.*, 143 F.3d 205, 211-12 (5th Cir. 1998).

For all of the reasons set forth in Defendants' Response to the Court's Order of April 7, 2015 (ECF No. 242), the Government submits that the record, when viewed as a whole, does not support a clear and convincing finding that the Government or its attorneys deliberately withheld information, or otherwise sought to mislead the Court or the Plaintiff States, about DHS's issuance of three-year rather than two-year terms of deferred action to recipients under the 2012 DACA policy.

### B. The Court Did Not Provide Necessary Procedural Protections.

Certain specific procedural protections are required before a Court may impose sanctions, including notice to the entities and/or individuals against whom sanctions are contemplated, the basis for such potential sanctions, the type of sanctions being contemplated (including whether the potential sanctions are personal in nature), and an opportunity for the entity and/or individual to respond to the specific sanctions being contemplated. *See, e.g.*, ECF No. 243 at 18-22; ECF No. 265 at 15; ECF No. 287 at 50 n.22; ECF No. 305 at 4-5; ECF No. 345 at 2. Required procedures intended for the protection of parties and individual counsel targeted for sanctions were not followed here. For this reason, too, the Government is likely to succeed on further review.

### C. The Sanctions Imposed Exceed the Court's Authority.

The Government is also likely to succeed on further review because the sanctions imposed by the May 19 Order exceed the scope of a court's inherent power.

A district court's power to sanction "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 591 (5th Cir. 2008). It is "based on the need to control court proceeding[s] and [the] necessity of protecting the exercise of judicial authority in

4

connection with those proceedings." *In re FEMA Trailer Formaldehyde Prods. Liab.*, 401 F. App'x 877, 882 (5th Cir. 2010); *see also Crowe*, 151 F.3d at 240 (inherent power derives from the control vested in courts "to manage their own affairs"). Accordingly, the inherent power "may be exercised only if essential to preserve the authority of the court." *Union Pump. Co. v. Centrifugal Tech., Inc.*, 404 F. App'x 899, 905 (5th Cir. 2010). The Court's exercise of its authority in this instance went beyond this limitation.

As concerns DHS, the order directing the agency to prepare a State-by-State list of persons who received three-year rather than two-year terms of deferred action prior to the Court's preliminary injunction—persons who satisfied the criteria of the 2012 DACA policy, which the Plaintiff States have not challenged—is likely to be overturned on further review. Although inherent-power sanctions may be imposed to make an opposing party whole for injuries caused by the misconduct of the sanctioned litigant, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991), no showing has been made here of injury to the States that can be attributed to DHS's pre-injunction grants of three-year rather than two-year terms of deferred action to aliens who already fell within the existing 2012 DACA policy, especially where that policy has not been challenged by the States, and the third year still has not come into effect. Instead, the May 19 Order, we submit, improperly requires DHS to produce sensitive personally identifiable information regardless of whether a State makes the showing of remediable harm required under the Court's Order, *see* May 19 Order at 22-23, and does so, moreover, while the November 2014 Guidance remains under review by the Supreme Court, as the Order recognizes, *id.* at 23. Thus, the Court's Order compels immediate transmission of highly personal information about tens of thousands of individuals that (even though that information is to be kept under seal for the time being) could irrevocably breach the confidence of these individuals (and of others who submit

5

information to USCIS) in the privacy of such records, and will impose significant administrative burdens and expense on DHS, *see* Declaration of León Rodríguez, dated May 31, 2016 (filed herewith) ("Rodríguez Decl."), ¶¶ 6-26, all without a showing that it is "necessary to accomplish [a] legitimate … purpose" for which the inherent power may be summoned. *See Kenyon Int'l Emergency Servs., Inc. v. Malcolm*, 2013 WL 2489928, at *6 (5th Cir. May 14, 2013).

With regard to the Department of Justice, the Court's Order directs, for the next five years, "that any attorney employed at the Justice Department in Washington, D.C. who appears, or seeks to appear, in a court (state or federal) in any of the 26 Plaintiff States annually attend a legal ethics course," of no less than three hours' duration, that "include[s] a discussion of the ethical codes of conduct … applicable in that jurisdiction." May 19 Order at 25. The stated purpose of this mandate is "to ensure that all Justice Department attorneys who appear in the courts of the Plaintiff States … are aware of and comply with their ethical duties …." *Id.* at 24-25. This, and other obligations imposed on the Department,[2] exceed the Court's authority.

The Department of Justice is committed to maintaining high standards of ethical conduct and professionalism for its attorneys. Department policy requires, with few exceptions, that its attorneys annually complete at least four hours of professionalism training (above and beyond any State bar requirements), including at least two hours of instruction in professional responsibility and one hour in government ethics, to ensure that Department of Justice attorneys receive the training needed to perform at the high level of professional and ethical standards

---

[2] The Attorney General is also directed (1) to "appoint a person within the Department to ensure compliance" with the Court's ethics-training requirements, May 19 Order at 26, (2) within 60 days, to develop a "comprehensive plan" to ensure that Department lawyers "will not … unilaterally decide what is 'material' and 'relevant' in a lawsuit and then misrepresent that decision to a Court," *id.*, and, (3) also within 60 days, to inform the Court "what steps she is taking to ensure that the Office of Professional Responsibility effectively polices the conduct of the Justice Department lawyers and appropriate disciplines those whose actions fall below [expected] standards," *id.* at 27.

6

expected of them. Declaration of Lee J. Lofthus, dated May 31, 2016 (filed herewith) ("Lofthus Decl."), ¶¶ 6, 8.[3] We submit that this Court has no inherent authority to superimpose additional ethics-training requirements applicable to more than 3,000 Department of Justice attorneys, *see id.*, ¶ 11, for the purpose of assuring that Department lawyers meet qualifications of the Court's choosing when they appear *before other tribunals*, such as state and federal courts in the Plaintiff States, *see* May 19 Order at 24. "[T]he limited reach of [a] court's inherent authority" does not extend to policing proceedings in other courts that do not threaten its own judicial authority in the cases before it. *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460-61 (5th Cir. 2010) (citing *Maxxam*, 523 F.3d at 593); *see also In re FEMA Trailer*, 401 F. App'x at 883-84. Rather, the purpose of the inherent power is "the control of the litigation before [the court]." *Maxxam*, 523 F.3d at 591. It cannot be said that judicial supervision over the ethical training of more than 3,000 Department of Justice attorneys who may appear in courts (state or federal) located in one or more of twenty-six States is essential to preserve the Court's authority over the cases pending, or the counsel appearing, before it. *Positive Software*, 619 F.3d at 460; *In re FEMA Trailer*, 401 F. App'x at 884.

The Court's Order also exceeds its authority because compelling the Attorney General to implement a prescribed supplementary program of legal ethics instruction for over 3,000 Department Attorneys unconnected to this case, and to appoint an official to implement the Court's order, contravenes the Constitution's separation of powers. "[I]f any power whatsoever

---

[3] In addition, the Department's Professional Responsibility Advisory Office is available to all Department attorneys to provide expert advice when questions arise about how to conform their conduct to the rules of professional responsibility. *See* https://www.justice.gov/prao/about-office. And when allegations are made of professional misconduct by Department attorneys, the Office of Professional Responsibility reviews and as appropriate investigates each allegation, and refers findings of misconduct to the Professional Misconduct Review Unit for review and a determination of appropriate disciplinary action. *See* https://www.justice.gov/opr/about-office-and-opr-policies-and-procedures.

is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 492 (2010); *see Myers v. United States*, 272 U.S. 52, 164 (1926). By imposing a different standard as to the qualifications that Department of Justice attorneys must meet in order to appear on behalf of the United States in state and federal courts located in the twenty-six Plaintiff States, the Government respectfully submits that the Court has interfered with the Attorney General's executive authority both to determine who will appear on behalf of the United States in litigation, *see* 28 U.S.C. § 517, and to direct the attorneys under her supervision in the performance of their duties, *id.* § 519. We therefore submit that the Court's May 19 Order encroaches on central prerogatives of the Executive Branch as established by the Constitution and statutes, in violation of the separation of powers. *See Miller v. French*, 530 U.S. 327, 341 (2000); *see also Bond v. United States*, 564 U.S. 211, 222 (2011); *New York v. United States*, 505 U.S. 144, 182 (1992).

The Government is therefore likely on further review to succeed in arguing that the Court's sanctions orders must be reversed.

## II. THE GOVERNMENT WILL BE IRREPARABLY HARMED ABSENT A STAY.

The Government will suffer irreparable harm if the May 19 Order is not stayed pending review in the Fifth Circuit.

The May 19 Order intrudes on core Executive functions and imposes heavy administrative burdens and costs on both DOJ and DHS that cannot be recouped. As discussed above, the relief ordered against the Department of Justice encroaches upon the Attorney General's authority to oversee the conduct of litigation involving the United States and to supervise Department of Justice attorneys in the performance of their duties. Involvement by the Court in such matters of executive administration constitutes a significant injury, *Stieberger v.*

8

*Bowen*, 801 F.2d 29, 33-34 (2d Cir. 1986), which is irreparable as it involves the "intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project of Los Angeles Cty. Fed'n of Labor*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers) (citing *Heckler v. Lopez,* 463 U.S. 1328, 1336-37 (1983) (Rehnquist, J., in chambers); *FCC v. Pottsville Broad. Co.,* 309 U.S. 134, 141 (1940)).

The expenditures of money and manpower that the order requires of the Department of Justice are also significant. The estimated cost to the Department (and in turn, to the American taxpayer) in terms of direct expenditures and lost productivity would be between approximately $1 million and $1.5 million this year alone. *See* Lofthus Decl. ¶ 10. The costs over five years could total nearly $8 million. *See id.*; *see also id.* ¶¶ 11-20. These losses of taxpayer funds and productivity can never be recouped.

Further, requiring DHS to produce "all personal identifiers" and "all available contact information" for approximately 50,000 individuals by June 10, 2016, could undermine public trust in DHS's commitment to protecting the confidential information contained in immigration files and will create a significant burden. Rodríguez Decl. ¶¶ 6-26. With respect to public trust, even though the information is to be provided under seal, the production of sensitive personal information in such large quantities would be very likely to undermine individuals' trust in DHS's ability to maintain the confidentiality of personal information provided to it, a trust that is essential to its mission. *See id.* ¶¶ 6-21. With respect to the burden, and particularly in light of the short deadline for compliance, we understand the May 19 Order to encompass all contact information that is practically available by that deadline, namely, all contact information available in DHS's main electronic database, which includes A-numbers, names, addresses, and dates of deferred action. If this Court's Order were interpreted more broadly to demand any

9

contact information in DHS's possession, including in other electronic systems and hardcopy files that potentially have contact information different from or not included in the CLAIMS 3 system, that review would be extraordinarily burdensome, taking an estimated 17,350 personnel hours at a cost of more than $1 million, Rodríguez Decl. ¶ 22, all of which will be unrecoverable, and expended for little additional practical gain. *See, e.g., id*. ¶¶ 23-25.

A stay of the public order is necessary, therefore, to prevent irreparable injury to the Government.

### III. THE PUBLIC INTEREST AND BALANCE OF EQUITIES FAVOR A STAY.

Although the first two stay factors are most critical, the Court should consider whether "issuance of the stay will substantially injure the other parties interested in the proceeding" and "where the public interest lies." *Chafin v. Chafin*, --- U.S. ---, 133 S. Ct. 1017, 1027 (2013). Where the Government is a party, its interests and the public interest overlap in the balancing of harms. *See Nken v. Holder*, 556 U.S. 418, 420 (2009).

First, the order risks injury to tens of thousands of third parties who were brought to this country as children, and who are not parties to this litigation, in circumstances where the States have not identified harm that would justify such an intrusion. The urgency of providing private information about these 50,000 individuals is also unexplained; the information is contained in permanent DHS files, will remain available, and can be produced at a future time if warranted. Rodríguez Decl. ¶ 9. In addition to the injury to these persons risked by the disclosure of their sensitive personal information, requiring the United States to produce that information to the Court and potentially to the States would deter aliens from providing the Government with personal information that is critical to the administration and enforcement of immigration laws in any number of circumstances. That includes, but is not limited to, participants in 2012 DACA (a

policy which is unchallenged in this litigation) by undermining public confidence in the safety of personal information provided to DHS.  *See, e.g.,* Rodríguez Decl. ¶¶ 6-14, 17-19.  Second, if not stayed the May 19 Order would require both DOJ and DHS to divert financial and personnel resources from their intended public purposes, to the detriment of the public interest.  Lofthus Decl. ¶¶ 11-20; Rodríguez Decl.  ¶¶ 22-26.

In contrast to the distinct and immediate harm to third parties, and to the public interest in effective law enforcement and the conservation of public resources, Plaintiffs have demonstrated no injury that would be remediated by the sanctions imposed by the May 19 Order, and any injury to Plaintiffs suggested by the Order would not be imminent, and ultimately likely would be minimal given the ability of 2012 DACA recipients to request renewal of their terms whether they end after two or three years.  *See* ECF No. 305.  Thus, the "balance of the equities weighs heavily in favor of granting the stay."  *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981).

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court's public order issued May 19, 2016, be stayed pending further review, whether by appeal, mandamus, or both.

Dated:  May 31, 2016

                                              Respectfully submitted,

KENNETH MAGIDSON  
United States Attorney

DANIEL DAVID HU  
Assistant United States Attorney  
Chief, Civil Division

BENJAMIN C. MIZER  
Principal Deputy Assistant Attorney General

JOYCE R. BRANDA  
Deputy Assistant Attorney General

AUGUST E. FLENTJE  
Special Counsel

11

JENNIFER D. RICKETTS
Director, Federal Programs Branch
Attorney-in-Charge (VA Bar No. 29281)


 */s/  James J. Gilligan*
JAMES J. GILLIGAN
Special Litigation Counsel

Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
Tel.:  (202) 514-3358
Fax:  (202) 616-8470
james.gilligan@usdoj.gov

*Counsel for Defendants*