**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § § § | |
| Plaintiffs, | § | |
| v. | § § | Case No. 1:14-cv-254 |
| UNITED STATES OF AMERICA, *et al.*, | § § | |
| Defendants | § § | |
| and | § § | |
| JANE DOE #1, JANE DOE #2, AND JANE DOE #3, | § § § | |
| Defendant-Intervenors | § § § | |
| | § | |

**JANE DOES' RESPONSE IN SUPPORT OF DEFENDANTS' MOTION TO STAY**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................................... 1

NATURE AND STATE OF THE PROCEEDING ....................................................................... 2

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ........................................... 2

ARGUMENT ................................................................................................................................. 3

     I.     THE COMPELLED DISCLOSURE OF DACA RECIPIENTS'
           SENSITIVE PERSONAL INFORMATION IS LIKELY TO BE
           OVERTURNED ON APPEAL OR MANDAMUS .............................................. 3

           A.     This Court Is Divested Of Jurisdiction To Issue New Merits Relief
                   While The Preliminary Injunction Appeal Is Pending ............................... 3

           B.     This Court Exceeded Its Authority Under The Sanctions Power ............. 5

           C.     Because Plaintiffs Must Honor The Three-Year DACA Grants,
                   They Have No Legitimate Use For DACA Recipients' Personal
                   Information ................................................................................................ 8

     II.    MANY THOUSANDS OF DACA RECIPIENTS AND POTENTIAL
           DAPA AND DACA RECIPIENTS ARE ALREADY SUFFERING
           IRREPARABLE INJURY AS A RESULT OF THE COURT'S MAY 19
           ORDER ............................................................................................................. 10

     III.   PLAINTIFFS HAVE NO LEGITIMATE USE FOR THE
           INFORMATION AND WILL SUFFER NO INJURY IF A STAY IS
           GRANTED ........................................................................................................ 12

     IV.   THE PUBLIC INTEREST STRONGLY SUPPORTS GRANTING A
           STAY ................................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ................................................................................ 3

*Alice L. v. Dusek*,
  492 F.3d 563 (5th Cir. 2007) ............................................................................. 3, 4

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ............................................................................................. 8

*Carroll v. Jaques Admiralty Law Firm, P.C.*,
  110 F.3d 290 (5th Cir. 1997) ............................................................................... 7

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ............................................................................................ 5, 7

*Church v. City of Huntsville*,
  30 F.3d 1332 (11th Cir. 1994) ............................................................................. 9

*City of Los Angeles v. Lyon*,
  461 U.S. 95 (1983) ............................................................................................... 9

*Coastal Corp. v. Texas Eastern Corp.*,
  869 F.2d 817 (5th Cir. 1989) ............................................................................. 3, 5

*Davis v. Yazoo Cnty. Welfare Dept.*,
  58 F.3d 635 (5th Cir. 1995) (per curiam unpublished) ...................................... 5

*Dayton Indep. School Dist. v. U.S. Mineral Prods. Co.*,
  906 F.2d 1059 (5th Cir. 1990) ........................................................................... 3, 5

*F.D.I.C. v. Maxxam, Inc.*,
  523 F.3d 566 (5th Cir. 2008) ............................................................................. 5, 8

*Fiber Systems Int'l, Inc. v. Roehrs*,
  470 F.3d 1150 (5th Cir. 2006) ............................................................................. 9

*Griggs v. Provident Consumer Discount Co.*,
  459 U.S. 56 (1982) ............................................................................................... 3

*In re Bradley*,
  371 B.R. 782 (W.D. Tex. Bnkr. 2007) ................................................................. 9

*In re Envirodyne Indus., Inc.*,
  29 F.3d 301 (7th Cir. 1994) ................................................................................. 6

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977) ................................................................................................. 6

*Lion Health Servs. v. Sebelius*,
    635 F.3d 693 (5th Cir. 2011) ................................................................................. 8

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
    470 U.S. 373 (1985) ................................................................................................. 3

*Natural Gas Pipeline Co. v. Energy Gathering, Inc.*,
    86 F.3d 464 (5th Cir. 1996) ................................................................................... 6

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................................. 3

*Porter v. Lee*,
    328 U.S. 246 (1946) ................................................................................................. 8

*Thomas v. Capital Sec. Servs., Inc.*,
    836 F.2d 866 (5th Cir. 1988) (en banc) ............................................................. 6, 7

*Toon v. Wackenhut Corr. Corp.*,
    250 F.3d 950 (5th Cir. 2001) ................................................................................. 6

*Topalian v. Ehrman*,
    3 F.3d 931 (5th Cir. 1993) ..................................................................................... 5

## Other Authorities

Fed. R. Civ. P. 11(b) .................................................................................................... 5

Fed. R. Civ. P. 62(c) ............................................................................................... 2, 3

5A Charles A. Wright et al., *Fed. Prac. & Proc.* § 1336.3 (3d ed. 2016) ..................... 6

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

The United States Supreme Court is expected to decide the currently pending merits appeal in this case within the next few weeks.  In that context, further merits relief beyond the preliminary injunction being considered on appeal is inappropriate and beyond this Court's jurisdiction.  Yet this Court's May 19, 2016 order instructs the Federal Government Defendants to turn over the sensitive personal information of thousands of innocent strangers to this litigation—recipients of Deferred Action for Childhood Arrivals (DACA) who applied for deferred action under that initiative, which has never been enjoined and is not at issue in this suit, and were granted three-year terms of deferred action rather than two-year terms.  The sole and explicit purpose of this order is so that this Court can consider releasing DACA recipients' sensitive personal information to Plaintiffs so they can redress the injuries they allege they suffered as a result of the November 2014 DAPA guidance.  This order is not an appropriate sanction for any misconduct by the Defendants' attorneys, but is instead a new mandatory injunction that exceeds this Court's jurisdiction.

The Jane Doe Defendant-Intervenors file this brief in support of the Federal Government Defendants' Motion to Stay the portion of the May 19, 2016 order requiring the filing of personal information of certain recipients of deferred action.  In doing so, the Does take no position on the portion of the May 19, 2016 order imposing additional ethics requirements as sanctions against the Department of Justice and certain of its attorneys.  Whatever the propriety of these latter sanctions, the release of the personal information of vast numbers of individuals—individuals who have not been heard by and are not represented before this Court—concerns the merits of Plaintiffs' action, over which this Court has no jurisdiction during the pendency of the preliminary injunction appeal.  Moreover, the order exceeded the bounds of the sanctions power, and violates the rule that district courts can only issue necessary, narrowly-tailored injunctive

relief.  A stay is required with respect to the compelled divulgence of DACA recipients' personal

information in order to protect unrepresented individuals from substantial potential harm while a

separate appeal of this Court's May 19, 2016 order is pursued and resolved in the Fifth Circuit.

## NATURE AND STATE OF THE PROCEEDING

Defendants' appeal of the February 16, 2015 preliminary injunction is pending at the U.S.

Supreme Court and is likely to be decided within several weeks.  That appeal concerns all merits

questions in this case, including the questions of whether Plaintiffs have standing to sue and

whether Plaintiffs are likely to succeed in their claims that DAPA is invalid under the APA or

the U.S. Constitution.  While that appeal is pending, this Court is divested of jurisdiction to

consider merits issues or to grant new merits relief to Plaintiffs, and it has accordingly stayed the

merits of the case pending appeal.  However, on May 19, this Court entered an order that

purports to grant sanctions against Defendants and their counsel, but in fact grants Plaintiffs new

mandatory injunctive relief while the Court's prior injunction remains under consideration on

appeal.  *See* ECF No. 347.  Defendants have indicated they intend to seek review of the May 19

order and to that end have already filed a mandamus petition.  The Jane Does also intend to seek

review of the portion of the order compelling divulgence of the sensitive personal information of

tens of thousands of DACA recipients, a form of new injunctive relief that is appealable by right.

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

This Court should stay its May 19 order pending appeal to the Fifth Circuit.  The portion

of the order ordering divulgence of DACA recipients' personal information constitutes new

injunctive relief, which may be appealed by right, and which this Court may stay pending appeal.

*See* Fed. R. Civ. P. 62(c).  The four factors considered in evaluating a request for a stay pending

appeal are (1) whether the parties seeking review are likely to succeed on the merits; (2) whether

irreparable injury will result absent a stay; (3) whether issuing the stay will substantially injure

other interested parties; and (4) the public interest.  *See Nken v. Holder*, 556 U.S. 418, 426

(2009).  All factors are satisfied here.

**ARGUMENT**

**I.    THE COMPELLED DISCLOSURE OF DACA RECIPIENTS' SENSITIVE
PERSONAL INFORMATION IS LIKELY TO BE OVERTURNED ON APPEAL
OR MANDAMUS**

**A.    This Court Is Divested Of Jurisdiction To Issue New Merits Relief While The
Preliminary Injunction Appeal Is Pending**

This Court lacks jurisdiction to compel divulgence of the personal information of three-

year DACA recipients while Defendants' appeal of the preliminary injunction is pending.  "The

filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on

the court of appeals and divests the district court of its control over those aspects of the case

involved in the appeal."  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982);

*accord Dayton Indep. School Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063 (5th Cir.

1990) (interlocutory appeal divests jurisdiction over related issues).  At the time the notice was

filed, the Fifth Circuit (and later the Supreme Court) took control of the appealed issues, and any

further action by this Court to interfere with the merits of the case are inappropriate.  This Court

may "maintain[] the status quo" as it existed at the time of the filing of the appeal pursuant to

Federal Rule of Civil Procedure 62(c), but it may not enter new injunctions or grant new relief.[1]

*Coastal Corp. v. Tex. Eastern Corp.*, 869 F.2d 817, 820 (5th Cir. 1989).

In this instance, the preliminary injunction appeal concerns all merits issues in the case,

notably including Plaintiffs' standing to sue, but also whether Plaintiffs are likely to succeed in

obtaining merits relief on their claims that the DAPA guidance memorandum—including the

---

[1] For this reason, the Jane Does do not dispute that the Court had jurisdiction to order relief with respect to the approximately 2,000 *post*-injunction three-year DACA grants.  Likewise, this Court has jurisdiction to enter orders entirely unrelated to the preliminary injunction appeal, such as the Jane Does' own bid for intervention.  *See, e.g.*, *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985); *Alice L. v. Dusek*, 492 F.3d 563, 565 (5th Cir. 2007); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 233 (5th Cir. 2009).

3

portion allowing DACA recipients to receive three-year terms of deferred action—violates the procedural and substantive requirements of the APA as well as the U.S. Constitution.  The scope of that appeal clearly encompasses all issues relating to Plaintiffs' claims that they are entitled to relief for any injury they may be suffering as a result of the DAPA guidance.  As a result, this Court is entirely divested of jurisdiction to grant Plaintiffs additional merits relief while the appeal is pending. *See Alice L. v. Dusek*, 492 F.3d 563, 565 (5th Cir. 2007).

The May 19 order violated this rule by granting such relief—a chilling public order requiring divulgence of DACA recipients' sensitive personal information under seal for later potential disclosure to Plaintiffs.  It contemplates that this information will allow Plaintiffs to remedy some "actual or imminent damage" they are allegedly suffering, demonstrating that the compelled information disclosure is not really a sanction, but is instead a form of injunctive relief meant to provide a remedy for an injury.  Providing this asserted "remedy" to Plaintiffs is merits relief that must await the resolution of the appeal currently pending in the Supreme Court.

The Plaintiffs cannot be suffering a legally remediable "injury" as a result of the three-year grants of deferred action if they lack standing or if DAPA is legal.  Thus, the May 19 order necessarily implicates the pending appeal.  Moreover, as discussed below, the compelled divulgence of information would not merely maintain the status quo that existed at the time of the injunction; rather, it would help Plaintiffs accomplish what they seek in their merits claims, to redress their purported injuries from Defendants' initiation and expansion of the deferred action initiatives.  Hr'g Tr 43:24-25, Aug. 19, 2015, ECF No. 299 (hereinafter "Aug. 19 Tr.").

As a consequence, the portion of the May 19 order compelling disclosure of DACA recipients' information was entered without jurisdiction and is likely to be struck down on further review.  Where district courts have ruled on issues that are closely related, either

4

procedurally or substantively, to those on appeal, their jurisdiction has been held lacking.  *See,*
*e.g.*, *Coastal Corp.*, 869 F.2d at 820-21 (district court improperly dissolved injunction after
injunction's validity was appealed); *Dayton Indep. Sch. Dist.*, 906 F.3d at 1063-64 (district court
improperly ruled on claims while cases were on appeal, therefore "significantly chang[ing] the
status of the appeals"); *Davis v. Yazoo Cnty. Welfare Dept.*, 58 F.3d 635 (5th Cir. 1995) (per
curiam unpublished) (district court's post-appeal ruling, which aimed to "reconcile" findings
with decision in prior proceedings, was "ineffectual as a matter of law").  This Court lacked
jurisdiction to compel divulgence of DACA recipients' personal information as a potential
remedy for Plaintiffs' asserted harms, and thus should grant Defendants' motion to stay.

## B.    This Court Exceeded Its Authority Under The Sanctions Power

This Court may not sanction Defendants by compelling them to take actions that would
harm innocent non-parties, in this case, the 50,000 or more recipients of three-year grants of
deferred action under the 2012 DACA eligibility criteria who would be affected by the May 19
order.  *See* ECF No. 354-2 (declaration of León Rodriguez).  While federal district courts may
issue sanctions under either Federal Rule of Civil Procedure 11(b) or their own inherent
authority, the sanctions power has limits; sanctions must always be "appropriate" and designed
to deter future improper conduct by *the sanctioned party*, rather than simply to provide recourse
to an injured party, and certainly rather than harming innocent strangers to the litigation.[2]
*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566,
590-91 (5th Cir. 2008) (noting that the power to sanction "is not a broad reservoir of power,
ready at an imperial hand, but a limited source; an implied power squeezed from the need to

---

[2] The Court's May 19 order does not make clear whether the sanctions imposed were pursuant to Rule 11(b) or its
inherent authority.  *See, e.g.*, Dkt. 347 at 12.  Given the somewhat different standards and policies underlying Rule
11(b) authority and inherent authority, this is another ground for appellate review that supports granting the motion
to stay.  *See Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993).

make the court function" (citation omitted)); *see also* 5A Charles A. Wright et al., *Fed. Prac. & Proc.* § 1336.3 (3d ed. 2016) (noting that the "main purpose" of the sanctions power "is to deter improper behavior, not to compensate the victims of it or punish the offender"). Moreover, the Fifth Circuit requires that district courts use "great restraint and caution" is issuing sanctions, whether under the inherent authority or under Rule 11. *Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 952 (5th Cir. 2001) (internal quote and citation omitted). Sanctions must be narrowly tailored to deter the type of misconduct in question, no more onerous than needed to accomplish the deterrence, and options for less restrictive sanctions must be exhausted before more expansive ones are employed. *See Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 878 (5th Cir. 1988) (en banc); *Natural Gas Pipeline Co. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

The Court's May 19 order disregards these limitations in a number of ways. The sweeping disclosure of personal information the Court has imposed does not affect the individuals who allegedly committed misconduct: Defendants' counsel who purportedly made misrepresentations to this Court. Requiring divulgence of the personal information of at least 50,000 three-year DACA recipients is naked punishment of *those individuals*, not of Defendants' counsel. And even if the order to divulge DACA recipients' information does have some indirect deterrent effect on Defendants' counsel—given that Defendants' counsel presumably do not wish harm to befall DACA recipients—it is unlawful because it violates "the age-old principle that in formulating equitable relief a court must consider the effects of the relief on innocent third parties." *In re Envirodyne Indus., Inc.*, 29 F.3d 301, 304 (7th Cir. 1994) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 375 (1977)). As this Court recognized last year, the DACA recipients at issue here are innocent bystanders. *See* Aug. 19 Tr. 44:21-45:2

6

(statement of the Court that the recipients "didn't do anything wrong . . . .  [A]s far as they are concerned they applied just like they were told to apply"); *see also id.* 43:25, 45:5-13 (statement of Plaintiffs' counsel as follows: "I agree, Your Honor, that they are kind of the victim . . . of what's happened with respect to [the three-year grants]").  As a practical matter, this Court has now ordered the Government to harm innocent bystanders as a means of punishing the Government's own counsel.  Such an order is likely to be overturned on appeal.

The order also violates three-year DACA recipients' own due process rights.  While Defendants had some opportunity to argue their positions before the Court—though without specific notice of the exact sanctions the Court was considering or the identities of the attorneys against which sanctions were being considered—none of the 50,000 or more three-year DACA recipients were given personal notice or a chance to argue against the Court's order.  Due process is required even when all that is at stake is a mere fine or disciplinary action.  *See Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292-93 (5th Cir. 1997) (quoting *Chambers*, 501 U.S. at 50); *Thomas*, 836 F.2d at 878.  Here, the potential damage to DACA recipients is much more severe—they risk having personal information divulged to Plaintiffs whose very lawsuit demonstrates hostility toward the presence of DACA recipients within their state borders.  When the magnitude of the sanctions is as great as it is for DACA recipients, the fact that none of the affected individuals were given any notice or opportunity to speak against the impending order demonstrates the constitutionally and legally suspect nature of the Court's order.  And, while it might be impractical to afford the required process to thousands of anonymous individuals, that is simply further proof that this Court's order went far beyond what the strict requirements of due process and the limited sanctions power allow.

Furthermore, less restrictive measures, such as any added form of sanction directly targeting the offending attorneys themselves—including referring the attorneys in question to their respective State bars for potential discipline, a sanction the Court did not consider—must be considered before taking more drastic steps. The Court's chosen sanction instead grants Plaintiffs a purported form of relief on their underlying claims. But the sanctions power "does not extend to the underlying conduct that gives rise to a claim." *Maxxam*, 523 F.3d at 593 (internal citation, quotation, and modifications omitted); *cf. Porter v. Lee*, 328 U.S. 246, 251 (1946) ("It has long been established that where a defendant with notice in an injunction proceeding completes the acts sought to be enjoined the court may *by mandatory injunction* restore the status quo." (emphasis added)). The Court's order goes beyond the sanctions power's proper aim of deterrence to subsume the merits issue of whether the three-year DACA grants made prior to the issuance of the injunction are unlawful and should instead be converted to two-year grants—an issue that cannot be considered while the injunction appeal is pending. For this reason as well, the compelled disclosure of DACA recipients' personal information is likely to be struck down on further review.

### C. Because Plaintiffs Must Honor The Three-Year DACA Grants, They Have No Legitimate Use For DACA Recipients' Personal Information

Finally, the compelled divulgence of information is likely to be struck down on appeal because Plaintiffs have no legitimate use for the information, and this Court thus has no power to order it disclosed or even filed under seal. "[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Lion Health Servs. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). As the Fifth Circuit has stated, "[t]he scope of injunctive relief is dictated by the extent of the violation established, and an injunction must be narrowly tailored to remedy the specific

8

action necessitating the injunction." *Fiber Systems Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1159 (5th Cir. 2006).

If the Supreme Court overturns the preliminary injunction for lack of standing or because the DAPA guidance is procedurally and substantively valid, Plaintiffs will have no basis for claiming damages or other relief, and thus not even a purported basis for requesting DACA recipients' information. But even if the Supreme Court declines to overturn the injunction, Plaintiffs will still have no claim on DACA recipients' information, for those grants remain valid and must be honored. DACA itself—the Government's ability to issue two-year grants of deferred action to individuals meeting the DACA criteria—is not challenged in this suit, and this Court has not enjoined the approximately 108,000 three-year DACA grants made between November 20, 2014 and the issuance of the injunction on February 16, 2015 (nor does it have jurisdiction to do so while the injunction appeal is pending), for its preliminary injunction applied only prospectively to forbid three-year grants made after it issued. *See City of Los Angeles v. Lyon*, 461 U.S. 95, 123-26 (1983); *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("injunctions regulate future conduct"); *In re Bradley*, 371 B.R. 782, 792 (W.D. Tex. Bnkr. 2007) ("An injunction can only be violated to the extent it is in existence when the actions complained of took place. It cannot reach back.").

As a result, Plaintiffs must continue to recognize all three-year DACA grants, and they have no legitimate use for DACA recipients' personal information; any attempt by Plaintiffs to deny licenses or benefits that are otherwise available to those individuals would violate federal and state law. Thus, Plaintiffs have no use for the information, and this Court has no power to order such patently unnecessary relief.

**II.     MANY THOUSANDS OF DACA RECIPIENTS AND POTENTIAL DAPA AND DACA RECIPIENTS ARE ALREADY SUFFERING IRREPARABLE INJURY AS A RESULT OF THE COURT'S MAY 19 ORDER**

The second factor also favors granting a stay because DACA recipients (including recipients of two-year DACA) are already suffering extreme fear, confusion, and stress as a result of the May 19 order, and this fear will only increase if the information is produced under seal as the Court has ordered. *See* ECF No. 354-2 at 3-10. The threatened disclosure has raised the chilling possibility that DACA recipients' personal information might be disclosed to hostile States, leading to widespread fear, stress, and anxiety for DACA recipients. *See* Ex. A (declaration of Javier H. G.). As stated, there is no reason for Plaintiffs to have this information at all, and in any event the compelled information disclosure will be entirely invalid if the Supreme Court rules against Plaintiffs. A stay should issue to avoid further injury to the three-year DACA recipients and others, like the Does, for whom the Court's order raises the fear that their information could be disclosed to hostile State employees.

Moreover, DACA recipients are currently suffering from well-justified fear that the ordered divulgence of information will lead to them and their families being targeted by state and local law enforcement, who could seek to detain undocumented individuals—even those with deferred action—and turn them over to DHS for removal (a valid fear, since neither DAPA nor DACA grant any form of status or defense to removal) or otherwise revoke benefits to which they are entitled or cut short their periods of deferred action. *See* Ex. A ¶ 10; *id.* ¶ 13 ("Particularly this year, when DHS has increased enforcement of removal orders in an operation known as Operation Border Guardian, many DACA recipients fear that disclosure of our personal information will lead to state or local police targeting our homes and turning over our relatives to DHS through existing inter-governmental agreements."); *id.* ¶ 14 ("Even if our relatives are low priorities for removal, they can be detained and placed into removal

10

proceedings at the discretion of federal immigration agents or local police with the intent to

contact immigration agents."). Indeed, Plaintiffs have impliedly threatened just these kinds of

raids, and have already hinted they would seek to target DACA recipients in their homes. *See*

Aug. 19 Tr. 32:19-33:1 (statement of Plaintiffs' counsel, in reference to the in-person home visits

by federal officers and other efforts Defendants went through to claw back the 2,000 three-year

work authorization documents granted after the injunction issued, that Texas would probably

have "to go through similar efforts" to claw back driver's licenses for three-year DACA

recipients).

Finally, ordering divulgence of information, even though it would remain under seal until

after the Supreme Court rules, creates the risk of a leak of this highly sensitive information to the

public, which would endanger the safety of DACA recipients and their families. The Jane Does

do not mean to suggest that either this Court or Plaintiffs' counsel, with whom undersigned

counsel has worked previously and who have acted in a fully professional manner in this matter,

would willingly release such information to the public. But this Court's order implicitly

contemplates that information released to Plaintiffs would be shared with non-attorneys at state

or local agencies in 26 separate states, as would be necessary for those agencies to act to reduce

the purported costs of issuing licenses or benefits to DACA recipients. Even if a robust

protective order is put in place, the fact that information would ultimately have to be shared with

hundreds or thousands of state actors creates an extreme risk that DACA recipients' sensitive

personal information will escape into the public domain. In the current political climate, this

kind of leak would be devastating, as it would expose the three-year DACA recipients and their

families to the specter of exposure, harassment, and intimidation, both by local law enforcement

11

that might not appreciate that they are recipients of discretionary relief from removal, and by private vigilantes.  *See* Ex. A ¶¶ 10, 13.

### III.  PLAINTIFFS HAVE NO LEGITIMATE USE FOR THE INFORMATION AND WILL SUFFER NO INJURY IF A STAY IS GRANTED

By contrast, Plaintiffs will suffer no injury—let alone an irreparable one—if the stay is granted.  The Court's rationale for ordering the disclosure of DACA recipients' sensitive personal identification is so that it may "release the list [of DACA recipients] or a portion thereof to the proper authorities" for "good cause (such as a showing by a state of actual or imminent damage that could be minimized or prevented by release of the information to one of the Plaintiff States)."  ECF No. 347 at 23.  But even assuming *arguendo* that granting driver's licenses or benefits under state law to DACA recipients harms Plaintiffs in the abstract—an issue currently pending before the Supreme Court—staying the Court's injunction pending appeal will not cause any such harm to Plaintiffs.

First, as already discussed, Plaintiffs have no *legitimate* use for DACA recipients' personal information, for they cannot use that information to reduce any costs they may suffer by issuing licenses or benefits to DACA recipients.  DACA itself is not at issue in this suit, and this Court has not enjoined the three-year grants of deferred action to DACA recipients made prior to February 16, 2015.  While this Court has made clear that it would have acted sooner to enter the preliminary injunction had it been aware that three-year grants were being issued after November 20, 2014, *see* ECF No. 347 at 18-19, the fact remains that this Court did not do so, and the preliminary injunction has no retroactive effect.  As a result, the three-year DACA grants made prior to February 16, 2015 remain fully valid, and Plaintiffs must honor them as they honor all other grants of deferred action.  Thus, Plaintiffs have no legitimate purpose for obtaining the

information, for they cannot legally revoke anything granted to the DACA recipients affected by this Court's May 19 order.

Second, even if Plaintiffs could revoke licenses or benefits to these individuals, they do not need information from Defendants in order to do so. Those Plaintiffs who have issued term-limited licenses or benefits for three years instead of for two should easily be able to determine, from their own records, which DACA recipients have received such benefits. Plaintiffs have not made any showing that this information is in fact necessary for them to determine which DACA recipients have obtained three-year grants of State licenses or benefits, as they should be required to do before Defendants are compelled to divulge immigrants' sensitive personal information.

Third, even if Plaintiffs could make legitimate use of DACA recipients' information and they in fact needed the information to do so, they do not need it now or any time soon. Because all DACA recipients who received three-year terms of deferred action would still be eligible to have their grants converted to two-year terms of deferred action under the original DACA criteria, Plaintiffs would not suffer any damages as a result of the DAPA memorandum until after November 20, 2016 at the earliest, the first point at which the three-year DACA terms would begin expiring were they converted to two-year terms. Likewise, this Court's decision to wait eight-and-a-half months following the September 4, 2015 close of briefing on sanctions to resolve the issue belies any argument that there is an urgent need for Defendants to produce DACA recipients' personal information. *See* ECF No. 304; ECF No. 305; ECF No. 306-1. For this reason as well, the May 19 order should be stayed pending appeal.

## IV.   THE PUBLIC INTEREST STRONGLY SUPPORTS GRANTING A STAY

Finally, the public interest more generally favors staying the May 19 order pending further review. As Defendants' motion and supporting declarations demonstrate, requiring divulgence of information, even under seal, would cause significant institutional harm to the

immigration enforcement system, further degrade immigrants' confidence that they will receive fair treatment if they come forward to be registered and counted, and cause pointless expense to the public fisc. *See* ECF No. 354-1; ECF No. 354-2. Critically, all of this damage will be for naught if the Supreme Court reverses the preliminary injunction, because a reversal would eliminate any basis for divulging DACA recipients' information to Plaintiffs. There is no conceivable reason why the information should be turned over to this Court while the appeal remains pending.

The lack of urgency is particularly acute given the delay in ordering sanctions and the timing of the ordered filing—just before the expected end-of-June release of the Supreme Court's opinion on the injunction appeal, which may hold that Plaintiffs are not entitled to any relief whatsoever. While the Court stated in its May 19 order that it delayed ruling because it previously "could not reasonable foresee a fact scenario in which the case would not ultimately be remanded," ECF No. 347 at 3, the Jane Does respectfully submit that explanation ignores the obvious fact that the foremost issue in the pending appeal is and has always been whether Plaintiffs have standing to sue, which will resolve the entire case if decided against Plaintiffs. This Court's decision to delay until just before the Supreme Court is expected to issue its opinion is further proof of the need to stay the compelled disclosure of DACA recipients' information pending resolution of the appeal of the May 19 order.

14

Dated:  June 5, 2016

Respectfully submitted,

**O'MELVENY & MYERS LLP**
Adam P. KohSweeney (Cal. Bar No. 229983)*
Gabriel Markoff (Cal. Bar. No. 291656)*
2 Embarcadero Center 28th Floor
San Francisco, CA 94111-3823
Phone:  (415) 984-8700
Facsimile:  (415) 984-8701

**DLA PIPER LLP**
Linda J. Smith (Cal. Bar. No. 78238)*
2000 Avenue of the Stars, Ste. 400N
Los Angeles, CA 90067
Phone: (310) 595-3038
Facsimile: (310) 595-3300

*Admitted *pro hac vice*.

**MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND**
**By** */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046;
Southern District of Tex. Bar No. 21127)
Attorney-in-Charge
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone:  (210) 224-5476
Facsimile:  (210) 224-5382

Attorneys for **JANE DOE #1**, **JANE DOE #2,** and **JANE DOE #3**

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of June 2016, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Nina Perales*

Nina Perales (Tex. Bar No. 24005046)
*Attorney-in-Charge for Jane Doe #1, Jane Doe #2, and Jane Doe #3*