**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 1:14-cv-254 |
| UNITED STATES OF AMERICA, *et al.*, | § § | |
| Defendants | § § | |
| and | § § | |
| JANE DOE #1, JANE DOE #2, AND JANE DOE #3, | § § § | |
| Defendant-Intervenors | § § § § | |

**MOTION TO USE PSEUDONYMOUS DECLARATION OF JAVIER H. G. IN
SUPPORT OF RESPONSE TO DEFENDANTS' MOTION TO STAY**

# INTRODUCTION

Defendant-Intervenors Jane Does #1-3 (the "Doe Intervenors" or "Does") seek to file a declaration in support of their Response in Support of Defendants' Motion to Stay (ECF No 356; ECF No. 356-1). The declarant is a recipient of a three-year grant of DACA, made in January 2015, prior to the issuance of the preliminary injunction, and provides evidence of the negative effect of the ordered disclosure of the names and other identifying information of DACA recipients.

In order for the Doe Intervenors to protect the safety and privacy of the declarant, the declarant must proceed using a pseudonym.  The declarant's name, address and other identifying information is maintained in confidence by the Government, and the Court-ordered disclosure will breach the confidentiality of USCIS as well as create a climate of fear and anxiety for declarant and other similarly-situated individuals.  Furthermore, groups of individuals, and even some officials, have created an atmosphere of fear, bias, and xenophobia in Texas.  Since the beginning of 2014, border areas of Texas have seen the arrival of armed "militias" that advocate a culture of violence and intimidation against undocumented immigrants. *See, e.g.*, ECF No. 92-1 at 22-24, Perales Decl. Ex. A (January 6, 2015 Houston Chronicle article reporting a surge in armed border militias and quoting a militia member's statement that "You see an illegal.  You point your gun dead at him, right between his eyes, and you say, 'Get back across the border or you will be shot.'").  Meanwhile, some of Texas's own high-ranking elected officials have contributed to this atmosphere of intolerance, claiming that undocumented immigrants are a threat to Texas.  *See, e.g.*, ECF No. 92-1 at 26-27, Perales Decl. Ex. B (Houston Chronicle article recording 2014 statement of Texas Lieutenant Governor-elect Dan Patrick that undocumented immigrants "threaten your family.  They threaten your life.  They threaten your business.  They threaten our state.").   The Doe Intervenors rightfully fear that the declarant in support of their

1

response will be subject to unlawful intimidation, violence, and harassment if his identity is disclosed in this suit. Accordingly, the Doe Intervenors respectfully request that this Court grant their motion to file their declaration, which is made under a pseudonym.

## NATURE AND STATE OF THE PROCEEDING

The 2012 federal guidance known as Deferred Action for Childhood Arrivals ("DACA") is not challenged in this suit.

The declarant, Javier H. G., is a resident of Houston and is 23 years old. He received a 3-year grant of deferred action under DACA on January 8, 2015. He graduated in December 2014 from the University of Houston with a bachelor's degree in Psychology and, this past year, he worked as a tutor at a high school in Houston. He is also a member of an organization of undocumented young people and their allies that advocates for the dignity and fair treatment of immigrant youth and their families. Through that organization, he has come to know other DACA recipients and has personal knowledge of their experiences with and concerns about being undocumented and receiving DACA. *See* ECF No. 356-1.

When Javier H. G. applied for DACA, he provided USCIS his name, address, photo, fingerprints, travel history, educational background, marital status, school transcripts and medical records. He lives with his mother, who is undocumented, and a younger brother who is a DACA recipient, and is particularly concerned that disclosure of his sensitive personal information will lead to identification, harassment and the possible initiation of removal proceedings against his mother. *See* ECF No. 356-1.

In his declaration, Javier H.G. describes the negative effect of the Court-ordered disclosure on himself and other similarly situated recipients of three-year DACA grants, including loss of confidence in the Government's ability to maintain the confidentiality of sensitive personal information, anxiety and fear resulting from the loss of control over one's

information, and deterrence from seeking future immigration benefits from USCIS, as well as the fear that the contemplated further release of sensitive personal information to the Plaintiff states will cause the states to take negative action against them, including revoking their state identification cards or driver's licenses, leaking their information or attempting to cut short, through state action, their periods of deferred action. *See* ECF No. 356-1.

## STATEMENT OF THE ISSUE TO BE DECIDED BY THIS COURT

The issue this Court must decide is whether, because the instant Motion to Stay seeks to protect the identity and sensitive personal information of recipients of three-year grants of deferred action, and in the current atmosphere of hostility toward undocumented immigrants in Texas and in Texas politics, the Doe Intervenors' declarant Javier H. G. meets the criteria for proceeding under a pseudonym in this Court. *See Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). There is no doubt that the answer is in the affirmative.

## SUMMARY OF THE ARGUMENT

The Doe Intervenors should be granted leave to file their declaration, which is made under the pseudonym "Javier H. G." Although there is no bright-line rule for proceeding anonymously, the Fifth Circuit has laid out certain factors, all of which counsel toward allowing anonymity to the Doe Intervenors' declarant in this case.

First, the pending Motion to Stay turns precisely on the question of whether the identifying information of individuals like the declarant, who received three-year grants of deferred action under DACA, will remain confidential. In order to provide important evidence to the Court, and to preserve the confidentiality of this information for the declarant, the Doe Intervenors must be allowed to file his pseudonymous declaration.

Second, and an independent reason for granting anonymity, the current atmosphere of hostility toward undocumented immigrants in Texas makes clear that the Doe Intervenors' fear

3

that their declarant will experience harassment and intimidation is valid. Vigilante activity by private individuals, coupled with incendiary statements from leading political figures, demonstrate that the Doe Intervenors would be at risk should their names be released in this high-profile lawsuit.

Finally, allowing the Doe Intervenors' declarant to proceed under a pseudonym would promote the public interest by allowing the declarant to provide important evidence in this lawsuit. The negative effects of forcing the Government to disclose sensitive personal information to the Court, for possible further release to the Plaintiff states, will be felt not only by recipients of three-year grants under DACA, but also by the Doe Intervenors themselves and other non-citizen immigrants who must have confidence in the Government's ability to protect their information in order to seek any immigration relief in the future. The disclosure of immigrants' sensitive personal information by USCIS to any entity, including this Court, jeopardizes the Doe Intervenors' well-being and trust in the Government.

## ARGUMENT

### I. THE PROPOSED DECLARATION WOULD SUBJECT THE DOE INTERVENORS' DECLARANT TO LOSS OF PRIVACY AND RISK OF HARASSMENT, THUS FULFILLING THE FIFTH CIRCUIT'S CRITERIA FOR PROCEEDING ANONYMOUSLY

#### A. Legal Standard

The Fifth Circuit does not recognize a "hard and fast formula for ascertaining whether a party may sue anonymously." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). Rather, "[t]he decision requires a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* Although the threat of a hostile public reaction to a lawsuit, without more, generally does not justify anonymity, the threat of "extensive harassment and perhaps even

4

violent reprisals if . . . identities are disclosed" will often tip the balance in favor of allowing parties to proceed under pseudonyms. *Id.* In addition to and in conjunction with threats of harassment and violence, three other factors are commonly considered, although none of them is dispositive and they do not constitute a "rigid, three step test" for determining a party's right to proceed anonymously. *Id.* at 185 (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979)). These factors, which favor anonymity, are that (1) the parties seeking anonymity are suing to challenge government activity; (2) the bringing of the lawsuit compelled the parties to disclose information "of the utmost intimacy"; and (3) by filing suit, the parties are compelled to admit their intention to engage in illegal conduct. *Stegall*, 653 F.2d at 185. These factors are not exhaustive, however, *see Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 266 (E.D. Tex. 2007), and other factors may be considered as well.

**B.     The Purpose Of The Pseudonymous Declaration Is To Protect Declarant, The Doe Intervenors, And Others From Forced Disclosure Of Sensitive And Identifying Information Maintained By The Government**

The Doe Intervenors submit their brief in support of the Government's Motion to Stay in order to persuade the Court not to require the Government, at this time, to file the names and other sensitive information of recipients of three-year grants under DACA. In order to avoid the Catch-22 of having to reveal his name in order to protect it from disclosure, the Doe Intervenors' declarant must proceed pseudonymously.

Now, more than ever, the confidentiality promised by the Government to deferred action recipients is essential to their safety and well-being. Since issuance of the Court's May 19 order, recipients of three-year grants have been thrust into the national spotlight, even though 2012 DACA is not at issue in the case and recipients of three-year grants are innocent bystanders to the controversy surrounding the actions of the Government between November 2014 and February 2015. *See* Hr'g Tr. 44:21-45:2, Aug. 19, 2015, ECF No. 299 (statement of the Court

5

that the recipients "didn't do anything wrong . . . . [A]s far as they are concerned they applied just like they were told to apply").

The widespread media coverage of the Court's May 19 order and subsequent proceedings in this Court have brought unwelcome attention to individuals who remain undocumented despite the temporary receipt of deferred action. *See, e.g.*, Andrea Noble & Stephen Dinan, *Obama accuses judge of scaring illegals away from signing up for amnesty*, THE WASHINGTON TIMES, May 31, 2016 (last visited June 5, 2016)[1]; Julia Preston, *Justice Dept. Says Judge In Immigration Case Is Out Of Bounds*, NEW YORK TIMES, May 31, 2016 (last visited June 5, 2016)[2]; Matt Zapotosky, *Justice Department takes immigration spat with federal judge to a higher court*, THE WASHINGTON POST, June 4, 2016 (last visited June 5, 2016).[3]

Thus, in order to provide the Court with important evidence about the negative effect of disclosing the names and sensitive personal information of three-year grant recipients, while avoiding the threat of the exposure and harassment of their declarant, the Doe Intervenors must file their supporting declaration pseudonymously.

> C. **The Doe Intervenors Challenge Government Action—The Plaintiffs' Attack On DAPA—As Well As This Court's Ordered Disclosure, And Disclosing The Identity Of Their Declarant Would Subject Him To A Serious Risk Of Harassment, Violence, And Intimidation**

As explained above, the Doe Intervenors' declarant is fearful for his and his family's safety and loss of privacy if his name is revealed in this suit. *See* ECF No. 356-1. This Court needs no primer on the reasons why. The past 18 months has seen an unprecedented surge in vitriol against undocumented immigrants, including in Texas, which has included an influx of armed border "militia" groups, some of which have expressly advocated for harassment,

---

[1] http://www.washingtontimes.com/news/2016/may/31/judge-andrew-hanen-scaring-illegals-away-from-obam/
[2] http://www.nytimes.com/2016/06/01/us/justice-dept-says-judge-in-immigration-case-is-out-of-bounds.html
[3] https://www.washingtonpost.com/news/post-nation/wp/2016/06/04/justice-department-takes-immigration-spat-with-federal-judge-to-a-higher-court/

violence, and intimidation toward undocumented immigrants. *See* ECF No. 92-1 at 24, Perales Decl. Ex. A (reporting a militia member's statement that "You see an illegal. You point your gun dead at him, right between his eyes, and you say, 'Get back across the border or you will be shot.'"); ECF No. 92-1 at 32-33, Perales Decl. Ex. D (Los Angeles Times article reporting on increased militia presence in Texas); *see also* ECF No. 92-1 at 38-39, Perales Decl. Ex. F (report of anti-immigrant rallies in Texas by Neo-Nazi and Ku Klux Klan groups). Similar militia groups have previously been linked to murders of Latinos, most notably in a heavily reported incident in Arizona in 2011, and the Doe Intervenors' declarant reasonably fears similar violence should their names be released. *See* ECF No. 92-1 at 24, Perales Decl. Ex. A (discussing the murder of a 29-year-old Latino man and his 9-year-old daughter by anti-immigrant militia members).

Anti-immigrant activity in Texas is not limited to the border region. Last year in Houston, where the declarant lives, an undocumented woman visiting her doctor's office was arrested by sherriffs' deputies after the office receptionist suspected her identification card and called the police. The deputies told the woman's oldest daughter, a DACA recipient who had accompanied her mother to the appointment, that this was a deportation case and that they were going to turn the mother in to immigration authorities. Alexa Garcia-Ditta, *Houston Mom Arrested at Gynecologist's Appointment May Face Deportation*, TEX. OBSERVER, Sept. 14, 2015 (last visited June 5, 2016).[4] Also last year, members of a Houston group called "StoptheMagnet" organized protests during school hours outside a magnet school that taught Arabic to students,

---

[4] https://www.texasobserver.org/woman-arrested-at-gynecology-office-may-face-deportation/

claiming that the school "hired Syrian natives and accepted applications from middle eastern [sic] teachers." StopTheMagnet, *PRESS RELEASE*, Dec. 10, 2015 (last visited June 5, 2016).[5]

Anti-immigrant sentiment has been cultivated by prominent elected officials from Texas and other of the Plaintiff States, notably including Texas Lieutenant Governor Dan Patrick, who during his election campaign in 2014 referred to undocumented immigrants as "diseased" and stated at a campaign event that they "threaten your family . . . They threaten your life. They threaten your business. They threaten our state." ECF No. 92-1 at 26, Perales Decl. Ex. B; ECF No. 92-1 at 29-30, Perales Decl. Ex. C. Even if Texas officials do not harbor anti-immigrant views, stating such views has become an integral part of Texas electoral politics. Similar beliefs have also been expressed, to name just one example, by Plaintiff Kansas's Secretary of State Kris Kobach, who implied on his radio program that undocumented immigrants intend to conduct an ethnic cleansing of white Americans. *See* ECF No. 92-1 at 35-36, Perales Decl. Ex. E (newspaper article reporting on Kobach's remarks and the controversy they engendered); *see also* ECF No. 92-1 at 41-42, Perales Decl. Ex. G (article reporting statements of Republican Congressman Steve King that even undocumented immigrants wanting to join the U.S. Military should be deported: "As soon as they raise their hand and say, 'I'm unlawfully present in the United States,' we're not going to take your oath into the military, but we're going to take your deposition and we have a bus for you to Tijuana[.]"). These comments serve to give implicit backing to anti-immigrant violence, and the Doe Intervenors are reasonably fearful that their declarant would be at serious risk of harassment, violence, and intimidation if he were forced to proceed under his own name.

---

[5] http://www.stopthemagnet.com/blog/press-release-houston-isds-arabic-immersion-magnet-school-places-children-crosshairs-civilizati

The fact that the Doe Intervenors' declarant seeks to provide evidence in opposition to the Court's disclosure order, and in a suit challenging high-profile governmental action, makes the threat of harassment and violence particularly acute and boosts the case for anonymity. *Cf. S. Methodist Univ. Ass'n of Women Law Students*, 599 F.2d at 713 (noting that most cases allowing anonymity deal with parties opposing the government rather than other private parties). More than "simply" challenging governmental action, without anonymity the Doe Intervenors' declarant would be required to disclose to the world information of the utmost sensitivity: his status as an undocumented individual and recipient of a controversial three-year grant under DACA. An individual's immigration status is incredibly sensitive information, the exposure of which can subject the individual to severe negative consequences, such as "criminal prosecution, harassment, and intimidation," depending on the circumstances. *Hispanic Interest Coalition of Alabama v. Governor of Alabama*, 691 F.3d 1236, 1247 (11th Cir. 2012). Indeed, "this reality has led federal courts . . . to permit the plaintiffs to proceed anonymously in immigration-related cases." *Id.* at 1247 n.8; *see, e.g.*, *Plyler v. Doe*, 457 U.S. 202 (1982); *Lozano v. City of Hazelton*, 496 F. Supp. 2d 477, 507-12 (M.D. Pa. 2007) (citations omitted), *affirmed in relevant part*, 620 F.3d 170, 194-96 (3d Cir. 2010), *vacated in other part*, *City of Hazelton v. Lozano*, 131 S. Ct. 2958 (2011); *Keller v. City of Fremont*, Nos. 8:10-cv-0270-LSC-FG3; 4:10-cv-3140-LSC-FG3, 2011 WL 41902, at *2-3 (D. Neb. Jan. 5, 2011) (following *Lozano*); *Georgia Latino Alliance for Human Rights v. Deal*, No. 1:11-CV-01804-TWT, at ECF No. 101 (N.D. Ga. July 8, 2010). Indeed, immigration status is so sensitive that immigrants are often allowed to file suit anonymously even when they are not undocumented but are actually lawfully present after, for example, receiving asylum after suffering persecution. *See, e.g.*, *Friendly House v. Whiting*, No. 2:10-cv-1061-SRB, at ECF. No. 212 (D. Ariz. June 21, 2010); *see also Lozano*, 496 F. Supp. 2d

9

at 513-14 ("[F]ederal courts have recognized that inquiries into immigration status can have an in terrorem, effect, limiting the willingness of plaintiffs to pursue their rights out of fears of the consequences of an exposure of their position.").

## II. ALLOWING THE DOE INTERVENORS' DECLARANT TO PROCEED UNDER A PSEUDONYM WOULD HELP ADVANCE THE PUBLIC INTEREST AND WOULD NOT PREJUDICE THE PLAINTIFFS

Finally, allowing the Doe Intervenors' declarant to proceed under a pseudonym would promote the public interest and would not prejudice the Plaintiff states. As discussed above, the Doe Intervenors seek to provide the Court unique information from a declarant who has a direct personal interest in the resolution of the motion to stay and who represents approximately 50,000 recipients of three-year grants in the Plaintiff States. Given the risks of exposure and harassment that would accompany disclosure of his name, the declaration must be filed under a pseudonym. Moreover, the Plaintiff states will not be prejudiced by anonymity. The Government's motion to stay can be decided without knowledge of the Doe Intervenors' declarant's identity.

## CONCLUSION

Defendant-Intervenors Jane Does respectfully request that this motion be granted and the Court allow the declaration of Javier H. G. to be filed under that pseudonym.

Dated:  June 5, 2016                                    Respectfully submitted,

| | |
|---|---|
| **O'MELVENY & MYERS LLP**<br>Adam P. KohSweeney (Cal. Bar No. 229983)*<br>Gabriel Markoff (Cal. Bar. No. 291656)*<br>2 Embarcadero Center 28th Floor<br>San Francisco, CA 94111-3823<br>Phone:  (415) 984-8700<br>Facsimile:  (415) 984-8701<br><br>**DLA PIPER LLP**<br>Linda J. Smith (Cal. Bar. No. 78238)*<br>2000 Avenue of the Stars, Ste. 400N<br>Los Angeles, CA 90067<br>Phone: (310) 595-3038<br>Facsimile: (310) 595-3300 | **MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**<br>**By**  */s/ Nina Perales*<br>Nina Perales (Tex. Bar No. 24005046;<br>Southern District of Tex. Bar No. 21127)<br>Attorney-in-Charge<br>110 Broadway, Suite 300<br>San Antonio, Texas 78205<br>Phone:  (210) 224-5476<br>Facsimile:  (210) 224-5382 |

*Admitted *pro hac vice*.

Attorneys for **JANE DOE #1**, **JANE DOE #2,** and **JANE DOE #3**

### CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of June 2016, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046)
***Attorney-in-Charge for Jane Doe #1, Jane Doe #2, and Jane Doe #3***

### CERTIFICATE OF CONFERENCE

I hereby certify that on the 5th day of June 2016, I conferred with counsel for Plaintiffs and counsel for Defendants on this motion.  Plaintiffs take no position on this motion.  Defendants, as of the time of the filing of this motion, have not indicated whether they take a position on the motion.

*/s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046)
***Attorney-in-Charge for Jane Doe #1, Jane Doe #2, and Jane Doe #3***