IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| State of Texas, *et al.*, | § § § | |
| Plaintiffs, | § § § | |
| v. | § § § | Civil Action No. 1:14-cv-254 |
| United States of America, *et al.*, | § § § | |
| Defendants. | § § | |

### DECLARATION OF CRISTINA ▮▮▮▮ R▮▮▮▮

My name is CRISTINA ▮▮▮▮ R▮▮▮▮. I am 18 years old and fully competent to make this declaration.

1. I live in San Carlos, Texas and am 18 years old. I received a 3-yr grant of deferred action under the federal guidance known as Deferred Action for Childhood Arrivals ("DACA") on December 12, 2014. I graduated from Edinburg High School and received my Associates Degree in Interdisciplinary Studies from South Texas College. I know other DACA recipients like myself, including at least one other individual who received a 3-yr grant of deferred action between November 20, 2014 and February 16, 2015.

2. When I initially applied for and received deferred action under DACA, I showed that I was under age 31, I arrived in the U.S. as a child, was enrolled

1

in high school at Edinburg High School, and was a low priority for removal by the federal government. I am not a party to this case.

3. I was born in Mexico and came to United States at the age of 3. On June 4th I graduated from high school. On June 1, I received my certification as an Emergency Medical Technician (EMT) Basic and I am currently a Pharmacy Technician Trainee. I am testing this month to be a Pharmacy Technician. I volunteered hours for a nation-wide pharmacy chain and an EMT program. Other DACA recipients I know include students, workers and professionals. As working individuals, we pay household expenses, car loans, utility bills, and rent. Many of us live with our parents and help support our families.

4. Like me, DACA recipients who possess the 3-yr grants filed applications for deferred action pursuant to the 2012 DACA guidance. The applications are made on Form I-821D and are decided by the U.S. Citizenship and Immigration Services (USCIS).

5. The instructions to Form I-821D say that the information provided by the applicant is protected from disclosure to ICE and U.S. Customs and Border Protection with narrow exceptions.

6. I initially applied for 2012 DACA in 2014. When I and the other recipients I know who possess the 3-yr grant made the difficult decision to come forward and seek deferred action from USCIS, we overcame the fear that we would be put in removal proceedings, as well as the fear that we would expose our parents and other family members to removal. The decision to apply for deferred action is a serious one that involves revealing oneself as

2

an undocumented immigrant and having confidence in the agency that decides deferred action applications.

7. At the time I applied for DACA, I knew other young people who had successfully applied and for whom the process had gone smoothly and confidentially. Individuals who seek deferred action are required to place enormous trust in USCIS to review their applications and keep their personal information confidential. For example, I and other DACA recipients provided USCIS our names, current addresses, photos, fingerprints, Alien Registration and social security numbers (if we had them), travel history, education and military service background, and marital status. I also provided USCIS school transcripts and medical records. When providing this sensitive and personal information, applicants must trust that USCIS will use the information only to decide our applications and not share the information with the enforcement arms of the U.S. Department of Homeland Security or anyone else.

8. The information that I provided to USCIS when I applied for DACA included my home address. I live with my mother and father, who are both undocumented, my younger brother, who is a DACA recipient, and two younger brothers and two younger sisters who are all United States Citizens. At the time that I applied for DACA, my mother, father, and brother were undocumented.

9. Disclosing the names, addresses and other personal information of DACA recipients like me who possess the 3-yr grants would have a severe negative

3

impact on the individuals whose information is disclosed as well as their friends and family members who might seek immigration relief in the future. If our personal information is provided to the federal court, with the possibility of further disclosure to the states that brought this lawsuit, those of us who possess the 3-yr grants, as well as other non-citizen immigrants, will lose confidence in the ability of USCIS to keep our information confidential. I know that I and other people who possess the 3-yr grants will suffer anxiety and fear resulting from the loss of control over our sensitive personal information and some will be deterred from seeking future immigration benefits from USCIS.

10. I and other people who possess the 3-yr grants will also suffer from the fear that the contemplated further release of our information to the Plaintiff states will cause the states to take negative action against us, including revoking our state identification cards or driver's licenses or attempting to cut short, through state action, our periods of deferred action.

11. I and other people who possess the 3-yr grants also fear that the release of our personal information by USCIS will lead to public disclosure of our receipt of deferred action, resulting in loss of employment and the ability to support ourselves or help support our families.

12. When we begin to work with authorization, DACA recipients must show their employment authorization documents (EAD) to the human resources officer for the employer. We must overcome possible skepticism at our 2- or 3-year period of work authorization and disparate treatment because of the

"C33" code on our EAD which is specific to DACA recipients. For the many DACA recipients who currently work, the possibility that the disclosure of our names could find its way to our employers and create problems is a grave concern.

13. Particularly this year, when DHS has increased enforcement of removal orders in an operation known as Operation Border Guardian, many DACA recipients fear that disclosure of our personal information will lead to state or local police targeting our homes and turning over our relatives to DHS through existing inter-governmental agreements.

14. Even if our relatives are low priorities for removal, they can be detained and placed into removal proceedings at the discretion of federal immigration agents or local police with the intent to contact immigration agents.

15. When I applied for deferred action under DACA in 2014, I relied on the assurance of confidentially provided by USCIS and trusted that my personal information would not be released to the State of Texas or to other federal agencies like ICE.

16. If the personal information of individuals who possess the 3-yr grants is disclosed by USCIS to the court in this case, like many other deferred action recipients, I would experience the anxiety, fear and deterrent effect of this disclosure.

17. Because I remain undocumented even during my period of deferred action, I would like to proceed in this case using only a portion of my name. I am aware of the debate in Texas over immigration as reported in the media. I

am fearful that if my name and immigration status were made public, I would face a negative reaction and possibly harassment from members of the public who support the states' lawsuit.

18. I am further worried that if I use my full name in this declaration, Texas officials will harass or arrest me or my family members, or further distribute the information to the media or private parties.

I declare under penalty of perjury pursuant to 28 U.S. Code § 1746 that the foregoing is true and correct.

Executed this 6th day of June, 2016 in ~~Houston~~ San Carlos, Texas

*Cristina R█████*

Cristina R█████