1          IN THE UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF TEXAS
2                 BROWNSVILLE DIVISION

3
   STATE OF TEXAS, ET AL          )
4                                 )
                                  )
5                                 )
   VS.                            ) CIVIL ACTION NO.
6                                 ) B-14-CV-254
                                  )
7                                 )
   UNITED STATES OF AMERICA,      )
8  ET AL                          )

9

10
                      MOTION HEARING
11        BEFORE THE HONORABLE ANDREW S. HANEN
                     JUNE 7, 2016
12

13
                   A P P E A R A N C E S
14

15   FOR THE STATE OF TEXAS:

16       MR. JAMES J. GILLIGAN
         U.S. DEPARTMENT OF JUSTICE
17       CIVIL DIVISION
         Room 6102
18       20 Massachusetts Avenue, N.W.
         Washington, DC 20001
19       Phone:  202.514.3358

20

   FOR THE UNITED STATES OF AMERICA:
21

         MS. ANGELA V. COLMENERO
22       DIVISION CHIEF GENERAL
         LITIGATION DIVISION
23       PO Box 12548
         Austin, Texas 78711-2548
24       Phone:  512.475.4100

25

```
10:06:07   1              THE COURT:  All right.  We're here today in
10:06:11   2   B-14-254; Texas, et al. versus the U.S., et al.
10:06:17   3              Who's going to speak for Texas?
10:06:20   4              Ms. Colmenero, I bet it's you since you're
10:06:23   5   the only one at the table.
10:06:24   6              MS. COLMENERO:  Yes, Your Honor, I'm here
10:06:25   7   from the Texas Attorney General's office on behalf of
10:06:27   8   the Plaintiffs.
10:06:27   9              THE COURT:  All right.  And who's going to
10:06:29  10   speak on behalf of the United States?
10:06:31  11              MR. GILLIGAN:  James Gilligan, Your Honor,
10:06:34  12   with the Department of Justice.
10:06:36  13              THE COURT:  All right.
10:06:37  14              And then, Ms. Perales, I assume you're
10:06:40  15   speaking for the Intervenors?
10:06:41  16              MS. PERALES:  Good morning, Your Honor.
10:06:42  17   Yes.
10:06:43  18              THE COURT:  Okay.  Do we have anybody else
10:06:46  19   here that's representing anyone?
10:06:51  20              Okay.  All right.  Mr. Gilligan, why don't I
10:06:53  21   start with you.  It's your motion.
10:06:55  22              Although, the -- Ms. Perales has joined in
10:06:57  23   it, her clients have joined in it, so --
10:07:01  24              MR. GILLIGAN:  Yes, Your Honor.  Thank you.
10:07:03  25              One of the first items I'd like to address,
```

10:07:09  1  with the Court's permission, is that of a specific

10:07:13  2  portion of the court's May 19 public order that we

10:07:17  3  have -- as to which we have sought a stay, and that's

10:07:20  4  the June 10th deadline for the production by DHS of

10:07:23  5  personally identifying information of the three-year

10:07:28  6  DACA recipients.

10:07:29  7          I -- I do not know if the Court has had an

10:07:32  8  opportunity to review the Defendant's Amended Meet and

10:07:36  9  Confer Statement regarding our most recent discussions

10:07:39  10  with the Plaintiff States about that deadline.

10:07:42  11          THE COURT:  And that was at -- it's alright

10:07:45  12  with the States if you postpone that until after the

10:07:47  13  production -- or after the Supreme Court rules?

10:07:50  14          MR. GILLIGAN:  Yes, until 30 days after the

10:07:52  15  Supreme Court's ruling.  And -- and so --

10:07:53  16          THE COURT:  That's fine.  You don't have to

10:07:55  17  worry about that June 10th date.

10:07:57  18          MR. GILLIGAN:  Okay.  Thank you very much,

10:07:58  19  Your Honor.  We appreciate the court's willingness and

10:08:00  20  the Plaintiff's willingness to have that deadline

10:08:02  21  extended because, as the record in recent actions in

10:08:05  22  the -- in the case go to show, that production of such a

10:08:08  23  large quantity of sensitive, personal information

10:08:11  24  concerning so many individuals --

10:08:11  25          THE COURT:  Well, let -- let me -- let me --

10:08:13  1                     MR. GILLIGAN:  -- was a matter of grave

10:08:14  2    concern.

10:08:15  3                     THE COURT:  -- let me interrupt you there on

10:08:16  4    this topic, though.

10:08:20  5                     You were here at the last hearing we had, I

10:08:22  6    think.

10:08:23  7                     MR. GILLIGAN:  August 19th of last year.

10:08:23  8                     THE COURT:  Right.

10:08:24  9                     MR. GILLIGAN:  Correct, Your Honor.

10:08:25  10                    THE COURT:  And I asked you a question that

10:08:27  11   basically said, this material exists with regard to the

10:08:35  12   108,000, the names and addresses, on some computers

10:08:38  13   somewhere.

10:08:40  14                    And you stopped and went and conferred with

10:08:42  15   your table and came back and said, you're right,

10:08:44  16   Your Honor, we have that, but -- you know.

10:08:48  17                    My order, why it was written broadly,

10:08:51  18   because I didn't want, you know, people to slice and

10:08:57  19   dice it, I mean, it was intended only to cover, you

10:09:01  20   know, name, address.

10:09:06  21                    And I -- I thought, given your statement to

10:09:10  22   me earlier, that it was something that you could

10:09:12  23   basically punch a button on a computer and spit it out.

10:09:16  24                    So that was, just so you know, that was my

10:09:19  25   thinking.

| | | |
|---|---|---|
| 10:09:19 | 1 | MR. GILLIGAN:  I -- I -- I -- |
| 10:09:20 | 2 | THE COURT:  It's kind of moot at the moment |
| 10:09:22 | 3 | because I'm -- I'm going to go with the parties' |
| 10:09:23 | 4 | agreement. |
| 10:09:24 | 5 | MR. GILLIGAN:  And -- and -- and I |
| 10:09:25 | 6 | understand Your Honor's point.  And -- and I -- I went |
| 10:09:27 | 7 | back, in preparation for this hearing, and -- and looked |
| 10:09:29 | 8 | at the transcript of the August 19th hearing. |
| 10:09:32 | 9 | And -- and my recollection, as I stand here |
| 10:09:34 | 10 | at the moment, may not be perfect, but, as I recall the |
| 10:09:37 | 11 | exchange, Your Honor, it concerned whether we had a list |
| 10:09:40 | 12 | of the 108,000 individuals who received three-year terms |
| 10:09:45 | 13 | of deferred action prior to the court's injunction. |
| 10:09:48 | 14 | And -- and my agency counsel from DHS confirmed that we |
| 10:09:52 | 15 | had -- we had that list. |
| 10:09:53 | 16 | But pulling all of the PII and contact |
| 10:09:56 | 17 | information and location information from the Claims 3 |
| 10:10:01 | 18 | database, it was a separate understanding. |
| 10:10:03 | 19 | THE COURT:  No, my point, though, |
| 10:10:04 | 20 | Mr. Gilligan, that's why I interrupted you, was that -- |
| 10:10:07 | 21 | that, if that list, basically, is listed, here's the |
| 10:10:12 | 22 | name, here's the address, that, in and of itself, would |
| 10:10:17 | 23 | comply with what I want is what I'm telling you. |
| 10:10:19 | 24 | MR. GILLIGAN:  Right, we -- |
| 10:10:20 | 25 | THE COURT:  I don't need every document you |

```
10:10:22    1    have, you know.  My -- my order, as I said, was written
10:10:26    2    broad because I didn't want people to, you know, parse
10:10:31    3    it out.  But I don't want you to think that, assuming
10:10:38    4    you were -- I was going to hold you to the June 10th
10:10:40    5    deadline, which I've just told you I'm not, that you
10:10:45    6    have to give me every document that DHS has, because I
10:10:49    7    don't -- I'm not interested in that.
10:10:50    8                MR. GILLIGAN:  Well, I -- I appreciate that
10:10:52    9    clarification, Your Honor, because that was the second
10:10:54   10    item on my list of things to do this morning.
10:10:56   11                THE COURT:  Oh, I can finally shorten your
10:10:58   12    list.
10:10:58   13                MR. GILLIGAN:  Thank you, Your Honor.  Yes,
10:11:00   14    as -- as stated in our papers, we believe that the
10:11:03   15    appropriate response to the court's order, at least in
10:11:05   16    the first instance, is to attain -- obtain the available
10:11:08   17    information from the Claims 3 database rather than going
10:11:11   18    to ancillary and largely duplicative databases and paper
10:11:15   19    A-files and things likes that, so -- and we
10:11:17   20    appreciate --
10:11:17   21                THE COURT:  I just didn't know what you
10:11:18   22    called it.
10:11:19   23                MR. GILLIGAN:  Right.
10:11:20   24                THE COURT:  And so that's the way -- why it
10:11:21   25    was written the way it was.
```

10:11:23  1          MR. GILLIGAN:  Right.  That's -- that's --
10:11:24  2  that's very helpful, Your Honor, to know that we can --
10:11:26  3  can limit our efforts for now to the Claims 3 database.
10:11:30  4          Then, turning to our motion for a stay,
10:11:34  5  Your Honor, the -- the reasons that we believe the stay
10:11:39  6  should be granted are set forth in our papers.  And --
10:11:43  7  and -- and I don't wish to belabor them unnecessarily
10:11:45  8  here this morning.
10:11:47  9          In a nutshell, we believe we're likely to
10:11:50  10  prevail on the merits --
10:11:52  11          THE COURT:  Okay.  Help me on that.
10:11:53  12          MR. GILLIGAN:  Okay.
10:11:54  13          THE COURT:  How?
10:11:55  14          MR. GILLIGAN:  On the merits of the court's
10:11:58  15  public May 19th order?
10:11:59  16          There are -- there are three grounds in
10:12:01  17  which we believe we're going to prevail on -- on the
10:12:02  18  merits, Your Honor.
10:12:02  19          First, it's the nature of the sanctions.  We
10:12:04  20  submit, as stated in our papers, that they exceed the
10:12:06  21  inherent limits on a court's inherent sanctions power.
10:12:11  22          THE COURT:  Okay.  Let me -- let's start
10:12:11  23  with some building blocks there.
10:12:13  24          Is it the DOJ's position that a federal
10:12:16  25  court, not me, any federal court, cannot sanction a

10:12:21   1   lawyer that doesn't tell that court the truth?

10:12:23   2           MR. GILLIGAN:  No, that is not our position,

10:12:25   3   Your Honor.

10:12:25   4           THE COURT:  All right.  And let's -- let's

10:12:30   5   assume, hypothetically, that that Judge says, okay, to

10:12:35   6   the hypothetical lawyer, I'm going to order you, I'm --

10:12:39   7   I'm not going to try to disbar him, I'm not going to try

10:12:42   8   to do anything like that, go take some CLE classes on

10:12:46   9   ethics.  Can a federal Judge do that?

10:12:49  10           MR. GILLIGAN:  I -- I --

10:12:50  11           THE COURT:  One lawyer who's -- who's not

10:12:54  12   told the truth in his court?

10:12:56  13           MR. GILLIGAN:  It's hard to address matters

10:12:58  14   like that in the abstract, Your Honor, but I would not

10:13:00  15   say that that -- that is something that is beyond the

10:13:03  16   limits under appropriate circumstances of a court's

10:13:05  17   inherent power.  One -- one lawyer, as the Court says.

10:13:07  18           THE COURT:  Okay.  All right.  Go ahead,

10:13:09  19   then.

10:13:09  20           MR. GILLIGAN:  Well, but the -- the --

10:13:11  21   the -- the -- the issue before us concerns a requirement

10:13:14  22   that the Attorney General implement a prescribed program

10:13:17  23   of continuing legal ethics education for a five year

10:13:21  24   period, for not one, but for three thousand lawyers, the

10:13:24  25   vast majority of whom will never appear in this

10:13:27  1   courtroom.  We believe that transcends the limits of the

10:13:31  2   court's inherent power to control the proceedings and

10:13:34  3   the parties appearing before it.

10:13:36  4            It -- it -- it --

10:13:36  5            THE COURT:  Okay.  Let's -- let's divide

10:13:38  6   that up.  The first part, I -- I assume, is you're

10:13:41  7   saying that controlling what the -- how the Attorney

10:13:46  8   General does something invades the separation of powers?

10:13:49  9            MR. GILLIGAN:  That, too, Your Honor, yes.

10:13:52  10           THE COURT:  Okay.  Well, what's -- what's

10:13:54  11  the other part then?

10:13:55  12           MR. GILLIGAN:  Well, there are -- there are

10:13:56  13  two parts to it.  We think -- we think that it both, as

10:13:58  14  I say, transcends the inherent limits on a court's

10:14:02  15  sanctioning power and --

10:14:03  16           THE COURT:  What transcends?

10:14:05  17           MR. GILLIGAN:  Ordering continuing legal

10:14:07  18  education for three thousand attorneys, who most -- the

10:14:11  19  vast majority of whom will never appear before this

10:14:13  20  court on any proceeding.

10:14:14  21           THE COURT:  Okay.  Here's my problem with

10:14:15  22  that.  Let me -- let me -- let me stop you there.

10:14:19  23           You -- you just conceded to me that I can

10:14:22  24  order one.

10:14:24  25           MR. GILLIGAN:  One who has appeared before

| | |
|---|---|
| 10:14:26 | 1 |
| 10:14:27 | 2 |
| 10:14:28 | 3 |
| 10:14:33 | 4 |
| 10:14:38 | 5 |
| 10:14:42 | 6 |
| 10:14:45 | 7 |
| 10:14:48 | 8 |
| 10:14:51 | 9 |
| 10:14:54 | 10 |
| 10:14:58 | 11 |
| 10:15:00 | 12 |
| 10:15:03 | 13 |
| 10:15:07 | 14 |
| 10:15:09 | 15 |
| 10:15:12 | 16 |
| 10:15:15 | 17 |
| 10:15:18 | 18 |
| 10:15:21 | 19 |
| 10:15:25 | 20 |
| 10:15:27 | 21 |
| 10:15:30 | 22 |
| 10:15:31 | 23 |
| 10:15:34 | 24 |
| 10:15:37 | 25 |

the Court, yes, Your Honor.

THE COURT:  All right.  What do I do with your pleading, your brief?  I didn't make this up.  This is something you filed.  In fact, this was after I asked for a brief on what should be the sanctions, if I found sanctions, your brief ends by saying, "independent of any of the above discussion, one important point bears emphasizing:  The Federal Government as a whole is responsible for the conduct of this litigation.  A large team of attorneys at DOJ and DHS have worked together through this litigation.  So, whatever the results, the proper subject for the sanctions is the Federal Government.  As a whole should be held responsible, not an individual person or an attorney."

I did what you asked me to do.  I did exactly what you asked me to do.

MR. GILLIGAN:  Your Honor, I -- I -- I do not believe that we contemplated when we wrote those words in that September 4th brief that the -- that the Court would impose the sanction of the nature that was set forth in the -- in the May 19th order.

THE COURT:  I -- I would have ordered perhaps just the two attorneys that I was -- that had made the misrepresentations in court.  But you filed a brief saying, don't do it for one, don't do it for two,

10:15:42  1    do it for everybody.  So you're saying somehow I did

10:15:45  2    something improper by doing what you asked me to do?

10:15:48  3                MR. GILLIGAN:  Well, Your Honor,

10:15:49  4    respectfully, I do -- I do not believe that we asked you

10:15:52  5    to impose or -- or to suggest that the Court could

10:15:56  6    impose such a sweeping sanction as has been included in

10:16:01  7    the May 19th order.

10:16:02  8                Even on the -- on the terms that -- that

10:16:06  9    were set forth in our September 4th brief from last

10:16:08  10   year, we're not --

10:16:09  11               THE COURT:  I mean, actually, I narrowed it

10:16:10  12   down because I didn't include the -- the DHS lawyers in

10:16:14  13   it because I -- I didn't see that the DHS had done

10:16:16  14   anything improper.

10:16:18  15               MR. GILLIGAN:  But nor did the vast majority

10:16:20  16   of those three thousand attorneys who are subject to --

10:16:22  17               THE COURT:  I agree with you.

10:16:22  18               MR. GILLIGAN:  -- continuing legal

10:16:22  19   education.

10:16:24  20               THE COURT:  I agree with you a hundred

10:16:25  21   percent.  But I did what you asked me to do.

10:16:28  22               MR. GILLIGAN:  The -- the -- the other --

10:16:29  23   another principal that underlies the exertion of the

10:16:33  24   inherent sanctions power, Your Honor, is it must be

10:16:36  25   limited to the -- the least sanction needed in order to

10:16:39  1   accomplish the -- the objective, which is, of course, to

10:16:45  2   deter further conduct of the kind that the Court found

10:16:49  3   in this case, which is -- which is, although we

10:16:54  4   respectfully disagree with the finding, a finding of

10:16:56  5   intentional misrepresentations by a limited group of

10:17:00  6   attorneys.

10:17:00  7            So, it -- on -- on those terms, we -- we

10:17:04  8   would argue and have argued that the -- the order far

10:17:07  9   exceeds what is necessary in order to deter that kind of

10:17:10  10  misconduct from occurring.

10:17:13  11            THE COURT:  Okay.  Let me back up.  I asked

10:17:14  12  in the August 19th hearing, and you were here for that,

10:17:17  13  what y'all would suggest as sanctions.  And what I got

10:17:23  14  was, we shouldn't be sanctioned.  Which I understand

10:17:25  15  that.  That -- that's certainly not an unreasonable

10:17:31  16  position for y'all to take in defense of your position.

10:17:34  17            But then I got to the end of the paragraph

10:17:36  18  that says, "no matter what you do, you should do it to

10:17:39  19  everyone."

10:17:42  20            MR. GILLIGAN:  Well, I think to hold the

10:17:46  21  Government accountable, Your Honor, as opposed to

10:17:51  22  individual attorneys through some sort of penalty, award

10:17:56  23  of attorneys' fees, or something like that, by proper

10:18:00  24  notice and procedure --

10:18:01  25            THE COURT:  What about attorneys' fees?  I

10:18:03   1   was told that if I fine somebody, that the tax payers

10:18:07   2   would have to pay for it.  Is that not true?

10:18:09   3              MR. GILLIGAN:  It's -- it's true in many

10:18:11   4   cases, Your Honor.  There are -- there are ins and outs

10:18:14   5   to that and the authorities in which would have to be --

10:18:16   6              THE COURT:  Okay.  So that's not true?  I --

10:18:17   7   I was told that.  That wasn't true?

10:18:19   8              MR. GILLIGAN:  I -- I'm not -- I'm not --

10:18:21   9   Your Honor, I'm not an expert on this -- on this

10:18:24  10   subject.  It is, in many cases, the case that, yes,

10:18:26  11   the -- the -- the -- the award of attorneys' fees would

10:18:30  12   have to be paid from the public or the judgment fund or

10:18:35  13   from an individual agency's appropriated budget.  But

10:18:38  14   that is a subject, fortunately, with which I've had very

10:18:43  15   little experience.

10:18:45  16              THE COURT:  Okay.  Go ahead.

10:18:46  17              MR. GILLIGAN:  The other grounds,

10:18:49  18   Your Honor, on which we believe that the -- we are

10:18:51  19   substantially likely -- likely to prevail in the Court

10:18:55  20   of Appeals is that certain procedural protections that

10:18:56  21   are required before an inherent power sanctions may be

10:18:58  22   imposed were not followed here.  Such as an order to

10:19:01  23   show cause identifying who the exact targets of the

10:19:05  24   sanctions were, the nature of the sanctions being

10:19:08  25   contemplated, followed by an opportunity to submit

10:19:11  1   evidence addressing the -- both the basis in which the

10:19:16  2   sanctions were to be imposed and the choice of sanction

10:19:19  3   that the Court is contemplating.

10:19:21  4           THE COURT:  All right.  Mr. Gilligan, it's

10:19:23  5   not the Government's position that you don't know who

10:19:24  6   the two individuals were; are you?  I mean, are you

10:19:27  7   saying that?  I set out the conduct on -- in an April

10:19:30  8   7th order.  I quoted the individuals.  I mean, is it the

10:19:36  9   position of the Government that I ought to embarrass

10:19:38  10  these people by mentioning their names?

10:19:40  11          MR. GILLIGAN:  No, it -- it's -- it is

10:19:45  12  their -- it is their entitlement, Your Honor, it's the

10:19:47  13  entitlement of any litigant or attorney against whom

10:19:50  14  sanctions are contemplated to be specifically advised of

10:19:53  15  that.  That could have been done in a -- in a sealed

10:19:56  16  order to avoid public embarrassment to the attorneys in

10:20:00  17  question.

10:20:00  18          Certainly --

10:20:01  19          THE COURT:  I quoted the conduct.  I mean,

10:20:02  20  you have copies of the transcript.  You can't look and

10:20:04  21  see who said that?

10:20:06  22          MR. GILLIGAN:  Yes, Your Honor, but it was

10:20:08  23  never clear whether the Court was going to issue

10:20:12  24  personal sanctions or sanctions directed to the

10:20:14  25  Government, nor of -- nor of what nature.  Nor were the

10:20:19  1    parties given an opportunity after such notice to submit

10:20:22  2    evidence to make a complete record --

10:20:24  3              THE COURT:  Woah.  Woah.  Woah.  Woah.

10:20:26  4    Woah.  Woah.  Woah.  Let's backup.  First of all, we've

10:20:28  5    had hearings on March 9th, March 19th.  I gave an order

10:20:35  6    April 7th.  We had an August 19th hearing.  I asked for

10:20:38  7    briefing there.  And -- and the hearing I had in June, I

10:20:43  8    asked for affidavits.  I asked for evidence.

10:20:46  9              Ms. Ricketts was -- was doing the argument

10:20:48  10   at that point in time and I said, do I have any

10:20:50  11   affidavits?  Because you were saying this is just an

10:20:53  12   innocent mistake.  And I was kind of hoping that was

10:20:55  13   true.

10:20:56  14             And I said, give me some evidence to hang my

10:20:58  15   hat on.  And I said, do I have the affidavits?  No.  So

10:21:02  16   I have no proof.  I asked for proof and got zero.

10:21:06  17             MR. GILLIGAN:  Well, Your -- Your Honor,

10:21:07  18   what -- what -- as we see the record of this matter, the

10:21:14  19   Court issued its April 7th order last year indicating

10:21:17  20   its concern that intentional misrepresentations had been

10:21:20  21   made.

10:21:21  22             THE COURT:  And I described the conduct in

10:21:22  23   detail.

10:21:23  24             MR. GILLIGAN:  And -- and -- and Your Honor

10:21:25  25   also described in detail the materials that it was

10:21:28   1   ordering us to submit in response to the States motion

10:21:32   2   for discovery.

10:21:33   3            And we submitted those materials.  And we

10:21:35   4   submitted to the Court, in our April 30th filing, that

10:21:38   5   those materials alone were sufficient in order to come

10:21:41   6   to the conclusion that no intentional misrepresentation

10:21:44   7   had occurred.

10:21:44   8            THE COURT:  All right.

10:21:45   9            MR. GILLIGAN:  And -- and -- and --

10:21:46   10           THE COURT:  Here's my discussion.  And I'm

10:21:48   11  reading this from the June 25th hearing.  Ms. Ricketts

10:21:50   12  is arguing saying:  "This should lay to rest the

10:21:53   13  concerns that anyone has from the Government's side that

10:21:55   14  we were trying to mislead anyone.  Certainly not the

10:22:00   15  Court or the Plaintiff's, you know, blah, blah, blah."

10:22:01   16           And my answer was:  "Where do I get that?

10:22:04   17  I'm not arguing to you that the evidence may show that,

10:22:07   18  but where's the evidence?  Help me here."

10:22:10   19           I mean, I asked you for help to give me some

10:22:12   20  evidence.  And I said, "I don't have any affidavits.  I

10:22:15   21  don't have any statements."

10:22:16   22           So what I had, at this point in time, and

10:22:19   23  it's true to this date, is I had a filing, sealed

10:22:26   24  filing, by the Government filed prior to this hearing,

10:22:29   25  that, if you will -- if I'll use the slang one of my law

10:22:33   1   clerks used, "threw these two women under the bus", said
10:22:35   2   that they knew the truth and didn't -- when they
10:22:40   3   misrepresented the truth.
10:22:44   4          And, I mean, I asked for help.  Help me find
10:22:47   5   that they didn't do it intentionally.  And you gave me
10:22:49   6   nothing.
10:22:52   7          MR. GILLIGAN:  But -- but, Your Honor,
10:22:54   8   when -- if the Court came to that conclusion that the
10:22:56   9   evidence that had already been submitted was
10:22:58  10   insufficient in order to address the Court's concern,
10:23:02  11   the procedures require, before the Court can issue
10:23:05  12   sanctions, is to issue some sort of a notice, an order
10:23:08  13   to show cause --
10:23:09  14          THE COURT:  You don't think this is notice?
10:23:11  15   I asked you to file some evidence.
10:23:12  16          MR. GILLIGAN:  But there was no -- there was
10:23:14  17   no notice to who the intended targets that -- of the
10:23:18  18   sanctions were.  There was no notice that individuals
10:23:21  19   would be personally sanctioned and in -- and in what
10:23:23  20   respect.  Because we're -- we're entitled, upon -- upon
10:23:27  21   receipt of the notice, notice that the Court had deemed
10:23:31  22   insufficient the evidence that was already before it, an
10:23:34  23   opportunity at that point then to supplement the record
10:23:37  24   in light of the individuals or entities who were
10:23:43  25   intended targets of the sanctions, the nature -- and the

| | | |
|---|---|---|
| 10:23:46 | 1 | nature of the sanctions, so we could address both the |
| 10:23:49 | 2 | basis for imposing sanctions and the appropriateness of |
| 10:23:52 | 3 | the sanctions to be imposed. |
| 10:23:55 | 4 | And -- and it was not until August 19th, |
| 10:23:57 | 5 | Your Honor, when the Court finally said to us, assume |
| 10:24:01 | 6 | that I'm going to find intentional misrepresentations |
| 10:24:05 | 7 | here.  And -- and then we were advised what we could |
| 10:24:10 | 8 | file at that point was simply briefing on what the |
| 10:24:13 | 9 | appropriate sanctions would be, what the Court could do, |
| 10:24:15 | 10 | and what it should -- should do. |
| 10:24:16 | 11 | THE COURT:  Okay.  And -- and what did you |
| 10:24:18 | 12 | suggest? |
| 10:24:19 | 13 | MR. GILLIGAN:  Well, we -- we continued to |
| 10:24:22 | 14 | suggest, Your Honor, that there was no evidence, no |
| 10:24:25 | 15 | clear and convincing evidence, of intentional |
| 10:24:29 | 16 | misconduct, misrepresentations made in bad faith.  That |
| 10:24:32 | 17 | this was, as we continue to believe, a unbelievably |
| 10:24:41 | 18 | unfortunate misunderstanding about -- between the Court |
| 10:24:43 | 19 | and Government counsel over the meaning of the term |
| 10:24:47 | 20 | "revised DACA". |
| 10:24:50 | 21 | Under circumstances where, yes, people |
| 10:24:52 | 22 | received notice about the ongoing three-year grants, but |
| 10:24:55 | 23 | in -- in the situations where we were communicating with |
| 10:24:58 | 24 | the Court regarding the timing of surreply briefs and PI |
| 10:25:04 | 25 | hearings where the issue turned on harm to the States |

10:25:08    1   due to the increased pool of eligible DACA recipients,

10:25:16    2   there was simply nothing to bring back to mind in

10:25:19    3   those -- in those situations this information that, yes,

10:25:21    4   had been provided to -- to our attorneys but had faded

10:25:24    5   from memory.

10:25:25    6                THE COURT:  And then, at the end, you said,

10:25:29    7   "regardless, Judge, if you decide to do sanctions, don't

10:25:32    8   sanction one or two, sanction everybody."

10:25:35    9                MR. GILLIGAN:  Well --

10:25:36   10                THE COURT:  And now you're complaining about

10:25:38   11   it.

10:25:38   12                MR. GILLIGAN:  Well, we said -- well, we

10:25:40   13   didn't say to sanction everybody, Your Honor.  We said

10:25:42   14   to sanction the Government as a whole and not to single

10:25:46   15   out individuals for responsibility.

10:25:48   16                THE COURT:  Well, if I -- if -- if I do

10:25:50   17   that, what's the deterrent effect?  If I do that,

10:25:54   18   Ms. Colmenero's clients, which are the majority of the

10:25:58   19   States, have to pay the majority of a sanction that they

10:26:00   20   got because y'all didn't tell the truth to them.

10:26:04   21   They're --

10:26:05   22                MR. GILLIGAN:  Well, Your Honor, I mean, as

10:26:09   23   we said in our September 4th brief, if there was any

10:26:12   24   showing of harm from the misrepresentations, then --

10:26:16   25   then, certainly, the Court could -- could consider some

10:26:19    1    sort of a remedy that would address any harm that

10:26:23    2    resulted from the misrepresentations as -- as -- as the

10:26:26    3    Court found them to be.

10:26:27    4             But, as -- as yet, there has been no such

10:26:30    5    showing.  And, so, it -- it seems to us that that really

10:26:33    6    doesn't enter into the equation, at least at the moment.

10:26:35    7             THE COURT:  Well, there has been harm and

10:26:38    8    there has been a showing because they -- they were going

10:26:39    9    to ask for a hearing before the end of 2014.  That's

10:26:45   10    clear in their opening salvos.  And they forewent that

10:26:48   11    hearing on the representation that nothing was going on.

10:26:53   12             MR. GILLIGAN:  Well, Your Honor, as -- as I

10:26:57   13    read the record of the -- of the Plaintiff's

10:27:00   14    representations on that point, they said that they were

10:27:03   15    going to explore the possibility, or they would have

10:27:07   16    explored the possibility of seeking a temporary

10:27:10   17    restraining order, if they had known about the

10:27:12   18    three-year grants.

10:27:13   19             But the question now is, is what -- what

10:27:14   20    harm is there now from the fact that these three-year

10:27:17   21    grants are out there?  As -- as yet, we submit there's

10:27:20   22    no showing.  And, in fact, that's implicit in the

10:27:22   23    court's order which says that no PII would be turned

10:27:25   24    over to the Plaintiffs unless and until they make a

10:27:28   25    showing of good cause, such as a remediable injury that

10:27:31   1   could be addressed by the production of that

10:27:33   2   information.

10:27:34   3            THE COURT:  So, I mean, the --

10:27:35   4            MR. GILLIGAN:  But -- but --

10:27:37   5            THE COURT:  -- the Department of Justice,

10:27:39   6   whose pleadings that you filed in my suit, saying, "we

10:27:40   7   hold the standard of ethics to be the highest ethics in

10:27:43   8   the land", basically, you're saying no blood, no foul?

10:27:47   9            MR. GILLIGAN:  Not -- not in the event that

10:27:48   10  there was a miss -- an intentional misrepresentation,

10:27:51   11  Your Honor, but there -- there has been, we respectfully

10:27:54   12  submit, no such intentional misconduct.

10:27:57   13            THE COURT:  You've given me no proof to show

10:28:00   14  it's not intentional.  In fact, what you've given me is

10:28:02   15  a brief that says, they knew what the truth was when

10:28:04   16  they told me exactly the opposite.

10:28:07   17            MR. GILLIGAN:  Your -- Your Honor, they had

10:28:08   18  been informed some time earlier that, as was made public

10:28:14   19  by the Government in many different places, including

10:28:16   20  filings in this court, that, yes, DHS was issuing

10:28:20   21  three-year grants as -- as a --

10:28:21   22            THE COURT:  No.  No.  No.  Wait.  Wait.

10:28:22   23  Filings in this court.  Tell me what filing in this

10:28:24   24  court says they were issuing things under 2000 -- I'll

10:28:28   25  let -- well, maybe I should let Ms. Colmenero say that,

10:28:32    1    but -- but where did it say that?

10:28:33    2                MR. GILLIGAN:   It -- it was in the Neufeld

10:28:37    3    Declaration that --

10:28:38    4                THE COURT:   No, it doesn't say that.   It --

10:28:40    5    it -- what the Neufeld Declaration does is repeats what

10:28:42    6    the Government was going to do.   It didn't say it was

10:28:46    7    actively doing it.   And, so, I don't think it's fair to

10:28:49    8    the citizens of those 26 states, when they questioned

10:28:54    9    the Government, for the question to not tell them the

10:28:57   10    truth, and then say, well, hidden in a five hundred page

10:29:01   11    affidavit, or pleading, is, in one footnote, is

10:29:05   12    something where we repeat the policy.   And, from that,

10:29:07   13    she's supposed to define that she's been lied to.

10:29:10   14                MR. GILLIGAN:   The point is a different one,

10:29:12   15    Your Honor, which is that it's inconsistent to -- to, we

10:29:16   16    submit, to conclude that the Government would be trying

10:29:19   17    to hide a fact that was in the public 2014 guidance,

10:29:24   18    that was on -- that was on -- that was on the DHS

10:29:28   19    website, and that, however prominently stated, was in a

10:29:31   20    public filing in -- that we made in this proceeding.

10:29:35   21                THE COURT:   Well, Mr. Gilligan, if that's

10:29:36   22    the case, why did the Government wait until there were

10:29:40   23    over a hundred thousand?   Why didn't they come forward

10:29:43   24    when there was 10,000, or 20,000, or 30,000?   And the

10:29:47   25    documents you've given this court show that it was --

| | | |
|---|---|---|
| 10:29:50 | 1 | when you filed the Motion to Stay on the merits, that we |
| 10:29:53 | 2 | said, oh, my, God, if the Judge finds out about this on |
| 10:29:56 | 3 | his own, he's going to hate us when we file this Motion |
| 10:30:00 | 4 | to Stay.  And that was the impetus for filing it. |
| 10:30:02 | 5 | MR. GILLIGAN:  That -- but that was not the |
| 10:30:04 | 6 | case, Your Honor. |
| 10:30:05 | 7 | THE COURT:  Well, wait a minute.  How is it |
| 10:30:07 | 8 | not the case?  Tell me. |
| 10:30:09 | 9 | MR. GILLIGAN:  Again, what -- as -- as -- as |
| 10:30:15 | 10 | the record shows, albeit in the documents that we |
| 10:30:20 | 11 | submitted to the Court under seal in our response to the |
| 10:30:23 | 12 | April 7th order, it was not until after our February, I |
| 10:30:29 | 13 | believe, 23rd Motion to Stay the preliminary injunction, |
| 10:30:37 | 14 | that the defining moment occurred when DOJ counsel |
| 10:30:41 | 15 | became aware that 108,000 grants of three-year DACA had |
| 10:30:46 | 16 | been -- had been issued prior to the injunction. |
| 10:30:48 | 17 | And -- and at -- at that point, within just |
| 10:30:52 | 18 | a handful of business days, Your Honor, we submitted the |
| 10:30:55 | 19 | March 3rd advisory on our own initiative, without |
| 10:30:59 | 20 | prompting by any public reporting or -- or -- or |
| 10:31:03 | 21 | information coming to light by third parties, disclosing |
| 10:31:06 | 22 | that fact. |
| 10:31:07 | 23 | And, at the same time, Your Honor, let me -- |
| 10:31:09 | 24 | let me emphasize, referencing our prior statements |
| 10:31:12 | 25 | regarding the timing of the implementation of -- of -- |

10:31:17   1          THE COURT:  Well, we can go into that if you

10:31:19   2   want to go into the sealed evidence you filed, you know,

10:31:21   3   where --

10:31:21   4          MR. GILLIGAN:  Even the public evidence

10:31:23   5   shows the speed with which that March 3rd advisory was

10:31:27   6   drafted and -- and was -- and was filed.  And it -- and

10:31:31   7   it explicitly not only disclosed the fact of the

10:31:37   8   three-year grants and the magnitude, but also referenced

10:31:41   9   the, if -- if -- if you will, the -- the potential for

10:31:47  10   confusion with prior statements that had been made

10:31:50  11   regarding the implementation of the 2014 guidance.

10:31:54  12          THE COURT:  My question to you is:  If you

10:31:56  13   were truly being forthcoming, why didn't the first week

10:31:59  14   in January say we've already done 10,000?  Why in the

10:32:03  15   second week of January, we've already done 20,000?

10:32:06  16          MR. GILLIGAN:  Because, as we explained in

10:32:08  17   our -- our filing, Your Honor, this -- and as -- as --

10:32:10  18   and as were counted in the Court's May 19th order, it --

10:32:14  19   it was a fact that a group of extraordinarily busy

10:32:18  20   individuals in very high profile and fast moving PI

10:32:21  21   litigation had been informed of, but then it was an

10:32:26  22   issue that receded from memory because the focus of the

10:32:30  23   proceedings, as -- as defined by the Plaintiffs own PI

10:32:33  24   submissions, was on the harm that would allegedly accrue

10:32:37  25   to the States due to the modification of the eligibility

10:32:41   1   guidelines that would increase the pool of potential

10:32:44   2   applicants for deferred action.

10:32:46   3           That -- the -- the -- the -- the crux of

10:32:49   4   these communications with the Court, oral and written,

10:32:52   5   was, you know, how can we time these proceedings in such

10:32:55   6   a way as to give everybody time to get done what needs

10:33:00   7   to get done while still leaving time to prevent the

10:33:04   8   irreparable harm that the States themselves had

10:33:06   9   identified as -- as -- as being threatened.

10:33:08   10          THE COURT:  And do I have an affidavit from

10:33:10   11   anyone at DOJ that says that?

10:33:13   12          MR. GILLIGAN:  You -- you do not -- you do

10:33:14   13   not have an affidavit that says that, Your Honor.  But

10:33:16   14   what is also lacking in the record, and we submit, is

10:33:19   15   the third basis on which we are likely to prevail in the

10:33:22   16   Court of Appeals, is that there is not clear and

10:33:24   17   convincing evidence when the record is viewed as a whole

10:33:30   18   to come to the conclusion, to support the conclusion,

10:33:33   19   that the representations that were made to the Court

10:33:36   20   were the product of deceit rather than a

10:33:39   21   misunderstanding about what was on the Court's mind and

10:33:45   22   what was important for purposes of addressing the issues

10:33:48   23   that were raised during those communications.

10:33:51   24          None of which specifically talked about the

10:33:53   25   issue of three-year grants.  We're not talking about a

10:33:56  1   situation here where a -- a lawyer was specifically

10:33:58  2   asked, is this occurring now?  Is the Department of

10:34:00  3   Homeland Security issuing three-year terms of DACA --

10:34:05  4              THE COURT:  I didn't ask you were they

10:34:06  5   issuing, but I asked about the three-year terms.  I

10:34:09  6   asked, not the States, and I was told that they wouldn't

10:34:14  7   begin accepting applications until mid February.

10:34:17  8              MR. GILLIGAN:  Well, Your -- Your Honor --

10:34:19  9              THE COURT:  And they'd already granted

10:34:21  10  applications.

10:34:22  11             MR. GILLIGAN:  Your Honor, it's -- it --

10:34:24  12  during the January 15th, I believe, 2015 PI hearing,

10:34:31  13  yes, there -- during -- during an exchange with both

10:34:36  14  Government counsel and the Plaintiff's counsel folks, at

10:34:39  15  least as far as the transcript reveals, may have been

10:34:42  16  kind of talking over one another, the -- the Court asked

10:34:45  17  about the increase in years as Government counsel was

10:34:48  18  discussing the changes to the eligibility guidelines

10:34:55  19  under DACA.

10:34:56  20             And -- and -- and even if counsel clearly

10:35:00  21  heard or -- or -- and appreciated the different thrusts

10:35:04  22  of the court's interjection there, it -- it wasn't until

10:35:07  23  much, much later in the hearing, 40 transcript pages

10:35:12  24  later in the hearing, that -- that the cited exchange in

10:35:16  25  the -- in the court's order occurred with Government

| | | |
|---|---|---|
| 10:35:18 | 1 | counsel, again, discussing the February 18th |
| 10:35:22 | 2 | implementation date. |
| 10:35:24 | 3 | And so there's nothing to indicate that the |
| 10:35:26 | 4 | court's brief reference to the increase in years was |
| 10:35:30 | 5 | anywhere on counsel's mind at the time that they were -- |
| 10:35:34 | 6 | excuse me, that you and counsel were discussing, I |
| 10:35:36 | 7 | believe it was, the timing of the Government's surreply |
| 10:35:40 | 8 | in opposition to the preliminary injunction. |
| 10:35:43 | 9 | THE COURT:  Well, the whole issue was |
| 10:35:46 | 10 | whether there was anything going on.  And obviously |
| 10:35:47 | 11 | there was. |
| 10:35:48 | 12 | MR. GILLIGAN:  Well, that -- that statement |
| 10:35:49 | 13 | was framed by prior references to the implementation of |
| 10:35:54 | 14 | the new eligibility guidelines in which the Plaintiff's |
| 10:35:58 | 15 | claim of irreparable harm was rooted, Your Honor. |
| 10:36:01 | 16 | Your -- Your Honor, it's -- it's -- it is -- |
| 10:36:04 | 17 | it is not my objective here today -- |
| 10:36:10 | 18 | THE COURT:  Well, here's what you said in |
| 10:36:11 | 19 | your brief:  "The Government does not dispute and indeed |
| 10:36:14 | 20 | has never disputed that the three-year deferrals were |
| 10:36:18 | 21 | pursuant to the 2014 deferred action guidance. |
| 10:36:22 | 22 | Likewise, there is no dispute that the Government also |
| 10:36:24 | 23 | understood the change from two to three years of |
| 10:36:26 | 24 | deferred action to be a contested issue in the case." |
| 10:36:29 | 25 | That's from your brief. |

10:36:31  1          MR. GILLIGAN:  That's correct, Your Honor.

10:36:32  2  We're not -- we don't -- we don't dispute those facts.

10:36:35  3  We're not -- we're not trying to run away from the truth

10:36:37  4  of those facts.  But the question is, is:  In -- in --

10:36:41  5  in the moments when counsel were engaged in discussions

10:36:44  6  with the Court about the timing of the hearing, the

10:36:48  7  timing of a surreply -- and the conversation was framed

10:36:54  8  by references to the Plaintiff's arguments of

10:36:58  9  irreparable harm; harm, again, that was rooted not in

10:37:02  10  the increase in terms of deferred action, but the

10:37:04  11  increase in the pool of eligibles for deferred action --

10:37:08  12  the record is simply not clear and convincing that

10:37:11  13  counsel were speaking that they were choosing their

10:37:16  14  words with an intent to deceive anyone or -- or mislead

10:37:20  15  them.

10:37:20  16          THE COURT:  What evidence do I have that

10:37:21  17  they misunderstood the question or -- or, you know, we

10:37:26  18  didn't understand it, or we didn't understand the State

10:37:30  19  was contesting it?  What evidence do I have?  Not

10:37:32  20  pleadings, but do I have an affidavit that says that?

10:37:34  21  Do I have anything that says, Judge, we misunderstood

10:37:40  22  this?

10:37:42  23          I mean, and -- and, Mr. Gilligan, I'm not

10:37:45  24  fussing at you.  But -- but you've got to look at it.  I

10:37:52  25  went to great lengths to say how much I do not like

10:37:57   1   sanctioning lawyers.

10:38:00   2            And I've been on the bench 14 years now and

10:38:05   3   I've only done it twice; one was a monetary sanction and

10:38:10   4   one I -- I -- I told him he had to write a letter of

10:38:11   5   apology.

10:38:12   6            And, you know, in that context, I say,

10:38:19   7   Government, United States, DOJ, give me some affidavits.

10:38:23   8   Give me something I can hang my hat on.  And you gave me

10:38:27   9   nothing.

10:38:28   10           MR. GILLIGAN:  Your -- Your Honor, I -- I --

10:38:32   11   I could say two things at this point; one -- one is a

10:38:35   12   legal point, which is that it is, of course, not the

10:38:39   13   burden of the individual or entity that is targeted for

10:38:44   14   sanctions to disprove the allegations against them.  It

10:38:49   15   is -- it is a -- a requirement before inherent power

10:38:55   16   sanctions may be issued that there be clear and

10:38:58   17   convincing evidence of bad faith.  And we submit --

10:39:01   18           THE COURT:  Well, I used your brief as clear

10:39:03   19   and convincing evidence because you conceded the fact

10:39:05   20   that you didn't tell the truth in your briefs.

10:39:08   21           MR. GILLIGAN:  No, Your Honor, I don't think

10:39:10   22   we conceded that.  I think what we conceded is that

10:39:14   23   we -- we conceded -- we -- we conceded the truth that

10:39:16   24   people have received notice of the fact here regarding

10:39:20   25   the three-year terms.  And -- but there is no evidence

10:39:24  1    that, in the context of the discussions that were

10:39:27  2    occurring, that -- that counsel were conscious in the

10:39:32  3    moment of that fact and intended to conceal that fact

10:39:34  4    from the Court or the Plaintiffs.

10:39:36  5                 And, Your Honor, it is not my -- it is not

10:39:39  6    my objective here to persuade this court otherwise.

10:39:46  7    We -- we -- I think the point here is -- is -- the

10:39:50  8    question that the Court has put before me is on what

10:39:53  9    basis do we believe we will prevail in the Court of

10:39:56  10   Appeals?  And while we certainly do not question the

10:39:59  11   Court's belief that there was an intentional

10:40:02  12   misrepresent -- several even mis -- intentional

10:40:06  13   misrepresentations made here, in -- in the first place,

10:40:11  14   we believe just as strongly that that simply is not so,

10:40:15  15   Your Honor.

10:40:15  16                 And we submit that the record taken as a

10:40:19  17   whole does not contain clear and convincing evidence to

10:40:21  18   support that finding.

10:40:22  19                 And, so, simply to respond to your question,

10:40:25  20   that is the third basis on which we believe we are

10:40:27  21   likely to prevail in the Court of Appeals in this

10:40:30  22   matter.

10:40:32  23                 The second reason, of course, would be the

10:40:38  24   irreparable injury that flows to the Government from the

10:40:42  25   court's order.

10:40:44   1          We have -- have laid out the injury in

10:40:49   2   our -- our briefs and I can just briefly --

10:40:52   3          THE COURT:  What is -- what is the injury

10:40:53   4   that flows to the Government?

10:40:55   5          MR. GILLIGAN:  The -- the -- the injury is

10:41:01   6   threefold, Your Honor.  The -- the injury that flows to

10:41:04   7   the Department of Justice from the requirements that the

10:41:06   8   Court is laying on the Attorney General's shoulders is

10:41:11   9   the intrusion on the Attorney General's Constitutional

10:41:14  10   and statutory authority to supervise litigation, the

10:41:19  11   conduct of litigation on behalf of the United States,

10:41:22  12   and to oversee the performance of the attorneys who act

10:41:26  13   under her direction.

10:41:27  14          As -- as we have set out in our papers, we

10:41:31  15   believe that that requirement to -- to execute a five

10:41:38  16   year plan of continuing legal education for three

10:41:41  17   thousand attorneys, above and beyond what the Department

10:41:44  18   of Justice already requires, transgression --

10:41:47  19   transgresses the separation of powers.  And, as such,

10:41:52  20   constitutes irreparable injury.

10:41:54  21          THE COURT:  I -- I never said above and

10:41:55  22   beyond what you already require.

10:41:56  23          MR. GILLIGAN:  Well, the -- fair point,

10:42:00  24   Your Honor.  But the -- the -- the problem is, is that,

10:42:03  25   well, in terms of -- in terms of hours it already is and

10:42:06  1  there's a question of -- that we would have to evaluate

10:42:10  2  whether compliance with the prescribed program of

10:42:16  3  continuing ethics education that the Court has laid out

10:42:20  4  is -- would be -- would satisfy the requirements that

10:42:26  5  the Attorney General has determined are appropriate.

10:42:29  6          THE COURT:  Isn't there a Congressional

10:42:31  7  mandate called the McDade Amendment that you have to be

10:42:35  8  knowledgeable and comply with the rules of ethics in

10:42:37  9  whatever state you're practicing in?

10:42:39  10          MR. GILLIGAN:  There -- there -- there is --

10:42:40  11  there is -- there is a requirement under the McDade Act,

10:42:43  12  yes, that we must comply with the ethical requirements

10:42:46  13  of the states in which we practice.  And -- and --

10:42:49  14          THE COURT:  How -- how -- how do you comply

10:42:50  15  with it if you don't know what they are?

10:42:52  16          MR. GILLIGAN:  Well, the -- the -- the

10:42:53  17  department does -- the department does impose annual

10:43:01  18  ethics training requirements, particular legal ethics

10:43:07  19  requirements, on its attorneys.

10:43:08  20          But it is -- it is under the separation of

10:43:10  21  powers, Your Honor, the Attorney General's

10:43:13  22  responsibility to determine what is necessary and

10:43:15  23  appropriate to comply with the mandate of the

10:43:19  24  McDade Act.

10:43:19  25          It is not within the province of a court

10:43:22   1   exercising, any court, exercising its inherent sanctions

10:43:27   2   power to direct the Attorney General on how to ensure

10:43:32   3   the ethical conduct of department attorneys or to comply

10:43:35   4   with the requirements of the McDade Act.

10:43:38   5        And so --

10:43:39   6        THE COURT:  So what this boils down to is,

10:43:43   7   you're telling me, Judge, we're the DOJ, we can lie,

10:43:47   8   cheat and steal and it doesn't matter?  And you can't do

10:43:50   9   anything about it?

10:43:51  10        MR. GILLIGAN:  With all due respect,

10:43:53  11   Your Honor, we're not telling this court any such thing.

10:43:55  12        THE COURT:  Well, tell me -- let's go back.

10:43:57  13   Let's -- let's turn back the clock.  At the April 19th

10:44:01  14   hearing, I asked you to find -- tell me what kind of

10:44:03  15   sanctions should I have issued.  Let's -- I'll turn back

10:44:10  16   the clock.  What's the old Mr. Peabody?  We'll do the

10:44:14  17   wayback machine.  And we'll go back to:  What sanctions,

10:44:18  18   Mr. Gilligan, should -- what -- what's appropriate?

10:44:22  19   When somebody who knows that the other side is depending

10:44:27  20   on the truth, tells them something that's not true?  And

10:44:32  21   I -- what I hear you saying is I shouldn't do anything.

10:44:35  22        MR. GILLIGAN:  Well, Your Honor, we -- we

10:44:36  23   approached the question from different premises which

10:44:39  24   we've already covered at --

10:44:41  25        THE COURT:  Well, wait a minute.

| | | |
|---|---|---|
| 10:44:42 | 1 | MR. GILLIGAN:  -- covered at length here |
| 10:44:43 | 2 | this morning. |
| 10:44:43 | 3 | THE COURT:  What -- what is -- let's -- |
| 10:44:45 | 4 | let's -- let's back up.  What premises is different? |
| 10:44:48 | 5 | What the DOJ lawyers told the States was not true. |
| 10:44:55 | 6 | Agreed?  I'm not talking about intent, whether they did |
| 10:44:59 | 7 | it intentionally, whether they didn't do it |
| 10:45:01 | 8 | intentionally.  What they told them was not true, |
| 10:45:05 | 9 | correct? |
| 10:45:06 | 10 | MR. GILLIGAN:  In -- in -- in -- in the |
| 10:45:11 | 11 | context of the not entirely clear -- |
| 10:45:15 | 12 | THE COURT:  You're not going to answer that; |
| 10:45:17 | 13 | are you? |
| 10:45:17 | 14 | MR. GILLIGAN:  I -- I -- |
| 10:45:17 | 15 | THE COURT:  You're -- you won't -- |
| 10:45:19 | 16 | MR. GILLIGAN:  I am -- I am going to answer |
| 10:45:20 | 17 | it. |
| 10:45:20 | 18 | THE COURT:  The sun rises in the east. |
| 10:45:23 | 19 | True? |
| 10:45:24 | 20 | MR. GILLIGAN:  Yes, Your Honor. |
| 10:45:25 | 21 | THE COURT:  Okay.  What they told the States |
| 10:45:28 | 22 | was not true?  Now, whether they didn't tell it by |
| 10:45:31 | 23 | accident or not, correct? |
| 10:45:34 | 24 | MR. GILLIGAN:  If what they -- if -- if what |
| 10:45:35 | 25 | was said was interpreted to mean that three-year grants |

10:45:39   1   were not being issued under the 2012 DACA policies at --

10:45:46   2   at the time of those conversations, if interpreted to

10:45:48   3   mean that, yes, Your Honor, that was -- that was

10:45:50   4   incorrect.

10:45:51   5          But that was not the intended meaning of the

10:45:55   6   individuals who made those statements and we submit

10:45:59   7   there is no clear and convincing evidence on which to

10:46:02   8   conclude that it was their intent.

10:46:04   9          THE COURT:  All right.  Let me ask you the

10:46:05   10   flip side.  Is it your position that the reverse would

10:46:09   11   be fine?  Ms. Colmenero can tell you whatever she wants

10:46:13   12   to tell you, whether it's true or not, and the Plaintiff

10:46:16   13   States can -- can do whatever they want to do and

10:46:18   14   they're not bound by the truth?  Because that's what I

10:46:23   15   hear you saying.

10:46:24   16          MR. GILLIGAN:  Your Honor, if that's --

10:46:26   17   if -- if that's what you hear me saying, then I must

10:46:28   18   apologize for not being clear because that -- what --

10:46:32   19   what the Court is positing is, of course, unacceptable

10:46:37   20   for any litigant, lawyer, regardless of which side of

10:46:41   21   the case they're on.

10:46:42   22          But that's not what happened here and we do

10:46:44   23   not believe there is evidence to support the imposition

10:46:47   24   of a sanction on the basis of a conclusion that that is

10:46:49   25   what happened here.

10:46:50   1          And so that is what informed our response in

10:46:53   2   our September 4th brief to the question put to us for

10:46:58   3   briefing at the August 19th hearing.  The Court said,

10:47:01   4   "what sanction could and should this court issue under

10:47:05   5   the circumstances?"  And we said, "in -- in

10:47:09   6   circumstances where there is no clear and convincing

10:47:11   7   evidence of intentional bad faith misconduct, no

10:47:14   8   appropriate sanction could be issued."

10:47:16   9          We're not --

10:47:17   10          THE COURT:  How many -- how many

10:47:18   11   misstatements, I'll use that term because I think you'll

10:47:22   12   agree with that one, at least, would it take to be clear

10:47:26   13   and convincing evidence?

10:47:29   14          MR. GILLIGAN:  I -- I think --

10:47:33   15          THE COURT:  From people who knew what the

10:47:35   16   truth was, how many misrepresentations?

10:47:38   17          MR. GILLIGAN:  I -- I think, Your Honor,

10:47:39   18   that the -- well, we're talking about different people

10:47:43   19   at different times, all of which were remote in time

10:47:47   20   from the point in which they had been informed of the

10:47:50   21   activity in -- in question.

10:47:54   22          So I think the issue isn't how many times,

10:47:56   23   the issue is, on -- on those occasions, what was the

10:47:59   24   intent of those different individuals?

10:48:01   25          And there was -- and -- and we submit that

10:48:01  1    the record, at the very least, does not support a

10:48:05  2    conclusion by clear and convincing evidence that it was

10:48:08  3    bad faith intent.

10:48:09  4              And, again, Your -- Your Honor, I -- it

10:48:12  5    is -- I -- I understand the Court's ruling on this

10:48:14  6    matter and it's not my intention to try to change the

10:48:17  7    Court's mind on this point, only -- only to make the

10:48:19  8    point that we believe that, when the record is viewed as

10:48:24  9    a whole, we will prevail on this issue, or on a --

10:48:29  10   several other issues that I've discussed with you this

10:48:31  11   morning in -- in -- in the merits of our mandamus -- our

10:48:36  12   request for mandamus review in the Court of Appeals.

10:48:40  13             THE COURT:  Thank you, Mr. Gilligan.

10:48:42  14             Ms. Perales, do you want to weigh in?

10:48:44  15             MS. PERALES:  Thank you, Your Honor.

10:48:50  16             THE COURT:  Ms. Perales, let me start with

10:48:52  17   you on this.

10:48:53  18             MS. PERALES:  May I make two initial points

10:48:55  19   or --

10:48:55  20             THE COURT:  Go ahead.

10:48:56  21             MS. PERALES:  All right.  One is that the

10:48:59  22   Response in Support of the Motion to Stay by the

10:49:05  23   Government on behalf of the Doe's only addresses that

10:49:09  24   portion of the court's May 19 order that's on page 22-23

10:49:14  25   regarding the filing under seal of names, addresses and

10:49:21  1    identifying information.

10:49:22  2              Which is a very long sentence, so, if the

10:49:25  3    Court doesn't mind my referring to it as the DACA

10:49:28  4    portion of the May 19 order.

10:49:30  5              Second, understanding that the Government

10:49:35  6    has filed an amended certificate of conference regarding

10:49:39  7    the States' willingness to postpone and with

10:49:45  8    appreciation for the States' position, our position is

10:49:48  9    that a stay would be appropriate.

10:49:52  10             Otherwise, we're going to be in a situation,

10:49:54  11   I think, where we're looking at 30 or 40 day

10:49:57  12   postponements through the summer.  So our preference

10:50:00  13   would be for the Court to grant the stay of that DACA

10:50:04  14   portion of its order pending the outcome of the appeal.

10:50:07  15             THE COURT:  Let me -- no, I understand that.

10:50:08  16             MS. PERALES:  Thank you, Your Honor.

10:50:09  17             THE COURT:  Let me -- let me ask you a

10:50:10  18   question.  Do you think it's all right for either side

10:50:14  19   of a lawsuit to tell untruths to the other side?

10:50:19  20   Whether intentionally or not?

10:50:20  21             MS. PERALES:  I don't think it's all right,

10:50:22  22   but I want to make clear that the Doe's are not taking a

10:50:25  23   position --

10:50:25  24             THE COURT:  I know.  Well, wait.  You're not

10:50:25  25   taking the position that people ought to tell the truth?

| | | |
|---|---|---|
| 10:50:25 | 1 | MS. PERALES:  No, the rest of my sentence |
| 10:50:32 | 2 | was going to be that we're not taking a position on that |
| 10:50:33 | 3 | portion of the May 19 order dealing with attorneys -- |
| 10:50:35 | 4 | THE COURT:  No, but I'm -- I'm leading to |
| 10:50:36 | 5 | the point that you are taking a position on.  And that's |
| 10:50:39 | 6 | why I asked the question.  You understand, if -- |
| 10:50:44 | 7 | let's -- let's assume everything was accidental, okay? |
| 10:50:49 | 8 | Unintentional, accidental.  What's the first job that an |
| 10:50:54 | 9 | attorney has to do, ethically, when they make a |
| 10:50:58 | 10 | misrepresentation in court? |
| 10:51:00 | 11 | MS. PERALES:  Once they realize that? |
| 10:51:02 | 12 | THE COURT:  Yes. |
| 10:51:03 | 13 | MS. PERALES:  They have to notify the Court, |
| 10:51:04 | 14 | Your Honor. |
| 10:51:04 | 15 | THE COURT:  That's right.  And what's the |
| 10:51:06 | 16 | second obligation?  They have to remediate it. |
| 10:51:12 | 17 | Now, in this case, and this is where I want |
| 10:51:17 | 18 | your help, remediation would be go get back the 108,000 |
| 10:51:25 | 19 | three-year certificates. |
| 10:51:26 | 20 | One, that would be very costly, I'm sure; |
| 10:51:30 | 21 | two, for all the reasons mentioned in your brief, that |
| 10:51:35 | 22 | may not be a good thing to do; and, three, I'll throw |
| 10:51:44 | 23 | this one in, if the Supreme Court decides against the |
| 10:51:49 | 24 | Fifth Circuit, or reversing the Fifth Circuit that |
| 10:51:52 | 25 | affirmed me, the three-year certificates would be okay; |

10:51:58  1   wouldn't they?

10:51:59  2              MS. PERALES:  Yes, Your Honor.

10:51:59  3              THE COURT:  Okay.  So here's -- I'm -- and

10:52:02  4   what I'm doing is putting you in the dilemma I was in.

10:52:07  5   And you'll notice what I ordered didn't affect your

10:52:12  6   clients at all; number one.

10:52:15  7              Number two, it only affects a small

10:52:17  8   subsection of the DACA people.

10:52:20  9              Number two, I ordered it filed under seal so

10:52:24 10   it would never be revealed to anyone.  It doesn't change

10:52:27 11   anybody's status, doesn't change their documentation.

10:52:35 12              Number three, it wasn't going to be

10:52:39 13   reviewed, except to make sure it got filed, by anyone

10:52:45 14   until after the Supreme Court ruled.

10:52:48 15              And then, after that, only on a showing that

10:52:53 16   the States would have to make that they were somehow

10:52:58 17   being damaged, not by the DACA people, but by the

10:53:03 18   misrepresentations of the United States.

10:53:08 19              And I built in all those safe guards.  And I

10:53:11 20   did it for your, not your clients, but the DACA people.

10:53:18 21   Because my alternative was to, A, do nothing, which, I

10:53:25 22   think, if you polled every Judge in the world, they --

10:53:32 23   they would say a Judge is not doing his or her job if he

10:53:35 24   allows unethical conduct to go on in their court; or,

10:53:39 25   two, order what the Government probably should have

10:53:41    1    already been doing, which is remediate the situation.

10:53:44    2            So help me here, what can I do?  And -- and

10:53:51    3    I've already told you I'm going to put it off.  So --

10:53:55    4    and that may be -- that may be, in and of itself, it may

10:53:59    5    solve the problem.

10:54:00    6            MS. PERALES:  Well, Your Honor, a stay

10:54:02    7    certainly would.  I have a few quick points in response.

10:54:05    8            First of all, the Court -- the Doe's do

10:54:09    9    recognize and appreciate the Court's effort at narrow

10:54:13   10    tailoring.  Please don't understand anything I say to be

10:54:16   11    ignoring that.

10:54:18   12            However, it's not our position that, when

10:54:21   13    the Government was preparing its March 3rd advisory to

10:54:26   14    the Court following the injunction in February 2015,

10:54:30   15    that remediation necessarily included doing something

10:54:34   16    about the three-year grants.  That's something I haven't

10:54:37   17    had a chance to think through, but I'm not sure that

10:54:40   18    remediation would include that.

10:54:43   19            Second of all, with respect to not many, we

10:54:48   20    would respectfully say that, in addition to the

10:54:51   21    declarations that we filed of Cristina R. in San Carlos

10:54:56   22    here in the valley, of Javier H.G. in Houston, it is

10:55:01   23    50,000 young individuals.  And that is a pretty

10:55:04   24    substantial number of --

10:55:06   25            THE COURT:  Explain the number to me.

10:55:07  1              MS. PERALES:  Well, it's our understanding
10:55:09  2    that there are 50,000 individuals living in the
10:55:13  3    Plaintiff States who received three-year grants.
10:55:14  4              THE COURT:  Oh, I see what you're saying.
10:55:16  5    In the Plaintiff States.
10:55:17  6              MS. PERALES:  Yes, in the Plaintiff States,
10:55:18  7    Your Honor.
10:55:18  8              THE COURT:  Okay.  Okay.
10:55:19  9              MS. PERALES:  And, so, dealing with these
10:55:21 10    other two points that it doesn't affect the Doe's and
10:55:24 11    that the filing is under seal, as a technical matter,
10:55:29 12    yes.  But as made clear in the declarations of Cristina
10:55:33 13    and Javier, and to some extent in the Leon Rodriguez
10:55:36 14    declaration, the fear and confusion that has flowed,
10:55:39 15    which is not entirely in the court's control and it may
10:55:43 16    not be the Court's intent --
10:55:45 17              THE COURT:  Well, let -- let me -- what is
10:55:46 18    in my control?  This all stems from misrepresentations
10:55:50 19    made in this courtroom, not by me and not by counsel for
10:55:53 20    the Plaintiff States.
10:55:55 21              MS. PERALES:  Yes, Your Honor.
10:55:56 22              THE COURT:  Okay.
10:55:56 23              MS. PERALES:  And within the Court's
10:55:59 24    inherent sanction authority, we believe there's a number
10:56:02 25    of things that the Court can do.  But the sanctions

10:56:08  1    power that is inherent has to be exercised with

10:56:11  2    restraint, discretion, that it has to take into account

10:56:14  3    the effect of the equitable order on innocent third

10:56:18  4    parties, and that it should be directed to those who

10:56:22  5    committed the misconduct.

10:56:23  6              THE COURT:  And one of the things you've

10:56:24  7    suggested in your brief was continuing legal education.

10:56:29  8              MS. PERALES:  And --

10:56:30  9              THE COURT:  Which is what the Court ordered.

10:56:31  10             MS. PERALES:  And we're not here to speak on

10:56:34  11   that portion of the court's order, or any other

10:56:37  12   suggested sanction that goes to the attorneys or to the

10:56:41  13   agency.  We're only here to speak about the effect that

10:56:44  14   it would have on the 50,000 DACA three-year grant

10:56:48  15   recipients and other non-citizens whose faith will be

10:56:52  16   shaken and confidence will be shaken in their

10:56:55  17   expectation of privacy with USCIS.

10:56:58  18             THE COURT:  What -- would their faith not be

10:57:00  19   shaken if they knew that the United States Government

10:57:02  20   was not telling the truth?

10:57:05  21             MS. PERALES:  I think the more immediate

10:57:07  22   question for the three-year grant recipients has to do

10:57:11  23   with their expectation of privacy in the materials that

10:57:16  24   they provided to USCIS and the fact that many of them,

10:57:19  25   when they provided their home address, which is probably

| | | |
|---|---|---|
| 10:57:22 | 1 | still their point of contact, are living with family |
| 10:57:24 | 2 | members, parents, and siblings who are undocumented. |
| 10:57:28 | 3 | And the possibility of, first, the breach of |
| 10:57:31 | 4 | confidentiality by filing with the Court, even under |
| 10:57:34 | 5 | seal, which is a point that, unfortunately, Your Honor, |
| 10:57:37 | 6 | a lot of people can't really appreciate because they |
| 10:57:39 | 7 | don't understand what it means to file under seal; and |
| 10:57:43 | 8 | then, of course, with the potential for disclosure to 26 |
| 10:57:46 | 9 | states and their agencies that might implement some kind |
| 10:57:52 | 10 | of remedy, it's a very wide distribution and a great |
| 10:57:56 | 11 | deal of fear that either they or their immediate |
| 10:57:59 | 12 | relatives would be subject to some type of negative |
| 10:58:05 | 13 | action. |
| 10:58:06 | 14 | It is a powerful fear and it bleeds over to |
| 10:58:09 | 15 | the Doe's as well who are hoping someday to be able to |
| 10:58:12 | 16 | go to USCIS and provide all of this very private and |
| 10:58:15 | 17 | sensitive information, including medical records, school |
| 10:58:18 | 18 | records, marital status, fingerprints, photographs. |
| 10:58:22 | 19 | THE COURT:  But -- but let me interrupt you |
| 10:58:24 | 20 | there just a second. |
| 10:58:25 | 21 | MS. PERALES:  Yes. |
| 10:58:25 | 22 | THE COURT:  But they're doing that trusting |
| 10:58:27 | 23 | the Government is going to live up to their side of the |
| 10:58:30 | 24 | bargain, correct? |
| 10:58:31 | 25 | MS. PERALES:  Yes, Your Honor. |

| | | |
|---|---|---|
| 10:58:32 | 1 | THE COURT:  Trusting that the Government's |
| 10:58:33 | 2 | going to tell the truth, correct? |
| 10:58:35 | 3 | MS. PERALES:  Yes, Your Honor. |
| 10:58:35 | 4 | THE COURT:  All right.  So it's important to |
| 10:58:37 | 5 | them that the United States Government tell the truth; |
| 10:58:41 | 6 | isn't it? |
| 10:58:41 | 7 | MS. PERALES:  It is.  And the only point I |
| 10:58:43 | 8 | was hoping to make is that the immediate concern does |
| 10:58:46 | 9 | have to do with the disclosure of personal information. |
| 10:58:50 | 10 | And, of course -- |
| 10:58:51 | 11 | THE COURT:  Well, I -- I understood that. |
| 10:58:51 | 12 | MS. PERALES:  Okay. |
| 10:58:51 | 13 | THE COURT:  And I -- believe me, I -- I |
| 10:58:55 | 14 | tried to build in enough safe guards to assuage their |
| 10:59:00 | 15 | concerns. |
| 10:59:01 | 16 | MS. PERALES:  Understood, Your Honor, and -- |
| 10:59:02 | 17 | and very much appreciated. |
| 10:59:03 | 18 | However, this is a point that wasn't |
| 10:59:05 | 19 | necessarily touched on earlier, so if I can make it now? |
| 10:59:08 | 20 | THE COURT:  Go ahead. |
| 10:59:09 | 21 | MS. PERALES:  The order with respect to the |
| 10:59:11 | 22 | DACA recipients does have the practical effect of |
| 10:59:15 | 23 | granting an injunction and a very serious effect on the |
| 10:59:18 | 24 | 50,000. |
| 10:59:19 | 25 | And, for that reason, we believe that that |

| | |
|---|---|
| 10:59:22 | 1 |
| 10:59:27 | 2 |
| 10:59:31 | 3 |
| 10:59:35 | 4 |
| 10:59:35 | 5 |
| 10:59:38 | 6 |
| 10:59:39 | 7 |
| 10:59:40 | 8 |
| 10:59:45 | 9 |
| 10:59:48 | 10 |
| 10:59:53 | 11 |
| 10:59:54 | 12 |
| 10:59:57 | 13 |
| 11:00:00 | 14 |
| 11:00:02 | 15 |
| 11:00:05 | 16 |
| 11:00:07 | 17 |
| 11:00:10 | 18 |
| 11:00:12 | 19 |
| 11:00:16 | 20 |
| 11:00:21 | 21 |
| 11:00:25 | 22 |
| 11:00:28 | 23 |
| 11:00:31 | 24 |
| 11:00:33 | 25 |

portion of the sanctions order is more of an injunction and that it touches on the merits in a way that the Court does not have jurisdiction to do at this point in the litigation.

THE COURT:  Tell me -- tell me -- walk me through that.

MS. PERALES:  Okay.  Well, first, the case, which we didn't have in our brief, is Gulfstream Aerospace versus Mayacamas, 485 U.S. 271.  And it has to do with what a court can do with injunctive relief while a case is pending on appeal.

And they're -- the Court does have the power, for example, to use its inherent authority to sanction and it also has the power to issue certain injunctions in maintenance of the status quo while a case is pending on appeal.

But it is the Doe's position that that DACA portion of the sanctions order, because it is essentially requiring disclosure of information that the Court will keep in contemplation of remediating damages that are experienced by the States as a result of the three-year grants, touches on the very questions that are pending before the U.S. Supreme Court.

There cannot be any damage to the States flowing from a three-year grant if the Supreme Court

11:00:37   1    decides that there is no standing of Plaintiffs or that

11:00:41   2    DAPA and expanded DACA are --

11:00:45   3           THE COURT:  Well, there might be damage, but

11:00:46   4    not recoverable damage.

11:00:48   5           MS. PERALES:  And, so, as a result, we

11:00:51   6    believe that the DACA portion of the sanctions order

11:00:54   7    touches so closely on issues that will be resolved

11:00:58   8    ultimately by the Supreme Court that this is -- does not

11:01:02   9    fall in the category of maintaining the status quo, but,

11:01:06  10    instead, is more of an affirmative injunction that the

11:01:10  11    Court cannot do at this time.

11:01:11  12           And this simply goes to the question whether

11:01:14  13    a stay is warranted because the Doe's are likely to

11:01:18  14    prevail on the merits on appeal.

11:01:21  15           And so I wanted to highlight that point

11:01:24  16    because it wasn't one that -- that was brought up

11:01:26  17    earlier.  I've already spoken about the limited nature

11:01:29  18    of the sanction power and the innocent third parties

11:01:32  19    that would be affected here.

11:01:34  20           And I did want to touch on the fact that,

11:01:37  21    because the three-year grants themselves are valid and

11:01:40  22    will remain valid until and unless enjoined by the Court

11:01:45  23    under something that the Supreme Court will tell us

11:01:48  24    shortly, the Plaintiffs don't have use for the

11:01:52  25    information now.

11:01:54   1          And that makes this situation particularly

11:01:57   2   appropriate for a stay pending outcome of the appeal.

11:02:02   3          THE COURT:  Okay.

11:02:03   4          MS. PERALES:  Did the Court have any other

11:02:05   5   questions?

11:02:06   6          THE COURT:  No.

11:02:06   7          MS. PERALES:  Thank you very much.

11:02:08   8          THE COURT:  All right, Ms. Colmenero, you've

11:02:10   9   been sitting there patiently.

11:02:12   10         MS. COLMENERO:  Thank you, Your Honor.  We

11:02:16   11   just have a couple of quick points to make.

11:02:18   12         The Plaintiffs basically view there to be

11:02:21   13   two distinct issues before the Court with respect to the

11:02:23   14   Motion to Stay.  And, one, we've already discussed at

11:02:27   15   length, which is the DACA portion of the court's order.

11:02:29   16   And the Plaintiffs believe that the Amended Meet and

11:02:34   17   Confer that the Defendants and Plaintiffs have -- have

11:02:37   18   filed with the Court addresses and narrows the issues

11:02:41   19   before the Court such that the requirement for

11:02:45   20   Defendants to produce the personally identifiable

11:02:48   21   information for the expanded DACA recipients be

11:02:51   22   postponed until 30 days after the Supreme Court rules

11:02:55   23   and that this really addresses the Defendants concerns

11:02:58   24   raised in their Motion to Stay.

11:03:00   25         And I'm not sure how Your Honor plans to

| | |
|---|---|
| 11:03:03 | 1 |
| 11:03:06 | 2 |
| 11:03:11 | 3 |
| 11:03:14 | 4 |
| 11:03:17 | 5 |
| 11:03:21 | 6 |
| 11:03:23 | 7 |
| 11:03:25 | 8 |
| 11:03:28 | 9 |
| 11:03:30 | 10 |
| 11:03:33 | 11 |
| 11:03:37 | 12 |
| 11:03:39 | 13 |
| 11:03:41 | 14 |
| 11:03:44 | 15 |
| 11:03:46 | 16 |
| 11:03:52 | 17 |
| 11:03:55 | 18 |
| 11:03:57 | 19 |
| 11:04:00 | 20 |
| 11:04:01 | 21 |
| 11:04:04 | 22 |
| 11:04:08 | 23 |
| 11:04:10 | 24 |
| 11:04:13 | 25 |

address that, but we think a supplemental order could --
could address that issue and, in a way, moots the need
to decide this aspect of the Defendant's Motion to Stay.

All that being said, the Plaintiffs still
oppose Defendant's Motion to Stay because we don't
believe that they've actually met the elements for a
Motion to Stay.

And, in particular, with respect to the DACA
portion of the court's order, Plaintiffs don't believe
that Defendants have demonstrated that they will suffer
an irreparable injury because, based on the Court's
order, no one but the Court at this time, when that
information is, in fact, provided to the Court, would
have access to the personally identifiable information
of those recipients.

So, to the extent that, you know, the Court
and as a DACA -- I'm sorry, as Ms. Perales urges the
Court to rule on the Motion to Stay, we don't think that
it's necessary at this time and we also don't believe
that they've met the elements for a stay.

The second portion of the court's order is
the sanctions portion.  And our position on this aspect
of the court's order is really quite simple.

We are not -- the -- the Plaintiffs are not
in a position to make an adversarial presentation since

11:04:18  1   we didn't have access to the privileged material that

11:04:20  2   the Court considered when issuing its order.

11:04:24  3          And all of the information the Court

11:04:25  4   considered is in the sealed documents or in the

11:04:27  5   unredacted version of the brief, which we don't have

11:04:30  6   access to.

11:04:30  7          So we believe that only the -- the Court

11:04:32  8   really is in the best position to determine whether or

11:04:36  9   not Defendants have demonstrated a likelihood of success

11:04:40 10   on the merits for purposes of their Motion to Stay.

11:04:43 11          If Your Honor has no other questions, that

11:04:48 12   is our presentation.

11:04:49 13          THE COURT:  Okay.  Thank you, ma'am.

11:04:54 14          MR. GILLIGAN:  Your Honor, may I address one

11:04:56 15   housekeeping issue?

11:04:57 16          THE COURT:  You may.

11:04:58 17          MR. GILLIGAN:  Thank you, Your Honor.

11:05:05 18          We certainly appreciate the Court giving us

11:05:09 19   the additional time regarding the production of the PII

11:05:12 20   and clarifying the scope of that obligation.

11:05:15 21          So there remains, as I say, one issue

11:05:23 22   that -- that I need to raise with the Court.  And I hope

11:05:28 23   the Court will understand that I do so reluctantly and

11:05:32 24   only out of necessity.  And -- and it's -- it's an issue

11:05:37 25   of -- of timing that remains, notwithstanding the

11:05:39  1   extension the Court has granted on the PII with respect

11:05:42  2   to the deadlines that have been imposed on the Attorney

11:05:45  3   General --

11:05:45  4          THE COURT:  Let me -- let me assuade your

11:05:49  5   worries here.  Let me -- let me talk for a few minutes

11:05:50  6   and then, if you still have an issue, I'll let you weigh

11:05:53  7   back in.

11:05:54  8          MR. GILLIGAN:  Okay.  Thank you, Your Honor.

11:05:55  9          THE COURT:  All right.  I'm staying my

11:06:05  10  ruling on all fronts until August 22nd.  And we'll have

11:06:14  11  a hearing on August 22nd at 11:00.  That puts us well

11:06:19  12  beyond any Supreme Court ruling.

11:06:22  13          Now, what this does is it means, regardless

11:06:28  14  of how the Supreme Court rules, we're going to be back

11:06:32  15  here, which was an issue my ruling was designed to

11:06:35  16  prevent.

11:06:38  17          Now, Ms. Perales, that ought to take care of

11:06:44  18  any problem you have, at least until August 22nd.

11:06:48  19          And, Ms. Colmenero, that's more than you

11:06:50  20  agreed to, but you're stuck with it because I'm ordering

11:06:54  21  that.

11:06:55  22          From the Government's standpoint, I mean, I

11:07:02  23  wish there was a way we could just -- I could wave a

11:07:08  24  magic wand, or maybe a magic gavel since I'm a Judge,

11:07:10  25  and say, all right, let's have a do over.  But there's

11:07:14  1   not.

11:07:18  2              I will give you until July 31st to suggest

11:07:23  3   to me what you think I should do with regard to the

11:07:28  4   misrepresentations made in court.

11:07:32  5              I mean, I gave you that opportunity before

11:07:33  6   and you didn't take me up on it.  The only thing you

11:07:36  7   said is, if you're going to sanction one, sanction all.

11:07:40  8   And, when I did that, you complained about it.

11:07:42  9              So, clearly, you filed that and you didn't

11:07:44  10  mean it.

11:07:48  11             Now, there's -- there's no reason, and I'm

11:07:53  12  not fussing at anybody here, but there's no reason,

11:07:57  13  assuming the case gets sent back, or even assuming we

11:08:00  14  just have to resolve this issue, that this litigation

11:08:02  15  can't go forward on an even keel, professional basis,

11:08:11  16  and -- and have it resolved the way it should be

11:08:14  17  resolved.

11:08:18  18             Now, assuming the case gets affirmed, which

11:08:26  19  I have no inside information, you guys from Washington

11:08:29  20  may have more information that I do, Ms. Perales, we'll

11:08:38  21  take up your pending motions on that same August 22nd

11:08:41  22  deadline and the issue of whether to lift the stay.

11:08:46  23             Obviously, we'll have to lift the stay to

11:08:49  24  take up her motions, but everything remains the same

11:08:52  25  until that August 22nd deadline.

11:08:54    1         So the -- even though the stay, I think, we

11:08:58    2    initially ordered was, what, 30 days after the Supreme

11:09:01    3    Court ruled, I'm expanding that.

11:09:07    4         And -- and, Mr. Gilligan, I'm soliciting,

11:09:16    5    like I thought I did before, but maybe I didn't

11:09:20    6    communicate clearly, some input from y'all.

11:09:24    7         I mean, I would have never sent the entire

11:09:29    8    DOJ to school again, except you asked me to.

11:09:38    9         Now, clearly, when you filed that brief,

11:09:41   10    you -- you didn't really mean it.  But -- but let's try

11:09:49   11    to do something -- give me something to work with

11:09:52   12    reasonably.  And then whether it's evidence, or

11:09:54   13    whatever, that you haven't provided me to date.

11:09:59   14         Now, Mr. Gilligan, do you need me to file a

11:10:08   15    public order that names the individuals?  Because I'll

11:10:10   16    do it, if you -- if the Government, you're sitting

11:10:12   17    there, confer with all the Government lawyers, and tell

11:10:15   18    me?

11:10:16   19         MR. GILLIGAN:  Your Honor, I believe I can

11:10:18   20    say, without hesitation, that, no, we're not asking that

11:10:22   21    that sealed order be put on public record.

11:10:24   22         THE COURT:  All right.  So I'm giving you as

11:10:25   23    much notice as you may think you need.  You know who the

11:10:28   24    individuals are that -- that I think made the

11:10:31   25    misrepresentations.  Although, I'm sure there were other

11:10:35  1   people involved in writing the briefs and doing all that

11:10:37  2   other kind of stuff.

11:10:40  3            But I would be -- I am solicitous of your

11:10:45  4   input on that.  I mean, I tried in August to get that

11:10:48  5   input.  And in June to get that input.  And I didn't get

11:10:52  6   it.

11:10:57  7            All right.  Ms. Colmenero, you're the only

11:11:03  8   one -- you're the big loser of the day.  Is there

11:11:05  9   anything you want to add?

11:11:06  10            MS. COLMENERO:  No, Your Honor.

11:11:07  11            THE COURT:  All right.  Ms. Perales,

11:11:08  12   anything you'd like to add?

11:11:10  13            MS. PERALES:  No, Your Honor, except one

11:11:12  14   really dumb question.  When Your Honor said that it

11:11:14  15   would take up my motions, were those the motions to

11:11:17  16   proceed pseudonymously or another?

11:11:21  17            THE COURT:  Yes.  Yes.

11:11:22  18            MS. PERALES:  Okay.  Thank you for the

11:11:23  19   clarification.

11:11:24  20            THE COURT:  Well, do you have any other

11:11:25  21   motions?

11:11:25  22            MS. PERALES:  Not that I was aware of,

11:11:27  23   Your Honor.

11:11:27  24            THE COURT:  Okay.  All right.  Those are the

11:11:27  25   only ones I knew.

| | |
|---|---|
| 11:11:29 | 1 |
| 11:11:30 | 2 |
| 11:11:31 | 3 |
| 11:11:33 | 4 |
| 11:11:33 | 5 |
| 11:11:38 | 6 |
| 11:11:41 | 7 |
| 11:11:48 | 8 |
| 11:11:56 | 9 |
| 11:11:59 | 10 |
| 11:12:04 | 11 |
| 11:12:07 | 12 |
| 11:12:09 | 13 |
| 11:12:14 | 14 |
| 11:12:15 | 15 |
| 11:12:18 | 16 |

1           All right.  Mr. Gilligan, anything from the

2    Government's standpoint?

3               MR. GILLIGAN:  Nothing further at this time,

4    Your Honor.  Thank you.

5               THE COURT:  All right.  And let's -- let's

6    be realistic about this.  This is an important piece of

7    litigation for everybody.  So let's play by the rules,

8    let's -- let's be forthright with each other.  And I'm

9    not accusing anybody that's here of -- of not doing

10   that.  And let's get beyond this.  So we decided, if it

11   comes back on the merits, the way it ought to be

12   decided, and, if it doesn't come back, we'll resolve

13   whatever sanctions, if any, should be issued on the

14   22nd.

15              All right.  Anything else?  Okay.  We'll

16   stand adjourned.  Thank y'all.

17

18

19

20

21

22

23

24

25

1                           REPORTER'S CERTIFICATE

2

3        I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled

5    matter.

6

7

8        _/s/ _Sheila E. Perales_____
                                 SHEILA E. PERALES, CSR RPR CRR
9                                Exp. Date:  Dec. 31, 2016

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25