**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 1:14-CV-254 ) |
| UNITED STATES OF AMERICA, *et al.* | ) ) ) |
| Defendants. | ) ) ) |

# EXHIBIT A:

Declaration No. 1:

Declaration of Benjamin C. Mizer

**REDACTED FOR PUBLIC FILING**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, et al. <br><br> Defendants. | No. 1:14-CV-254 <br><br> (filed *in camera*) |

### DECLARATION OF BENJAMIN C. MIZER

I, Benjamin C. Mizer, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I currently serve as the Principal Deputy Assistant Attorney General for the Department of Justice's Civil Division. I have been the head of the Civil Division since March 2, 2015, and in that capacity, I manage the Division's more than 1,000 attorneys and other professionals. I oversee and am responsible for the conduct of litigation in the many thousands of cases for which the Civil Division has primary responsibility, including this matter.

2. From April 2014 until March 2, 2015, I served as Counselor to the Attorney General. In that role, among other things, I provided counsel to the Attorney General on litigation matters arising in the Civil Division, including this matter. As Counselor to the Attorney General, I interacted extensively with attorneys in the other leadership offices in the Department of Justice on issues pertaining to the Civil Division and its litigation, including the Office of the Deputy Attorney General and the Office of the Associate Attorney General. I also interacted extensively with attorneys in the Office of the Solicitor General and the Office of Legal Counsel on matters arising in those offices, including those relating to the Civil Division. In my capacity as head of the Civil Division, and in my prior capacity as Counselor to the

1

Attorney General, I have been closely involved in the *Texas v. United States* litigation. I am submitting this declaration on behalf of the Federal Government in this matter.

3. In my role as Counselor to the Attorney General, I was aware of the government's civil litigation in *Texas v. United States* and of significant issues that arose in the litigation. I participated in many calls, meetings, and e-mails regarding the litigation, legal issues that arose in the litigation, and litigation strategy. I also was familiar with the participation in the litigation by the other leadership offices and the Office of the Solicitor General and was privy to or aware of key issues regarding most of their discussions with Civil Division litigators regarding the case and litigation issues that arose. I was aware that leadership offices reviewed and commented on the government's January 2015 extension motion and February 2015 motion to stay the preliminary injunction before those briefs were filed.

4. I have been aware since March 2015 of the concerns that the Court has expressed regarding the timing of the Government's disclosure to the Court of the facts discussed in the Government's March 3, 2015 Advisory, in particular that approximately 108,000 individuals who were eligible for deferred action under the unchallenged 2012 DACA policy had received deferral periods of three years rather than two. I have reviewed each of the Court's orders and hearing transcripts in which this matter has been discussed. I am also aware that the Court has concluded in its May 19, 2016 Order that the Department of Justice made misrepresentations that constituted intentional misconduct in this matter.

5. Based on my involvement in this case and a review of my records, I firmly believe that no Department of Justice attorney deliberately withheld information from the Court or intentionally misrepresented the facts about the three-year terms of deferred action. The Department of Justice, the Civil Division, and I take the Court's concerns with the utmost seriousness. On behalf of the Civil Division and the Department of Justice, I apologize to the

Court for the problems that arose in this case. I am very sorry and deeply regret that we failed to provide clear and precise information to the Court. Although we did not grasp it at the time, we now understand that we should have made clear to the Court that DHS was issuing three-year grants of deferred action for applicants eligible under the 2012 DACA criteria before the issuance of the preliminary injunction.

6. I assure the Court, however, that I have no reason to believe that any Department of Justice lawyer at any point—including the attorneys who are the subject of the sealed order—sought to mislead or intentionally withhold relevant information from the Court. I am aware of no discussions or communications regarding this matter in which anyone in the Department of Justice suggested concealing information from the Court about the three-year terms of deferred action. Moreover, based on my interactions with attorneys in the Civil Division, I perceived that those attorneys at all times were behaving ethically and displaying candor with the Court, and I did not see or hear them do or say anything to suggest they planned or attempted to conceal information from the Court. I perceived all of the Department of Justice attorneys with whom I communicated regarding this matter to be comporting themselves in good faith and with no intent to mislead the Court.

7. Based on a review of my records and e-mails between myself and attorneys in the Department, including leadership offices, regarding this matter, as well as my best recollection of my involvement in case, I am aware that attorneys in the leadership offices and the Civil Division understood as of December 7, 2014, that DHS had already begun issuing three-year grants of deferred action to individuals eligible under the 2012 DACA criteria, as directed by the November 2014 Deferred Action Guidance and beginning before the filing of this lawsuit. But because the three-year grants affected only people who qualified under the old 2012 DACA policy, which was not challenged in this litigation, the primary concern at the time was ensuring

that DHS would implement no part of the expansion of the program to newly eligible individuals before the Court ruled on the preliminary injunction motion. I certainly was not aware of (nor was I informed of) any suggestion by anyone in the Department of Justice that any information concerning the three-year grants should be withheld from the Court, or any suggestion that it had been intentionally withheld from the Court, in any oral or written submission by the Government.

8. Nor was I was aware of any suggestion that the three-year grants warranted mention in the January 2015 extension motion or the February 2015 stay motion. I was aware of and participated in the Government's preparations for the preliminary injunction hearing and understood that our attorneys intended to provide the Court with accurate information about the effective date of the policy. I do not recall any discussion of the three-year terms in conjunction with that hearing either before or after it occurred. Indeed, based on a review of my records, I am aware of no discussions or communications reflecting an awareness that prior statements by the Government regarding the timing of the implementation of the November 2014 Guidance may have been incomplete, or (inadvertently) misleading, until February 27, 2015, when Department of Justice attorneys learned that DHS had issued approximately 108,000 three-year terms of deferred action before the Court's issuance of the preliminary injunction. It was at that time that attorneys first realized that our communications may have contributed to a misunderstanding with respect to the timing of the implementation of the 2014 memorandum.

9. Once attorneys received that information, we quickly brought it to the attention of the Court in the Government's March 3, 2015 Advisory. ████████████████████████ ████████████████████ it was important to advise the Court of the 108,000 three-year terms of deferred action, and to do so quickly. Even though the primary concern expressed by the Plaintiff States during the preliminary injunction proceedings was the

4

expansion of the population eligible for deferred action—not the increase in terms from two to three years—the Court had enjoined implementation of the November 2014 Guidance in its entirety. ███████████████████████████████████████████████████████████, and recognized that our prior statements regarding implementation of the Guidance had not clearly conveyed that grants of three-year deferrals had actually begun. To the best of my knowledge and recollection, no Department of Justice attorney suggested that we delay providing this information to the Court, for reasons of litigation advantage or otherwise.

10. With respect to the attorneys who worked on this matter in the Civil Division over the course of the litigation, I have known ███████████████████████████████████████████████████████████ is a profoundly conscientious person and litigator, and a lawyer of deep integrity. During ███ time in the Department of Justice ███ displayed an unwavering commitment to the highest ideals of government service, and ███ treated ███ duties of professional responsibility and candor to the courts with grave seriousness. I am firmly convinced that ███ would not engage in intentional misconduct before, or deliberately withhold information from, any court, and that ███ did not do so in this case.

11. I have not had the opportunity to work as closely with the ███████████████ ███████████ who have worked diligently on this matter from its inception. Based on my interactions with them over the course of this litigation, including since the Court's April 7, 2014 Order, however, I know that all are highly regarded within the Division as hard-working, dedicated, and conscientious public servants who feel deeply the special obligation that all Justice Department attorneys bear to behave ethically and professionally in all their conduct.

5

including especially in their interactions with courts and opposing parties. I am confident that each has worked in good faith, with no intent to mislead the Court, throughout this case.

12. I understand and appreciate the Court's concerns, and I take them extremely seriously. I am committed to maintaining the highest standards of ethical conduct and professionalism for the Civil Division's attorneys, and believe that our attorneys, as public servants as well as members of the bar, must strive at all times to avoid anything that could give rise to even the appearance of impropriety. I also understand and appreciate that the federal courts, including this Court, rely on and expect Department of Justice attorneys to maintain exceptionally high standards of candor and forthrightness, and that the trust they place in the Department of Justice is critical to its effective representation of the American people. It deeply troubles me, therefore, that the Court believes attorneys involved in this case have not lived up to that trust, notwithstanding my own firm belief, based on my direct and personal work on this matter, that they engaged in no intentional misconduct. In addition, this case illustrates the challenge that attorneys in the Civil Division sometimes face in ensuring clear communications to courts about complex factual and legal issues in high-pressure situations. Therefore, in light of the events in this case, and in order to both demonstrate and further the Department's and the Civil Division's commitment to the highest standards expected of us and our utmost regard for the trust extended to the Department by this and other federal courts, I have asked an outside expert in attorney ethics and professional responsibility to provide special one-hour training of his design for Civil Division attorneys.

13. The Department already requires annual ethics and professionalism training of Civil Division attorneys. Attorneys in the Civil Division must annually complete two hours of professional responsibility training, see OARM Memorandum 2010-16, Revised Guidance on Professionalism Training for Department Attorneys (Oct. 4, 2010); OARM Policy 6-2.0, in

addition to any requirements for continuing legal ethics training imposed by the bars to which they belong. A government ethics training requirement applies to all federal agency employees, see 5 C.F.R. 2638.703-.705, and in the Civil Division that requirement is met by attorneys receiving government ethics training. The training I have directed the Civil Division attorneys to undertake will supplement these annual training requirements. All Civil Division attorneys, including myself, will be required to complete this training program within the next 90 days.

14. Although I have full faith that no intentional misrepresentation occurred in this case, I intend this measure to affirm our steadfast commitment to our solemn obligations to all tribunals. It is my sincere hope that this training will help to assure the Court that we are making every effort to maintain the trust placed in the Department of Justice. We will continue to look for additional opportunities to further our efforts to ensure that these standards are met and exceeded by our attorneys.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 29, 2016.

_____
BENJAMIN C. MIZER