**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, *et al.* ) <br> ) <br> Defendants. ) <br> ) | No. 1:14-CV-254 |

# EXHIBIT D:

Declaration No. 4:

Declaration of Joseph Hunt

**REDACTED FOR PUBLIC FILING**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 1:14-cv-254-ASH |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF JOSEPH H. HUNT

I, Joseph H. Hunt, for my declaration pursuant to 28 U.S.C. § 1746, depose and say as follows:

1. I am a Director in the Federal Programs Branch, Civil Division, of the United States Department of Justice, a position in the Career Senior Executive Service of the United States Government. I joined the Department of Justice as a Federal Programs Branch Trial Attorney in 1999. From 2001 to 2002, I served as Counsel to the Deputy Attorney General of the United States. I became Director in the Federal Programs Branch in 2002. Prior to joining the Department of Justice, I was a Partner (and before that, an Associate) at the Atlanta, Georgia, office of King & Spalding, where I worked from 1995 to 1999. I was an Associate at the Washington, D.C., office of White & Case from 1990 to 1995, and prior to that I clerked for the Hon. James H. Hancock of the United States District Court for the Northern District of Alabama from 1989 to 1990. I graduated from Columbia Law School in 1989. I make this declaration based on personal knowledge, and am submitting it on behalf of the Federal Government in the above-captioned matter.

2. The role of the Federal Programs Branch is principally to defend civil actions filed against the Government in federal district courts throughout the United States. The Branch is made up entirely of career professionals. The Branch handles significant cases nationwide in which parties challenge the lawfulness of Federal Government programs, policies, and decisions, including the constitutionality of Federal statutes; the cases handled by the Branch encompass a wide range of subject matters and address many different areas of the law. The Branch makes the determination of whether to handle cases within its sphere of responsibility, regardless of where in the United States those cases are filed, and assigns other cases to the respective United States Attorney's Offices for handling in whatever jurisdictions they are filed.

3. My engagement and level of involvement in the details of any particular litigation matter handled by the Federal Programs Branch depend on a variety of factors. Due to the number of cases handled by the Branch and my competing managerial and administrative duties as Director, I am not able to participate closely in the day-to-day activities of every case that falls within my area of responsibility. For many cases, I rely on the responsible Deputy Director or Assistant Director to oversee the day-to-day litigation activities, and (together with the assigned trial attorneys) to bring any significant issues in such cases to my attention as needed. That was the situation during the preliminary injunction proceedings in this case, in which the Federal Programs Branch represented the Government with respect to Plaintiffs' challenge to the November 20, 2014, Deferred Action Guidance issued by the Secretary of the Department of Homeland Security ("DHS").

4. Because I was actively involved in another significant litigation matter during the preliminary injunction stage in this case, and because many Department of Justice attorneys outside the Federal Programs Branch were heavily involved in overseeing this case (including

███████████████████████████████████████ as well as others in the Civil Division, attorneys in the Office of the Solicitor General, and attorneys in the Department's leadership offices),[1] I was not an active participant in the day-to-day activities of this case during the preliminary injunction stage. I received some communications about it, and was in a position to be made aware by the supervising Assistant Director and by other Branch attorneys of any key developments in the case as needed.

5. To my best recollection, I first became aware on Monday, March 2, 2015, that there was a concern about prior representations that had been made to the parties and the Court during the preliminary injunction proceedings due to the issuance of three-year terms of deferred action to individuals eligible under the 2012 Deferred Action for Childhood Arrivals ("DACA") policy.[2] ███████████████



---

[1] Those involved in oversight of this matter from the Department of Justice leadership offices included attorneys in the Office of the Attorney General, attorneys in the Office of the Deputy Attorney General, and attorneys in the Office of the Associate Attorney General.

[2] ███████████████████████████████████████

▮ to address any possible misunderstanding that may have been created by the Government's prior statements concerning the timing for implementation of the November 2014 Guidance. The trial team prepared a draft filing overnight, which underwent review and editing by ▮ and by individuals in the other Department of Justice offices involved in the case before being submitted to the Court the next day, on March 3, 2015.

6. I am aware that in April 2015 the Court expressed concerns about the Government's representations during the preliminary injunction proceedings regarding implementation of the November 2014 Deferred Action Guidance.[3] And I am aware of the Court's more recent conclusion in May 2016 that those representations were intentionally deceptive, misleading, and made in bad faith.

7. I have no knowledge or information indicating that any Department of Justice attorney involved in the Government's defense of this case sought at any time to mislead the Plaintiffs or the Court, or to intentionally withhold or conceal from the Plaintiffs or the Court that DHS had begun issuing three-year terms of deferred action under the 2012 DACA eligibility guidelines. Likewise, I have no knowledge or information to indicate that any Department of Justice attorney ever directed, suggested, or intended that information regarding the issuance by DHS of three-year terms of deferred action be withheld or concealed from the Plaintiffs or the Court.

8. At no time did any of the attorneys working on this case raise a concern with me that there was any intention to mislead the Plaintiffs or the Court, or that there was any intention to withhold or conceal information from the Plaintiffs or the Court that the Government ought to

---

[3] ▮

disclose. Given my experience as Director overseeing litigation handled by the Federal Programs Branch, and consistent with my expectations of the supervisors and trial attorneys in the Branch, it is inconceivable that there could have been an intention to mislead the Plaintiffs or the Court, or an effort to improperly withhold or conceal information from the Plaintiffs or the Court, without it being brought to my attention by any of the career professionals working on this matter. Similarly, and for the same reasons, I do not believe that representations in the Government's filings could have been crafted in such a way as to intentionally mislead the Plaintiffs or the Court, or to improperly withhold or conceal information from the Plaintiffs or the Court, without it being brought to my attention by any of the career professionals working on this matter. As a Federal Programs Branch Director, it is my experience that Branch attorneys, consistent with their responsibilities as career civil servants, seek to accurately present to the courts the position of the United States in litigation, the facts in a case, and the applicable law with respect to matters handled by the Branch. Furthermore, because the Branch consists of career professionals, it bears mention that Branch attorneys undertake these responsibilities across Administrations and with respect to any of the various cases handled by the Branch.

9. If at any time any of the attorneys involved in this case had indicated to me that someone in our office intended, or that someone had asked our office (or any individual in our office), to mislead the Plaintiffs or the Court, or to withhold or conceal information from the Plaintiffs or the Court in this case inconsistent with ethical obligations and the standards of this office, I would not have countenanced it or permitted it. If I had been made aware by any individual of any direction, suggestion, or intention to mislead the Plaintiffs or the Court, or any effort to intentionally withhold or conceal information that the Government should have disclosed, I would have personally intervened to ensure that the Branch would take no part in it.

And if I had been made aware that such information had been withheld, I would have taken steps to ensure that appropriate corrective measures were taken, including by bringing the information to the attention of the Court.

10. It is my privilege as a Director in the Federal Programs Branch to represent the United States of America. And it is my privilege in this position to work with outstanding attorneys who execute their duties as counsel for the United States with skill and professionalism. That is true with respect to the Branch attorneys assigned to this case, whom I have known through personal observation and interaction over time to have conducted themselves consistent with the highest standards of professionalism with respect to their litigation matters.

11. As regards ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ I interacted with ▓▓ on litigation matters over various periods of time. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ I worked with ▓▓▓ and had occasion to be aware of ▓ performance, with respect to many cases ▓ handled or in which ▓ participated during ▓ time at the Branch. Based on my experience and observation, ▓▓▓ was extremely conscientious and carried out ▓ responsibilities with skill, dedication, and a commitment to ▓ professional obligations ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ In that role, I worked with and interacted with ▓▓▓▓ on a near daily basis on numerous challenging issues in cases in which the Branch represented the United States. Based on my experience and observation, ▓▓▓ was deeply dedicated and carried out ▓ responsibilities with care, diligence, and a

6

commitment to ▇ professional obligations. In my work with ▇▇▇▇▇▇▇▇ I never had reason to question their integrity.

12. While I greatly regret the circumstances that led to the Court's May 19, 2016, Memorandum Opinion and Order, based on what I know about this matter as well as my experience working in the Department of Justice, I have no reason to believe that there was any intention on the part of any Department of Justice attorney appearing before the Court in this matter to mislead or to deceive the Plaintiffs or the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 31, 2016.

_____
JOSEPH H. HUNT

7