**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

STATE OF TEXAS, *et al.*,

      *Plaintiffs*,

      v.

UNITED STATES OF AMERICA, *et al.*,

      *Defendants*.

No.: 1:14-CV-00254-ASH

**UNOPPOSED MOTION OF JANE DOE #4 & JANE DOE #5
FOR LEAVE TO PROCEED UNDER PSEUDONYMS
& MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

**Page No(s)**

TABLE OF AUTHORITIES ........................................................... 3

BACKGROUND........................................................................ 1

STATEMENT OF THE ISSUE TO BE DECIDED BY THIS COURT ........................................ 3

SUMMARY OF THE ARGUMENT ................................................ 3

ARGUMENT ............................................................................ 4

    1.   Doe *Amici* seek to challenge government action................................. 5

    2.   The nature of Doe *Amici*'s sensitive and personal information justifies allowing them to proceed under pseudonyms. ................................ 6

    3.   The public interest weighs in favor of allowing Doe *Amici* to proceed under pseudonyms.......................................................... 9

    4.   Allowing Doe *Amici* to proceed under pseudonyms will cause no prejudice to the Parties in this case. ................................................ 10

CERTIFICATE OF CONFERENCE.......................................... 13

CERTIFICATE OF SERVICE ................................................. 13

## TABLE OF AUTHORITIES

Page No(s)

### CASES

*Barrow County,* 219 F.R.D. 189 (N.D. Ga. 2003)........................................................ 10

*Craig v. Harney*, 331 U.S. 367 (1947) ............................................................... 4

*Doe v. Beaumont Indep. Sch. Dist.*, 172 F.R.D. 215 (E.D. Tex. 1997)........................................ 5

*Doe v. El Paso City Hosp. Dist.*, No. EP-13-CV-00406-DCG, 2015 WL 1507840 (W.D. Tex. Apr. 1, 2015). ................................................................................... 5, 6

*Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004) ........................................................ 6

*Doe v. Santa Fe Indep. Sch. Dist.*, 933 F. Supp. 647 (S.D. Tex. 1996).......................................... 6

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981)................................................. 2, 3, 4, 5

*Friendly House v. Whiting*, No. 2:10-cv-1061-SRB (D. Ariz. June 21, 2010).............................. 7

*Ga. Latino All. for Human Rights v. Deal*, 793 F. Supp. 2d 1317 (N.D. Ga. 2011) ..................... 6

*Ga. Latino All. for Human Rights v. Governor of Ga.*, 691 F.3d 1250 (11th Cir. 2012)............... 7

*Hispanic Interest Coal. v. Gov. of Ala.*, 691 F.3d 1236 (11th Cir. 2012) ..................................... 7

*Lozano v. City of Hazelton*, 620 F.3d 170 (3d Cir. 2010), *vacated on other grounds*, 131 S. Ct. 2958 (2011) .................................................................................... 6

*Plyler v. Doe*, 457 U.S. 202 (1982). ................................................................... 7

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979) ...................................................................................... 4, 6, 10

### OTHER AUTHORITIES

Jonathan Greenblatt, *When Hateful Speech Leads to Hate Crimes: Taking Bigotry Out of the Immigration Debate*, Huffington Post (Aug. 24, 2015)............................................. 8

Katie Rogers, *2 Valedictorians in Texas Declare Undocumented Status, and Outrage Ensues*, N.Y. Times (June 10, 2016) ............................................................... 8

Melissa Bailey, *City Wins ID Battle*, New Haven Indep. (June 25, 2008) ...................... 8

*Amici* Jane Doe #4 and Jane Doe #5 (together, "Doe *Amici*") respectfully request this Court's leave to proceed under pseudonyms to protect their identities from public disclosure related to their contemporaneously-filed Motion for Leave to File an Amicus Brief Regarding the May 19, 2016 Sanctions Order.

## BACKGROUND

On May 19, 2016, this Court ordered the federal government, as a sanction for what the Court concluded were intentional misrepresentations of its counsel, to compile and produce under seal a list of the personally identifying information of individuals residing in one of the twenty-six Plaintiff States who received a three-year term of deferred action between November 20, 2014 and March 3, 2015. Mem. Op. & Order (hereinafter, "Sanctions Order"), ECF No. 347, at 22-23.[1]  Doe *Amici* fit that criteria, and therefore their information would be included in the list the Court has ordered the federal government to provide. *See* Decl. of Jane Doe #4 ¶¶ 11-13 (Ex. A); Decl. of Jane Doe #5 ¶¶ 12-14 (Ex. B). Concurrently with this motion, Doe *Amici* are filing an Unopposed Motion for Leave to File an Amicus Brief Regarding the May 19, 2016 Sanctions Order; they seek herein the Court's permission to file that brief using pseudonyms.

Jane Doe #4 is 26 years old and lives in Austin, Texas. Decl. of Jane Doe #4 ¶ 3. She is a student at the University of Texas, Austin, where she is finishing her bachelor's degree in nursing. *Id.* ¶ 5. She received deferred action through DACA in February of 2013 and, soon after, she received an Employment Authorization Document ("EAD") valid for two years. *Id.* ¶ 9. Jane Doe #4 applied to renew her DACA and EAD, still under the original 2012 DACA program, in early October of 2014. *Id.* ¶ 10. On December 18, 2014 she received a new EAD valid for three years.

---

[1] The Court stayed the Sanctions Order on June 7 pending the outcome of a hearing then scheduled for August 22, 2016, *see* Order, ECF No. 364, which has since been rescheduled for August 30, 2016, *see* Order, ECF No. 390.

*Id.* ¶ 11.   Jane Doe #4 worries that by disclosing her real name and immigration status in this case she could risk exposing herself and her family members to harassment, discrimination, and other harms.   *See  id.* ¶¶ 15-16, 18.    Jane Doe #4 knows there are many individuals in her home State of Texas who disagree with the DACA program, and she is worried that someone may try to retaliate against her or her family if they know of her DACA status or her participation in this case. *See  id.* ¶ 18.

Jane Doe #5 is a 20-year-old woman who lives in Houston, Texas.  Decl. of Jane Doe #5 ¶ 3.   She is a medical assistant and hopes to become a registered nurse.   *Id.* ¶¶ 6, 8.   She is also a student at Lone Star College.   *Id.* ¶ 8.    In June 2012, she received DACA and an EAD valid for two years.    *Id.* ¶ 10.    Jane Doe #5 applied for DACA renewal, again under the original 2012 DACA program, and was issued a new EAD on December 18, 2014.  *Id.* ¶ 12.   Jane Doe #5 fears disclosure of her real name in this case because she worries that by disclosing  her name and immigration status she could put at risk for exposure her family  members, especially her younger sister and her parents who are undocumented  immigrants.  *See Id.* ¶¶ 15-16.

As shown below, the Doe *Amici*'s request satisfies the Fifth Circuit's standard for  *parties* to proceed under a pseudonym, *see Doe v. Stegall*, 653 F.2d 180  (5th Cir. 1981)—a standard necessarily higher than for *amicus curiae*.[2]  The Doe *Amici* are challenging government action; the nature of the information they seek to protect is of the utmost intimacy; and release of their identities would make them vulnerable to extensive harassment, possible violent reprisals, and hostile public reaction.   Their need for privacy outweighs the public's interest in knowing their identities, and the Parties will not be prejudiced by Doe *Amici* filing an amicus brief using pseudonyms.

---

[2] For example, while "[t]he Federal Rules of Civil Procedure require plaintiffs to disclose their names in the instrument they file to commence a lawsuit," *Stegall*, 653 F.2d at 185 (citing Fed. R. Civ. P. 10(a)), there is no comparable requirement for the filings of non-parties.

## STATEMENT OF THE ISSUE TO BE DECIDED BY THIS COURT

The Court must decide whether Jane Doe #4 and Jane Doe #5's privacy interests and interest in avoiding harassment and reprisals outweighs the public's interest in knowing their identities.   The Fifth Circuit does not appear to have articulated a standard that *amicus curiae* must satisfy to proceed under pseudonyms, and so Doe *Amici* suggest application of the standard applicable to parties set out in *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981), with some allowance given for the diminished public interest in knowing the true identities of *amicus curiae* (as compared to parties) and the absence of a Rule requiring non-parties to disclose their names in any particular filing.  Even without said allowances, however, Doe *Amici* meet the *Stegall* test.

## SUMMARY OF THE ARGUMENT

Doe *Amici* should be allowed to proceed under pseudonyms.   While there is no bright line rule as to who should and should not be permitted to proceed anonymously, the Fifth Circuit has identified several relevant factors courts are to weigh in considering such a request.   Each of those factors weighs in favor of granting the instant motion.

First, Doe *Amici* seek to address governmental action implicating their privacy rights— specifically, the order of this Court that the federal government compile and submit their personally identifying information, for possible future dissemination to the governments of their home states.   Given the risk to Doe *Amici* of potential harassment and retaliation for challenging the order requiring the federal government's disclosure of their personally identifying information, this factor weighs in favor of allowing Doe Amici to proceed under pseudonyms.

Second, the particularly sensitive nature of Doe *Amici*'s personal information at issue also weighs in favor of anonymity.   This Court's order requires disclosure of information about immigration status, which courts have recognized constitutes information of a highly sensitive and

personal nature that could subject Doe *Amici* to adverse consequences, including harassment and intimidation.  The particularly sensitive nature of the information about Doe *Amici* that the Court's order would require be disclosed favors allowing Doe *Amici* to proceed anonymously.

Third, given the highly charged nature of the underlying issues in the case and the anti-immigrant sentiment experienced by Doe *Amici*, Doe *Amici* fear harassment and even physical harm to themselves and their families if their identities and personal information are disclosed publicly.

Finally, Doe *Amici* want to weigh in on a court order that, if allowed to go into effect, requires production of the personally identifying information for tens of thousands of young immigrants who are not parties to this case.  It is in the public interest, and does not cause any prejudice to the Parties, for the Court to hear directly from some of the individuals its order affects so that it can better understand the ramifications of the chosen sanction.

## ARGUMENT

The Fifth Circuit has long recognized the right of individuals to proceed anonymously through the use of a fictitious name.   *Stegall*, 653 F.2d at 185.   While recognizing that ordinarily "[w]hat transpires in the courtroom is public property," *id.* (quoting *Craig v. Harney*, 331 U.S. 367, 374 (1947)) (internal quotation marks omitted), the Fifth Circuit has held that the "normal practice of  disclosing the parties' identities yields 'to a policy of protecting privacy in a very  private matter,'" *id.* (quoting *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)) ("*SMU"*) (internal citation  omitted).[3]

---

[3] Notably, the standard set out in *Stegall*, 653 F.2d 180, pertains specifically to *parties* who are seeking to proceed anonymously—a standard necessarily higher than for *amicus curiae*. Nonetheless, in the absence of Fifth Circuit precedent on the standard that *amicus curiae* must satisfy to proceed anonymously, Doe *Amici* apply the factors set forth in *Stegall*, 653 F.2d 180, while recognizing that some allowance should be given for the attenuated public interest in knowing the true identities of *amicus curiae* (as compared to parties) and the absence of a Rule

Under Fifth Circuit precedent, there is "no hard and fast rule for courts to follow when deciding whether to allow a party to proceed under a fictitious name."   *Stegall*, 653 F.2d at 185. Rather, the Court must decide whether the considerations calling for the maintenance of a party's privacy outweigh the presumption of openness in judicial proceedings.   *Id*. at 186; *see also Doe v. Beaumont Indep. Sch. Dist*., 172 F.R.D. 215, 216 (E.D. Tex. 1997).   When determining whether to permit proceeding under a fictitious name, the Court considers factors including: (1) whether the party seeking anonymity is challenging governmental activity; (2) whether court proceedings would otherwise compel the party to disclose information of the utmost intimacy; and (3) whether the party would be compelled to admit her intention to engage in illegal conduct, thereby risking criminal prosecution. *See Stegall*, 653 F.2d at 185.   Doe *Amici* satisfy factors one and two, which is sufficient to warrant proceeding anonymously. *See, e.g.*, *Doe v. El Paso City Hosp. Dist*., No. EP-13-CV-00406-DCG, 2015 WL 1507840, at *2 (W.D. Tex. Apr. 1, 2015).

In addition to these three commonly utilized factors, courts also consider "the relevant facts and circumstances of a particular case," including, for example, "the threat of a hostile public reaction . . . in conjunction with the other factors, when deciding whether to permit" appearance by a pseudonym. *Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 266 (E.D. Tex. 2007). Doe *Amici*'s fears of a threat of harassment, including possible violence, weigh in favor of proceeding under pseudonyms. *See* Decl. of Jane Doe #4 ¶¶ 16, 18, 20; Decl. of Jane Doe #5 ¶¶ 15-16, 19.

### 1.    Doe *Amici* seek to challenge government action.

Courts have long recognized that litigants may face threats of harassment and retaliation for

---

requiring non-parties to disclose their names in any particular filing.  Doe *Amici* meet the *Stegall* test, however, even without such allowances.

speaking out against high-profile government action, and that this risk weighs in favor of allowing parties to proceed anonymously.   *See SMU*, 599  F.2d at 713 (noting that the majority of cases allowing use of pseudonyms involved challenges to government, not private, action); *Doe v. Santa Fe Indep. Sch. Dist*., 933 F. Supp. 647, 651 (S.D. Tex. 1996).   Doe *Amici* need not be attempting "to have a law or regulation declared invalid" in order to satisfy this portion of the standard.   *El Paso City Hosp. Dist*., 2015 WL 1507840, at *3 (citing *Doe v. Porter*,  370 F.3d 558, 560 (6th Cir. 2004)).

Here, Doe *Amici* are challenging government action implicating their privacy rights— specifically, the order of this Court that the federal government compile and submit their personally identifying information for possible future dissemination to the governments of their home states.  These potential disclosures—including to the governments of Doe *Amici*'s home states—threaten to expose highly sensitive information about them, which violates their constitutionally protected right to privacy.

## 2.    The nature of Doe *Amici*'s sensitive and personal information justifies allowing them to proceed under pseudonyms.

The mere identification of Doe *Amici* as individuals subject to the May 19 Court Order, would necessarily reveal that they are immigrant youth who were recently  undocumented and who have gained temporary  permission to live and work in the United States through the original 2012 DACA program.  This information alone constitutes information of a highly sensitive and personal nature and favors allowing Doe *Amici* to proceed anonymously.  *See SMU,* 599  F.2d at 712-13.

Courts have routinely recognized the particular vulnerability of undocumented immigrants and allowed them to proceed anonymously.  *See, e.g.*,  *Lozano v. City of Hazelton*, 620 F.3d 170, 194-95 (3d Cir. 2010), *vacated on other  grounds*, 131 S. Ct. 2958 (2011); *Ga. Latino All. for Human Rights v. Deal*, 793 F.  Supp. 2d 1317 (N.D. Ga. 2011), *aff'd in part, rev'd in part on other*

grounds sub nom. *Ga. Latino All. for Human Rights v. Governor of Ga.*, 691 F.3d 1250 (11th Cir. 2012). Indeed, in the landmark Supreme Court decision addressing the rights of undocumented children, the plaintiffs were allowed to proceed anonymously. *Plyler v. Doe*, 457 U.S. 202 (1982).

Moreover, courts have recognized that immigration status more generally is particularly sensitive, as its revelation can subject the individual to adverse consequences including "criminal prosecution, harassment, and intimidation." *Hispanic Interest Coal. v. Gov. of Ala.*, 691 F.3d 1236, 1247 (11th Cir. 2012). *See also Friendly House v. Whiting*, No. 2:10-cv-1061-SRB, at ECF No. 212 (D. Ariz. June 21, 2010) (allowing individual non-citizens, including those who have some form of temporary permission to be in the United States, to proceed anonymously due to concerns of revealing immigration status information).

Immigration policy generally, and the federal government's executive actions on immigration in particular, have been the subject of intense and heated debate in Texas and across the country. In this highly charged atmosphere, Doe *Amici* fear harassment and even physical harm if their identities and personal stories are disclosed publicly, including the fact that they have received deferred action through the original 2012 DACA program. For example, because Jane Doe #4 has experienced a significant amount of anti-immigrant sentiment in Texas, she worries that if people know her personal immigration information they "will try to harm me or my family, either physically or in some other way." Decl. of Jane Doe #4 ¶ 18. Jane Doe #4 is well aware that "there are a lot of people in Texas who disagree with the DACA program," and she worries that "someone may try to retaliate against me or my family if they know that I have DACA and that I am trying to stop the State of Texas from getting my personal information." Decl. of Jane Doe #4 ¶ 20.

Similarly, Jane Doe #5 also has strong fears about the retaliation and harassment that she

and her family could be subjected to if her name, and therefore her immigration status, is revealed to the public.    Decl. of Jane Doe #5 ¶¶ 15-17, 19.  Jane Doe #5 is "very worried that if my real name were used in this lawsuit, I or my family would be harmed physically or verbally or in some other way." *Id*. ¶ 19.  Because she knows that "[t]here is a lot of anti-immigrant sentiment and people are very enraged about immigration" sometimes "they attack people in the street randomly" and she fears the same.    *Id*.    Her fear is amplified since she works "in a very public place" and doesn't "want people to know about me or recognize me for  the same reasons."  *Id*.  Specifically, Jane Doe #5 is concerned that if her name and immigration status is disclosed in this litigation, she could risk exposure of her family members, especially her younger sister and her parents who are undocumented immigrants.    *Id*. ¶¶ 15-17, 19.

        The fears expressed by Jane Does #4 and #5 for their safety and that of their families are well founded.  Currently, anti-immigrant rhetoric and hostility are commonplace in their home states and nationwide, and the level of anti-immigrant sentiment is such that verbal and physical violence against immigrants is often a consequence.  *See, e.g.*, Melissa Bailey, *City Wins ID Battle*, New Haven Indep. (June 25, 2008) (Ex. C) (news article on Connecticut Freedom of Information Commission decision sustaining the City of New Haven's refusal to produce the names and addresses of undocumented immigrants who applied for the its municipal identification card, citing public safety risks from such disclosure in light of anti-immigrant rhetoric and opposition to the cards); Jonathan Greenblatt, *When Hateful Speech Leads to Hate Crimes: Taking Bigotry Out of the Immigration Debate*, Huffington Post (Aug. 24, 2015) (Ex. D) (op-ed chronicling recent anti-immigrant hate crimes and increasing anti-immigrant rhetoric nationwide); Katie Rogers, *2 Valedictorians in Texas Declare Undocumented Status, and Outrage Ensues*, N.Y. Times (June 10, 2016) (Ex. E) (news article chronicling recent anti-immigrant backlash against two undocumented

high school valedictorians in Texas).

Doe *Amici* also justifiably fear retaliation by the Plaintiff states if their names are disclosed as a part of this legal action.   Doe *Amici*'s home state of Texas is leading the legal effort to stop the DAPA and the expansion of DACA programs.   Doe *Amici*'s home state stated during a hearing before this Court that it could cancel the driver's licenses for the group of DACA recipients with three-year EADs who live in Texas even though the federal government and the district court have not revoked those 3-year licenses.   *See* ECF No. 299 (Tr. of Aug. 19,  2015 H'rg) at 32-34;  *but see* ECF No. 304 (Pls.' Advisory  dated Sept. 4, 2015) at 6 (taking the opposite position).   Jane Does #4 and #5 understandably fear that proceeding using their real names could result in this and other forms of state-sanctioned retaliation.

### 3.     The public interest weighs in favor of allowing Doe *Amici* to proceed under pseudonyms.

The public interest weighs in favor of allowing Jane Does #4 and #5 to proceed under pseudonyms.  If allowed to go into effect, Sanctions Order on which Doe *Amici* seek to provide input would require the production of personal  identifying information for nearly 50,000 young immigrants who are neither parties to this case nor before this Court.   It is in the public interest for the Court to hear directly from some of the young immigrants who would be subject to this order and whose privacy would be invaded as a result.  *Amici*, if allowed to proceed as Does, can provide critical input to this  Court on the impact of the release of their personally identifying information.

The public interest also favors allowing the Doe *Amici* to proceed anonymously because what is at stake here is precisely their right to privacy—a right that would be severely compromised if they were forced to proceed under their names and to  disclose their immigration status.

**4.      Allowing Doe *Amici* to proceed under pseudonyms will cause no prejudice to the Parties in this case.**

Finally, the Parties will suffer no prejudice if the Court permits the Doe *Amici* to proceed anonymously.  Indeed, likely for that reason, no party has opposed this motion.  The Court's Sanctions Order implicates the privacy interests of Doe *Amici* and 50,000 similarly situated DACA recipients.  The lawfulness of that order will not turn on the identities or the credibility of any particular individuals, including the Doe *Amici* seeking to proceed anonymously.       Thus, the public's interest in open  judicial proceedings will not be affected if the Court grants this motion and permits Doe *Amici* to proceed  anonymously.   *See Barrow County,* 219 F.R.D. 189, 194 (N.D. Ga. 2003).  Moreover, unlike  anonymous litigation against private parties, anonymous challenges to "the  constitutional, statutory, or regulatory validity of government activity . . . involve no injury to the Government's reputation."   *SMU*, 599 F.2d at 713.   None of the Parties face any prejudice here if the Doe *Amici* are allowed to proceed under pseudonyms.

**CONCLUSION**

Jane Doe #4 and Jane Doe #5 would be at risk of harm if their personally identifying information, including their names and their immigration status, were revealed.  Permitting them to proceed anonymously would not harm the public interest in open court proceedings, nor would it prejudice any of the Parties.  Therefore, the Doe *Amici* should be permitted to proceed under pseudonyms in this action.[4]

Dated:  August 12, 2016                              Respectfully submitted,

---

[4] In the alternative, if this motion is denied, *Amici* respectfully request that they be permitted to amend their motion for leave to file an amicus brief and supporting documents to remove the Doe *Amici* or, if any of those *Amici* so choose, to proceed under their names.

/s/ Edgar Saldivar
Texas Bar No. 00794542
Federal No. 618958
Rebecca L. Robertson
Texas Bar No. 00794542
Federal No. 20061
ACLU FOUNDATION OF TEXAS
1500 McGowen Street, Suite 250
Houston, TX 77004
T:  713.942.8146
F:  713.942.8966
esaldivar@aclutx.org
rrobertson@aclutx.org

*Karen C. Tumlin
CA Bar No. 234691
*Nora A. Preciado
CA Bar No. 239235
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Boulevard, Suite 1600
Los Angeles, CA 90010
T:  213.639.3900
F:  213.639.3911
tumlin@nilc.org
preciado@nilc.org

*Justin B. Cox
GA Bar No. 748945
NATIONAL IMMIGRATION LAW CENTER
1989 College Avenue, NE
Atlanta, GA 30317
T:  678.404.9119
cox@nilc.org

*Cecilia D. Wang
CA Bar. No. 187782
*Cody Wofsy
CA Bar No. 294179
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-0770
cwang@aclu.org
cwofsy@aclu.org

*Omar C. Jadwat
NY Bar. No. 4118170
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T:  (212) 549-2620
ojadwat@aclu.org

*Pro hac vice motion filed concurrently herewith

*Attorneys for proposed* Amici Curiae *Angelica
Villalobos, Juan Escalante, and Jane Does #4-5*

## CERTIFICATE OF CONFERENCE

I, Justin B. Cox, hereby certify that as counsel for Angelica Villalobos, Juan Escalante, and Jane Does #4-5, I conferred with counsel for all Parties regarding this motion on August 9 and 10, 2016.  Plaintiffs' counsel stated that Plaintiffs do not oppose this motion.  Counsel for Defendants and counsel for Intervenor Defendants stated that their respective clients take no position on this motion.

/s/ Justin B. Cox
Justin B. Cox


## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2016, I electronically submitted the foregoing document with the clerk of the court for the U.S. district court, Southern District of Texas, using the electronic case files system of the court.  The electronic case files system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Edgar Saldivar
Edgar Saldivar

13