**INDEX OF EXHIBITS TO**
**BRIEF OF ANGELICA VILLALOBOS, JUAN ESCALANTE, JANE DOE #4 & JANE DOE #5 AS *AMICI CURIAE* OPPOSING CERTAIN SANCTIONS CONTEMPLATED BY THE COURT'S MAY 19 ORDER**

| | |
|---|---|
| **EXHIBIT A** | Declaration of Jane Doe #4 |
| **EXHIBIT B** | Declaration of Jane Doe #5 |
| **EXHIBIT C** | Declaration of Angelica Villalobos |
| **EXHIBIT D** | Declaration of Juan Escalante |

# EXHIBIT A

JANE DOE #4

## DECLARATION OF ▇▇▇▇▇▇▇

I, ▇▇▇▇▇▇▇, hereby make the following declaration with respect to the above-captioned matter:

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows.

2. I am a Petitioner for a Writ of Mandamus in this case, Texas v. United States, No. 14-00254 (S.D. Tex. filed December 3, 2014).

3. I am 26 years old and I live in Austin, Texas.

4. I was born in Mexico, but I was brought to the United States when I was a year old, and I have lived in this country ever since. I have not returned to Mexico since I was brought here.

5. I have lived in Texas for all but a few years of my life. I graduated from high school and a community college in Texas, and I am currently finishing the last of my coursework at the University of Texas in Austin in order to obtain my bachelor of science degree in nursing. I am a registered nurse.

6. I am married to a Lawful Permanent Resident who is in the process of becoming a U.S. citizen.

7. In November of 2012, I applied for deferred action through the Deferred Action for Childhood Arrivals ("DACA") program. At that point, I was undocumented, and had been the entire time I had been in this country.

8. I heard about DACA when it was announced, and I knew other people who applied right away, but I waited a few months to apply because I wanted to make sure that people who applied were actually getting work permits and other documents, and that it was not just a way to get people to admit to the government that they were undocumented. Once I saw that people who applied were getting approved for deferred action and work permits, and were not getting into trouble with the authorities, I felt comfortable appyling for DACA.

9. I received my approval for DACA in February of 2013. Soon thereafter, I received an Employment Authorization Document ("EAD") valid for two years.

10. I applied to renew my deferred action and EAD in early October of 2014.

11. On December 18, 2014, I received a notice that my deferred action and EAD had been renewed for three years. When I applied to renew them, my understanding was that the renewals would be for two years.

12. I currently have a Texas driver's license. Its expiration date is the same day in December 2017 that my current EAD expires.

13. I recently heard about the district court's May 19, 2016 order that requires the Federal Government to give the district court a list with the personal information of DACA recipients like me who received an EAD valid for three years and who live in certain states, including Texas.

14. I am very worried about the Federal Government giving my personal and private information—including my name, address, phone number, and A-file number—to anyone. When I applied for DACA, I submitted evidence in support of my application that included copies of my birth certificate, passport, confirmation certificate, community college identification, high school diploma, associate's degree, and school transcripts among other documents. My understanding when I applied for DACA was that U.S. Citizenship and Immigration Services would keep all of this information confidential.

15. The idea that the Federal Government would give this information to the district court, and that the court might give it to the State of Texas, makes me very anxious, both for myself and for my family.

16. The address that I used in my DACA application is my parents' house, where my three younger siblings also live. My parents are undocumented, and I am worried that they will be harassed or even arrested by Texas officials if my personal information is given out.

17. I am also worried that the State of Texas may try to treat me like I am here undocumented even though I have DACA and an EAD.

18. I am also worried that my family or I could be harassed by private individuals who might obtain my personal information. I am aware of a lot of anti-immigrant sentiment in Texas, and so I worry that if people know my personal information they will try to harm me or my family, either physically or in some other way.

19. I also worry about the possibility of people accessing my personal information because they could use it to harm me by stealing it and using it in ways that would damage my reputation, like stealing my identity.

20. For similar reasons, I am very worried that if my real name were used in this lawsuit, I or my family would be harmed physically or in some other way. I know there are a lot of people in Texas who disagree with the DACA program, and I worry that someone may try to retaliate against me or my family if they know that I have DACA and that I am trying to stop the State of Texas from getting my personal information. I am asking that my name not be made public in this lawsuit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___2nd___ day of June, 2016



3

# EXHIBIT B

JANE DOE #5

## DECLARATION OF ▮▮▮▮▮▮▮▮

I, ▮▮▮▮▮▮▮▮, herby make the following declaration with respect to the above-captioned matter:

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows.

2. I am a Petitioner for a Writ of Mandamus, Texas v. United States, No. 14-00254 (S.D. Tex. filed December 3, 2014).

3. I am 20 years old and I live in Houston, Texas.

4. I was born in Mexico, but I was brought to the United States in 2003, when I was in the third grade. It was difficult at first, especially learning English. I have always lived in Houston since that time and consider Texas to be my home.

5. This summer I am marrying a U.S. citizen and we will continue to live in Houston.

6. After I graduated from high school, I took a nine-month course at Lone Star College, a community college in the Houston area, and received a diploma as a medical assistant.

7. For the last 2 years, I have been working in patient care at an urgent care facility. I am excited to be starting a job in administration at a local hospital soon.

8. I have continued studying at Lone Star and am currently taking classes there toward an associate's degree. I hope to eventually work as a registered nurse.

9. I first applied for and received Deferred Action for Childhood Arrivals ("DACA") during my senior year in high school. In order to apply, I submitted a lot of documents including copies of my expired visa, school records, and pictures, paid the various fees, and completed the necessary background checks. I thought that the information I provided was going to be kept confidential.

10. In February 12, 2013, I was granted DACA and given an Employment Authorization Document ("EAD") that was valid for two years.

11. I obtained a social security number in April 2013.

12. I applied for a renewal of DACA around November 15, 2015, and was issued an extension of deferred action and a new EAD on December 18, 2014. When I applied to renew DACA and my EAD, I thought the renewal would be for two more years, but instead they are valid for three years. My current EAD expires on December 17, 2017.

13. When I applied for my DACA renewal, I provided again a lot of information and documents again, including my social security number.

14. I am aware of the lawsuit that has been filed by the state of Texas and other states challenging the expansion of the DACA program and the creation of the Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA") program. I also understand that due to the date on which my EAD was issued and the fact that it is valid for three years, I am at risk of being included in the list of information required to be produced to the federal district court in Brownsville, Texas by the district court's order of May 19 in this case. Specifically, I understand that the district court has required the United States to turn over a list that would include "all personal identifiers and locators including names, addresses, 'A' file numbers and all available contact information, together with the date the three-year renewal or approval was granted" for individuals who received EADs for three-years around the time that I did if those people live in one of the 26 states that are suing to stop the expanded DACA and DAPA programs.

15. I do not want this personal information about me to be given to the district court. I am fearful of the consequences that the production of this information could have, especially if it is given to the states who are suing to stop the expansion of the DACA program and DAPA, including my home state of Texas. I am scared of the State of Texas or other people using this information against me or parents, or people using it against me at work. I am also concerned that if my personal information is released people could use it to harm by stealing my identity or getting more of my personal information.

16. One of my biggest fears is that when I applied for DACA I included the address of my parents in that application. My parents and my younger sister who lives with them are undocumented. My youngest sister is too young to apply for DACA. I am afraid that if this list is produced with all of my identifying information that the address could put my family at risk for deportation or harassment.

17. I also worry about the production of this information to the district court because I am currently living with my fiancé and the federal government has my current address. I don't know if this will affect him in any way.

18. I also worry about the possibility of people accessing my personal information because they could use it to harm me by stealing it and using it in ways that would damage my reputation, like stealing my identity.

///

///

///

///

///

19.    I am also very worried that if my real name were used in this lawsuit, I or my family would be harmed physically or verbally or in some other way. There is a lot of anti-immigrant sentiment and people are very enraged about immigration so they attack people in the street randomly. I work in a very public place and I don't want people to know about me or recognize me for the same reasons. I worry that someone may try to hurt me or my family if they know that I have DACA and that I am trying to stop the State of Texas from getting my personal information. I am asking that my name not be made public in this lawsuit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __3__ day of June, 2016    ███████████████

3

# EXHIBIT C

## DECLARATION OF ANGELICA VILLALOBOS

I, Angelica Villalobos, hereby make the following declaration with respect to the above-captioned matter.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows.

2. I am a Petitioner for Writ of Mandamus in this case, Texas v. United States, No. 14-00254 (S.D. Tex. filed December 3, 2014).

3. I am 31 years old, and I live in Oklahoma City, Oklahoma, where I am raising my four U.S. citizen daughters whose ages are 7, 8, 12, and 15. I volunteer actively in my community, including with Make-a-Wish and by coaching soccer at the YMCA.

4. I was born in Mexico, but was brought to the United States when I was just a little over 11 years old. Since then, I have lived in Oklahoma, which I consider my home.

5. In September of 2012 I applied for the Deferred Action for Childhood Arrivals ("DACA") program. I compiled all of the required paperwork, submitted the required evidence (including, but not limited to, school records and transcripts through college, medical records for myself and my children, cell phone statements, bank records, and my children's birth certificates), paid the various fees, and completed the necessary background checks. On January 4, 2013, my DACA application was granted and I received an Employment Authorization Document ("EAD") that was good for two years.

6. On September 9, 2014, I applied to renew my deferred action and EAD for another two years. At the time, I did not know that getting a longer term for either was possible.

7. My current period of deferred action and my current EAD were renewed on November 26, 2014 for an additional three years, until November 25, 2017.

8. I recently became aware of an order in this case that requires the Federal Government to give the district court certain very personal and private information about tens of thousands of people like me who have DACA, live in certain states (including Oklahoma), and who received an EAD valid

for three years. Specifically, I understand that because I have DACA, live in Oklahoma, and received a three-year EAD in November of 2014, the Federal Government has to give the district court all of my "personal identifiers and locators," including my name, address, all of my other contact information, and my A number. I also understand that the district court might give this information to the State of Oklahoma.

9. When I applied for DACA, I gave the U.S. Citizenship and Immigration Services lots of very personal information about me and my family. For example, I had to prove how long I had been in this country, and so I submitted copies of my daughters' birth certificates showing that they were born in Oklahoma. I felt comfortable giving the Federal Government this kind of information because I understood that it would only be used for specific purposes related to my DACA application, and would otherwise be kept confidential. I had an expectation of privacy and never anticipated that my information could be distributed to third parties.

10. The fact that this information might not be kept confidential after all worries me a lot, and so I am trying to intervene in this case because I do not want this very personal information about me and my family turned over to anyone without my permission.

11. One key concern I have about the district court order requiring the production of this personal identifying information on me, and people like me, is that it is not clear to me what this information is going to be used for or who may ultimately get it.

12. For example, I am aware that the anti-immigrant sentiment in many parts of the country, including Oklahoma, is very strong these days, and it worries me that this sensitive information could get into the hands of anti-immigrant groups that could target me or my family by harassing or attempting to harm us in some way.

13. One of my biggest concerns about this information getting out there is many of my family members and relatives are still undocumented. If this information is turned over to the district court and others, I will need to tell my undocumented friends and family members that they are not safe visiting my children and me at our home. I have a real concern that this information could be used or shared with local law enforcement or other officials in a way that could put them at risk.

14. I am also concerned about the potential threats of identity theft, fraud, and other ways that my information could be misused. I am especially worried about the risk that my children's birth certificates and medical records could be misused and my children's private information could fall into the wrong hands.

15. I believe that like other residents of the United States, I have the right to have my personal information kept secure and private by the federal agencies to whom I provide it. For the past three years, I have chosen to be an active member in the immigrants' rights community in Oklahoma. I am a proud member of the Dream Act Oklahoma chapter and have spoken out in support of immigrants' rights. It is one thing for me to make the decision to share my name and my narrative to the public and that I have DACA. It is an entirely separate matter for other personal information on me and my family to be shared with third parties, such as the district court and the State of Oklahoma, simply because I applied for this program or because I am a noncitizen.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of June, 2016   _____
                                       Angelica Villalobos

3

# EXHIBIT D

# DECLARATION OF JUAN ESCALANTE

I, Juan Escalante, hereby make the following declaration with respect to the above-captioned matter based on my own personal knowledge, information, and belief and if called to testify I could and would do so competently as follows:

1. I am a Petitioner for a Writ of Mandamus in this case, Texas v. United States, No. 14-00254 (S.D. Tex. filed December 3, 2014);

2. I am 27 years old, and I live in Tallahassee, Florida;

3. I currently work as the Digital Campaign Manager for America's Voice and America's Voice Education Fund, a non-profit organization that advocates for the rights of immigrants in the United States;

4. I was born in Caracas, Venezuela, but I was brought to the United States when I was 11 years old. My father came to the U.S. on an L-1 visa as an intra-company transfer in 2000. I was lawfully admitted to the U.S on an L-2 visa, as a dependent of my father. I have lived in Florida ever since. I have not returned to Venezuela since I was brought here;

5. About a year before I graduated high school, I learned that my father's L-1 nonimmigrant visa status was about to expire. When he sought to extend his authorized period of stay in L-1 visa status, an immigration attorney advised him to apply for a green card instead. The attorney mishandled the case and my father was subsequently denied a green card. By this time, his L-1 visa (and the rest of my family's derivative visas) had expired and could no longer be extended, leaving us without lawful immigration status;

6. My undocumented status forced me to seek alternative forms of financial aid to cover the costs of higher education. I learned about my rights as an undocumented immigrant in search of avenues toward higher education. I became an advocate for immigrants. My activism

motivated me to enroll at Broward College. In 2009, after meeting with and being encouraged by Florida State University students and the University's president, I decided to pursue dual bachelor's degrees at Florida State, from which I graduated in 2011. In 2015, I received a master's degree in Public Administration from Florida State University;

7. From the day the Deferred Action for Childhood Arrivals ("DACA") guidance was announced on June 15, 2012, I started compiling all the necessary documentation I would need to apply. My goal was to provide U.S. Citizenship and Immigration Services (USCIS) with as much documentation as possible to meet the DACA threshold eligibility requirements including proving my long-term continued presence in this country. To that end, I provided extensive confidential documentation, including, but not limited to, school records and transcripts, my Social Security Number (which I had already received as a result of my former L-2 nonimmigrant visa classification), current and past residential addresses, bank statements, and copies of my passport and birth certificate;

8. In December of 2012, I submitted my DACA application to the Department of Homeland Security's USCIS. My application included evidence of economic necessity in support of my application for employment authorization;

9. When I submitted my DACA application I was undocumented and had been since my father lost his L-1 nonimmigrant visa status. Until DACA, I felt I had no avenue to work with employment authorization in this country;

10. I finally received my approval for DACA on February 12, 2013. Along with the approval, I received an Employment Authorization Document (EAD) valid for two years;

11. I applied to renew my deferred action and EAD in August of 2014. When I applied to renew my EAD, my understanding was that it would be renewed for an additional two years;

12. On December 17, 2014, I was issued a notice that my deferred action and EAD had been renewed for three years;

13. My current EAD expires on December 17, 2017;

14. I am aware of the district court's May 19, 2016 order and that, among other things, it requires that the federal government turn over to the district court the personal information of DACA beneficiaries like me who received a three-year renewal and who live in certain states, including Florida, and that, while the district court will initially keep this information under seal, it shall "on a showing of good cause" provide the list or a portion of it to "state authorities" including the State of Florida;

15. I am very worried about the federal government disclosing my personal and private information—including my name, address, phone number, Social Security number, alien registration number, and the identities of my family—to anyone. My understanding when I applied for DACA was that USCIS would keep all of this information confidential;

16. The idea that federal government would turn this information to the district court, and that the district court might turn it over to the State of Florida or other agencies, makes me anxious and fearful, both for myself and for my family, of the possibility that the information could fall into the wrong hands;

17. Included among the extensive personal information I provided to USCIS is my parents' and my younger brothers' private information, such as their home addresses and contact information. My parents are undocumented and do not speak English. I am worried that they will be

harassed or even arrested by Florida officials if my personal information is disclosed in some way;

18. When I provided the very detailed and extensive information required by the DACA application, I felt exposed and vulnerable. Nevertheless I provided the information because I thought it was worth it to get DACA and an EAD. I understood and believed that the information I submitted was going to be kept safe and used only internally by USCIS to determine my DACA eligibility. I never expected that my (or my parents' and brothers') private, personal information would be shared with anyone outside of USCIS, let alone a judge in another state where I have never lived and in a case to which I was not a party;

19. My primary concern is that I would have no control over my personal information should a state request it. Moreover, I would have no control over how they would use this information, for what reason(s) the state would use it, and/or whether the state would release it to third parties either willingly or unwillingly. I am extremely concerned that my personal information could be used for discriminatory purposes and/or to treat me and/or my family members as if we are in the U.S. undocumented, even though I have DACA and an EAD. I am very worried about being deported or that my parents and brothers could also be targets for deportation;

20. I am also concerned that my family or I could be harassed and even physically harmed by private individuals who might obtain my personal information. Having been a vocal advocate for immigrants, I am well aware of the anti-immigrant sentiment in many parts of the country, including in my home state of Florida. Because of my community organizing and advocacy efforts, I have a genuine fear that people with ill will toward immigrants like me will gain access to my personal information to try to harm me or my family, either through physical violence or in some other way, such as through identity theft, credit card fraud, or misuse of confidential school and medical files;

21. I am concerned that the release of my or other similarly situated DACA recipients' personal information could also cause harm to other members of the immigrant community who have received three-year EADs;

22. If I had known that my personal information could be disclosed to others, I might not have applied for DACA as I divulged confidential extremely detailed, personal information about myself and my family.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 2nd day of June, 2016     _____
                                              Juan Escalante