**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:14-cv-254 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Defendants | § | |
| | § | |
| and | § | |
| | § | |
| JANE DOE #1, JANE DOE #2, AND JANE DOE #3, | § | |
| | § | |
| | § | |
| Defendant-Intervenors | § | |
| | § | |
| | § | |
| | § | |

**JANE DOES' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AS MOOT
WITHOUT LEAVE TO AMEND**

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................................... 1

NATURE AND STATE OF THE PROCEEDING ........................................................ 2

STATEMENT OF THE ISSUES TO BE RULED ON BY THIS COURT ................................. 2

ARGUMENT .................................................................................................. 2

    I.     THIS CASE SHOULD BE DISMISSED AS MOOT ........................................... 2

          A.     The DAPA Memorandum Has Been Rescinded, and There Are No Remaining Issues to Be Adjudicated ........................................................ 2

          B.     The Remaining Existence of Some Three-Year DACA Grants, Which Plaintiffs Have Never Claimed Caused Them Harm and Which Will All Expire in Fewer Than Seven Months, Does Not Create Jurisdiction ........................................................................ 4

    II.    THE COURT SHOULD DENY PLAINTIFFS LEAVE TO AMEND THEIR COMPLAINT TO CHALLENGE THE 2012 DACA INITIATIVE, WHICH IS NOT AT ISSUE IN THIS CASE ................................. 6

          A.     Allowing Plaintiffs to Amend to Challenge DACA Would Radically Alter the Scope and Nature of the Case .................................... 7

          B.     Plaintiffs' Undue Delay Is a Separate Ground for Denying Leave to Amend .......................................................................................... 10

          C.     Plaintiffs Long Ago Conceded That DACA Is Not at Issue ..................... 12

CONCLUSION ............................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Addington v. Farmer's Elevator Mut. Ins. Co.*,
  650 F.2d 663 (5th Cir. 1981) ............................................. 11

*Andrade Garcia v. Columbia Med. Ctr. of Sherman*,
  996 F. Supp. 605 (E.D. Tex. 1998) ...................................... 8

*AT&T Commc'ns of Sw., Inc. v. City of Austin*,
  235 F.3d 241 (5th Cir. 2000) ........................................... 3, 4

*Burke v. Barnes*,
  479 U.S. 361 (1987) ........................................................ 5

*Campo v. Bank of Am., N.A.*,
  2016 WL 1162199 (S.D. Tex. Mar. 24, 2016), *aff'd*, 678 F. App'x 227 (5th
  Cir. 2017) ..................................................................... 11

*Caton v. Barry*,
  500 F. Supp. 45 (D.D.C. 1980) ......................................... 10

*Church of Scientology v. United States*,
  506 U.S. 9 (1992) ............................................................ 2

*Crane v. Johnson*,
  783 F.3d 244 (5th Cir. 2015) ............................................ 10

*Daves v. Payless Cashways, Inc.*,
  661 F.2d 1022 (5th Cir. 1981) .......................................... 11

*de la O v. Hous. Auth. of City of El Paso, Tex.*,
  417 F.3d 495 (5th Cir. 2005) ............................................. 6

*Fantasy Ranch Inc. v. City of Arlington*,
  459 F.3d 546 (5th Cir. 2006) ............................................. 3

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................. 7, 8, 11

*Freeman v. Cont'l Gin Co.*,
  381 F.2d 459 (5th Cir. 1967) ....................................... 8, 9, 11

*Friends of the Earth v. Laidlaw Envt'l Servs., Inc.*,
  528 U.S. 167 (2000) ......................................................... 3

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
  460 F.3d 13 (D.C. Cir. 2006) ............................................. 5

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Gregory v. Mitchell,*
    634 F.2d 199 (5th Cir. 1981) ................................................................. 11, 12

*Hope Med. Grp. for Women v. Edwards,*
    63 F.3d 418 (5th Cir. 1995) ...................................................................... 3

*Johnson v. Sales Consultants, Inc.,*
    61 F.R.D. 369 (N.D. Ill. 1973) ................................................................. 11

*McClelland v. Gronwaldt,*
    155 F.3d 507 (5th Cir. 1998) .................................................................. 5, 6

*Miss. Ass'n of Coops. v. Farmers Home Admin.,*
    139 F.R.D. 542 (D.D.C. 1991) .................................................................. 8

*Nat'l Rifle Ass'n of Am., Inc. v. McCraw,*
    719 F.3d 338 (5th Cir. 2013) ................................................................... 2

*Nilsen v. City of Moss Point,*
    621 F.2d 117 (5th Cir. 1980) ................................................................. 12

*Powell v. McCormack,*
    395 U.S. 486 (1969) ................................................................................ 3

*Ross v. Hous. Indep. Sch. Dist.,*
    669 F.2d 218 (5th Cir. 1983) ................................................................. 10

*Safeway Transp., Inc. v. W. Chambers Transp., Inc.,*
    100 F. Supp. 2d 442 (S.D. Tex. 2000) ..................................................... 8

*Sossamon v. Lone Star State of Tex.,*
    560 F.3d 316 (5th Cir. 2009) ................................................................... 3

*Staley v. Harris Cty.,*
    485 F.3d 305 (5th Cir. 2007) ................................................................... 4

*Summit Office Park v. U.S. Steel Corp.,*
    639 F.2d 1278 (5th Cir. Unit A 1981) .................................................. 7, 8

*Weigand v. Afton View Apartments,*
    473 F.2d 545 (8th Cir. 1973) ................................................................... 9

## **RULES**

Fed. R. Civ. P. 15(a) ..................................................................... 1, 7, 11

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This case is over and should be dismissed as moot without leave to amend.  From the very beginning, this case has *only* ever been about the DAPA and expanded DACA initiatives set forth in the Secretary's November 20, 2014 memorandum (collectively, the "DAPA Memorandum").  On June 15, 2017, after remand from the Supreme Court and a lengthy stay, the Secretary of Homeland Security rescinded the DAPA Memorandum.  *See* ECF No. 447 Ex. A.  As a result, there is no further work to be done here, and the case should be dismissed.

Plaintiffs now threaten to radically alter the scope and nature of this case by seeking leave to amend their complaint to challenge the 2012 DACA initiative ("DACA"), which, as this Court has made clear, "is not at issue in this case."  ECF No. 145 at 12 n.10.  On June 29, 2017, Plaintiffs sent a letter to the Attorney General threatening to amend their complaint to challenge DACA if that separate initiative is not rescinded by September 5, 2017.  *See* ECF No. 447 Ex. B.  But Plaintiffs, having amended their complaint once "as a matter of course," Fed. R. Civ. P. 15(a)(1), can only amend now by leave of court—leave that this Court has broad discretion to, and should, deny.  *See* ECF No. 14 (First Am. Compl.).

Plaintiffs never challenged the 2012 DACA initiative, and in fact they affirmatively represented to this Court that they were "not challenging the DACA program."  *See* Prelim. Inj. Hr'g Tr. 91:4-5, Jan. 15, 2015.[1]  Plaintiffs should not now, after nearly *three years*, be allowed to surprise the Federal Defendants, the Intervenors, and the nation by amending their complaint to completely change the nature of the case.  If Plaintiffs truly wish to challenge the DACA initiative, they should be required to assert those claims in a new lawsuit.  This Court should not

---

[1] At the preliminary injunction hearing, this Court stated that it "has been working under the assumption that DACA, D-A-C-A, is not in front of it.  Am I -- am I correct in that?"  Prelim. Inj. Hr'g Tr. 90:8-10, Jan. 15, 2015.  Counsel for Plaintiffs responded, "Yes, Your Honor," and then explained, "we are not challenging the DACA program."  *Id.* at 90:11, 91:4-5.

countenance Plaintiffs' threatened attempt to sneak an attack on DACA into *this* lawsuit and

should dismiss the case as moot without leave to amend.

## NATURE AND STATE OF THE PROCEEDING

Plaintiffs' ongoing lawsuit against the DAPA Memorandum is before this Court on

remand following the appeal of the preliminary injunction that was entered by this Court on

February 16, 2015.  On June 15, 2017, the Federal Defendants revoked the DAPA Memorandum

that was the sole subject of this case.

## STATEMENT OF THE ISSUES TO BE RULED ON BY THIS COURT

The November 2014 memorandum setting forth the DAPA initiative and expanded

DACA initiative has been revoked.  No issues remain to be decided.  The Court should dismiss

Plaintiffs' complaint as moot without leave to amend.

## ARGUMENT

I.      **THIS CASE SHOULD BE DISMISSED AS MOOT**

A.      **The DAPA Memorandum Has Been Rescinded, and There Are No
        Remaining Issues to Be Adjudicated**

This case should be dismissed as moot because there is no longer a justiciable case or

controversy now that the Federal Defendants have rescinded the November 20, 2014 DAPA

Memorandum.  *See* ECF No. 447 Ex. A.  It is settled law that "a federal court has no authority to

give opinions upon moot questions or abstract propositions."  *Church of Scientology v. United

States*, 506 U.S. 9, 12 (1992) (internal citations omitted).  A moot claim "presents no Article III

case or controversy, and a court has no constitutional jurisdiction to resolve the issues it

presents."  *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 344 (5th Cir. 2013).  To

satisfy the Article III requirement for a case or controversy, the plaintiff's interest in the claim

"must exist at the commencement of the litigation . . . [and] must continue throughout its

existence." *Id.*  A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Powell v. McCormack*, 395 U.S. 486, 496-97 (1969); *Hope Med. Grp. for Women v. Edwards*, 63 F.3d 418, 422 (5th Cir. 1995).  This can happen if "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 203 (2000).

When a plaintiff challenges a governmental policy, the government's discontinuance of the challenged policy gives rise to mootness.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 324-25 (5th Cir. 2009).  In *Sossamon*, the Fifth Circuit held that the plaintiff's claim for injunctive relief of a prison policy was moot because the director of the Texas prison system certified that the policy would be discontinued statewide.  *Id.*  The court also found that the plaintiff's alleged harm was not likely to recur because the policy's cessation was statewide, so if the plaintiff were transferred to another prison in the state, the challenged policy would have likewise been discontinued there.  *Id.*  Similarly, in *Fantasy Ranch Inc. v. City of Arlington*, the Fifth Circuit affirmed dismissal of a plaintiff's due process claims because the city had since amended the challenged ordinance to "address[] all the issues raised by [plaintiff's] pre-amendment complaint, leaving [plaintiff] only with the claim that the Arlington City Council might one day amend the ordinance to reenact the offending provisions."  459 F.3d 546, 564 (5th Cir. 2006).  The court reasoned that "statutory changes…discontinu[ing] a challenged practice are 'usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed,'" and thus the speculative possibility that the offending ordinance would be reenacted did not create a justiciable case or controversy.  *Id.*  And in *AT&T Communications of Southwest, Inc. v. City of Austin*, the Fifth Circuit vacated a district court's

order enjoining a city ordinance and dismissed the case because the ordinance had been repealed by the city.  235 F.3d 241, 243-44 (5th Cir. 2000).

This case presents the same type of facts, all of which support a finding of mootness. The Secretary of Homeland Security rescinded the DAPA Memorandum on June 15, 2017 after consulting with the Attorney General and considering "a number of factors, including the preliminary injunction in this matter, the ongoing litigation, the fact that DAPA never took effect, and our new immigration enforcement priorities."  ECF No. 447 Ex. A.  In the June Memorandum, Secretary Kelly stated that the rescission followed President Trump's Executive Order No. 13768 titled "Enhancing Public Safety in the Interior of the United States," which directed federal agencies to "[e]nsure the faithful execution of the immigration laws…against all removable aliens."  *Id.*  Accordingly, the federal government has discontinued the very policies that Plaintiffs challenged in this case, and any remotely theoretical claim of harm Plaintiffs could allege "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Staley v. Harris Cty.*, 485 F.3d 305, 309 (5th Cir. 2007) (internal citations omitted).  Plaintiffs' claims for injunctive relief should therefore be dismissed as moot.

**B.    The Remaining Existence of Some Three-Year DACA Grants, Which Plaintiffs Have Never Claimed Caused Them Harm and Which Will All Expire in Fewer Than Seven Months, Does Not Create Jurisdiction**

As this Court is well aware, the expanded DACA initiative contained in the DAPA Memorandum led to the Federal Defendants issuing a number of three-year DACA grants from November 2014 until shortly after February 16, 2015, when this Court enjoined the implementation of the DAPA Memorandum.  ECF No. 144.  All three-year grants issued after the February 16, 2015 date of the injunction have already been revoked, and the remaining three-year grants arising from the enjoined (and now rescinded) provisions of expanded DACA will begin expiring this November.  These three-year grants will all expire no later than February 16,

2018—fewer than seven months from the date of this motion.

Now that the government has rescinded the expanded DACA initiative, the lingering existence of some three-year DACA grants does not change the conclusion that this case is moot. As discussed, it is black letter law that an action challenging a government initiative becomes moot when that initiative is discontinued without any reasonable expectation that it will be reenacted. This principle also applies to government policies that are set to expire, just as it does to policies that are repealed or amended. For example, in *Burke v. Barnes*, plaintiffs challenged a bill that had expired by its own terms during the appeal process. 479 U.S. 361, 362 (1987). The Supreme Court dismissed the plaintiffs' challenge as moot because it saw "no reason to treat a challenge to the validity of a statute that has expired any differently from a challenge to the validity of a statute that has been repealed, and accordingly hold that any issues concerning whether H.R. 4042 became a law were mooted when that bill expired by its own terms." *Id.* at 363. The same conclusion was reached in *Fund for Animals, Inc. v. U.S. Bureau of Land Management*, where the D.C. Circuit dismissed as moot plaintiffs' challenge of an "Instruction Memorandum" issued to Bureau of Land Management field offices as violating the National Environmental Policy Act because the Instruction Memorandum had expired by its own terms. 460 F.3d 13, 18, 22-23 (D.C. Cir. 2006). As in *Burke* and *Fund for Animals*, the impending expiration of all three-year DACA grants supports dismissing this case as moot. And, because the expanded DACA initiative was rescinded along with the rest of the DAPA Memorandum, there is no reasonable expectation that any three-year DACA terms will be granted in the future.

The remaining three-year DACA grants also fail to create a justiciable case or controversy because "[i]t is axiomatic that a request for injunctive relief remains live only so long as there is some present *harm* left to enjoin." *McClelland v. Gronwaldt*, 155 F.3d 507, 514

(5th Cir. 1998), *overruled on other grounds Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th (emphasis added); *de la O v. Hous. Auth. of City of El Paso, Tex.*, 417 F.3d 495, 499 (5th Cir. 2005) (same).  At no point during this case have Plaintiffs identified or even alleged any harm resulting from the three-year grants.  Indeed, at the August 31, 2016 status conference, the Court directly asked Plaintiffs: "[D]o you have any idea of whether these renewals, the difference between a two year and a three year, has caused any problems to the states?"  Aug. 31, 2016 Hr'g Tr. at 10:21-24.  In response, Plaintiffs answered, "[W]e're not really, at this point, able to determine that…we're really not in a position to say precisely how much, you know, how much in the way of benefits have been conferred on these individuals [who received three year DACA grants]."  *Id*. at 10:25-11:18.  This Court then remarked that "I've not been shown any harm" and "I can't see the harm" from the issuance of the three-year grants.  *Id*. at 36:10-19.

Accordingly, in its January 19, 2017 order, this Court held that "[t]wo years have now passed since the three-year renewals were initiated.  To date, no Plaintiff-State has made a claim in this Court that it has been harmed" and "no such claim has been made in the past two years, and in the next 12–18 months all such renewals will expire."  ECF No. 434 at 7-8.  To the extent that Plaintiffs now wish to allege they were harmed by the three-year DACA grants, such allegations would be inconsistent with their prior failure to make any such representation to the Court and belied by their delay in waiting over two years since learning about the three-year permits to finally challenge these grants. In sum, because any remaining grants will expire in fewer than seven months and will cause no identifiable harm to Plaintiffs, these grants do not present a live controversy, and this case should be dismissed as moot.

## II.   THE COURT SHOULD DENY PLAINTIFFS LEAVE TO AMEND THEIR COMPLAINT TO CHALLENGE THE 2012 DACA INITIATIVE, WHICH IS NOT AT ISSUE IN THIS CASE

Regardless of whether this Court dismisses the current complaint as moot, it should deny

Plaintiffs leave to amend their complaint to challenge DACA.[2]  Plaintiffs have already amended once "as a matter of course" and can now only amend with leave of court.  Fed. R. Civ. P. 15(a)(1)-(2); *see* ECF No. 14.  As this Court has stated, this case was about DAPA and the discrete expansion of DACA that was contained in the DAPA Memorandum.  ECF No. 145 at 12 n.10 (Court's statement that expanded DACA's "removal of the age cap, the program's three-year extension, and the adjustment to the date of entry requirement" were "three exceptions…to the general proposition that the DACA program is not at issue in this case").  The case docket stretches over nearly three years and 450 docket entries, and it is littered with dozens of parties, amici, and proposed intervenors, as well as multiple appeals.  If Plaintiffs truly wish to initiate the lengthy time- and resource-consuming litigation that would be required to challenge DACA, they should be required to do so in a new, separate proceeding.  *See Summit Office Park v. U.S. Steel Corp.*, 639 F.2d 1278, 1284 (5th Cir. Unit A 1981) (affirming denial of motion to amend because "[plaintiff] had no case left to assert.  As for [other potential plaintiffs], their claims could be asserted and rights protected by filing a new lawsuit…rather than [by] attempting to participate in the original litigation.").  Plaintiffs' proposed amendment is a blatant attempt to shoehorn an entirely new case about the original 2012 DACA initiative into this action, which concerned only the 2014 DAPA Memorandum, and should thus be rejected as inappropriate.

### A.    Allowing Plaintiffs to Amend to Challenge DACA Would Radically Alter the Scope and Nature of the Case

This Court should exercise its discretion to deny Plaintiffs leave to amend their complaint.  The right to amend is not absolute, not even under the liberal standard for allowing amendments that prevails in normal litigation—which this case is decidedly not.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  A plaintiff may be denied leave to amend on such grounds as

---

[2] If Plaintiffs file an amended complaint prior to the resolution of this Motion, the Court should treat any such filing as a motion for leave to amend and deny it.

"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.*  While "[l]iberality in amendment is important to assure a party a fair opportunity to present his claims[,]…equal attention should be given to the proposition that there must be an end finally to a particular litigation" and a district court need not be "imposed upon by the presentation of theories seriatim." *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967) (citation omitted).  The denial of an opportunity to amend is within the sound discretion of the district court and is reviewed only for abuse of that discretion. *See Foman*, 371 U.S. at 182.  And leave to amend should not be granted if there is no jurisdiction at all—such as here, where the original claims about the DAPA Memorandum have been entirely mooted. *See Summit Office Park*, 639 F.2d at 1283 ("Since there was no plaintiff before the court with a valid cause of action, there was no proper party available to amend the complaint.").

Courts generally only grant leave to amend to add claims that relate to the same basic dispute as the originally pled claims. *See, e.g.*, *Safeway Transp., Inc. v. W. Chambers Transp., Inc.*, 100 F. Supp. 2d 442, 444 (S.D. Tex. 2000) (new conspiracy claim "intimately related" to existing claims for breach of fiduciary duty and misappropriation of trade secrets arising out of the creation of competing business); *Andrade Garcia v. Columbia Med. Ctr. of Sherman*, 996 F. Supp. 605, 610 (E.D. Tex. 1998) (additional negligent acts alleged in wrongful death suit sufficiently related to original negligence claim).  But if the complaint as amended "would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action, leave to amend should be denied." *Miss. Ass'n of Coops. v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991) (denying leave to amend because it would "do far

more than allow plaintiff to fully litigate all the legal dimensions of their initial action," but would instead "permit plaintiff to transform their case into something entirely new"); *see also Weigand v. Afton View Apartments*, 473 F.2d 545, 548–49 (8th Cir. 1973) (affirming denial of leave to amend where the district court noted that the new claims would have "transform[ed]" the original lawsuit into "an entirely new suit").

Although Plaintiffs may seek to frame a proposed amended complaint against DACA as an extension of their original suit and argue that it makes sense to consider them together, nothing could be further from the truth. DAPA and DACA are very different and, to paraphrase the Fifth Circuit, this Court should not countenance Plaintiffs' "theories seriatim" for "there must be an end finally to [this] particular litigation." *Freeman*, 381 F.2d at 469. The DAPA Memorandum itself, on its face, made clear that DAPA would be much broader than DACA, which applies only to an inherently limited subset of undocumented residents who were brought to the United States as children. As even Plaintiffs admitted in their complaint, the legal bases of DAPA and expanded DACA were evaluated independently from those of the original DACA initiative itself. *See* ECF No. 14 ¶¶ 21, 56–60 (discussing 2014 Memorandum Opinion of Department of Justice's Office of Legal Counsel, which evaluated potential legal basis for DAPA and extended DACA). Furthermore, DACA has been in place for over five years and has been relied on by hundreds of thousands of individuals who came forward to register and place their trust in the Federal Defendants, while DAPA was never implemented.

Whereas the Court's injunction against DAPA merely preserved the status quo, a potential injunction of DACA would have an enormous, controversial effect on hundreds of thousands of lives, and the balancing of the equities (required for an injunction) would thus be very different than the one this Court had to conduct in deciding whether to enjoin DAPA. And,

perhaps most importantly, the jurisdictional analysis would be very different and Plaintiffs would be hard-pressed to establish standing; indeed, only 10 of the 26 Plaintiffs signed the June 29 letter (*see* ECF No. 447 Ex. B), indicating it is likely that not all Plaintiffs will challenge DACA, and the Fifth Circuit has already dismissed a suit by one of the current Plaintiffs against DACA for lack of standing in *Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015).  Specifically, in *Crane*, the Fifth Circuit rejected as insufficient for standing Mississippi's assertion that "DACA will cost the state money because the state provides social benefits to illegal immigrants" because "Article III standing…mandates that Mississippi show a 'concrete and particularized' injury that is 'fairly traceable' to DACA.  To do that, Mississippi was required to demonstrate that the stat will incur costs because of the DACA program.  Because Mississippi's claim of injury is not supported by any facts, we agree with the district court that Mississippi's injury is purely speculative."  *Id.*  This rule—rather than the one this Court applied to the different facts of DAPA in this case—would govern the jurisdictional analysis for any new claims against DACA.

Accordingly, allowing Plaintiffs to amend to challenge DACA would radically alter the scope of this litigation and "transform the case into something entirely new."  *Miss. Ass'n*, 139 F.R.D. at 544; *see also Caton v. Barry*, 500 F. Supp. 45, 54 (D.D.C. 1980) (proposed new claims raised "discrete questions of fact…only tangentially related to the instant proceeding" that would "substantially alter the character and scope" of that proceeding).  If Plaintiffs wish to challenge DACA, they should file an entirely new lawsuit.  *See Ross v. Hous. Indep. Sch. Dist.*, 699 F.2d 218, 230 (5th Cir. 1983) (where leave denied, door was still "left open to new litigation"); *Caton*, 500 F. Supp. at 54 (observing that plaintiffs still had the option of bringing a new lawsuit).

### B.    Plaintiffs' Undue Delay Is a Separate Ground for Denying Leave to Amend

Amendment would also be improper because Rule 15(a) is intended to enable a party to only assert matters "overlooked or unknown" at the time the party filed its original complaint.

*Campo v. Bank of Am., N.A.*, 2016 WL 1162199, at *3 (S.D. Tex. Mar. 24, 2016), *aff'd*, 678 F. App'x 227 (5th Cir. 2017)).  It is not intended to allow a plaintiff to unduly delay and then achieve surprise with a new claim the plaintiff could have asserted years before.  *See Foman*, 371 U.S. at 182 ("undue delay" and "dilatory motive" independent grounds for denying leave to amend).  Thus, unreasonable delay, even absent a showing of prejudice, constitutes grounds for denying leave to amend, particularly where there is no indication that the facts giving rise to the new allegation were overlooked or unknown at the time of the original complaint.  In *Johnson v. Sales Consultants, Inc.*, for example, plaintiffs sought to substitute their claim of fraud in the inducement with a new cause of action based on alleged violations of the Sherman and Clayton Acts.  61 F.R.D. 369, 370–72 (N.D. Ill. 1973).  The court found that "*[r]egardless* of any prejudice" that the proposed amendment would cause to defendants, there was "no indication that the purported conduct giving rise to the [claim] was either 'over looked or unknown' at the time the plaintiff filed his original complaint."  *Id.* at 372 (emphasis added).  The court also considered the plaintiff's delay in filing the motion to amend 14 months after the original complaint, holding that this "undue delay" was sufficient grounds "in and of itself" for denying leave to amend under Rule 15(a).  *Id.* (citing *Foman*, 371 U.S. at 182; *Freeman*, 381 F.2d at 469).  The Fifth Circuit, in turn, has consistently affirmed denials of leave where leave was sought over a year after the original complaint was filed.  *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1024–25 (5th Cir. 1981) (affirming denial of plaintiff's motion to amend 19 months after litigation had commenced and 33 months after plaintiff had filed original charge with EEOC); *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 667 (5th Cir. 1981) (affirming denial of leave to amend that sought, over a year after institution of action, to introduce an entirely new factual basis and legal theory for suit); *Gregory v. Mitchell*, 634 F.2d

11

199, 203 (5th Cir. 1981) (affirming denial of leave to amend because it was untimely); *Nilsen v. City of Moss Point*, 621 F.2d 117, 122 (5th Cir. 1980) (affirming denial of leave to amend because of plaintiff's "unexplained dilatoriness" in seeking amendment two years and eight months after cause of action accrued).

Under these precedents, any request by Plaintiffs for leave to amend should be denied. DACA was in place over two years before the 2014 DAPA Memorandum issued.  Plaintiffs could have challenged it when they filed suit in December 2014, yet they instead chose to file suit only against the DAPA Memorandum.  The rescission of DAPA and the mooting of Plaintiffs' original claims does not somehow reset the clock on their delay.  Plaintiffs have had almost three years since filing this case to lodge claims against DACA.  Even absent a showing of prejudice, such an extraordinary, inexcusable delay is a sufficient and independent ground for denying Plaintiffs leave to amend.

### C.    Plaintiffs Long Ago Conceded That DACA Is Not at Issue

Finally, Plaintiffs should be held to their word.  From the inception of this case, Plaintiffs have affirmatively represented that in this case they are challenging *only* the 2014 DAPA Memorandum, not the 2012 DACA initiative.  DACA is an entirely different initiative based on different criteria, has *already been implemented*, and focuses on a much smaller and different target population than the DAPA Memorandum that this Court held was improper.  Accordingly, Plaintiffs should not be allowed to go back on their former representations and completely change the subject of this case, particularly because they can simply file a new lawsuit against DACA if they truly wish to challenge it.

During the January 15, 2015 hearing, the Court asked: "This Court has been working under the assumption that DACA, D-A-C-A, is not in front of it.  Am I -- am I correct in that?"  Prelim. Inj. Hr'g Tr. 90:8-10, Jan. 15, 2015.  Counsel for Plaintiffs affirmatively responded,

"Yes, Your Honor," and then explained, "[W]e are not challenging the DACA program."  *Id.*
90:11, 91:4-5.  Moreover, the opening paragraphs of Plaintiffs' live complaint, the First
Amendment Complaint, focus solely on the November 2014 DAPA Memorandum.  *See* ECF No.
14 ¶¶ 2-6.  And, during the March 19, 2015 hearing before this Court, Plaintiffs led off their
argument by stating, "Your Honor, the plaintiff states filed this lawsuit on December 3rd
challenging *the DHS directive issued on November 20th [2014]*."  Mot. Hr'g Tr. 2:18-20, Mar.
19, 2015 (emphasis added).  Finally, in seeking the preliminary injunction, Plaintiffs again
focused exclusively on the 2014 DAPA Memorandum: "The issue is whether the Defendants'
2014 deferred action plan—including the 2014 DHS Directive—should be preliminarily
enjoined."  ECF No. 5 at 4.

　　　　In light of these representations, this Court has unambiguously stated that this litigation
does not concern 2012 DACA.  In enjoining the 2014 DAPA Memorandum's implementation,
this Court acknowledged that "this case does not involve the Deferred Action for Childhood
Arrivals ('DACA') program.  In 2012, DACA was implemented by then DHS Secretary Janet
Napolitano…. The Complaint in this matter does not include the actions taken by Secretary
Napolitano…. Therefore, those actions are not before the Court."  ECF No. 145 at 5.  The Court
noted that the litigation involved expansions that the November 2014 DAPA Memorandum made
to the 2012 DACA initiative, calling "the removal of the age cap, the program's three-year
extension, and the adjustment to the date of entry requirement…three exceptions…to the general
proposition that the DACA program is not at issue in this case."  ECF No. 145 at 12 n.10.  As
explained above, those "exceptions" have since been rescinded and thus mooted along with the
rest of the DAPA Memorandum, and as a result they do not change the fact that the original 2012
DACA itself is not at issue here.

## CONCLUSION

Because the Federal Defendants have rescinded the 2014 DAPA Memorandum that was

the sole subject of this litigation, the Court should dismiss the case as moot while denying

Plaintiffs leave to amend to challenge the original 2012 DACA initiative.

Dated:  July 28, 2017

**O'MELVENY & MYERS LLP**
Adam P. KohSweeney (Cal. Bar No. 229983)*
Gabriel Markoff (Cal. Bar. No. 291656)*
2 Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Phone:  (415) 984-8700
Facsimile:  (415) 984-8701

*Admitted *pro hac vice*.

Respectfully submitted,

**MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND
By** */s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046;
Southern District of Tex. Bar No. 21127)
Attorney-in-Charge
110 Broadway, Suite 300
San Antonio, Texas 78205
Phone:  (210) 224-5476
Facsimile:  (210) 224-5382

Attorneys for **JANE DOE #1**, **JANE DOE #2,** and **JANE DOE #3**

### CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of July 2017, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046)
***Attorney-in-Charge***

### CERTIFICATE OF CONFERENCE

I hereby certify that on the 28th day of July 2017, counsel for the Jane Does conferred with counsel for Plaintiffs and Defendants in this case.  Plaintiffs oppose this motion. Defendants' position is as follows: "Defendants view the motion as improper while the ongoing stay of the merits in this case remains in place.  Defendants take no further position on the proposed motion until they have an opportunity to review and consider the motion."

*/s/ Nina Perales*
Nina Perales (Tex. Bar No. 24005046)
***Attorney-in-Charge***